TOWNSEND AND TOWNSEND AND CREW LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
GIA L. CINCONE (Bar # 141668)
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: gsgilchrist@townsend.com; glcincone@townsend.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., | Case No.   C 07-3752 JSW |
| Plaintiff, | **DECLARATION OF GIA L. CINCONE IN SUPPORT OF PLAINTIFF LEVI STRAUSS & CO.'S MOTION TO DISQUALIFY HOWREY LLP AS COUNSEL FOR DEFENDANT ABERCROMBIE & FITCH TRADING CO.** |
| v. | |
| ABERCROMBIE & FITCH TRADING CO., | |
| Defendant. | |
| | **DATE: October 26, 2007** |
| | **TIME: 9:00 a.m.** |
| | **COURTROOM: 2** |

I, Gia L. Cincone, hereby declare as follows:

1.     I am an attorney admitted to practice in the State of California and before this Court. I am affiliated with the law firm of Townsend and Townsend and Crew LLP, attorneys of record for plaintiff Levi Strauss & Co. ("LS&CO.") in this proceeding. I make this declaration based on my personal knowledge and, if called as a witness, I could and would be competent to testify to the matters set forth below.

2.     I submit this Declaration in support of LS&CO.'s motion to disqualify the firm of Howrey LLP from representing the defendant, Abercrombie & Fitch Trading Co. ("A&F"), in this

-1-

CINCONE DEC. ISO PL.'S MOTION TO DISQUALIFY          *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
HOWREY LLP AS COUNSEL FOR DEF.                                Case No. C 07-3752 JSW

1 | action.

2 |   3. Attached hereto as Exhibit A are true and correct copies of pages from the transcript of

3 | a testimony deposition given by Katherine Basile on January 12, 1999, in an opposition proceeding

4 | before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, *Levi*

5 | *Strauss & Co. v. Vivat Holdings PLC*, Opposition Nos. 105,453 and 105,667.

6 |   4. Attached hereto as Exhibit B is a true and correct copy of United States Trademark

7 | Application Serial Number 78/766,368.

8 |   5. Attached hereto as Exhibit C is a true and correct copy of a letter I sent to Susan Kayser

9 | of Howrey LLP on July 20, 2007.

10 |   6. Attached hereto as Exhibit D is a true and correct copy of Applicant's First Request for

11 | Admissions in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, Opposition No. 91175601

12 | (without exhibits), which were served on LS&CO. by mail on June 11, 2007.

13 |   7. Attached hereto as Exhibit E is a true and correct copy of Applicant's First Request for

14 | Interrogatories to Opposer in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, Opposition No.

15 | 91175601 (without exhibits), which were served on LS&CO. by mail on June 14, 2007.

16 |   8. Attached hereto as Exhibit F are true and correct copies of pages from Howrey LLP's

17 | website, www.howrey.com, which were printed on August 9, 2007.

18 |   9. Attached hereto as Exhibit G are true and correct copies of pages from Howrey LLP's

19 | website, www.howrey.com, which were printed on September 20, 2007.

20 |   10. On July 20, 2007, I called Katherine Basile to inform her that LS&CO. had filed this

21 | action against A&F.  I also informed her that LS&CO. believed Howrey had a conflict of interest in

22 | representing A&F in the litigation, and intended to move to disqualify Howrey if Howrey continued to

23 | represent A&F.

24 |   11. A&F has stated it will oppose LS&CO.'s motion to disqualify on grounds of delay.  As

25 | a consequence, the parties agreed that the purported "delay" would be tolled during the few weeks it

26 | took to arrange the meeting between Thomas Onda and Reid Wilson, in-house intellectual property

27 | counsel for LS&CO. and A&F, respectively.  The meeting took place on September 7, 2007, and A&F

28 | terminated this tolling on September 12, 2007.

CINCONE DEC. ISO PL.'S MOTION TO DISQUALIFY
HOWREY LLP AS COUNSEL FOR DEF.

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
Case No. C 07-3752 JSW

1    I declare under penalty of perjury under the laws of the United States that the foregoing

2  statements are true and correct.

3    Executed at San Francisco, California, on this 21 day of September, 2007.

4

5

6    Gia L. Cincone

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CINCONE DEC. ISO PL.'S MOTION TO DISQUALIFY          *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
HOWREY LLP AS COUNSEL FOR DEF.                                      Case No. C 07-3752 JSW

# EXHIBIT A

Katy Basile

1           U.S. PATENT AND TRADEMARK OFFICE

2       BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

3                      - - -

4
   LEVI STRAUSS & CO.,          )
5                               )       ORIGINAL
                Opposer,        )
6                               ).
           vs.                  )     Nos.  105,453
7                               )             105,667
   VITAT HOLDINGS PLC,          )
8                               )
                Applicant.      )
9   - - - - - - - - - - - - - - - -

10

11

12

13                   DEPOSITION OF

14                    KATY BASILE

15            SAN FRANCISCO, CALIFORNIA

16               JANUARY 12, 1999

17

18

19   ATKINSON-BAKER, INC.
     CERTIFIED COURT REPORTERS
20   5 Third Street, Suite 625
     San Francisco, California  94103
21   (415) 421-3021

22   REPORTED BY LYNN E. DARLING, CSR NO. 6825

23   FILE NO.:  9900206

24

25

Katy Basile

1          A.  It did.

2          Q.  Has the nature of your work for Levi Strauss

3     changed since you were hired in April of 1994?

4          A.  Well, yes and no.  No, in that I continue to be

5     responsible for intellectual property matters but, yes,

6     in that my areas of responsibility have changed.

7     Approximately a year after I joined the company, I was --

8     I became responsible for the intellectual property

9     matters for the Americas and no longer had the

10    responsibility of Asia Pacific Division.  And

11    approximately in December of 1995 I became responsible

12    for not only the application, registration renewal, and

13    enforcement, infringement enforcement matters, but also

14    for the anti-counterfeiting matters in the Americas and I

15    was also the team leader for the team responsible for the

16    brand protection issues.  That position lasted until this

17    past -- until December 1998 when the brand protection

18    department and the legal department were reintegrated.

19    However, I continue to be responsible for brand

20    protection matters including the anti-counterfeiting work

21    for the Americas.

22         Q.  Including the United States?

23         A.  Including the United States.

24         Q.  Do your responsibilities include all brands that

25    Levi Strauss & Co. manufactures?

Katy Basile

1      A.   Manufactures, primarily, yes.  I work with my

2  colleague -- with one colleague who does the commercial

3  work for the Dockers brand.  I worked with her on the

4  enforcement matters for the Dockers brand but, yes, I'm

5  responsible for all the -- for all the brands and for all

6  the brand protection matters and issues in the United

7  States.

8      Q.   So is it fair to say that since you started at

9  Levi Strauss your responsibilities have always included

10  brand protection work related to the Levi's brand in the

11  United States?

12      A.   Yes.

13      Q.   What was your employment status in October 1998?

14      A.   I was employed but on disability related to

15  maternity leave.  I was on maternity leave.

16          MR. FLETCHER:  Off the record.

17              (Discussion held.)

18          MS. CINCONE:  Q.  Can you give us a general

19  overview of what your current responsibilities include?

20      A.   My current responsibilities include overseeing

21  and the enforcement of the trademarks that the company

22  owns throughout the Americas.  That would include the

23  Levi's brand trademarks.  They include overseeing the

24  application of new trademarks for the Americas and making

25  sure that existing trademark registrations are renewed.

Katy Basile

1    It includes advising, giving advice and counseling on the

2    creation of new trademarks.  It includes supervising or

3    overseeing the activities undertaken to stop counterfeits

4    of our products in the Americas.  It includes working

5    with my colleagues in our Brussels office and our

6    Singapore office on global brand protection issues and

7    policies.  It also includes some commercial work or it

8    will include providing some commercial legal advice as

9    well.

10    Q.  When you say you oversee enforcement activities,

11    can you be a little more specific about what that

12    entails?

13    A.  Well, for example, for the United States in the

14    Levi's brand it means that I am responsible -- I work

15    with paralegals and investigators to make sure that we

16    monitor the marketplace for infringements, that a

17    decision is made or I may even make a decision about

18    whether or not to take an action against a given

19    infringement and then working with outside counsel or

20    working with the paralegal who works with outside counsel

21    to make sure that action is indeed taken and we reach

22    resolution of the matter.

23    Q.  Do your responsibilities include oversight of

24    enforcement-related litigation?

25    A.  Yes, it does, and it also includes -- I left out

Katy Basile

1    from time to time consulting with my customers or clients

2    or people within our business organization.

3        Q.   You mentioned working with paralegals and

4    investigators.  What sort of staffing do you have here in

5    the legal department to assist you with

6    enforcement-related work that you do?

7        A.   We currently have -- for the United States we

8    currently have one paralegal who is essentially dedicated

9    to infringement enforcement matters for the United States

10   and she also does some work in Canada.  We have another

11   paralegal who spends a portion of her time helping to

12   monitor the infringement situation in the United States,

13   we have a full time investigator who spends some of his

14   time when requested on helping on infringement matters

15   and he really works on anti-counterfeiting matters more

16   than anything else.  We have administrative support.  We

17   have me.  We also have attorneys who counsel the brands

18   on commercial matters and, you know, from time to time

19   they may raise issues with the business colleagues at my

20   request or I may go directly to the business colleagues.

21   That's what we have now.

22            I guess and, lastly, we have the attorney to

23   whom I report, which is -- who is Seth Jaffe or reported

24   to Ruth Meyler, M-e-y-l-e-r, and to the extent Seth needs

25   to know what's going on or can provide me support, he's

Katy Basile

1    infringing.

2        Q.   If a potential infringement comes to your

3    attention through one of these methods, what is -- what

4    is the process for deciding if any action should be

5    taken?

6        A.   Well, the process can be twofold.  Either it's

7    decided within the legal department by the paralegal and

8    me that action should be taken or I will go consult with

9    my business colleagues if I have a question as to whether

10   or not action should be taken and seek their input and we

11   make a decision together as to whether action should be

12   taken or not.

13       Q.   Are you the person primarily responsible for

14   making those decisions?

15       A.   Yes, I am.

16       Q.   And if you decide to take action against a

17   particular design that you consider to be an

18   infringement, what types of action might you take?

19       A.   It depends on -- it depends on the infringement.

20   In most cases we would write a cease and desist letter to

21   the infringer seeking resolution, seeking a mutual

22   resolution, if possible.  If it's something that

23   basically I determine has some form of egregiousness to

24   it that would justify an immediate action for preliminary

25   injunction, we will file a motion for preliminary

Katy Basile

1    stitching design is whether you believe that the

2    stitching design is likely to cause confusion among

3    consumers?

4         A.   Yes.

5         Q.   Is it possible that you would see a stitching

6    design that falls within the guideline that you've given

7    us but would decide not to challenge it?

8         A.   Yes, it is possible.  If the overall commercial

9    impression of a stitching design, for example, is one of

10   flatness, and what I mean by that is you could have, for

11   example, a single line that began at the side of the

12   pocket and curved down towards the center, but if it were

13   afterset by an inverted design, an inverted stitch, so

14   that the overall impressions were one of flat, straight

15   across the pocket or what I consider flatness, then while

16   technically you might say, well, that's within your

17   definition, I wouldn't -- it probably -- I would not

18   believe that it would be infringing and not challenge it.

19   That's why I say it's in some ways you have to look at

20   the stitching or the design to really know what you would

21   do with it.

22        Q.   Do you know who formulated the general byline

23   that you have described for us?

24        A.   Yes, I do.

25        Q.   Can you share that with us?

Katy Basile

1      A.   Yes, I can.  It was a task force made up of

2  senior marketing, primarily senior marketing people in

3  the company.

4      Q.   And when was that, if you know?

5      A.   It was in December of 1994.

6      Q.   In your opinion, does a stitching design have to

7  be symmetrical in order to raise a likelihood of

8  confusion with the arcuate trademark?

9      A.   No.

10     Q.   Can you tell us generally how many enforcement

11 actions involving the arcuate trademark Levi Strauss has

12 taken since you assumed responsibility for United States

13 enforcement matters?

14     A.   I believe there have been around 200.

15     Q.   And would those include enforcement actions in

16 all of the various -- of all of the various types that

17 you've described:  litigation, cease and desist,

18 opposition proceedings?

19     A.   Well, that would include enforcement such as

20 lawsuits and cease and desist.  I believe for oppositions

21 that the total number would be -- I believe the total

22 number would be closer to 250 or 260.

23         Let me see if I've got this right.  Can I try to

24 break it down for you to see if my numbers add up?

25     Q.   Sure.

# EXHIBIT B

PTO Form 1478 (Rev 6/2005)

OMB No. 0651-0009 (Exp 13/XX/XXX)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 78766368
### Filing Date: 12/05/2005

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| MARK FILE NAME | \\TICRS\EXPORT8\IMAGEOUT8 \787\663\78766368\xml1\AP P0002.JPG |
| STANDARD CHARACTERS | NO |
| USPTO-GENERATED IMAGE | NO |
| COLOR MARK | NO |
| DESCRIPTION OF THE MARK (and Color Location, if applicable) | The mark consists of a miscellaneous mirror image stitching design. The dotted lines around the mark represents the shapes of the pockets, which are not claimed as features of the mark. |
| PIXEL COUNT ACCEPTABLE | YES |
| PIXEL COUNT | 944 x 458 |
| **OWNER SECTION** | |
| NAME | Abercrombie & Fitch Trading Co. |
| STREET | 6301 Fitch Path |
| CITY | New Albany |
| STATE | Ohio |
| ZIP/POSTAL CODE | 43054 |
| COUNTRY | United States |
| AUTHORIZED EMAIL COMMUNICATION | No |
| **LEGAL ENTITY SECTION** | |
| TYPE | CORPORATION |
| STATE/COUNTRY OF INCORPORATION | Ohio |
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 025 |
| DESCRIPTION | Clothing, namely, jeans, skirts, shorts, pants and jackets |
| FILING BASIS | Section 1(b) |
| **SIGNATURE SECTION** | |
| SIGNATURE | /Reid M. Wilson/ |
| SIGNATORY NAME | Reid M. Wilson |

| SIGNATORY DATE | 12/05/2005 |
|---|---|
| SIGNATORY POSITION | Trademark Counsel and Assistant Secretary |

## PAYMENT SECTION

| NUMBER OF CLASSES | 1 |
|---|---|
| NUMBER OF CLASSES PAID | 1 |
| SUBTOTAL AMOUNT | 325 |
| TOTAL AMOUNT | 325 |
| PAYMENT METHOD | DA |

## ATTORNEY

| NAME | Katherine M. Basile |
|---|---|
| FIRM NAME | HOWREY LLP |
| STREET | 1299 Pennsylvania Avenue, NW |
| CITY | Washington |
| STATE | District of Columbia |
| ZIP/POSTAL CODE | 20004-2402 |
| COUNTRY | United States |
| PHONE | 202-783-0800 |
| FAX | 202-383-7195 |
| EMAIL | ipdocketing@howrey.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| ATTORNEY DOCKET NUMBER | 00863.____.TMUS00 |
| OTHER APPOINTED ATTORNEY(S) | Susan M. Kayser, Caroline C. Smith, Allison G. Olmsted, Mike M. Yaghmai, Jessica D. Bradley, and others of the firm |

## CORRESPONDENCE SECTION

| NAME | Katherine M. Basile |
|---|---|
| FIRM NAME | HOWREY LLP |
| STREET | 1299 Pennsylvania Avenue, NW |
| CITY | Washington |
| STATE | District of Columbia |
| ZIP/POSTAL CODE | 20004-2402 |
| COUNTRY | United States |
| PHONE | 202-783-0800 |
| FAX | 202-383-7195 |
| EMAIL | ipdocketing@howrey.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |

## FILING INFORMATION

| SUBMIT DATE | Mon Dec 05 10:48:10 EST 2005 |
|---|---|
| TEAS STAMP | USPTO/BAS-198147515-20051<br>205104810045160-78766368-<br>20066bb1fa3f445e89e87f828<br>d18ddc9-DA-1206-200512051<br>01939879244 |

PTO Form 1478 (Rev 6/2005)
OMB No. 0651-0009 (Exp xx/xx/xxxx)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 78766368
### Filing Date: 12/05/2005

## To the Commissioner for Trademarks:

**MARK:** (Stylized and/or Design, see mark)
The mark consists of a miscellaneous mirror image stitching design. The dotted lines around the mark represents the shapes of the pockets, which are not claimed as features of the mark.
The applicant, Abercrombie & Fitch Trading Co., a corporation of Ohio, residing at 6301 Fitch Path, New Albany, Ohio, United States, 43054, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.
Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).
    International Class 025: Clothing, namely, jeans, skirts, shorts, pants and jackets
The applicant hereby appoints Katherine M. Basile and Susan M. Kayser, Caroline C. Smith, Allison G. Olmsted, Mike M. Yaghmai, Jessica D. Bradley, and others of the firm of HOWREY LLP, 1299 Pennsylvania Avenue, NW, Washington, District of Columbia, United States, 20004-2402 to submit this application on behalf of the applicant. The attorney docket/reference number is 00863.____.TMUS00.
The USPTO is authorized to communicate with the applicant or its representative at the following email address: ipdocketing@howrey.com.
A fee payment in the amount of $325 will be submitted with the application, representing payment for 1 class(es).

### Declaration
The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.
Signature: /Reid M. Wilson/  Date: 12/05/2005
Signatory's Name: Reid M. Wilson
Signatory's Position: Trademark Counsel and Assistant Secretary
Mailing Address:
    Katherine M. Basile
    1299 Pennsylvania Avenue, NW
    Washington, District of Columbia 20004-2402
RAM Sale Number: 1206
RAM Accounting Date: 12/05/2005
Serial Number: 78766368
Internet Transmission Date: Mon Dec 05 10:48:10 EST 2005
TEAS Stamp: USPTO/BAS-198147515-20051205104810045160
-78766368-20066bb1fa3f445e89e87f828d18dd

c9-DA-1206-20051205101939879244



# EXHIBIT C

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

San Francisco

Two Embarcadero Center
Eighth Floor
San Francisco, California 94111-3834
Tel 415.576.0200
Fax 415.576.0300

Gia L. Cincone
415.273.7546
glcincone@townsend.com

July 20, 2007

**BY FACSIMILE (W/O ENCLOSURES) AND FEDERAL EXPRESS**

Susan M. Kayser, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004

Re:    Levi Strauss & Co. / Abercrombie & Fitch

Dear Susan:

I am writing to follow up on our recent communications regarding Levi Strauss & Co.'s ("LS&CO.") opposition to the pending applications by Abercrombie & Fitch ("A&F") to register its pocket stitching design as a trademark.

We continue to believe that A&F's registration and use of this stitching design create a likelihood of consumer confusion because of the design's similarity to LS&CO.'s Arcuate Stitching Design Trademark.  In light of the facts that A&F is not amenable to suspension of the opposition proceeding, A&F has a second application pending for the same design, and the design is now in use, we believe the most appropriate venue for resolution of our dispute over the design is federal court.  Accordingly, we have filed a complaint on LS&CO.'s behalf against A&F in the Northern District of California, stating claims for infringement, dilution, and unfair competition based on A&F's use of the design.  The complaint is enclosed.  Please let me know if you will accept service on A&F's behalf or if we should proceed to have the complaint served.

We have also filed a motion in the Trademark Trial and Appeal Board to suspend the opposition proceeding pending the outcome of the civil action.  Your service copy of that motion is also enclosed.

Finally, I need to raise with you our concerns regarding your firm's continued representation of A&F in this matter.  We believe Howrey's involvement presents a serious conflict of interest due to the membership in the firm of your partner, Katy Basile.  As you know, from 1994 through mid-1999, Katy served as LS&CO.'s Associate General Counsel in charge of brand protection; her responsibilities included enforcement of LS&CO.'s rights in its Arcuate

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

Susan Kayser, Esq.
July 20, 2007
Page 2

Trademark.  We believe Katy's key role in enforcing LS&CO.'s rights in its mark renders Howrey's continued representation of A&F in this matter impermissible under California law.[1]

California Rule of Professional Conduct 3-310(E) provides, "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."  The California Supreme Court has stated with regard to Rule 3-310(E) that "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.  The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process."  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1145 (1999).

California uses a "substantial relationship" test to determine whether confidential information is presumed to have been imparted:  "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation."  *Id.* at 1146 (citing *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994)).

> To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation.  If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information.  Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel.

*City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006) (citations omitted).

---

[1] "Motions to disqualify counsel are decided under state law."  *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (applying California Rules of Professional Conduct).

Susan Kayser, Esq.
July 20, 2007
Page 3

There can be no doubt that there is a substantial relationship between Katy's work at LS&CO. and Howrey's representation of A&F in this dispute. Katy was intimately involved in setting policy and advising LS&CO. management with regard to enforcement of LS&CO.'s Arcuate Trademark. Clearly, "confidences material to the current representation would normally have been imparted," and were imparted, to her during her employment at LS&CO. No waiver was sought from LS&CO., nor would one have been given if it had been requested. Accordingly, Katy is disqualified from representing A&F in this matter. *See, e.g., Franzoni v. Hart Schaffner & Marx*, 726 N.E.2d 719 (Ill. App. 2000) (upholding disqualification of plaintiff's attorney and his firm in retaliatory discharge action where attorney previously served as defendant's general counsel and was involved in setting employment policies and counseling defendant's executives regarding those policies).

It is equally clear under California law that the disqualification extends to the entire Howrey firm. "A presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm." *SpeeDee*, 20 Cal. 4th at 1146. This rule of vicarious disqualification -- which "recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients' confidential information," *id.* at 1153-54 -- has recently been reaffirmed both by California courts and by federal courts applying California law. *See, e.g., Lappert's Ice Cream, Inc. v. Lappert's, Inc.*, 2007 U.S. Dist. LEXIS 21349 (N.D. Cal. 2007) (disqualifying entire firm under Rule 3-310(E)); *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1162 (N.D. Cal. 2006) (no change in "established rule of vicarious disqualification"); *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co.*, 2005 U.S. Dist. LEXIS 45190 (N.D. Cal. 2005) (no Ninth Circuit or California case approved use of ethical wall in lieu of disqualification in circumstances of case); *Cobra Solutions*, 38 Cal. 4th at 847 ("Normally, an attorney's conflict is imputed to the law firm as a whole . . . ").

I want to assure you that we do not raise this issue lightly. LS&CO. places a very high importance on enforcement of its rights in its trademarks, which are among the company's most valuable assets. Our client has genuine and serious concerns over litigating a trademark action against a firm which includes an attorney who was directly responsible for high level decisions concerning the very same trademark at issue in the litigation. Accordingly, we ask that Howrey withdraw from its representation of A&F in connection with the pending civil action and related trademark applications.

TOWNSEND
*and*
TOWNSEND
*and*
CREW
ᴵᴵᴾ

Susan Kayser, Esq.
July 20, 2007
Page 4

Feel free to call me or Greg Gilchrist if you would like to discuss this matter. We look forward to hearing from you.

Very truly yours,

Gia L. Cincone

cc:    Levi Strauss & Co.
61103426 v1

# EXHIBIT D

Docket No. 00863.0216.TMUS00

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| LEVI STRAUSS & CO., | ) | |
| | ) | |
| Opposer, | ) | |
| | ) | |
| v. | ) | Opposition No. 91175601 |
| | ) | |
| ABERCROMBIE & FITCH TRADING CO., | ) | |
| | ) | |
| Applicant. | ) | |

## APPLICANT'S FIRST REQUEST FOR ADMISSIONS

Applicant, Abercrombie & Fitch Trading Co., in accordance with Rule 36 of the Federal Rules of Civil Procedure and Rule 2.120 of the Trademark Rules of Practice, requests the above-named Opposer within thirty (30) days after service of this request to make the following admissions for purposes of this proceeding only and subject to all pertinent objections to admissibility which may be interposed at trial.

For purposes of these Requests, the term "Opposer" means Levi Strauss & Co. and any predecessors in interest to the rights of Opposer in the marks shown in Exhibit A to the Notice of Opposition.

## REQUEST NO. 1

Attached as Appendix A is a USPTO TARR printout regarding Registration No. 3,123,805.

## RESPONSE

<u>REQUEST NO. 2</u>

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,123,805.

<u>RESPONSE</u>

<u>REQUEST NO. 3</u>

Attached as Appendix B is a USPTO TARR printout regarding Registration No. 3,224,730.

<u>RESPONSE</u>

<u>REQUEST NO. 4</u>

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,224,730.

<u>RESPONSE</u>

<u>REQUEST NO. 5</u>

Attached as Appendix C is a USPTO TARR printout regarding Registration No. 3,224,729.

<u>RESPONSE</u>

<u>REQUEST NO. 6</u>

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,224,729.

<u>RESPONSE</u>

REQUEST NO. 7

Attached as Appendix D is a USPTO TARR printout providing information regarding Registration No. 3,185,126.

RESPONSE


REQUEST NO. 8

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,185,126.

RESPONSE


REQUEST NO. 9

Attached as Appendix E is a USPTO TARR printout regarding Registration No. 3,185,125.

RESPONSE


REQUEST NO. 10

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,185,125.

RESPONSE


REQUEST NO. 11

Attached as Appendix F is a USPTO TARR printout regarding Registration No. 2,923,431.

RESPONSE

REQUEST NO. 12

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,923,431.

RESPONSE

REQUEST NO. 13

Attached as Appendix G is information from the USPTO TARR database regarding Registration No. 3,001,859.

RESPONSE

REQUEST NO. 14

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,001,859.

RESPONSE

REQUEST NO. 15

Attached as Appendix H is a USPTO TARR printout regarding Registration No. 2,809,553.

RESPONSE

REQUEST NO. 16

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,809,553.

RESPONSE

**REQUEST NO. 17**

Attached as Appendix I is a USPTO TARR printout regarding Registration No. 2,506,616.

RESPONSE


**REQUEST NO. 18**

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,506,616.

RESPONSE


**REQUEST NO. 19**

Attached as Appendix J is a USPTO TARR printout regarding Registration No. 2,459,324.

RESPONSE


**REQUEST NO. 20**

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,459,324.

RESPONSE


**REQUEST NO. 21**

Attached as Appendix K is a USPTO TARR printout regarding Registration No. 2,117,042.

RESPONSE

REQUEST NO. 22

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,117,042.

RESPONSE

REQUEST NO. 23

Attached as Appendix L is a USPTO TARR printout regarding Registration No. 3,073,748.

RESPONSE

REQUEST NO. 24

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,073,748.

RESPONSE

REQUEST NO. 25

Attached as Appendix M is a USPTO TARR printout regarding Registration No. 3,090,433.

RESPONSE

REQUEST NO. 26

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,090,433.

RESPONSE

<u>REQUEST NO. 27</u>

Attached as Appendix N is a USPTO TARR printout regarding Registration No. 3,106,997.

<u>RESPONSE</u>

<u>REQUEST NO. 28</u>

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,106,997.

<u>RESPONSE</u>

<u>REQUEST NO. 29</u>

Attached as Appendix O is a USPTO TARR printout regarding Registration No. 3,104,095.

<u>RESPONSE</u>

<u>REQUEST NO. 30</u>

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,104,095.

<u>RESPONSE</u>

<u>REQUEST NO. 31</u>

Attached as Appendix P is a USPTO TARR printout regarding Registration No. 3,209,826.

<u>RESPONSE</u>

REQUEST NO. 32

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,209,826.

RESPONSE

REQUEST NO. 33

Attached as Appendix Q is a USPTO TARR printout regarding Application No. 78/506,821.

RESPONSE

REQUEST NO. 34

Opposer did not oppose Application No. 78/506,821.

RESPONSE

REQUEST NO. 35

Attached as Appendix R is a USPTO TARR printout regarding Application No. 78/532,784.

RESPONSE

REQUEST NO. 36

Opposer did not oppose Application No. 78/532,784.

RESPONSE

REQUEST NO. 37

Attached as Appendix S is a USPTO TARR printout regarding Application No. 78/543,431.

RESPONSE


REQUEST NO. 38

Opposer did not oppose Application No. 78/543,431.

RESPONSE


REQUEST NO. 39

Attached as Appendix T is a USPTO TARR printout regarding Registration No. 3,082,149.

RESPONSE


REQUEST NO. 40

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,082,149.

RESPONSE


REQUEST NO. 41

Attached as Appendix U is a USPTO TARR printout regarding Registration No. 3,131,452.

RESPONSE

REQUEST NO. 42

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,131,452.

RESPONSE

REQUEST NO. 43

Attached as Appendix V is a USPTO TARR printout regarding Registration No. 3,199,898.

RESPONSE

REQUEST NO. 44

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,199,898.

RESPONSE

REQUEST NO. 45

Attached as Appendix W is a USPTO TARR printout regarding Registration No. 3,141,545.

RESPONSE

REQUEST NO. 46

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,141,545.

RESPONSE

REQUEST NO. 47

Attached as Appendix X is a USPTO TARR printout regarding Registration No. 2,614,300.

RESPONSE

REQUEST NO. 48

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,614,300.

RESPONSE

REQUEST NO. 49

Attached as Appendix Y is a USPTO TARR printout regarding Registration No. 2,403,006.

RESPONSE

REQUEST NO. 50

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,403,006.

RESPONSE

REQUEST NO. 51

Attached as Appendix Z is a USPTO TARR printout regarding Application No. 78/812,053.

RESPONSE

REQUEST NO. 52

Opposer did not oppose Application No. 78/812,053.

RESPONSE

REQUEST NO. 53

Attached as Appendix AA is a USPTO TARR printout regarding Registration No. 2,524,058.

RESPONSE

REQUEST NO. 54

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,524,058.

RESPONSE

REQUEST NO. 55

Attached as Appendix BB is a USPTO TARR printout regarding Registration No. 2,096,191.

RESPONSE

REQUEST NO. 56

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,096,191.

RESPONSE

REQUEST NO. 57

Attached as Appendix CC is a USPTO TARR printout regarding Registration No. 2,161,384.

RESPONSE


REQUEST NO. 58

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,161,384.

RESPONSE


REQUEST NO. 59

Attached as Appendix DD is a USPTO TARR printout regarding Registration No. 2,083,205.

RESPONSE


REQUEST NO. 60

Opposer has not attempted to cancel U.S. Trademark Registration No. 2,083,205.

RESPONSE


REQUEST NO. 61

Attached as Appendix EE is a USPTO TARR printout regarding Registration No. 1,887,228.

RESPONSE

REQUEST NO. 62

Opposer has not attempted to cancel U.S. Trademark Registration No. 1,887,228.

RESPONSE

REQUEST NO. 63

Attached as Appendix FF is a USPTO TARR printout regarding Registration No. 1,934,386.

RESPONSE

REQUEST NO. 64

Opposer has not attempted to cancel U.S. Trademark Registration No. 1,934,386.

RESPONSE

REQUEST NO. 65

Attached as Appendix GG is a USPTO TARR printout regarding Registration No. 1,556,896.

RESPONSE

REQUEST NO. 66

Opposer has not attempted to cancel U.S. Trademark Registration No. 1,556,896.

RESPONSE

REQUEST NO. 67

Attached as Appendix HH is a USPTO TARR printout regarding Registration No. 1,492,315.

RESPONSE

REQUEST NO. 68

Opposer has not attempted to cancel U.S. Trademark Registration No. 1,492,315.

RESPONSE

REQUEST NO. 69

Attached as Appendix II is a USPTO TARR printout regarding Registration No. 1,208,583.

RESPONSE

REQUEST NO. 70

Opposer has not attempted to cancel U.S. Trademark Registration No. 1,208,583.

RESPONSE

REQUEST NO. 71

Attached as Appendix JJ is a USPTO TARR printout regarding Registration No. 3,195,797.

RESPONSE

REQUEST NO. 72

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,195,797.

RESPONSE

REQUEST NO. 73

Attached as Appendix KK is a USPTO TARR printout regarding Registration No. 3,219,224.

RESPONSE

REQUEST NO. 74

Opposer has not attempted to cancel U.S. Trademark Registration No. 3,219,224.

RESPONSE

REQUEST NO. 75

Attached as Appendix LL is a USPTO TARR printout regarding Application No. 76/286,514.

RESPONSE

REQUEST NO. 76

    Opposer did not oppose Application No. 76/286,514.

RESPONSE

\*     \*     \*

By: _____
        Susan M. Kayser
        Caroline C. Smith
        Kelly R. McCarty
        Attorneys for Applicant
        Howrey LLP
        1299 Pennsylvania Avenue, N.W.
        Washington, DC 20004-2402
           202.783.0800

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Applicant's First Request for Admissions was served on the following attorney of record for Opposer by depositing same in the United States mail, first class, postage prepaid, this 11th day of June 2007:

> Gia L. Cincone, Esq.
> Townsend and Townsend and Crew LLP
> Two Embarcadero Center, 8th Floor
> San Francisco, California 94111-3834

# EXHIBIT E

Docket No. 00863.0216.TMUS00

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| LEVI STRAUSS & Co., | ) | |
| | ) | |
| Opposer, | ) | |
| | ) | |
| v. | ) | Opposition No. 91175601 |
| | ) | |
| ABERCROMBIE & FITCH TRADING CO., | ) | |
| | ) | |
| Applicant. | ) | |

## APPLICANT'S FIRST SET OF INTERROGATORIES TO OPPOSER

Applicant, Abercrombie & Fitch Trading Co., in accordance with Rule 33 and other applicable rules of the Federal Rules of Civil Procedure and Rules 2.116 and 2.120(d) of the Trademark Rules of Practice, propounds the following written interrogatories to be answered by Opposer in writing under oath.

## INSTRUCTIONS AND DEFINITIONS

A.    These interrogatories seek answers as of the date hereof and, as to any interrogatories addressed to matters falling within Rules 26(e)(1) and 26(e)(2), Fed. R. Civ. P., shall be deemed to be continuing, requiring Opposer to serve on Applicant such further supplemental or amended answers seasonably after Opposer has acquired additional knowledge or information relating in any way to interrogatories.

B.    As used herein, the following definitions apply:

1.    Communication.   The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.    Document.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.

3.    Identify (With Respect to Persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address and, when referring to a natural person, additionally, the present or last known place of employment and title. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.    Identify (With Respect to Documents).  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

5.    Opposer.  The term "Opposer" means Levi Strauss & Co. and any predecessors in interest to or assignee of the rights of Opposer and, where applicable, the officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

6.    Person.  The term "person" is identified as any natural person or any business, legal or governmental entity or association.

7.    Concerning.  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

8.    All/Each.  The terms "all" and "each" shall be construed as all and each.

9.    And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise to be construed to be outside of its scope.

- 2 -

10.    Number. The use of the singular form of any word includes the plural and vice versa.

INTERROGATORY NO. 1

Provide the approximate date on which Opposer first became aware of Applicant's mark shown in Application No. 78/766,368, which is the subject of this proceeding.

ANSWER


INTERROGATORY NO. 2

Identify with specificity all products and services that Opposer, at any time, has sold, rendered, sells, renders or intends to sell or render, under the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 3

Identify all corporate officers of Opposer who have knowledge of its use of the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 4

Identify the names and locations of all retail stores that carry and/or sell goods bearing the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 5

Identify all third party marks consisting of any pocket design to which Opposer has objected or to which Opposer has considered objecting based on its purported rights in the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 6

Identify all U.S. trademark applications which Opposer has opposed or to which Opposer has filed an extension of time to oppose based on its purported rights in the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 7

Identify all third party marks consisting of pocket designs to which Opposer has objected or has considered objecting by sending a demand or cease and desist letter based on its purported rights in the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 8

Identify all third party marks consisting of pocket designs which are the subject of licenses or other documents granting Opposer's permission to use such marks based on its purported rights in the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

- 4 -

INTERROGATORY NO. 9

Identify any complaint which Opposer filed and/or considered filing in any U.S. court with respect to any marks which consist of any pocket design.

ANSWER

INTERROGATORY NO. 10

Identify any third party pocket design which is the subject of a coexistence agreement entered into by Opposer and any third party.

ANSWER

INTERROGATORY NO. 11

Identify any third party pocket design which is the subject of a settlement agreement entered into by Opposer and any third party.

ANSWER

INTERROGATORY NO. 12

Identify by citation any and all decisions rendered by a U.S. Court or the U.S. Patent and Trademark Office which refer or relate in any way to the confusing similarity of any third-party mark to the Opposer's "Arcuate Trademark."

ANSWER

INTERROGATORY NO. 13

Identify by citation any and all decisions rendered by a U.S. Court or the U.S. Patent and Trademark Office which refer or relate in any way to Opposer's right to use the "Arcuate Trademark."

ANSWER


INTERROGATORY NO. 14

Describe the channels of trade in which Opposer's goods allegedly provided under the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649 move and describe the general classes or types of consumers for Opposer's goods.

ANSWER


INTERROGATORY NO. 15

Identify and describe any instances of actual confusion of which Opposer is aware which resulted from Applicant's use of the mark shown in Application No. 78/766,368.

ANSWER


INTERROGATORY NO. 16

Identify all third-party marks of which Opposer is aware which include an arcuate design, *i.e.*, a design that is bent or curved like a bow, as used on pockets of pants or jeans.

ANSWER

INTERROGATORY NO. 17

Identify each document on which Opposer relied as the basis for Opposer's allegations in the Notice of Opposition.

ANSWER

INTERROGATORY NO. 18

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the ...Lost Crooked Jean jeans shown in Attachment A hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 19

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Reef Linton jeans shown in Attachment B hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 20

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on

DM_US:20517346_1

the Andrew Buckler Gordon Benit jeans shown in Attachment C hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 21

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Hurley jeans shown in Attachment D hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 22

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Mavi jeans shown in Attachment E hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

- 8 -

INTERROGATORY NO. 23

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Soundgirl Canyon jeans shown in Attachment F hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 24

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the O'Neill jeans shown in Attachment G hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 25

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Oakley Spinster pants shown in Attachment H hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 26

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Roxy jeans and bermuda shorts shown in Attachment I hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 27

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Edun jeans shown in Attachment J hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 28

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Christopher Blue jeans shown in Attachment K hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 29

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Elvis Miss Clawdy jeans shown in Attachment L hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 30

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Diesel jeans shown in Attachment M hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 31

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Jordache clothing items shown in Attachment N hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 32

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Calvin Klein jeans shown in Attachment O hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 33

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Jet Set AG jeans shown in Attachment P hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 34

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Tag+ jeans shown in Attachment Q hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 35

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Big Star jeans shown in Attachment R hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 36

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Mudd frayed cuff crop pants shown in Attachment S hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 37

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Angels Five-Pocket Stretch Jeans shown in Attachment T hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


- 13 -

<u>INTERROGATORY NO. 38</u>

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Paris Blues jeans shown in Attachment U hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

<u>ANSWER</u>

<u>INTERROGATORY NO. 39</u>

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the SO Stretch jeans shown in Attachment V hereto regarding and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

<u>ANSWER</u>

<u>INTERROGATORY NO. 40</u>

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the l.e.i. jeans shown in Attachment W hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

<u>ANSWER</u>

DM_US:20517346_1

INTERROGATORY NO. 41

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Guess jeans shown in Attachment X hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 42

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Guess jeans shown in Attachment Y hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 43

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Hugo Boss jeans shown in Attachment Z hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

DM_US:20517346_1

INTERROGATORY NO. 44

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Chaps jeans shown in Attachment AA hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 45

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Cruel Girl jeans shown in Attachment BB hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER


INTERROGATORY NO. 46

Identify any action taken by Opposer or correspondence directed on Opposer's behalf to any person regarding any perceived likelihood of confusion between the pocket design shown on the Swat.Fame jeans shown in Attachment CC hereto and the arcuate pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649.

ANSWER

INTERROGATORY NO. 47

Identify all witnesses Opposer intends to present and rely upon in proof of any issue in this opposition proceeding.

ANSWER


INTERROGATORY NO. 48

Identify all persons with factual knowledge regarding any agreements between Opposer and any third party regarding the coexistent use of Opposer's "Arcuate Trademark" with any third party pocket design.

ANSWER


INTERROGATORY NO. 49

Identify all persons with factual knowledge regarding Opposer's enforcement efforts related to its "Arcuate Trademark."

ANSWER


INTERROGATORY NO. 50

Identify all documents that were relied upon by Opposer in answering these interrogatories.

ANSWER

INTERROGATORY NO. 51

Provide the approximate annual dollar amount spent on advertising and promotion for all goods provided under the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649, segregated by year from 1995 to present

ANSWER

INTERROGATORY NO. 52

Provide the approximate annual dollar amount of revenues obtained from the sale of clothing under each of the marks shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649, segregated by year, from 1873 to the present.

ANSWER

INTERROGATORY NO. 53

Identify by type (e.g., newspaper, magazine) and specific name (e.g., the New York Times) and date, each medium or method, by and through which Opposer has advertised or promoted the pocket design shown in Registration Nos. 404,248, 1,139,254, 2,791,156 and 2,794,649 for each year since 1995

ANSWER

INTERROGATORY NO. 54

Identify all third-party marks of which Opposer is aware which include an arcuate pocket design, i.e., a design that is bent or curved like a bow, for any clothing item.

ANSWER

INTERROGATORY NO. 55

Identify the date on which jeans bearing Opposer's "Arcuate Trademark" became available for sale on Opposer's website, *www.levisstore.com*.

ANSWER

INTERROGATORY NO. 56

Identify each document on which Opposer relied as the basis for Opposer's allegations in the Notice of Opposition.

ANSWER

INTERROGATORY NO. 57

Identify each person who participated in the preparation of the responses to these interrogatories and who furnished any information for the responses thereto.

ANSWER

\*　　\*　　\*

ABERCROMBIE & FITCH TRADING CO.

By: _Caroline C Smith_
Susan M. Kayser
Caroline C. Smith
Kelly R. McCarty
Attorneys for Applicant
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402
202.783.0800

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Applicant's First Set of Interrogatories to Opposer was served on the following attorney of record for Opposer by depositing same in the United States mail, first class, postage prepaid, this 14th day of June 2007:

Gia L. Cincone, Esq.
Townsend and Townsend and Crew LLP
Two Embarcadero Center, 8th Floor
San Francisco, California 94111-3834

_Caroline C Smith_

DM_US:20517346_1

# EXHIBIT F



# HOWREY LLP

CONTACT US |

**PRACTICE AREAS**

**PEOPLE**

PARTNERS

COUNSEL

ASSOCIATES

SENIOR
ASSOCIATES

PATENT AGENTS

SCIENTIFIC
ADVISORS

CAPANALYSIS

MAXIAM®

**OUR FIRM**

**CAPANALYSIS**

## ATTORNEYS & OTHER PROFESSIONALS

Overview | Admissions  | Publications |         Print Version
            & Associations  & Speeches



**Katherine M. Basile**
**Partner**
Intellectual Property
Trademark

1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
650-798-3515
650-798-3600 (FAX)
basilek@howrey.com

 Download Contact Info

### OVERVIEW

Ms. Basile brings a unique combination of private practice and in-house counsel experience to her position as a trademark partner in the firm. Ms. Basile's expertise is in the creation, clearance, prosecution and enforcement of trademarks and brands, both in the United States and worldwide. She has broad experience in all aspects of trademark litigation and proceedings before the Trademark Trial and Appeal Board. Ms. Basile has developed internal procedures to allow companies to identify, develop and protect all types of intellectual property, and has counseled clients on a variety of licensing issues.

Ms. Basile's clients include companies in the fields of computer and high technology, biotechnology, pharmaceutical, food, restaurant services, financial services, real estate, apparel manufacturers and consumer packaged goods. Ms. Basile manages Intel Corporation's trademark portfolio, including the famous INTEL®, PENTIUM®, and INTEL INSIDE® trademarks.

Prior to joining Howrey LLP, Ms. Basile was a senior attorney with Intel Corporation's Trademarks & Brands Group. From 1994 to 1999, Ms. Basile was with Levi Strauss & Co. as an associate general counsel responsible for all aspects of brand protection, as well as advising on distribution strategies and providing strategic advice in operations within the company's Latin America Division.

From 1988 to 1994, Ms. Basile was a litigation associate with a San Francisco area law firm, where she handled intellectual property and commercial litigation matters.

Ms. Basile has presented at INTA, MARQUES, AIPLA and ACCA conferences.  Actively involved in the trademark community, she was on the planning committee for the INTA Advance Trademark Symposium and presently is on the project team for the U.S. Sessions, 2006 INTA Annual Meeting.  Ms. Basile was named in the 2004 and 2005 "Guide to the World's Leading Trade Mark Law Practitioners."  She also recently received from VIP Mentors the 2006 Mentor of the Year Partners in Success Award.

Ms. Basile is a member of Howrey's Northern California Management Team.

## EDUCATION

University of California - Los Angeles, J.D., Order of the Coif, 1987
University of California - Irvine, B.A., 1982
University of California - Irvine, B.S., 1980

## MORE >>

THE ADVANTAGE C

For technical problems, please contact webteam@howrey.com
Copyright © 2007 Howrey LLP  Legal Disclaimer  Privacy Policy

ATTORNEY ADVERTISING
Prior results do not guarantee a similar outcome.

# EXHIBIT G

# HOWREY LLP



**Katherine M. Basile**
**Partner**
Intellectual Property
Trademark

1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
650-798-3515
650-798-3600 (FAX)
basilek@howrey.com

## OVERVIEW
Ms. Basile brings a unique combination of private practice and in-house counsel experience to her position as a trademark partner in the firm. Ms. Basile's expertise is in the creation, clearance, prosecution and enforcement of trademarks and brands, both in the United States and worldwide. She has broad experience in all aspects of trademark litigation and proceedings before the Trademark Trial and Appeal Board. Ms. Basile has developed internal procedures to allow companies to identify, develop and protect all types of intellectual property, and has counseled clients on a variety of licensing issues.

Ms. Basile's clients include companies in the fields of computer and technology, biotechnology, pharmaceutical, food, restaurant services, financial services, real estate, apparel manufacturing and consumer packaged goods.

Prior to joining Howrey LLP, from 1994 to 2000, Ms. Basile was in house counsel with a major technology company and a worldwide apparel manufacturer. From 1988 to 1994, Ms. Basile was a litigation associate with a San Francisco area law firm, where she handled intellectual property and commercial litigation matters.

Ms. Basile has presented at INTA, MARQUES, AIPLA, ABA and ACCA conferences. Ms. Basile was named in the 2004 and 2005 "Guide to the World's Leading Trade Mark Law Practitioners." Ms. Basile is a member of Howrey's Northern California Management Team and the firm's Firm-wide Pro Bono Committee.

## EDUCATION
University of California - Los Angeles, J.D., Order of the Coif, 1987
Graduate School for International Studies, Geneva, Switzerland, 1985
Universitaet Goettingen, Germany, 1982
University of California - Irvine, B.A., 1982
University of California - Irvine, B.S., 1980

## STATE BAR MEMBERSHIPS
California, 1987

## COURT AND ADJUDICATIVE BODIES
United States Supreme Court
United States Court of Appeals for the Ninth Circuit
United States District Court for the Central District of California
United States District Court for the Eastern District of California
United States District Court for the Northern District of California
United States District Court for the Southern District of California

## PROFESSIONAL ASSOCIATIONS
- American Bar Association, Member
- American Intellectual Property Law Association, Member
- International Trademark Association, Member

## ARTICLES
- Basile, Katherine M. "New law is second try at clarifying standards for determining trademark dilution," *The Recorder*, (November, 2006).
- Basile, Katherine M. "From Blurred to Bright - Amendment of the Federal Trademark Dilution Act," *TrademarkWorld* , (May, 2005).
- Basile, Katherine M. and Mike M. Yaghmai. "MCLE Self Study - Trademark Tangles on the Web,"

*California Lawyer*, (May, 2005).
- Basile, Katherine M. "The Clearance Gap - The impact of the Protocol on trademark clearance in the US," *WorldFocus*, (May, 2004).

## SPEECHES

- "From Victoria's Secret to Louis Vuitton: What Everyone Should Know About Famous Marks and The Brands That Would Dilute Them," ABA Annual Meeting, August, 2007 Moderator.
- Moderator, "MAXXXIMUM EXPOSURE – Moonshine, Major League and Preliminary Injunction Madness!," 2006 INTA Annual Meeting , Toronto, Canada, May, 2006 Moderator.
- Moderator, "Experience-Sharing Panel Discussion," INTA's Advanced Trademark Symposium, February, 2004 Moderator.
- Presenter, "Recent Developments in Trademark Law," PLI's 9th Annual Institute for Intellectual Property Law, November, 2003 Presenter.
- Presenter, "Ingredient Branding and Co-Branding: Tools to Successfully Grow and Extend Brands," MARQUES Annual Meeting, September, 2003 Presenter.
- Presenter, "Basics of U.S. Trademark Law Forum," INTA Forum, February, 2003 Presenter.
- Panelist, "Computers, Telecommunications and Financial Services," INTA Annual Meeting, May, 2002 Panelist.
- Presenter, "Famous Marks – How Famous is Famous or Do I Really Want to Be Famous?," AIPLA Spring Meeting, April, 2002 Presenter.
- Panelist, American Corporate Counsel Association (ACCA) Annual Meeting , November, 1999.
- Presenter, "Counterfeit Suppression in the Americas ," INTA Mid-Year Meeting , September, 1997 Presenter.
- Panelist, "Marketing, Licensing, Franchising and Protecting Goods, Images and Services," Intellectual Property Conference of the Americas, July, 1996 Panelist.
- Presenter, "Trademark Protection From a Private Sector Perspective ," USPTO Office of Legislation and International Affairs, Seminar For Heads of Industrial Property Offices, Central America , January, 1996 Presenter.

## CONTINUING LEGAL EDUCATION

- *Understanding Trade-Marks – An Introductory Course*, McGill/IPIC, August, 2003.
- *International Trademark Practice*, Trademark and Copyright Practice For Paralegals, June, 2001, HalfMoon LLC.

## COMMUNITY SERVICE

Volunteers in Parole

Copyright © 2007 Howrey LLP™