TOWNSEND AND TOWNSEND AND CREW LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
GIA L. CINCONE (Bar # 141668)
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: gsgilchrist@townsend.com; glcincone@townsend.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ABERCROMBIE & FITCH TRADING CO.,<br><br>　　　　　　Defendant. | Case No.   C 07-3752 JSW<br><br>**DECLARATION OF THOMAS M. ONDA IN SUPPORT OF PLAINTIFF LEVI STRAUSS & CO.'S MOTION TO DISQUALIFY HOWREY LLP AS COUNSEL FOR DEFENDANT ABERCROMBIE & FITCH TRADING CO.**<br><br>DATE: October 26, 2007<br>TIME:  9:00 a.m.<br>COURTROOM: 2 |

I, Thomas M. Onda, hereby declare as follows:

1. I am currently employed by Levi Strauss & Co. ("LS&CO."), the plaintiff in this action, as Global Intellectual Property Counsel. I have been employed by LS&CO. since 1999. In my position as Global Intellectual Property Counsel, I am generally responsible on a worldwide basis for the management of trademark registrations and brand protection (including infringement and counterfeiting matters) of LS&CO.'s trademarks. If called as a witness in these proceedings, I could and would testify competently to the truth of all of the matters set forth in this Declaration.

2. I submit this Declaration in support of LS&CO.'s motion to disqualify the firm of Howrey LLP from representing the defendant, Abercrombie & Fitch Trading Co. ("A&F"), in this action.

3. My predecessor at LS&CO. was Katherine Basile. When Ms. Basile joined LS&CO. in 1994, her job title was Assistant General Counsel. At the time Ms. Basile left LS&CO. in April 1999, she was LS&CO.'s Associate General Counsel and Chief Intellectual Property Counsel, Americas.

4. Ms. Basile's job responsibilities at LS&CO. included oversight of all of LS&CO.'s trademark enforcement and brand protection efforts in the United States, including cease and desist efforts, opposition proceedings, and litigation relating to enforcement of the Arcuate Trademark.

5. In addition to her involvement in specific enforcement and brand protection matters, Ms. Basile was also closely involved in the formulation of Company policies and strategies for protection of the Arcuate Trademark. Ms. Basile was directly involved in the ongoing process of evaluating the scope of the Company's rights in the mark and in assessing and refining the Company's overall strategy for enforcement of those rights. Many of the policies and practices Ms. Basile developed in this arena remain in place to this day.

6. Ms. Basile's job responsibilities also included personally advising LS&CO. management concerning trademark enforcement and brand protection matters, both general and specific. A number of management personnel remain at the Company who received advice from Ms. Basile directly or indirectly concerning matters of trademark enforcement and brand protection. These personnel include LS&CO.'s current President and CEO, the President of Levi Strauss North America,

and the Senior Vice President of Strategy and Worldwide Marketing.

7.  In late January 2006, I became aware, through a watch notice, of A&F's application to register a pocket stitching design that violates LS&CO.'s rights in its Arcuate Trademark. When I reviewed the application itself, I realized that Ms. Basile was listed as the attorney of record and correspondent.

8.  I immediately called Ms. Basile to express LS&CO.'s concern over her representation of A&F in connection with the stitching design application. I told Ms. Basile that I was surprised to see she had filed the application, and said I was certain she would have objected to the design during her employment at LS&CO. Ms. Basile responded that she did not think the design was a problem, and that because she had been away from LS&CO. for over six years, she had no knowledge of LS&CO.'s current brand protection strategies. I indicated that six years could be considered a long time, but that in view of the historic nature of the Arcuate Trademark, it should come as no surprise that LS&CO.'s brand protection policies had remained relatively consistent over time.

9.  A number of the discovery requests that A&F served on LS&CO. in the opposition proceeding involving A&F's stitching design application implicate enforcement decisions that were made by Ms. Basile while she was employed at LS&CO. A&F's discovery includes requests for admissions and information concerning stitching designs that Ms. Basile decided to challenge, stitching designs she decided not to challenge, and stitching designs that are the subject of settlement agreements that she approved. These matters were handled either by Ms. Basile personally, or by outside counsel under her supervision -- the same outside counsel that currently represents LS&CO. in trademark enforcement matters, including this action.

10. In July 2007, LS&CO. obtained a pair of A&F's Ruehl brand jeans bearing the pocket stitching design that was the subject of A&F's trademark application. I reviewed the jeans and determined that use of the design infringed and diluted LS&CO.'s Arcuate Trademark. As a result, I instructed LS&CO.'s outside counsel to draft and file a complaint against A&F in this Court. I also instructed LS&CO.'s counsel to notify Howrey that LS&CO. believed Howrey had a conflict and could not represent A&F in the litigation.

11. Out of a desire to avoid this motion, I continued to make efforts to resolve the dispute

1 | between LS&CO. and A&F. On September 7, 2007, I met in person with Reid Wilson, A&F's in-
2 | house Intellectual Property Counsel, to discuss both Howrey's conflict and the possibility of settling
3 | the underlying infringement dispute. However, we were not able to reach a resolution on either issue.

4     I declare under penalty of perjury under the laws of the United States that the foregoing
5 | statements are true and correct.

6     Executed at San Francisco, California, on this 20TH day of September, 2007.

_____
Thomas M. Onda