1   Benjamin Riley (SBN 112007)
    E-mail: RileyB@howrey.com
2   **HOWREY LLP**
3   525 Market Street, Suite 3600
    San Francisco, CA 94105-2708
4   Telephone: (415) 848-4900
    Facsimile: (415) 848-4999
5
    David G. Meyer (SBN 116591)
6   E-mail: Meyerd@howrey.com
    Stephanie M. Byerly (SBN 199223)
7   E-mail: Byerlys@howrey.com
    **HOWREY LLP**
8   550 South Hope Street, Suite 1100
    Los Angeles, California 90071
9   Telephone: (213) 892-1800
    Facsimile: (213) 892-2300
10
11  Attorneys for Defendant
    Abercrombie & Fitch Trading Co.
12
                    **UNITED STATES DISTRICT COURT**
13
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14
                          **SAN FRANCISCO**
15
16  | LEVI STRAUSS & CO, | ) Case No. 07-cv-03752-JSW |
    | | ) |
    | Plaintiff, | ) **ABERCROMBIE & FITCH TRADING** |
17  | | ) **CO.'S OPPOSITION TO LEVI STRAUSS &** |
    | vs. | ) **CO.'S MOTION TO DISQUALIFY** |
18  | | ) **HOWREY LLP** |
    | ABERCROMBIE & FITCH TRADING CO., | ) |
19  | | ) Date:   October 26, 2007 |
    | Defendant. | ) Time:   9:00 am |
20  | | ) Place:  Courtroom 2 |
    | | ) Judge: Honorable Jeffrey S. White |
21
22
23
24
25
26
27
28

DM_US:20802787_3

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A.    Ms. Basile's Employment At Levi ......................................................................... 2

    B.    Ms. Basile's Lack Of Involvement In This Matter ............................................... 3

    C.    Levi's Delay In Objecting To Howrey's Representation Of A&F .......................... 5

III. ARGUMENT .................................................................................................................... 6

    A.    Disqualification Is A Drastic Remedy That Should Only Be
           Ordered Where Absolutely Necessary ................................................................. 6

    B.    Levi Has Waived Any Objection To Howrey's Representation Of
           A&F ....................................................................................................................... 7

    C.    Levi Has Failed to Show That Ms. Basile's General
           Responsibilities For Trademark Prosecution and Enforcement at
           Levi Eight Years Ago Has a Substantial Relationship to the
           Dispute Today ........................................................................................................ 9

    D.    Ms. Basile Has Not Shared Any Confidential Information From
           Her Employment At Levi And Is Subject To An Ethical Screen ........................ 13

    E.    The Prejudice That Howrey's Disqualification Would Cause A&F
           Far Outweighs Any Alleged Prejudice To Levi .................................................. 14

IV. CONCLUSION ............................................................................................................... 15

DM_US:20802787_3

1                           **TABLE OF AUTHORITIES**

2   **CASES**

3   *Adams v. Aerojet-Gen. Corp.,*
        86 Cal. App. 4th 1324 (2001) ....................................................................... 6, 13
4

  *AMF Inc. v. Sleekcraft Boats,*
5         599 F.2d 341 (9th Cir. 1979) ........................................................................ 10

6   *Brookefield Communs., Inc. v. West Coast Ent. Corp.,*
        174 F.3d 1036 (9th Cir. 1999) ...................................................................... 11
7

  *City & County of San Francisco v. Cobra Solutions, Inc.,*
8         38 Cal. 4th 839 (2006) ................................................................................... 9

9   *Employers Ins of Wausau v. Albert D. Seeno Constr. Co.,*
        692 F.Supp. 1150 (N.D. Cal. 1988) ............................................................. 9
10

11   *Evans v. Artek Sys. Corp.,*
        715 F.2d 788, 791 (2d Cir.1983) ............................................................. 6, 15

12   *Flatt v. Super. Ct.,*
        9 Cal. 4th 275 (1994) ..................................................................................... 9
13

14   *Franzoni v. Hart Schaffner & Mark,*
        726 N.E.2d 719 (Ill. App. 2000) ................................................................. 12

15   *Friskitt, Inc. v. RealNetworks, Inc.,*
        2007 U.S. Dist. Ct. LEXIS 51770 (N.D. Cal. July 5, 2007) ....................... 14
16

  *Global Van Lines, Inc. v. The Superior Court of Orange County,*
17         144 Cal. App. 3d 483 (1983) ....................................................................... 12

18   *In re Marvel,*
        251 B.R. 869 (N.D. Cal. 2000) ...................................................................... 6
19

  *Jessen v. Hartford Cas. Ins. Co.,*
20         111 Cal. App. 4th 698 (2003) ........................................................................ 9

21   *Lindy Pen Co., Inc. v. Bic Pen Corp.,* |
        725 F.2d 1240 (9th Cir. 1984) ...................................................................... 11
22

23   *M2 Software, Inc. v. Madacy Ent.,*
        421 F.3d 1073 (9th Cir. 2005) ...................................................................... 10

24   *Mahtesian v. Snow,*
        No. 03-5372, 2004 U.S. Dist. LEXIS 25656, *16-*18 (N.D. Cal. Dec. 14,
25         2004) ............................................................................................................... 9

26   *Miroglio, S.p.A. v. Morgan Fabrics Corp.,*
        340 F.Supp. 2d 510 (S.D.N.Y. 2004) .......................................................... 12
27

  *MMCA Group, Ltd. v. Hewlett-Packard Co.,*
28         2007 WL 607659, *4 (N.D. Cal. Feb. 23, 2007) .......................................... 10

OPPOSITION TO MOTION TO
DISQUALIFY HOWREY LLP
CASE NO. 07-cv-03752-JSW

DM_US:20802787_3

*Nichols Institute Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc.,*
Civ. No. 02CV0046-B, Slip. Op. at 7 (S.D. Cal. Mar. 21, 2002) ......................... 13

*Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd.,*
760 F.2d 1045 (9th Cir. 1985) ......................................................... 7, 15

*People ex rel. Dep't of Corp. v. Speedee Oil Change Sys., Inc.,*
20 Cal. 4th 1135 (1999) ......................................................... 7, 14

*Rice v. Baron,*
456 F. Supp. 1361 (S.D.N.Y. 1978) ......................................................... 7

*Schiessle v. Stephens,*
717 F.2d 417 (7th Cir.1983) ......................................................... 6

*Synergy Tech. Design, Inc. v. Terry,*
No. 06-02073, 2007 U.S. Dist. LEXIS 34463, at *18 (N.D. Cal. May 2, 2007) ......................................................... 6, 15

*Travelers Cas. and Sur. Co. of America v. Claude E. Atkins Ent., Inc.,*
No. CV-F-05-9-0852, 2006 WL 3589746, *7 (E.D. Cal. Dec. 11, 2006) ................... 14

*Trust Corp. of Mont. v. Piper Aircraft Corp.,*
701 F.2d 85 (9th Cir. 1983) ......................................................... 7, 9

*University of New Mexico v. Fordham,*
2002 Pat. App. LEXIS 19 (April 2, 2002) ......................................................... 8

*Vaughan v. Walther,*
875 S.W.2d 690 (Tex. 1994) ......................................................... 9

*William H. Raley Co. v. Super. Ct.,*
149 Cal. App. 3d 1042 (1983) ......................................................... 7

*Williams v. Bell,*
793 So. 2d 609 (Miss. 2001) ......................................................... 9

1

## **SUMMARY OF ARGUMENT**

2         Levi has moved to disqualify A&F's sole outside counsel on trademark matters since 2005

3   from defending A&F in another round of trademark litigation brought by Levi over A&F's RUEHL

4   Women's Pocket Design.  Levi now claims that Howrey partner Katy Basile's employment at Levi

5   *eight years ago* bars Howrey from continuing to represent A&F despite Levi's knowledge of and lack

6   of objection to Howrey's representation of A&F regarding this Design since January of 2006.  Levi's

7   motion cannot pass the Ninth's Circuit's "particularly strict judicial scrutiny" to ensure that

8   disqualification is necessary and not sought for tactical reasons. *See River West, Inc .v. Nickel*, 188

9   Cal. App. 3d 1297, 1311 (1987).

10        First, Levi has waived any objection by delaying *more than 18 months* since Levi's in-house

11  counsel became aware of Howrey's representation, admitting that Ms. Basile's prior employment had

12  already been a "long time" ago.  Levi's outside counsel then debated A&F's mark with Howrey over

13  more than a year, including litigation in an agency proceeding without raising any issue.  During the

14  sixteen months of Levi's silence, A&F invested time and resources in Howrey in this matter.

15        Second, it has failed to meet its burden of demonstrating a substantial relationship between Ms.

16  Basile's general responsibility for trademark enforcement at Levi eight years ago and the current

17  litigation over whether A&F's Design is confusingly similar to Levi's mark in the marketplace today.

18  This is particularly obvious when the A&F mark at issue in this case did not even exist until several

19  years after Ms. Basile had left Levi. *See City & County of San Francisco v. Cobra Solutions, Inc.*, 38

20  Cal.4th 839, 847 (2006).

21        Third, in an abundance of caution, the ethical wall Howrey erected immediately when it

22  learned that Levi had expressed a concern about its perceived conflict further militates against the

23  extreme measure of disqualification, which would greatly prejudice A&F. *See In re County of Los*

24  *Angeles*, 223 F.3d 995 (9th Cir. 2000).  Disqualification of Howrey regarding A&F's Design is

25  unwarranted, and Levi's motion should be denied.

26

27

28

DM_US:20802787_3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Levi Strauss & Co.'s ("Levi") Motion to Disqualify Howrey LLP should be denied.  Levi's in-house and outside counsel waited eighteen months to object to the purported conflict, with knowledge that Howrey was handling the prosecution of the challenged Abercrombie & Fitch Trading Co. ("A&F") trademark, through litigation against Howrey over the same mark before the Patent and Trademark Office ("PTO"), and despite ample opportunity to file a motion to disqualify.  After Howrey refused to withdraw A&F's trademark application, and continued to demonstrate its ability to defend A&F's mark against Levi, Levi only recently threatened to move to disqualify Howrey.  Now that Levi's tactical threat has failed to induce A&F to give up its mark, Levi's is not entitled to deprive A&F of its continued counsel of choice in this ongoing matter.  The law does not look with favor on motions to disqualify that are not shown to be necessary or that have been filed for tactical reasons.  Levi has waived its right to complain about the alleged conflict through its lengthy and deliberate inaction.

Moreover, Levi has no basis in the facts or the law for its claim that Howrey has a disqualifying conflict because a Howrey partner – who is not, and has never been involved in this matter -- was an in-house attorney at Levi eight years ago.  The challenged A&F trademark did not exist when Ms. Basile worked at Levi, and she therefore could have no confidential information about the current dispute.  Levi nevertheless claims that Ms. Basile has confidential knowledge about Levi's general trademark enforcement policies and strategies that are relevant to this case.  That claim does not withstand scrutiny, because any general knowledge that Ms. Basile might have acquired from 1994 to 1999 while she worked at Levi is meaningless now.  None of the decision-makers concerning Levi's Arcuate Trademark with whom she worked are still with the company, and, as one would expect in a dynamic market, publicly available information shows that Levi's enforcement strategies have changed significantly over the eight years since Ms. Basile left the company.  The only relevant enforcement issue in this lawsuit is the current status of Levi's trademark in the market, not its status years ago under different market circumstances.

DM_US:20802787_3

1  Over the eighteen months that Levi delayed in asserting this alleged conflict, A&F incurred the

2  time and expense necessary for its counsel to develop an expertise in issues concerning the challenged

3  A&F mark.  Howrey has represented A&F in all of its trademark prosecution and enforcement matters

4  worldwide since 2005.  It would be both highly prejudicial and unnecessary to deprive A&F of its

5  counsel of choice and preclude Howrey from continuing to represent A&F in this ongoing dispute.

6  Levi's motion should be denied.

7  **II.    STATEMENT OF FACTS**

8  **A.    Ms. Basile's Employment At Levi**

9  Ms. Basile worked in-house at Levi from April 1994 to the end of April 1999. *See* Declaration

10  of Katherine M. Basile ("Basile Decl.") ¶ 4.  During that time, she and a group of in-house counsel

11  handled trademark enforcement for the Levi brands worldwide.  *Id.* ¶¶ 4,6.  Ms. Basile reported to the

12  assistant General Counsel, who reported to the General Counsel.  *Id.* ¶ 5.  She was responsible for

13  trademark matters in the Americas.  *Id.* ¶ 4.

14  During Ms. Basile's tenure at Levi, she worked for two different General Counsels and two

15  assistant General Counsels.  *Id.* ¶ 5.  None of those attorneys works at Levi any longer.  *Id.*  She also

16  worked closely with two other attorneys, Sandrine Besnard-Corblet who was responsible for trademark

17  matters in Europe, and Wai Zee, who was responsible for trademark matters in Asia.  *Id.* ¶ 4.  Both still

18  work for Levi overseas in their respective regions.  *Id.*

19  On the business side, Ms. Basile worked with the management team of Pete Jacobi, Steve

20  Goldstein, and Bob Rockey in developing Levi's trademark enforcement strategy.  *Id.* ¶ 8. [1]  None of

21  these businessmen works at Levi any longer.  *Id.*  On one occasion, Ms. Basile also worked with Bob

22  Haas, the former Levi Chief Executive Officer, on a high-level policy, but she never advised him on

23  daily trademark enforcement issue.  *Id.* ¶ 9.  Mr. Haas has retired from Levi.  *Id.*

24

25

---

26  [1]   Levi's motion implies that Ms. Basile changed the description of her prior employment at Levi in her Howrey web biography to cover up the scope of her former job responsibilities.  This is untrue.  Howrey's internal marketing team

27  changed the format of Howrey's web biographies in August 2007. Basile Decl. ¶ 39.  The new policy required deletion of the names of firms or corporations where attorneys worked prior to joining Howrey.  Thus, the change in Ms. Basile's description of her former employment on the Howrey website was completely unrelated to this motion or to this lawsuit.

28

DM_US:20802787_3

1    Ms. Basile never worked with Levi's current CEO John Anderson, who was stationed overseas

2    when Ms. Basile was at Levi. *Id.* ¶ 10. Mr. Anderson was not part of the trademark enforcement team.

3    *Id.* Ms. Basile does not remember ever discussing the Arcuate Trademark with him. *Id.*

4    Robert Hanson, current President of Levi North America, was with the Dockers brand during

5    the time Ms. Basile was at Levi. *Id.* ¶ 11. Although Ms. Basile communicated with Mr. Hanson

6    regularly regarding the Dockers brand, they never worked together on the Levi Arcuate Trademark.

7    *Id.* Tom Onda never worked in-house at Levi with Ms. Basile. *Id.* ¶ 13. He was an associate attorney

8    whose firm acted as outside counsel for Levi on occasion, but he did not join Levi until after Ms.

9    Basile had left. *Id.* [2]

10    In April 1999, Ms. Basile left Levi to work for Intel Corporation. *Id.* ¶ 14. In June 2000, she

11    joined Howrey in its Palo Alto office. *Id.* While at Howrey, Ms. Basile remained in touch with Mr.

12    Onda, but has never discussed Levi's trademark enforcement practices with him since she left Levi.

13    *Id.* ¶ 15. Ms. Basile also formerly worked with Levi's outside counsel at Townsend and Townsend and

14    Crew, Gia Cincone and Greg Gilchrest, when she was a young associate at Heller Ehrman, LLP. *Id.* ¶¶

15    3, 15. Like Mr. Onda, Levi's outside counsel knew Ms. Basile was at Howrey from the beginning of

16    her employment at the firm. *Id.* ¶ 14. Since Ms. Basile left Levi, she has not discussed Levi's

17    trademark enforcement strategy with anyone. *Id.* ¶¶ 16, 33.

18    A&F's RUEHL Women's Pocket Design was not on the market in 1999 when Ms. Basile was

19    at Levi. See Declaration of Caroline Smith ("Smith Decl.") ¶ 18. *Id.* Thus, Ms. Basile never

20    compared the RUEHL Women's Pocket Design to Levi's Arcuate Trademark or discussed any such

21    evaluation with Levi personnel, or anyone else. Basile Decl. ¶ 24.

22    **B.    Ms. Basile's Lack Of Involvement In This Matter**

23    Ms. Basile did not participate in Howrey's prosecution of the RUEHL Women's Pocket Design

24    trademark application on behalf of A&F. *See* Declaration of Michelle Renne, ¶¶ 3-16; Basile Decl. ¶¶

25    18-20; Smith Decl. 4. Her name appeared on the application only because of a standing policy within

26

27    _____

[2] Concurrently herewith, A&F is filing a separate objection to Mr. Onda's declaration based upon his lack of personal
knowledge.

28

1   Howrey to include the names of its trademark lawyers on such applications.  Renne Decl. ¶ 5.

2        On December 5, 2005, A&F filed Trademark Application, Serial Number 78766368, for its

3   Women's Pocket Design.  *Id.* pp. 8-9.  Reid M. Wilson, Senior Director, Intellectual Property Counsel,

4   for A&F signed the application.  *Id.*  Ms. Basile is listed as A&F's counsel with Susan Kayser,

5   Caroline Smith, Allison Olmsted, Mike Yaghmai, Jessica Bradley, and others of the firm.  *Id.* ¶ 5, Ex.

6   A.  Ms. Basile did not prepare the application, nor did she sign it or file it with the PTO.  *Id.*  Basile

7   Decl. ¶ 18.  Ms. Basile is listed as the correspondent, which means the PTO sends all correspondence

8   addressed to her at the address listed on the application, Howrey's Washington D.C. office address.[3]

9   Renne Decl. ¶ 12; Basile ¶¶ 18-19.  Ms. Basile works in Howrey's East Palo Alto office, not in

10  Washington, D.C.  Once any correspondence regarding A&F's Women's Pocket Design trademark

11  application arrived at Howrey's D.C. office, administration forwarded the mail to Howrey's main

12  docketing office in Virginia.  The docketing office distributed the mail to the active attorneys on the

13  team.  *Id.*  Ms. Basile never was an action person on the A&F team regarding this mark.  Renne Decl.

14  ¶¶ 11, 13; Smith Decl. ¶ 19; Basile Decl. ¶¶ 18-19.  Accordingly, Ms. Basile never received any

15  correspondence regarding the trademark application.  Basile Decl. ¶¶ 20, 27, 33.

16       Levi acknowledged its awareness of A&F's application and the existence of a purported

17  conflict shortly after the application was filed, on or around January 23, 2006.  Mr. Onda called Ms.

18  Basile and told her that he had pulled the application and was surprised to see Ms. Basile's name on it.

19  *Id.*  He informed Ms. Basile that Levi had a problem with A&F's Pocket Design.  *Id.*  He then

20  expressed his concern about speaking with Ms. Basile in light of Ms. Basile's prior employment at

21  Levi.  *Id.*  Ms. Basile reminded him that it had been almost seven years since she had worked at Levi

22  and that she had no idea about Levi's enforcement strategy, so she did not see a problem with her name

23  being on the application.  *Id.*  Mr. Onda agreed it had been a long time.  *Id.*

24

25

26  [3] Contrary to Levi's contentions, as corresponding attorney, Ms. Basile did not make any representations to the PTO
27  regarding her involvement in the preparation of the trademark application.  The attorney who signed it, Mr. Wilson, and the
    individual who signed the application certified the application's contents, not the correspondent.  *See* 37 C.F.R. §10.18; *see
    also* 37 C.F.R. §2.18; TMEP 603.01.
28

DM_US:20802787_3

1   Ms. Basile informed the A&F Howrey team and A&F inside counsel about Mr. Onda's call.

2   Basile Decl. ¶ 26. The Howrey partner heading up the A&F representation immediately advised the

3   team not to communicate with Ms. Basile about the representation. Froemming Decl. ¶¶ 5-6; Smith

4   Decl. ¶ 3; Renne Decl. ¶ 13. Ms. Basile was walled off from any team teleconferences or meetings

5   regarding the trademark application and infringement action. Renne Decl. ¶¶ 12-15. She was never on

6   any electronic or regular mail distribution list. *Id.* Other than to communicate regarding Mr. Onda's

7   telephone call, Ms. Basile had no other communications with the Howrey team assisting A&F with its

8   prosecution or enforcement efforts relating to the RUEHL Women's Pocket Design. *Id.* Smith Decl.

9   ¶¶ 3, 4, 19; Basile Decl. ¶¶ 20, 30, 34.

10   **C.     Levi's Delay In Objecting To Howrey's Representation Of A&F**

11   Ms. Basile never spoke to Mr. Onda again regarding the alleged conflict, and she assumed their

12   January 2006 conversation marked the end of any concern by Levi with Howrey's involvement. Basile

13   Decl. ¶ 22. In March 2006, Levi outside counsel Greg Gilchrist contacted John Froemming, lead

14   counsel at Howrey for the A&F team, to discuss the merits of the RUEHL Women's Pocket Design

15   trademark application. Froemming Decl. ¶¶ 8-12. Mr. Gilchrest never raised any concern or objection

16   about Howrey's involvement in the case with Mr. Froemming, although he knew Ms. Basile worked at

17   Howrey and knew she formerly served as in-house counsel at Levi. *Id.* Thus, the Howrey attorneys

18   responsible for handling the A&F trademark matter also believed Ms. Basile's conversation with Mr.

19   Onda marked the end of the purported issue. *Id.*

20   In an abundance of caution, however, on March 24, 2006, Howrey formally withdrew Ms.

21   Basile's name from the TM application and put Caroline Smith's name in its place as correspondent.

22   Renne Decl. ¶ 16. This did not change the internal distribution policy, because the distribution list

23   never included Ms. Basile. This also did not change the wall that had been put in place by the A&F

24   team separating Ms. Basile from the matter. On February 22, 2007, Howrey also circulated a firm-

25   wide memorandum regarding the ethical wall between Ms. Basile in East Palo Alto office and the

26   A&F team handling this matter, who are all located in Howrey's Washington D.C. and Houston

27   offices. Renne Decl. ¶ 14, Ex. B.

28

1    Messrs. Gilchrist and Froemming were unable to settle the dispute after Levi's counsel's March

2    2006 call. Froemming Decl. ¶¶ 8-11. On January 16, 2007, the Women's Pocket Design application

3    published for opposition. Smith Decl. ¶ 6. On February 19, 2007, Levi filed an opposition to the

4    application, but did not object to Howrey's representation of A&F. *Id.* Thereafter, the parties engaged

5    in extensive discovery without objection from Levi. *Id.* ¶¶ 8-17. A&F responded to Levi's discovery

6    requests and provided Levi with a draft protective order. *Id.*

7    Although A&F responded to Levi's discovery requests, Levi subsequently refused to respond

8    to A&F's requests or to sign the protective order, instead seeking an extension of time to respond to

9    A&F's discovery requests. *Id.* After Howrey granted counsel for Levi a two-week extension to

10   respond to the discovery, Levi filed the instant suit, accompanied by a letter objecting to Howrey's

11   representation of A&F. This July 20, 2007 letter was Levi's first formal objection to Howrey's

12   representation since becoming aware of Howrey's involvement in January 2006.

13   **III.    ARGUMENT**

14   **A.    Disqualification Is A Drastic Remedy That Should Only Be Ordered Where Absolutely Necessary**

15   Courts refuse to disqualify counsel absent compelling circumstances requiring disqualification.

16   "A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose

17   except in circumstances of absolute necessity." *In re Marvel,* 251 B.R. 869, 871 (Bankr. N.D. Cal.

18   2000), citing *Schiessle v. Stephens,* 717 F.2d 417 (7th Cir.1983). "Such motions are often tactically

19   motivated and they tend to derail the efficient progress of litigation." *Synergy Tech. Design, Inc. v.*

20   *Terry,* No. 06-02073, 2007 U.S. Dist. LEXIS 34463, at *18 (N.D. Cal. May 2, 2007) *citing Evans v.*

21   *Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983) (observing that courts require particularly high

22   standard of proof for disqualification based upon former representation). Courts "have recognized that

23   disqualification usually imposes a substantial hardship on the attorney's innocent client, who has been

24   deprived of chosen counsel." *Adams v. Aerojet-Gen. Corp.,* 86 Cal. App. 4th 1324, 1339 (2001).

25   "Such motions can be misused to harass opposing counsel, to delay the litigation, or to intimidate an

26   adversary into accepting settlement on terms that would not otherwise be acceptable. In short, *it is*

27

28

DM_US:20802787_3

1   *widely understood by judges that 'attorneys now commonly use disqualification motions for purely*

2   *strategic purposes . . . .'" Id.* at 1339-40 (citations omitted and emphasis added).

3        The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof.

4   *Id.* Because of this potential for abuse, disqualification motions should be subjected to "particularly

5   strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd.,* 760 F.2d 1045, 1049 (9th

6   Cir. 1985); *citing Rice v. Baron,* 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978). *See also People ex rel.*

7   *Dep't of Corp. v. Speedee Oil Change Sys., Inc.,* 20 Cal. 4th 1135, 1144 (1999). Further, the cost and

8   inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is

9   significant. *Optyl Eyewear Fashion International Corp.,* 760 F.2d at 1049. The determination of

10   whether Levi has met the high burden for disqualification or filed the motion for tactical purposes only

11   is left to the sound discretion of the court. *See William H. Raley Co. v. Super. Ct.,* 149 Cal. App. 3d

12   1042, 1049 (1983) (disapproving automatic or mechanical application of the vicarious disqualification

13   rule and advocating, instead, an examination of each case in light of its own facts).

14       **B.**     **Levi Has Waived Any Objection To Howrey's Representation Of A&F**

15        Levi knew at least by January 23, 2006 that Howrey represented A&F with respect to the A&F

16   trademark in question. However, despite ample opportunity to seek disqualification in proceedings

17   before the PTO, Levi waited until it filed this action – eighteen months after learning of Howrey's

18   involvement – before it sent a letter objecting to Howrey's representation of A&F. Levi's inaction for

19   a year and a half in the face of what it now claims is a disqualifying conflict shows the tactical basis

20   for this motion. Levi's failure to seek disqualification during that lengthy delay also means that it has

21   waived the right to seek disqualification now.

22        It is well-settled that a former client must object to any perceived conflict of interest at the first

23   opportunity it becomes aware of the conflict, or the client waives its right to do so. *Trust Corp. of*

24   *Mon. v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983) ("a former client who is entitled to

25   object to an attorney representing an opposing party on the ground of conflict of interest but who

26   knowingly refrains from asserting it promptly is deemed to have waived that right"). Contrary to

27   Levi's contention, a party's diligence in asserting its rights with respect to an alleged conflict is

28   measured from the time the party becomes aware of the alleged conflict, not from the time the client

1  makes the strategic decision that a dispute has become sufficiently "adverse" to warrant some action.

2  *Id.*; *River West, Inc.v. Nickel*, 188 Cal. App. 3d 1297, 1311 (1987).

3          The fact that a dispute existed between Levi and A&F concerning the trademark was

4  abundantly clear at least by March 2006, when A&F refused to withdraw its trademark application

5  upon Levi's demand. Levi did not object then; it did not object when it opposed A&F's application in

6  February, 2007; and it did not object when the dispute proceeded into discovery. Levi also did not

7  seek to disqualify Howrey in the PTO, although nothing precluded it from doing so. *See University of*

8  *New Mexico v. Fordham*, 2002 Pat. App. LEXIS 19 (April 2, 2002)(Patent and Trademark Office has

9  the authority to hear motions to disqualify and to exclude practitioner in particular case at any time.);

10  *see* 37 C.F.R. § 1.613(c). If Ms. Basile's generalized work for Levi during the 1990's was truly

11  substantially related to whether A&F's RUEHL mark is confusing similar with Levi's Arcuate mark

12  today, Levi should have been expected to raise an objection immediately, and certainly not wait until

13  more than six months after filing its opposition and discovery against Howrey in the PTO case.

14  Moreover, Levi, in its recent correspondence of August 16, 2007, exposed its lack of any good excuse

15  for its delay, and made no mention of the discovery requests. Froemming Decl. ¶ 13, Ex. F. Indeed,

16  Levi's August 16 letter further exposed the tactical nature of its conflict argument by asserting it as a

17  basis for its proposal that the parties "discuss the underlying [trademark] dispute directly with one

18  another to see if they can reach a resolution of the infringement issues" in a settlement meeting. *Id.*

19  That Levi's tactical maneuver has been unsuccessful in forcing a settlement, affords no basis for

20  indulging Levi's disqualification argument at this late date.

21          To avoid waiver, Levi must demonstrate "(1) how long it has known of the potential conflict;

22  (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether

23  anyone prevented the moving party from making the motion earlier, and if so, under what

24  circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile

25  and why." *River West, Inc.*, 188 Cal. App. 3d at 1309. It is undisputed that Levi knew of the conflict

26  since January 2006; that it was represented by counsel who also was aware of the potential conflict;

27  that nothing prevented it from filing a motion to disqualify; and that such a motion would have been

28  proper in the PTO. Accordingly, Levi has failed to meet its burden. Abundant authority supports the

1  conclusion that Levi's unreasonable delay of more than eighteen months in bringing its Motion to

2  Disqualify constitutes a waiver of any conflict.[4]

3      Thus, Levi's unreasonable delay in bringing this motion is itself sufficient reason to deny

4  disqualification.

5  **C.    Levi Has Failed to Show That Ms. Basile's General Responsibilities For**
   **Trademark Prosecution and Enforcement at Levi Eight Years Ago Has a**

6  **Substantial Relationship to the Dispute Today**

7      Disqualification is also unwarranted, because there is no actual conflict present here, much less

8  a conflict that warrants disqualification

9      An attorney is not forever barred from handling any matter that is adverse to a former client.

10 Rather, under the California Rules of Professional Conduct, an attorney is free to accept such

11 representation unless the former client can show that the current matter is "substantially related" to the

12 prior engagement.

13     Proof of a "substantial relationship" requires showing that the subject matter of the prior and

14 current representations are linked in some rational manner. *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283

15 (1994); *City & County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006).  Courts

16 consider the (1) similarities between the two factual situations, (2) similarities between the legal

17 questions posed; and (3) the nature and extent of the attorney's involvement in the two cases. *Jessen v.*

18 *Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 709 (2003).

19     Levi has not identified with any particularity how matters on which Ms. Basile worked at Levi

20 are substantially related to this matter.  This omission is not surprising, as the issues involved in the

21 current dispute – *i.e.*, whether there is a likelihood of confusion between the Levi Arcuate Trademark

22

23

24

25 ───────────────
   [4]    *See Employers Ins of Wausau v. Albert D. Seeno Constr. Co.*, 692 F.Supp. 1150, 1165 (N.D. Cal. 1988)(sixteen-month
   delay unreasonable); *Mahtesian v. Snow*, No. 03-5372, 2004 U.S. Dist. LEXIS 25656, *16-*18 (N.D. Cal. Dec. 14, 2004)

26 (two-year delay constituted waiver); *Trust Corp. of Mon.*, 701 F.2d at 88 (two-year, six-month delay unreasonable).  *See
   also Williams v. Bell*, 793 So. 2d 609 (Miss. 2001) (six-month delay, *for no apparent good* reason, waived right to seek

27 disqualification); *Vaughan v. Walther*, 875 S.W.2d 690, 691 (Tex. 1994) (delay of six and one-half months waived right to
   request disqualification.)

28

1    and the A&F' RUEHL Women's Pocket Design – did not arise until A&F had filed for the particular

2    trademark at issue here, long *after* Ms. Basile had left Levi.

3        In the absence of any substantial relationship between the issues in this case and some specific

4    prior matter, Levi relies upon Ms. Basile's involvement in the "overall strategy for enforcement of the

5    Arcuate Trademark" and in "specific strategic decisions" in unidentified matters regarding "particular

6    infringers and particular stitching designs." Motion at 13. Such vague allusions to Ms. Basile's

7    general job responsibilities while at Levi do not show a substantial relationship between her prior

8    representation of Levi and the subject matter of this lawsuit.

9        The mere fact that Ms. Basile had responsibility for enforcing the Arcuate mark at Levi eight

10   years ago does not show a substantial relationship between the issues in this case and Ms. Basile's

11   prior employment. Indeed, if Levi's argument were credited, every attorney who had any

12   responsibility for enforcement of the Levi Arcuate mark since its origin in 1873 is forever precluded

13   from handling any matter adverse to Levi involving that mark. The law does not impose such a

14   draconian rule. *See e.g. MMCA Group, Ltd. v. Hewlett-Packard Co.*, 2007 WL 607659, *4 (N.D. Cal.

15   Feb. 23, 2007) (indicating that a "changes in corporate structure" or "turn over in management"

16   coupled with fact that former in-house counsel did not maintain any files from prior representation

17   would defeat disqualification).

18       In any event, whatever relevance Ms. Basile's general knowledge of Levi's trademark

19   enforcement strategies might once have had is no longer pertinent. The current legal issue in this case

20   is whether the RUEHL mark is likely to be confused with Levi's Arcuate Trademark in the market

21   today, not eight years ago.

22       The primary legal issue to be decided in this case is whether confusion between Levi and

23   A&F's marks is in fact likely. In the Ninth Circuit, courts evaluate the following factors to make such

24   a determination: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4)

25   evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care

26   likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood

27   of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.

28   1979); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1080 (9th Cir. 2005). The imprecise and

DM_US:20802787_3

1 subjective nature of the likelihood of confusion test, including the myriad factors a court must consider

2 in applying it, have led to the rule that each trademark case must be considered on its own facts. *See*

3 *Brookefield Communs., Inc. v. West Coast Ent. Corp.,* 174 F.3d 1036, 1054 (9th Cir. 1999). In fact,

4 "[p]rior trademark decisions, involving different marks, different products, and different patterns of

5 product distribution, have little if any value as precedent to the essentially factual question of whether

6 confusion is likely in another case." *Id.* Anne Gilson LaLonde, 2 Gilson on Trademarks § 5.02

7 (2007).

8     Thus, what is relevant in Levi's trademark infringement suit in evaluating factor (1), the

9 strength of the Arcuate Trademark, is today's marketplace, not the marketplace of eight years ago.

10 Levi's current enforcement efforts might bear on that question, but not its enforcement decisions eight

11 years ago against different marks in a different market setting. *See Lindy Pen Co., Inc. v. Bic Pen*

12 *Corp.,* 725 F.2d 1240, 1245 (9th Cir. 1984) ("The two marks viewed in isolation are indeed identical,

13 but their similarity must be considered in light of the way the marks are encountered in the market

14 place. . . ."). The strategic decisions in which Ms. Basile was involved from 1994 to 1999 at Levi

15 therefore have no bearing on the present dispute.

16     The facts show that Ms. Basile could not have any relevant confidential knowledge of *current*

17 Levi enforcement strategies or decisions. Levi's Arcuate brand enforcement strategies have changed

18 over the last eight years, and none of the individuals who set policy in 1999 remain at Levi. Levi's

19 unsupported and conclusory allegation that Levi's policies have remained unchanged cannot be

20 credited. Levi relies on Mr. Onda's claim that policies Ms. Basile set during her tenure remain in

21 effect today. However, Mr. Onda was not at Levi when Ms. Basile was employed there, and he

22 therefore is not competent to testify on the subject. Thus, Mr. Onda's speculation should not be given

23 any weight in light of his lack of personal knowledge.

24     Moreover, public records belie Mr. Onda's claim. On January 29, 2007, the New York Times

25 published an article, "Levi Turns to Suing Its Rivals," disclosing a shift in Levi's enforcement strategy

26 beginning just one year after Ms. Basile left Levi. Basile Decl., ¶ 17, Ex. A. The article boasts that

27 "Levi's is becoming a leader in a *new* arena: Lawsuits," noting more than 100 lawsuits since 2000 and

28 listing Levi as one of the top ten most litigious corporations in the United States. *Id.* (emphasis added.)

1  The news article also reveals that since 2002, nearly half of Levi's workforce, 7,600 employees, was

2  laid off and half its stores and factories were closed. *Id.*   In fact, none of the Levi brand enforcement

3  team members with whom Ms. Basile worked at Levi, business or legal, remains at Levi.

4      These facts distinguish this case from cases that Levi cites in support of its argument that Ms.

5  Basile's employment at Levi should disqualify the Howrey firm.  In *Franzoni v. Hart Schaffner &*

6  *Mark*, 726 N.E.2d 719 (Ill. App. 2000), a non-binding opinion, former in-house counsel was

7  disqualified from representing plaintiff in a retaliatory discharge action against his former client where

8  the evidence showed that matters he worked on for the former client were at issue in the present

9  litigation.  Unlike Ms. Basile, the attorney in *Franzoni* acquired specific confidential knowledge

10  concerning the plaintiff's employment while he was in-house with his former client.  In *Global Van*

11  *Lines, Inc. v. Sup. Court*, 144 Cal. App. 3d 483 (1983), the former general counsel for defendant was

12  disqualified from representing plaintiff in a breach of agency contract claim against his former client

13  where the present dispute actually arose when he was general counsel and he was privy to interoffice

14  memoranda concerning the plaintiff.[5]

15      In light of the relevant legal principles and the passage of time, Levi's reliance on A&F's

16  discovery requests in the PTO proceedings to show a substantial relationship with Ms. Basile's prior

17  employment at Levi is misplaced and revisionist.[6]  As discussed above, what matters in the instant suit

18  is whether A&F's RUEHL mark poses a likelihood of confusion in *today's* marketplace, not the

19  marketplace that existed from 1994 to 1999.[7]

20

21  [5] In *Miroglio, S.p.A. v. Morgan Fabrics Corp.*, 340 F.Supp. 2d 510 (S.D.N.Y. 2004), also cited by Levi, the attorney
22  formerly represented defendant fabric designer in three copyright infringement actions, obtaining inside knowledge of how
   the designer created his designs.  *Id.* at 513.  There, in contract to this case, the degree of originality before a fabric is
23  copyrighted and the extent of copying a fabric design that constitutes infringement were issues in the prior and current
   matters.  *Id.* at 514.

24  [6]  Any implication that Howrey attorneys prepared these discovery requests with the aid of any confidential information
   from Ms. Basile is dead wrong and should be rejected.  Ms. Basile had no involvement in the preparation of those
25  interrogatories, and did not share any confidential information with the Howrey lawyers responsible for this matter.  Those
   lawyers prepared the interrogatories using publicly available sources.

26  [7] Therefore, although the discovery requests contain no express date restriction, they are undoubtedly objectionable with
   respect to information about trademarks or applications that Levi happened to oppose between 1994 through 1999.  In fact,
27  had Levi responded to the discovery requests instead of filing this lawsuit and staying the PTO proceedings, there is no
   doubt Levi would have objected and the requests would have been narrowed in the ordinary course of discovery.

28

1   Levi has not shown any substantial relationship between the matters at issue in this lawsuit and

2   Ms. Basile's general knowledge of enforcement strategies or unrelated matters at Levi eight years ago.

3   It has therefore failed to meet its burden to prove that an actual conflict exists, and its motion should be

4   denied.

5       **D.    Ms. Basile Has Not Shared Any Confidential Information From Her**

6           **Employment At Levi And Is Subject To An Ethical Screen**

7       As discussed above, Ms. Basile has not been involved in the trademark prosecution of the

8   RUEHL Women's Pocket Design , and has never seen any of the documents relating to that matter.

9   Nor did she have any substantive communications regarding the PTO proceedings or Levi's trademark

10  infringement lawsuit.

11      Moreover, since Levi's initial contact with Ms. Basile the week of January 23, 2006, she has

12  been walled off from the Howrey attorneys responsible for this matter.

13      In circumstances like these, where the arguments supporting the existence of a substantial

14  relation are weak at best, the Ninth Circuit has stated a willingness to evaluate whether an ethical

15  screen may prevent vicarious disqualification of the entire firm.  "[T]he California Supreme Court has

16  signaled, and the Ninth Circuit has held, that in certain cases where the case for disqualification is not

17  'compelling' – that is, where the threat to the duties pertaining to the former attorney-client

18  relationship is but a weak one – a firm may rebut the presumption of shared confidences with evidence

19  that it erected an "ethical screen" between that attorney and the rest of the firm." *See Nichols Institute*

20  *Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc.*, Civ. No. 02CV0046-B, Slip. Op. at 7 (S.D. Cal.

21  Mar. 21, 2002), citing *In re County of Los Angeles*, 223 F.3d 990, 994-95 (9th Cir. 2000)  Lower

22  California courts have also recognized that, an ethical screen may prevent vicarious disqualification of

23  an entire firm in certain situations. *Id.*; *Adams*, 86 Cal. App. 4th at 1333 ("…where the attorney is

24  disqualified from representation due to an ethical conflict, the disqualification extends the entire firm []

25  at least where an effective ethical screen has not been established.").  Moreover, in many cases, while

26  recognizing that the Ninth Circuit has not formally adopted the ethical screen rule in successive

27  representation cases, judges still consider whether the law firm promptly erected an ethical wall upon

28  learning of the purported conflict. *See In re County of Los Angeles*, 223 F.3d 990, 994-95 (9th Cir.

1  2000); *People ex rel. Dept. of Corporations*, 20 Cal. 4th 1135, 1144; *Friskitt, Inc. v. RealNetworks,*
2  *Inc.*, 2007 U.S. Dist. Ct. LEXIS 51770 (N.D. Cal. July 5, 2007).

3        This case presents compelling circumstances to refrain from imputing any conflict here to the
4  entire firm.  The confidential knowledge that Ms. Basile is alleged to have is extremely dated and
5  general in nature.  There are no facts to support any inference that she has shared any of that alleged
6  confidential knowledge within Howrey.  Moreover, in addition to the separation imposed by an ethical
7  wall, Ms. Basile's office location in East Palo Alto provides geographic separation from the Howrey
8  attorneys responsible for this matter in Washington, D.C.  Under these facts, disqualification is
9  unnecessary even if the Court were to find that Ms. Basile is herself precluded from participating in
10  this matter against Levi.

11      **E.**    **The Prejudice That Howrey's Disqualification Would Cause A&F Far**
12                **Outweighs Any Alleged Prejudice To Levi**

13        The significant prejudice that A&F would experience if Howrey were to be disqualified also
14  weighs heavily against a disqualification order.  The decision whether to order disqualification
15  properly includes consideration of a client's right to "choose counsel, an attorney's interest in
16  representing a client, the financial burden on a client to replace disqualified counsel, and the
17  possibility that tactical abuse underlies a disqualification motion." *People ex. rel. Dep't. of Corps*, 20
18  Cal. 4th at 1145.  Each of these factors weighs heavily against disqualification here.

19        Since 2005, Howrey has represented A&F in all of its trademark prosecution and enforcement
20  matters worldwide.  Such long-standing representation is a significant factor underlying a client's
21  choice of counsel. *See id; Travelers Cas. and Sur. Co. of America v. Claude E. Atkins Ent., Inc., No.*
22  *CV-F-05-9-0852,* 2006 WL 3589746, *7 (E.D. Cal. Dec. 11, 2006)(disqualification motion denied
23  where former counsel was aware of the law firm's representation of its current client and such
24  relationship had been long-standing).

25        Howrey also is the only firm that has worked on the A&F women's pocket stitch design from
26  its inception, including the prosecution of the application at the PTO, and defending Levi's opposition
27  against the mark. *See* Declaration of Reid M. Wilson ¶¶ 3-6.  While Levi delayed for eighteen months
28  in asserting its conflict claim, Howrey developed significant knowledge and work product relating to

1 the A&F mark at issue. *Id.* ¶ 5. Requiring A&F to hire another firm almost two years into its

2 prosecution of the mark would impose a significant and unnecessary burden on A&F. *Id.* ¶ 7. *See*

3 *Evans,* 715 F.2d at 791; *Optyl Eyewear,* 760 F.2d at 1050 (noting the cost and inconvenience to clients

4 and the judicial system from misuse of the rules for tactical purposes is significant); *Synergy Tech &*

5 *Design Inc.,* 2007 U.S. Dist. LEXIS 34463, at *18–*19.

6        Finally, Levi's lengthy and deliberate delay in asserting a conflict until filing this lawsuit shows

7 the strategic motivation for this motion.   If Levi had been concerned about actual prejudice from the

8 purported conflict, it would have promptly taken steps to seek Howrey's disqualification in the PTO.

9 Its decision to wait until a follow-on round of federal litigation to the PTO litigation over the same

10 RUEHL mark shows that it perceives a tactical advantage in Howrey's disqualification as trial counsel.

11 Strategic interests are not a sufficient ground for the drastic remedy of disqualification, and Levi's

12 motion should therefore be denied.

13 **IV.   CONCLUSION**

14        For all the foregoing reasons, A&F respectfully requests that the Court deny Levi's motion to

15 disqualify.

16 Dated: October 5, 2007                HOWREY LLP

17                              DAVID M. MEYER
                             STEPHANIE M. BYERLY

18

19

20                              By:_____ /s/ Stephanie M. Byerly_____

21                                   Stephanie M. Byerly
                             Attorneys for Defendant Abercrombie & Fitch
                             Trading Co.

22

23

24        The electronic filer hereby attests that the individual whose name appears above has signed this

25 document. *See* General Order 45, Section X.

26

27

28

DM_US:20802787_3