# ATTACHMENT 1

1

2    02 MAR 21 AM 9:07

3    CLERK, U.S. DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA

4

5                                                            DEPUTY

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   NICHOLS INSTITUTE                    CIV. NO. 02CV0046-B (LAB)
     DIAGNOSTICS, INC., a California
12   Corporation,                         ORDER DENYING MOTION
                                          FOR DISQUALIFICATION
13                           Plaintiff,   [Docket # 22]

14       vs.

15   SCANTIBODIES CLINICAL
     LABORATORY, INC., a California
16   Corporation; SCANTIBODIES
     LABORATORY, INC., a California
17   Corporation; and DOES 1 through 10,

18                          Defendants.

19   I.   INTRODUCTION

20        Before the Court is a Motion to Disqualify Plaintiff's Counsel brought by Defendants

21   Scantibodies Clinical Laboratory, Inc. and Scantibodies Laboratory, Inc. ("Scantibodies")

22   and an Opposition to Defendants' Request to Disqualify Plaintiff's Counsel brought by the

23   law firm of Latham & Watkins on behalf of counsel for Plaintiff. As provided by this

24   Court's Minute Order dated February 25, 2002, the Motion and Opposition were filed

25   simultaneously on Friday, March 1, 2002. The Court has reviewed the briefs and supporting

26

27

28



1  confidential affidavits *in camera*.[1]  Having considered the parties' positions as set forth in

2  their moving and opposing papers, and for the reasons stated below, the Court hereby

3  DENIES Scantibodies' Motion to Disqualify Plaintiff's Counsel.

4  **II.    FACTUAL BACKGROUND[2]**

5      Nichols Institute Diagnostics, Inc. ("Nichols") is represented in this action by Douglas

6  Olson, a partner of Brobeck, Phleger & Harrison ("Brobeck") who practices in the

7  Intellectual Property practice group of Brobeck's San Diego office, and by other associates

8  of Brobeck's San Diego office.  Nichols is a subsidiary of Quest Diagnostics, Inc. ("Quest").

9  Scantibodies' Motion to Disqualify is based on a meeting between Bradford Duft, another

10  Brobeck partner and Office Leader of Brobeck's San Diego Intellectual Property Practice

11  Group, and three Scantibodies executives, which took place just weeks before Nichols filed

12  the instant patent infringement action against Scantibodies.

13      On November 27, 2001, Tom Cantor, president of Scantibodies, telephoned Mr. Duft

14  about scheduling a meeting to interview Brobeck as potential counsel for Scantibodies.

15  There is a dispute as to the intended scope of Brobeck's representation.  Mr. Duft claims

16  Scantibodies sought only patent prosecution counsel; Mr. Cantor claims Scantibodies was

17  looking for both prosecution and patent litigation counsel.  For the purpose of deciding this

18  Motion, the Court assumes Scantibodies sought both patent prosecution and patent litigation

19  counsel, and advised Mr. Duft accordingly.  Mr. Duft agreed to meet with Mr. Cantor but

20  requested that Mr. Cantor first send him a list of Scantibodies' competitors and any potential

21  adversaries so he could do a "conflicts check" through Brobeck's computerized conflict

22  system.

23      After this initial conversation, at around 1 p.m. that afternoon, Mr. Cantor sent Mr.

24  Duft an e-mail introducing Scantibodies' business and naming "Quest labs" as one of its

25

26  ――――――――――――――――
    [1]    The Court previously determined that it was proper to decide this Motion on the basis of
27  affidavits. See 1 Witkin, California Procedure § 131(b) (4th ed. 1996), citing Grove v. Grove Valve &
    Regulator Co., 213 Cal. App. 2d 646, 654 (1963) and Big Bear Mun. Water Dist. v. Superior Court, 269 Cal.
28  App. 2d 919, 927 (1969).

    [2]    The facts set forth in this section are undisputed unless noted otherwise.

1  competitors in the United States and "Nichols Inst. Diag." as one of its foreign rivals.

2       After the e-mail was sent, Mr. Cantor and Mr. Duft had another phone conversation.

3  The parties dispute what was said during this exchange. According to Mr. Duft, he told Mr.

4  Cantor that he "believed that Brobeck was currently involved in a patent litigation for a

5  company called 'Quest'" and that it would not be possible to complete a "conflicts check" to

6  verify Brobeck's representation of Quest in time to meet with representatives of Scantibodies

7  that day. Decl. Duft ¶¶ 10, 11. In fact, Mr. Olson, Mr. Duft's partner in Brobeck's San

8  Diego office, had already been hired earlier in 2001 to represent Nichols (Quest's subsidiary)

9  in this litigation. Mr. Duft claims in his supporting affidavit that he was aware that Mr.

10 Olson had "begun to represent a company with the name of 'Quest'" but that he "knew

11 nothing about the client and nothing about the subject matter of Mr. Olson's representation

12 other than it related to a patent suit." Id. ¶ 5.

13      Mr. Cantor claims that Mr. Duft never told him Brobeck may have been representing

14 Quest, and that he had called Mr. Duft before meeting with him "to ensure that he was not

15 working on behalf of Nichols or Quest." Cantor Decl. ¶ 3.  For the purpose of deciding this

16 Motion, the Court assumes Mr. Cantor's version of the events to be correct, and that Mr.

17 Duft did not tell Mr. Cantor during the second phone call that there was a possible conflict

18 with Quest.

19      Mr. Duft claims that Mr. Cantor urged that they meet that day in spite of Mr. Duft's

20 objection that a conflicts check could not be completed in time. Mr. Duft acceded to Mr.

21 Cantor's entreaties and scheduled a meeting for that afternoon.

22      At around 2:00 or 3:00 p.m. on November 27th, Mr. Cantor, along with John Van

23 Duzer and Allen Garrett, Scantibodies' Chief Operations Officer and Chief Financial Officer,

24 respectively, met with Mr. Duft at Brobeck's San Diego office for about an hour and a

25 quarter. Mr. Cantor did most of the talking on behalf of Scantibodies. For the most part, the

26 topics addressed during this meeting are the subject of sharp dispute between the parties.

27 The parties do agree that they talked about Scantibodies' prior patent counsel. They

28 disagree, however, about what was discussed during the rest of the meeting. The

02CV0046

1    Scantibodies executives claim that Mr. Duft never told them not to disclose confidential

2    information during the meeting, and that Mr. Cantor did, in fact, reveal to Mr. Duft

3    confidential information material to this lawsuit.

4        Mr. Duft does not specifically recall telling the Scantibodies executives not to reveal

5    confidential information, but states he believes he followed his "custom and practice" of

6    cautioning prospective clients not to disclose such information until conflicts are thoroughly

7    checked. Mr. Duft also specifically denies that any confidential information was exchanged.

8    Instead, according to Mr. Duft, aside from the discussion of Scantibodies' prior patent

9    prosecution counsel, during the meeting the four discussed Brobeck's approaches to patent

10    prosecution practice and non-confidential aspects of Scantibodies' patent prosecution needs.

11        For the purpose of deciding this Motion, the Court assumes that the Scantibodies

12    executives' version of events is more accurate, and that during the meeting with Mr. Duft

13    they revealed some arguably confidential information. The Court also assumes, arguendo,

14    that such information is material to this patent litigation.

15        At the end of the meeting, Mr. Cantor told Mr. Duft that Scantibodies had other law

16    firms to interview, and that he would get in touch with Mr. Duft shortly about hiring

17    Brobeck. At 5:00 p.m. on November 27th, Mr. Duft requested that a conflicts check be run

18    on Scantibodies. The next day, Mr. Duft mentioned to Mr. Olson that "Scantibodies was

19    possibly interested in hiring Brobeck." Duft Decl. ¶ 21. According to Mr. Duft, "Mr. Olson

20    immediately cut me off and told me not to say anything further. He said that Quest was an

21    existing client of his and Quest might become involved in litigation against Scantibodies."

22    Id. Mr. Olson and Mr. Duft agreed not to discuss the Quest litigation or Scantibodies

23    meeting further. Brobeck thereafter established an "ethical wall" screening Mr. Duft from

24    discussing Scantibodies' communications with any Brobeck attorneys involved with matters

25    for Quest and Nichols. Mr. Duft claims he has "scrupulously adhered to the terms of the

26    Ethical Wall." Id.

27        Some days after the November 27, 2001 meeting between Mr. Duft and the

28    Scantibodies executives, Mr. Cantor called Mr. Duft to tell him Scantibodies wanted to hire

1   Brobeck. It was not until this phone call, initiated by Mr. Cantor, that Mr. Duft told Mr.

2   Cantor Brobeck already represented Quest and could not take on representation of

3   Scantibodies.

4       On January 8, 2002, Nichols, represented by Brobeck, filed this action against

5   Scantibodies. Nichols' complaint alleges a single claim for patent infringement.

6   **III.    STANDARD OF LAW**

7       Motions for disqualification of counsel are decided in accordance with state law. In re

8   County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000); see S.D. Civ. Local R. 83.4(b)

9   (requiring "any attorney permitted to practice in this court [to] be familiar with and comply

10  with the standards of professional conduct required of members of the State Bar of

11  California"). In addition, the Model Rules of Professional Conduct and other sources

12  governing a lawyer's ethical duties may be relied upon as persuasive authority. See In re

13  County of Los Angeles, 223 F.3d at 993 n.1 (discussing persuasive authority of Model

14  Rules). Ultimately, the decision to disqualify counsel for conflict of interest is within the

15  trial court's discretion. Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).

16      The starting point for deciding a motion to disqualify counsel under California law is

17  the recognition of the interests implicated by such a motion. Courts are advised to keep such

18  interests in mind to avoid denying parties substantial justice through an overly literal

19  application of the law. People v. Speedee Oil Change Systems, Inc., 20 Cal. 4th 1135, 1145

20  (1999). At base, "disqualification motions involve a conflict between the clients' right to

21  counsel of their choice and the need to maintain ethical standards of professional

22  responsibility. . . . The important right to counsel of one's choice must yield to ethical

23  considerations that affect the fundamental principles of our judicial process." Id. That the

24  confidentiality of attorney-client communications must be remain inviolate, and that an

25  attorney's loyalty to the client must be preserved, are two such fundamental principles. See

26  id.

27      Accordingly, Rule 3-310 of the Rules of Professional Conduct of the State Bar of

28  California mandates that attorneys avoid the representation of adverse interests. Under Rule

-5-

1   3-310(E), an attorney may not, without the client's informed written consent, "accept

2   employment adverse to the client or former client where, by reason of the representation of

3   the client or former client, the member has obtained confidential information material to the

4   employment." And where an attorney violates this rule by "successively represent[ing]

5   clients with adverse interests, and where the subjects of the two representations are

6   substantially related, the need to protect the first client's confidential information requires

7   that the attorney be disqualified from the second representation." <u>Speedee Oil Change

8   Systems, Inc.</u>, 20 Cal. 4th at 1146.

9         To violate this rule, however, an attorney must first represent the clients claiming to

10  have adverse interests. In other words, where a party seeks to disqualify an attorney who it

11  claims possesses the party's confidential information, disqualification is not warranted unless

12  there was, at some point, an attorney-client relationship between that party and the attorney.

13  <u>See, e.g.</u>, 1 Witkin, <u>California Procedure</u> § 161 (4th ed. 1996) ("Obviously the rule against

14  representation adverse to a former client does not apply where the relationship of attorney

15  and client was never in fact created between the attorney and the complaining party."). An

16  attorney-client relationship is not created by preliminary consultations or interviews. <u>In re

17  Marriage of Zimmerman</u>, 16 Cal. App. 4th 556, 564-565 (1993). Instead, in California, "[a]n

18  attorney represents a client-- for purposes of a conflict of interest analysis-- when the

19  attorney knowingly obtains material confidential information from the client and renders

20  legal advice or services as a result." <u>Speedee Oil Change Systems, Inc.</u>, 20 Cal. 4th at 1148.

21  Thus, a court cannot conclude that an attorney-client relationship was created unless it finds

22  (1) that an attorney knowingly obtained material confidential information from a client, and

23  (2) that the attorney rendered legal advice or services to that client as a result.

24         If a court finds the complaining party was, in fact, a client of the attorney it seeks to

25  disqualify, the court must then determine whether confidential material information was

26  imparted to the lawyer during the course of that relationship. If a court finds such

27  information was disclosed, this finding gives rise to a presumption that the attorney shared

28  those confidences with the rest of his law firm, such that not only the attorney but the entire

- 6 -

1  firm must be disqualified. In re County of Los Angeles, 223 F.3d at 994-995.

2        For years, California appellate courts construed this presumption as irrebuttable. See

3  In re County of Los Angeles, 223 F.3d at 995 (discussing history of presumption).  Recently,

4  however, the California Supreme Court has signaled, and the Ninth Circuit has held, that in

5  certain cases where the case for disqualification is not "compelling"--that is, where the threat

6  to the duties pertaining to the former attorney-client relationship is but a weak one-- a firm

7  may rebut the presumption of shared confidences with evidence that it erected an "ethical

8  screen" between that attorney and the rest of the firm. In re County of Los Angeles, 223 F.3d

9  at 995, discussing Speedee Oil Change Systems, 20 Cal. 4th at 1151.  Lower California

10  courts have recognized that, under Speedee, an ethical screen can prevent vicarious

11  disqualification of an entire firm in certain situations. See Adams v. Aerojet-General Corp.,

12  86 Cal. App. 4th 1324, 1333 (2001) (". . . where the attorney is disqualified from

13  representation due to an ethical conflict, the disqualification extends to the entire firm [] at

14  least where an effective ethical screen has not been established.").  Therefore, in appropriate

15  circumstances, a disqualified attorney's law firm may avoid having the attorney's

16  disqualification imputed to it with evidence it established a timely and effective ethical

17  screen. In re County of Los Angeles, 223 F.3d at 996.

18  **IV.  ANALYSIS**

19        Scantibodies' Motion to Disqualify seeks to unseat Brobeck as counsel for Nichols

20  based on Mr. Duft's alleged violation of either Rule 3-310(E) or Rule 3-310(C)(1) or (2) of

21  the Rules of Professional Conduct of the State Bar of California. Mot. to Disqualify at 3-4.

22  As discussed above, Rule 3-310(E) prohibits successive representation of clients with

23  adverse interests.  Rule 3-310 subsections (C)(1) and (C)(2) prohibit simultaneous

24  representation of clients with adverse interests.  Rule 3-310(E) and Rule 3-310(C)(1) and (2)

25  thus apply only where an attorney-client relationship has been established between the party

26  and the attorney it seeks to disqualify.  Because this Court finds that the interaction between

27  Mr. Duft and the Scantibodies executives never ripened into an attorney-client relationship,

28  disqualification is not warranted under either of these rules.

02CV0046

1    However, the Court does find that other concerns mandate Mr. Duft's personal

2  disqualification from representing Nichols in this case.  Finally, the Court finds that, because

3  no ethical rule has been violated, and because Brobeck erected a timely and effective ethical

4  screen, Mr. Duft's personal disqualification will not be imputed to Brobeck as a firm.

5      **A.    No Attorney-Client Relationship Was Formed Between Mr. Duft and**

6          **Scantibodies**

7    As a preliminary matter, the Court notes it was unfortunate and inappropriate that Mr.

8  Duft did not maintain control over the ethics of the circumstances by refusing to meet with

9  Mr. Cantor until he could rule out any potential conflict of interest with Quest and Nichols.

10  Nevertheless, the Court finds that Mr. Duft's meeting with the Scantibodies executives did

11  not amount to representation of Scantibodies.

12    Scantibodies claims an attorney-client relationship was created between Mr. Duft and

13  Scantibodies because Mr. Cantor shared confidential information with him, and because the

14  Scantibodies executives were "under the impression" that "it had engaged Mr. Duft" as

15  Scantibodies' attorney.  Scantibodies' arguments fail under California law.  Because the

16  meeting between Mr. Duft and Scantibodies never ripened into actual representation,

17  disqualification under Rules 3-310(E) and 3-310(C) is not warranted here.

18    In absence of a formal retainer agreement, an attorney-client relationship can

19  nevertheless be formed, but only where "the attorney knowingly obtains material confidential

20  information from the client and renders legal advice or services as a result." Speedee Oil

21  Change Systems, Inc., 20 Cal. 4th at 1148.  Assuming that the Scantibodies executives

22  shared material confidential information with Mr. Duft, Scantibodies fails to establish that

23  Mr. Duft rendered legal advice or services to Scantibodies.   Instead, the November 27th

24  meeting was a preliminary interview of the sort that does not give rise to an attorney-client

25  relationship.  In re Marriage of Zimmerman, 16 Cal. App. 4th at 564.

26    Scantibodies' argument that Mr. Duft rendered legal services is limited to a statement

27  that "Mr. Duft even offered some opinions during the meeting." Mot. to Disqualify at 5.

28  Reference to the affidavits Scantibodies cites for this point makes clear, however, that any

-8-

1  such "opinions" do not approach the "formulation of legal strategy" or other functions that

2  could be considered the rendering of legal advice or services. See In re Marriage of

3  Zimmerman, 16 Cal. App. 4th at 564 (offering potential client initial impressions of case did

4  not constitute formulation of legal strategy). Mr. Duft never performed legal services for

5  Scantibodies, and an attorney-client relationship was never formed between them.

6          The conclusion that an attorney-client relationship was not created is bolstered by

7  other aspects of the meeting between Mr. Duft and the Scantibodies executives. It is

8  undisputed that Scantibodies was interviewing several firms in San Diego, in addition to

9  Brobeck, as potential counsel. It is also undisputed that Mr. Cantor called Mr. Duft days

10 after the November 27th interview in order to tell him that "Scantibodies had chosen him to

11 be Scantibodies' attorney." Cantor Decl. ¶ 18. Though Scantibodies argues "it was under

12 the impression it had engaged Mr. Duft . . . during the November 27 meeting," this subjective

13 impression, even if accurate, is unreasonable in light of the undisputed facts. Mot. to

14 Disqualify at 4. Instead, this Court finds that the November 27th meeting was a preliminary

15 interview for the purpose of assessing Brobeck as potential counsel, and did not create an

16 attorney-client relationship between Scantibodies and Mr. Duft.

17         Because no attorney-client relationship was created between Scantibodies and Mr.

18 Duft, disqualification under Rule 3-310(E) and Rule 3-310(C)(1) and (2) is not warranted.

19 Rule 3-310(E) applies to conflicts arising out of *representation* of former clients; Rule 3-

20 310(C) applies to conflicts arising out of *representation* of current clients. Neither rule

21 applies, therefore, where there was no representation-- that is, no attorney-client relationship-

22 - between the attorney and the party as to whom the attorney allegedly has confidential

23 information. See San Gabriel Water Quality Authority v. Aerojet-General Corp., 105 F.

24 Supp. 2d 1095, 1101 (C.D. Cal. 2000) (finding Rule 3-310(E) inapplicable because party

25 seeking disqualification of attorney was never a client of that attorney).

26    **B.    Mr. Duft Is Personally Disqualified From Representing Nichols In This**

27        **Litigation**

28         Although the Court concludes that Rules 3-310(E) and 3-310(C)(1) and (2) do not

-9-

02CV0046

1  apply to this case because no attorney-client relationship was formed between Mr. Duft and

2  Scantibodies, the Court nevertheless finds that Mr. Duft must be personally disqualified from

3  representing Nichols in this matter.

4      An attorney owes a prospective client the duty of confidentiality, even where their

5  relationship never ripens to one of attorney to client. Los Angeles Bar Ass'n Form. Opn. 366

6  (1977); ABA Form. Opn. 90-358. In recognition of this principle, section 15(2) of the

7  Restatement of the Law Governing Lawyers suggests that a lawyer who has received

8  confidential information from a prospective client "may not represent a client whose interests

9  are materially adverse to those of a former prospective client in the same . . . matter . . . ." 1

10 American Law Institute, Restatement of the Law Governing Lawyers § 15(2) (2000). The

11 Court finds the Restatement persuasive on this issue, particularly because the ethical rules of

12 the California State Bar and the American Bar Association do not address an attorney's

13 obligations in this situation.

14      Here, then, preservation of Mr. Duft's duty of confidentiality to Scantibodies

15 mandates that he be prevented from representing a party adverse to Scantibodies where the

16 confidential information he has received is material to the adverse representation. As

17 discussed above, the Court has accepted Scantibodies' version of events as accurate, and

18 finds that confidential information was shared with Mr. Duft. The Court has further

19 examined the complaint filed in this action, and has determined that the alleged confidential

20 information may be material to this litigation. Therefore, Mr. Duft is personally prohibited

21 from representing Nichols in this matter.

22  **C.    Brobeck Is Not Vicariously Disqualified From Representing Nichols In**

23  **This Litigation**

24      The Court also finds, however, that Brobeck's immediate creation of an ethical screen

25 between Mr. Duft and the Brobeck attorneys representing Nichols in this action cures any

26 potential vicarious disqualification of the entire Brobeck firm. As noted above, in

27 appropriate circumstances, where an attorney is disqualified, his law firm may avoid having

28 the attorney's disqualification imputed to it with evidence it established a timely and

02CV0046

1   effective ethical screen.  In re County of Los Angeles, 223 F.3d at 996.

2          The Court finds this to be an appropriate circumstance for permitting Brobeck's

3   immediate creation of an ethical screen to rebut any presumption that Mr. Duft has shared

4   Scantibodies' confidences with his firm.  First, this is not a case of *per se* disqualification

5   under the ethical rules, because neither Rule 3-310(E) or Rule 3-310(C)(1) or (2) are

6   implicated.  Under County of Los Angeles, ethical screens are more likely to be appropriate

7   where disqualification of the attorney is not automatic under the ethical rules.  See In re

8   County of Los Angeles, 223 F.3d at 995.  Second, because Mr. Duft did not represent

9   Scantibodies, it is his duty of confidentiality with which this Court is most concerned, rather

10  than his duty of loyalty.  Ethical screens are appropriate remedies under such circumstances,

11  because they redress potential breaches of the duty of confidentiality.  Disqualification of the

12  entire Brobeck firm is an unnecessary measure for protecting the confidentiality of

13  Scantibodies' communications, and would work an overly harsh result.  See San Gabriel

14  Basin Water Quality Authority, 105 F. Supp. 2d at 1103 ("In cases where the disqualification

15  request is not based on an attorney-client relationship, '[a]utomatic or mechanical application

16  of the vicarious disqualification rule can be harsh and unfair to both a law firm and its

17  client.'"), quoting William H. Raley Co., Inc. v. Superior Court, 149 Cal. App. 3d 1042,

18  1049 (1983).

19         Scantibodies' argument that ethical screens are not permissible remedies under

20  California law is incorrect.  Mot. to Disqualify at 9-10.  Scantibodies erroneously contends

21  that Speedee Oil Change Systems did not suggest a change in California's previous

22  disapproval of using ethical walls to redress breaches of an attorney's duties.  Id.  Its position

23  is directly countered not only by the Ninth Circuit's interpretation of Speedee in In re County

24  of Los Angeles, but also by the California Court of Appeal in Adams, both of which are

25  discussed above in section III.  Furthermore, the Court is aware of no decision that has taken

26  the position Scantibodies takes here, namely, that ethical screens remain inappropriate

27  remedies after Speedee.  Therefore, this Court finds that California law supports permitting

28  evidence of an ethical screen to rebut the presumption that an entire law firm is tainted by

- 11 -

1  one attorney's confidential information.

2      Moreover, the Court finds that the ethical screen created by Brobeck was instituted in

3  a timely and effective manner. "Screening must assure that confidential client information

4  will not pass from the personally prohibited lawyer to any other lawyer in the firm." 2

5  American Law Institute, Restatement of the Law Governing Lawyers § 124, Comment 2(ii)

6  (2000). Aspects of an effective ethical screen include prohibiting the screened lawyer from

7  talking to other persons about the prohibited matter, and preventing the lawyer from sharing

8  documents about the matter. See id. Scantibodies urges that an ethical screen must also

9  entail "physical, geographic and departmental separation of attorneys" and "procedures

10  preventing a disqualified attorney from sharing in profits from the representation." Mot. to

11  Disqualify at 10, citing Hendriksen v. Great American Savings and Loan, 11 Cal. App. 4th

12  109, 116 n.6 (1992). While Hendriksen does mention these additional provisions as "typical

13  elements of an ethical wall," Hendriksen's statement on this account is dictum, and the

14  opinion does not mandate that such provisions are inescapable requirements of an effective

15  ethical wall. Instead, this Court finds that an effective ethical screen is one that protects the

16  confidentiality of a party's communications and prevents transmission of those

17  communications between the tainted attorney and representatives of the party's adversary.

18  This function is served by prohibiting all communications, whether verbal, electronic,

19  documentary, or otherwise, between those on either side of the ethical screen.

20      Here, Brobeck's screen is both timely and effective. First, Brobeck immediately

21  erected the screen as soon as Mr. Duft told Mr. Olson he had a meeting with representatives

22  of Scantibodies. Mr. Olson immediately told Mr. Duft that Brobeck could not represent

23  Scantibodies because of Brobeck's existing engagement to represent Quest and Nichols, and

24  the two "agreed . . . that [Mr. Olson] should not provide [Mr. Duft] with any further

25  information regarding Quest or Nichols and that [Mr. Duft] should provide [Mr. Olson] with

26  no information at all regarding his meeting with representatives of Scantibodies." Olson

27  Dec. ¶ 3. Their agreement was then memorialized in an "Ethical Wall" memorandum

28  pursuant to which Mr. Duft has been prevented from discussing Scantibodies'

- 12 -

02CV0046

1     communications with any Brobeck attorneys working on the Nichols litigation. Duft Dec. ¶
2     21.

3         While the Court finds the ethical screen timely and effective, it is dismayed that Mr.
4     Duft did not rush to advise Mr. Cantor of Brobeck's conflict rather than await Mr. Cantor's
5     telephone call several days later requesting Mr. Duft to represent Scantibodies. This ethical
6     "syncope" does not, in this instance, change the conclusion reached by the Court.

7         The Court recognizes that, to some extent, the instant Motion to Disqualify has likely
8     created some need for communication between Mr. Duft and other Brobeck attorneys about
9     Mr. Duft's meeting with Scantibodies. However, because Mr. Duft has sworn under oath
10    that he has not discussed Scantibodies' confidential information with anyone, the Court is not
11    concerned that Scantibodies' rights have been compromised.

12         In sum, the Court holds that Mr. Duft's disqualification shall not be imputed to the
13    entire Brobeck firm, because Brobeck created a timely and effective ethical screen between
14    itself and Mr. Duft. As ordered herein, provided that Brobeck maintains this ethical screen
15    for the duration of this litigation, the Court finds the ethical screen to be an appropriate
16    safeguard to prevent Mr. Duft from divulging Scantibodies' confidential information.

17   **V.    CONCLUSION**

18         For the reasons stated above, the Court ORDERS that:

19      1)     Defendants' Motion to Disqualify Plaintiff's Counsel is hereby DENIED;

20      2)     attorney Bradford Duft is personally DISQUALIFIED from

21         a)     representing Plaintiff in this litigation; and

22         b)     representing Defendants in this litigation;

23      3)     the Brobeck law firm shall continue to maintain an ethical screen

24         a)     between Bradford Duft and all attorneys, paralegals, secretaries, and any
25    other Brobeck staff with any connection to representation of Plaintiff in this litigation; and

26         b)     between Bradford Duft and Plaintiff, Plaintiff's witnesses (including
27    expert witnesses), and any other persons associated with Plaintiff in this litigation;

28      4)     should Plaintiff retain any other counsel to associate with or otherwise assist

02CV0046

1   Brobeck in representing it in this action, Brobeck will instruct that counsel, and both Brobeck

2   and that counsel shall create, an ethical screen between itself and Bradford Duft; and

3          5)      pursuant to the "ethical screen,"

4                  a)      Bradford Duft shall not discuss or communicate, whether verbally, in

5   writing, electronically, or otherwise, about any conversation he had with representatives of

6   Scantibodies, about his meeting with the Scantibodies executives, or about any other matter

7   related to or pertaining to Scantibodies or this litigation by Nichols;

8                  b)      the persons referred to in sections 3)a) and 3)b) above shall not discuss

9   or communicate, whether verbally, in writing, electronically, or otherwise, any matter related

10  to or pertaining to this litigation by Nichols or Mr. Duft's meeting with Scantibodies; and

11                 c)      Bradford Duft shall be prevented from having access to any files kept

12  for this litigation by Nichols.

13  IT IS SO ORDERED.

14

15  DATED: _3-20-02_                    _Rudi M. Brewster_

16                                      UNITED STATES SENIOR DISTRICT JUDGE

17

18  cc:    All Parties
           Magistrate Judge

19

20

21

22

23

24

25

26

27

28

02CV0046