# EXHIBIT A

## Froemming, John

| | |
|---|---|
| From: | Gilchrist, Gregory S. [gsgilchrist@townsend.com] |
| Sent: | Monday, March 13, 2006 3:57 PM |
| To: | Froemming, John |
| Subject: | FW: Vivat Decision and Image |
| Attachments: | 60558548_1.PDF; Vivat Image.pdf |

John, this is the TTAB decision that I mentioned the other day. I will also send you a settlement agreement regarding another design that looks similar to your client's proposed mark. At least you will know we are not picking on your client. I look forward to receiving the PTO references you mentioned. Greg


<<60558548_1.PDF>>   <<Vivat Image.pdf>>

# EXHIBIT B

### Froemming, John

| | |
|---|---|
| **From:** | Gilchrist, Gregory S. [gsgilchrist@townsend.com] |
| **Sent:** | Monday, March 13, 2006 3:58 PM |
| **To:** | Froemming, John |
| **Subject:** | FW: Tommy Bahama SA |
| **Attachments:** | Tommy Bahama TTAB - Settlement Agreement - LS TTAB.pdf |

This is the agreement I mentioned in my last e-mail. Greg

<<Tommy Bahama TTAB - Settlement Agreement - LS TTAB.pdf>>

# EXHIBIT C

# Froemming, John

| | |
|---|---|
| From: | Froemming, John |
| Sent: | Wednesday, March 15, 2006 10:54 AM |
| To: | 'Gilchrist, Gregory S.' |
| Cc: | Smith, Caroline |
| Subject: | Levi's: Abercrombie & Fitch (Ruehl R Design) |
| Attachments: | RetailRoyalty.pdf; CalvinKleinPocket.pdf |


RetailRoyalty.pdf
(102 KB)


CalvinKleinPocket.pdf (95 KB)

Greg:

The design in the non-citable TTAB opinion you sent is a lot closer to Levi's arcuate design than the Ruehl R design is. In fact, the TTAB went out of its way to point out that Levi's labeling of its design as "arcuate," which means "having the form of a bow; curved; arched;" and emphasized that Vivat's and Levi's designs have the overall commercial impression of "curving up and then down." Applying the "eyeball test," the overall commercial impression of the Ruehl R design is different. The overall impression is not that it has the form of a bow, but rather an R. Moreover, the TTAB in your decision considered and declined to treat Levi's design as famous.

The Tommy Bahama document is merely a settlement agreement, and it's unclear to what extent if any Tommy Bahama cared about its design.

We are willing to consider any weightier authority (if any exists) than the non-citable opinion and the settlement agreement, but the two documents that you sent over just don't represent much authority for an argument that the Ruehl R design is likely to be confused with Levi's arcuate design.

In the meantime, we attach courtesy copies of the two references I mentioned.

Regards,

John

# EXHIBIT D

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

San Francisco

Two Embarcadero Center
Eighth Floor
San Francisco, California 94111-3834
Tel 415.576.0200
Fax 415.576.0300

Gia L. Cincone
415.273 7546
gcincone@townsend.com

July 20, 2007

***BY FACSIMILE (W/O ENCLOSURES) AND FEDERAL EXPRESS***

Susan M Kayser, Esq.
Howrey LP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

  Re: Levi Strauss & Co. / Abercrombie & Fitch

Dear Susan:

  I am writing to follow up on our recent communications regarding Levi Strauss & Co.'s ("LS&CO.") opposition to the pending applications by Abercrombie & Fitch ("A&F") to register its pocket stitching design as a trademark.

  We continue to believe that A&F's registration and use of this stitching design create a likelihood of consumer confusion because of the design's similarity to LS&CO.'s Arcuate Stitching Design Trademark. In light of the facts that A&F is not amenable to suspension of the opposition proceeding, A&F has a second application pending for the same design, and the design is now in use, we believe the most appropriate venue for resolution of our dispute over the design is federal court. Accordingly, we have filed a complaint on LS&CO.'s behalf against A&F in the Northern District of California, stating claims for infringement, dilution, and unfair competition based on A&F's use of the design. The complaint is enclosed. Please let me know if you will accept service on A&F's behalf or if we should proceed to have the complaint served.

  We have also filed a motion in the Trademark Trial and Appeal Board to suspend the opposition proceeding pending the outcome of the civil action. Your service copy of that motion is also enclosed.

  Finally, I need to raise with you our concerns regarding your firm's continued representation of A&F in this matter. We believe Howrey's involvement presents a serious conflict of interest due to the membership in the firm of your partner, Katy Basile. As you know, from 1994 through mid-1999, Katy served as LS&CO.'s Associate General Counsel in charge of brand protection; her responsibilities included enforcement of LS&CO.'s rights in its Arcuate

TOWNSEND
*and*
TOWNSEND
*and*
CREW

Susan Kayser, Esq.
July 20, 2007
Page 2

Trademark. We believe Katy's key role in enforcing LS&CO.'s rights in its mark renders Howrey's continued representation of A&F in this matter impermissible under California law.[1]

California Rule of Professional Conduct 3-310(E) provides, "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." The California Supreme Court has stated with regard to Rule 3-310(E) that "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1145 (1999).

California uses a "substantial relationship" test to determine whether confidential information is presumed to have been imparted: "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." *Id.* at 1146 (citing *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994)).

> To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information. Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel.

*City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006) (citations omitted).

---

[1] "Motions to disqualify counsel are decided under state law." *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (applying California Rules of Professional Conduct).

TOWNSEND
*and*
TOWNSEND
*and*
CREW

Susan Kayser, Esq.
July 20, 2007
Page 3

    There can be no doubt that there is a substantial relationship between Katy's work at LS&CO. and Howrey's representation of A&F in this dispute. Katy was intimately involved in setting policy and advising LS&CO. management with regard to enforcement of LS&CO.'s Arcuate Trademark. Clearly, "confidences material to the current representation would normally have been imparted," and were imparted, to her during her employment at LS&CO. No waiver was sought from LS&CO., nor would one have been given if it had been requested. Accordingly, Katy is disqualified from representing A&F in this matter. *See, e.g., Franzoni v. Hart Schaffner & Marx*, 726 N.E.2d 719 (Ill. App. 2000) (upholding disqualification of plaintiff's attorney and his firm in retaliatory discharge action where attorney previously served as defendant's general counsel and was involved in setting employment policies and counseling defendant's executives regarding those policies).

    It is equally clear under California law that the disqualification extends to the entire Howrey firm. "A presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm." *SpeeDee*, 20 Cal. 4th at 1146. This rule of vicarious disqualification -- which "recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients' confidential information," *id.* at 1153-54 -- has recently been reaffirmed both by California courts and by federal courts applying California law. *See, e.g., Lappert's Ice Cream, Inc. v. Lappert's, Inc.*, 2007 U.S. Dist. LEXIS 21349 (N.D. Cal. 2007) (disqualifying entire firm under Rule 3-310(E)); *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1162 (N.D. Cal. 2006) (no change in "established rule of vicarious disqualification"); *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co.*, 2005 U.S. Dist. LEXIS 45190 (N.D. Cal. 2005) (no Ninth Circuit or California case approved use of ethical wall in lieu of disqualification in circumstances of case); *Cobra Solutions*, 38 Cal. 4th at 847 ("Normally, an attorney's conflict is imputed to the law firm as a whole . . . ").

    I want to assure you that we do not raise this issue lightly. LS&CO. places a very high importance on enforcement of its rights in its trademarks, which are among the company's most valuable assets. Our client has genuine and serious concerns over litigating a trademark action against a firm which includes an attorney who was directly responsible for high level decisions concerning the very same trademark at issue in the litigation. Accordingly, we ask that Howrey withdraw from its representation of A&F in connection with the pending civil action and related trademark applications.

TOWNSEND
and
TOWNSEND
and
CREW

Susan Kayser, Esq.
July 20, 2007
Page 4

Feel free to call me or Greg Gilchrist if you would like to discuss this matter. We look forward to hearing from you.

Very truly yours,

Gia L. Cincone

cc:   Levi Strauss & Co.
61103426 /1

# EXHIBIT E

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

John G. Froemming
Partner
T 202.383.7219
F 202.383.6610
froemmingj@howrey.com

August 3, 2007

File: 00863.0650.000000

**VIA FEDERAL EXPRESS AND FACSIMILE**

Gia L. Cincone, Esq.
Townsend and Townsend and Crew LLP
Two Embarcadero Center,
Eighth Floor
San Francisco, CA 94111

Re: Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.

Dear Ms. Cincone:

This responds to your July 20, 2007 letter to Susan Kayser regarding the most recent of the legal proceedings Levi Strauss & Co. ("Levi") has filed against Abercrombie & Fitch ("A&F") related to A&F's RUEHL pocket stitching design trademark, and Howrey's continued representation of A&F in that matter. We have analyzed the issues and case law set forth in your letter requesting that Howrey cease to continue as A&F's counsel in this matter due to Katherine Basile's ("Ms. Basile") position as in-house counsel at Levi over eight years ago.

"A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except in circumstances of absolute necessity." *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000) (citation omitted)). "A motion to disqualify is often tactically motivated," *Friskit, Inc. v. RealNetworks, Inc.*, 2007 U.S. Dist. LEXIS 51770, at *6 (N.D. Cal. July 5, 2007), and the moving party "therefore carries a heavy burden and must satisfy a high standard of proof," *In re Marvel*, 251 B.R. at 871. "Because of this potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation omitted).

Levi cannot meet its heavy burden of showing a "substantial relationship" between any confidential information Ms. Basile might have received as Levi's counsel more than eight years ago, and the issues that exist regarding A&F's new RUEHL pocket stitching design today. *See H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1458-59 (1991) (refusing to disqualify upon finding no substantial relationship between former and current representations); *see also Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 300 (2001). Contrary to the position you take in your letter, Ms. Basile's former in-house

**HOWREY**

Gia L. Cincone, Esq.
August 3, 2007
Page 2

representation of Levi does not have any bearing on the present dispute, in which Levi opposes a trademark that did not even exist at the time Ms. Basile was employed at Levi. There is no basis to believe that any confidential information that Ms. Basile may have acquired when employed at Levi from 1994-1999--when an entirely different management team was in place at Levi--has any bearing on the present dispute.

Vicarious disqualification of the entire Howrey firm is especially unwarranted, because Ms. Basile has not disclosed and would not disclose any confidential information regarding her former employment. Ms. Basile assured us that since she joined Howrey, she has never discussed any confidences from her in-house position at Levi. In addition, out of an abundance of caution, Ms. Basile was "walled off" from this matter, and courts consider such ethical walls in protecting against disclosure of confidential information. *See People ex rel. Dept. of Corps. v. Speedee Oil Change Sys., Inc.*, 20 Cal. 4th 1135 (1999); *Friskit, Inc. v. RealNetworks, Inc.*, 2007 U.S. Dist. LEXIS 51770 (N.D. Cal. July 5, 2007) (Refusing to disqualify Howrey LLP where, among other things, Howrey erected an ethical wall). Accordingly, Levi has identified no basis to infer that material confidential information from Ms. Basile's prior employment from more than eight years ago has been or would be disclosed to other Howrey attorneys defending A&F.

Last but not least, "it is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983); *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1165 (N.D. Cal. 1988) (sixteen-month delay unreasonable; former attorney permitted to be adverse). Here, Levi is not even a former client of Howrey; Howrey has walled off Ms. Basile from representing A&F against Levi in this matter; and Levi has refrained from maintaining or pursuing an objection to other Howrey attorneys representing A&F with regard to this stitching design since Levi became aware of Howrey's representation of A&F regarding this design *more than a year and a half ago*. The first and only time Levi raised a question was when Levi's Thomas Onda mentioned it to Ms. Basile during the week of January 23, 2006. When Ms. Basile observed at that time that her last employment of seven years earlier was a long time ago, Mr. Onda agreed that seven years was (even by then) "a long time ago," and Levi did not raise the issue again.

In fact, outside counsel for Levi subsequently had numerous communications with Howrey more than sixteen months ago in March 2006 regarding this design, without maintaining any objection to Howrey's continued representation of A&F in this matter. Since February of 2007, Levi also served discovery on Howrey as A&F's counsel in this matter, and received from Howrey substantial discovery as part of an adverse legal proceeding regarding the same A&F design, without any complaint or concern about Ms. Basile. It was only after Howrey demonstrated its intent to vigorously defend A&F regarding this matter, that Levi belatedly sought to resurrect a conflict/"imputed disqualification" issue. Disqualification is plainly inappropriate in view of this knowing delay, *see River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309-13 (1987), and appears to be for purely tactical purposes. Thus, Levi would not meet



Gia L. Cincone, Esq.
August 3, 2007
Page 3

its heavy burden of showing grounds for disqualifying Howrey from continuing to represent A&F in this matter.

We therefore request that Levi refrain from filing any motion to disqualify the Howrey firm because of Ms. Basile's prior employment more than eight years ago. If Levi requires any further assurances, Ms. Basile and Howrey are prepared to provide sworn statements as to the above.

Very truly yours,

John G. Froemming

# EXHIBIT F

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

San Francisco

Two Embarcadero Center
Eighth Floor
San Francisco, California 94111-3834
Tel 415.576.0200
Fax 415.576.0300

Gia L. Cincone
415.273.7546
glcincone@townsend.com

August 16, 2007

**BY FACSIMILE AND FEDERAL EXPRESS**

John G. Froemming, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

    Re:    Levi Strauss & Co. / Abercrombie & Fitch

Dear Mr. Froemming:

    This will respond to your letter of August 3, 2007, concerning Howrey LLP's representation of Abercrombie & Fitch ("A&F") in the ongoing dispute over A&F's use and attempted registration of a pocket stitching design that Levi Strauss & Co. ("LS&CO.") considers infringing of its Arcuate Stitching Design Trademark.

    We must disagree with your conclusion that any confidential information Katy Basile received during her tenure as LS&CO.'s Associate General Counsel is irrelevant to the present dispute. LS&CO.'s Arcuate Trademark has been in continuous use since 1873, and the Company's policies concerning enforcement of the mark remain largely intact since Katy's day. Indeed, Katy was directly involved in establishing and implementing many of those policies, including both development of overall strategy for enforcement of the mark and specific strategic decisions regarding particular stitching designs. While there have certainly been changes among the management team at LS&CO. since 1999, a number of top managers remain whose job responsibilities include brand protection and who likely received advice from Katy or at least during her employment at LS&CO. concerning the Company's trademark enforcement policies.

    You indicate in your August 3 letter that Katy's former in-house representation of LS&CO does not have any bearing on the present dispute because, among other reasons, the challenged pocket stitching design did not exist at the time. The non-existence of the challenged design during Katy's employment is irrelevant. LS&CO.'s Arcuate Trademark existed during Katy's employment, and as indicated above, Katy was integral in the formulation and implementation of protection and enforcement policies to preserve and maximize the value of the mark -- policies which LS&CO. continues to follow to this day.

TOWNSEND
*and*
TOWNSEND
*and*
CREW
LLP

John G. Froemming, Esq.
August 16, 2007
Page 2

Furthermore, Katy continued to maintain communications with LS&CO.'s Brand Protection Department following her employment at the Company. After joining Howrey, Katy made several offers to handle LS&CO.'s intellectual property matters as outside counsel, often referring to her prior employment with LS&CO. and knowledge of LS&CO.'s brand protection matters as an advantageous asset. Indeed, as you know, Katy's prior experience as LS&CO.'s Associate General Counsel for brand protection is highlighted on Howrey's website.

We also do not believe that Howrey's efforts to "wall off" Katy from this matter solve the problem. As you know, under California law, once an attorney is personally disqualified due to a prior adverse representation, vicarious disqualification of the attorney's entire firm follows automatically. *See, e.g., Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158 (N.D. Cal. 2006) (disqualifying both individual attorney and firm from substantially related representation in patent infringement action, noting "the established law in California rejects ethical walls"). The use of screening procedures is irrelevant. In any event, any wall Howrey put in place *after* LS&CO. brought the conflict to its attention would be insufficient by definition. Katy was listed as the filing attorney on A&F's application to register the stitching design at issue; presumably, therefore, the wall was not instituted until after the conflict had already arisen and the damage was already done. Under these circumstances, the only remedy is to preclude Howrey from further representation of A&F in this matter. *See id.*

Your offer to provide sworn statements to the effect that Katy has not disclosed any confidential information during the course of her representation of A&F in this matter also does not solve the problem. California law requires disqualification even in the absence of any proof that confidential information actually was disclosed; "[i]t is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *see also Employers Insurance of Wausau v. Albert D. Seeno Construction Co.*, 692 F. Supp. 1150, 1163 (N.D. Cal. 1988) (prophylactic measures are necessary "because even counsel proceeding in utmost good faith may unconsciously make improper use of information"). Actual disclosure of confidential information would, of course, be actionable under the separate tort of misappropriation.

Finally, we do not believe there has been any "implied waiver" of LS&CO.'s right to challenge Howrey's representation. Tom Onda certainly never conceded during his telephone conversation with Katy that Katy's tenure at LS&CO. was too long ago to be material. LS&CO. refrained from challenging Howrey's representation during the period A&F's trademark application was pending before the PTO, because if the PTO had rejected the application, litigation would have been unnecessary. LS&CO. renewed its objection to Howrey's representation once it became apparent that settlement discussions would not bring about a resolution, and once LS&CO. realized the stitching design at issue was in use and filed its complaint. A&F will suffer no prejudice if a motion to disqualify is granted, because the opposition proceeding has been stayed until the civil action concludes and no discovery or other

TOWNSEND
*and*
TOWNSEND
*and*
CREW

John G. Froemming, Esq.
August 16, 2007
Page 3

proceedings have yet been conducted in the Northern District action. Certainly, there is no indication of delay that is "extreme in terms of time and consequence," as is required under California law to justify a finding of implied waiver. *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1311 (1987).

LS&CO. has no desire to litigate this issue if a creative solution can be found; however, we are hard pressed to provide one. One potential solution is to provide our clients the opportunity to discuss the underlying dispute directly with one another to see if they can reach a resolution of the infringement issues. We also would like to work with you in the hope of preventing any disputes along these lines from arising in the future.

We look forward to hearing your thoughts.

Very truly yours,

*Gia L. Cincone*

Gia L. Cincone

cc: Levi Strauss & Co.
    Greg Gilchrist

61125084 v1