```
 1  TOWNSEND AND TOWNSEND AND CREW LLP
    GREGORY S. GILCHRIST (Bar # 111536)
 2  GIA L. CINCONE (Bar # 141668)
    Two Embarcadero Center, 8th Floor
 3  San Francisco, California 94111
    Telephone: (415) 576-0200
 4  Facsimile: (415) 576-0300
    Email: gsgilchrist@townsend.com, glcincone@townsend.com
 5
    Attorneys for Plaintiff
 6  LEVI STRAUSS & CO.

 7

 8                  UNITED STATES DISTRICT COURT

 9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  LEVI STRAUSS & CO.,                  Case No. C 07-03752 JSW

12           Plaintiff/Counterdefendant,
                                         PLAINTIFF LEVI STRAUSS & CO.'S
13       v.                              NOTICE OF MOTION AND
                                         MOTION TO DISMISS
14  ABERCROMBIE & FITCH TRADING CO.,     COUNTERCLAIMS FOR
                                         CANCELLATION
15           Defendant/Counterclaimant.

16                                       DATE: April 25, 2008
                                         TIME: 9:00 a.m.
17  ABERCROMBIE & FITCH TRADING CO.,     COURTROOM: 2

18
             Defendant/Counterclaimant,
19
         v.
20
    LEVI STRAUSS & CO.,
21
             Plaintiff/Counterdefendant.
22

23

24

25

26

27

28
```

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 2

    A. A&F's "Fraud" Allegations ............................................................................................. 3

    B. A&F's "Abandonment" Allegations .............................................................................. 5

III. ARGUMENT ............................................................................................................................ 6

    A. Failure To State A Claim Upon Which Relief Can Be Granted ................................... 6

    B. A&F Cannot State A Claim For Fraud Against The PTO .............................................. 6

        1. Disclosure Of The Pending *Lois* Lawsuit Was Not Required Because Lois Did Not File A Counterclaim ............................................ 7

        2. Omission Of The *Lois* Proceeding Was Not Material .................................. 8

    C. A&F Cannot State A Claim For Abandonment ............................................................ 9

IV. CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**Cases**

Babbit Electronics, Inc. v. Dynascan Corp.,
  38 F.3d 1161 (11th Cir. 1994) .................................................................................. 11

Balistreri v. Pacifica Police Dep't,
  901 F.2d 696 (9th Cir. 1988) .................................................................................... 6

Board of Regents v. Buzas Baseball, Inc.,
  176 F. Supp. 2d 1338 (N.D. Ga. 2001) .................................................................... 11

Citibank, N.A. v. City Bank of San Francisco,
  206 U.S.P.Q. (BNA) 997 (N.D. Cal. 1980) .............................................................. 10

Clegg v. Cult Awareness Network,
  18 F.3d 752 (9th Cir. 1994) ...................................................................................... 6

Copple v. Astrella & Rice, P.C.,
  442 F. Supp. 2d 829 (N.D. Cal. 2006) ...................................................................... 6

eCash Technologies, Inc. v. Guagliardo,
  210 F. Supp. 2d 1138 (C.D. Cal. 2000), aff'd, 2002 U.S. App. LEXIS 9325 (9th
  Cir. 2002) .................................................................................................................. 6

Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.,
  458 F.3d 931 (9th Cir. 2006) .................................................................................... 10

Exxon Corp. v. Oxxford Clothes, Inc.,
  109 F.3d 1070 (5th Cir. 1997) .................................................................................. 11

In re Trademark Registration of McDonald's Corp.,
  Reg. No. 1,065,885, 1984 Commr. Pat. LEXIS 10
  (Comm'er of Patents and Trademarks Apr. 10, 1984) .......................................... 7, 8

Kinark Corp. v. Camelot, Inc.,
  548 F. Supp. 429 (D.N.J. 1982) ................................................................................ 11

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
  631 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 799 F.2d 867 (2d Cir. 1986) ............ passim

Orient Express Trading Co. v. Federated Department Stores, Inc.,
  842 F.2d 650 (2d Cir. 1988) ...................................................................................... 9

Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,
  469 U.S. 189 (1985) .......................................................................................... 2, 3, 4

Playboy Enterprises, Inc. v. P.K. Sorren Export Co.,
  546 F. Supp. 987 (S.D. Fla. 1982) ............................................................................ 11

Robi v. Five Platters, Inc.,
  918 F.2d 1439 (9th Cir. 1990) ............................................................................... 7, 8

ii

PL. LS&CO.'S MOTION TO DISMISS                    Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.
COUNTERCLAIMS FOR CANCELLATION                   Case No. C 07-03752 JSW

# TABLE OF AUTHORITIES (con't)

Page

*Shelby v. Ford Motor Co.*,
   43 U.S.P.Q.2d (BNA) 1692 (C.D. Cal. 1997) ............................................................. 11

*STX, Inc. v. Bauer USA*,
   43 U.S.P.Q.2d (BNA) 1492 (N.D. Cal. 1997) ............................................................. 10

*Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*,
   175 F.3d 1322 (Fed. Cir. 1999) ................................................................................... 8

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
   743 F.2d 1039 (4th Cir. 1984) ................................................................................... 11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985), *cert. denied*, 474 U.S. 1059 (1986) ......................... 11

*Visa International Service Ass'n v. Bankcard Holders of America*,
   211 U.S.P.Q. (BNA) 28 (N.D. Cal. 1981) ................................................................. 10

*Wallpaper Manufacturers, Ltd. v. Crown Wallcovering Corp.*,
   680 F.2d 755 (C.C.P.A. 1982) ................................................................................... 11

*Yocum v. Covington*,
   216 U.S.P.Q. (BNA) 210 (TTAB 1982) ...................................................................... 6

**Statutes**

15 U.S.C. § 1065 ........................................................................................................... 2, 4, 8

15 U.S.C. § 1115 ........................................................................................................... 2, 4, 6

15 U.S.C. § 1127 ............................................................................................................... 11

**Other Authorities**

*McCarthy on Trademarks* § 31:67 (4th ed. 2007) .......................................................... 10

*Trademark Manual of Examining Procedure* § 1605 (5th ed. 2007) ............................ 8, 9

## NOTICE OF MOTION AND MOTION

Please take notice that, on April 25, 2008, at 9:00 a.m., or as soon thereafter as the parties may be heard, in Courtroom 2 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiff Levi Strauss & Co. will move the Court for an order dismissing defendant Abercrombie & Fitch Trading Co.'s counterclaims for failure to state a claim on which relief may be granted.

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and [Proposed] Order filed herewith, on all of the files and records of this action, and on any additional material that may be elicited at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### I. INTRODUCTION

Levi Strauss & Co. ("LS&CO.") filed this action against Abercrombie & Fitch Trading Co. ("A&F") because a pocket stitching design A&F uses on its Ruehl brand jeans is confusingly similar to LS&CO.'s Arcuate Stitching Design Trademark. The Arcuate Trademark consists of a distinctive pocket stitching design that LS&CO. has used on its LEVI'S® brand jeans since 1873; it is the oldest apparel trademark still in use today, and LS&CO. owns a number of federal registrations for the mark dating back to 1943.

A&F has now moved to cancel all of LS&CO.'s federal registrations for its mark, on grounds that can only be described as specious, and in language that can only be described as hyperbolic. A&F alleges first that LS&CO. "has embarked on a campaign of trademark enforcement that is grounded in a strategy of . . . making fraudulent misrepresentations to the Trademark Office, and perpetuating that fraud in the courts." This claim is based on the fact that LS&CO. submitted two affidavits of incontestability -- both regarding a single registration -- to the PTO in the mid-1980's. LS&CO. did not report its trademark infringement litigation then pending against Lois Sportswear in New York federal court. A&F ignores the fact that under the PTO's own rules and case law, disclosure of the

1

1  litigation was not required, because the infringement defendants had not filed a counterclaim
2  challenging the validity of LS&CO.'s registration. Understandably, the PTO has instructed trademark
3  owners not to disclose every civil action that involves their marks, since doing so would go beyond
4  the requirements of the incontestability statute. A&F also ignores the fact that LS&CO. *prevailed* on
5  its motion for summary judgment in the Lois litigation, and *prevailed again* on appeal to the Second
6  Circuit – thus rendering any omission entirely immaterial.
7          Second, A&F alleges that LS&CO. makes "outrageous claims of supposed trademark
8  infringement . . . for no apparent purpose other than to stifle and snuff out otherwise legitimate
9  competition in the marketplace for denim products," and takes "wholly inconsistent and contradictory
10 positions" regarding the scope of its rights in the Arcuate Trademark. Because A&F has reviewed
11 thousands of documents relating to LS&CO.'s efforts to enforce its mark, it presumably knows that
12 there is absolutely no factual basis for these allegations. But in the meantime, A&F's claim that
13 LS&CO.'s conduct constitutes "abandonment" of LS&CO.'s mark must be rejected as a matter of law,
14 because -- as A&F should well know -- the proposition that inconsistent enforcement equals
15 abandonment soundly has been rejected by numerous federal courts, including this one.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

17         LS&CO. filed this action on July 20, 2007. LS&CO.'s complaint states claims against A&F
18 for infringement and dilution of LS&CO.'s Arcuate Trademark and unfair competition, based on
19 A&F's use of a pocket stitching design on its Ruehl brand jeans that is confusingly similar to
20 LS&CO.'s mark. A&F's answer was filed on August 21, 2007. After A&F's counsel was disqualified,
21 LS&CO. stipulated to the filing of A&F's amended answer and counterclaims, which are the subject of
22 this motion. LS&CO. now moves to dismiss A&F's counterclaims for failure to state a claim on
23 which relief can be granted.
24         If a trademark has become incontestable under 15 U.S.C. § 1065, as the Arcuate Trademark
25 has, challenges to the mark are limited to one of the "defenses or defects" specified in 15 U.S.C. §
26 1115(b). *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). A&F therefore
27 attempts to shoehorn its allegations concerning LS&CO.'s mark into two of the permitted statutory
28 categories: fraud on the United States Patent and Trademark Office ("PTO"), and abandonment.

### A.   A&F's "Fraud" Allegations

A&F's fraud claim focuses on two affidavits that LS&CO. submitted to the PTO in May 1985 and January 1986 in support of one of LS&CO.'s registrations for the Arcuate Trademark, United States Registration Number 1,139,254. (Counterclaims ¶ 7.) At that time, infringement litigation was pending in the Southern District of New York between LS&CO. and an apparel distributor called Lois Sportswear, U.S.A., Inc. ("Lois"), as well as a Spanish company, Textiles y Confecciones Europeas, S.A. ("Textiles"), that manufactured the jeans at issue in that lawsuit. Although *there was no counterclaim for cancellation of the Arcuate Trademark in the Lois litigation*, A&F asserts (despite PTO rules that state the exact opposite) that the litigation should have been disclosed in LS&CO.'s affidavits. (Counterclaims ¶¶ 7-8, 12.) A&F further contends that at least one of these supposedly false affidavits was submitted knowingly and in order to gain an "unfair advantage" in the pending litigation. (Counterclaims ¶ 10.) A&F studiously omits the fact that the district court granted summary judgment *for LS&CO. and against Lois* based on LS&CO.'s use of its mark since the 1800's and incontestable registrations dating back to the 1940's, and its ruling was affirmed by the Second Circuit in a strongly worded opinion that emphasized the strength of LS&CO.'s mark.

As A&F alleges, in the early 1980's, LS&CO. was engaged in enforcement efforts against Lois involving jeans bearing a stitching design that infringed the Arcuate Trademark. In December 1982, Lois brought a declaratory relief action against LS&CO. in the Southern District of New York. Lois sought a declaration that the Lois stitching design did not infringe LS&CO.'s rights in the Arcuate Trademark, did not constitute a false designation of origin or false representation within the meaning of the Lanham Act, and did not violate LS&CO.'s trademark rights under New York state law; a declaration that LS&CO. was barred by laches from asserting its trademark rights against Lois; and an order enjoining LS&CO. from interfering with Lois's importation or sale of jeans bearing the Lois stitching design. (Counterclaims Ex. B at 7.) Lois did *not* seek cancellation of the Arcuate Trademark, or ask for a declaration that the mark was invalid; its proposed relief related only to LS&CO.'s enforcement actions against Lois itself. (*Id.*)

LS&CO. answered Lois's complaint in January 1983 and counterclaimed for infringement, dilution, unfair competition, and deceptive practices under the Lanham Act and New York law.

1 (Counterclaims Ex. B at 27-32.) LS&CO. also filed a separate action against Textiles, asserting the same claims. Lois answered LS&CO.'s counterclaims and asserted various "affirmative defenses," including that the Arcuate Trademark had never functioned or no longer functioned as a designation of source or origin. (Counterclaims Ex. B at 35-36.) Lois sought dismissal of LS&CO.'s counterclaims and the same relief set forth in its declaratory relief complaint. (Counterclaims Ex. B at 36-37.) Textiles asserted the same affirmative defenses in its answer to LS&CO.'s complaint. Neither Lois nor Textiles ever sought cancellation of the Arcuate Trademark -- by affirmative claim, counterclaim, affirmative defense, request for declaratory relief, or otherwise.

The parties filed cross-motions for summary judgment. In September 1985, the district court granted LS&CO.'s motion, and denied the cross-motions of Lois and Textiles. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F. Supp. 735 (S.D.N.Y. 1985). The court cited five federal registrations for the Arcuate Trademark, the oldest of which, United States Registration Number 404,248, was granted in 1943 and had long since become incontestable:

> *As Lois concedes*, Levi's registration of its arcuate mark has become incontestable under 15 U.S.C. § 1065 and constitutes conclusive evidence under 15 U.S.C. § 1115(b) of the exclusive right of Levi to its use. Incontestability bars any defense against that registration other than those set forth in 15 U.S.C. § 1115(b)(1)-(7) . . . *none of which has been asserted by Lois.*

*Id* at 740 (emphasis added) (citing *Park 'N Fly, supra*). The court went on to find that the Arcuate Trademark "is a strong mark that qualifies for a high degree of protection," and noted that Lois's argument that the mark had been significantly weakened by third party use was "not convincing." *Id.* at 741.

The Second Circuit affirmed the grant of summary judgment for LS&CO. *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986). The appellate court also noted the incontestable status of LS&CO.'s mark and went on to describe the strength of the mark:

4

PL. LS&CO.'S MOTION TO DISMISS                                    *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
COUNTERCLAIMS FOR CANCELLATION                                    Case No. C 07-03752 JSW

> In many ways the back pocket stitching pattern has become the embodiment of Levi Jeans in the minds of jeans buyers. The record is replete with undisputed examples of the intimate association between the stitching pattern and appellee's products in the buying public's mind. . . . [A]ppellee's back pocket stitching pattern is a fanciful registered trademark with a very strong secondary meaning. Virtually all jeans consumers associate the stitching pattern with appellee's products. We agree with the district court that the evidence indicates as a matter of law that appellee's stitching pattern is a very strong mark.

*Id.* at 869, 873.

### B.   A&F's "Abandonment" Allegations

A&F then embarks on a series of rambling and inconsistent allegations concerning LS&CO.'s enforcement of its rights in the Arcuate Trademark. A&F alleges that LS&CO. has made "outrageous" infringement allegations against designs that "could not have possibly been said to cause a 'likelihood of confusion' in the marketplace," and that LS&CO.'s conduct constitutes "trademark misuse" (undefined). (Counterclaims ¶ 15.) A&F further alleges that the Company's enforcement strategy has been "overreaching, haphazard, and inconsistent." (Counterclaims ¶ 17.) A&F brings up two stitching designs that LS&CO. used in the 1970's and 1980's on a brand called Action Slacks® and on fashion jeans, designs in which LS&CO. never claimed trademark rights, and alleges that LS&CO. has challenged some, but not all, third party uses of similar designs. A&F never explains the relevance of LS&CO.'s use or cessation of use of these fashion designs. (Counterclaims ¶¶ 18-24.)

A&F includes allegations concerning a recent infringement action LS&CO. filed against RP55, Inc., maker of the jeans brand Indigo Red. LS&CO. submitted an expert report in that litigation opining that the Indigo Red design was confusingly similar to the Arcuate Trademark. LS&CO. subsequently reached a settlement with RP55, pursuant to which LS&CO. dismissed its claims against RP55 with prejudice. According to A&F, the dismissal was either an admission that the Indigo Red design was not infringing, or "another example of how LS&CO. is allowing other supposedly infringing designs to be used with LS&CO.'s express permission." (Counterclaims ¶ 25.) A&F appears to go so far as to claim that, because it settled its case against RP55, LS&CO. waived its right to enforce its mark against *all other infringers* -- asserting that LS&CO. is thereby "precluded from enforcing its supposed arcuate trademark against third parties, including A&F." (Counterclaims ¶ 26.)

5

PL. LS&CO.'S MOTION TO DISMISS                                   *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
COUNTERCLAIMS FOR CANCELLATION                                   Case No. C 07-03752 JSW

1    Finally, A&F claims (despite opinions from this Court and others rejecting similar arguments) that these factual allegations constitute a sufficient basis for cancellation of all of LS&CO.'s registrations for the Arcuate Trademark because "LS&CO.'s (i) inconsistent and contradictory enforcement of its arcuate trademark; (ii) its failure to adequately police and/or control uses of same; and (iii) its own inconsistent use of its own trademark, constitute 'abandonment' as that term has been defined in this Circuit." (Counterclaims ¶ 29.)

## III. ARGUMENT

### A. Failure To State A Claim Upon Which Relief Can Be Granted

"A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted." *Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829, 834 (N.D. Cal. 2006). In ruling on such a motion, the complaint's allegations are taken as true, and construed in the light most favorable to the non-moving party; but the Court "is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged." *Id.*; *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B. A&F Cannot State A Claim For Fraud Against The PTO

One "defense or defect" that can constitute grounds for cancellation of an incontestable trademark is "[t]hat the registration or the incontestable right to use the mark was obtained fraudulently." 15 U.S.C. § 1115(b)(1). Trademark fraud is a "disfavored defense," and "the party alleging fraud bears a 'heavy' burden of proof." *eCash Technologies, Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1149 (C.D. Cal. 2000), *aff'd*, 2002 U.S. App. LEXIS 9325 (9th Cir. 2002). "Fraud in a trademark cancellation is something that must be 'proved to the hilt' with little or no room for speculation or surmise; considerable room for honest mistake, inadvertence, erroneous conception of rights, and negligent omission; and any doubts resolved against the charging party." *Yocum v. Covington*, 216 U.S.P.Q. (BNA) 210, 216 (TTAB 1982).

Specifically, a claim of trademark fraud requires proof of the following elements: "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). A&F fails even to allege that LS&CO misrepresented anything, much less that any purported misrepresentation was material or that LS&CO. had any reason to know the *Lois* lawsuit should have been disclosed.

### 1. Disclosure Of The Pending *Lois* Lawsuit Was Not Required Because Lois Did Not File A Counterclaim

The requirements for a Section 15 affidavit are set forth in the Lanham Act, which provides that a trademark can become incontestable five years after it has registered provided the owner files an affidavit with the PTO stating, *inter alia*, that "(1) there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and (2) there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of." 15 U.S.C. § 1065. If a Section 15 affidavit is submitted that does not comply with the Lanham Act and applicable rules, the PTO will not acknowledge receipt of the affidavit, and will send the owner a written notice; the owner has the option of filing a new affidavit, but is not required to do so. *Trademark Manual of Examining Procedure* § 1605 (5th ed. 2007) (hereinafter "TMEP").

In 1977, McDonald's Corporation obtained a federal registration for the mark MCCHICKEN. McDonald's filed a Section 15 affidavit in 1982 which was not accepted by the PTO "based on the examiner's observation that a civil action was pending and not finally disposed of." *In re Trademark Registration of McDonald's Corp., Reg. No. 1,065,885*, 1984 Commr. Pat. LEXIS 10 (Comm'er of Patents and Trademarks Apr. 10, 1984). McDonald's petitioned the Commissioner of the PTO to order that the affidavit be received, arguing that because McDonald's was the plaintiff in the pending action and the defendant had not filed a counterclaim, "the civil action involving this registration does not raise any question with respect to its rights as contemplated by Section 15." *Id.*

7

PL. LS&CO.'S MOTION TO DISMISS                                    *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
COUNTERCLAIMS FOR CANCELLATION                                    Case No. C 07-03752 JSW

The Commissioner agreed:

> Section 15 provides that the affidavit of incontestability must state that the registration is not involved in a proceeding which involves registrant's right of ownership of the mark, its right to register the mark or keep same on the register. However, it has been office practice to withhold stamping the Search Library copies [of the affidavit] if the registration is involved in any civil proceeding, without looking to the nature of the proceeding to determine if it involves the rights contemplated by Section 15. *I believe this practice is inappropriate since it is stricter than the requirements set forth in Section 15. Also, the practice penalizes those registrants who are attempting to protect their acquired rights by bringing suit against alleged infringers.* Therefore, the current office practice on Section 15 affidavits is hereby ordered changed.

*Id.* (emphasis added).

The Trademark Manual of Examining Procedure reflects the practice instituted in 1984 as a result of the *McDonald's* decision:

> The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, *where there is no counterclaim involving the owner's rights in the mark*, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a § 15 affidavit.

TMEP § 1605.04 (emphasis added); *see Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*, 175 F.3d 1322, 1327 (Fed. Cir. 1999) (affirming PTO finding of no fraud where Section 15 affidavit did not disclose a pending civil action in which a counterclaim had not yet been filed). Thus, under the PTO's own rules and case law, LS&CO.'s affidavits were not and could not have been fraudulent, because they simply did not misrepresent anything.

### 2. Omission Of The *Lois* Proceeding Was Not Material

Even if the *Lois* litigation were encompassed within the requirements of Section 15, LS&CO.'s omission of the litigation from its affidavits would be "fraudulent" only if the omission were material. *See Robi*, 918 F.2d at 1444.

> To constitute "fraud" the knowing misrepresentation to the PTO must be "material" in the sense that but for the misrepresentation, the federal registration either would not or should not have issued. . . . [A] material misrepresentation arises only if the registration should not have issued if the truth were known to the examiner.

*McCarthy on Trademarks* § 31:67 (4th ed. 2007). In order to be fraudulent, a misstatement "must have been with respect to a *material* fact – one that would have affected the PTO's action on the

8

applications." *Orient Express Trading Co. v. Federated Department Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (citations omitted).

A&F alleges, in conclusory fashion, that LS&CO.'s Section 15 affidavits were "materially false." (Counterclaims ¶¶ 7, 12.) However, A&F alleges no basis – nor could it – for its conclusion that omission of the *Lois* litigation, even if false within the meaning of Section 15 (which it was not), was material. To the contrary, disclosure of the existence of the litigation would not have affected LS&CO.'s trademark. LS&CO. had long since possessed incontestable rights in its Arcuate Trademark by virtue of its earlier Registration No. 404,248, upon which the *Lois* court relied. *See* 631 F. Supp. at 740. The district court granted summary judgment on LS&CO.'s behalf, holding that the Arcuate Trademark was a strong mark that – contrary to Lois's allegations – had not been weakened by third party use. *Id.* at 741. The Second Circuit affirmed, calling the Arcuate Trademark the "embodiment" of LEVI'S® jeans in the minds of consumers. *See* 799 F.2d at 873. Disclosure of the litigation would not and could not have affected the PTO's treatment of LS&CO.'s Registration No. 1,139,254 or the incontestability of the Arcuate Trademark. At most, if the PTO had determined (contrary to its own rules) that the *Lois* litigation was a "pending proceeding" within the meaning of Section 15, it would have sent LS&CO. written notice that it was not acknowledging the affidavit, and LS&CO. would have filed a new one. LS&CO.'s registration would not have been affected. Because omission of the litigation was not material, there was no fraud.

### C. A&F Cannot State A Claim For Abandonment

As set forth above, A&F purports to state a claim for cancellation of LS&CO.'s mark on abandonment grounds, based on LS&CO.'s alleged "(i) inconsistent and contradictory enforcement of its arcuate trademark; (ii) its failure to adequately police and/or control uses of same; and (iii) its own inconsistent use of its own trademark." (Counterclaims ¶ 29.) These allegations, even if true (which they are not), do not constitute abandonment.

The Lanham Act states that a mark "shall be deemed to be 'abandoned' . . . [w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become

the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127.[1] The party charging abandonment is required to meet a "strict proof" standard. *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006) (citing cases).

A&F alleges abandonment based on LS&CO.'s purportedly inconsistent enforcement of its rights in the mark. Numerous courts – including this Court -- have explicitly rejected the contention that inconsistent enforcement or inadequate policing constitutes abandonment where the trademark retains at least some significance as a source indicator. For example, in 1980, this Court held that "The existence of third party infringers does not constitute an abandonment of a mark where the trademark owner does not consent to the use of the mark by these others but rather, vigorously pursues these third party infringers." *Citibank, N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. (BNA) 997, 1011 (N.D. Cal. 1980). This Court reiterated that holding a year later, rejecting an abandonment defense that was based on third party use and stating, "The existence of others engaged in the same acts of trademark infringement and unfair competition is irrelevant and is no defense against the trademark proprietor's suit against a particular infringer." *Visa International Service Ass'n v. Bankcard Holders of America*, 211 U.S.P.Q. (BNA) 28, 35 (N.D. Cal. 1981).

Again, more recently, the defendant in an infringement action argued that the plaintiff had abandoned its mark because it was "aware of widespread, unlicensed, infringing use . . . by third parties but has taken no action against such use." *STX, Inc. v. Bauer USA*, 43 U.S.P.Q.2d (BNA) 1492 (N.D. Cal. 1997). This Court rejected the abandonment defense, stating that "evidence of other potential infringers is 'irrelevant' to a suit against a particular infringer." *Id.* (quoting *Visa International, supra*). The Ninth Circuit, in affirming a jury's determination in another case that there was insufficient evidence of abandonment, noted, "An owner is not required to act immediately against every possible infringing use to avoid a holding of abandonment. Such a requirement would

---

[1] Abandonment also consists of non-use of the mark with intent not to resume use. 15 U.S.C. § 1127. A&F has not alleged (and could not allege) that LS&CO. has ceased use of the Arcuate Trademark.

1  unnecessarily clutter the courts." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001,
2  1018 n.1 (9th Cir. 1985) (citations omitted), *cert. denied*, 474 U.S. 1059 (1986).

3     Numerous other courts have agreed that a claim of abandonment cannot be premised merely on
4  inconsistent enforcement. *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1080 (5th Cir.
5  1997) ("absent an ultimate showing of loss of trade significance, [abandonment] is not available as a
6  defense against an infringement suit"); *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161,
7  1180 (11th Cir. 1994) ("failure to institute legal action against an infringer is insufficient to establish
8  abandonment of a trademark"); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039,
9  1048 (4th Cir. 1984) ("Evidence of a trademark owner's failure to prosecute infringers is relevant to a
10 determination of the defense of abandonment only where such failure amounts to the mark's losing
11 significance as an indication of source."); *Wallpaper Manufacturers, Ltd. v. Crown Wallcovering*
12 *Corp.*, 680 F.2d 755, 765 (C.C.P.A. 1982) ("Only when all rights of protection are extinguished is
13 there abandonment."); *Board of Regents v. Buzas Baseball, Inc.*, 176 F. Supp. 2d 1338, 1349 (N.D.
14 Ga. 2001) (rejecting claim of abandonment based on existence of third party users that trademark
15 owner "either was unaware of or has tolerated for its own reasons"); *Shelby v. Ford Motor Co.*, 43
16 U.S.P.Q.2d (BNA) 1692 (C.D. Cal. 1997) (mark not abandoned where owner "vigorously prosecuted
17 numerous third-party infringers . . . filed lawsuits against such infringers and obtained consent
18 judgments in its favor"); *Kinark Corp. v. Camelot, Inc.*, 548 F. Supp. 429, 443 (D.N.J. 1982)
19 (rejecting abandonment defense, noting, "The plaintiffs' lack of a consistent effort to prevent others
20 from using the mark, especially where most of the other uses have been commercially insignificant to
21 plaintiffs' marketing efforts, has no bearing on the rights of the parties before the court."); *Playboy*
22 *Enterprises, Inc. v. P.K. Sorren Export Co.*, 546 F. Supp. 987, 996-97 (S.D. Fla. 1982) (failure to
23 institute legal action against infringer held "insufficient to establish abandonment" of plaintiff's
24 trademark).

25    As a matter of law, allegations of inconsistent enforcement are not and cannot be a basis for a
26 finding that the Arcuate Trademark has been abandoned and is subject to cancellation. Therefore,
27 A&F's abandonment allegations fail to state a claim on which relief can be granted.
28

11

PL. LS&CO.'S MOTION TO DISMISS                          *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
COUNTERCLAIMS FOR CANCELLATION                          Case No. C 07-03752 JSW

## IV. CONCLUSION

For the reasons set forth, LS&CO. respectfully asks the Court to dismiss A&F's counterclaims for cancellation of the Arcuate Trademark.

DATED: March 7, 2008

Respectfully submitted,

By: _____
Gia L. Cincone
TOWNSEND AND TOWNSEND AND CREW LLP

Attorneys for Plaintiff
LEVI STRAUSS & CO.

61298733 v1

12

PL. LS&CO.'S MOTION TO DISMISS                    Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.
COUNTERCLAIMS FOR CANCELLATION                    Case No. C 07-03752 JSW