MICHAEL J. BETTINGER (State Bar No. 122196)
RACHEL R. DAVIDSON (State Bar No. 215517)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
55 Second Street, Suite 1700
San Francisco, CA 94105
Phone:  415-882-8200
Facsimile:  415- 882-8220

Michael Keyes (Pro Hac Vice)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
618 West Riverside Avenue, Suite 300
Spokane WA  99201-0602
Phone:  509-624-2100
Facsimile:  509-456-0146

Attorneys for Defendant
ABERCROMBIE & FITCH TRADING CO.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LEVI STRAUSS & CO., | No. CV-07-3752 |
| Plaintiff, | **DEFENDANT ABERCROMBIE & FITCH'S MOTION FOR SUMMARY ADJUDICATION OF UNDISPUTED FACTS** |
| v. | |
| ABERCROMBIE & FITCH TRADING CO., | **Date:        May 16, 2008** |
| Defendant. | **Time:        9:00 a.m.** |
| | **Courtroom:  2** |
| ABERCROMBIE & FITCH TRADING CO., | |
| Counter-Claimant, | |
| v. | |
| LEVI STRAUSS & CO., | |
| Counter-Defendant. | |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION & SUMMARY OF THE ARGUMENT ..........................................1

II.   UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY
      ADJUDICATION. ...................................................................................................2

      A.    The Plaintiff in *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*
            alleged throughout the litigation that LS&Co. lost its trademark rights
            in the "arcuate" design. ..................................................................................2

      B.    LS&Co. filed its first affidavit with the PTO claiming that there was no
            proceeding involving LS&Co.'s rights to the arcuate trademark pending
            in federal court. ...............................................................................................4

      C.    LS&Co. filed a second affidavit with the PTO claiming, once again,
            that there was no proceeding involving LS&Co.'s rights to the arcuate
            trademark pending in federal court. ................................................................6

      D.    LS&Co. initiated the present action against Abercrombie. ..............................7

III.  LAW & ARGUMENT.....................................................................................................7

      A.    The Standard for Summary Adjudication. ........................................................7

      B.    Before a trademark registration can become "incontestable", the
            registrant must file an affidavit with the PTO attesting that, among
            other things, there is no pending court proceeding challenging the
            registrant's rights in the trademark. ................................................................8

      C.    The undisputed facts establish that LS&Co. filed two materially false
            "incontestability" affidavits with the PTO......................................................10

            1.    LS&Co. filed two false statements with the PTO when it
                  submitted its "incontestability" affidavits attesting there was no
                  proceeding involving the arcuate trademark pending in the
                  courts even though at that time *Lois Sportswear* was being
                  litigated in federal court and Lois Sportswear was undeniably
                  challenging the validity of LS&Co.'s arcuate trademark. ...................11

            2.    This Court should reject LS&Co.'s reliance on the Trademark
                  Manual of Examination Procedures because it is not an
                  interpretation of the Lanham Act, conflicts with federal court
                  interpretations of 15 U.S.C. § 1065(2), and is inapplicable in
                  any event. ...........................................................................................15

            3.    LS&Co.'s false statements were material because the registrant
                  attesting that there is no proceeding involving the trademark in

a court is a statutory prerequisite to obtaining an "incontestable" registration. ...........................................................................19

IV.    CONCLUSION...........................................................................20

# TABLE OF AUTHORITIES

Page

## Cases

*Beer Nuts, Inc. v. Clover Club Foods Co.*,
   711 F.2d 934 (10th Cir. 1983) ........................................................................11

*Constellation Brands, Inc. v. Arbor Hill Associates, Inc.*,
   ___ F.Supp.2d___, No. 02-CV-6498 CJS, 2008 WL 515028 (W.D.N.Y. 2008) ................12

*Creative Gifts, Inc. v. UFO*,
   235 F.3d 540 (10th Cir. 2000) ........................................................................15

*Crown Wallcovering Corporation v. Wall Paper Manufacturers Limited*,
   188 U.S.P.Q. 141 (T.T.A.B.1975) ..............................................................10, 11, 20

*Duffy-Mott Co., Inc. v. Cumberland Packing Co.*,
   424 F.2d 1095 (C.C.P.A. 1970) ................................................................10, 20

*E.J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ........................................................................14

*Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*,
   No. 6:06-cv-742-Orl-31KRS, 2007 WL 1602341 (M.D. Fla. June 04, 2007) ...10, 13, 14, 17

*General Car & Truck Leasing Systems, Inc. v. General Rent-A-Car, Inc.*,
   17 U.S.P.Q. 2d 1398, 1990 U.S. Dist. LEXIS 12749 (S.D. Fla. 1999) ........................11

*General Elec. Co. v. Schwartz*,
   99 F.Supp. 365 (E.D.N.Y. 1951) ......................................................................13

*Halo Management, LLC v. Interland, Inc.*,
   308 F.Supp.2d 1019 (N.D.Cal. 2003) ................................................................14

*In re First Draft, Inc.*,
   76 U.S.P.Q.2d 1183, 2005 WL 2451658 (T.T.A.B. 2005) ..................................18

*In re Hat*,
   No. 04-32497-B-11, 2007 WL 2580688
   (Bankr. E.D. Cal. Sept. 4, 2007) ........................................................................8

*In re Wine Society of America Inc.*,
   12 U.S.P.Q.2d 1139, 1989 WL 274373 (T.T.A.B. 1989) ..................................18

*Lois Sportswear v. Levi Strauss & Co.*,
   799 F.2d 867 (2d Cir. 1986) ............................................................................7

*Mister Leonard, Inc. v. Jacques Leonard Couture, Inc.*,
   23 U.S.P.Q. 2d 1064, 1992 TTAB LEXIS 8 (T.T.A.B. 1992) ......................10, 11

*National Business Systems, Inc. v. AM International, Inc.*,
   743 F.2d 1227 (7th Cir. 1984) ......................................................................20

*Orient Express Trading Co., Ltd. v. Federated Dept. Stores, Inc.*,
   842 F.2d 650 (2d Cir. 1988) ..............................................................11, 19, 20

*Pizzeria Uno Corp. v. Temple*,

747 F.2d 1522 (4th Cir. 1984) ..........................................................................13

*Robi v. Five Platters, Inc.*,
   918 F.2d 1439 (9th Cir. 1990) .............................................................10, 11

*Robinson v. Shell Oil Co.*,
   519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)...................................16

*Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*,
   793 F.2d 1529 (11th Cir. 1986) .....................................................10, 13, 17

*Skippy, Inc. v. CPC Int'l, Inc.*,
   674 F.2d 209 (4th Cir. 1982), *cert denied*, 459 U.S. 969 (1982).......................10

*State Farm Fire and Cas. Co. v. Geary*,
   699 F.Supp. 756 (N.D. Cal. 1987)........................................................8

*W. Fla. Seafood, Inc. v. Jet Rests., Inc.*,
   31 F.3d 1122 (Fed. Cir. 1994) ...........................................................17

## Statutes

15 U.S.C. § 1058..............................................................................................6

15 U.S.C. § 1058(a)(b)......................................................................................6

15 U.S.C. § 1064..............................................................................................12

15 U.S.C. § 1065.............................................................................9, 17, 18, 20

15 U.S.C. § 1065(1)..........................................................................................12

15 U.S.C. § 1065(2)...................................................................................passim

15 U.S.C. § 1065(3)............................................................................................6

15 U.S.C. § 1115(a) ..........................................................................................12

15 U.S.C. § 1115(b) ..........................................................................................12

15 U.S.C. § 1127..............................................................................................14

Fed. R. Civ. P. 56...............................................................................................1

Fed. R. Civ. P. 56(a) ..........................................................................................8

Fed. R. Civ. P. 56(d) ..........................................................................................8

## Other Authorities

3 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*,
   § 19:129 (4th Ed. 2007) ...................................................................18

Trademark Manual of Examining Procedure, § 1604.03 (1st Edition, Rev. 6, 1983)...............19

Trademark Manual of Examining Procedure, § 1604.03 (1st Edition, Rev. 7, 1986) .............19

Trademark Manual of Examining Procedure, § 807.14(a) .....................................18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## NOTICE OF MOTION AND MOTION

Please take notice that on May 16, 2008, at 9:00 a.m., or as soon thereafter as the parties may be heard, in Courtroom 2 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Abercrombie & Fitch Trading Co. will move the Court for an order of summary adjudication.

The motion will be based on this Notice of Motion and Motion and the Memorandum of Points and Authorities and [Proposed] Order filed herewith, on all of the files and records of this action, and on any additional material that may be elicited at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION & SUMMARY OF THE ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56, Abercrombie & Fitch ("Abercrombie") respectfully submits this memorandum in support of its motion for partial summary adjudication that Levi Strauss & Co. ("LS&Co.") submitted two materially false affidavits to the U.S. Patent & Trademark Office ("PTO") regarding LS&Co.'s U.S. Trademark Registration No. 1,139,254 for its "arcuate" design.

In 1985 and 1986 *Lois Sportswear v. Levi Strauss & Co*. was pending in federal court in New York. That case involved LS&Co.'s "arcuate" trademark, one of the same trademarks that LS&Co. alleges Abercrombie has infringed in this suit. The record in *Lois Sportswear* is replete with numerous allegations unequivocally showing that Plaintiff Lois Sportswear challenged the validity of LS&Co.'s arcuate trademark. For example, it was alleged that LS&Co.'s arcuate "does not function as a trademark", that it "no longer possesses a distinctive quality", and that any distinctive aspects of the arcuate mark had been "lost entirely." It is further undisputed that—notwithstanding these and similar allegations made by Plaintiff in *Lois Sportswear*—LS&Co. filed <u>two</u> affidavits with the PTO during the

ABERCROMBIE & FITCH'S MOTION FOR
SUMMARY ADJUDICATION OF UNDISPUTED FACTS
Case No. 03:07-CV-3752-JSW                -1-                Printed on Recycled Paper

1    pendency of that case in an attempt to obtain an "incontestable" trademark registration.  Both

2    affidavits make the patently false claim that there was no proceeding involving LS&Co.'s

3    rights to the arcuate trademark "pending in the Patent and Trademark Office or in a court and

4    not finally disposed of."

5        LS&Co.'s statements were demonstrably false.  At the time those statements were

6    submitted to the PTO, there *was* a federal court proceeding pending wherein Lois Sportswear

7    was challenging LS&Co.'s rights to the arcuate mark.  Moreover, those false statements *were*

8    undisputedly material because the <u>*only*</u> way for a trademark registrant to submit an

9    incontestability affidavit to the PTO (and the only way to ultimately acquire an incontestable

10   registration) is to execute the affidavit attesting that "there is no proceeding involving said

11   rights pending in the Patent and Trademark Office or in a court and not finally disposed of."

12       Therefore, as a matter of law, this Court should find that: (i) LS&Co. filed two false

13   statements with the PTO regarding U.S. Trademark Registration No. 1,139,254; and (ii) these

14   false statements were material because the Lanham Act expressly states as such.  Whether

15   these false statements warrant cancellation of LS&Co.'s '254 Registration will be the subject

16   of a subsequent proceeding.

## II.    UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION.

A.    <u>The Plaintiff in *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.* alleged throughout the litigation that LS&Co. lost its trademark rights in the "arcuate" design.</u>

On December 13, 1982, Lois Sportswear U.S.A., Inc., ("Lois Sportswear") filed a

declaratory judgment action against Levi Strauss & Co. in the U.S. District Court for the

Southern District of New York.  *See* Lois Sportswear's Complaint, attached as Exhibit A to

the Declaration of J. Michael Keyes ("Keyes Dec.").[1]  Among other allegations, the Lois

_____

[1] Approximately seven months after Lois Sportswear initiated suit against LS&Co., LS&Co. commenced a separate action in the S.D.N.Y. against Textiles Confecciones Europas, the

Sportswear Complaint alleged that Lois Sportswear's back pocket stitching design used on its denim jeans did not infringe on LS&Co.'s "back pocket stitching" design. *See id.*, ¶ 18. LS&Co. asserted counterclaims against Lois Sportswear claiming that it infringed on LS&Co.'s U.S. Trademark Registration Nos. 404,248 (the "'248") and 1,139,254 (the "'254"), the "arcuate" registrations. *See* LS&Co.'s Answer and Counterclaims, attached as Exhibit B to the Keyes Dec. The '248 registration merely covered a "double arcuate design" of orange color displayed on the hip pockets of "overalls." *See* Keyes Dec., Exhibit C. The '254 registration was for a "double arcuate design" for "pants, jackets, dresses, and shorts." *See id.*

Not only did Lois Sportswear deny all allegations of infringement in that case, but it also asserted on numerous occasions throughout the litigation that LS&Co.'s "arcuate" trademark was invalid. For example, in its Answer to Counterclaims, Lois Sportswear alleged that:

- The arcuate trademark does not serve "as a means of designating origin with the defendant, and that the public recognizes that design as an indication that defendant is the source of the garments upon which it appears;" *See* Lois Sportswear's Answer to Counterclaims, ¶ 4, attached as Exhibit D to the Keyes Dec.

- The arcuate trademark "never functioned as a designation of source or origin and was and is, therefore, not susceptible of appropriation or protection as a trademark." *Id.* at ¶ 15.

- The arcuate trademark "has become so diluted by reason of widespread use by others, on jeans and similar garments, of the same or a similar design that it

---

supplier of Lois jeans to Lois Sportswear. The two actions were ultimately consolidated.

ABERCROMBIE & FITCH'S MOTION FOR
SUMMARY ADJUDICATION OF UNDISPUTED FACTS
Case No. 03:07-CV-3752-JSW                 -3-                 Printed on Recycled Paper

1    has lost whatever distinctiveness it otherwise possessed and no longer

2    functions as a designation of source or origin with the defendant." *Id.* at ¶ 16.

3    • LS&Co.'s conduct "has resulted in a loss by defendant of any trademark rights

4    it otherwise possessed in that mark." *Id.* at ¶ 17.

5    In Lois Sportswear's pre-trial brief dated April 10, 1985, Lois asserted that:

6    • "[t]he Levi stitching design does not function as a trademark" and that "the

7    mark must be deemed to be ***abandoned***." *See* Lois Sportswear's Pre-Trial

8    Brief, pp. 21-22, attached as Exhibit E to the Keyes Dec. (emphasis supplied).

9    In response to LS&Co.'s cross motion for summary judgment, Lois Sportswear

10   asserted that:

11   • the arcuate mark was "fatally weak" and that it "lacks distinction." *See* Lois

12   Sportswear's Response to LS&Co.'s Cross Motion for Summary Judgment,

13   p. 31, attached as Exhibit F to the Keyes Dec., and that "any distinctive

14   aspect" of the arcuate trademark had been "lost entirely." *See* Affidavit of

15   Jeffrey Cohen, ¶ 11, attached as Exhibit G to the Keyes Dec.

16   Even LS&Co.'s Associate General Counsel at the time, Ms. Cassandra M. Flipper,

17   acknowledged in her affidavit testimony in *Lois Sportswear* that Lois was claiming that the

18   arcuate mark was "infirm." *See* Affirmation of Cassandra M. Flipper, ¶ 11, attached as

19   Exhibit H to the Keyes Dec.

20   B.   LS&Co. filed its first affidavit with the PTO claiming that there was no
     proceeding involving LS&Co.'s rights to the arcuate trademark pending in

21   federal court.

22   On May 14, 1985—during the pendency of *Lois Sportswear* in federal district court—

23   LS&Co.'s Vice President and Corporate Secretary, Ms. Katherine Durgin, attempted to file a

24   "Section 8 & 15" affidavit with the PTO in order for the '254 Registration to become

25   "incontestable." *See* Combined Affidavit under Section 8 & 15 of Katherine Durgin, attached

26

as Exhibit I to the Keyes Dec.  This affidavit was filed after Lois moved for summary judgment and a mere two weeks before LS&Co. cross-moved for summary judgment.  In her affidavit, Ms. Durgin testifies that "there is no proceeding involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts."  *Id.*  The statement was made to the PTO notwithstanding the fact that *Lois Sportswear v. Levi Strauss & Co.* was pending in federal court and that Lois had continuously alleged in that proceeding that LS&Co. <u>lost</u> "any trademark rights it otherwise possessed" in the in arcuate mark.  *See* Lois Sportswear's Answer to Counterclaims, ¶ 17.  The transmittal letter accompanying Ms. Durgin's affidavit to the PTO was sent by LS&Co.'s "legal department" and requested that the PTO rush back to LS&Co. the enclosed postcard acknowledging the filing of the affidavit "as soon as you receive these applications."  *See* Letter to the PTO, dated May 14, 1985, attached as Exhibit Q to the Keyes Dec.

The PTO received the affidavit, made a notation in the file wrapper that it was received, but then notified LS&Co. that Ms. Durgin's affidavit was filed too early.  *See* '254 File Wrapper Entry, attached as Exhibit J to the Keyes Dec.; *see also* Letter from the PTO dated September 20, 1985, attached as Exhibit K to the Keyes Dec.  Under the Lanham Act, an "8 & 15" affidavit can be filed only between the fifth and sixth year after the date of issuance of the registration.  *See* 15 U.S.C. § 1058(a)(b); 15 U.S.C. § 1065(3).[2]  Because LS&Co.'s '254 Registration did not issue until September 2, 1980, the earliest possible date upon which LS&Co. could have filed its "8 & 15" affidavit was September 2, 1985.  Thus, LS&Co.'s early submission was not just a few days or weeks premature—it was submitted nearly four months too soon.  Notably, there are at least 15 other federal trademark

---

[2] This affidavit is referred to as the "8 and 15" affidavit because the requirements for the contents of this affidavit are set forth in Sections 8 and 15 of the Lanham Act, or 15 U.S.C. §§1058 and 1065, respectively.

registrations owned by LS&Co. dealing with various aspects of "Levi's jeans."  *See* LS&Co.'s Trademark Registrations, attached as Exhibit L to the Keyes Dec.  Not a single one of the "8 & 15" affidavits filed in connection with any of these registrations was ever filed early—not even by one day.  *See id.*

C.  <u>LS&Co. filed a second affidavit with the PTO claiming, once again, that there was no proceeding involving LS&Co.'s rights to the arcuate trademark pending in federal court.</u>

After the first "8 & 15" affidavit was submitted to the PTO, LS&Co.'s Assistant Corporate Secretary, Ms. Jean Fowler, submitted a second "8 & 15" affidavit to the PTO on January 2, 1986.  *See* Combined Affidavit under Section 8 & 15 of Jean Fowler, attached as Exhibit M to the Keyes Dec.  Like the first affidavit, this one also claimed that "there is no proceeding involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts."  *Id.*  LS&Co. submitted this affidavit even though at the time *Lois Sportswear v. Levi Strauss & Co*. was, in fact, pending in the U.S. Court of Appeals for the Second Circuit as Lois Sportswear had appealed the denial of its motion for summary judgment and the granting of LS&Co.'s motion for summary judgment.  *See* Lois Sportswear's Notice of Appeal, filed December 3, 1985, attached as Exhibit N to the Keyes Dec.  In that appeal, Lois Sportswear continued to challenge the validity and enforceability of LS&Co.'s "arcuate" mark.  As argued by Lois Sportswear in one of its briefs to the Court of Appeals:

> the prolific use by other jean vendors of back pocket stitching designs the same or similar to that mark of Levi <u>so seriously diluted the distinctiveness of Levi's mark as to undermine its ability to serve as an identifier of source.</u>

*See* Lois Sportswear's Petition For Rehearing En Banc, p. 3 (emphasis supplied), attached as Exhibit O to the Keyes Dec.  Lois Sportswear also argued on appeal that "any distinctiveness of the Levi design and most other back pocket designs has been diminished or lost entirely

1  since the 1970's", *id.* at p. 3, ¶ 2, and that the trial court ignored "extensive evidence of third

2  party uses of arcuate stitching designs similar to Levi's which demonstrate the erosion of

3  strength of the Levi's mark."  *See* Lois Sportswear's Reply Brief, p. 5, attached as Exhibit P

4  to the Keyes Dec.

5       It would be more than 8 months after LS&Co. submitted this second affidavit to the

6  PTO that a divided panel of the U.S. Court of Appeals for the Second Circuit affirmed the

7  trial court's decision over a vocal dissent by Judge Miner.  *See Lois Sportswear v. Levi*

8  *Strauss & Co.*, 799 F.2d 867, 877 (2d Cir. 1986) (Miner, J. dissenting) (dissenting because the

9  "district judge improperly undertook to decide disputed factual matters and that summary

10  judgment in favor of Levi therefore was unwarranted.")

11  D.    LS&Co. initiated the present action against Abercrombie.

12       On July 20, 2007, LS&Co. initiated this action against Abercrombie for its supposed

13  infringement of LS&Co.'s arcuate trademark registration.  Among other things, LS&Co. has

14  alleged that its '254 Registration is "incontestable."  Abercrombie will bring a motion for

15  summary judgment on LS&Co.'s infringement claim in the near future.  The present motion

16  was brought at this time for purposes of judicial economy so that the Court could consider it

17  along with LS&Co.'s motion to dismiss Abercrombie's fraud claim.

18                        **III.    LAW & ARGUMENT**

19  A.    The Standard for Summary Adjudication.

20       Federal Rule of Civil Procedure 56(a) provides that "[a] party claiming relief may

21  move, with or without supporting affidavits, for summary judgment on all or part of the

22  claim."  A party may move for "partial summary judgment" on only certain elements of a

23  claim for relief.  *See State Farm Fire and Cas. Co. v. Geary*, 699 F.Supp. 756, 759 (N.D. Cal.

24  1987) ("Partial summary judgment that falls short of a final determination, even of a single

25  claim, is authorized by Rule 56 in order to limit the issues to be tried").  This is often referred

26

to as "summary adjudication" because the Court determines which material facts with respect to a portion of a particular claim are not genuinely at issue. *In re Hat*, No. 04-32497-B-11, 2007 WL 2580688, at *9 (Bankr. E.D. Cal. Sept. 4, 2007). Once the court determines which facts are "not genuinely at issue," those facts "must be treated as established in the action." Fed. R. Civ. P. 56(d).

In this case, the following facts are undisputed: (i) LS&Co. submitted two false statements to the PTO; and (ii) these false statements were material. Therefore, Abercrombie requests that these undisputed facts "be treated as established in this action." The only issue left to be decided on Abercrombie's "fraud on the PTO" claim is whether LS&Co. acted with the requisite "knowledge" to constitute fraud.[3] This will be the subject of a separate motion or at trial.

B.    <u>Before a trademark registration can become "incontestable", the registrant must file an affidavit with the PTO attesting that, among other things, there is no pending court proceeding challenging the registrant's rights in the trademark.</u>

The owner of a federally-registered trademark must satisfy several statutory criteria under the Lanham Act before its federal registration can be deemed "incontestable." First, the registration is eligible only if "the registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce."

---

[3] At the present time, Abercrombie is not requesting this Court find as a matter of law that LS&Co. acted with the requisite knowledge to constitute fraud; however, the undisputed facts already suggest it exists. For example, the affidavits were submitted to the PTO by LS&Co.'s "corporate legal" department and they were executed by LS&Co.'s corporate officers. *See* Letters to the PTO, dated May 14, 1985, and January 9, 1986, attached as Exhibit Q to the Keyes Dec. Further, the fact that: (i) the first affidavit was submitted several months early; and (ii) the letter to the PTO accompanying this affidavit asked for the receipt of this affidavit to be acknowledged "as soon as you receive these applications"; and (iii) LS&Co.'s other 8 & 15 affidavits were never filed early, all combine to suggest LS&Co. was attempting to hurriedly obtain its "incontestability" status on the '254 to somehow gain an improper advantage in the *Lois Sportswear* case or against some other adversary.

15 U.S.C. § 1065. Second, within one year after the expiration of this five-year period, the registrant must file an affidavit with the PTO attesting to the following:

> (1)    there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and
>
> (2)    there is _no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of_; and
>
> (3)    those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in commerce.

15 U.S.C. § 1065 (emphasis supplied). The owner of an "incontestable" trademark receives a valuable "new right," _i.e._, "the right to have his registration accepted as conclusive evidence, rather than merely prima facia evidence of registrant's exclusive right to use the registered mark in commerce." _See Crown Wallcovering Corporation v. Wall Paper Manufacturers Limited_, 188 U.S.P.Q. 141, 144 (T.T.A.B.1975). As such, many trademark registrants have attempted to obtain this "new right" by filing materially false information with the PTO. _See, e.g., Robi v. Five Platters, Inc._, 918 F.2d 1439, 1444 (9th Cir. 1990) (canceling entire registration for fraud in § 15 affidavit); _Duffy-Mott Co., Inc. v. Cumberland Packing Co._, 424 F.2d 1095, 1098-1100 (C.C.P.A. 1970) (opposer precluded from relying on its mark registration in attempt to defeat applicant's right to register for different mark, where opposer's predecessor filed "patently false" § 15 affidavit); _Skippy, Inc. v. CPC Int'l, Inc._, 674 F.2d 209, 216 (4th Cir. 1982), _cert denied_, 459 U.S. 969 (1982) (vacating district court order granting declaratory judgment that owner's rights in SKIPPY had become incontestable, where § 15 affidavit stating there had been no adverse decision to affiant's registration was false because a final decision against registration had been made 21 years earlier); _Sizzler_

1    *Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1540-41 (11th Cir.

2    1986) (finding proceeding existed at time § 15 affidavit was filed; thus, mark was not

3    incontestable and district court could restrict use of mark); *Estefan Enterprises, Inc. v. Coco*

4    *Bongo Grill and Bar, Inc.*, No. 6:06-cv-742-Orl-31KRS, 2007 WL 1602341 (M.D. Fla. June

5    04, 2007) (denying plaintiff's motion for summary judgment, finding mark was not

6    incontestable because plaintiff's § 15 affidavit falsely asserted there were no "proceedings"

7    still pending); *Mister Leonard, Inc. v. Jacques Leonard Couture, Inc.*, 23 U.S.P.Q. 2d 1064,

8    1992 TTAB LEXIS 8 (T.T.A.B. 1992) (registration cancelled for fraud in listing goods in

9    § 15 affidavit on which mark had not been used, followed by failure to correct the error).

10   LS&Co. is one such registrant.

11   C.    The undisputed facts establish that LS&Co. filed two materially false
         "incontestability" affidavits with the PTO.

12         Under the Lanham Act, a party sued for trademark infringement may seek cancellation

13   of a registered trademark for "fraud on the PTO" when the registrant knowingly filed a

14   materially false "incontestability" affidavit.  Accordingly, to establish fraud with respect to an

15   incontestability affidavit the statement submitted to the PTO must be: (1) false; (2) material;

16   and (3) knowingly made.  *See Robi*, 918 F.2d at 1444 (noting that fraud is established "by

17   proving a false representation regarding a material fact, the registrant's knowledge or belief

18   that the representation is false, the intent to induce reliance upon the misrepresentation and

19   reasonable reliance thereon, and damages proximately resulting from the reliance").  As the

20   Ninth Circuit noted in *Robi*, "[a]ny false statements made in an incontestability affidavit may

21   jeopardize not only the incontestability claim, but also the underlying registration."  *Id.* at

22   1444.  "In particular, filing a fraudulent incontestability affidavit provides a basis for

23   canceling the registration itself." *Id.*; *see also Crown Wallcovering Corp.*, 188 U.S.P.Q. at 144

24   ("the filing of a fraudulent Section 15 affidavit constitutes a ground for cancellation of the

25

26

involved registration within the purview of Section 14(c)"); *General Car & Truck Leasing Systems, Inc. v. General Rent-A-Car, Inc.*, 17 U.S.P.Q. 2d 1398, 1990 U.S. Dist. LEXIS 12749, *7-8 (S.D. Fla. 1999) (trademark registration cancelled in its entirety for registrant's fraud in filing a Section 8 and Section 15 affidavit); *Mister Leonard, Inc.*, 23 U.S.P.Q. 2d 1064, 1992 TTAB LEXIS 8 at *4 ("Fraud in obtaining or maintaining a trademark registration 'occurs when an applicant [or later, registrant] knowingly makes a false, material representation of fact in connection with his application,' or in connection with a Section 8 and/or 15 declaration") (internal citations omitted). Fraud on the PTO needs to be established by clear and convincing evidence. *See Orient Express Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988); *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 942 (10th Cir. 1983).

1.  <u>LS&Co. filed two false statements with the PTO when it submitted its "incontestability" affidavits attesting there was no proceeding involving the arcuate trademark pending in the courts even though at that time *Lois Sportswear* was being litigated in federal court and Lois Sportswear was undeniably challenging the validity of LS&Co.'s arcuate trademark.</u>

The Lanham Act unambiguously provides that an incontestability affidavit must attest that "there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of." 15 U.S.C. § 1065(2). The plain meaning of 15 U.S.C. § 1065(2) applies to any "proceeding" involving the registrant's "said rights" to the trademark. This "said rights" language in 15 U.S.C. § 1065(2) is referring to the "registrant's right to register the same or to keep the same on the register." *See* 15 U.S.C. § 1065(1). The Lanham Act specifically provides that a trademark registration can be challenged either by way of "defense" or by way of "counterclaim." *See* 15 U.S.C. § 1115(a) (stating that trademark registration "shall not preclude another person from proving any legal or equitable

defense or defect"); 15 U.S.C. § 1115(b)[4] (stating that an incontestable registration "shall be subject to the following defenses or defects"); 15 U.S.C. § 1064 (setting forth procedures for cancellation of registration). Thus, any proceeding "involving" a challenge to the registrant's "right to register or keep the same on the register"—whether that challenge be mounted as a defense as contemplated by 15 U.S.C. §§ 1115(a) and (b) or as a counterclaim as contemplated by 15 U.S.C. § 1064—constitutes a "proceeding" involving the registrant's "said rights" in the mark. *See e.g., Constellation Brands, Inc. v. Arbor Hill Associates, Inc.*, ___ F.Supp.2d ____, No. 02-CV-6498 CJS, 2008 WL 515028, at *11 (W.D.N.Y. 2008) (defendant asserting counterclaims against trademark registrant for "trademark infringement, unfair competition, and false advertising" analyzed as constituting a "proceeding involving said rights" under 15 U.S.C. § 1065(2)); *see also Estefan Enterprises, Inc.*, 2007 WL 1602341, at *3; *Sizzler Family Steak Houses*, 793 F.2d at 1541 (plaintiff's federal complaint for trademark and servicemark infringement against defendant for its use of its federal trademark registration "Sizzlin'" constituted a "proceeding" involving defendant's "said rights" to its trademark); *see also General Elec. Co. v. Schwartz*, 99 F.Supp. 365, 366 (E.D.N.Y. 1951) (noting that "[t]he defendant in affirmative defenses attacks the validity of plaintiff's trademark registrations"); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984) (observing that "the presumption which registration thus gives the mark, though, does not preclude one charged with infringement from collaterally attack[ing] in an infringement action, either by way of an affirmative defense or by way of a counterclaim seeking cancellation of the registration").

---

[4]Although the introductory provisions of 15 U.S.C. § 1115(b) were amended in 1988, the pertinent statutory language at the time LS&Co. filed its false affidavits was substantively the same as the current introductory provisions to § 1115(b). *See* 15 U.S.C. § 1115(b) (1962), *amended by* Pub. L. No. 100-667, § 128(b)(1) (1988).

For example, in *Estefan Enterprises*, *Inc.*, the trademark registrant, EEI, brought suit against an alleged trademark infringer. The defendant denied the allegations of infringement and asserted four affirmative defenses including both estoppel and laches. *See* Coco Bongo Grill and Bar's Answer to Complaint, p. 4, Affirmative Defense III, filed July 17, 2006 in the U.S. District Court for the Middle District of Florida, attached as Exhibit R to the Keyes Dec. (answer alleging "t[o] the extent that Plaintiff has any rights to enforce Plaintiff is barred and estopped from enforcing those rights by the failure to actively pursue infringement claims and the doctrine of laches.") The defendant in Estefan did ***not*** assert a counterclaim for cancellation of Plaintiff's registration.

During the pendency of the suit, EEI timely filed its "incontestability" affidavit with the PTO and then moved for summary judgment on infringement and claimed that its registration was "incontestable." The Court disagreed that the mark was incontestable and noted that:

> EEI's "incontestable" argument fails. Section 1065 requires that, for a mark to be classified as incontestable, EEI must file an affidavit within a year after five years of continuous use of the mark and that there must be 'no proceeding involving said rights pending ... in a court not finally disposed of.' EEI's mark was registered with the USPTO on September 18, 2001. EEI timely filed an affidavit of incontestability in January of 2007. However, EEI filed the complaint for the instant case, which is still pending, on May 31, 2006. Therefore, when EEI filed for incontestability, there was a "proceeding involving said rights pending ... in a court and not finally disposed of," and § 1065(2) prevents EEI's mark from being classified as incontestable.

*Estefan Enterprises, Inc.*, 2007 WL 1602341, at *3 (internal citations omitted).

Here, there is no dispute that *Lois Sportswear* involved a challenge to the enforceability of LS&Co.'s arcuate trademark because Lois Sportswear asserted that the

arcuate trademark had been "abandoned."[5]  A trademark is deemed abandoned when it has "los[t] its significance as a mark", *see* 15 U.S.C. § 1127, and thus is a loss of trademark rights as "against the world." *Halo Management, LLC v. Interland, Inc.*, 308 F.Supp.2d 1019, 1029 (N.D. Cal. 2003) (quoting *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000)).  Lois Sportswear alleged on several occasions throughout that lawsuit that the arcuate was unenforceable because:  (i) LS&Co. lost "any trademark rights it otherwise possessed," *see* Answer to Counterclaims, ¶ 17, Keyes Dec. Exhibit D; (ii) the arcuate trademark did not serve "as a means of designating origin with the defendant, and that the public recognizes that design as an indication that defendant is the source of the garments upon which it appears." *Id*., ¶ 4; (iii) the arcuate trademark "never functioned as a designation of source or origin and was and is, therefore, not susceptible of appropriation or protection as a trademark." *Id.*, ¶ 15; (iv) the arcuate trademark "has become so diluted by reason of widespread use by others, on jeans and similar garments, of the same or a similar design that it has lost whatever distinctive it other possessed and no longer functions as a designation of source or origin with the defendant." *Id*., ¶ 16; (v) LS&Co.'s conduct "has resulted in a loss by defendant of any trademark rights it otherwise possessed in that mark." *Id*., ¶ 17; (vi) "[t]he Levi stitching design does not function as a trademark" and that "the mark must be deemed to be

---

[5]  In fact, the challenge asserted against the arcuate in *Lois Sportswear* was far more significant than the challenge asserted against the trademark in *Estefan Enterprises*.  The defenses asserted in *Estefan Enterprises* (laches and estoppel) are "personal defenses" that would not have resulted in a loss of trademark rights but only in the ability of the trademark owner to enforce those rights against the defendant in that case.  *See E.J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1294 (9th Cir. 1992) ("Laches and estoppel are defenses to the [plaintiff's] claim of trademark infringement, not challenges to the [plaintiff's] ownership rights in the GALLO mark").  By contrast, the allegations of "abandonment" in *Lois Sportswear* were claims that LS&Co. lost its trademark rights "as against the world."  Thus, if these legal issues involved in *Estefan* were sufficient to trigger the registrant's obligations to disclose the proceeding under 15 U.S.C. § 1065, then certainly the issues raised in *Lois Sportswear* were more than sufficient to trigger LS&Co.'s obligations to disclose that suit.

abandoned," Lois Sportswear's Pre-Trial Brief, pp. 21-22, Keyes Dec. Exhibit E; (vii) the arcuate was "fatally weak" and "lacks distinction," *id*. at p. 31; and (viii) "[a]ny distinctive aspect" of the arcuate trademark had been "lost entirely." Affidavit of Jeffrey Cohen, ¶ 11, Keyes Dec. Exhibit G. These factual allegations make it crystal clear that Lois Sportswear was attacking the validity of the arcuate trademark and, therefore, that lawsuit was undeniably a "proceeding" involving LS&CO.'s "said rights" in the arcuate.

It is further undisputed that at the time when LS&Co. filed its first affidavit with the PTO attesting there was "no proceeding" involving the arcuate mark, *Lois Sportswear* was pending in the U.S. District Court. When LS&Co. filed the second affidavit it once again attested that no such "proceeding" existed, even though the case was still pending at the U.S. Court of Appeals for the Second Circuit and Lois Sportswear was claiming that the "arcuate mark" was "so seriously diluted" to the point where it had lost its "ability to serve as a source identifier." *See* Keyes Dec., Exhibit O, p.3.

Accordingly, at the time when both affidavits were submitted to the PTO, there was a "proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of." 15 U.S.C. § 1065(2). As a matter of law, LS&Co.'s statements to the PTO to the contrary were false.

> 2.    This Court should reject LS&Co.'s reliance on the Trademark Manual of Examination Procedures because it is not an interpretation of the Lanham Act, conflicts with federal court interpretations of 15 U.S.C. § 1065(2), and is inapplicable in any event.

In LS&Co.'s motion to dismiss Abercrombie's fraud claim, LS&Co. argues that the PTO's "Trademark Manual of Examining Procedure" (the "TMEP") (as well as a prior decision from the Trademark Trial and Appeal Board that resulted in a change to the TMEP manual) did not require LS&Co. to disclose the existence of *Lois Sportswear* because there

was no "counterclaim for cancellation" involved in that case.[6]    This argument should be rejected for no fewer than four independent reasons.[7]

First, unless the statute involves an ambiguity, the court interprets the statute according to its "plain meaning" and does not read words into it. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent" (quotation marks omitted)).  As noted above, the plain meaning of 15 U.S.C. § 1065(2) does not limit "proceedings" to only those involving "counterclaims for cancellation" as suggested by LS&Co.  Rather, the plain meaning of the statute applies to a proceeding involving the registrant's "right to register or keep the same on the register."  15 U.S.C. § 1065; *see also Constellation Brands, Inc.,* 2008 WL 515028, at *18; *Estefan Enterprises, Inc.,* 2007 WL 1602341, at *3; *Sizzler Family Steak Houses,* 793 F.2d at 1540-41.  These rights can be challenged either be asserting a "defense" or "counterclaim."  *See*, *supra*, at p. 15-16.

LS&Co.'s suggestion that 15 U.S.C. § 1065 only applies to proceedings involving "counterclaims for cancellation" is contrary to the plain meaning of that statutory provision,

---

[6] The pertinent text of the TMEP cited by LS&Co. in its motion to dismiss provides as follows:

> The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a § 15 affidavit.

[7] All of these reasons (and more) are fully set forth in Abercrombie's response to LS&Co.'s motion to dismiss.  They are mentioned here as well for the convenience of the Court.

1    judicial interpretations thereof, and the overall statutory scheme of the Lanham Act.  This

2    Court should reject LS&Co.'s feeble assertion.

3        Second, although the TMEP may provide evidence as to what the internal procedures

4    adhered to by trademark examiners are, *see W. Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d

5    1122, 1127 n.8 (Fed. Cir. 1994) (observing that TMEP "does not have the force and effect of

6    law, it sets forth the guidelines and procedures followed by the examining attorneys at the

7    PTO"), the TMEP it is *not* an interpretation of the Lanham Act and is *not* binding on either

8    the federal courts or even the Trademark Trial and Appeal Board for that matter.[8]  *See* 3

9    McCarthy § 19:129 ("While the TMEP is good evidence of the practices followed by the

10   Patent and Trademark Office, it is not binding on the Trademark Board or a court as to the

11   meaning of the statute or federal regulations."); *In re First Draft, Inc.*, 76 U.S.P.Q.2d 1183,

12   2005 WL 2451658, at *6 (T.T.A.B. 2005) (affirming refusal of registration under the Lanham

13   Act and applicable case law, despite TMEP section cited by applicant).  When the TMEP

14   conflicts with federal court interpretations of the Lanham Act, those interpretations control

15   over a contrary provision in the TMEP.  *See In re Wine Society of America Inc.*, 12

16   U.S.P.Q.2d 1139, 1989 WL 274373, at *1 (T.T.A.B. 1989) (holding that "to the extent that

17   the language of Section 807.14(a) of the Trademark Manual of Examining Procedure (to

18   which applicant has directed our attention) describes a standard of 'material alteration'

19   different from that described in the cases to which we have referred, that section of the

20   manual should be revised").  As noted above, none of the federal courts interpreting 15 U.S.C.

21

22   ―――――――――――――――

     [8] In fact, the "Foreword" to the TMEP acknowledges that it is not even an interpretation of the

23   Lanham Act.  *See* Foreword to TMEP, September 2007, attached as Exhibit S to the Keyes
     Dec.  The Foreword provides, in pertinent part, that "[t]he Manual contains guidelines for

24   Examining Attorneys and ***materials in the nature of information and interpretation***, and
     outlines the procedures which Examining Attorneys are required or authorized to follow in the

25   examination of trademark applications."  *See id.* (emphasis supplied).

26

§ 1065(2) have held that a "counterclaim for cancellation" must first be asserted against the registrant before the registrant's disclosure obligations apply under 15 U.S.C. § 1065). For this reason as well, this Court should reject LS&Co.'s argument that the text of TMEP is in anyway dispositive as to the meaning of 15 U.S.C. § 1065(2).

Third, even if the text of the TMEP could be said to be a persuasive interpretation of 15 U.S.C. § 1065(2) (which it is not), it simply does not apply here. The TMEP provision by its own terms applies only when the trademark owner is the **plaintiff** in the proceeding and there is no counterclaim for cancellation. It is undisputed that in *Lois Sportswear*, LS&Co. was the **defendant**. Thus, this TMEP provision by its own terms cannot be read to exempt the *Lois Sportswear* proceeding from the disclosure obligation embodied in 15 U.S.C. § 1065(2).

Fourth, LS&Co. completely ignores the fact that at the time it filed its first false affidavit with the PTO, the text of the TMEP did not contain this "counterclaim" language relied upon by LS&Co. in support of its motion to dismiss. Instead, the pertinent text of § 1604.03 of the TMEP provided that the "8 & 15" affidavit:

> must also state that there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of, and "proceeding" **has been interpreted to mean registrant being in position either of plaintiff or defendant.**

*See* TMEP § 1604.03 (1st Edition, Rev. 6, 1983) (emphasis supplied), attached as Exhibit T to the Keyes Dec. Thus, even if the current text of the TMEP cited by LS&Co. could be said to be a correct, binding, or otherwise applicable interpretation of the federal statute (which it is not in any event), it could only apply to the second false affidavit and not the first affidavit filed by LS&Co.[9]

---

[9] At the time LS&Co. filed its second false affidavit with the PTO, the pertinent text of TMEP provided that a "proceeding involving the mark in which the registrant is the plaintiff, and

For these reasons, the Court should reject LS&Co.'s claim that it had no duty to apprise the PTO of the *Lois Sportswear* case.

3. <u>LS&Co.'s false statements were material because the registrant attesting that there is no proceeding involving the trademark in a court is a statutory prerequisite to obtaining an "incontestable" registration.</u>

Whether a statement is "material" is assessed at the time the statement was made to the PTO. *See, e.g., Orient Express Trading Co.*, 842 F.2d at 653 ("knowing misstatement must have been with respect to a material fact -- one that would have affected the PTO's action on the applications.") (citations omitted); *Crown Wallcovering Corp.*, 188 U.S.P.Q. at 143 (material information or facts are those "which, if transmitted and disclosed to the examiner, would have resulted in the disallowance of the registration sought."); *National Business Systems, Inc. v. AM International, Inc.*, 743 F.2d 1227, 1239 (7th Cir. 1984) ("To support a finding of fraud, the court 'must determine not only that the undisclosed art or information was material, but that the one charged with non-disclosure knew or should have known of its materiality at the time.'" (citations omitted)); *Duffy-Mott Co., Inc.*, 424 F.2d at 1099 (noting that court needs to consider "the purpose for which the false affidavit was filed in order to determine the importance of the untrue allegations").  The purpose for which LS&Co. submitted the "8 and 15" affidavit was to obtain "incontestability," a "new right" that is not granted with the original registration. *Crown Wallcovering Corp.,* 188 U.S.P.Q. at 144. The <u>only</u> way for a trademark registrant to obtain this "new right" is to submit an incontestability affidavit to the PTO satisfying the requirements set forth in 15 U.S.C. § 1065 at the time the registrant files the affidavit.  One of those statutory requirements is that the registrant must attest that there "is no proceeding involving said rights pending in the Patent

there is no counterclaim involving registrant's rights in the mark, does not preclude acceptance of a Section 15 affidavit."  TMEP § 1604.03 (1st Edition, Rev. 7, 1986), attached as Exhibit U to the Keyes Dec.

1    and Trademark Office or in a court and not finally disposed." 15 U.S.C. § 1065(2).  Thus, as

2    a matter of law, LS&Co.'s affidavits that testified to the supposed "non-existence" of a court

3    proceeding involving its rights to the trademark are unquestionably "material" under 15

4    U.S.C. § 1065(2).  *See Orient Express Trading Co.*, 842 F.2d at 653 (statement of continuous

5    use required for Section 8 and 15 affidavit, which registrant made falsely, constituted material

6    misstatement of fact).

7        Both statements submitted by LS&Co. to the PTO were materially false.[10]

8                            **IV.    CONCLUSION**

9        For the reasons set forth herein, Abercrombie respectfully requests this Court find that

10   LS&Co. made two materially false statements to the PTO regarding U.S. Trademark

11   Registration No. 1,139, 254.  Whether LS&Co. had the requisite intent to make these false

12   statements "fraudulent" will be the subject of a subsequent proceeding.

---

17   [10]  As more fully set forth in Abercrombie's response to LS&Co.'s motion to dismiss,
18   LS&Co.'s "materiality" argument should be swiftly rejected.  In short, LS&Co. argues that
     the false affidavits submitted to the PTO were "immaterial" because LS&Co. ultimately
19   prevailed on its claims against Lois Sportswear.  The Court should reject this argument
     because a false statement's materiality is assessed at the time the false statement was made.
20   The fact that LS&Co. ultimately prevailed in the *Lois Sportswear* litigation does not somehow
     cure the materially-false nature of the affidavits.  Second, as a matter of policy, interpreting
21   "materiality" the way LS&Co. suggests would lead to absurd results.  Under LS&Co.'s
     theory, a trademark owner could file a false statement with the PTO regarding pending
22   litigation involving the trademark.  Under LS&Co.'s definition of "materiality", so long as
23   that registrant ultimately prevailed in the litigation that was secreted from the PTO, it would
     not matter how outrageous or deceitful the statement was because it was "immaterial."  Such
24   an absurd result is not supported by the text of the statute, the Lanham Act, judicial
     interpretations, or common sense.  Moreover, this argument tacitly (if not overtly) seeks this
25   Court's imprimatur on false filings before a federal agency and it should be rejected.

1    Dated:    March 21, 2008              Respectfully submitted,

2                                          **KIRKPATRICK & LOCKHART**
3                                          **PRESTON GATES ELLIS LLP**

4

5                                          By:_____/s/_____
6                                          Michael J. Bettinger
                                           Rachel R. Davidson
7                                          J. Michael Keyes

8                                          Attorneys for Defendant
9                                          ABERCROMBIE & FITCH TRADING CO.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ABERCROMBIE & FITCH'S MOTION FOR
SUMMARY ADJUDICATION OF UNDISPUTED FACTS
Case No. 03:07-CV-3752-JSW              -21-              Printed on Recycled Paper