# Exhibit F

DOC #                                    JUN 2 0 1985

ED STATES DISTRICT COURT
HF~N DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

S PORTSWEAR, U.S.A. INC.,                    :

                    Plaintiff,               :
                                             :    82 Civ. 8326 (RWS)
        -against-                            :
                                             :
STRAUSS & COMPANY                            :

                    Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STRAUSS & COMPANY,                           :

                    Plaintiff,               :
                                             :    83 Civ. 4338 (RWS)
        -against-                            :
                                             :
LES Y CONFECCIONES EUROPEAS, S.A., :

                    Defendant.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


        MEMORANDUM OF LOIS SPORTSWEAR, U.S.A., INC.
        AND TEXTILES Y CONFECCIONES EUROPEAS, S.A.
        IN OPPOSITION TO CROSS-MOTION FOR SUMMARY
        JUDGMENT AND IN REPLY TO MEMORANDUM OF LEVI
        STRAUSS & COMPANY IN OPPOSITION TO MOTION FOR
        SUMMARY JUDGMENT


:  New York, New York

    June 19, 1985


                                WHITMAN & RANSOM
                                Attorneys for Lois Sportswear, U.S.A.,
                                Inc. and Textiles y Confecciones
                                Europeas, S.A.
                                522 Fifth Avenue
                                New York, New York 10036
                                (212) 575-5800

                    WHITMAN & RANSOM
                    522 FIFTH AVENUE, NEW YORK, N.Y. 10036

Ex. F-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

LOIS SPORTSWEAR, U.S.A. INC.,                :

                         Plaintiff,          :

              -against-                              82 Civ. 8326 (RWS)

                                             :

LEVI STRAUSS & COMPANY                        :

                         Defendants.         :


---------------------------------------X

---------------------------------------X

LEVI STRAUSS & COMPANY,                       :

                         Plaintiff,          :

              -against-                              83 Civ. 4338 (RWS)

                                             :

TEXTILES Y CONFECCIONES EUROPEAS, S.A., :

                         Defendant.          :
---------------------------------------X


          MEMORANDUM OF LOIS SPORTSWEAR, U.S.A., INC.
          AND TEXTILES Y CONFECCIONES EUROPEAS, S.A.
          IN OPPOSITION TO CROSS-MOTION FOR SUMMARY
          JUDGMENT AND IN REPLY TO MEMORANDUM OF LEVI
          STRAUSS & COMPANY IN OPPOSITION TO MOTION FOR
          SUMMARY JUDGMENT


                    WHITMAN & RANSOM
                    Attorneys for Lois Sportswear, U.S.A. and
                    and Textiles Y Confecciones Europeas, S.A.
                    522 Fifth Avenue
                    New York, New York  10036
                    (212) 575-5800

Ex. F-2

## TABLE OF CONTENTS

Page No

Table of Authorites............................. ii-iv

Preliminary Statement........................... 1

Summary of Argument............................. 2

Argument.......................................

I.    There Is No Likelihood of Confusion
      Between the Lois and Levi Marks...... 5

      A. The Absence of Actual Confusion...... 5
      B. The Presence of the
         Manufacturer's Name................. 8
      C. The Manner in Which the Goods
         are Displayed in the Marketplace..... 13
      D. Physical Distinctions Between
         the Marks........................... 17
      E. The Defective Surveys Propounded by
         Levi Would Be Inadmissible at Trial.. 18
      F. The Good Faith of Lois and Textiles.. 23
      G. The Goods Are Not Competitive....... 25
      H. Other Polaroid Factors............... 29

II.   The Levi Mark Is Fatally Weak........ 31

      A. The Levi Mark Lacks Distinctiveness.. 31
      B. Extensive Third Party Use........... 34

III.  The Levi Mark Fails to Qualify for
      Protection Under the New York
      Anti-Dilution Statute.................. 37

IV.   Levi's Cross-Motion for Summary
      Judgment Must be Denied............... 42

V.    Conclusions.......................... 45

i

Ex. F-3

TABLE OF AUTHORITIES

Page

<u>Allied Maintenance Corp</u>. v. <u>Allied</u>
    <u>Mechanical Trades, Inc.</u>, 42 N.Y.2d
    538 (1977) ........................................   38

<u>American Footwear Corp</u>. v. <u>General Footwear</u>
    <u>Co.</u>, 609 F.2d 655 (2d Cir. 1979)................   22,30,32

<u>Amstar Corp</u> v. <u>Domino's Pizza, Inc.</u>, 615
    F.2d 252 (5th Cir. 1980)...........................   6

<u>Aris-Isotoner Gloves, Inc.</u> v. <u>Fownes Bros. &</u>
    <u>Co.</u>, 594 F. Supp 15 (S.D.N.Y. 1983).............   13,21,22
                                                          24,42

<u>Bose Corp.</u>, v. <u>Linear Design Labs, Inc.</u>, 467
    F.2d 304 (2d Cir. 1972)...........................   11

<u>Chams De Baron, Ltd</u>. v. <u>H. Cotler Co., Inc.</u>,
    No. 84-1237 (S.D.N.Y. March 1, 1984)..............   7,24,33

<u>El Greco Leather Products Co</u>. v. <u>Shoe World,</u>
    <u>Inc.</u>, 599 F.Supp. 1380 (E.D.N.Y. 1984)..........   40

<u>Eli Lilly & Co</u>. v. <u>Revlon, Inc.</u>, 577 F. Supp
    477 (S.D.N.Y. 1983)...............................   32

<u>Exquisite Form Industries Inc</u>. v. <u>Exquisite</u>
    <u>Fabrics of London</u>, 378 F. Supp. 403
    (S.D.N.Y. 1974)...................................   37

<u>Fisher Stoves, Inc.</u> v. <u>All Night Still</u>
    <u>Works, Inc.</u>, 626 F.2d 193 (1st
    Cir. 1980).........................................   10

<u>Keebler Co</u>. v. <u>Rovira Biscuit Corp.</u>, 642
    F.2d 366 (1st Cir. 1980)..........................   10

<u>King Research Inc</u>. v. <u>Shulton Inc.</u>, 324
    F.Supp. 631 (S.D.N.Y. 1971).......................   41

<u>La Societe Anonyme des Parfums Le Galion</u> v.
    <u>Jean Patou, Inc.</u>, 495 F.2d 1265
    (2d Cir. 1974)....................................   30

Le Sportsac, Inc. v. Dockside Research,
　　Inc., 478 F. Supp. 602 (S.D.N.Y. 1979)............... 12

Lever Brothers Co., v. American Bakeries
　　Co., 693 F. 2d 251 (2d Cir. 1982).................... 8

Levi Strauss & Co. v. Blue Bell, Inc., 632
　　F.2d 817 (9th Cir. 1980)............................. 16,22,31

Levi Strauss & Co. v. Longley, 272 F.2d 820
　　(6th Cir. 1959)...................................... 2

McGregor-Doniger Inc. v. Drizzle Inc., 599
　　F.2d 1126 (2d Cir. 1979)............................. 6,9,14,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　18,25,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　28,30

Mennen Co. v. Gillette Co., 565 F. Supp. 648
　　(S.D.N.Y. 1983)...................................... 19

Metro Kane Imports, Ltd. v. Rowoco, Inc.,
　　595 F. Supp. 702 (S.D.N.Y. 1984)..................... 11,32

Mushroom Makers, Inc. v. R.G. Barry
　　Corporation, 580 F.2d 44 (2d Cir.
　　1978).............................................. 18,41

Nabisco Brands, Inc. v. Quaker Oats Co., 547
　　F. Supp. 692 (D. N.J. 1982)......................... 11

Olay Company, Inc. v. Cococare Products,
　　Inc., 218 U.S.P.Q. 1028 (S.D.N.Y.
　　1983)............................................... 14,18,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　21,42

Pignons S. A. de Mecanique v. Polaroid Corp.
　　657 F.2d 482 (1st Cir. 1981)........................ 10

Plus Products v. Plus Discount Foods, Inc.,
　　564 F. Supp. 984 (S.D.N.Y.), aff'd in
　　part and rev'd in part, 722 F.2d 999 (2d
　　Cir. 1983)......................................... 6,13,30,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　33,34,38

Polaroid Corp. v. Polarad Electronics Corp.,
　　287 F.2d 492 (2d Cir.), cert. denied,
　　368 U.S. 820 (1961)................................ 3

Ex. F-5

Proctor & Gamble Co. v. Johnson & Johnson
    Inc., 485 F. Supp. 1185 (S.D.N.Y. 1979),
    aff'd 636 F.2d 1203.................................    25,41

R.G. Barry Corp. v. A. Sandler Co., 406 F.2d
    114, 116 (1st Cir. 1966) ..........................    11

Restatement of Torts § 729, Comment b...................    14

Sally Gee. Inc. v. Myra Hogan, Inc., 699
    F.2d 621 (2d Cir. 1983)............................    18,24,28,
                                                           30,38,
                                                           40,41

Smithkline Beckman Corp. v. Proctor & Gamble
    Co., 591 F. Supp. 1229 (N.D.N.Y. 1984)..............    21,42

Spring Mills, Inc. v. Ultracashmere House,
    Ltd., 689 F.2d 1127 (2d Cir.
    1982), aff'd, 724 F.2d 352 (2d Cir. 1983)..........    11

Sun Banks of Florida, Inc., v. Sun Federal
    Savings and Loan Association, 651 F.2d
    311 (5th Cir. 1981)................................    33

Thompson Medical Co., Inc. v. Pfizer, Inc.,
    753 F.2d 208 (2d Cir. 1985)........................    13

Toys "R" Us, Inc. v. Canarsie Kiddie Shop,
    Inc. 559 F. Supp. 1189 (E.D.N.Y.
    1983)..............................................    21

Universal City Studios, Inc. v. Nintendo
    Co., Ltd., 578 F. Supp. 911, aff'd 746
    F.2d 112 (2d Cir. 1984)............................    14,33,
                                                           38,40

W.E. Bassett Co. v. Revlon, Inc., 435 F.2d
    656 (2d Cir. 1970).................................    7

Warner Bros v. ABC, 720 F.2d 231 (2d
    Cir. 1983).........................................    13,40

Warner Brothers Co. v. Jantzen Inc., 249
    F.2d 353, (2d Cir. 1957)...........................    9

Ex. F-6                          -iv-

2781B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X

LOIS SPORTSWEAR, U.S.A., INC.,                    :

                 Plaintiff,          :

      -against-                              :    82 Civ. 8326 (RWS)

                               :

LEVI STRAUSS & COMPANY,                            :

                Defendants.          :
-----------------------------------------X

-----------------------------------------X

LEVI STRAUSS & COMPANY,                            :

                 Plaintiff,          :

      -against-                              :    83 Civ. 4338 (RWS)

TEXTILES Y CONFECCIONES EUROPEAS, S.A., :

                Defendant.          :
-----------------------------------------X

MEMORANDUM OF LOIS SPORTSWEAR, U.S.A., INC.
AND TEXTILES Y CONFECCIONES EUROPEAS, S.A.
IN OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
AND IN REPLY TO MEMORANDUM OF LEVI STRAUSS &
COMPANY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## Preliminary Statement

    Declaratory judgment plaintiff Lois Sportswear, U.S.A., Inc. ("Lois") and Defendant Textiles Y Confecciones Europeas, S.A. ("Textiles") submit this Memorandum of Law in opposition to the cross-motion of Levi Strauss & Company ("Levi") for summary judgment and in reply to the memorandum submitted by Levi in opposition to the motion of Lois and Textiles for summary judgment.

Ex. F-7

### Summary of Argument

Under well settled legal principles of this Court and of the Second Circuit, there is no possibility of confusion between the various products sold by Lois and those sold by Levi under actual sale conditions. This Court is uniquely qualified by its experience in numerous recent decisions to make the determinations asked of it, both in terms of deciding Lois' motion for summary disposition of this action, as well as in terms of evaluating the merits of the parties' claims under the Lanham Act and state trademark protection statutes. With the exception of the Sixth Circuit's persuasive decision in Levi Strauss & Co. v. Longley, 272 F.2d 820 (6th Cir. 1959), discussed at length in Lois' moving papers, there is no need for this Court to look, as suggested by Levi in its moving papers, at the decisions of foreign courts rendered under their own foreign trademark laws or to depend to any great extent on the law of other circuits.

Levi has contended that its arcuate trademark is incontestable under 15 U.S.C. §1065. Lois admits such incontestability for purposes of this motion only, but notes that the doctrine of incontestability bars only defenses directed to Levi's right to register the mark, and in no way has any bearing on whether such mark is worthy of protection generally, or entitled to protection specifically against the particular contested mark under the circumstances in which that contested mark is used.

Ex. F-8

Lois submits that analysis of the "Polaroid factors" enumerated in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820 (1961), reveals that as a matter of law there is no likelihood of confusion between the respective trousers and jeans based on any alleged similarity between the back pocket designs, which are only one of several external identifiers utilized by each manufacturer. Lois also submits that as to its motion there are no genuine issues of material fact remaining to be determined and that, accordingly, it is proper for the Court to rule in Lois' favor at this stage of the litigation. As will be more thoroughly detailed below, there have been no instances of actual confusion despite substantial concurrent sales by both parties over a period of years. Each product prominently bears the name of the respective manufacturer as well as numerous other indicia of source. As the goods are displayed under actual sale conditions there can be no question as to the origin of each garment. Perhaps most importantly, the Levi arcuate is not even visible under actual sale conditions so that potential purchasers can hardly be expected to depend on the arcuate as the basis for making their purchases. Although Levi has propounded two surveys which it contends are evidence of likelihood of confusion, the law of this Circuit would either prohibit their introduction at trial or would result in according such surveys very little probative weight, if any.

Ex. F-9

Due in large part to their failure to simulate actual sales conditions, as well as other critical defects, both surveys would fail the trustworthiness standards established by this Court and by the Second Circuit and are, accordingly, not worthy of consideration either at this stage or at trial.

In its moving papers Levi has also relied upon high school yearbooks and comments made in various publications to suggest evidence of secondary meaning or likelihood of confusion. Such items are rank hearsay at this stage, are unlikely to be admissible at trial for the truth of the matters asserted therein, and are of such low probative weight that they do not merit any rebuttal from Lois.

Lois has also submitted a great deal of evidence which proves the weakness of the Levi arcuate and the extensive third party use of similar stitched designs on the back pockets of a huge number of brands of jeans. Such evidence was obtained directly from the files produced by Levi in this action or was readily available from retail outlets in the midtown Manhattan area, and is only exemplary of the even more extensive third party usage which would undoubtedly be proven in a more comprehensive survey.

In terms of the the "Polaroid factors," this Court has previously weighed similar evidence of differences in quality, price and market structure information in other cases and has found, as it must here, that there is a significant competitive

Ex. F-10

- 4 -

distance between garments such as the Lois products and the Levi products.  In like manner this Court and the Second Circuit have also analyzed buyer sophistication in terms of the price and marketing differences between products and, again, have found that the high degree of sophistication among apparel buyers significantly limits the likelihood of confusion.

Finally, for all of the above reasons, Levi's cross-motion for summary judgment must be denied.  Of equal importance, the Rule 3(g) Statement submitted by Levi which refers to all so-called undisputed facts is literally full of disputed facts.  While it is Lois' position that its motion should be granted because it is able to establish that there is no genuine issue of material fact as to any of the facts referred to in its Rule 3(g) Statement, Levi has represented to this Court that all 40 of its factual premises are essential to a ruling in its favor and that no disputes over material facts contained therein exist.  The Response to Levi's Rule 3(g) Statement submitted by Lois herein refers to a prolific number of material facts urged by Levi which are vigorously disputed by Lois.

I.    THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN
      THE LOIS AND LEVI MARKS

A.    The Absence of Evidence of Actual Confusion.

As was pointed out in the moving papers filed on behalf of Lois and Textiles (hereinafter, in view of the

Ex. F-11

- 5 -

identity of their legal contentions, both Lois and Textiles may be jointly referred to as "Lois"), Levi has admitted that there have been no instances of actual confusion.  As was observed by Judge Meskill in the decision of the Second Circuit in McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126 (2d Cir. 1979): "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion."  599 F.2d at 1136, citing Harold F. Ritchie, Inc. v. Chesebrough - Pond's, Inc., 281 F.2d 755, 761 (2d Cir. 1960).  See also Amstar Corp v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir. 1980), where the Fifth Circuit ruled that even isolated instances of actual confusion were insufficient to prove likelihood of confusion when the parties had been engaged in extensive concurrent sales for a number of years.

Referring to the findings of no actual instances of confusion in both the McGregor-Doniger opinion and the Amstar opinion, this Court has found that the lack of evidence of actual confusion is a critical factor in denying protection to a senior user's mark.  In upholding this Court's findings in Plus Products v. Plus Discount Foods, Inc., 564 F. Supp. 984 (S.D.N.Y.), aff'd in part and rev'd in part, 722 F.2d 999 (2d Cir. 1983), the Second Circuit held:

> Despite three years of concurrent use,
> the district court found there were no
> instances of actual consumer confusion, but

Ex. F-12

> it did not articulate the importance it gave
> to this factor.  While we recognize that it
> is difficult to establish actual confusion
> on the part of retail customers,
> <u>W.E. Bassett Co. v. Revlon, Inc.</u>, 435 F.2d
> 656, 662 (2d Cir. 1970), <u>no evidence of
> confusion for over a three-year period,
> during which substantial sales occurred, is
> a strong indicator that the likelihood of
> confusion is minimal.</u>  <u>Lever Bros. v.
> American Bakeries Co.</u>, 693 F.2d at 257;
> <u>Pignons S.A. de Mecanique de Precision</u> v.
> <u>Polaroid Corp.</u>, 657 F.2d 482 (1st Cir.
> 1981); <u>Amstar Corp.</u> v. <u>Domino's Pizza, Inc.</u>,
> 615 F.2d at 263; <u>McGregor-Doniger, Inc.</u> v.
> <u>Drizzle, Inc.</u>, 599 F.2d at 1136.  (Emphasis
> supplied).

722 F.2d at 1006.  More recently, relying on the decision in

<u>Plus Products</u>, this Court noted the lack of instances of actual

confusion and stated that "limited evidence of [actual]

confusion during a ten-to-fifteen month period during which

substantial sales occurred is an indication that the likelihood

of confusion is low."  <u>Chams De Baron, Ltd.</u> v. <u>H. Cotler Co.,

Inc.</u>, No. 84-1237 (S.D.N.Y. March 1, 1984) (available on LEXIS,

Patcop library, Cases file).

    While Levi has made light of the volume of United

States sales of Lois brand jeans and trousers (<u>see</u> Levi's

Memorandum at 28) in comparison to its own sales, for purposes

of satisfying the significant concurrent sales test of <u>Plus

Products</u> and <u>Chams De Baron</u>, the approximately $4,775,000 of

sales made by Lois from 1979-1984 is not an insubstantial

number.  The estimated total sales of all Lois trousers and

jeans bearing the Lois stitched design during that period

Ex. F-13

- 7 -

equalled approximately $1,900,000. <u>See</u> Affidavit of Jean Louis Goujon, acting President of Lois, at ¶ 2. The volume of sales of Lois brand jeans and trousers is clearly a substantial amount which brings it well within the standards and the reasoning described in the above decisions.

There being no genuine issue as to any material fact on the subject of actual confusion, as a matter of law Lois is entitled to a favorable finding on this point in support of its motion for summary judgment.

B. <u>The Presence of the Manufacturer's Name</u>.

Contrary to Levi's position that the presence of both its well known name and the Lois name on their respective goods does not lessen the likelihood of confusion, a number of cases which are referred to in both Lois' and Levi's moving papers unequivocally held that where manufacturers prominently displayed their brand names and identifying symbols on products bearing an allegedly infringing mark, they thus eliminated the likelihood of confusion and negated any charge of infringement. Such reasoning makes perfect sense, since it can hardly be gainsaid that one wishing to trade off the good will of another would not be expected to place multiple self-identifiers on its products. Thus, in <u>Lever Brothers Co.</u>, v. <u>American Bakeries Co.</u>, 693 F. 2d 251 (2d Cir. 1982), the Second Circuit held that because of the "prominent identification" of the producers on the respective packages, the likelihood of

Ex. F-14

- 8 -

confusion was substantially negated and defendant could not be found to have infringed plaintiff's trademark.  In so finding, the Court stated that the similarity of the marks must be assessed with regard to the "overall packaging context" as it affects potential consumers.  693 F.2d at 257.

Similarly, in <u>McGregor-Doniger, Inc.</u> v. <u>Drizzle, Inc.</u>, <u>supra</u>, the plaintiff, which manufactured a golf jacket under the trademark "Drizzler," sought to enjoin defendant's sale of womens' coats under the trademark "Drizzle."  Notwithstanding the fact that the marks were found to be virtually identical, the Second Circuit held that the context in which the respective marks were presented reduced the impact of their similarity.  Analogous to the case at bar, the label in each "Drizzler" jacket prominently featured the McGregor name printed in striking plaid letters.  Additionally, McGregor always emphasized the company name in its advertising of "Drizzler" jackets.  The court held that since the "Drizzler" trademark was always used in conjunction with the McGregor name, the likelihood of confusion was eliminated.  The predicate for the court's holding was its finding that "the fact that only one mark generally appears in close conjunction with the red plaid McGregor name increases the likelihood that the public even when viewing the mark individually, will not confuse the two."  599 F.2d at 1134.  <u>See also</u> <u>Warner Brothers Co.</u> v. <u>Jantzen Inc.</u>, 249 F.2d 353, 354 (2d Cir. 1957), where

because the defendant did not use its trademark alone, but
always in conjunction with its own widely known tradename
"Jantzen," the Second Circuit held that the use of the brand
name eliminated any likelihood of confusion between the two
products.

In Pignons S. A. de Mecanique v. Polaroid Corp. 657
F.2d 482 (1st Cir. 1981), plaintiff charged the Polaroid
Corporation with infringing its trademark by manufacturing
various Polaroid cameras with the identical trademark used on
plaintiff's cameras.  The court found no infringement, stating
that "similarity must be determined on the basis of the total
effect of the designation, rather than a comparison of
individual features." 657 F.2d at 487.  As is the case with
the products herein, on the contested Polaroid cameras as well
as in their advertising the allegedly infringing trademark
always appeared in close proximity to the name Polaroid and
other identifying symbols indicating that the Polaroid
Corporation was the source of the camera.  The Court of Appeals
for the First Circuit stated: "We and other courts have
indicated that in certain circumstances, otherwise similar
marks are not likely to be confused when used in conjunction
with the clearly displayed name and/or locale of the
manufacturer." 657 F.2d at 487.  See Fisher Stoves, Inc. v.
All Night Still Works, Inc., 626 F.2d 193, 194-95 (1st Cir.
1980); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366,

378-79 (1st Cir. 1980); <u>Bose Corp.</u>, v. <u>Linear Design Labs,</u>
<u>Inc.</u>, 467 F.2d 304, 310 (2d Cir. 1972); <u>R.G. Barry Corp</u>, v. <u>A.</u>
<u>Sandler Co.</u>, 406 F.2d 114, 116 (1st Cir. 1966) ; <u>Nabisco</u>
<u>Brands, Inc.</u> v. <u>Quaker Oats Co.</u>, 547 F. Supp. 692 (D. N.J.
1982).

In this Court's very recent decision in <u>Metro Kane</u>
<u>Imports, Ltd.</u> v. <u>Rowoco, Inc.</u>, 595 F. Supp. 702 (S.D.N.Y.
1984), once again the critical importance of the manufacturer's
name was cited as a grounds for denial of protection:

> It is worth observing, however, that
> Rowoco's does have a label – though
> temporary – affixed to it and the packaging
> for the Rowoco juicer clearly exhibits the
> name Rowoco.  Such labeling has been held in
> certain circumstances sufficient to
> eliminate fears of consumer confusion.  <u>See</u>
> <u>Bose Corporation</u> v. <u>Linear Design Labs,</u>
> <u>Inc.</u>, 467 F.2d 304 (2d Cir. 1972); <u>Le</u>
> <u>Sportsac, Inc.</u> v. <u>Dockside Research, Inc.</u>,
> 478 F. Supp. 602, 609 (1979).

595 F. Supp. at 706-707.  The Court's reasoning directly
refutes the argument advanced by Levi that the cardboard tags
and permanent leather and fabric identifiers affixed to Lois
jeans, as well as the hangtags displayed on the the Lois jeans
under actual sale conditions should not be considered as
probative on the likelihood of confusion issue because during
use some external identifiers may have been discarded.  <u>Cf.</u>
<u>Spring Mills, Inc.</u> v. <u>Ultracashmere House, Ltd.</u>, 689 F.2d 1127,
1130-33 (2d Cir. 1982), <u>aff'd</u> 724 F.2d 352 (2d Cir. 1983),
where the basis of the Court's finding of infringement was
largely attributable to the confusingly similar impression
created by the junior user's hangtags.

Ex. F-17

- 11 -

One of the cases cited by this Court in the <u>Metro Kane</u> decision was <u>Le Sportsac, Inc.</u> v. <u>Dockside Research, Inc.</u>, 478 F. Supp. 602 (S.D.N.Y. 1979). In denying a motion for a preliminary injunction pertaining to virtually identical high fashion sports and travel bags, Judge Duffy reasoned:

> Critical to my determination is the question whether it is likely that an ordinary prudent person would be confused by the two products. <u>Maternally Yours, Inc.</u> v. <u>Your Maternity</u>, 234 F.2d 538 (2d Cir. 1956). In this respect, I must conclude that plaintiff's proof breaks down. While it is true that the products in question are virtually identical in their nonfunctional design features, they are different in two crucial respects. <u>Plaintiff's logo is prominently and repetitively printed</u> across the cotton carpet tape trimming on its bags. By contrast, defendants employ <u>sewn-in labels</u> on their bags and pouches which feature the trademark Pax[R]. Their <u>hangtag</u> also prominently features the Pax trademark as does all the advertising connected with the product. <u>This labeling tends to eliminate the confusion that might otherwise result from the sale of such similar products</u>. As our Court of Appeals has observed, "there is hardly likelihood of confusion . . . when the name of the manufacturer is clearly displayed." <u>Bose Corporation</u> v. <u>Linear Design Labs, Inc.</u>, 467 F.2d 304, 310 (2d Cir. 1972). Plaintiff has offered no evidence to overcome the apparent presumption that confusion as to origin will not arise where such labeling occurs. [emphasis supplied]

478 F. Supp. at 609.

It is beyond question that Levi has been and will be unable to overcome the presumption spoken of by Judge Duffy that confusion will not occur where, as here, clear labeling is

Ex. F-18

present.  As is apparent from the exhibits accompanying both
Lois' and Levi's moving papers, the respective products are
prominently and repetitively labeled with both temporary and
permanent hangtags, tags and sewn-in labels which preclude the
possibility of confusion as to source.  It is, quite simply,
unreasonable and illogical to believe that persons at the point
of sale will think, merely because of an arguably similar
back-pocket stitching design, that Lois-brand jeans labeled
"Imported from Spain," "Produced by Textiles y Confecciones
Europeas, S.A.," "Imported by Lois Sportswear U.S.A., Inc.,"
without any distinctive red pocket Levi's tab, are somehow
connected with Levi.

> C.   The Manner in Which the Goods Are
>      Displayed in the Marketplace

It cannot be over-emphasized that the test for
likelihood of confusion requires a comparison between the two
brands as they appear in the marketplace, including their trade
dress, the setting in which they appear and the impression
which they create.  There simply is no variance from this
principle in this Circuit.  See Aris-Isotoner Gloves, Inc. v.
Fownes Bros. & Co., 594 F. Supp 15, 22-23 (S.D.N.Y. 1983); Plus
Products, supra, 722 F.2d at 1007; Lever Bros. v. American
Bakeries, supra, at 257; Warner Brothers, Inc. v. American
Broadcasting Companies, Inc., 720 F.2d 231, 240-242 (2d Cir.
1983); Thompson Medical Company, Inc. v. Pfizer, Inc., 753 F.2d

Ex. F-19

- 13 -

such products.  As they appear to potential customers on the
racks or shelves, Levi's jeans are marked with two permanent
labels (the Two Horse Brand and the Pocket Tab) and the two
temporary cardboard labels as depicted both in Exhibit C to the
Schutzman Affirmation and Exhibit 11 to the Flath Affidavit
submitted by Levi.

Even a brief glance at the above exhibits depicting
the Levi brand jeans as they are displayed for sale reveals the
single weakest aspect of the claims Levi has made before this
Court.  THE LEVI ARCUATE IS NOT VISIBLE ON THE PRODUCT UNDER
ACTUAL SALE CONDITIONS.  See Exhibit C to the Schutzman
Affirmation; Exhibit 11 to the Flath Affidavit.  So "important"
to Levi is its arcuate that Levi has chosen to cover the
arcuate design with temporary cardboard labels which hide the
arcuate from the view of the potential purchaser or consumer.
Note also the advertising signs used at The GAP Stores
described in the Lee Affirmation in paragraph 9.  The
photocopies of the signs attached as Exhibits 8-11 thereto
clearly reveal that the price points are placed squarely over
and largely obscure that portion of the back pocket where the
arcuate design ordinarily appears.  See Exhibit 12 to the Lee
Affirmation and note the blank space or the plastic styrene
price point holders visible in Exhibits 8-11.

In a very similar fashion, Levi has placed great
emphasis on its advertising and the key importance of the

Ex. F-20

arcuate in its advertising scheme. However, Levi has not bothered to explain why invariably the print ads attached to the Flath Affidavit call attention to Levi trademarks other than the arcuate and almost totally ignore any mention of the arcuate in the trademark legends at the bottom of each, and in the ad copy as well. For instance, in Exhibit 7 to the Flath Affidavit, which contains ads represented by Levi to be typical ads used in the 1970's, each of the ads refers to the Levi's name as being a registered trademark. Additionally, the trademark legends all refer to the Tab, the word "Levi's" and in some cases, the word "Sta-prest," as registered trademarks of Levi Strauss & Co. But not a single ad mentions that the arcuate is a registered trademark. The ads depicted on pages 5 and 7 of Exhibit 7 also emphasize a point which Lois contends is true -- that the customer should look for the famous Tab on the back pocket to assure that he is buying authentic Levi jeans. See Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817 (9th Cir. 1980). This is a critical point since all Levi jeans bear the back pocket Tab; Lois jeans bear no such identifying symbol. See also Exhibit 8 to the Flath Affidavit, which contains ads represented by Levi to be typical ads used in the 1980's, which again depicts ad copy referring to other marks, here the "Two Horse Brand", in addition to the Tab and the word

Ex. F-21

"Levi's" as registered marks.  The ads presented to this Court simply reinforce the message of the <u>Levi</u> v. <u>Blue Bell</u> case, that the name and the Tab are well recognized external identifiers of Levi's brand jeans.  The arcuate, on the other hand, is wholly lacking in similarly distinctive qualities, and cannot qualify for bootstrap protection based on the strength of Levi's other marks.

D.  <u>Physical Distinctions Between the Marks</u>

It is Lois' position that the back pocket designs employed by it and Levi are not confusingly similar.  Not surprisingly, Levi has taken an opposite view.  The Court is capable of drawing its own conclusions as to the dissimilarities and similarities of the respective  designs and whether, in the context of the manner in which the respective jeans appear in a sales setting, there is a likelihood that the Lois jeans will be confused with Levi jeans by potential purchasers.  As has been pointed out by Lois in its moving papers, the Lois mark features wide double stitching of two curved arcs which continue together for approximately one inch below the point of intersection, leaving the general impression of a large letter "Y".  The Levi design consists of narrow stitching following slightly less curved arcs which do not continue past their point of intersection resulting in a wide letter "V".

For purposes of this motion for summary judgment, it is noteworthy that the Second Circuit has previously denied protection to a senior user even when the marks have been substantially similar, as in McGregor-Doniger, supra, and even where the parties have admitted that the marks were identical. Mushroom Makers, Inc. v. R.G. Barry Corporation, 580 F.2d 44, 47 (2d Cir. 1978); Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d 621 (2d Cir. 1983). Accordingly, the question of the physical similarity can be appropriately determined and relied upon by the Court at this juncture.

> E.  The Defective Surveys Propounded By Levi
>     Would Be Inadmissible At Trial

Levi has asserted that surveys conducted by J.C. Penney's and Bruno & Ridgway provide evidence of likelihood of confusion between the Levi and Lois stitched designs. Both surveys are so seriously defective that the Court can determine at this stage of the case that they would not be admissible at trial or, in any event, are of such insufficient probative weight that they should not (indeed cannot) be considered at all on these applications.

It is an absolute requirement of this Circuit that likelihood of confusion must be determined by viewing the contested marks under actual sales condition and in the setting or context in which products bearing those marks are sold. Olay Co. v. Cococare Products, Inc., 218 U.S.P.Q. 1029, 1041

Ex. F-23

(S.D.N.Y. 1983).  In the recent case of <u>Mennen Co.</u> v. <u>Gillette</u>
<u>Co.</u>, 565 F. Supp. 648 (S.D.N.Y. 1983), decided by Judge
Pollack, Mennen attempted to introduce a survey based upon a
comparison of the contested deodorant products with all sales
and packaging indicia removed except for stripes or bars
utilized on the respective packages.  Judge Pollack, in holding
the survey inadmissible, noted:  "The test failed to come close
to replicating the appearance in which consumers actually
perceive anti-perspirant products on the shelves." 565 F. Supp.
at 652.

In a telling colloquy between the survey designer and
Judge Pollack, the following was revealed:

> The survey designer himself stated that this
> survey did not evaluate the effect of the
> label as a whole.
>
> The Court:  In other words, <u>you realized that</u>
> <u>the appearance of the shelf was wholly</u>
> <u>diverse from the isolated appearance of a</u>
> <u>couple of bars in the survey</u>, isn't that
> right?
>
> The Witness:  <u>Absolutely</u>.
>
> The Court:  And every shelf that you have
> ever seen, <u>the identity of the distributor or</u>
> <u>the marketer is indicated by the name</u> of the
> marketer or <u>his trademark name</u>:  Is that so?
>
> The Witness:  <u>Yes</u>, but I wasn't being asked—
>
> The Court:  Didn't you consider whether that
> had any influence on the fairness of taking
> in isolation a couple of bars and asking
> whether those bars could be identified with
> one or another of the manufacturers?

Ex. F-24

The Witness:  The bars in isolation were all
that I was asked to research.  I was not
asked to research labels.  Had I been asked
to research labels, I might have done it
differently.

The Court:  Had you researched the labels
that were used on these packages, you
couldn't possibly have utilized only the bars
to determine the reaction of people to the
identity of the label could you?

The Witness:  Absolutely not.

Not only is there thus no evidence to sustain
the notion of confusion, but the Gillette
stripe is not similar to the Mennen stripes.
Comparison thereof either by detail, their
overall impact or their effect on the
packaging as a whole, reveals substantial
differences in appearance. [Emphasis in
original]

565 F. Supp 648, 654.

At his deposition conducted on February 14, 1985, A.

Spencer Bruno, president of Bruno and Ridgway, admitted in much

the same manner as the Mennen survey designer that the

comparison of marks presented to survey respondents consisted

only of the stitched designs, that the jeans were stripped of

all other sales indicia or identifying marks and that there was

no effort to simulate the appearance of the products on the

shelf or as they are displayed to consumers at the point of

sale.  See transcript of Bruno deposition at pages 12-16 and

33-35, copies of which are attached to the Bailey Affirmation as

Exhibit 3.  The J.C. Penney survey is equally defective for the

same reason.  See Ostroff Affidavit at paragraphs 4-5.  This

Ex. F-25

- 20 -

Court has stated in the recent <u>Olay</u> case, <u>supra,</u> at 1040, that survey evidence compiled in a "non-marketplace setting" is "not very helpful" and that such evidence of similarity is not superior to the observation of the fact finder.  This Court noted the same infirmity, the failure to replicate the market setting, in evaluating mall intercept surveys presented in <u>Aris-Isotoner</u>, <u>supra,</u> at 23.  Again, this Court determined that such surveys failed to show likelihood of confusion, but probably only echoed the consumers' general familiarity with the manufacturer and its products.  <u>See</u> <u>SmithKline Beckman Corporation</u> v. <u>Proctor & Gamble Co.,</u> 591 F.Supp. 1229, 1240 (N.D.N.Y.).

Similarly, if surveys are defective in respect of any of the seven criteria noted by Judge Glasser in <u>Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.</u> 559 F. Supp. 1189, 1205 (E.D.N.Y. 1983), such surveys would be inadmissible, as they were in that case.  However, in view of the patent defects in the two Levi surveys, there is no need to point out the other elemental defects which plague each of Levi's surveys, such as failure to define a proper universe (each respondent owned an average of more than 6 pairs of jeans in one segment of the Bruno & Ridgway survey) or the ridiculously leading (or misleading) question used in the J.C. Penney survey (which jean is the Levi jean; <u>see</u> Ostroff Affidavit at paragraph 4.)

Ex. F-26

Finally, the so-called "fleeting view" impression test or the post-sale simulation advocated by counsel for Levi on page 7 of the Levi Memorandum is not the law of this Circuit. One of the two principal cases relied upon by Levi for this proposition, the Ninth Circuit's decision in 1980 in <u>Levi Strauss & Co.</u> v. <u>Blue Bell, Inc.,</u> 632 F.2d 817 (9th Cir. 1980), simply does not reflect the law of this Circuit.  In the <u>Aris-Isotoner</u> decision, for example, this Court cited with approval various portions of the <u>Blue Bell</u> case, but affirmed that proof of likelihood of confusion is not trustworthy unless the contested marks are viewed in their respective market place settings.  594 F. Supp at 24.  The other principal support for the "fleeting view" test advocated by Levi is the Second Circuit's decision in <u>American Footwear Corp.</u> v. <u>General Footwear Co.,</u> 609 F.2d 655 (2d Cir. 1979).  In <u>American Footwear</u> the Second Circuit upheld the lower court's rejection of plaintiff's survey evidence, including a telephone survey and a mall intercept survey.  The mall intercept survey was <u>rejected,</u> contrary to the position espoused by Levi, because "the critical defect in this survey was the <u>failure to conduct it under actual marketing conditions.</u>" (emphasis supplied).  609 F.2d at 660-61 n.4.  Arrayed against the slim value of the Ninth Circuit's willingness to consider a survey simulating post-sale conditions in <u>Blue Bell</u> is an impressive body of precedent from this Court and the Second Circuit which requires that trustworthy survey

Ex. F-27

evidence of likelihood of confusion must simulate actual marketing conditions.  In view of the admitted failure of the Bruno & Ridgway and J.C. Penney surveys to even attempt such conditions, such surveys would be neither admissible nor probative if presented at a trial of this matter, and thus should not even be considered by this Court on these motions.

      F.   The Good Faith of Lois

      In its initial Memorandum submitted in support of this motion for summary judgment, Lois clearly outlined the historical and economic reasons for the use of its stitched design since 1959 on jeans which were first sold in Spain under the brand name Lois in 1961, and which since that time has been affixed to Lois jeans sold throughout the world.  See the lengthy explanation of Joaquin Saez Merino attached as Exhibit F to the Schutzman Affirmation submitted in support of this motion.  Additionally, in its moving papers Lois called attention to the parallel factual situation of the Tenglemann family as analyzed by this Court in its decision in the Plus Products case.  There, this Court and the Second Circuit noted that the defendant had long used the mark in issue in its home country and that it was the junior user, not the senior user, who stood to be tarnished by comparison to the senior user's lower price "bargain basement" reputation.  In the same way, it is Lois' reputation for producing fashion products that stands to be tarnished by any comparison to Levi's jeans, which are

basic, low-priced and unchanging.  See Paragraph 4 and Exhibits
7 and 8 to the Flath Affidavit which confirm Levi's targeted
market as being anything but fashion oriented.  In equally
similar circumstances, the Second Circuit denied relief to the
senior user in Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d
621, 625-26 (2d Cir. 1983), where the junior user had been
marketing higher cost and arguably higher quality lines of
clothing for approximately 5 years, compared to the forty plus
years the senior user had been using its mark.  This Court is
well experienced in the consideration of the issue of good
faith, and reference to its recent decisions dispels any
possibility of a factual predicate for bad faith being found on
the part of Lois or Textiles.  See Aris-Isotoner Gloves, Inc. v.
Fownes Brothers & Co., Inc., supra, 594 F. Supp. 15, 23; Chams,
supra.

     As further evidence of its good faith, Lois has
submitted in support of its motion the actual promotion and
advertising expenditures incurred from 1980-1984 in the
promotion of Lois garments.  The aggregate of promotion and
advertising expenses for that period was $3,194,165.  See Goujon
Affidavit at paragraph 3.  While Lois is unable to segregate the
amounts spent on advertising its products which bore stitched
designs from advertising spent on any other garments, the vast
majority of such amounts was devoted to jeans and trousers (most

of which featured stitched designs) and should be more than adequate to prove that Lois was not seeking a free ride on Levi's advertising or seeking to capitalize on the reputation or advertising of Levi or any other jeans producer.  See McGregor-Doniger, supra, at 1137; Proctor & Gamber Co. v. Johnson & Johnson, Inc., 485 F. Supp. 1185, 1201 (S.D.N.Y. 1979).  Such expenditures would be considered meaningful under the analysis of good faith in Plus Products, supra, and Aris-Isotoner, supra.

G.    The Goods Are Not Competitive

In its moving papers, including attached testimony of depositions taken in this action (see Schutzman Affirmation, Exhibits E,G and H), Lois described the three distinct markets for jeans in the United States.  In its opposition papers Levi has contended there is but a single market and has pointed to the alleged low price sales of Lois goods at a local discount salvage store, Dollar Bill's, as well as Levi's recent introduction of "Perry Ellis America", "Red Street", "Tourage SSE" and "Common Man's Apparel" lines of clothing as the reasons for its contention.

Because Lois is a fashion oriented seasonal line, which will likely include both successful and unsuccessful styles, and for the reasons set forth in paragraphs 12-19 of the Affidavit of Jeffrey D. Cohen, former president of Lois, Lois is forced to "dump" some of its nonsaleable goods at the

Ex. F-30

- 25 -

end of a selling season.  From time to time some of these
goods, both with and without back pocket stitching designs,
have ended up at Dollar Bill's and other "closeout" stores.  At
his deposition taken on January 17, 1985, Jeffrey Cohen
testified that dumped goods or "bombs" were sold to Dollar
Bill's or others in broken size lots at the end of seasons.
See pages 137-138 of the transcript of the Cohen deposition
testimony attached to the Bailey Affirmation as Exhibit 4.
Obviously Lois has no control over the prices at which Dollar
Bill's decides to sell its inventory.  By the same token,
although the "keystone" mark up system (double the cost) is the
benchmark in the clothing industry (see the Goujon Affidavit at
paragraph 5; see pages 34-35 of the Cohen deposition testimony,
attached as Exhibit 5 to the Bailey Affirmation), neither Lois
nor Levi can force their retailers to maintain prices at that
or any other level.  Notwithstanding, the public prices are
largely dependent on the wholesale prices paid by the retailers
to Lois or Levi, which happen to be considerably different.

It is useful to compare the recent average sales
prices of Levi's jeans, taken from its responses to
interrogatories, a true and correct copy of which is attached
to the Bailey Affirmation as Exhibit 6, with the estimated
average wholesale prices of Lois' jeans (see Goujon Affidavit
at paragraphs 4-5).  For instance, in 1982 the average price of
Levi's jeans sold to retailers has been represented to be

Ex. F-31

- 26 -

$11.53 by Levi.  Under keystone pricing, the average sales price to the public would be double the retailers' cost, or approximately $23.00 - $25.00 per pair.  In general, the potential profit margin of Levi's retailers would then be equal to $11.50 to $13.50 per pair, subject to any reduction in ordinary profit margin the retailer might choose to absorb. The average wholesale price for Lois' jeans during the same year was $35.00 for basic five pocket jeans, and $39 - $40 for fashion model jeans, depending upon style and fabric.  See Goujon Affidavit at paragraph 4.  Under keystone pricing, the average sales price to the public for the latter would be double those amounts, or approximately $70 to $80.  In general, the potential profit margin of Lois' retailers would then be equal to $35 to $40 per pair, again subject to any reduction in profit margin the retailer might choose to effect.  Lois submits that these built-in pricing constraints effectively separate Lois and Levi products from competition at both the wholesale and retail levels.

In the same manner as the Second Circuit in the Sally Gee case, supra, took note of the prices obtained by the "Sally Gee" and "Sally Lee" lines of clothing as a basis for differentiating between markets for clothing, so should this Court consider strongly the vastly different markets served by Lois and Levi.  A brief comparison of advertising submitted by the parties further establishes the distinctive differences

Ex. F-32

between their respective target markets.  The Lois advertising attempts to convey that Lois jeans are manufactured, styled and marketed in high price level markets dominated by European pants.  See samples of the Lois advertising attached as Exhibits B,C,D,E, and F to the Cohen Affidavit, and note the emphasis on European source, high quality and high prices suitable only for the "filthy rich".  In stark contrast, the representative advertising submitted by Levi, attached as Exhibit 7 (circa 70's) and Exhibit 8 (circa 80's) to the Flath Affidavit, describes Levi's targeted consumers as an entirely different segment.  Note the emphasis in Levi's advertising on descriptions such as "sturdy", "simple classic jeans", "tough 'n ready", "sturdy jeans pure and simple", "rugged", "no fads", and "saddleman boot jeans," which appear on the ad copy of items in Exhibit 7 to the Flath Affidavit.  In Exhibit 8, the more recent Levi's ad copy again identifies the market targeted by Levi with strong emphasis on such characteristics as "basic jeans", "durability", "tough", "hardworking", "iron-strong fabric", "tough heavy-weight denim", "tough xx denim", "sturdy rivets" and "rugged".

In view of the differing appeal and approach of the ad copy presented to the Court, it is appropriate for the Court to draw the same distinction drawn by the Second Circuit in Sally Gee, supra, at 623.  Even more persuasive is the Second Circuit's differentiation in the McGregor-Doniger case, supra,

Ex. F-33

at 1135, between McGregor's relatively inexpensive casual wear and the junior user's garments sold in the "medium to high fashion range". The court referred to the different markets served by the two lines of clothing as different segments in the "fashion hierarchy." Id., at 1135. There the court held that the "competitive distance" between the garments was a significant factor in its determination of no likelihood of confusion. Id., at 1135.

H.    Other Polaroid Factors

In Section G of this Memorandum, reference was made to the lack of competition between Lois brand garments and Levi's products. In its moving papers Levi has named four new lines it intends to produce which would apparently fall in a mid-price market, such as that dominated by Calvin Klein, Sergio Valente and others. See Cohen Affidavit at paragraph 15; see Flath Affidavit at paragraphs 21-23. Lois submits that there will nevertheless still exist a significant competitive distance between its higher priced fashion clothing and the mid-priced lines proposed by Levi. Significantly, Levi does not represent that it is "bridging the gap" with apparel which would bear the Levi arcuate and, in fact, a review of Exhibits 19-22 attached to the Flath Affidavit fails to show the presence of arcuate designs on any of the clothing in the proposed lines. There has thus been no bridging of the gap by Levi as it pertains to arcuate stitching use. A basic tenet of

trademark law expressed in American Footwear, supra, serves to remind the Court that protection to be afforded to a trademark "derives from, and is limited by, its actual use in the marketplace. La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271 (2d Cir. 1974)." 609 F.2d at 663-64. Accordingly, Levi is not entitled to invocation of the "bridging the gap" principle based upon its intentions to sell slightly more competitive products which will not feature the arcuate design at all.

Regarding the issue of quality, Levi has admitted that Lois jeans are not qualitatively inferior to Levi's jeans. Levi Memorandum at 36. Although each party asserts that its product is superior, for purposes of this motion, the factor of quality is not in dispute.

The sophistication factor is one previously addressed by this Court and the Second Circuit in McGregor-Doniger, supra, at 1137; Sally Gee, supra, at 623; and in Plus Products, supra, 722 F.2d at 1007. In those cases the Court found that the substantial prices charged, particularly by the junior user, as well as the different departments where the garments or other goods were usually found was sufficient to infer that potential consumers could be expected to exercise care in their selection of goods. It is noteworthy in each of the above

Ex. F-35

cases that, as here, it was the higher priced line of the junior user that established the degree of sophistication and which, as here, served to eliminate any likelihood of confusion among potential purchasers.

II.    THE LEVI MARK IS FATALLY WEAK

A.    The Levi Mark Lacks Distinction.

Levi's counsel has sought to portray the arcuate stitching design as a strong, historical mark which should enjoy a spillover effect from the admittedly well known Levi name or its other registered trademarks, such as the back pocket Tab and Two Horse Brand.  In fact, the arcuate is a simple design element constructed of only two lines and lacks any distinctive or unique design elements or qualities.  It is not readily distinguishable from a myriad of other designs and marks that appear on many products and military insignia, including those pointed out below.  Although Levi has attempted to capitalize on its famous name and to lend to its arcuate some of the trademark strength that derives from that name, as is evidenced by the representative ad copy attached to the Flath Affidavit, the arcuate is apparently at least fourth in strength and recognition behind the name, the Tab and the Two Horse Brand design.

Levi depends heavily in its moving papers upon the Ninth Circuit's decision in Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817 (9th Cir. 1980), and the court's finding

Ex. F-36

that the Tab was a particularly distinctive feature of the Levi
brand jeans.  It cannot be over emphasized that the use of the
Tab and its strength as a distinctive element of Levi's jeans
does not by osmosis or affinity, create any greater protection
for Levi's considerably less distinctive arcuate stitching
design.

By the same token, much of the "proof" of distinction
placed before the Court by Levi relates solely to the
popularity of its jeans generally.  For instance, the New
Yorker article attached to the Flath Affidavit as Exhibit 1
extols the recent worldwide popularity of jeans and discusses
the other Levi trademarks (brand name, Tab and Two Horse
design) but neglects any mention of the arcuate.  That article
thus has little relevance to the subject matter of this
lawsuit, except to point out on page 1 that American jeans were
not exported to Spain until the late 1960's, thereby
reinforcing the testimony of Joaquin Saez Merino (see Exhibit F
to the Schutzman Affirmation) that he was unaware of the Levi
design until well after Lois had commenced the use of its own
design in Europe.

As is also well settled, the sizeable extent of Levi's
advertising is not, in and of itself, indicative of the
strength or secondary meaning of a mark.  Metro Kane, supra, at
706;  American Footwear, supra at 663; Eli Lilly & Co. v.
Revlon, Inc., 577 F. Supp 477, 483 (S.D.N.Y. 1983).  The large

Ex. F-37

- 32 -

monetary amounts purportedly spent by Levi in advertising its
products does not establish that one of its less visible marks
is strong or even apparently strong.  Such amounts must also be
weighed comparatively against the 803,000,000 pairs of jeans
claimed to have been sold by Levi in the last 10 years.

In like manner, the mere fact that the Levi arcuate
may be "fanciful" rather than generic or descriptive does not
entitle it to categorization as a strong mark or as one worthy
of broad-based protection.  As this Court has recently
commented:  "... even a fanciful mark may be weakened by
third-party uses of the mark or similar marks."  Chams, supra,
citing Sun Banks of Florida, Inc., v. Sun Federal Savings and
Loan Association, 651 F.2d 311, 316 (5th Cir. 1981), and
Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d
112 (2d Cir. 1984).

Finally, whether Levi has been "enormously successful"
in policing the use of potentially infringing marks as claimed
in paragraph 11 of the Flipper Affirmation, or even "relatively
successful" according to Ms. Flipper's earlier deposition
testimony (see Exhibit 7 to the Bailey Affirmation), the
teaching of Plus Products is that extensive third party use
undermines the mark's strength, even where the owner of the
mark has been "vigilant in attempting to restrict others" from
using similar marks.  Plus Products, supra, 722 F.2d at 1002.

Ex. F-38

B.    Extensive Third Party Use

As is amply demonstrated by the record now before the Court, numerous third parties have been identified who used or are using arcuate stitching designs similar to Levi's.  By its response to Lois' first set of interrogatories, which solicited the identity of persons known to have been manufacturing, selling or distributing products bearing a similar arcuate design, Levi identified some 200 files relating to U.S. arcuate infringement and some 800 additional files relating to worldwide infringement.  In its motion papers, Levi does not deny third party use, but merely claims that Lois has failed to prove the extent of such use.

This Court has previously encountered and evaluated the extent of third party use, as well as its effect of nullifying any strength of a mark, in the Plus Products case, supra.  There, this Court found that the senior user's mark lacked strength and distinctiveness on the basis of extensive third party use:

> [I]ts frequent usage by others to identify
> different products is an indication that the
> mark is weak.  Triumph Hosiery Mills, Inc.
> v. Triumph Int'l. Corp., 308 F.2d 196, 199
> n.2 (2d Cir. 1961).  Extensive third party
> use is shown here by [senior user's] cease
> and desist correspondence.  Since 1970
> [senior user] has sent demand letters
> involving over 130 different uses of PLUS
> for various goods and services.  [Footnote
> omitted, emphasis supplied].

564 F. Supp. at 990.  While Lois has chosen not to burden this

Ex. F-39

- 34 -

Court with attaching the 200 post-1970 domestic demand letter
files which Levi has produced to Lois and which are referred to
in the above mentioned interrogatory response, Lois has placed
before this Court significant evidence which reinforces the
third party usage reported by Levi, and Levi's interrogatory
response in this regard speaks for itself.

Lois has submitted herein in support of the evidence
of 200 different demand files a small sample from such files of
those contested designs which very closely resemble the simple
double arcuate device used by Levi.  See the Cohen Affidavit at
paragraphs 5-6 and Exhibit A thereto, depicting some 20
different brands of jeans bearing similar designs.  As was
determined at the deposition of Cassandra Flipper, Deputy
General Counsel of Levi, all items depicted in Exhibit A were
the subject of demand letters and, in most cases, additional
communications occurred between the parties over a period of
time ranging from several months to as much as 14 years while
Levi sought to cause the alleged infringer to cease production
and sale.  See Deposition Testimony of Cassandra Flipper at
64-67, a copy of which is attached to the Bailey Affirmation as
Exhibit 7.  See also the Affirmation of Thomas G. Bailey, Jr.,
submitted in support of this motion, at paragraph 4 and Exhibit
1 thereto, describing some 30 additional similar designs taken
from the protest files maintained by Levi, many of which bear
the familiar names of prominent jean companies such as Farah,

Ex. F-40

Ball, Sergio Valente, Cotler, Gloria Vanderbilt and Sasson.
Attached as Exhibit 2 to the Bailey Affirmation is a copy of
GAP brand jeans bearing arcuate type design.  Although Levi has
contended that the Gap stores are strongly identifed with Levi
jeans, Lois calls attention to the fact that the GAP has
previously sold jeans bearing an arcuate-type design, thus
diluting any strength of the Levi arcuate, and continues to
market trousers with a simple two-line design that is only
differentiated from the Levi design because the two lines are
not curved.  See Exhibits 8-11 to the Lee Affirmation.

Shortly before the initial depositions were taken in
this action in 1983, a Lois salesperson quickly purchased a
number of pairs of jeans which featured a simple arcuate-type
design or a more complex design which prominently displayed an
arcuate as a central feature.  Copies of the jean designs so
obtained have been submitted by Levi as Exhibit 14 to the
Affirmation of Alfred Lee.  Obviously, several of such designs
are quite similar to the Levi mark.

In addition, Lois has submitted a number of pairs of
jeans which feature an arcuate-type design which were purchased
in the matter of a few hours within the vicinity of Whitman &
Ransom's offices on January 15, 16, and 17, 1985.  See
Affidavit of Linda J. Rauzi and Exhibits 1-10.  Lois also
submits in support of its motion an Affidavit of Dorryann
Deluca and attached exhibits of copies of seven pairs of jeans

Ex. F-41

- 36 -

bearing arcuate-type designs which were obtained by visiting
five stores in midtown Manhattan on June 17, 1985.  Ms. Deluca
was able to locate each pair within minutes of entering each
store.  Lois respectfully submits that despite the policing
activities alleged to have been carried out by Levi, the jeans
market has been constantly besieged by arcuate-type designs.
The prevalence of arcuate-type designs was widespread during
the "heyday of the designer jeans craze" in 1979-1981, as
referred to by Ms. Flipper.  See transcript of Deposition of
Ms. Flipper at 116, a copy of which is attached to the Bailey
Affirmation as Exhibit 7.  The prevalence of arcuate-type
designs was still in evidence in early 1983 at the time the
jeans depicted in Exhibit 14 to the Lee Affirmation were
acquired.  It remained true when Ms. Rauzi went shopping in
January of this year.  See Rauzi Affidavit and Exhibits 1-10.
It remains true today.  See DeLuca Affidavit and Exhibits A-G.

III. LEVI'S CLAIM UNDER THE NEW YORK ANTI-
     DILUTION STATUTE IS WITHOUT MERIT

A weak mark is by definition already diluted, and as a
result its possessor is in a poor position to invoke applicable
anti-dilution statutes.  Exquisite Form Industries Inc. v.
Exquisite Fabrics of London, 378 F. Supp. 403, 415 (S.D.N.Y.
1974).  Due to widespread third party use of similar marks and
marks incorporating the arcuate stitching design, Levi's mark

Ex. F-42

no longer possesses a distinctive quality or strength (if it ever did) and thus Levi's claim under the New York anti-dilution statute must fail. See Plus Products, supra, 564 F. Supp. 984, 995, aff'd, 722 F.2d 999, 1005-1006 (2d Cir. 1983).

To warrant protection under N.Y. Gen. Bus. Law § 368-d, the New York anti-dilution statute, among other requirements, plaintiff must possess a mark of truly distinctive quality. Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d 621, 625 (2d Cir. 1983). In other words, as has been repeatedly indicated, the New York anti-dilution statute protects only extremely strong marks. Sally Gee Inc., supra, 699 F.2d 621, 635; Universal City Studios v. Nintendo Co., supra, 578 F. Supp. 911, 930; Plus Products, supra, 564 F. Supp. 984, 995; Allied Maintenance Corp. v. Allied Mechanical Trades, Inc., 42 N.Y.2d 538, 545-546 (1977). As the Second Circuit observed in reviewing the Allied case in the Sally Gee opinion:

> In Allied the majority indicated that the anti-dilution statute protects only extremely strong marks, see Allied, 42 N.Y.2d at 545-46, 399 N.Y.S.2d 628, 369 N.E.2d 1162; see also 1954 N.Y.Legis. Annual 49 (listing as examples of diluting tradenames: "Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, [and] Bulova gowns"); perhaps not even all those that qualify as arbitrary or fanciful, see id. at 548, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (Cooke, J., dissenting) (reading majority opinion to limit protection of

statute to "most well known names").
[emphasis supplied]

699 F.2d at 625.  The Levi arcuate in this respect is in fourth

place in Levi's stable (behind the Levi brand name, the Two

Horse Brand design and the back pocket Tab), and does not

travel in the same prestigious company as names like Dupont,

Buick and Kodak which would be protectible under the

anti-dilution statute.

The record in the present case provides abundant

evidence of extensive third party use of similar marks.  See

Cohen Affidavit, Exhibit A; Rauzi Affidavit, Exhibits 1-10;

Bailey Affirmation, Exhibit 1; DeLuca Affidavit, Exhibits A-G;

Lee Affirmation, Exhibit 14.  Ms. Flipper has also acknowledged

the widespread use of similar marks in the late 1970's and

early 1980's:

> Q.  We have reviewed a number of files this
> afternoon.  Do you have any impression as to the
> overall number of alleged infringing jeans that
> were in the marketplace and available for sale
> during any portion of this period of time, any
> particular year or all years?
>
> A.  The late '70's, early '80's, as I said, were
> in the heyday [sic] of the designer jeans craze
> and infringements were constantly popping up and
> we did our best to protest and to get them
> removed from the market.

See Transcript of Deposition of Cassandra Flipper, dated

December 14, 1984 at 116, attached as Exhibit 7 to the Bailey

Affirmation.  In light of the evidence of the ubiquitous

presence of similar arcuate-type stitching designs, protection under the anti-dilution statute is virtually precluded, <u>Sally Gee</u>, <u>supra</u>, at 625.

Even if this court concludes, however, that Levi's arcuate is a mark of distinctive quality, Levi's claim under the anti-dilution statute must still fail because there has been no evidence here of dilution. <u>El Greco Leather Products Co.</u> v. <u>Shoe World, Inc.</u>, 599 F.Supp. 1380, 1396 (E.D.N.Y. 1984). To establish a cause of action under the anti-dilution statute, plaintiff, in addition to showing that its trademark has a truly distinctive quality, must also demonstrate likelihood of dilution or, in other words, tarnishing or blurring of that mark. <u>See Sally Gee, Inc.</u>, v. <u>Myra Hogan, Inc.</u>, <u>supra</u>, 699 F.2d 621, 625; <u>Universal City Studios, Inc.</u> v. <u>Nintendo Co. Ltd.</u>, 746 F.2d 112, 120 (2nd Cir. 1984); <u>Warner Bros</u> v. <u>ABC</u>, 720 F.2d 231, 248 (2d Cir. 1983). Dilution has been defined as a junior use of a mark which "tarnishes" the affirmative associations a mark has come to convey or "blurs" a mark's product identification. <u>Sally Gee, Inc.</u>, <u>supra</u>. Levi does not contend that Lois' use of the mark tarnishes its products' reputation. <u>See</u> Levi Memorandum at 28. In fact, there is no tarnishment because the Lois product is at the least equivalent and, at best superior, in terms of price and quality. <u>See</u> the deposition testimony of Andrew Gross, attached as Exhibit E to the Schutzman Affirmation

submitted herein.  See Sally Gee, Inc., supra, 699 F.2d at 625;
Mushroom Makers v. R.G. Barry, supra; See also Proctor & Gamble
Co. v. Johnson & Johnson Inc., 485 F. Supp. 1185, 1202, 1209
(S.D.N.Y. 1979), aff'd 636 F.2d 1203; King Research Inc. v.
Shulton Inc., 324 F.Supp. 631, 638-639 (S.D.N.Y. 1971).  Nor is
there any reliable evidence that Lois' use of the arcuate blurs
Levi's product identification.  Levi has not shown that the
source-evoking quality of its mark is likely to be weakened by
Lois' use of its stitching design.  Indeed, in view of Levi's
allegations that Lois is not a significant factor in the U.S.
sportswear market, this would probably be an impossibility.
See Levi Memorandum of Law at 36; Sally Gee, supra, 699 F.Supp.
at 626.

        Quite simply, in almost identical circumstances in the
Sally Gee decision, the Second Circuit held that the higher
priced "Sally Lee" clothing sold by the junior user did not
threaten to dilute the better established but moderately priced
"Sally Gee" clothing, either by tarnishing or by blurring the
reputation of Sally Gee in the minds of the consumers of
womens' apparel.  Further, again under remarkably similar
factual circumstances, the Second Circuit noted that the
absence of predatory intent on the part of the junior user
bolstered its dismissal of the anti-dilution claims,
particularly in view of the equitable origin of the
anti-dilution statute.  Sally Gee, supra, at 626.

Ex. F-46

Of course, should this Court find that Lois' and Levi's jeans are neither competitive nor similar, Levi would not in any event be entitled to relief under the New York anti-dilution statute. Olay Company, Inc. v. Cococare Products, Inc., 218 U.S.P.Q. 1028, 1044-45 (S.D.N.Y. 1983); Aris-Isotoner Gloves, Inc. v. Fownes Bros. & Co., 594 F. Supp. 15, 24 (S.D.N.Y. 1983); Smithkline Beckman Corp. v. Proctor & Gamble Co., 591 F. Supp. 1229, 1246-1247 (N.D.N.Y. 1984).

IV.    LEVI'S CROSS-MOTION FOR SUMMARY
       JUDGMENT MUST BE DENIED.

Levi's cross-motion for summary judgment is wholly dependent upon a determination favorable to it of all of the legal issues discussed above. For each of the reasons enumerated above, Levi is not entitled to the relief requested. Under the law of this Court and this Circuit, Lois jeans bearing the Lois stitched design, on this record, are not as of a matter of law confusingly similar to jeans sold by Levi, nor does the sale of Lois jeans dilute or violate any other rights Levi may otherwise possess.

In any event, however, Levi's cross-motion must also be denied in view of the numerous genuine issues of material fact raised by Levi in its Rule 3(g) Statement and its moving papers. Local Rule 3(g) requires that upon any motion for summary judgment, the moving party shall annex to the notice of motion "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." By its Rule 3(g) Statement, Levi has represented to this Court that (i) the 41 paragraphs contained

in its Statement refer to facts which are essential to a ruling
in its favor and (ii) all such facts are either undisputed or
cannot be genuinely controverted by Lois.

Lois has filed a Response to Levi's Rule 3(g)
Statement in which it controverts many of the basic "facts"
relied upon by Levi as essential to a ruling in its favor.  In
its Memorandum of Law and supporting affidavits submitted in
opposition to Levi's cross-motion, Lois has drawn the Court's
attention to numerous material factual issues which controvert
the "essential" averments set forth in Levi's Rule 3(g)
Statement, and which thereby preclude a ruling in favor of Levi
on its cross-motion.  For example, in paragraphs 38-41, Levi
has indicated that its survey evidence compiled by Bruno &
Ridgway and conclusions drawn from it are undisputed or cannot
be controverted.  As explained by Lois in its Memorandum, that
survey constitutes inadmissible and untrustworthy evidence of
likelihood of confusion, and thus it and its conclusions are
inadmissible.  By way of further example, in paragraphs 23 and
24, Levi has set forth "essential" facts and conclusions
concerning the motivations of third parties.  The purported
statements and beliefs of third parties constitute hearsay at
this stage, and would clearly require a trial on the issues if,
as Levi represents, such facts are essential to a ruling in its
favor.  Moreover, the "facts" relative to the distinctiveness
and strength of Levi's design and the competitiveness of the
respective products have been effectively controverted by the
affidavits submitted by Lois on these motions.  Because Levi's

Ex. F-48

Rule 3(g) Statement thus contains matters which at the very least raise genuine issues of material fact, Levi's cross motion must be denied.

By comparison, Lois has set forth in its Rule 3(g) Statement only 10 paragraphs of material facts which, if uncontroverted, provide the factual predicate for a favorable ruling on Lois' motion. Levi has only sought to controvert indirectly one of those factual premises, that being the price range at which Lois jeans are sold. In paragraph 9 of its Rule 3(g) Statement, Lois stated that, depending upon style, Lois brand jeans were sold at retail prices approximately 75% to 300% greater than Levi's jeans. In paragraph 36 of the Levi Statement, Levi indicates that Lois jeans are priced at 200% to 300% higher than Levi jeans (which is in complete agreement with Lois' representation), except that on occasion some styles of Lois jeans are sold at "low-priced (discount)" houses or "off-price" locations. Thus, the only disparity between the parties' statements relates not to the normal price range of the jeans sold by each company, which is the appropriate consideration, but to the off-price sales of some styles, notably the nonsaleable styles referred to in the Cohen Affidavit at paragraph 17-18.

In view of Levi's failure effectively to controvert Lois' Rule 3(g) statement in any material fashion, Lois' motion should be granted for all of the legal grounds set forth herein.

Ex. F-49

V.    Conclusions

For all of the foregoing reasons, the motion for summary judgment filed by Lois and Textiles should be granted, and the Levi cross-motion for summary judgment must be denied.

Respectfully submitted

WHITMAN & RANSOM

By: _____
    Max F. Schutzman

Attorneys for Lois Sportswear,
    U.S.A., Inc. and Textiles Y
Confecciones Europeas, S.A.
522 Fifth Avenue
New York, New York 10036
(212) 575-5800

2781B

Ex. F-50

- 45 -

## CERTIFICATE OF SERVICE

STATE OF NEW YORK  )
                   : ss.:
COUNTY OF NEW YORK )

      KATHERINE L. FRANK, pursuant to 28 U.S.C. § 1746, states:

      1.  I am an attorney duly admitted to practice in the courts of this State and in this Court.  I am an associate at the firm of Whitman & Ransom, attorneys for defendants Lois Sportswear, U.S.A., Inc. and Textiles y Confecciones Europeas, S.A., and am not a party to this action.

      2.  On June 19, 1985, I had the annexed Memorandum of Law and the following papers in support, i.e., Rauzi Affidavit, Cohen Affidavit, Goujon Affidavit, DeLuca Affidavit, Bailey Affirmation and Response to plaintiff's Rule 3(g) Statement served by hand upon the following attorneys of record for plaintiff:

          Milgrim Thomajan Jacobs & Lee
          405 Lexington Avenue
          New York, New York 10174

      3.  I certify under penalty of perjury that the foregoing is true and correct.

                    *Katherine L. Frank*
                    Katherine L. Frank

2801B

Ex. F-51