# Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -

LOIS SPORTSWEAR, U.S.A., INC.,            :

                      Plaintiff,   :   Civil Action No.
                                  :   82 Civ. 8326 (RWS)
    -against-                              :

LEVI STRAUSS & COMPANY,                   :

                      Defendant.  :
- - - - - - - - - - - - - - - - - - -x

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

LEVI STRAUSS & COMPANY,                   :

                      Plaintiff,   :   Civil Action No.
                                  :   83 CIV. 4338 (RWS)
    -against-                              :

TEXTILES CONFECCIONES EUROPAS, S.A.,      :

                      Defendant.
- - - - - - - - - - - - - - - - - - -x

### AFFIRMATION OF CASSANDRA M. FLIPPER

      CASSANDRA M. FLIPPER, hereby affirms the truth of the following pursuant to 28 U.S.C.A. § 1746.

      1.   I am a member of the Bar of the States of Missouri and California.  I have been employed by Levi Strauss & Co.

Ex. H-1

(defendant in 82 Civ. 8326 (RWS) and plaintiff in 83 Civ. 4338 (RWS)) ("Levi Strauss") since 1974. In 1977 I became Assistant General Counsel in the Legal Department and later Associate General Counsel. Since 1982 I have served as Deputy General Counsel to the Company.

2. Since 1976, one of my functions has required involvement in the maintenance and protection of the trademark rights of Levi Strauss worldwide, including the Arcuate design mark.

**Trademark Registration Rights Of Levi Strauss In The United States**

3. Levi Strauss owns various federal registrations of its Arcuate mark. The most pertinent are Reg. No. 404,248 issued November 16, 1943 and Reg. No. 1,139,254 issued September 2, 1980. (Exhibits 1 and 2.) Both registrations reveal a first date use of 1873. Exhibit 3 is a copy of another federal registration owned by Levi Strauss, i.e., Reg. No. 223,725 issued February 8, 1927. While it pertains to a mark consisting of the "oilcloth ticket" secured across the back right pocket, and not the LEVI'S Arcuate mark, the certificate nonetheless does show the latter mark in use at that time as it has continued to the present.

Ex. H-2

4.  Reg. No. 404,248 (Exhibit 1) has qualified under the provisions of § 15 of the Lanham Act (15 U.S.C. § 1065) and is both incontestable and entitled to the conclusive presumption of exclusive right of use provided for in 15 U.S.C. § 1115(b).

**The Diligent Policing Efforts Of Levi Strauss**

5.  During my tenure with the Company, the jeans business has been characterized by ease of entry, resulting in a proliferation of companies producing jeans, mostly on a small scale with many of them remaining in business for only a short time. The intensity of competition has caused some of these companies to imitate one or more of the Levi Strauss trademarks. Some persons abroad have even resorted to blatant counterfeiting of LEVI'S jeans. These jeans have found their way into channels of trade around the world to the point where detection of the bogus garments required the Company to undertake intensive investigational efforts and to adopt a sophisticated coding system which the counterfeiters cannot match. The counterfeiting problem is, in fact, a world-wide fraud which Levi Strauss has effectively fought as reported in The New Yorker magazine (Flath Aff't, Ex. 1) and many other publications. Such counterfeiting through the copying of LEVI'S jeans in the closest detail -- including all trademarks -- was a significant part of the record upon which the United States

Ex. H-3

3

Congress enacted the Anti-Counterfeiting Bill of 1984, P.L. 98-473 (18 U.S.C. § 2320, 15 U.S.C. §§ 1116(d), 1117(b), 1118).

6. Less bold than the counterfeiters have been various companies which have sought to enjoy some of the vast good will which attaches to the LEVI'S brand of jeans by using one or more of the Company's markings, or some close simulation thereof. This has included the LEVI'S Arcuate mark.

7. Long established procedures of the Company have been highly effective in combating these violations of its rights. As part of this program, marketing and sales employees of the Company have been routinely instructed that it is part of their responsibility to be alert to any infringement of the Company's trademarks which they might observe in the marketplace and to report them promptly to the Legal Department with such accompanying detail as can be provided. Reports of that kind have even come from some of the Company's most senior executives based upon their personal observations. A member of the Legal Department participates in the training sessions for all newly hired sales personnel of the Company. With the aid of a slide presentation and handbook, the Company's trademarks, including the LEVI'S Arcuate mark, are identified and the infringement reporting duties are explained.

Ex. H-4

8. Upon learning of any such infringement, Legal Department personnel attempt to develop whatever information is available respecting it and to make diligent efforts to cause it to be discontinued. This, typically, involves the sending of appropriate protest letters with follow-ups as necessary and occasionally by subsequent telephone conferences with the infringing party. In the largest number of such instances, prompt discontinuance has been effected by these informal means.

9. In some relatively few instances, the process may have taken longer than the average because of evasions or misrepresentations of the infringer. Where, however, these procedures were not effective in bringing about a discontinuance, the matter was referred to outside counsel and either resolved by further informal means or by initiating litigation. Legal action was commenced by the Company in 4 instances respecting infringments of the LEVI'S Arcuate mark and each resulted in an injunction prohibiting further such infringement.

10. During the late 1970's, when "designer" jeans came into fashion and brought many new companies into the field, infringements of the Levi Strauss trademarks peaked and the Company inaugurated a "bounty" program in the United States under which members of the sales force were awarded $100 for each report of a new infringement. Approximately 100 such awards

Ex. H-5                                5

were made, some of which pertained to the LEVI'S Arcuate mark, whether alone or in conjunction with another Levi Strauss trademark. These reports were promptly and effectively acted upon through the Company's Legal Department in the manner above described. As the problem waned, and the bounty program became unnecessary, it was discontinued. But the reporting of infringements has remained an assigned duty of the sales force and has continued to date.

11. During the discovery deposition taken of me in this action on December 14, 1984, I was closely questioned regarding various infringement files selected by counsel for Lois from among those previously supplied to him. At that examination, the documents were marked as Exhibits therein. As they and the balance of infringement files respecting the LEVI'S Arcuate mark reveal, Levi Strauss has been enormously successful in causing discontinuance of infringements of that mark by informal means and by litigation where necessary. The conclusory and misleading arguments to the contrary in the summary judgment motion papers of Lois simply disregard and distort the unimpeachable record. To the extent that such infringements have occurred, short-lived in all but the most intractable instances, they simply reflect the fact -- not that the LEVI's Arcuate mark is in any way infirm, as Lois contends -- but that the mark's public recognition and appeal make it a target for attempts by

others to ride on the coattails of Levi Strauss' reputation by copying or simulating that mark, as well as the Company's other trademarks.

12. I believe it highly significant that, when called upon in discovery to identify any of the infringements of the LEVI'S Arcuate mark asserted by Lois, it produced a group of designs used by others which, in largest part, plainly are so different from the LEVI Arcuate mark as not to be a copy or simulation of it. And, with but one or two exceptions, those designs were of such insignificance in the marketplace that none of the three principal executives of Lois Sportswear had previously been aware of them but knew that the producing companies were either of modest size or defunct, or both. (See Lee Affirmation.)

13. The lack of any specific facts supporting the conclusory assertions of Lois on this motion respecting third-party use of designs similar to the LEVI'S Arcuate tacitly confesses the poverty of those arguments. There simply has been no showing, and there could be none, that any third-party infringements of the LEVI'S Arcuate has had any significant use in the marketplace as would affect the distinctiveness of that mark.

Dated: San Francisco, California
       May 7, 1985

Ex. H-7

_____
CASSANDRA M. FLIPPER

91761

7

Ex. H-8

Registered Nov. 16, 1943

Trade-Mark 404,248

Republished, under the Act of 1946, April 27, 1948, by Levi Strauss & Company, San Franisco, Calif.

Affidavit under Section 8 accepted.
Affidavit under Section 15 received, Aug. 31, 1953.

# UNITED STATES PATENT OFFICE

Levi Strauss & Company, San Francisco, Calif.

Act of February 20, 1905

Application September 25, 1942, Serial No. 455,789



## STATEMENT

*To the Commissioner of Patents:*

Levi Strauss & Company, a corporation duly organized under the laws of the State of California and located at the city and county of San Francisco, State of California, and doing business at 98 Battery Street, San Francisco, California, has adopted and used the trade-mark shown in the accompanying drawing, for WAISTBAND TYPE OVERALLS, in Class 39, Clothing, and presents herewith five facsimiles showing the trade-mark as actually used by applicant upon the goods, and requests that the same be registered in the United States Patent Office in accordance with act of February 20, 1905. The trade-mark has been continuously used and applied to said goods in applicant's business since the year 1873. The trade-mark consists of double arcuate designs of orange color displayed on the hip pockets of the overalls as shown on the drawing. The mark is applied to the overalls by stitching the double arcuate designs on the hip pockets with orange colored thread, or by painting the lines of said design on the hip pockets with orange colored paint.

No claim is made to the exclusive use of the representation of a pair of overalls.

The undersigned hereby appoints Castberg & Roemer, a firm composed of Thomas Castberg and Irving C. Roemer, whose address is 807 Crocker Building, San Francisco, California, and whose registration number is 15,030, as its attorneys, with full power of substitution and revocation, to prosecute this application, to make alterations and amendments therein, to receive the certificate of registration, and to transact all business in the Patent Office connected therewith.

LEVI STRAUSS & COMPANY,
By DANIEL E. KOSHLAND,
*Vice President.*

Ex. H-9

Ex. H-10

Int. Cl.: 25

Prior U.S. Cl.: 39

**United States Patent and Trademark Office**

Reg. No. 1,139,254

Registered Sep. 2, 1980

## TRADEMARK
Principal Register



Levi Strauss & Co (Delaware corporation)
Two Embarcadero Ctr.
San Francisco, Calif   94106

For PANTS, JACKETS, SKIRTS, DRESSES AND SHORTS, in CLASS 25 (U S CL 39)
First use 1873 in commerce 1873
Owner of U S Reg No 404,248

Ser No. 169,399 Filed May 8, 1978

M J LEAHY, Primary Examiner

Ex. H-11

Registered Feb. 8, 1927.                                    Trade-Mark 223,725

Renewed Feb. 8, 1947, to Levi Strauss and
Company, San Francisco, Calif.

# UNITED STATES PATENT OFFICE.

LEVI STRAUSS & COMPANY, OF SAN FRANCISCO, CALIFORNIA.

ACT OF FEBRUARY 20, 1905.

Application filed February 16, 1926.   Serial No. 227,374.



RENEWED: February 8, 1967

## STATEMENT.

*To the Commissioner of Patents:*

Levi Strauss & Company, a corporation, duly organized and existing under the laws of the State of California, and having its principal place of business in the city and county of San Francisco, State of California, has adopted and used the trade-mark shown in the accompanying drawing, for OVERALLS, in Class 39, Clothing, and presents herewith five facsimiles in the nature of photographs showing the trade-mark as actually used by applicant upon the goods, and requests that the same be registered in the United States Patent Office in accordance with the act of February 20, 1905, as amended. The trade-mark has been continuously used and applied to said goods in applicant's business since the year 1892. The trade-mark consists of an oilcloth ticket secured across a back pocket of the overalls substantially as shown on the accompanying drawing. The mark has been in actual use as a trade-mark by the applicant for ten years next preceding Feb. 20, 1905, and such use has been exclusive. No claim is made to the exclusive use of the representation of a pair of overalls apart from the trade-mark shown.

The undersigned hereby appoints Miller & Boyken, a firm composed of John H. Miller and A. W. Boyken, (register No. 12,147) of 723 Crocker Building, San Francisco, California its attorneys to prosecute this application for registration, with full powers of substitution and revocation, to make alterations and amendments therein, to receive the certificate and to transact all business in the Patent Office connected therewith.

LEVI STRAUSS & COMPANY,
By SIGMUND STERN,
*President.*

Affidavit under Section 8 accepted.
Affidavit under Section 15 received, June 1, 1953.

Levi Strauss & Co., a Delaware corporation, recorded U. S. Patent Office, June 11, 1971, Reel 208, frames 114-115.

Republished, under the Act of 1946, Apr. 20, 1948, by
Levis Strauss & Company, San Francisco, Calif.

Ex. H-12