# Exhibit P

# 85-7976/

# United States Court of Appeals

### for the

## Second Circuit



MAR 0 4 1986

SECOND CIR

**LOIS SPORTSWEAR, U.S.A, INC.,**

*Plaintiff-Appellant,*

**TEXTILES Y CONFECCIONES EUROPEAS, S.A.,**

*Defendant-Appellant,*

— against —

**LEVI STRAUSS & COMPANY,**

*Defendant-Plaintiff-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR APPELLANT

WHITMAN & RANSOM,
Attorneys for Plaintiff-Appellant and
Attorneys for Defendant-Appellant,
522 Fifth Avenue
New York, New York 10036
(212) 575-5800

*Of Counsel:*
MAX F. SCHUTZMAN

Ex. P-1

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . .  (i)

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . .  1

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . .  1

    I.    THE COURT'S GRANT OF SUMMARY JUDGMENT
        WAS IMPROPER . . . . . . . . . . . . . . . . .  1

        A.    THE LOWER COURT'S TWO PRINCIPLE ERRORS  . . .  5

        B.    IN ASSESSING LIKELIHOOD OF CONFUSION
            ALL POLAROID FACTORS MUST BE CONSIDERED
            AND NO SINGLE FACTOR IS PREEMINENT  . . . . .  14

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . .  17

Ex. P-2

TABLE OF AUTHORITIES

Page

American Footwear Corp. v. General Footwear
    Co. Ltd., 609 F.2d 655 (2d Cir.1979),
    cert. denied, 445 U.S. 951 (1980)..................... 13

American International Group Inc. v. London
    American International Corp. Ltd., 664
    F.2d 348 (2d Cir. 1981)............................... 1, 7

Amstar Corp v. Domino's Pizza, Inc., 615
    F.2d 252 (5th Cir.), cert.denied, 449
    U.S. 899 (1980)....................................... 10

Bowmar Instrument Corp. v. Continental
    Microsystems, Inc., 497 F.Supp. 947
    (S.D.N.Y. 1980)....................................... 8

D.C. Comics, Inc. v. Reel Fantasy, Inc., 696
    F.2d 24 (2d Cir. 1982)............................. 5, 6, 14

Dallas Cowboys Cheerleaders, Inc. v.
    Pussycat Cinema, Ltd., 604 F.2d 200
    (2d Cir. 1979),....................................... 3

In re Yarn Processing Patent Validity
    Litigation, 498 F.2d 271 (5th Cir.
    1974), cert. denied, 419 U.S. 1057 (1974).............. 7

Lambda Electronics Corp. v. Lambda
    Technology Inc., 515 F. Supp 915
    (S.D.N.Y. 1981),...................................... 4

Lever Brothers Co. v. American Bakeries Co.,
    693 F.2d 251 (2d Cir 1982);................. 10, 11, 12, 16

Manhattan Industries, Inc. v. Sweater Bee By
    Banff, Ltd., 627 F.2d 628 (2d Cir. 1980)............... 16

McGregor-Doniger Inc. v. Drizzle Inc., 599
    F.2d 1126 (2d Cir. 1979).................... 9, 10, 11, 16

Mushroom Makers, Inc. v. R.G. Barry Corp.,
    580 F.2d 44(2d Cir. 1978), cert.denied,
    439 U.S. 1116 (1979)............................ 2, 11, 17

Pignons S.A. de Mecanique de Precision v.
    Polaroid Corp., 657 F.2d 482 (1st Cir. 1981)........... 10

(i)

Plus Products v. Plus Discount Foods, Inc.,
    564 F. Supp. 984 (S.D.N.Y. 1983), aff'd
    in part, rev'd in part, 722 F.2d 999 (2d
    Cir. 1983)........................................... 10

Polaroid Corp. v. Polarad Electronics Corp.
    287 F.2d 492 (2d Cir.), cert.
    denied, 368 U.S. 820 (1961)........................... 4

Quinn v. Syracuse Model Neighborhood Corp.,
    613 F.2d 438 (2d Cir. 1980)........................... 2

Smithkline Beckman Corp. v. Proctor & Gamble
    Co., 591 F. Supp. 1229 (N.D.N.Y.
    1984), aff'd, 755 F.2d 914 (2d Cir. 1985)........... 12, 13

Thompson Medical Company, Inc. v. Pfizer
    Inc., 753 F.2d 208 (2d Cir. 1985)..................... 2

Universal City Studios, Inc. v. Nintendo
    Co., Ltd., 746 F.2d 112 (2d Cir. 1984)............... 13

Vitarroz Corp. v. Borden, Inc., 644 F.2d 960
    (2d Cir. 1981)..................................... 11, 16

## STATUTES AND OTHER AUTHORITIES

N.Y. Gen. Bus. Law § 349................................... 2

N.Y. Gen. Bus. Law § 368-d................................. 2

2 J. McCarthy, Trademarks and Unfair
    Competition, § 23.18 (2d ed. 1984)..................... 12

(ii)

Ex. P-4

## PRELIMINARY STATEMENT

The critical issue to be decided upon this appeal is whether the Court below erred in granting summary judgment to appellee, Levi Strauss & Company ("Levi"). Contrary to Levi's abbreviated mischaracterization of the argument of appellants Lois Sportswear U.S.A., Inc. and Textiles y Confecciones Europeas, S.A. (jointly referred to as "Lois"), Lois submits that because the lower court engaged in impermissible fact finding with respect to material disputed issues and also misconstrued the law, reversal of the decision below and remand of the case are warranted.

## ARGUMENT

### I.

### THE COURT'S GRANT OF SUMMARY JUDGMENT WAS IMPROPER

It is beyond dispute that the responsibility of the district court judge on a motion for summary judgment is merely to determine whether there are issues to be tried rather than to try the issues. <u>American International Group Inc. v. London American International Corp. Ltd.</u>, 664 F.2d 348, 351 (2d Cir. 1981). Because the court below exceeded its authority on this summary judgment motion and resolved rather than identified material factual issues, the award of summary judgment was improper. The district judge in this instance should not have

Ex. P-5

ruled in favor of Levi if evidence presented by Lois was sufficient, as it was, merely to generate "uncertainty as to the true state of any material fact." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 444-45 (2d Cir. 1980). With respect to the issue of a mark's strength, evidence of third party use and similarity of the contested marks, Lois through its evidence and Levi through its admissions, at the least, raised significant material issues of fact.*

The crucial issue in claims of trademark infringement and unfair competition is to determine whether there is a likelihood that an appreciable number of ordinarily prudent purchasers will be misled or confused as to the source of the goods in question. Thompson Medical Company, Inc. v. Pfizer Inc., 753 F.2d 208, 213 (2d Cir. 1985), citing to Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978), cert. denied, 439 U.S. 1116 (1979). Where Levi has admitted that there is no likelihood that a purchaser would be misled into believing that Lois jeans, as they are ordinarily

---

* The District Court's error i.e. resolving issues of fact with respect to the strength of the Levi mark and third party use also mandates a reversal of its decision to grant Levi relief under the New York anti-dilution statute, N.Y. Gen. Bus. Law § 368-d and the unfair competition provision, N.Y. Gen. Bus. Law § 349. Because the dilution statute only protects extremely strong marks, and the court impermissably resolved the issue of strength, its determination in this respect must be reversed (see Lois brief at 40-41). To be sure, Lois' view below was that the evidence of mark erosion was so pervasive that it was entitled to summary judgment.

displayed in sale circumstances, were Levi jeans (or the
converse), the district judge cannot competently find that
"ordinarily prudent purchasers" will be so misled.  Levi's sole
charge at the oral argument on summary judgment below became a
claim of confusion under the standard articulated by this Court
in <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.</u>,
604 F.2d 200, 205 (2d Cir. 1979), that is, whether the
"public's belief that the mark's owner <u>sponsored or otherwise</u>
<u>approved</u> the use of the trademark satisfies the confusion
requirement" (emphasis supplied).  Mysteriously, Levi presented
absolutely no evidence in support of this type of confusion
other than counsel's unsupported argument to the effect that
the public is generally familiar with cross-licensing
agreements and distribution agreements  (A-951).  Equally
surprising, the district judge found the possibility of
"licensing" confusion, notwithstanding the absence of any
evidence directed to the point and despite the exceedingly low
weight given to the Bruno and Ridgway survey which purportedly
showed "post-sale" or fleeting glimpse confusion, not confusion
as to sponsorship  (SA-41-42, A-964).  While Levi speciously
argues that the names "Lois" and "Levi" bear certain
similarities to each other, no evidence purporting to show
confusion was presented on this point, other than counsel's
argument.  The district judge's holding of confusion either on
the basis of sponsorship or based upon the manner in which the

Ex. P-7

-3-

marks and the products are offered for sale in the marketplace, defies the basic tenets of trademark law.

The parties and the district court acknowledge that an assessment of the likelihood of confusion entails a review of a variety of factors as set forth in this Court's decision in Polaroid Corp. v. Polarad Electronics Corp. 287 F.2d 492, 495 (2d Cir.), cert denied, 368 U.S. 820 (1961). The lower court considered these Polaroid factors, resolved six of the eight factors in favor of Lois, that is, against a finding of likelihood of confusion and yet nevertheless concluded that there was a likelihood of confusion. Contrary to Levi's insinuations (Levi Brief at 12-13), Lois is well aware that a determination of likelihood of confusion is not premised on a simple tally of the Polaroid factors, but rather entails a balancing or weighing of them in arriving at the ultimate conclusion of likelihood of confusion. However, Lois submits that at the summary judgment stage where, as here, the preponderance of factors favor a finding of no likelihood of confusion, see Lambda Electronics Corp. v. Lambda Technology Inc., 515 F. Supp 915, 928 (S.D.N.Y. 1981), and furthermore where the two factors favoring a finding of confusion are based on disputed facts and inferences and the incorrect application of controlling legal standards, it was clearly erroneous to find likelihood of confusion and thus award summary judgment to Levi.

Ex. P-8                                -4-

A.  The Lower Court's Two Principle Errors.

A review of the Court's analysis of the two Polaroid
factors, namely, strength and similarity, upon which it based
its determination of a likelihood of confusion reveals the
lower court's error.  That error is particularly blatant with
respect to the issue of the mark's strength.  On that issue,
the Court acknowledged that "[t]he strength of a mark, however,
may be diminished by the existence of similar marks used in
connection with similar products" (A-22), and yet astonishingly
rejected Lois' extensive evidence of third party uses of
arcuate stitching designs similar to Levi's which demonstrate
the erosion of strength of the Levi mark.  Such rejection was
clearly beyond the scope of the lower court's authority on a
summary judgment application because it entailed the resolution
of a material and disputed factual issues as to the strength of
Levi's mark.

Judge Sweet's unaccountable rejection of the evidence
of third party use is strikingly similar to the district
judge's errors in D.C. Comics, Inc. v. Reel Fantasy, Inc., 696
F.2d 24 (2d Cir. 1982).  There the district judge's conclusions
as to the strength and similarity of "Batman" and "Batcave"
were overruled on the basis that he had, as Judge Sweet has
below, ignored evidentiary material.  Judge Sweet's conclusion
on strength ignored the evidentiary material submitted by Lois
which suggested an unmistakable association between the

extensive numbers of third party users, some persisting for as much as 14 years (A-736-738), and the crippling impact of such use on the strength of the mark. As this Court cautioned Judge Duffy in the <u>D.C. Comics</u> decision, "factual conclusions are inappropriate on a motion for summary judgment."  696 F.2d at 27.  Judge Sweet's personal conclusion that the number of third party users shows a "counterfeiter's respect" for the mark, rather than the dilution of the mark, is just such an impermissible factual conclusion.

As described in greater detail in Lois' initial brief to this Court (Lois brief at 30-32), the record demonstrates that numerous third parties have been identified who used or who are using arcuate stitching designs similar to Levi's.  The evidence was derived from Levi's files (A-94, A-661, A-663-713, A-749-809), as well as from actual physical evidence obtained by Lois (A-291-308) and Lois' counsel during visits to nearby Manhattan clothing stores (A-851-877, A-830-847).  The record also amply demonstrates that the acquisition of jeans bearing similar designs used by third parties was a relatively simple task due to their prevalence in the marketplace (Lois Brief at 31-32).

In dismissing Lois' claim of erosion of strength due to third party use, the court below also discredited Lois' evidence due to its purported failure to demonstrate the extent of such use or the degree to which such use had diminished the

effectiveness of the Levi mark as an indication of source. The fact is, Lois had no obligation in response to Levi's summary judgment motion to prove its claim, as it would at trial, only to come forward with sufficient evidence to raise a genuine issue of material fact. See American Intern. Group, Inc. v. London Amer. Intern., supra, 664 F.2d at 351.

Moreover, the court likewise erred in assessing the probative value of the evidence presented by Lois. As one court notes:

> [T]he trial court should be very careful . . . to avoid assessing the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device. Assessment of the probative value of evidence is properly the function of the jury or the judge sitting as a trier of facts. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

In re Yarn Processing Patent Validity Litigation, 498 F.2d 271, 287 (5th Cir. 1974), cert. denied, 419 U.S. 1057 (1974).

In addition to resolving the factual issue as to the mark's strength by rejecting evidence of imitative uses of the Levi mark, the court also concluded entirely on its own initiative, i.e., without any evidential basis, that the third party uses of arcuates similar to Levi's indicated the strength of the Levi mark rather than its weakness. Whether considered an impermissible factual conclusion or an impermissible inference drawn from conflicting facts, the court exceeded its function and authority on a summary judgment motion. It is

Ex. P-11

beyond doubt that when conflicting inferences can be drawn from the facts, summary judgment should not be granted. <u>Bowmar Instrument Corp. v. Continental Microsystems, Inc.</u>, 497 F.Supp. 947, 954-5 (S.D.N.Y. 1980).

The district court's assessment of strength of the Levi mark is further tainted by its reliance on other disputed facts. In assessing the mark's strength, the lower court took into consideration purported evidence of "sales success, advertising expenditures, and length and exclusivity of use" (A-22-23). This was also improper, or at best imprudent, because Levi's evidence neglected to provide any distinction between Levi's sales success resulting from any of the five standard sales indicia utilized by it (<u>i.e.</u> the Levi name, pocket tab, two-horse brand label, corporate logo, and arcuate). In other words, there was no showing (apart from the discredited Bruno & Ridgeway survey) that the arcuate had an independent degree of recognition and connection with Levi.

In contrast, as noted above, the record is replete with evidence disputing the mark's strength including Levi's interrogatory responses noting more than 200 files relating to U.S. arcuate infringement (A-94), deposition testimony of Cassandra Flipper, Levi's Deputy General Counsel, regarding policing efforts involved in many of the 200 instances (SA-1063-1183), photocopies of protested marks appended to the Cohen Affidavit (A-749-809) and the Bailey Affirmation

(A-663-713), taken from Levi's files, and the numerous pairs of jeans offered in evidence appended to the Rauzi and Deluca Affidavits (A-854-877, A-883-847). All of the above evidence amply demonstrated that Lois' defense on this point in its Responsive Statement Pursuant to Local Rule 3(g) (A-654-659) was anything but a hollow denial of the arcuate's strength.

Finally, the lower court's determination regarding the sole other Polaroid factor in Levi's favor was likewise based on an improper application of the law. The court's conclusion that the Levi and Lois marks were "visually extremely similar" and created "the same general impression" admittedly failed to take into account other markings surrounding the marks in issue (A-24-25). Thus, the court stated that "[w]hether or not the manner in which each mark is presented, either in market conditions or post-sale, dispels any reasonable possibility that a consumer might be confused as to source, it does not affect the degree of similarity between the two arcuate designs" (A-25).

Even assuming this statement of the law to be technically correct, which it is not, close similarity of the disputed marks is not dispositive on the issue of likelihood of confusion. "Similarity in and of itself is not the acid test. Whether the similarity is likely to provoke confusion is the crucial question." McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1133 (2d Cir. 1979), quoting, R. Callman "The Law of

Ex. P-13

Unfair Competition Trademarks and Monopolies" § 82.1(a) (1969). In analyzing this factor, the degree of similarity is based upon the overall impression upon the consumer. See e.g. McGregor-Doniger Inc., supra at 1133-1134; Lever Brothers Co. v. American Bakeries Co., 693 F.2d 251, 257 (2d Cir. 1982); Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981); Amstar Corp v. Domino's Pizza, Inc., 615 F.2d 252, 260-261 (5th Cir.), cert.denied, 449 U.S. 899 (1980); Plus Products v. Plus Discount Foods, Inc., 564 F. Supp. 984 (S.D.N.Y. 1983), aff'd on this point, 722 F.2d 999 (2d Cir. 1983). ("Thus the setting in which a description is used, because it affects the appearance and colors the impression conveyed by the mark must be analyzed." 564 F. Supp at 991).

In reaching its determination about the mark's similarity, the court below did not adequately consider the divergent impressions created by the marks when seen either under market conditions or post-sale conditions. The court's decision to approach the similarity issue as distinct from the issue of similarity of marks in their setting or overall packaging context, although it may explain, does not justify the determination in favor of Levi. Had the lower court applied the correct legal standard, i.e., a comparison between the two marks as they appear in the marketplace, including their trade dress, the setting in which they appear and the impression which they create, the opposite conclusion would

Ex. P-14

-10-

have been warranted (See Lois Brief at 34-39 for further
discussion on this point).

Even where the marks are identical (Mushroom Makers,
Inc., supra, 580 F.2d 44), or "nearly identical" (Vitarroz
Corp. v. Borden, Inc., 644 F.2d 960, 963, 968 (2d Cir. 1981),
there is no infringement when the marks are not confusingly
similar in the contexts in which they appear.  Levi's counsel
conceded and the district judge noted that at the point of sale
there is no likelihood that the products will be confused for
one another in the context in which they are sold (A-925,
A-950-951).  The only other context in which similarity was
compared was (i) after the removal of all permanent and
temporary product identifiers except the stitched designs, and
(ii) when viewing only one particular buttock and back pocket
area of the respective trousers, rather than the effect created
as a whole.  Having correctly spotted the deficiencies of the
survey (A-28), the district judge was misled by Levi's
arguments and, without support, decided that a post-sale
confusion test should be considered under the circumstances.
That determination flies in the face of the considerable weight
of trademark law which demands that marks be viewed in their
entirety in the manner in which they appear to the public,
including their respective brand names.  Lever Brothers Co. v.
American Bakeries, Co., 698 F.2d at 257; Vitarroz Corp. v.
Borden, 644 F.2d 969 ("when similar marks are always presented
in association with company names, the likelihood of confusion

is reduced. <u>See McGregor-Doniger, Inc. v. Drizzle Inc.</u>,
<u>supra</u>, 599 F.2d at 1134.")

There were two types of evidence presented by Levi in
support of the likelihood of actual confusion, a defective
survey and similarly incompetent evidence in the form of high
school yearbooks and the like.

A survey using an artificial environment without
replicating the marketplace setting, including the full trade
dress, is totally unreliable in assessing proof of actual
confusion. <u>Smithkline Beckman Corp. v. Proctor & Gamble Co.</u>,
591 F. Supp. 1229, 1243 (N.D.N.Y. 1984), <u>aff'd</u>, 755 F.2d 914
(2d Cir. 1985). One commentator has described the reasons
behind this principle as follows:

> While a given mark may be an infringement
> when used as a part of one total assemblage
> of trade dress, it may not be an
> infringement when used in a different
> context of label design, package, lettering,
> style, etc., ... [i]n an infringement case,
> the defendant's background trade dress may
> be sufficient to distinguish the goods even
> though in the abstract, the marks might be
> said to be confusingly similar.

2 J. McCarthy, <u>Trademarks and Unfair Competition,</u> § 23.18, pp.
100-101 (2d ed. 1984). The test for confusion is clearly not
limited to some contrived view of only one portion (such as a
single back pocket) of the goods on which the contested marks
appears, but must encompass the "total picture" presented to
the consumer. <u>See Lever Bros. Co.</u>, <u>supra</u>, 693 F.2d at 257.

Ex. P-16

-12-

Among other things, dissimilarity of trade dress "tends to dilute any likelihood of consumer confusion." Smithkline Beckman Corp., supra, 591 F.Supp at 1242.

It is well established in this Circuit that Levi's claims "cannot stand without some indication of actual confusion or a 'survey of consumer attitudes under actual market conditions.' Mattel, Inc. v. Azrak-Hamway International, Inc., 724 F.2d 357, 361 (2d Cir. 1983) (per curiam)." Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d 112, 117 (2d Cir. 1984). Although Judge Sweet did not reject the Bruno and Ridgway survey as he might and should have under the authority of American Footwear Corp. v. General Footwear Co. Ltd., 609 F.2d 655, 661-63 (2d Cir. 1979), cert. denied, 445 U.S. 951 (1980) (rejection of survey due to removal of portion of trade dress from advertising poster), he relegated it to evidence which he considered to be of low probative weight (A-28). Without explanation, he then proceeded to rely heavily on it.

Other than the survey, Levi offered no relevant evidence on the issue of confusion. Levi's counsel conceded at the oral argument that the J.C. Penney's information was not offered as survey evidence showing likelihood of confusion, but to "prove" the "celebrity" of Levi's mark (A-956). Evidence consisting of yearbooks, magazine articles and other publications was apparently introduced to establish the notoriety or "fame" of Levi's mark, not the likelihood of

consumer confusion deriving from Lois' use of its stitched design. Reliance on high school yearbooks (A-388, A-500-529) and unattributed quotes (A-384-385) and other publications of indeterminate circulation (A-382-383, A-431-438) or those principally reflecting the success of Levi's or its jeans without accent on its stitched design, could not have possibly justified the lower court's summary decision. See D. C. Comics Inc., supra, 696 F.2d at 27 (mistaken reliance on unsworn statements and evidence of limited competence).

In point of fact, virtually all of Levi's proof has been presented to prove the mark's strength. Against that premise, Lois has pointed to four different sources of evidence demonstrating a great deal of third party use. Levi has introduced no competent evidence on the issue of confusion. Yet the lower court entered its own conclusion, substituting for Levi's failure of proof.

B. In Assessing Likelihood of Confusion All Polaroid Factors Must be Considered and No Single Factor Is Preeminent.

In its brief on appeal, Levi argues, and at other times implies, that the district court findings as to the Polaroid factors favoring Lois are only marginally in Lois' favor and that these factors are of limited significance or should be given less weight than other factors in assessing likelihood of confusion. The argument is without merit for at least two reasons.

First, Levi misrepresents the lower court's decision by suggesting that the <u>Polaroid</u> factors favoring Lois tipped ever so slightly in Lois' favor. Such is not the case. As an example, the district court's finding with respect to good faith should be reviewed. The court below unequivocally found that there was no convincing evidence of bad faith on Lois' part and that Lois had presented sufficient evidence to refute Levi's claim (A-26-27). The court, refering to extensive deposition testimony of Mr. Joaquin Saez Merino, a Spanish resident and the president of Textiles, found that the origins of Lois' stitched design are Mexican or Spanish and that Textiles was not aware of Levi jeans until 1967 (A-15, A-27), well after the Lois design had been adopted. In fact, evidence offered by Levi (A-393) corroborated Mr. Saez Merino's testimony by noting that Levi jeans did not enter the Spanish market until the mid-1960's, well after the genesis of Lois' stitched design in 1959 (SA-1024). Contrary to Levi's statement (Levi brief at 18), the good faith factor was firmly and deservedly found to favor Lois.

Secondly, it appears that Levi would have this court believe that with the exception of the strength and similarity factors, the remaining <u>Polaroid</u> factors are less significant or pertinent. The marks' strength and similarity are unquestionably not the sole pertinent factors in assessing likelihood of confusion in this case. Rather the <u>Polaroid</u> test

encourages careful consideration of all factors.  See <u>Lever</u>
<u>Bros. Co. v. American Bakeries Co.</u>, <u>supra</u>, 693 F.2d 251, 253.

The district court found that the parties' jeans are
sold at disparate prices in disparate stores, thus creating a
competitive distance which limits the likelihood of confusion
(A-25, A-17-18, A-744-746, A-810-11).  Like all other <u>Polaroid</u>
factors, the competitive distance is an important factor
entitled to significant weight.  See <u>Plus Products</u>, <u>supra</u>, 722
F.2d at 1007.  In fact, relatively small differences in the
manner in which goods bearing similar marks are marketed and
sold can create a material difference in the proximity of
products as well as providing a significant basis for a finding
of no infringement.  <u>Vitarroz v. Borden</u>, 644 F.2d at 967;
<u>McGregor-Doniger Inc. v. Drizzle</u>, 599 F.2d at 1134-35.

The district court also found that the sophistication
of the buyers of the Lois and Levi products in issue served to
prevent the possibility of confusion (A-26).  Prior decisions
of this Court affirm that the sophistication factor can obviate
such confusion, even where retail prices are relatively low.
See <u>Plus Products</u>, <u>supra</u>, 722 F.2d at 1007 (sophistication of
purchasers of health foods and vitamins dispels likelihood of
confusion).  See also <u>Manhattan Industries, Inc. v. Sweater Bee</u>
<u>By Banff, Ltd.</u>, 627 F.2d 628 (2d Cir. 1980) (sophistication as
to different priced clothing).

Ex. P-20

In similar fashion, the district court's finding that there was no evidence that Levi intended to bridge the gap between its durable type jeans bearing the arcuate design and Lois' higher priced jeans and trousers can be and is an important feature limiting the likelihood of confusion among potential purchasers.  See Mushroom Makers Inc., supra, 580 F.2d at 49.

## CONCLUSION

Summary judgment has been wrongfully entered where the parties have placed evidence on the record which raises material issues of fact, and the lower court's ultimate conclusion of likelihood of confusion was made in the absence of competent proof to that effect.  For all of the foregoing reasons, Lois urges that this Court reverse the premature decision of the lower court.

Respectfully submitted,

WHITMAN & RANSOM

By: _____
    Max F. Schützman

Attorneys for Lois Sportswear
U.S.A., Inc. and Textiles Y
Confecciones Europeas, S.A.
522 Fifth Avenue
New York, New York  10036
(212) 575-5800

2318F

### CERTIFICATE OF SERVICE

I, Katherine L. Frank, hereby certify that on this 28th day of February, 1986, 2 copies of Appellant's Reply Brief were served by first class mail, postage prepaid, on the following:

> Alfred T. Lee, Esq.
> Milgrim Thomajan Jacobs & Lee, P.C.
> 405 Lexington Avenue
> New York, New York 10174

_____
Katherine L. Frank

2335F

Ex. P-22