# EXHIBIT D

C

76 U.S.P.Q.2d 1183, 2005 WL 2451658 (Trademark Tr. & App. Bd.)

THIS OPINION IS CITABLE AS PRECEDENT OF THE TTAB

Trademark Trial and Appeal Board
Patent and Trademark Office (P.T.O.)

IN RE FIRST DRAFT, INC.

Serial No. 76420605

September 20, 2005

Oliver R. Chemin of McLaughlin & Stern, LLP for First Draft, Inc.
Naakwama Ankrah
Trademark Examining Attorney
Law Office 106
(Mary Sparrow, Managing Attorney).[FN1]

Before Hohein, Chapman and Rogers
Administrative Trademark Judges
Opinion by Rogers
Administrative Trademark Judge:

First Draft, Inc. (applicant) has applied to register FERN MICHAELS on the Principal Register as a trademark for goods identified as a "series of fictional books" in Class 16.[FN2] Registration of the proposed mark is sought in standard character form, i.e., without any particular stylization.

The examining attorney has refused registration of the proposed mark under Sections 1, 2 and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that FERN MICHAELS, as used on the specimens of record, only identifies the author of applicant's books and does not also function as a mark to identify and distinguish the books from those of others, and to indicate the source of the books. When the refusal of registration was made final, applicant filed an appeal. Applicant and the examining attorney have filed briefs, but applicant did not request an oral hearing.

*Fern Michaels*
The record is clear that FERN MICHAELS is a pseudonym of Mary Ruth Kuczkir; and Ms. Kuczkir is referred to in applicant's brief as "Applicant's principal." Also, applicant has filed a declaration by Ms. Kuczkir consenting to registration of her pseudonym "with the U.S. Patent and Trademark Office and with trademark registration authorities worldwide." Applicant contends that Ms. Kuczkir has used her

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pseudonym since February 1975, has written 67 romance novels, has sold over 60 million books in the United States and throughout the world, and "has been inducted into the New Jersey Literary Hall of Fame."[FN3] The record is clear, as shown by the specimens of record, that various FERN MICHAELS books have been published as trilogies or in a series (e.g., the "Texas" series and the "Vegas" series).

The specimens applicant has made of record are book jackets that, among other things, provide information on "Fern Michaels."[FN4] The jackets are for works entitled "To Have and To Hold" and "Vegas Sunrise." In each instance, the exterior of the book jacket shows the designation FERN MICHAELS above the title of the book, both on the front face and on the spine.

The inside jacket of "To Have and To Hold," published by Headline Book Publishing, includes the following: "Fern Michaels is the internationally bestselling author of the *Texas* quartet. She lives in South Carolina and has five children, two grandchildren and four dogs. She is an animal-rights activist. Her previous bestselling novels, *Seasons of Her Life*, *Texas Sunrise* and *For All Their Lives*, are available from Headline." On the page facing the title page of "To Have and to Hold," there is a list of six other works by FERN MICHAELS, including the three works referenced in the above-quoted statement from the book jacket and what would appear to be the other volumes from the "*Texas* quartet."

*2 The jacket for "Vegas Sunrise," published by Kensington Books, displays on the front and the spine, "New York Times Bestselling Author Fern Michaels." On the back of the jacket, the header "Acclaim for the Novels of New York Times Bestselling Author Fern Michaels" introduces quotes from reviews of two other FERN MICHAELS titles, including, in regard to "Vegas Rich," the assertion "'Sweeping Drama. Won't Disappoint Her Fans.' -Kirkus Reviews.." The inside jacket of "Vegas Sunrise," in its preview of the book's contents, includes another reference to "the New York Times bestselling author" and one to  "… Fern Michaels a beloved bestselling author." Under a photo of "Ms. Michaels" is a reference to other "acclaimed" novels and the information that "Ms. Michaels divides her time between New Jersey and South Carolina."

*Pseudonyms, Nom de Plumes, and Fictitious Names*
As this appeal presents questions of first impression, and to provide context for our consideration of the refusal of registration, we begin by noting that the examining attorney has not specifically argued that FERN MICHAELS is unregistrable *because* it is a pseudonym rather than the given name of the author of the identified novels. However, the examining attorney relies on two decisions that can be read as support for such a proposition. Accordingly, we examine pseudonym or fictitious name cases in some detail.

In a pre-Lanham Act decision (one of two decisions the examining attorney cites to support the refusal), Assistant Commissioner Frazer affirmed a decision by the examiner of interferences sustaining an opposition on likelihood of confusion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

grounds but also held that there was "another reason ... why applicant's mark must be refused registration. As used by applicant the name 'Susie Cucumber' appears only as a signature to the letters described in the application. In other words, it is employed as a pseudonym of the writer, rather than as a trade mark." Norcross v. Richardson, 68 USPQ 371, 372 (Comm'r Pat. 1946), aff'd, Richardson v. Norcross, 78 USPQ 122 (D.D.C. 1948). In support of the foregoing statements, the Norcross decision relies on Ex Parte the Ohio Grease Co., 37 USPQ 415 (Comm'r Pat. 1938), another case involving a fictitious name in signature form. Norcross also concluded that the mark was "nonregisterable in any event, because the nom de plume of a writer is not a trade mark for his writings," citing as authority Clemens v. Belford, Clark & Co., 14 F. 728 (C.C. N.D. Ill. 1883).

*3 Notwithstanding the above-quoted statements, we do not read Norcross as standing for the proposition that pseudonyms of writers cannot be trademarks. Rather, insofar as the refusal of registration was based on use of the proposed mark "only as a signature" (on letters bought by subscription, for mailing to children) and relies on the Ohio Grease case that also involved a signature mark (appended to lines of verse), Norcross is essentially a harbinger of what would now be viewed as a refusal based on failure of the signature, as used, to function as a mark; and we do not read it as holding that a pseudonym can never function as a mark. We note, in this regard, the Richardson affirmance of Norcross, which held "Susie Cucumber is incapable as a registration for a trade mark since it is used as plaintiff's pseudonym and signature and *not as a true trade mark*" (emphasis added). Richardson, 78 USPQ 122, citing In re Page Co., 47 App.D.C. 195 (D.C. Cir. 1917).

Nor should the Clemens decision be read as standing for the proposition that a pseudonym or nom de plume is per se unprotectible as a mark. That decision included a statement that "an author or writer [cannot] acquire any better or higher right in a nom de plume or assumed name than he has in his Christian or baptismal name." Clemens, 14 F. at 730. This contemplates that a given name and a pseudonym are treated alike, whether or not protectible under the trademark laws.

In sum, we do not view the pre-Lanham Act Norcross decision, the cases cited therein (Ohio Grease and Clemens), or the Richardson affirmance, as establishing a rule that a pseudonym or nom de plume of an author is per se incapable of functioning as a trademark. Accord In re Wood, 217 USPQ 1345, 1346 (TTAB 1983) (In discussing the reliance by the examining attorney in that case on Norcross and Clemens, the Board explained that those decisions "indicate only that the pseudonym of a writer used as a signature for a series of letters does not function as a mark [Norcross] and that an author may not prevent the republication of uncopyrighted matter under the author's name [Clemens].").

*4 As for decisions under the Lanham Act that have dealt with pseudonyms, we note two early decisions by Assistant Commissioner Leeds each affirmed a refusal to register a fictitious name. See Ex parte Toal, 111 USPQ 450 (Comm'r 1956) and Ex

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

parte The Maytag Co., 110 USPQ 310 (Comm'r 1956). Subsequent decisions by this Board, however, make clear that there is no distinction between actual names and fictitious names. See, e.g., Wood, 217 USPQ at 1348 ("Clearly, a name, fictitious or real, can be used in such a manner to identify goods or services as well as the individual or character."); In re Stowell, 216 USPQ 620, 621 (TTAB 1982) ("…'THE DIVER' identifies applicant himself. This is applicant's call name or handle by which he identifies himself to other users of two-way radios. This fact, however, does not preclude registration of that term as a service mark to identify services rendered by applicant, provided that the specimens of record evidence use of the term not only to identify applicant as an individual but also to identify services rendered by the applicant in commerce."); and In re EKCO Products Co., 139 USPQ 138, 139 (TTAB 1963) ("we agree with applicant that fictitious names may, under proper circumstances and conditions, function as service marks").

Notwithstanding this line of Board cases, the second of the two cases on which the current examining attorney relies, In re Chicago Reader Inc., 12 USPQ2d 1079 (TTAB 1989), at 1080, includes the statement, "A nom de plume or pseudonym of a writer is not generally regarded as a trademark for the writing," and cites as support therefor the pre-Lanham Act Norcross decision. We do not, however, view Chicago Reader as standing for a per se rule that pseudonyms or fictitious names are not registrable as trademarks for written works. Rather, we view that decision as holding only that the proposed mark CECIL ADAMS (a fictitious byline for a newspaper column) was not used in such a manner that it would be perceived as a mark, and that the fact that the proposed mark was a fictitious name rather than the name of an actual columnist did not make the proposed mark any more registrable.[FN5]

### Questions Presented
Now that we have reviewed the import of the two decisions (Norcross and Chicago Reader) on which the examining attorney has relied, and established a framework within which to consider the instant application, we may focus on the questions presented by this appeal. There is one procedural question and there are two substantive questions we must resolve. The procedural question concerns the evidentiary value to be accorded an applicant's submission not only of copies of prior registrations but of copies of the files for those registrations. The first of the two substantive questions is whether an author's name is, as the examining attorney contends, generally to be treated as unregistrable and, if so, why. The second substantive question is whether the record in the involved application shows that FERN MICHAELS functions as a trademark.

### The Significance of the Third-Party Registration Files
*5 We address the procedural question referenced above because of the course of prosecution of the involved application. After the examining attorney refused registration of FERN MICHAELS, applicant responded by, inter alia, referencing the names of three other authors that have each been registered by the USPTO for a series of books. Applicant did not, however, include any arguments about why these

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

third-party registrations were significant.

The examining attorney discounted the mere submission of TARR printouts[FN6] regarding the registrations by explaining that, "without reviewing the specimens of record, it is impossible to determine the manner in which such marks were used" (examining attorney's final refusal). Applicant then submitted, with its notice of appeal from the final refusal, and to "complete the record on appeal," copies of "TARR printouts and file wrappers" for seven registrations for author's names (including two of the three registrations previously referenced by applicant and five new ones). Applicant again, however, did not present any arguments regarding the significance of the registrations or file wrappers or what the examining attorney should conclude from a review of them. The Board acknowledged the notice of appeal, suspended the appeal because of the new evidence submitted therewith, and remanded the application to the examining attorney for consideration of that evidence. The examining attorney denied the request for reconsideration and the appeal was then resumed.

In its appeal brief (pages 11-18) applicant argues generally that the seven third-party registrations and their accompanying file wrappers have evidentiary value and presents specific arguments about the significance of the records for the respective registrations. On the general point, applicant asserts that, "If ... it is the Trademark Examining Attorney's position that the records of other registration[s] are never of evidentiary value, this clearly does not comport with the view of the Court of Appeals for the Federal Circuit or the TTAB." (Brief, p. 13).

The examining attorney, in the responsive brief, acknowledges that "The TARR print-outs and file wrappers submitted by the applicant show current registrations for seven marks composed of a name and used on a series of books." Nonetheless, the examining attorney went on to argue that, "Prior decisions and actions of other trademark examining attorneys in registering different marks are without evidentiary value and are not binding upon the Office. Each case is decided on its own facts, and each mark stands on its own merits (citations omitted)."

There can be no doubt that "the Board ... must assess each mark on the record of public perception submitted with the application." In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). Thus, the mere fact that applicant has submitted copies of the contents of the third-party registration files, i.e., the underlying applications, office actions and responses which are evidence of the course of examination that led to issuance of the registrations, cannot change our mandate to review the registrability of the involved mark on the record created during prosecution of the involved application.[FN7]

*6 We note that the question of exactly how examining attorneys should assess an application to register an author's name for a series of written works is not given lengthy treatment in the examination guidelines set forth in the TMEP. See TMEP Section 1202.09 ("Names of Artists and Authors") (4th ed. April 2005). This sec-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion states only: "Generally, subject matter used solely as an author's name, even on multiple books, does not function as a trademark." The section then cites to Chicago Reader, and provides a "Cf." cite to Wood. The use of the prefatory term "generally" suggests that, under appropriate circumstances, examining attorneys should consider the possibility that subject matter used more than "solely as" an author's name may be registrable as a mark. The TMEP guideline on this point, however, does not explain what those circumstances are. Accordingly, in this case, we can appreciate that applicant may have examined the file contents of third-party registrations for author's names in an attempt to divine the circumstances in which the Office has allowed registration of an author's name.[FN8]

We hasten to emphasize, however, that the Board must, in any case brought before it, determine the registrability of the mark based on not only the record presented in the application, but also based on the provisions of the Lanham Act and applicable case law. Thus, the Board is not bound by the examination guidelines set forth in the TMEP[FN9] or by the file wrappers applicant has submitted, even if we were to conclude that the file wrappers tend to establish a practice contrary to the refusal made by the current examining attorney in reliance on the TMEP. Finally, we note that even proof that various examining attorneys have registered a particular type of mark in the past does not establish that there is an Office practice holding such marks are generally registrable. See In re International Flavors & Fragrances Inc., 183 F.3d 1361, 51 USPQ2d 1513 (Fed. Cir. 1999) (Applicant failed to establish the existence of a prior Office practice for registering "phantom marks").

While we have considered the registrations and file wrappers submitted by applicant, the decisions made by examining attorneys to register those marks are not binding on the Board. We disagree with applicant's characterization that the files establish an Office practice contrary to the refusal advanced in this case, and, in any event, most of the limited number of registrations submitted by applicant are distinguishable from the present case.[FN10]

We now turn to the two substantive questions presented by this case.

### Analysis of Applicable Case Law
The first of the two substantive questions presented by this appeal is whether an author's name is, as a general rule, to be treated as unregistrable matter and if so, why.

*7 The examining attorney's brief essentially repeats the sentence from TMEP Section 1202.09 previously quoted herein, though the examining attorney omits the prefatory and qualifying word "generally" that appears in the TMEP: "Subject matter used solely as an author's name, even on multiple books, does not function as a trademark." The examining attorney cites, as does the TMEP, Chicago Reader as the authority for this statement.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Chicago Reader cites to Norcross, but both decisions are, as analyzed earlier, essentially decisions that held the involved names were not used in a manner that would lead to them being perceived as marks. Neither decision, therefore, supports a general rule that an author's name does not function as a mark. They simply stand for the proposition that under the circumstances presented by each of those cases, the involved author's name did not function as a mark.

Norcross, however, does suggest that the interface with copyright law provides a rationale for a general rule prohibiting trademark protection for an author's name: "The letters are copyrighted by applicant, including the name; and upon expiration of the copyright will become public property. To register the name as a trade mark would enable applicant to perpetuate her monopoly, for without the name the balance of the copyrighted material would have no value." Norcross, 68 USPQ at 372; see also Clemens, 14 F. at 732 ("That is, any person who chooses to do so, can republish any uncopyrighted literary production, and give the name of the author, either upon the title-page, or otherwise as best suits the interest or taste of the person so republishing."). Similarly, the Federal Circuit has discussed the interface of copyright law and titles of individual books and concludes that copyright law provides additional support for the policy against finding proprietary rights in titles to single books. Herbko International, Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1162, 64 USPQ2d 1375, 1378-80 (Fed. Cir. 2002).

Clearly, the interface with copyright law or, looked at another way, the right of others to reproduce because works are uncopyrighted or no longer protected by copyright, has led to decisions that deny protection to the title of a single work and, in Norcross and Clemens, to an author's name. On the other hand, in In re Scholastic Inc., 23 USPQ2d 1774 (TTAB 1992) (THE MAGIC SCHOOL BUS, prominently displayed on the cover of a series of books, as a portion of the title of each book, has come to represent a source to purchasers and would be recognized as a trademark), the Board did not discuss this concern and specifically noted that there was sufficient evidence to allow for registration of THE MAGIC SCHOOL BUS even if it were the complete title of a single book in a series. This indicates that the Board's primary concern must be whether a designation would be perceived as a mark and not the ramifications for third-parties that might eventually want to reproduce a work.

*8 In short, we find no clear precedent dictating that the interface of trademark law with copyright law or with the rights of others to reproduce certain works should prevent an applicant from registering an author's name as a trademark for a series of written works. When the name is found to serve not merely as the designation of the writer of each of the works, but also is used in such a manner as to assure the public that the works are of a certain quality and the name therefore serves as an indicator of the source of the writings, it serves the function of a mark. In re Polar Music International AB, 714 F.2d 1567, 221 USPQ 315, 318 (Fed. Cir. 1983) ("In the instant case we find certain factors determinative that 'ABBA' functions as a trademark and is not just an identification of the singers.").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Another rationale arguably supporting a rule that an author's name should not generally be registrable as a mark is rooted in certain cases discussed by Professor McCarthy, i.e., those cases that hold a personal name is essentially descriptive. See McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition § 13.2 (4th ed. database updated 2005) and cases discussed therein. However, as neither applicant nor the examining attorney has discussed whether the proposed mark is descriptive, we shall not consider this as a possible rationale for the refusal.

We turn then to the Federal Circuit's decision in Polar Music and the Board's decision in Wood, which applicant argues provide support for its position.

In Polar Music, the Federal Circuit held that the name ABBA was registrable as a trademark for recorded musical performances by the group of that name. The decision, however, cautioned that "just showing the name of the recording group on a record will not by itself enable that name to be registered as a trademark. Where, however, the owner of the mark controls the quality of the goods, and where the name of that recording group has been used numerous times on different records and has therefore come to represent an assurance of quality to the public, the name may be registered as a trademark since it functions as one." Polar Music, 221 USPQ at 318. Accordingly, it appears clear that the Federal Circuit has contemplated a general rule that the name of a performing group would not be registrable on a single work, but that an exception to the general rule may arise when the name of the group is used as a mark for a series. However, even then, more is required, as the Federal Circuit did not rely solely on use of ABBA for a series of recordings and also relied on documentary evidence that the group controlled the quality of the recordings through a license.

*9 Polar Music discusses cases that hold the title for a series of books to be registrable, and found "the present situation analogous." Polar Music, 221 USPQ at 318. In turn, the Board relied on Polar Music when it decided the Scholastic case.[FN11]

In Scholastic, the Board held that repeated use of THE MAGIC SCHOOL BUS in each of various titles for a series of books, in addition to evidence of promotion and recognition, meant the designation "has come to represent a source to purchasers" and that "purchasers… when they see the term, know what they are getting -- that is, another book in this particular series of children's books emanating from applicant." Scholastic, 23 USPQ2d at 1778.

We agree with applicant that the examining attorney has placed undue reliance on Chicago Reader and Norcross, and that Polar Music should be considered a governing precedent in this case. We also find Scholastic, while not presenting the same fact situation, to be somewhat helpful, and see nothing in Polar Music that would limit an applicant seeking registration of an author's name or pseudonym to submission of the type of evidence presented in that case. In contrast, we disagree with applicant's contention that Wood aids our analysis.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In Wood, the Board found the pseudonym YSABELLA registrable as a mark for various "original works of art." Akin to the finding in Polar Music that the group ABBA controlled the quality of its recordings, the Board in Wood held that "we believe that an artist's name denotes consistency of quality of the goods sold under the mark." Wood, 217 USPQ at 1349. The examining attorney, however, correctly argues against application of Wood, which concluded with the statement: "Lest we be accused of painting with too broad a brush, we hold only that an artist's name affixed to an original work of art may be registered as a mark and that here applicant's name, as evidenced by some of the specimens of record, functions as a trademark for the goods set forth in the application." Wood, 217 USPQ at 1350. We agree with the examining attorney that Wood is limited in its application to cases involving original works of art and there is nothing to indicate that the panel deciding that case considered novels to be encompassed by the phrase original works of art.[FN12]

*10 We conclude that, as a general rule, an author's name is not registrable for a single work but may be registrable for a series of written works, when there is sufficient other indicia that the name serves more than as a designation of the writer, that is, that it also functions as a mark. This may be shown by providing evidence of the sort presented in Polar Music, i.e., evidence establishing that the author controls the quality of her distributed written works and controls use of her name, so as to indicate the quality of those works; or it may be shown, akin to the showing in Scholastic, by submitting evidence of promotion and recognition of the author's name so that prospective readers, when they see the name, "know what they are getting." Scholastic, 23 USPQ2d at 1778. In addition, evidence of promotion and recognition of the author's name would have to be of the type that would identify the author as the source of a series of works.

**Does the Evidence Show FERN MICHAELS to be a Mark?**
The second substantive question presented by this case is whether the evidence of record is sufficient to establish that FERN MICHAELS is registrable under either a Polar Music or Scholastic analysis. As noted earlier, there is no doubt that FERN MICHAELS has been used as the author's name for a series of publications, so under either analysis, the series requirement has been met. However, it is additional evidence, either as to quality control, or as to promotion and recognition, that we must find if the refusal of registration is to be reversed and the mark allowed for publication.

Turning to the question of quality control and whether applicant meets the Polar Music test, we note that the specimens show FERN MICHAELS novels from two different publishers. In addition, applicant's counsel has explained that First Draft, Inc. is a corporation in which Mary Ruth Kuczkir is the principal. We would not have been surprised if applicant had made representations that the corporation was formed to be the "corporate entity" of Ms. Kuczkir and to negotiate contracts, licensing, and other issues related to FERN MICHAELS publications, just as Polar Music International AB was the corporate entity for the performing group ABBA in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Polar Music case. It would not be surprising to find that a prolific and successful author has leverage to negotiate with publishers regarding such matters. However, we have neither any evidence bearing on such matters nor even any representations by counsel regarding such matters. This is in stark contrast to Polar Music, wherein there was detailed information and documentary (i.e., contractual) evidence regarding the relationship between the performing group ABBA and its "corporate entity," as well as evidence of the control such corporation maintained in dealings with a manufacturer and seller of its recordings in the United States. In short, we find that even though applicant has argued for application of a Polar Music analysis, it has not established that FERN MICHAELS is registrable under such analysis.

*11 We therefore consider whether there is sufficient evidence of promotion and recognition of FERN MICHAELS as an indicator of the source of a series of books, so that the designation would be registrable under a Scholastic analysis.

FERN MICHAELS has been used, at least as an author's name, for 30 years; there have been 67 separate works published under that name; and the number of books sold is approximately 60 million. FERN MICHAELS has been inducted into the New Jersey Literary Hall of Fame and there is a web site www.fernmichaels.com. There is very limited evidence, however, of promotion of the novels of FERN MICHAELS, and that appears only on one of the two book jackets submitted as specimens. That book jacket promotes FERN MICHAELS as a bestselling author, lists other works by this author, and reprints excerpts of favorable reviews, one of which implies the existence of an established fan base for FERN MICHAELS novels. While the length of use and number of books sold far exceed that which was present in Scholastic, the evidence of promotion is indirect and rather scant. We do not have, as in Scholastic, full reviews showing the manner in which others use the designation FERN MICHAELS. Nor do we have promotional materials touting FERN MICHAELS novels. We do not, for example, have reprints of any pages from the FERN MICHAELS web site or information regarding the New Jersey Literary Hall of Fame. We also have no information whatsoever regarding advertising or promotion expenditures. Applicant's counsel makes certain representations about what fans of FERN MICHAELS look for in her novels, but we have no declarations from publishers, retailers, purchasers or readers, whereas in Scholastic, there were such declarations. In short, all that is shown by the specimens of record is use of FERN MICHAELS as the name of the author of each book.

In its brief, applicant argues that it has obtained a registration from the USPTO for the mark FERN MICHAELS for services identified as "providing information about authors and new book releases of others by means of the Internet; providing an on-line news column in the field of romance literature, fan club, providing a web site featuring entertainment information in the field of romance literature and featuring an on-line guest book and suggestion box; providing links to web sites of others featuring romance literature." In addition, applicant notes that the same examining attorney that issued the refusal in this case approved registration

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

76 U.S.P.Q.2d 1183, 2005 WL 2465628 (Trademark Tr. & App. Bd.)

Case 3:07-cv-02752-JSW   Document 63-5   Filed 03/21/2008   Page 12 of 14

Page 11

of the mark FERN MICHAELS for those services.

Applicant submitted a TARR printout for this registration with its appeal brief and apparently views the record created in that registration file as evidence of promotion of the FERN MICHAELS name for the goods in the involved application: "Clearly, Applicant should not be penalized because it chose to apply for a series of books in one application and for services that show use of the mark on advertising and/or promotional materials in another application, rather than combining these goods and services in one application." (Brief, p. 17).

*12 Submission of the TARR printout with its appeal brief, however, is an untimely submission of this evidence. See Trademark Rule 2.142(d). We are not persuaded by applicant's argument that we should allow this untimely submission. Specifically, applicant argues that the examining attorney did not discuss the question of the significance of promotional materials in other registrations until after applicant filed its notice of appeal. Of course, the examining attorney only did so because applicant filed the third-party registration files with its notice of appeal and, as previously explained, because the Board remanded the application to the examining attorney for consideration of such evidence. Moreover, even if we were to consider the TARR printout for applicant's service mark registration, that by itself is not evidence of promotion of FERN MICHAELS as a mark. Evidence of promotion of the name FERN MICHAELS, at least by implication of applicant's argument, is present in the file for that service mark registration; and applicant has not submitted copies of the material from that file. We also note that applicant was on notice since the refusal of registration was first made that an issue in this case was whether FERN MICHAELS would be perceived by consumers as a mark; that applicant could have submitted promotional material during prosecution of the involved application; that the service mark registration had already issued when applicant filed its notice of appeal; and that applicant could have submitted the contents of its own service mark registration file when it submitted the copies of the third-party registration files, but did not.

In short, while we agree with applicant that an author's name may, under appropriate circumstances, be registered as a trademark for a series of written works, applicant has failed to establish that such circumstances are present in this case. Applicant's proof fails under the test applicant has advocated (Polar Music), as well as under the alternative test we have considered (Scholastic).

*Decision*

The refusal of registration under Sections 1, 2 and 45 of the Lanham Act is affirmed.

FN1. Leslie L. Richards examined the application; the above-named examining attorney filed the brief on appeal.

FN2. The application was filed based on a claim of use of the mark in commerce and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lists February 1975 as the date the mark was first used and first used in commerce.

FN3. Applicant's counsel provided this information in a response to an office action, rather than in the preferred affidavit form. Nonetheless, we have considered the representations because the examining attorney did not object to their form and the representations are not contradicted by anything in the record. To be clear, however, the better practice is to present such information in affidavit or declaration form with supporting documentation. See TBMP Section 1208 (2d ed. rev. 2004) and In re EBSCO Industries Inc., 41 USPQ2d 1917, 1923 n.5 (TTAB 1997) (examining attorney never objected to attorney's representations, and advertising and sales figures uncontradicted by any other information in record; but attorney's representation as to length of use of configuration was contradicted by record).

FN4. The specimens are too large and of insufficient copying quality to reproduce herein.

FN5. We note that the author of the Chicago Reader opinion, the recently retired Board Judge Rany Simms, also authored the earlier decision in Wood, which explained that Norcross was a failure-to-function as a mark case. Clearly, Judge Simms' subsequent citation of Norcross in Chicago Reader must be considered in light of his earlier explanation of its import.

FN6. TARR is the USPTO's Trademark Application and Registration Retrieval system, available at http://tarr.uspto.gov and may be used to obtain information about, and the status of, particular registrations or applications.

FN7. In Chicago Reader, for example, CECIL ADAMS, a fictitious name used as a byline for a recurring newspaper column, was not approved for registration even though the applicant therein "made of record copies of the registration files for the marks ANN LANDERS and JIMMY THE GREEK." Chicago Reader, 12 USPQ2d at 1080.

FN8. To be absolutely clear, we are not suggesting that either applicant or the examining attorney were free to ignore the guidelines set forth in the TMEP and to turn instead to examination of other files to divine Office policy for reviewing the involved application. As the Federal Circuit noted in West Florida Seafood Inc. v. Jet Restaurants Inc., 31 F.3d 1122, 31 USPQ2d 1660, 1664 n.8 (Fed. Cir. 1994), "While the TMEP does not have the force of law, it sets forth guidelines and procedures followed by the examining attorneys at the PTO." See also, Nett Designs, "this court encourages the PTO to achieve a uniform standard for assessing registrability of marks." 57 USPQ2d at 1566. In addition, the foreword to the TMEP (4th ed. April 2005) states that it "outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications."

FN9. West Florida Seafood, supra, 31 USPQ2d at 1664 n. 8. See also, In re Benthin

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Management GmbH, 37 USPQ2d 1332, 1334 n. 2 (TTAB 1995), citing In re Wine Society of America Inc., 12 USPQ2d 1139, 1141 (TTAB 1989).

FN10. The fact that a few third-party registrations have been allowed over a long period of time hardly establishes current Office policy. There may very well be as many or more abandoned applications wherein registration was refused on similar records. The Board's responsibility is to focus on the record at hand. We do not think it a useful exercise for applicants and examining attorneys to spend inordinate resources combing through large numbers of registration or abandoned application files when application of the law to the record at hand should suffice.

FN11. While applicant did not argue the applicability of the Scholastic decision, we have considered it, so as to be thorough in our analysis of applicant's arguments, because that decision relies, in part, on Polar Music.

FN12. Wood did not directly discuss books and classify them as works of art, but only discussed the views of a commentator who posited "trademarks in the art world include arbitrary and distinctive signatures or logos on books, films, on artwork." Wood, 217 USPQ at 1348, quoting Stroup, "A Practical Guide to the Protection of Artists Through Copyright, Trade Secret, Patent, and Trademark Law," Comm/Ent Law Journal, Vol. 3, 217-224 (Winter 1980-81).

76 U.S.P.Q.2d 1183, 2005 WL 2451658 (Trademark Tr. & App. Bd.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.