# EXHIBIT 1

APR  4 1985

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------x

LOIS SPORTSWEAR, U.S.A., INC.,          :

             Plaintiff,          :          82 Civ. 8326 (RWS)

   -against-                            :

LEVI STRAUSS & COMPANY,                 :

           Defendants.          :

-------------------------------------x
-------------------------------------x

LEVI STRAUSS & COMPANY,                 :

             Plaintiff,          :          83 Civ. 4338 (RWS)

   -against-                            :

TEXTILES CONFECCIONES EUROPEAS, S.A.,   :

           Defendant.          :

-------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Whitman & Ransom
Attorneys for
  Lois Sportswear U.S.A., Inc.
  and Textiles Confecciones
  Europeas, S.A.
  522 Fifth Avenue
  New York, New York  10036

38

LSC v. A&F 26(a)
0977

TABLE OF CONTENTS

Page No.

Preliminary Statement................................... 1

Statement of Facts.................................... 3

Argument............................................. 6

    I.  Standard for Summary Judgment in a
       Trademark Case.............................. 6

    II. As a Matter of Law There Is No
       Likelihood of Confusion as to the
       Source of Lois Jeans...................... 9

        A.  The Marks Are Visually Dissimilar,
           Especially when Viewed under
           Actual Market Conditions............... 9

        B.  Both the Lois Design and the Levi
           Arcuate Always Appear in Close
           Proximity to their Well Recognized
           Brand Names and other Distinctive
           Logos or Marks......................... 11

        C.  There Have Been No Instances of
           Actual Confusion....................... 12

        D.  The Marks Are Used on Non-Competing
           Products in Dissimilar Markets......... 13

        E.  Similar Stitching Designs Are Widely
           Used in the Apparel Industry, Indicating
           the Weakness of the Levi Mark.......... 15

        F.  It is Highly Unlikely that Levi
           Will Bridge the Gap.................... 17

        G.  Lois Has Acted in Good Faith........... 18

    III.  Summary Judgment Should be Granted Awarding
         Lois and Textiles Relief against Levi's
          Claims of False Designation of Origin..... 20

    IV.  Summary Judgment Should Be Granted Awarding
         Lois and Textiles Relief against Levi's Claims
          under the New York Antidilution Statute
          and Other State Laws...................... 21

    V.   Conclusion................................. 23

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

LOIS SPORTSWEAR, U.S.A., INC.,          :

                    Plaintiff,

                                    :    82 Civ. 8326 (RWS)
        -against-

                                    :

LEVI STRAUSS & COMPANY,          :

                    Defendants.

                                    :
------------------------------------------------X

------------------------------------------------X

LEVI STRAUSS & COMPANY,          :

                    Plaintiff,          :

        -against-          :    83 Civ. 4338 (RWS)

TEXTILES CONFECCIONES EUROPAS, S.A.,     :

                    Defendant.     :
------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

     Declaratory judgment plaintiff Lois Sportswear, U.S.A.,

Inc. ("Lois") and Defendant Textiles Y Confecciones Europeas,

S.A. ("Textiles") move this Court for a summary determination

and an order, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, granting the declaratory relief sought by Lois

against defendant Levi Strauss & Company ("Levi"), and

dismissing, with prejudice, the claims of Levi against Textiles.

-1-

LSC v. A&F 26(a)
0979

Rule 56(c) of the Federal Rules of Civil Procedure permits the court to grant summary judgment as to any issue if, based upon the pleadings, admissions, deposition testimony, answers to interrogatories and affidavits submitted in support of the motion, there is no genuine issue as to any material fact. That is the situation here.

This action was originally brought by Lois under the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201, the Lanham Act, 15 U.S.C. §§1051, et seq., and the laws of the State of New York for (a) a declaration that the use of a stitched back pocket design on certain items of wearing apparel imported into the United States and distributed by Lois does not infringe any trademark rights possessed by Levi and does not constitute a violation of Levi's rights under 15 U.S.C. § 1125(a) or New York state law governing trademarks, unfair competition and dilution; and (b) a permanent injunction restraining Levi from interfering in any manner with Lois' importation and distribution of items of apparel bearing that design. Levi counterclaimed for trademark infringment, unfair competition and dilution, under the Lanham Act and the laws of the State of New York, and sought a permanent injunction to restrain Lois from using its stitched back pocket design in the United States.

Subsequent to the filing of the Lois action, Levi filed an action against Textiles, a Spanish company affiliated with Lois which manufactures Lois brand apparel. The allegations in

LSC v. A&F 26(a)
0980

Levi's complaint against Textiles are substantially similar to the allegations of its counterclaims against Lois in the first action. The two actions have since been consolidated.

## STATEMENT OF FACTS

Lois is a corporation organized under the laws of the State of Delaware, with a principal place of business at 12 West 57th Street, New York, New York, and is a member of a group of companies affiliated with Textiles, which is located in Valencia, Spain. Textiles is the manufacturer of wearing apparel bearing the Lois brand name, which has been sold throughout Europe by Textiles and its predecessors and affiliates over the past 25 years. Lois, which was incorporated in 1977 and has been doing business in the United States since 1979, imports and distributes wearing apparel manufactured by Textiles.

Included among the items of apparel imported and distributed by Lois are jeans and trousers fashioned of denim and other fabrics. Lois' trousers generally consist of two types: high-priced five pocket jeans made principally of denim and high fashion jeans or trousers made of canvas or other fabrics. For convenience, references to Lois "jeans" will refer to both types unless otherwise indicated. These jeans and trousers, which retail for approximately $60 to $80 per pair, are sold to consumers through various boutiques and a limited number of quality department stores throughout the United States.

–3–

Lois' jeans are marketed and sold to the ultimate consumer with a variety of identifying marks which serve to distinguish Lois' jeans from those of other manufacturers. As part of their design, most of the Lois jeans models have a stitched pattern on the right rear pocket. All models of basic five-pocket and high fashion jeans distributed by Lois are sold with "hang tags" upon which the Lois brand name and its distinctive bull symbol are prominently displayed. Additionally, each pair of Lois jeans is sold with two stitched-on cardboard tags, one measuring approximately 5 inches by 3 inches and the other measuring approximately one inch by three inches, both of which tags prominently feature Lois' brand name and bull symbol and also indicate in conspicuous print that Lois' jeans are "imported from Europe." Finally, there are various identifying symbols affixed permanently to all models of the five-pocket jeans and many models of the high fashion jeans, including: (a) a two-inch by one-inch leather tag affixed to the left rear pocket bearing the Lois brand name and bull symbol; (b) a fabric tag stitched to the right rear pocket which features the Lois brand name; (c) a sizing and care tag stitched to the inner waist seam which bears the Lois brand name and indicates that both the fabric and product are made in Spain; (d) a brass button located on the waist band bearing the Lois brand name; and

LSC v. A&F 26(a)
0982

(e) a quarter circle leather or fabric patch stitched to the right front pocket bearing the distinctive bull symbol.

Levi is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Francisco, California. Levi is in the business of manufacturing and distributing certain types of wearing apparel, including jeans.

In or about 1979, Levi initiated complaints to Lois (and Textiles) to the effect that the use of the Lois stitching pattern on Lois jeans infringed Levi's trademark rights. Specifically, Levi claimed that the design which it uses on the back pockets of its jeans is a registered trademark, and that the use of a purportedly similar design on Lois' jeans created a likelihood of confusion.

For purposes of this motion for summary judgment only, Lois and Textiles do not dispute the validity of Levi's registered trademark(s) covering the Levi back pocket stitched design.

Levi also employs other trademarks, including a distinctive red tag with the word "Levi" in white letters, prominently affixed to the right rear pocket of its jeans, and other distinctive trade dress which clearly identifies Levi jeans as products of Levi Strauss & Company.

ARGUMENT

I.   Standard for Summary Judgment in a Trademark Case.

        This Court is particularly well equipped to render
a summary decision in this trademark action.  Plus Products
v. Plus Discount Foods, Inc., 564 F. Supp 984 (S.D.N.Y.),
aff'd in part and rev'd in part, 722 F.2d 999 (2d Cir.
1983), Universal City Studios v. Nintendo Co., Ltd., 578 F.
Supp. 911 (S.D.N.Y. 1983), aff'd, 746 F.2d 112 (2d Cir.
1984), and Mennen Company v. Gillette Company, 565 F. Supp.
648 (S.D.N.Y. 1983) (Pollack, J.) involved factual
situations with numerous and striking similarities to the
dispute here in issue.  Moreover, the decisions of other
courts based on remarkably similar, if not virtually
identical, circumstances provide further authority for the
movants' position.  See Levi Strauss & Co. v. Longley, 272
F.2d 820 (6th Cir. 1959); Pignons, S.A. de Mecanique de
Precision v. Polaroid Corporation, 657 F.2d 482 (1st Cir.
1981); and In re Schmid Laboratories v. Youngs Drug
Products Corporation, 482 F. Supp. 14 (D.N.J. 1979).  In
their totality or solely as to specific points of
applicable law, the above authorities provide an ample
basis for concluding that the motion of Lois and Textiles
for summary judgment on all issues should be granted.

        To be entitled to summary judgment, Lois and
Textiles must demonstrate the absence of any genuine issue
of material fact.  Fed. R. Civ. P. 56(c).  The record must

-6-

be construed in the light most favorable to Levi and all reasonable inferences must be drawn in favor of Levi. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

At the crux of the Court's determination is whether there is a likelihood of confusion as to source. Lever Brothers Co. v. American Bakeries Co., 693 F.2d 251, 253(2d Cir. 1982). Although the determination of likelihood of confusion may involve issues of fact, this Court has previously ruled that "if a visual comparison reveals the two marks are not substantially similar summary judgment... is appropriate on this question." Universal City Studios v. Nintendo Co., supra, 578 F. Supp. at 927. As also held in Universal v. Nintendo, it is appropriate for purposes of summary judgment to analyze the competing marks in the overall context in which they appear and to consider the so-called "Polaroid factors" to assist in the determination of likelihood of confusion. 578 F. Supp. at 927-28. See Warner Brothers, Inc. v. American Broadcasting Companies, 720 F.2d 231, 237, 242 (2d Cir. 1983), for a full discussion of comparing the total perceptions created by competing marks.

In order to prevail at trial on its claims of infringement and unfair competition, Levi would have to show that "there exists 'a likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in

LSC v. A&F 26(a)
0985

question.' <u>Mushroom Makers, Inc.</u> v. <u>R.G. Barry Corp.</u>, 580

F. 2d 44, 47 (2d Cir. 1978), <u>cert</u>. <u>denied</u>, 439 U.S. 1116

(1979)." <u>Thompson Medical Company, Inc.</u> v. <u>Pfizer</u>

<u>Inc.</u>, ___ F.2d ___, No. 84-7761, Slip Op. at 1287 (2d Cir.

Jan. 11, 1985); <u>Lever Bros. Co.</u> v. <u>American Bakeries,</u>

<u>supra</u>, at 253 (2d Cir. 1982); <u>Universal</u> v. <u>Nintendo Co.</u>,

<u>supra</u>, at 926.  Obviously, as was done by the defendant in

<u>Universal</u> v. <u>Nintendo</u>, Lois and Textiles have to prove the

inverse of the above proposition in order to prevail at

this stage of the proceedings.

    The Lanham Act, 15 U.S.C. § 1051, <u>et seq</u>, provides

that infringement occurs when another's use of a mark is

"likely to cause confusion, or to cause mistake, or to

deceive."  15 U.S.C. § 1114(1)(a).  As has been held by this

Court in <u>Nation's Choice Vitamin Co., Inc.</u> v. <u>General Mills,</u>

<u>Inc.</u>, 526 F. Supp. 1014 (S.D.N.Y. 1981):

> The degree of confusion required "under both
> the Lanham Act and the common law, is the
> likelihood that the consuming public will be
> confused as to the source of the allegedly
> infringing product." <u>American Footwear Corp.</u>
> v. <u>General Footwear Co., Ltd.</u>, 609 F.2d 655,
> 664, (2d Cir. 1979), <u>cert</u>. <u>denied</u> 445 U.S. 951
> (1980).

526 F.Supp. at 1018.

    It has been well established in <u>Polaroid Corp.</u> v.

<u>Polarad Electronics. Corp.</u>, 287 F.2d 492, 495 (2d Cir.), <u>cert</u>.

<u>denied</u>, 368 U.S. 820 (1961), that an assessment of the

likelihood of confusion between two marks properly turns on the

examination of many factors:

LSC v. A&F 26(a)
0986

> [The] strength of the mark, the degree of
> similarity between the marks, the proximity
> of the products, the likelihood that the
> prior owner will bridge the gap, actual
> confusion, and the reciprocal of defendant's
> good faith in adopting its own mark, the
> quality of defendant's product, and the
> sophistication of the buyers. Even this
> extensive catalogue does not exhaust the
> possibilities -- the court may have to take
> still other variables into account.

287 F.2d at 495. See Thompson v. Pfizer, supra, at 1288; Lever

Bros. v. American Bakeries, supra, at 253; Vitarroz Corp. v.

Borden, Inc., 644 F.2d 960 (2d Cir. 1981).


II. As a Matter of Law, There Is No Likelihood of
    Confusion as to the Source of the Lois Jeans

    A.   The Marks Are Visually Dissimilar, Especially
         when Viewed under Actual Market Conditions.

         In order to determine if the competing marks are

confusingly similiar, it is appropriate for the Court to

inspect the marks visually and to compare the extent to which

the allegedly infringing mark captures the total concept and

feel of the senior user's mark. Universal v. Nintendo Co.,

Ltd., supra, 746 F.2d at 116.

         A visual inspection of the stitched designs on

Exhibits A and C annexed to the Schutzman Affirmation reveals

that the Lois mark extends approximately one inch further

toward the bottom pocket, creating the impression of a letter

"Y" as compared to the "V" impression of the Levi design.

However, notwithstanding the existence of some similarity in

the impression created by the marks when viewed in isolation,

LSC v. A&F 26(a)
0987

it is well established that the court must analyze the overall
context in which the marks appear. <u>McGregor - Doniger, Inc.</u> v.
<u>Drizzle, Inc.</u>, 599 F.2d 1126 (2d Cir. 1979). As this Court has
previously stated, the analysis consists of more than comparing
the size, color and other characteristics of the contested
marks in isolation:

> The inquiry does not, however, stop
> there. In assessing the degree of
> similarity between two marks it is the
> effect upon prospective purchasers that
> is important. [citations omitted].
> Thus the setting in which a designation
> is used, because it affects the
> appearance and colors the impression
> conveyed by the mark, must be analyzed.
> [citations omitted].

<u>Plus Products</u> v. <u>Plus Discount Foods, Inc.</u>, <u>supra</u>, 564 F. Supp.
at 991. Finally, as this Court held at the summary judgment
stage in <u>Univeral</u> v. <u>Nintendo,</u> <u>supra</u>, any physical similarities
may be overcome by the total concept and feel of the products.

We respectfully submit that an inspection of the
respective products as they appear under actual market
conditions dispels any reasonable possibility that the
similarity of stitched design could deceive a prospective
purchaser as to the source of either pair of jeans. <u>See</u>
Exhibits A and C to the Schutzman Affirmation. Accordingly,
this action may be disposed of as a matter of law at this time.

-10-

B.    Both the Lois Design and the Levi Arcuate Always Appear
      In Close Proximity to their Well Recognized Brand Names
      and other Distinctive Logos or Marks.

As is amply shown by Exhibit A appended to the
Schutzman Affirmation, the Lois stitched design is always used
in conjunction with or in close proximity to the Lois brand
name and distinctive Lois bull logo.  Equally effective in
dispelling the possibility of confusion is the prominent
display of the Levi brand name in close association with its
arcuate design, including the distinctive red tab with the name
"Levi" featured on the same pocket.  See Exhibit C to the
Schutzman Affirmation.  It is well-settled that the close
physical association of the name of the manufacturer with the
mark militates against any likelihood of confusion as to
source.  Thus, in Bose Corporation v. Linear Design Labs, Inc.,
467 F.2d 304 (2d Cir. 1972), the Second Circuit denied relief
in an infringement action to a manufacturer of speaker cabinets
stating that "[t]he presence of [defendant's] name on the
product goes far to eliminate confusion of origin." Id. at
309.  At issue in the Bose case were audio speakers which were
physically quite similar, but which also were identifiable by
their brand names/logos.  See  R. G. Barry Corporation v. A.
Sandler Co., Inc., 406 F.2d 114, 116 (1st Cir. 1969); Fisher
Stoves, Inc. v. All Nighter Stove Works, Inc., 626 F.2d 193
(1st Cir. 1980); American Rolex Watch Corporation v. Ricoh Time
Corporation, 491 F.2d 877, 879 (2d Cir. 1974).

-11-

C.   There Have Been No Instances of Actual Confusion.

The absence of evidence of actual confusion is a stong indication that the likelihood of confusion is small.   The Second Circuit has found the lack of actual confusion to be a persuasive factor under the similar circumstances of the Plus Products case

> Despite three years of concurrent use, the district court found there were no instances of actual consumer confusion, but it did not articulate the importance it gave to this factor. While we recognize that it is difficult to establish actual confusion on the part of retail customers, W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 662 (2d Cir. 1970), no evidence of confusion for over a three year period during which substantial sales occurred, is a strong indicator that the likelihood of confusion is minimal. Lever Bros. v. American Bakeries Co., 693 F.2d at 257; Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482 (1st Cir. 1981); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d at 263; McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d at 1136. [Emphasis supplied]

722 F.2d at 1006.

In response to Lois' first set of interrogatories, Levi admitted that there have been no instances of actual confusion, despite Lois' presence in this market for more than five years:

> INTERROGATORY NO. 18:
>
> State whether there have ever been any incidents reported to Levi wherein any person has been confused, mistaken or deceived as to the source or origin of

-12-

LSC v. A&F 26(a)
0990

Levi products carrying the Levi
Stitched Design or as to the source or
origin of any product carrying an
Arcuate design of any other
manufacturer or vendor,...

RESPONSE TO INTERROGATORY NO. 18:

None of which Levi Strauss & Co. is
aware.

INTERROGATORY NO. 20:

State whether Levi has ever received
any misdirected mail, telephone calls,
orders, inquiries or complaints which
were intended for Lois or any other
person other than Levi which
manufacture or have ever manufactured
products bearing an arcuate design,...

RESPONSE TO INTERROGATORY NO. 20:

None to the extent LS&CO is aware.

Exhibit I to the Schutzman Affirmation at 22-23.

D.    The Marks Are Used on Non-Competing Products in
      Dissimilar Markets.

There are three distinct markets for jeans in the

United States.  Basic Brands such as Wrangler, Lee and Levi

sell in the lowest price range of from $20.00 to $30.00;

so-called designer brands such as Calvin Klein, Jordache and

Sergio Valente sell in a middle price range of approximately

$40.00 per pair; so-called fashion brands such as Ball, Newman,

Guess and Lois sell at a higher price range from $60.00 to

$80.00. See Deposition Testimony of Andrew L. Gross, Exhibit E

to the Schutzman Affirmation at 25-27; Deposition Testimony of

LSC v. A&F 26(a)
0991

Jeffery Cohen, Exhibit G to the Schutzman Affirmation at
24-29.  Levi is simply not a competitor in either the middle or
top end markets.  Id.  See also Deposition Testimony of Joaquin
Saez Merino, Exhibit F to the Schutzman Affirmation at 77-78;
Cohen Deposition Testimony, Exhibit H at 78-79.

In addition to the obvious market differences
described above, it is also significant that the Lois jean is
the highest priced jean or trouser among the fashion
competitors.  Cohen Deposition Testimony, Exhibit G at 26.
Thus, the differential between Levi jeans at roughly $25 and
Lois jeans priced at $60-$80 illustrates the dissimilarity
between the two products and their respective markets.

The price difference between the Lois products and the
Levi jeans is the most significant feature establishing
separate markets and competitors for the respective brands.
See Pignons, supra, 657 F.2d at 487-88.  However, the
substantial differences in quality are not to be ignored when
considering the potential competition between the two types of
jeans. See Cohen Deposition Testimony, Exhibit G at 29-31.  See
also Plus Products, supra, 722 F.2d, at 1006-07.  A terse
description of the major differences in quality is set out in
the Deposition Testimony of Andrew Gross, Exhibit E at 74-75,
wherein he details the superior materials and workmanship that
typify the Lois jeans.  The effect of such qualitative
differences, as well as the effect of the fashion aspect of the
Lois jeans, is to reduce the likelihood of cost-conscious

-14-

shoppers misapprehending the source of either product.  See
Plus Products, supra, 722 F.2d at 1007.

    E.    Similar Stitching Designs Are Widely Used in the
           Apparel Industry, Indicating the Weakness of the Levi
           Mark.

For several years there has been widespread use of
back pocket designs on all types of jeans found in the
marketplace.  See Deposition Testimony of Joaquin Saez Merino,
Exhibit F to the Schutzman Affirmation at 145-46.  The dilutive
effect of such widespread use is apparent.  Significantly, in
response to Lois' first set of interrogatories, Levi's answer
to the following interrogatory reveals the widespread
prevalence of arcuate stitched designs on other sportswear:

    INTERROGATORY NO. 6:

    State whether since 1970, Levi became
    aware of any person who manufactured,
    sold or distributed products bearing an
    arcuate design similar to the Levi
    Stitched Design...

    RESPONSE TO INTERROGATORY NO. 6:

    The documents which contain information
    from which responses to this
    interrogatory can be derived are
    contained in more than 200 separate
    files relating to the United States,
    and approximately 800 additional files
    pertaining to other jurisdictions.

Exhibit I to the Schutzman Affirmation.


For based upon similar evidence, this court in Plus
Products, supra, found that the plaintiff's registered mark was

LSC v. A&F 26(a)
0993

very weak, due to apparently extensive third party use based on
some 130 different protests made by the plaintiff user since
1970.  564 F. Supp at 990.  The number of Levi's domestic
protest files, and the time period within which those protests
were lodged, are remarkably similar to what occurred in the
Plus Products case.

Perhaps of equal importance, in the Plus Products case
this Court looked at one other critical fact in arriving at its
characterization of the plaintiff's mark as weak.  Evidence was
presented in the Plus Products case that the Trademark Trial
and Appeal Board had previously found the same mark to be
weak.  564 F. 2d at 990-91.  The Levi arcuate has also been
denied protection against an allegedly similar mark in
circumstances virtually identical to the instant case.  See
Levi Strauss & Co. v. Longley, 272 F. 2d 820 (6th Cir. 1959).
There, the Sixth Circuit held:

> The action, brought by Levi Strauss and
> Company, was for infringement of its
> registered trademark, stitched on the
> back pockets of western style overalls
> and jeans.  The trademark has been
> termed an "arcuate" design.
> The trial court described the trademark
> of appellant as consisting of two equal
> arcs, lying substantially horizontally
> across the rear pocket.  The mark used
> by defendants, now appellees, is in
> general appearance similar to that of
> appellant, but differs in that it drops
> in the center to the bottom of the
> pocket.  Standing alone, the similarity
> of the marks might be sufficient to
> deceive the unwary purchaser, although
> no instance of deception was shown in
> evidence.  See Hemmeter Cigar Co. v.
> Congress Cigar Co., 6 Cir., 118 F.2d

-16-

LSC v. A&F 26(a)
0994

> 64,70. But all factors should be
> considered and, <u>when the overalls</u>
> <u>manufactured and sold by the respective</u>
> <u>parties are viewed in entirety, there</u>
> <u>appears to be no likelihood of</u>
> <u>reasonable confusion between the</u>
> <u>garments.</u> [Emphasis supplied]

272 F.2d at 821. It is further worthy of note that the Sixth

Circuit upheld the dismissal of Levi's claim in large part due

to the "marked contrast" in the distinguishing features between

the jeans at the point of sale and the fact that an unwary

purchaser was unlikely to be deceived as to the source of the

respective jeans due to the prominent display of brand names

and other distinctive trade dress. It is respectfully

submitted that the extensive third party use and the lack of

distinctiveness of the Levi arcuate, particularly when

surrounded by all of the point of sale indicia of source,

firmly militates in favor of the summary relief sought by Lois

and Textiles in this action.

    F.  <u>It is Highly Unlikely that Levi Will Bridge the Gap.</u>

        Levi has failed to allege that it has any intention to

sell fashion garments bearing an arcuate design which would

bridge the gap to the market for Lois jeans and trousers. This

is a further dispositive factor in analyzing the likelihood of

confusion. <u>See</u> <u>Vitarroz v. Borden, Inc.</u>, <u>supra</u>, at 969. Even

if Levi and Lois goods were sold in precisely the same market,

however, that would not be fatal to the motion of Lois and

Textiles, as is evident from the decision in <u>In Re Schmid</u>

<u>Laboratories</u> v. <u>Youngs Drug Products Corp.</u>, 482 F. Supp 14

(D.N.J. 1979).

-17-

At issue in the Schmid case was the defendant's use of the word "Ribbed" on its packages, despite plaintiff's prior registered mark and use of the word "Sensi-Ribbed".  The products, prophylactics, were fungible and sold side by side under identical retail circumstances for the same price.  Id. at 19-20.  However, based upon the prominent display of both parties' respective brand names, the court granted summary judgment dismissing plaintiff's infringement claims on the grounds that an average purchaser making a visual inspection of the different packages was not likely to be confused as to the source or origin of the products.  Id. at 18, 20.  It is noteworthy that the court in Schmid made numerous findings which indicated a high potential for confusion, all of which were dispelled by the clear visual dissimilarities created by the prominent inclusion of the respective brand names.

G.    Lois Has Acted in Good Faith

Attached to the Schutzman Affirmation as Exhibit F is a description of the history of the Lois design provided by Mr. Joaquin Saez Merino, the President of Textiles.  See Exhibit F at 20-33.  The salient aspects of Mr. Saez Merino's testimony are that the design was first used by Textiles' predecessors in Spain in 1959.  In 1961, when the Lois brand was "born", the stitched design of its predecessor's "jeans"-type garment was incorporated on the rear pocket of denim "jeans".  That design has remained unchanged ever since and has been used continuously on Lois brand jeans and trouser models since 1961.  Id. at 50-52.

-18-

To the best of Mr. Saez Merino's knowledge, the origins of the stitched design are Mexican or Spanish and the sale of denim jeans in Spain is associated with a marriage of the French denim fabric with the styles required by the Spanish Basque sheepherders.  Textiles did not export its jeans until 1968 when it commenced sales to Holland.  Id. at 33. It was not until 1967 or 1968 that Textiles became aware of Levi jeans.  Id. at 33.

By 1974, when Lois jeans were first sold in the United States, Textiles' predecessor had been manufacturing Lois brand jeans with the same stitched design since 1961. Under very similar circumstances, this Court examined the prior German background of the newly controlling group of the A&P Food Store and found a lack of predatory intent based on similar prior economic and historical reasons for the use of a mark.  Plus Products, supra, 564 F. Supp. at 986—87, 994.

In view of Lois' higher priced, higher quality jeans, which are also clearly labelled as Lois and not Levi products, there is a strong inference that Lois is not seeking any commercial advantage (in this case it would clearly be a disadvantage) by using its own stitched design.  Plus Products, supra, 564 F. Supp. at 994. Finally, the fact that Lois has proceeded despite a protest from Levi is of no consequence when two corporations, well represented by counsel, have decided to adopt a course that may well lead to litigation.  Id.

—19—

III.    Summary Judgment Should Be Granted Awarding Lois and
        Textiles Relief against Levi's Claims of False
        Designation of Origin

        Section 43(a) of the Lanham Act proscribes false
designations of origin or false descriptions made in connection
with the sale of a product.  Claims made under Section 43(a)
are also frequently referred to as claims of unfair
competition.  The ultimate inquiry in actions for false
designation of origin, as in the case of actions for trademark
infringement, is whether "there exists a likelihood that an
appreciable number of ordinarily prudent purchasers [will] be
misled, or indeed simply confused, as to the source of goods in
question."  Thompson v. Pfizer, supra, Slip Op. at 1287, citing
Mushroom Makers, Inc. v. R. G. Barry, supra, at 47.

        In addition to all of the factors previously discussed
and analyzed under the Polaroid tests which obviate, as a
matter of law, any potential confusion as to source, a finding
of false designation of origin is totally precluded where, as
here, the Lois brand name is clearly displayed together with
other logos and indicia of the Lois brand jeans.  See Exhibit A
to the Schutzman Affirmation; Bose v. Linear Design, supra, at
309-310; American Rolex Watch, Corp. v. Ricoh Time Corp., 491
F.2d 877, 879 (2d Cir. 1974).

-20-

IV.   Summary Judgment Should Be Granted Awarding Lois and
      Textiles Relief Against Levi's Claims under the New
      York Antidulution Statute and Other State Laws.

        To whatever extent Levi's claims raised under the New

York anti-dilution statute, N.Y. Gen Bus. Law § 368-a (McKinney

1968), or the unfair competition provision, N.Y. Gen Bus Law

§349 (McKinney 1968), do not involve rights equivalent to those

protected by the Lanham Act, the claims under New York law are

also insufficient to entitle it to the relief requested.

Warner Bros. Inc. v. American Broadcasting Companies, Inc., 720

F.2d 231, 248 (2d Cir. 1983).  Although an anti-dilution claim

may be established without a showing of confusion as to source,

the statute only protects extremely strong marks where there is

a likelihood of injury to business reputation or dilution of

the distinctive quality of a mark.  Sally Gee, Inc. v. Myra

Hogan, Inc., 699 F.2d 621, 624-26 (2d Cir. 1983).  It is

submitted that the Levi mark obviously fails to qualify for

protection under either §368-d or §349, in light of the

extensive third party use of similar marks and of the fact that

the Lois product is superior in terms of price and quality.

Thus, association with the Lois brand would not be likely to

tarnish Levi's own good reputation.  Mushroom Makers R.G.

Barry, supra.  Moreover, the distinct dissimilarities between

the Levi jeans and the Lois jeans, when viewed under actual

sales conditions, render Levi's claims under the state

-21-

anti-dilution statute unworthy of relief.  <u>Plus Products</u>, <u>supra</u>.

    An additional focus of inquiry under the antidilution statute is the defendant's good faith.  As the Second Circuit held in <u>Sally Gee</u>, <u>supra</u>:

> Finally, the absence of predatory intent by the junior user is a relevant factor in assessing a claim under the anti-dilution statute, <u>see</u> <u>Information Clearinghouse, Inc. v. Find Magazine</u>, 492 F. Supp. 147, 162 n.44 (S.D.N.Y. 1980), since relief under the statute is of equitable origin, <u>see</u> <u>Cue Publishing Co. v. Colgate-Palmolive Co.</u>, 23 A.D.2d 829, 259 N.Y.S.2d 377 (1st Dept. 1965).

699 F.2d 626.  For all of the reasons pointed out in section <u>II.G.</u>, <u>supra</u>, Lois and Textiles had a prior economic and historical interest in the use of the Lois stitched design on their well marked Lois brand jeans and sportswear products, thus amply dispelling any bad faith or predatory intent on their part.  See <u>Plus Products</u>, <u>supra</u>, 722 F.2d at 1007, <u>affirming</u> 564 F. Supp, <u>supra</u>, at 994.

LSC v. A&F 26(a)
1000

## Conclusion

For all of the foregoing reasons, the application of Lois and Textiles for summary judgment should be granted in all respects.

WHITMAN & RANSOM

By _____

Max F. Schutzman
A Member of the Firm
Attorneys for Lois and Textiles
522 Fifth Avenue
New York, New York   10036
(212) 575-5800

Dated:   New York, New York
         April 3, 1985

2265B

—23—

LSC v. A&F 26(a)
1001