```
 1  TOWNSEND AND TOWNSEND AND CREW LLP
    GREGORY S. GILCHRIST (State Bar No. 111536)
 2  GIA L. CINCONE (State Bar No. 141668)
    Two Embarcadero Center, Eighth Floor
 3  San Francisco, California  94111·
    Telephone: (415) 576-0200
 4  Facsimile: (415) 576-0300
    Email:  gsgilchrist@townsend.com, glcincone@townsend.com
 5
    Attorneys for
 6  Plaintiff/Counterdefendant
    LEVI STRAUSS & CO.
 7
 8                      UNITED STATES DISTRICT COURT
 9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11
12
    LEVI STRAUSS & CO.,                    Case No. C 07-03752 JSW
13
               Plaintiff/Counterdefendant, LEVI STRAUSS & CO.'S
14                                         REPLY IN SUPPORT OF
         v.                                MOTION TO DISMISS
15                                         COUNTERCLAIMS FOR
    ABERCROMBIE & FITCH TRADING CO.,       CANCELLATION
16
               Defendant/Counterclaimant.
17
    ABERCROMBIE & FITCH TRADING CO.,       DATE: April 25, 2008
18                                         TIME:  9:00 a.m.
               Defendant/Counterclaimant,  COURTROOM: 2
19
         v.
20
    LEVI STRAUSS & CO.,
21
               Plaintiff/Counterdefendant.
22
```

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. A&F's Fraud Claim Should Be Dismissed .............................................................. 1

        1. Lois Never Challenged LS&CO.'s Right to Own or Register the Arcuate Trademark ................................................................................. 1

        2. A&F Misapprehends The Nature Of LS&CO.'s Reliance On The TMEP ............................................................................................... 6

        3. Federal Case Law Is Entirely Consistent With The PTO's Rule ............. 7

        4. LS&CO.'s Omission, If Any, Was Not Material ....................................... 9

    B. A&F's Abandonment Claim Must Be Dismissed ................................................. 10

III. CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**Cases**

*BankAmerica Pension Plan v. McMath*,
  206 F.3d 821 (9th Cir.), *cert. denied*, 531 U.S. 952 (2000) ............................................................. 5

*Constellation Brands, Inc. v. Arbor Hill Associates, Inc.*,
  2008 U.S. Dist. LEXIS 14318 (W.D.N.Y. 2008) ........................................................................... 8

*Coufal Abogados v. AT&T, Inc.*,
  223 F.3d 932 (9th Cir. 2000) ......................................................................................................... 5

*CPI Plastics, Inc. v. USX Corp.*,
  22 F. Supp. 2d 1373 (N.D. Ga. 1998), *aff'd mem.*, 212 F.3d 599 (11th Cir. 2000) ..................... 2

*Duffy-Mott Company, Inc. v. Cumberland Packing Co.*,
  424 F.2d 1095 (CCPA 1970) ...................................................................................................... 10

*Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*,
  2007 U.S. Dist. LEXIS 40261 (M.D. Fla. 2007) .......................................................................... 8

*Exxon Corp. v. Oxxford Clothes, Inc.*,
  109 F.3d 1070 (5th Cir. 1997) .................................................................................................... 10

*Fort James Corp. v. Kimberly-Clark Tissue Co.*,
  1999 U.S. Dist. LEXIS 16321 (N.D. Ill. 1999) .......................................................................... 11

*Harley-Davidson, Inc. v. Grottanelli*,
  91 F. Supp. 2d 544 (W.D.N.Y. 2000) ...................................................................................... 3, 4

*Hellauer v. NAFCO Holding Co., LLC*,
  1998 U.S. Dist. LEXIS 12029 (E.D. Pa. 1998) ............................................................................ 3

*In re Houbigant, Inc.*,
  914 F. Supp. 964 (S.D.N.Y. 1995) ............................................................................................. 11

*In re Trademark Registration of McDonald's Corp.*,
  Reg. No. 1,065,885, 1984 Commr. Pat. LEXIS 10 (Comm'er of Patents and
  Trademarks Apr. 10, 1984) ...................................................................................................... 5, 6

*Iowa Health System v. Trinity Health Corp.*,
  177 F. Supp. 2d 897 (N.D. Iowa 2001) ...................................................................................... 11

*Levi Strauss & Co. v. Vivat Holdings PLC*,
  2000 TTAB LEXIS 817 (TTAB 2000) ...................................................................................... 11

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
  799 F.2d 867 (2d Cir. 1986) ....................................................................................................... 10

*National Business Systems, Inc. v. AM International, Inc.*,
  743 F.2d 1227 (7th Cir. 1984) ................................................................................................ 9, 10

## TABLE OF AUTHORITIES (con't)

Page

*National Steel Corp. v. Golden Eagle Insurance Co.*,
121 F.3d 496 (9th Cir. 1997) ................................................................................................5

*Orient Express Trading Co. v. Federated Department Stores, Inc.*,
842 F.2d 650 (2d Cir. 1988) ................................................................................................6, 9

*Pilates, Inc. v. Current Concepts, Inc.*,
120 F. Supp. 2d 286 (S.D.N.Y. 2000) ................................................................................2

*Plumtree Software, Inc. v. Datamize, LLC*,
2003 U.S. Dist. LEXIS 26948 (N.D. Cal. 2003) ................................................................7

*Ramada Franchise Systems, Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*,
2005 U.S. Dist. LEXIS 8367 (N.D. Ill. 2005) ....................................................................3

*Secular Organizations for Sobriety, Inc. v. Ullrich*,
213 F.3d 1125 (9th Cir. 2000) ............................................................................................3

*Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*,
793 F.2d 1529 (11th Cir. 1986) ..........................................................................................8

*Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*,
175 F.3d 1322 (Fed. Cir. 1999) ..........................................................................................7, 8

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
743 F.2d 1039 (4th Cir. 1984) ............................................................................................10

*Tobinick v. Scripps Clinic Medical Group*,
2002 U.S. Dist. LEXIS 9042 (C.D. Cal. 2002), *aff'd*, 2003 U.S. App. LEXIS
23647 (9th Cir. 2003) ..........................................................................................................6

*Trico Products Corp. v. Anderson Co.*,
147 F.2d 721 (7th Cir. 1945) ..............................................................................................3

*United States v. Cyr*,
2004 U.S. Dist. LEXIS 15578 (D. Me. 2004) ....................................................................3

*West Florida Seafood, Inc. v. Jet Restaurants, Inc.*,
31 F.3d 1122 (Fed. Cir. 1994) ............................................................................................6

**Statutes**

15 U.S.C. § 1065 ...........................................................................................................*passim*

15 U.S.C. § 1119 ...........................................................................................................4

**Other Authorities**

*Trademark Manual of Examining Procedure* § 1605.04 ..................................................2, 9

## I. INTRODUCTION

A&F's overlong opposition brief[1] provides no reason why its claims for cancellation of LS&CO.'s iconic Arcuate Trademark should proceed beyond the pleading stage. A&F offers no reason or authority for the proposition that LS&CO. might have defrauded the PTO by following the PTO's own rules – and there is no question that LS&CO. did follow the rule for disclosure of pending lawsuits that the PTO had established at the time LS&CO.'s Section 15 affidavit was filed. A&F offers no reason or authority why the PTO's rule is wrong. And A&F offers no reason or authority why LS&CO.'s registration would have been affected even if the PTO had been told of the *Lois* litigation; to the contrary, given that LS&CO. summarily prevailed in the litigation and on appeal, it is clear that LS&CO.'s registration would not have been affected at all.

A&F's abandonment claim also should be dismissed on the pleadings. A&F never alleges (and could not in good faith allege) that the Arcuate Trademark has lost all function as an identifier of the LEVI'S® brand – a necessary element of a claim of involuntary abandonment. A&F's allegations concerning a few instances of purportedly inconsistent enforcement are not sufficient, as a matter of law, to allow A&F to proceed on this claim.

## II. ARGUMENT

### A. A&F's Fraud Claim Should Be Dismissed

#### 1. Lois Never Challenged LS&CO.'s Right to Own or Register the Arcuate Trademark

At the time LS&CO.'s Section 15 affidavit was filed, the PTO had promulgated the following rule:

---

[1] A&F's opposition brief exceeds – by a considerable margin – the 15-page limit set by this Court's standing order. A&F also uses long textual footnotes in small type (apparently to avoid exceeding 25 pages), which violates Civil Local Rule 3-4(c)(2). LS&CO. has no objection if A&F submits a belated application showing good cause for an overlong brief – although given the overlapping and repetitive nature of A&F's arguments, it is not clear why the brief is so long.

1  2  3
> The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a § 15 affidavit.

*Trademark Manual of Examining Procedure* ("TMEP") § 1605.04. The premise of A&F's opposition is that this rule, and the PTO Commissioner's earlier pronouncements that gave rise to the rule, misinterpreted Section 15's requirement that a registrant seeking incontestability disclose proceedings "involving . . . registrant's right to . . . keep the [mark] on the register." 15 U.S.C. § 1065. A&F admits that the PTO's rule is "good evidence" of the disclosure requirement (Opp. at 12), but claims that "the 'examination procedures' at the PTO are, quite simply, irrelevant to A&F's counterclaim for fraud." (Opp. at 13.) This remarkable statement avoids LS&CO.'s basic point: *LS&CO. cannot have defrauded an agency by failing to disclose something the agency has declared it does not want to be told.* A&F never disagrees that any "fraud" sufficient for cancellation must be knowing, deliberate, and material. *See, e.g., Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 313 (S.D.N.Y. 2000) ("Fraud in a trademark cancellation is something that must be 'proved to the hilt' with little or no room for speculation or surmise; considerable room for honest mistake, inadvertence, erroneous conception of rights, and negligent omission; and any doubts resolved against the charging party."). Whether or not the PTO properly adopted its rules, it cannot be "fraud" to have followed them.

In any event, A&F is wrong to assert that the PTO did not have a sound basis for its rule that Section 15 requires disclosure only of affirmative pending claims for cancellation. A&F's argument to the contrary depends on the assumption that there is no difference between a case in which the defendant has made a *counterclaim* for cancellation of a trademark, and a case in which the defendant has raised *defenses* suggesting that the trademark is weak or is unenforceable in that particular case. There are, however, substantial differences between counterclaims and affirmative defenses, distinctions that wholly justify the PTO's interpretation of a registrant's disclosure obligations.

"Counterclaims . . . are readily distinguishable from affirmative defenses in that they seek affirmative relief on behalf of a defendant." *CPI Plastics, Inc. v. USX Corp.*, 22 F. Supp. 2d 1373, 1377 (N.D. Ga. 1998), *aff'd mem.*, 212 F.3d 599 (11th Cir. 2000); *see also Ramada Franchise Systems, Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, 2005 U.S. Dist. LEXIS 8367 at *37 (N.D.

Ill. 2005) ("Counterclaims and affirmative defenses are different in that a counterclaim seeks affirmative relief whereas an affirmative defense only attempts to defeat a plaintiff's cause of action."); *United States v. Cyr*, 2004 U.S. Dist. LEXIS 15578 at *2 n.1 (D. Me. 2004) (same, quoting *Black's Law Dictionary* (8th ed. 2004)); *Hellauer v. NAFCO Holding Co., LLC*, 1998 U.S. Dist. LEXIS 12029 at *11-12 (E.D. Pa. 1998) ("the counterclaims are bases on which a jury can award damages while the affirmative defenses are merely ways in which defendant can avoid liability"). If a defendant counterclaims for cancellation, the court must rule one way or another whether the mark is valid. But if the defendant merely argues (as Lois did) that the mark has been inadequately policed or has become diluted due to third party use, but does not affirmatively seek cancellation, the court need not decide the validity of the mark – it need only decide if the plaintiff is entitled to relief on its infringement claim.

Courts addressing infringement claims readily distinguish between the relief afforded defendants that seek cancellation and those that do not. For example, in *Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125 (9th Cir. 2000), the plaintiff raised trademark infringement claims; the defendant answered *and* counterclaimed for cancellation of the plaintiff's registration. This Court ruled against the plaintiff on all claims, but did not address the cancellation issue. *Id.* at 1131. The Ninth Circuit remanded for further proceedings on the counterclaim, noting that "resolution of the cancellation claim in [the defendant's] favor would have granted it rights and remedies not otherwise provided by the claims the district court resolved." *Id.* at 1131-32; *see also Trico Products Corp. v. Anderson Co.*, 147 F.2d 721 (7th Cir. 1945) (reversing dismissal of counterclaim for declaratory judgment of patent invalidity and noninfringement, noting that a judgment against the plaintiff's infringement claims would not necessarily resolve the question of validity).

Conversely, where the defendant does *not* seek cancellation, the court can resolve the infringement claims without addressing the validity of the mark. For example, in *Harley-Davidson, Inc. v. Grottanelli*, 91 F. Supp. 2d 544 (W.D.N.Y. 2000), the court enjoined the defendant from making certain trademark uses of the word "hog." On appeal, the Second Circuit reversed, holding that "hog" was generic. On remand, the defendant sought cancellation of three of the plaintiff's "hog"

marks under 15 U.S.C. § 1119, which provides that the court "may . . . order the cancellation of registrations." The court refused to cancel the registrations, holding, "[G]iven the permissive language of the statute, and the fact that *the defendant never interposed a counterclaim for cancellation of the trademarks*, raising the issue only after the case was remanded from the Second Circuit, the court declines defendant's invitation to cancel the 'Hog' registrations. The defendant can make such application to the United States Patent and Trademark Office." *Id.* at 547 (emphasis added).

This is the same distinction drawn by the PTO in interpreting the requirements of Section 15: only where a party has stated a specific claim for cancellation does the proceeding genuinely involve the registrant's right to maintain the registration. It is beyond any reasonable dispute that A&F's allegations about the *Lois* litigation fall into the category of cases where the trademark defendant did not file such a claim. A&F deems it "incredible" for LS&CO. to assert that Lois did not ask for a declaration that the Arcuate Trademark was invalid (Opp. at 2); but this is simply a statement of fact, as Lois' own statements and admissions show:

- In its declaratory relief complaint, Lois sought the following relief: a declaration that its stitching design did not infringe LS&CO.'s rights in the Arcuate Trademark and did not violate the Lanham Act or New York state law; a declaration that LS&CO. was barred by laches from asserting its rights in the Arcuate Trademark against Lois; and an order enjoining LS&CO. from interfering with Lois' use of its stitching design. Lois did *not* seek cancellation of the Arcuate Trademark or ask for any other relief that would impair LS&CO.'s registration. (Counterclaims Ex. B at 7.)

- In its answer to LS&CO.'s infringement counterclaims, Lois sought dismissal of the counterclaims and the same relief set forth in its declaratory relief complaint – which, as noted, did *not* include cancellation. (Counterclaims Ex. B at 36-37.)[2]

---

[2] A&F offers materials extraneous to its counterclaims, on the theory that Lois' summary judgment motion may be considered because the motion was referenced in A&F's counterclaims. (Opp. at 2 n.2.) In fact, the counterclaims do not reference *Lois'* motion for summary judgment. Rather, they describe *LS&CO.'s* motion for summary judgment. (Counterclaims ¶ 10 & Ex. E.) In any event, far from displaying any specific challenge to LS&CO.'s mark, the *Lois* pleadings, if they are relevant at all, disclose that Lois was not even trying to sustain its affirmative defenses:

Continued on the next page

1    Thus, not only did Lois never ask the district court to cancel LS&CO.'s mark, it affirmatively
2 conceded, for purposes of both cross-motions for summary judgment and on appeal, that the mark was
3 valid and incontestable. In other words, Lois never sought relief that challenged LS&CO.'s right to
4 register or maintain on the register its Arcuate Trademark. A challenge to the trademark owner's right
5 to enforce the mark against a particular defendant (*see* Opp. at 9) is not the same thing as a challenge
6 to the owner's rights in the registration. In short, where an infringement defendant asserts defenses
7 that could be grounds for cancellation but does not seek to cancel the mark, Section 15 simply is not
8 implicated. *See In re Trademark Registration of McDonald's Corp.*, Reg. No. 1,065,885, 1984
9 Commr. Pat. LEXIS 10 (Comm'er of Patents and Trademarks Apr. 10, 1984) (not all civil trademark
10 proceedings involve "the rights contemplated by Section 15").[3]

11    Moreover, the validity of the plaintiff's trademark is always at issue in a trademark

---

Continued from the previous page

• Lois admitted for purposes of LS&CO.'s successful summary judgment motion that the Arcuate Trademark was not only valid, but incontestable. (Cincone Reply Dec. Ex. A at 2.)

• At the hearing on the cross-motions for summary judgment, Lois' counsel again conceded that LS&CO.'s Arcuate Trademark was both valid and incontestable. (Cincone Reply Dec. Ex. B at 48-49.)

• Lois conceded in its opening brief to the Second Circuit that it did not dispute the incontestability of LS&CO.'s mark ("for purposes of this motion only"). (Cincone Dec. Ex. C at 42.) Of course, once waived at the summary judgment stage, Lois could not resurrect its affirmative defense in the appellate proceeding – the proceeding that was pending when LS&CO. filed its Section 15 affidavit. *See, e.g., Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (argument waived on appeal where not offered in opposition to summary judgment motion); *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir.), *cert. denied*, 531 U.S. 952 (2000) (party cannot revisit theories on appeal that were abandoned at summary judgment); *National Steel Corp. v. Golden Eagle Insurance Co.*, 121 F.3d 496, 500 (9th Cir. 1997) (party waived argument by failing to raise it at summary judgment).

[3] This case was decided before LS&CO.'s first affidavit – which was submitted too early -- was filed. A&F criticizes the PTO for construing the *McDonald's* decision to mean that only proceedings involving counterclaims must be disclosed. For the reasons stated above, the PTO had ample grounds for adopting this rule, and the Commissioner's directive in the *McDonald's* decision to change the rule is entirely consistent with the rule the PTO adopted. A&F's attempt to distinguish the Commissioner's decision from the PTO's rule (Opp. at 15-16), once again, misses the point: LS&CO. cannot be guilty of *fraud* for filing an affidavit that complies with the PTO's statement of its rule or the PTO's interpretation of its Commissioner's decision.

infringement action, because it is an element of the plaintiff's claim. *See, e.g., Tobinick v. Scripps Clinic Medical Group*, 2002 U.S. Dist. LEXIS 9042 at *37-38 (C.D. Cal. 2002), *aff'd*, 2003 U.S. App. LEXIS 23647 (9th Cir. 2003). If A&F's argument had merit, *all* infringement lawsuits would "involv[e] the rights contemplated by Section 15" and would have to be disclosed – a result that the PTO already has rejected, for good reason. A rule that Section 15 affidavits were precluded by any pending infringement litigation would penalize registrants who seek to protect their rights in their trademarks by bringing infringement actions. *See In re Trademark Registration of McDonald's*, *supra*. Persistent infringers could indefinitely delay the affidavits required for incontestable status, even without a challenge to the registration. A&F offers no persuasive reason, of law or of policy, why the PTO's interpretation of Section 15 is wrong.

### 2. A&F Misapprehends The Nature Of LS&CO.'s Reliance On The TMEP

Contrary to A&F's assertion, LS&CO. does not claim that the TMEP is a binding interpretation of federal law. (*See* Opp. at 12.) The TMEP is, however, binding on the examiners, as the cases cited by A&F indicate. *See, e.g., West Florida Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1127 n.8 (Fed. Cir. 1994) (the TMEP "sets forth the guidelines and procedures followed by the examining attorneys at the PTO"). The TMEP is critical in this instance, because it dictated what the examiners would do with LS&CO.'s Section 15 affidavits – obviously a key issue in addressing A&F's fraud claim, since A&F is required to demonstrate that the PTO would have acted differently but for LS&CO.'s allegedly fraudulent submissions. *See Orient Express Trading Co. v. Federated Department Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988).

A&F asserts that the TMEP rule cited by LS&CO. was not operative at the time LS&CO. filed its first Section 15 affidavit. (Opp. at 14.) But by A&F's own allegations, LS&CO.'s first Section 15 affidavit was *rejected by the PTO as untimely*. (Counterclaims ¶ 9 & Ex. D.) Thus, LS&CO.'s first affidavit cannot be the basis for any fraud on the PTO, because the PTO did not accept or rely upon the affidavit.

As to the second affidavit, A&F admits that the rule stating that the PTO does not consider a proceeding without a counterclaim to be a "proceeding involving these rights" within the meaning of Section 15 was in place at the time the affidavit was submitted. (Opp. at 14.) A&F argues that the

TMEP provision does not apply because LS&CO. was the defendant in *Lois*, not the plaintiff. (Opp. at 14.) But LS&CO., the registrant, was the plaintiff for purposes of its counterclaims for infringement, and therefore stood in the position of the plaintiff for purposes of the TMEP rule. When a declaratory relief action is followed by a coercive action for infringement, the parties are re-ordered to make the trademark owner the plaintiff. *See, e.g., Plumtree Software, Inc. v. Datamize, LLC*, 2003 U.S. Dist. LEXIS 26948 (N.D. Cal. 2003) (realigning parties to designate plaintiff in declaratory relief action as defendant in infringement action). The PTO rule makes this clear by specifically stating that the trademark owner is to be considered the "plaintiff" against whom the "counterclaim" must be asserted.

A&F also suggests that federal courts have taken issue with the substance of the TMEP rule. But the cases A&F cites (discussed below) were all decided *after* LS&CO. filed its Section 15 affidavit. The fact is that at the time LS&CO. submitted its operative Section 15 affidavit, it was doing exactly what the PTO said it should do. Even if a federal court had later squarely held that the PTO's interpretation of Section 15 was wrong, A&F's fraud claim would have to be dismissed. LS&CO. cannot possibly have defrauded an agency by following the agency's own procedures in place at the time of the purported fraud. For these reasons -- whether or not the TMEP necessarily embodies the correct interpretation of Section 15 (although LS&CO. believes it does) -- A&F's fraud claim must be dismissed.

### 3. Federal Case Law Is Entirely Consistent With The PTO's Rule

In its opening brief, LS&CO. cited a Federal Circuit decision, *Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*, 175 F.3d 1322 (Fed. Cir. 1999), that squarely addressed the proper interpretation of Section 15, and followed the PTO's rule. This case – the only case that discusses the PTO's disclosure rule – is completely misrepresented in A&F's opposition. *Sunrise* involved a registration obtained by the defendant, Fred S.A., in 1990. Fred became embroiled in an infringement dispute which included a petition to the PTO to cancel Fred's registration. That dispute settled and the cancellation petition was withdrawn in May 1995, at which time Fred filed its Section 15 incontestability affidavit. *Id.* at 1323. In April 1995, Fred brought an unrelated action for infringement of its mark. Fred's Section 15 affidavit was not acknowledged by the PTO until March

1996, and in the interim, the infringement defendants in the second case filed a counterclaim challenging the validity of Fred's mark. Sunrise subsequently petitioned to cancel Fred's registration on grounds of fraud.

The TTAB rejected the petition to cancel, and the Federal Circuit affirmed. As to the first cancellation proceeding, the court held that even though the proceeding had not been terminated as of the time the affidavit was filed, a withdrawal had already been filed and therefore "it would have been *reasonable to believe* that no proceeding was pending." *Id.* at 1327. As to the second proceeding, *even though a trademark infringement action was pending at the time the Section 15 affidavit was filed*, the court held that the affidavit was not fraudulent because the counterclaim had not yet been filed. Citing the PTO's rule, the Federal Circuit held that "Sunrise's pleadings of fraud are legally insufficient." *Id.*

A&F's account of the facts of this case is virtually unrecognizable. (Opp. at 16-17.) A&F asserts that the second proceeding was "unrelated," but fails to mention that it was a trademark infringement proceeding (like *Lois*), and also fails to mention that the Federal Circuit, citing the PTO rule, held that the proceeding did not need to be disclosed because (again like *Lois*) there was no counterclaim. Despite A&F's misrepresentations, it is apparent that *Sunrise* is squarely on point. Under the holding of *Sunrise*, A&F's fraud allegations are legally insufficient, because no counterclaim was pending in the *Lois* case when LS&CO.'s Section 15 affidavit was filed.

On the other hand, A&F cites three cases, *none* of which cite or discuss the PTO rule. In *Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*, 2007 U.S. Dist. LEXIS 40261 at *9-10 (M.D. Fla. 2007), and *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1540-41 (11th Cir. 1986), the courts held only that the plaintiffs' marks should not be treated as incontestable where the instant cases were pending at the time the plaintiffs filed their Section 15 incontestability affidavits. In *Constellation Brands, Inc. v. Arbor Hill Associates, Inc.*, 2008 U.S. Dist. LEXIS 14318 at *38 (W.D.N.Y. 2008), the court merely denied the defendant's motion for summary judgment on its cancellation counterclaim, without analyzing the question whether the pending case involved the rights contemplated by Section 15. A&F has presented this Court with no authority for the proposition that LS&CO.'s non-disclosure of an infringement action in which there

LS&CO.' REPLY ISO MOTION
TO DISMISS COUNTERCLAIMS                -8-                *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
Case No. C 07-03752 JSW

1  was no counterclaim, and in which LS&CO. prevailed on summary judgment and on appeal, should
2  subject its mark to cancellation in a subsequent proceeding.

### 4.   LS&CO.'s Omission, If Any, Was Not Material

A&F argues that omission of the *Lois* litigation from LS&CO.'s Section 15 affidavit was material as a matter of law because disclosure of the litigation was required by Section 15. (Opp. at 18.) A&F's argument is circular, and in effect, reads the element of materiality out of its fraud claim. The test for materiality is whether there was a "knowing misstatement . . . with respect to a [fact] that *would have affected the PTO's action* on the applications." *Orient Express*, 842 F.2d at 653 (citations omitted, emphasis added). To assess materiality here, it is necessary to figure out what the PTO would have done if LS&CO.'s Section 15 affidavit had disclosed the *Lois* litigation and if the PTO had concluded that *Lois* was a "pending proceeding" within the meaning of Section 15.

The PTO's procedures for handling incontestability affidavits that do not meet the requirements of Section 15 are set forth in the Trademark Manual of Examining Procedure:

> If the USPTO finds that there is a proceeding pending that involves the owner's right to register the mark or to keep the mark on the register, the USPTO will not acknowledge the affidavit. . . . The owner may not amend or correct a § 15 affidavit, but may file a new affidavit.

TMEP § 1605.04. Thus, if the PTO had known of the *Lois* litigation, *and* had considered the *Lois* litigation to be a "proceeding pending that involve[d] the owner's right to . . . keep the mark on the register," it would merely not have recognized LS&CO.'s Section 15 affidavit. LS&CO.'s registration would not have become incontestable until LS&CO. again prevailed in the *Lois* case on appeal and resubmitted its affidavit, but the registration would not have been affected. This does not constitute materiality for purposes of a claim to cancel LS&CO.'s registration.

If an omission could be considered material only because disclosure was required by the statute, as A&F argues, then all omissions would be material, and the materiality element would be rendered meaningless. Moreover, A&F's assertion that materiality is assessed as of the time the statement was made to the PTO is not supported by the cases it cites. *National Business Systems, Inc. v. AM International, Inc.*, 743 F.2d 1227 (7th Cir. 1984), was a patent case in which the court held that in order to find fraud based on nondisclosure of material prior art, the court must determine both that

the undisclosed art was material and that the party charged with non-disclosure knew or should have known of the materiality at the time of the non-disclosure – an entirely different proposition. *Id.* at 1239. *Duffy-Mott Company, Inc. v. Cumberland Packing Co.*, 424 F.2d 1095 (CCPA 1970), concerned a misrepresentation that the mark was being used on certain goods when it was not, which is not the issue here. These cases have no bearing on the fundamental flaw in A&F's fraud claim: because disclosure of the *Lois* litigation would not have affected LS&CO.'s registration, its non-disclosure cannot constitute fraud.

### B.   A&F's Abandonment Claim Must Be Dismissed

A&F's claim for cancellation based on abandonment also must be dismissed. A&F's counterclaim consists of a series of allegations that LS&CO. has been inconsistent in its enforcement of its mark. But *nowhere does A&F allege that the Arcuate Trademark has lost its trademark significance* – a necessary element of any claim of involuntary abandonment.

A&F's opposition brief makes clear that its abandonment claim is based on *three* instances of allegedly inadequate or inconsistent policing of LS&CO.'s mark, culled from the thousands of pages of enforcement-related documents A&F has reviewed. In two cases, A&F contends that LS&CO. should have sued for infringement, but did not. In the third case, LS&CO. sued for infringement and then settled with the defendant. (Opp. at 5-6.) According to A&F, these three cases add up to a relinquishment of all of LS&CO.'s rights in its mark. (Opp. at 21.)

A&F's allegations plainly are insufficient to withstand a motion to dismiss. The authorities set forth in LS&CO.'s opening brief make clear that in order to be subject to a claim of involuntary abandonment, the trademark owner must completely fail to enforce its mark to the point where the mark loses all significance as a source indicator. *E.g., Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1080 (5th Cir. 1997) (abandonment requires "an ultimate showing of loss of trade significance"); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1048 (4th Cir. 1984) (abandonment requires that the mark have lost significance "as an indication of source"). A&F has not alleged that the Arcuate Trademark has lost its significance as an indication of source, and could not in good faith make such an allegation. *See, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 869 (2d Cir. 1986) ("In many ways the back pocket stitching pattern has become

LS&CO.' REPLY ISO MOTION
TO DISMISS COUNTERCLAIMS      -10-      *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
Case No. C 07-03752 JSW

the embodiment of Levi Jeans in the minds of jeans buyers."); *Levi Strauss & Co. v. Vivat Holdings PLC*, 2000 TTAB LEXIS 817 at *17 (TTAB 2000) ("[LS&CO.] has clearly demonstrated that its [Arcuate Trademark] is very strong and well-known for clothing, especially jeans"). The absence of any such allegation is fatal to A&F's claim of abandonment.

Once again, the authorities cited by A&F are not to the contrary. At most, the one relevant case, like those cited by LS&CO., confirms that failure to police a mark *resulting in a complete loss of trademark significance* can constitute abandonment. *Fort James Corp. v. Kimberly-Clark Tissue Co.*, 1999 U.S. Dist. LEXIS 16321 at *12 (N.D. Ill. 1999).[4] In *Fort James*, the court held that the defendant had sufficiently pled such a claim and therefore denied a motion to dismiss. But again, A&F has *not* alleged a complete loss of trademark significance. A&F merely takes issue with LS&CO.'s enforcement strategy in three instances. As a matter of law, A&F's allegations do not and cannot constitute a claim of abandonment. Indeed, under A&F's theory, if LS&CO. were to settle this case on any terms that allowed A&F to continue to use its stitching design, LS&CO. would forfeit its right to enforce the Arcuate Trademark not only against A&F but against any and all third parties. *See* Counterclaims ¶ 26 (asserting that because LS&CO. reached a settlement with RP55, it is "precluded from enforcing its supposed arcuate trademark against third parties, including A&F"). This simply is not the law. A&F should not be allowed to proceed beyond the pleadings on its abandonment claim simply by virtue of alleging that LS&CO. allowed three stitching designs, different from its own mark, to remain on the market, out of hundreds of designs it has challenged over the years. In the absence (and impossibility) of any allegation that the Arcuate Trademark no longer serves to identify LEVI'S® jeans, A&F's claim of involuntary abandonment must be dismissed.

---

[4] The other cases cited by A&F are not even on point. *Iowa Health System v. Trinity Health Corp.*, 177 F. Supp. 2d 897 (N.D. Iowa 2001), concerned a claim of improper tacking; *In re Houbigant, Inc.*, 914 F. Supp. 964 (S.D.N.Y. 1995), concerned a claim of abandonment based on naked licensing. Neither is alleged to be at issue here.

### III. CONCLUSION

For the reasons discussed above and in LS&CO.'s opening brief in support of its motion, LS&CO. respectfully requests that this Court dismiss A&F's claims for cancellation of the Arcuate Trademark.

DATED: April 4, 2008

Respectfully submitted,

By: _____
Gia L. Cincone
TOWNSEND AND TOWNSEND AND CREW LLP

Attorneys for Plaintiff
LEVI STRAUSS & CO.

61326490 v1