MICHAEL J. BETTINGER (State Bar No. 122196)
RACHEL R. DAVIDSON (State Bar No. 215517)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
55 Second Street, Suite 1700
San Francisco, CA 94105
Phone:  415-882-8200
Facsimile: 415- 882-8220

J. Michael Keyes (Pro Hac Vice)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
618 West Riverside Avenue, Suite 300
Spokane WA  99201-0602
Phone:  509-624-2100
Facsimile:  509-456-0146

Attorneys for Defendant
ABERCROMBIE & FITCH TRADING CO.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., | No. CV-07-3752 |
| Plaintiff, | **DEFENDANT ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS FOR CANCELLATION** |
| v. | |
| ABERCROMBIE & FITCH TRADING CO., | |
| Defendant. | Date:          April 25, 2008 |
| | Time:          9:00 a.m. |
| ABERCROMBIE & FITCH TRADING CO., | Courtroom:     2 |
| Counter-Claimant, | |
| v. | |
| LEVI STRAUSS & CO., | |
| Counter-Defendant. | |

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVIS STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

Case No. 03:07-CV-3752-JSW                          Printed on Recycled Paper

# TABLE OF CONTENTS

Page

I.  SUMMARY OF THE ARGUMENT ............................................................................. iv

II. LAW & ARGUMENT ............................................................................................... 1

    A.  The Legal Standards Governing Motions To Dismiss. ...................................... 1

    B.  Abercrombie's Counterclaims sufficiently allege LS&Co.'s fraud on the PTO as a basis to cancel LS&Co.'s arcuate trademark registration. ............ 1

        1.  Abercrombie alleges that the plaintiff in *Lois Sportswear* claimed throughout that litigation that LS&Co. lost its trademark rights in the arcuate mark. ...................................................... 1

        2.  Abercrombie's Counterclaims also allege that LS&Co. knowingly filed its first materially false affidavit with the PTO. .......... 2

        3.  Abercrombie's Counterclaims further allege that LS&Co. knowingly filed a second materially false affidavit with the PTO. ................................................................................................ 3

    C.  The Court should reject LS&Co.'s claim that it "did not misrepresent anything" to the PTO because it is premised on a patently incorrect "interpretation" of the Lanham Act. ................................................................ 4

        1.  LS&Co.'s "counterclaim" argument disregards the plain meaning of 15 U.S.C. § 1065. ............................................................... 4

        2.  LS&Co's "counterclaim" argument directly conflicts with federal court interpretations of 15 U.S.C. § 1065. .............................. 6

        3.  LS&Co.'s "counterclaim" argument based upon the text of the Trademark Manual of Examination Procedures conflicts with federal interpretations of the Lanham Act, and is inapplicable by its own terms. ................................................................................... 6

        4.  LS&Co.'s "counterclaim" argument is not supported by either one of the two "case law" decisions cited in its motion. ....................... 8

    D.  LS&Co.'s false statements were material because a statutory prerequisite to obtaining an "incontestable" registration is that the registrant attest that there is no proceeding involving the trademark . ............ 11

    E.  This Court should also reject LS&Co.'s argument that Abercrombie failed to allege sufficient facts to state a claim for "abandonment." ............... 13

        1.  Abercrombie properly alleged a claim of trademark abandonment because LS&Co. knowingly consented to other third-party infringing uses of its "arcuate" trademark. ....................... 13

        2.  LS&Co.'s legal authority merely provides the standard of proof that Abercrombie will ultimately have to meet on its abandonment claim. ............................................................................ 14

III. CONCLUSION ..................................................................................................... 15

1

2

## <u>TABLE OF AUTHORITIES</u>

Page

3

***Federal Cases***

4  Citibank, N.A v. City Bank of San Francisco, 206 U.S.P.Q. 997, 1011 (N.D.Cal.1980)........ 14

5  Constellation Brands, Inc. v. Arbor Hill Associates, Inc., ___ F.3d ____ ................................ 6

   Estefan Enterprises, Inc., 2007 WL 1602341 ....................................................................... iv, 6

6  FirstHealth of Carolinas, Inc. v. CareFirst of Maryland, Inc.,  479 F.3d 825, 830
      (C.A.Fed. 2007) .............................................................................................................. 13

7  Fort James Corp. v. Kimberly-Clark Tissue Co., 1999 WL 966144 (N.D. Ill. 1999) ........ iv, 15

8  Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997)............................... 1

   Halo Management, LLC v. Interland, Inc., 308 F.Supp.2d 1019, 1029 (N.D. Cal.

9     2003) .................................................................................................................................. 5

10 In re First Draft, Inc., 76 U.S.P.Q.2d 1183, 2005 WL 2451658, at *6 (T.T.A.B. 2005) ........... 7

   In re Wine Society of America Inc., 12 U.S.P.Q.2d 1139, 1989 WL 274373, at *1

      (T.T.A.B. 1989).................................................................................................................. 7

11 Lois Sportswear v. Levi Strauss & Co., 799 F.2d 867, 877 (2d Cir. 1986) .............................. 4

12 Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 631 F.Supp. 735, 740 (S.D.N.Y.
      1985) .................................................................................................................................. 2

13 National Business Systems, Inc. v. AM International, Inc., 743 F.2d 1227, 1239 ................ 11

   *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650 (2d Cir.

14    1988) ................................................................................................................................. iv

15 Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir. 1998) ................................................ 2

   Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 (4th Cir. 1984)....................................... 5

16 Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529,
      1541 (11th Cir. 1986).......................................................................................................... 6

17 STX, Inc. v. Bauer USA, Inc.,  43 U.S.P.Q.2d 1492, 1502 (N.D.Cal.1997) ......................... 13

18 Sunrise Jewelry Mfg. Corp. v. Fred S.A.,  175 F.3d 1322, 1327 (Fed. Cir. 1999)............ 10, 11

   Visa Intern. Service Ass'n v. Bankcard Holders of America,  211 U.S.P.Q. 28, 41

19    (N.D.Cal.1981)................................................................................................................. 14

   W. Fla. Seafood, Inc. v. Jet Rests., Inc., 31 F.3d 1122, 1127 n.8 (Fed. Cir. 1994) .................. 7

20 ***Federal Statutes***

21 15 U.S.C. § 1058(a)(b) ........................................................................................................... 3

   15 U.S.C. § 1064 .................................................................................................................... 5

22 15 U.S.C. § 1064(3) .......................................................................................................... 5, 13

   15 U.S.C. § 1065(1) ................................................................................................................ 4

23 15 U.S.C. § 1065(2) ...................................................................................................... passim

24 15 U.S.C. § 1115 .................................................................................................................... 5

   15 U.S.C. § 1115(a) ............................................................................................................ 4, 5

25

26

15 U.S.C. § 1115(b)(2)................................................................................................5
15 U.S.C. § 1127 ................................................................................................5, 13
15 U.S.C. §§1058 ................................................................................................3

*Other Authorities*
LS&Co.'s U.S. Trademark Registration Nos. 404,248 .........................................2, 3

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

# I.    SUMMARY OF THE ARGUMENT

Abercrombie & Fitch Trading Co. ("Abercrombie") respectfully submits this memorandum in opposition to Levi Strauss & Co.'s ("LS&Co.") motion to dismiss Abercrombie's counterclaims for cancellation of LS&Co.'s "arcuate" trademarks based on "fraud on the PTO" and "abandonment." With respect to its fraud claim, Abercrombie has alleged sufficient facts showing that LS&Co. submitted two affidavits to the PTO containing materially false statements that there was "no proceeding involving said rights." In fact, the *Lois Sportwear* proceeding, in which Lois directly challenged LS&Co.'s rights in the arcuate trademark, was pending at the time both affidavits were filed. A "proceeding involving said rights" under 15 U.S.C. § 1065 includes a proceeding challenging the trademark owner's right to enforce the trademark, even when there is no counterclaim for cancellation of the registration. *See Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*, No. 6:06-cv-742-Orl-31KRS, 2007 WL 1602341, *3 (M.D. Fla. June 04, 2007). LS&Co.'s failure to disclose the *Lois* litigation was material because disclosure would have affected the PTO's action on the affidavits, *i.e.* not granted incontestable status to LS&Co.'s mark. *See Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 652 (2d Cir. 1988). LS&Co.'s arguments to the contrary lack sound legal support and are void of common sense.

Likewise, Abercrombie's abandonment claim sets forth several examples of how LS&Co. knowingly allowed third parties to infringe on its arcuate trademark and that this has caused the arcuate mark to lose significance as a mark. Such allegations sufficiently plead a claim of trademark abandonment. *See Fort James Corp. v. Kimberly-Clark Tissue Co.*, 1999 WL 966144 (N.D. Ill. 1999). LS&Co.'s contrary argument ignores these allegations and is based on legal authority that is simply not germane to the limited inquiry before this Court. For these reasons, the court should deny LS&Co.'s motion to dismiss.

1    ## II.    LAW & ARGUMENT

2    A.    The Legal Standards Governing Motions To Dismiss.

3    A motion to dismiss is proper under Fed. R. Civ. P. 12(b)(6) only where the pleadings

4    "fail to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  The issue on

5    a motion to dismiss for failure to state a claim is "not whether the claimant will ultimately

6    prevail but whether the claimant is entitled to offer evidence to support the claims asserted."

7    *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  The Ninth Circuit

8    has repeatedly cautioned that the pleading standard set forth in Rule 8 establishes "a powerful

9    presumption against rejecting pleadings for failure to state a claim." *Id.* (citations omitted).

10   B.    Abercrombie's Counterclaims sufficiently allege LS&Co.'s fraud on
          the PTO as a basis to cancel LS&Co.'s arcuate trademark registration.

11

12   Abercrombie alleged numerous facts detailing that LS&Co. submitted two materially

13   false affidavits to the PTO.

14          1.    Abercrombie alleges that the plaintiff in *Lois Sportswear*
                  claimed throughout that litigation that LS&Co. lost its
15                trademark rights in the arcuate mark.

16   On December 13, 1982, Lois Sportswear U.S.A., Inc., ("Lois Sportswear") filed a

17   declaratory judgment action against Levi Strauss & Co. in the U.S. District Court for the

18   Southern District of New York.   *See* Exhibit B to Abercrombie's Amended Answer,

19   Affirmative Defenses, Counterclaims ("Abercrombie Counterclaims").[1]    Among other

20   allegations, the Lois Sportswear Complaint alleged that Lois Sportswear's back pocket

21   stitching design used on its denim jeans did not infringe on LS&Co.'s "stitched pocket

22   design." *See id.*, ¶ 18.  LS&Co. asserted counterclaims against Lois Sportswear claiming that

23

24   _____
     [1]Approximately seven months after Lois Sportswear initiated suit against LS&Co., LS&Co.
25   commenced a separate action in the S.D.N.Y. against Textiles Confecciones Europas, the
     supplier of Lois jeans to Lois Sportswear.  The two actions were ultimately consolidated.

26

1  it infringed on LS&Co.'s U.S. Trademark Registration Nos. 404,248 (the "'248") and

2  1,139,254 (the "'254"), the "arcuate" registrations.  *Id.*

3       Incredibly, LS&Co. asserts in its present motion that Lois Sportswear did not "ask for

4  a declaration that the mark was invalid." [2]  *See* LS&Co. Motion, p. 3, line 25.  In fact, Lois

5  asserted in numerous ways that LS&Co.'s "arcuate" trademark was invalid and affirmatively

6  challenged LS&Co.'s rights in the trademark.  *See, e.g.,* Abercrombie Counterclaims, Exhibit

7  B at ¶ 17 (Lois claiming LS&Co. lost "any trademark rights it otherwise possessed"); *Id.* at

8  ¶ 4; *Id.* at ¶ 15;  *Id.* at ¶ 16  (the arcuate "no longer functions as a designation of source or

9  origin" with the defendant).

10       2.    <u>Abercrombie's Counterclaims also allege that LS&Co.</u>
           <u>knowingly filed its first materially false affidavit with the PTO.</u>

11

12       On May 14, 1985—during the pendancy of *Lois Sportswear* in federal district court—

13  LS&Co.'s Vice President and Corporate Secretary, Ms. Katherine Durgin, filed a "Section 8

14  & 15" affidavit with the PTO in order for the '254 Registration to become "incontestable."

15  *See* Exhibit C to Abercrombie's Counterclaims.     Notwithstanding the fact that *Lois*

16  *Sportswear* was pending in federal court and that Lois had continuously alleged that LS&Co.

17  had <u>lost</u> trademark rights in the in arcuate mark, Ms. Durgin testified that "there is no

18  proceeding involving said rights pending and not disposed of either in the Patent and

19  _____

20  [2] LS&Co. also leads this Court to believe that Lois Sportswear "conceded" before the District
    Court that LS&Co.'s arcuate trademark was incontestable.  *See* LS&Co.'s motion pg. 4 (citing

21  *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F. Supp. 735, 740 (S.D.N.Y. 1985)).
    LS&Co. is wrong.  Lois Sportswear moved for summary judgment on non-infringement and

22  made it abundantly clear that, for purposes of its motion *only*, Lois Sportswear was not
    challenging the validity of LS&Co.'s "arcuate" trademark.    *See* Lois Sportswear's

23  Memorandum of Law in Support of Motion Summary Judgment attached, p. 5 attached as
    Exhibit A to the Declaration of J. Michael Keyes.  Because Abercrombie's Counterclaims

24  reference the fact that Lois Sportswear moved for summary judgment, *see* Abercrombie's
    Counterclaims, ¶ 10, Exhibit E pg. 1, Exhibit F pg. 1, this Court can consider Lois

25  Sportswear's summary judgment brief on a motion to dismiss. *Parrino v. FHP, Inc.,* 146 F.3d
    699, 705-706 (9th Cir. 1998).

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

Trademark Office or in the courts." *Id.* Abercrombie alleged that Ms. Durgin knew this statement was false and that it was material. *See* Abercrombie Counterclaims, ¶¶ 8, 17. The PTO received LS&Co.'s affidavit but notified it that Ms. Durgin's affidavit was filed too early. *See* Exhibit D to Abercrombie Counterclaims. As Abercrombie alleges, the early affidavit was submitted nearly four months too soon. *Id*. at ¶10.[3]

> 3.    Abercrombie's Counterclaims further allege that LS&Co. knowingly filed a second materially false affidavit with the PTO.

After the first "8 & 15" affidavit was submitted to the PTO, LS&Co.'s Assistant Corporate Secretary, Ms. Jean Fowler, submitted a second "8 & 15" affidavit to the PTO on January 2, 1986. *See* Exhibit G to Abercrombie's Counterclaims. Like the first affidavit, this one too claimed that "there is no proceeding involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts." *Id.* LS&Co. submitted this affidavit even though at the time *Lois Sportswear* was pending in the U.S. Court of Appeals for the Second Circuit as Lois Sportswear had appealed the denial of its motion for summary judgment and the granting of LS&Co.'s motion for summary judgment. *See* Exhibit F to Abercrombie's Counterclaims. Abercrombie alleged that Ms. Fowler knew this statement was false and that it was material. *See* Abercrombie Counterclaims, ¶¶ 12, 7. More than 8 months after LS&Co. submitted its second false affidavit to the PTO, a divided panel of the U.S. Court of Appeals for the Second Circuit affirmed the trial court's decision over a vocal dissent by Judge Miner. Abercrombie's Counterclaims, ¶ 12; *see also Lois Sportswear v. Levi*

___

[3] Under the Lanham Act, an "8 & 15" affidavit can be filed only between the fifth and sixth year after the date of issuance of the registration. *See* Abercrombie's Counterclaims, ¶ 6; *see also* 15 U.S.C. § 1058(a)(b). This affidavit is referred to as the "8 and 15" affidavit because the requirements for the contents of this affidavit are set forth in Sections 8 and 15 of the Lanham Act, or 15 U.S.C. §§1058, 1065 respectively. Since LS&Co.'s '254 Registration did not issue until September 2, 1980, the earliest possible date upon which LS&Co. could have filed its "8 & 15" affidavit was September 2, 1985.

*Strauss & Co.*, 799 F.2d 867, 877 (2d Cir. 1986) (Miner, J. dissenting).

C.   The Court should reject LS&Co.'s claim that it "did not misrepresent anything" to the PTO because it is premised on a patently incorrect "interpretation" of the Lanham Act.

LS&Co. incorrectly argues that "disclosure of the pending *Lois Sportswear* lawsuit was not required because Lois Sportswear did not file a counterclaim" for cancellation of LS&Co.'s trademark registration in that proceeding.   *See* LS&Co.'s Motion, p. 7.   For numerous reasons, LS&Co.'s assertion is flatly wrong.

1.   LS&Co.'s "counterclaim" argument disregards the plain meaning of 15 U.S.C. § 1065.

15 U.S.C. § 1065 provides that in order to obtain an "incontestable" trademark registration, the registrant must file an affidavit with the PTO attesting that:

(2)   there is *no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of*;

15 U.S.C. § 1065 (emphasis supplied).

The statute does not state (or even imply) that a "proceeding" only means a "proceeding involving counterclaims for cancellation" as LS&Co. suggests.   Rather, subparagraph (2) of the statute unambiguously states that it applies to <u>any</u> "proceeding" involving the registrant's "said rights" to the trademark.   This "said rights" language means the "registrant's right to register the same or to keep the same on the register."   *See* 15 U.S.C. § 1065(1).

LS&Co.'s argument ignores the legal reality that the Lanham Act expressly provides that the "said rights" referred to in 15 U.S.C. § 1065(2) can be challenged either by way of "defense" or by way of "counterclaim."   For example, 15 U.S.C. § 1115(a) provides that a trademark registration constitutes "prima facie evidence of validity" but that it "shall not preclude another person from providing any legal or equitable ***defense*** or defect including

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1   those set forth in subsection (b) of this section." *Id.* (emphasis supplied).   One of the

2   enumerated defenses listed in subsection (b) is that "the mark has been abandoned by the

3   registrant." 15 U.S.C. § 1115(b)(2).   Additionally, the Lanham Act provides that a trademark

4   registration may be attacked by filing a "petition to cancel" the registration.   *See* 15 U.S.C.

5   § 1064.  One of the enumerated grounds for filing a petition to cancel is if the registered mark

6   has been "abandoned." *See* 15 U.S.C. § 1064(3).

7          As these statutory provisions make clear, a claim that a registered trademark has been

8   "abandoned" can be asserted either as a defense under 15 U.S.C. § 1115, or as a counterclaim

9   under 15 U.S.C. § 1064.  Either way, such a claim would be a challenge to the "said rights" of

10  the trademark owner to enforce the trademark. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522,

11  1529 (4th Cir. 1984) (observing that "the presumption which registration thus gives the mark,

12  though, does not preclude one charged with infringement from collaterally attack[ing] in an

13  infringement action, either by way of an affirmative defense or by way of a counterclaim

14  seeking cancellation of the registration").

15         In applying the facts as alleged by Abercrombie to the plain meaning of 15 U.S.C.

16  § 1065, it is undisputed that Lois Sportswear challenged LS&Co.'s right to enforce its

17  trademark.  A trademark is deemed abandoned when it has "los[t] its significance as a mark",

18  *see* 15 U.S.C. § 1127, which is a loss of trademark rights as "against the world." *Halo*

19  *Management, LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1029 (N.D. Cal. 2003).  As set

20  forth above, the *Lois Sportswear* case involved claims that LS&Co. had "abandoned" its

21  arcuate trademark.  *See* Abercrombie Counterclaims, Exhibit B.  These factual allegations

22  make it crystal clear that Lois Sportswear was attacking the validity of the arcuate trademark

23  and, therefore, that lawsuit was undeniably a "proceeding" involving LS&CO.'s "said rights"

24  in the arcuate.

25

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1          2.    LS&Co's "counterclaim" argument directly conflicts with
                 federal court interpretations of 15 U.S.C. § 1065.

2

3          No fewer than three federal courts have interpreted "proceeding involving said rights"

4    in 15 U.S.C. § 1065 to include a proceeding where the trademark owner's right to enforce the

5    trademark was challenged, even when there was no counterclaim for cancellation of the

6    trademark registration. *See e.g., Constellation Brands, Inc. v. Arbor Hill Associates, Inc.*, ___

7    F.3d ____, No. 02-CV-6498 CJS, 2008 WL 515028, at *11 (W.D.N.Y. 2008) *see also Estefan*

8    *Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*, No. 6:06-cv-742-Orl-31KRS, 2007 WL

9    1602341, *3 (M.D. Fla. June 04, 2007) (proceeding in which trademark registrant filed

10   complaint for infringement and defendant asserted affirmative defenses, including estoppel

11   and laches, but did *not* assert a counterclaim for infringement, constituted "proceeding

12   involving said rights pending…in a court not finally disposed of" and prevented registrant's

13   rights from being classified as incontestable); *Sizzler Family Steak Houses v. Western Sizzlin*

14   *Steak House, Inc.*, 793 F.2d 1529, 1541 (11th Cir. 1986). LS&Co. fails to cite to any of these

15   cases in its motion to dismiss and has no legitimate basis on which to distinguish them from

16   this case.

17         3.    LS&Co.'s "counterclaim" argument based upon the text of the
                 Trademark Manual of Examination Procedures conflicts with
18               federal interpretations of the Lanham Act, and is inapplicable
                 by its own terms.

19

20         LS&Co. asserts that, based on the Trademark Manual of Examination Procedures (the

21   "TMEP"), it had no obligation to disclose *Lois Sportswear* because the TMEP only requires

22   disclosures of cases involving a "counterclaim for cancellation" of a registration. *See* LS&Co.

23   Motion, pp. 7-8. This argument is demonstrably flawed for numerous reasons.

24

25

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

First, the TMEP by its own terms is not an interpretation of the statute[4], and is not binding on the Trademark Trial and Appeal Board (the "TTAB"), much less a federal court. *See W. Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 1127 n.8 (Fed. Cir. 1994); *see also* 3 McCarthy § 19:129. The "examination procedures" followed at the PTO are, quite simply, irrelevant to Abercrombie's counterclaim for fraud. Abercrombie has alleged that LS&Co. violated the provisions of a statute passed by Congress, not a procedural manual drafted by some unidentified individual at a federal agency.

Second, even if the TMEP could be considered an interpretation of the statute, the TTAB has noted that when the TMEP conflicts with judicial interpretations of the Lanham Act, the TMEP obviously needs to give way. *See In re Wine Society of America Inc.*, 12 U.S.P.Q.2d 1139, 1989 WL 274373, at *1 (T.T.A.B. 1989); *see also In re First Draft, Inc.*, 76 U.S.P.Q.2d 1183, 2005 WL 2451658, at *6 (T.T.A.B. 2005) (affirming refusal of registration under the Lanham Act and applicable case law, despite TMEP section cited by applicant). As noted above, none of the federal courts interpreting 15 U.S.C. § 1065(2) have held that a "counterclaim for cancellation" must first be asserted before federal litigation is considered a "proceeding involving said rights" in the trademark. For this reason as well, this Court should reject LS&Co.'s argument that the TMEP precludes Abercrombie's fraud claim.

Third, even if the text of the TMEP could somehow be considered a "persuasive" interpretation of 15 U.S.C. § 1065(2), it simply does not apply here. LS&Co. casually glosses over the reality that the provision it cites applies only when the trademark owner is the **plaintiff** in the proceeding and there is no counterclaim for cancellation. In *Lois Sportswear*,

---

[4] *See* Foreword to TMEP, September 2007. The Foreword provides, in pertinent part, that "[t]he Manual contains guidelines for Examining Attorneys and ***materials in the nature of information and interpretation***, and outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications." *See id.* (emphasis supplied).

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1  LS&Co. was the **defendant**, not the plaintiff.  *See* Abercrombie Counterclaims, Exhibit B.

2  Thus, LS&Co. cannot avoid Abercrombie's fraud claim simply by asserting it followed

3  TMEP procedures, because this TMEP provision by its own terms cannot be read to exempt

4  the *Lois Sportswear* proceeding from the disclosure obligation embodied in 15 U.S.C.

5  § 1065(2).  It is not the infringement action that creates the disclosure obligation but the

6  particular defenses *or* counterclaims asserted by the alleged infringer challenging the validity

7  of the trademark that prevent the incontestable status.

8      Fourth, at the time LS&Co. filed its first false affidavit to the PTO, the text of the

9  TMEP did not contain this "counterclaim" language relied upon by LS&Co. in support of its

10  motion to dismiss.[5]  Thus, even if the current text of the TMEP cited by LS&Co. could be

11  considered a correct, binding or persuasive interpretation of the federal statute, the text could

12  only be applicable to the second false affidavit and not the first affidavit filed by LS&Co.[6]

13      For all of these reasons, the Court should reject LS&Co.'s erroneous assertion that the

14  TMEP somehow insulates LS&Co. from liability for filing two false affidavits with the PTO.

15              4.    LS&Co.'s "counterclaim" argument is not supported by either
                     one of the two "case law" decisions cited in its motion.

16

17      LS&Co. cites "case law" (actually one "opinion" from the Patent Commissioner and

18  one Federal Circuit case) that does not support LS&Co.'s arguments on any level.  *See*

19

20  [5] Instead, the pertinent text of § 1604.03 of the TMEP provided that the "8 & 15" affidavit
    must also state that there is no proceeding involving said rights pending in the Patent and

21  Trademark Office or in a court and not finally disposed of, and "proceeding" **has been
    interpreted to mean registrant being in position either of plaintiff or defendant.**

22  *See* TMEP § 1604.03 (1st Edition, Rev. 6, 1983) (emphasis supplied). The next revision of the
    TMEP did not take effect until January 1, 1986.

23  [6] At the time LS&Co. filed its second false affidavit with the PTO, the pertinent text of TMEP

24  provided  that a "proceeding involving the mark in which the registrant is the plaintiff, and
    there is no counterclaim involving registrant's rights in the mark, does not preclude

25  acceptance of a Section 15 affidavit." TMEP § 1604.03 (1st Edition, Rev. 7, 1986).

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

LS&Co.'s Motion, pp. 7-8.   Contrary to LS&Co.'s characterization, *In re Trademark Registration of McDonald's Corp.* ("*In re McDonald's*") did not hold that a counterclaim must first be asserted before a proceeding constitutes a "proceeding involving said rights" in a trademark.  In that case, McDonald's filed a Sections "8 & 15" affidavit for its "McChicken" registration, but the Section 15 portion was not accepted because the trademark examiner observed that the McChicken mark was "involved in a civil proceeding." *In re McDonald's*, 1984 Commr. Pat. LEXIS 10 at *2 (Comm'er of Patents and Trademarks Apr. 10, 1984).  McDonald's petitioned the Commissioner to accept McDonald's Section 15 affidavit for filing because "the civil action involving this registration does not raise any question with respect to its rights as contemplated by Section 15."  *Id*. at *1-2.

In assessing McDonald's position, the Commissioner simply noted that no counterclaim had been filed by the opposer. *Id*. at *2.  The Commissioner further noted that it had been "office practice" to withhold stamping of Section 15 affidavits "if the registration is involved in any civil proceeding, without looking to the nature of the proceeding to determine if it involves the rights contemplated by Section 15." *Id*.  The Commissioner observed that this "practice" was "stricter than the requirements set forth in Section 15." *Id*.  Accordingly, the Commissioner ordered that:

> The current office practice on Section 15 affidavits is hereby ordered changed.  **The Search Library copies of a registration may be stamped with an appropriate Section 15 notation if the registration is not involved in a proceeding which challenges the rights indicated in Section 15**."
> *In re McDonald's* at *2-3 (emphasis supplied).

As this excerpt indicates (an excerpt that LS&Co. conveniently omits from its block quotation on pg. 8 of its motion), the relevant inquiry is not whether a counterclaim for cancellation has been asserted, but whether the registration "is involved in a proceeding which challenges the rights indicated in Section 15."  As noted above, such a "challenge" can be

asserted as either a "defense" or a "counterclaim." Thus, LS&Co. is incorrect that *In re McDonald's* somehow precludes Abercrombie's claim for fraud. If anything, the Commissioner's directive is actually consistent with the plain meaning of the statute and the judicial interpretations thereof.

Finally, LS&Co. cites to *Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1327 (Fed. Cir. 1999), but fails to offer any explanation as to how it supports LS&Co.'s "interpretation" of the statute and, in fact, it does not. In *Sunrise Jewelry*, the trademark registrant, Fred, was involved in federal litigation and a cancellation proceeding before the PTO involving its trademark. *Id.* at 1323. The litigation and the PTO proceeding were resolved through settlement. *Id.* After the settlement of the first action, Fred brought an unrelated action for infringement of its trademark. *Id.* at 1324. While this second action was pending, the cancellation proceeding from the first action was withdrawn and Fred filed an incontestability affidavit. The affidavit actually mentioned the settlement and noted that "a withdrawal of the cancellation proceeding had been filed." *Id.* After Fred filed the incontestability affidavit with the PTO, the defendants in the second action filed a counterclaim challenging the validity of Fred's mark. *Id.* at 1325.

Thereafter, the Plaintiff in *Sunrise Jewelry* alleged that Fred committed fraud on the PTO by filing its incontestability affidavit. *Sunrise Jewelry Mfg. Corp.*, 175 F.3d at 1324. This claim was rejected because "at the time Fred filed the affidavit it would have been reasonable to believe that no proceeding was pending in view of the previously filed withdrawal of the cancellation proceeding." *Id.* at 1327. With respect to the second action, the court noted that, at the time Fred filed his affidavit, only a claim of trademark infringement had been asserted, but the counterclaim had not yet been filed and "the Lanham Act imposes no continuing duty to update a § 15 affidavit." *Id.*

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1    The facts set forth in Abercrombie's counterclaim are completely different from the

2    facts in *Sunrise Jewelry*. In *Sunrise Jewelry*, at the time the affidavit was filed, the first

3    proceedings had been settled and a notice of withdrawal had been filed. By contrast, at the

4    time LS&Co. filed both affidavits, *Lois Sportswear* was still very much alive and Lois

5    Sportswear was unquestionably challenging LS&Co.'s rights to the arcuate trademark.

6    Moreover, in *Sunrise Jewelry*, the affidavit submitted to the PTO actually referenced the

7    litigation and disclosed that it had been resolved through settlement. Neither one of

8    LS&Co.'s affidavits made any mention whatsoever of the *Lois Sportswear* matter. Finally, in

9    *Sunrise Jewelry*, the counterclaim in the second action was filed after Fred submitted the

10   Section 15 affidavit. *See Sunrise Jewelry Mfg. Corp.*, 175 F.3d at 1324. Not so in *Lois*

11   *Sportswear v. LS&Co*. Lois Sportswear alleged from the outset of the litigation that LS&Co

12   did not have an enforceable trademark. *Sunrise Jewelry* is inapposite.

13          D.    <u>LS&Co.'s false statements were material because a statutory</u>
              <u>prerequisite to obtaining an "incontestable" registration is that the</u>
14            <u>registrant attest that there is no proceeding involving the trademark .</u>

15   LS&Co.'s argument on materiality is equally unsound. LS&Co. claims that because it

16   ultimately prevailed in the *Lois Sportswear* litigation, the false statements it made to the PTO

17   many months prior to the Second Circuit decision could not be "material." This argument

18   should be rejected on its face for both legal and policy reasons.

19          First, whether a statement is "material" is assessed at the time the statement was made

20   to the PTO. *See Orient Express Trading Co.*, 842 F.2d at 653 ("knowing misstatement must

21   have been with respect to a material fact -- one that would have affected the PTO's action on

22   the applications.") (citations omitted); *Crown Wallcovering Corp.*, 188 U.S.P.Q. at 143

23   (material information or facts are those "which, if transmitted and disclosed to the examiner,

24   would have resulted in the disallowance of the registration sought."); *National Business*

25   *Systems, Inc. v. AM International, Inc.*, 743 F.2d 1227, 1239 (7th Cir. 1984);

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1    *Duffy-Mott Co., Inc.*, 424 F.2d at 1099  (noting that court needs to consider "the purpose for

2    which the false affidavit was filed in order to determine the importance of the untrue

3    allegations").  The relevant inquiry is not whether LS&Co.'s disclosure of the *Lois* litigation

4    on its Section 8 and 15 affidavits would have affected LS&Co.'s registration.  Rather, the

5    omission was material because, had the *Lois* litigation been disclosed, the PTO would not

6    have recognized LS&Co.'s Section 15 affidavit and granted incontestable status.  In other

7    words, *it would have affected the PTO's action on the incontestability applications.*

8          Instead, through its false affidavits, LS&Co. obtained an action from the PTO (*i.e.*

9    incontestable status) to which it was not otherwise entitled.  Such fraud is grounds for

10   cancellation of the registration.  *Crown Wallcovering Corp.*, 188 U.S.P.Q. at 144.  The

11   purpose for which LS&Co. submitted the "8 and 15" affidavit was to obtain

12   "incontestability," a "new right" that is not granted with the original registration.  *Id*.  Under

13   15 U.S.C. § 1065, a trademark registrant would be ineligible to obtain an "incontestable"

14   trademark unless the registrant attests that there "is no proceeding involving said rights

15   pending in the Patent and Trademark Office or in a court and not finally disposed." 15 U.S.C.

16   § 1065(2).  Thus, as a matter of law, LS&Co.'s affidavits that testified to the supposed "non-

17   existence" of a court proceeding involving its rights to the trademark are unquestionably

18   "material" under 15 U.S.C. § 1065(2) because those statements go to the heart of whether

19   LS&Co. would have been entitled to an incontestable trademark at the time it filed its

20   affidavits.  *See Orient Express Trading Co.*, 842 F.2d at 653 (statement of continuous use

21   required for Section 8 and 15 affidavit, which registrant made falsely, constituted material

22   misstatement of fact).

23         Second, as a matter of policy, interpreting "materiality" the way LS&Co. suggests

24   would create a safe haven for those that submit false affidavits to the PTO.  Under LS&Co.'s

25   theory of "materiality", a trademark owner could file a false statement (or in LS&Co.'s case,

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1  two false statements) with the PTO regarding pending litigation involving the trademark and,

2  so long as that registrant ultimately prevailed in the litigation that was secreted from the PTO,

3  it would not matter how outrageous or deceitful the statement was because it was

4  "immaterial."  Such an absurd result is not supported by the text of the statute, the Lanham

5  Act, judicial interpretations, or common sense.   Moreover, this argument tacitly (if not

6  overtly) seeks this Court's imprimatur on false filings before a federal agency and it should be

7  rejected on that basis as well.

8          For all of the aforementioned reasons, the Court should deny LS&Co.'s motion to

9  dismiss Abercrombie's counterclaim for fraud on the PTO.

10         E.     This Court should also reject LS&Co.'s argument that Abercrombie
                  failed to allege sufficient facts to state a claim for "abandonment."

11
                  1.     Abercrombie properly alleged a claim of trademark
12                        abandonment because LS&Co. knowingly consented to other
                          third-party infringing uses of its "arcuate" trademark.
13

14         The Lanham Act provides that a trademark registration may be cancelled when the

15  trademark has been "abandoned." 15 U.S.C. § 1064(3). "Abandonment" includes any act or

16  omission by the registrant which causes the trademark "to lose its significance as a mark."  15

17  U.S.C. § 1127.  Whether a trademark has lost its significance as an indication of origin is a

18  question of fact.  *FirstHealth of Carolinas, Inc. v. CareFirst of Maryland, Inc.*,  479 F.3d 825,

19  830 (C.A.Fed. 2007).

20         Even LS&Co.'s own legal authority acknowledges that abandonment can occur when

21  the trademark owner consents to third party infringing uses of its trademark.  *See* LS&Co.

22  Motion, p. 10 (citing *STX, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q.2d 1492,

23  1502 (N.D.Cal.1997), which noted that "[t]he existence of third party infringers does not

24  constitute an abandonment of a mark where the trademark owner does not consent to the use

25  of the mark by these others but rather, vigorously pursues these third party infringers."); *see*

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1   *also Citibank, N.A v. City Bank of San Francisco,* 206 U.S.P.Q. 997, 1011 (N.D.Cal.1980)

2   (same); *Visa Intern. Service Ass'n v. Bankcard Holders of America*, 211 U.S.P.Q. 28,

3   41 (N.D.Cal.1981) (same).

4        Abercrombie has alleged numerous facts (and already presented evidence in the

5   attachments to the Counterclaims) showing that LS&Co. has knowingly consented to

6   allegedly infringing third party uses of its "arcuate" trademark.    Abercrombie alleges

7   examples involving Federal Jeans (Counterclaims, ¶¶ 22,23), For What It's Worth (*id*. at ¶ 24)

8   and RP55 (*id*. ¶ 25) where LS&Co. sued these companies claiming they were infringing

9   LS&Co.'s "arcuate" trademark, but then "knowingly allowed" use of the same or very similar

10  "infringing" design.    As the Counterclaims make clear, these are just "examples" and

11  Abercrombie's Counterclaim for abandonment is in no way limited to these three instances.

12       As Abercrombie alleges, all of these examples of LS&Co. knowingly permitting

13  infringing uses constitute "abandonment."    *Id*. at ¶ 29.    Therefore, LS&Co.'s motion to

14  dismiss should be denied on this basis alone.

15                  2.    LS&Co.'s legal authority merely provides the standard of proof
                          that Abercrombie will ultimately have to meet on its
16                        abandonment claim.

17       LS&Co.'s legal authority does not support its motion to dismiss.    Notably, not *one* of

18  LS&Co.'s cited cases involved a motion to dismiss a claim of trademark abandonment.

19  Instead, LS&Co.'s cases involved proceedings that require a court to determine whether

20  sufficient evidence exists to support a claim.    *See* LS&Co.'s Motion, pp. 10-11.    As such,

21  they do not stand for the proposition that Abercrombie has failed to sufficiently plead a claim

22  of abandonment.

23       A case that is much more procedurally on point than any of the cases cited by LS&Co.

24  is *Fort James Corp. v. Kimberly-Clark Tissue Co.*, 1999 WL 966144 (N.D. Ill. 1999).    There,

25  the defendant was sued for trademark infringement and alleged several affirmative defenses,

26

ABERCROMBIE & FITCH'S MEMORANDUM IN OPPOSITION TO
LEVI STRAUSS & CO.'S MOTION TO DISMISS COUNTERCLAIMS

1    including that "widespread third-party use of similar designs, unpoliced by Fort James, has

2    undermined consumer perception that a single source exists for the goods that bear the

3    trademarked design." *Id.* at *4. The court denied the plaintiff's motion to dismiss the

4    affirmative defense and counterclaim on abandonment, observing that the defendant's

5    pleading provided a "plausible scenario of abandonment" and the court emphasized that

6    "ultimate success of the defense is not our concern at this stage of the case." *Id.* at *5.

7        If the limited factual allegations in *Fort James* were sufficient to survive a motion to

8    dismiss, then certainly the pleading in this case—a pleading that details several instances

9    where LS&Co. knowingly allowed third parties to engage in infringement of the "arcuate"

10   mark thereby causing it to lose its significance as a mark—is more than sufficient to state a

11   claim for abandonment.

12                        **III.    <u>CONCLUSION</u>**

13       For the reasons set forth herein, LS&Co.'s motion to dismiss should be denied.[7]

14

15   Dated:    April 16, 2008                Respectfully submitted,

16                                           **KIRKPATRICK & LOCKHART**
                                             **PRESTON GATES ELLIS LLP**
17

18                                           By:_____/s/_____
                                             Michael J. Bettinger
19                                           Rachel R. Davidson
                                             J. Michael Keyes
20

21                                           Attorneys for Defendant
                                             ABERCROMBIE & FITCH TRADING CO.

22

23   ─────────────────────
     [7] Should the Court grant the motion, though, Abercrombie respectfully requests it be granted
24   leave to amend it Counterclaims to clarify its allegations. *See Daw Indus. v. Proteor*
     *Holdings, S.A.*, 2008 U.S. Dist. LEXIS 6736, *9-10 (S.D. Cal. Jan. 29, 2008)( "A court may
25   dismiss a complaint without granting leave to amend only if it appears with certainty that the
     plaintiff cannot state a claim and any amendment would be futile").
26