# EXHIBIT K

# 85-7976/

**7880**

# United States Court of Appeals

*for the*

# Second Circuit



UNITED STATES COURT OF APPEALS
FILED
JAN 2 2 1986
ELAINE B. GOLDSMITH, CLERK
SECOND CIRCUIT

LOIS SPORTSWEAR, U.S.A, INC.,

*Plaintiff-Appellant,*

TEXTILES Y CONFECCIONES EUROPEAS, S.A.,

*Defendant-Appellant,*

— against —

LEVI STRAUSS & COMPANY,

*Defendant-Plaintiff-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLANT

WHITMAN & RANSOM
*Attorneys for Plaintiff-Appellant and
Attorneys for Defendant-Appellant*
522 Fifth Avenue
New York, New York 10036
(212) 575-5800

BOX 129
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
E69-14-09-01

*Of Counsel:*
MAX F. SCHUTZMAN

********************************
*    RECORDS COPY              *
*  PLEASE RETURN TO ROOM       *
*         1702                 *
********************************

LS-A&F010514

# TABLE OF CONTENTS

                                                           Page

Table of Authorities.................................    i

Disclosure of Interested Parties.....................    v

Issues Presented for Review..........................    1

Statement of the Case................................    1

Statement of the Facts and Procedural History........    2

    A.  Facts........................................    2
    B.  Procedural History...........................    5

Summary of Opinion of Court Below....................    8

Summary of Appellants' Argument......................    12

ARGUMENT

I.    STANDARD FOR REVIEW IN TRADEMARK ACTIONS.........    15

II.   THE LOWER COURT HAS IGNORED THE
     STANDARDS FOR GRANTING SUMMARY
     JUDGMENT ........................................    17

    A.  GENUINE ISSUES OF MATERIAL FACT..............    17

    B.  PROPER APPLICATION OF THE POLAROID
        FACTORS PRECLUDES A RULING IN FAVOR
        OF LEVI......................................    20

    C.  THE LOWER COURT HAS ENGAGED IN
        IMPERMISSIBLE FACT FINDING ON
        MATERIAL AND DISPUTED ISSUES.................    25

III.  THE DISTRICT COURT HAS ERRED IN GRANTING
     RELIEF UNDER STATE LAW...........................    40

IV.   THE LOWER COURT HAS IMPROPERLY DENIED
     APPELLANTS' MOTION FOR SUMMARY JUDGMENT..........    42

Conclusion...........................................    44

Addendum.............................................    i

LS-A&F010515

# TABLE OF AUTHORITIES

Page

American Footwear Corp. v. General Footwear
Co., Ltd., 609 F.2d 655 (2d Cir.
1979), cert. denied 445 U.S. 951 (1980)............20,31,44

American International Group, Inc. v. London
American International Corporation, Ltd.,
664 F.2d 348 (2 Cir. 1981).................... 27,28

Amstar Corp. v. Domino's Pizza, Inc., 615
F.2d 252 (5th Cir.), cert. denied 449
U.S. 899 (1980)................................. 22

Aris-Isotoner Gloves, Inc. v. Fownes Bros.
& Co., 594 F. Supp. 15 (S.D.N.Y.
1983)............................................ 39

Bose Corp. v. Linear Design Labs, Inc., 467
F.2d 304 (2d Cir. 1972)........................ 37

D.C. Comics, Inc. v. Reel Fantasy, Inc., 696
F.2d 24 (2d Cir. 1982)........................ 28

Eli Lilly & Co. v. Revlon, Inc., 577 F. Supp
477 (S.D.N.Y. 1983)........................... 31,35

Fisher Stoves, Inc. v. All Nighter Still
Works, Inc., 626 F.2d 193 (1st
Cir. 1980)..................................... 37

Harold F. Ritchie, Inc. v.
Chesebrough-Pond's, Inc., 281 F.2d 755
(2d Cir. 1960)................................ 34

Keebler Co. v. Rovira Biscuit Corp., 624
F.2d 366 (1st Cir. 1980)...................... 37

Lambda Electronics Corp. v. Lambda Technology,
Inc., 515 F. Supp. 915 (S.D.N.Y.
1981).......................................... 19

Le Sportsac, Inc. v. Dockside Research,
Inc., 478 F. Supp. 602 (S.D.N.Y. 1979)........ 37,38

Lever Brothers Co. v. American Bakeries Co.,
693 F.2d 251 (2d Cir. 1982)...................19,20,36,39

Levi Strauss & Co. v. Longley, 272 F.2d 820
(6th Cir. 1959)............................... 43

LS-A&F010516

Levi Strauss & Co. v. Blue Bell, Inc., 632
      F.2d 817 (9th Cir. 1980)........................ 30,41

McGregor-Doniger Inc. v. Drizzle Inc., 599
      F.2d 1126 (2d Cir. 1979)....................... passim

The Mennen Company v. The Gillette Company,
565 F.
      Supp. 648 (S.D.N.Y. 1983)...................... 40

Mushroom Makers, Inc. v. R.G. Barry Corp.,
      580 F. 2d 44 (2d Cir. 1978), cert.
      denied, 439 U.S. 1116 (1979)..................35,42

Nabisco Brands, Inc. v. The Quaker Oats Co.,
      547 F. Supp. 692 (D.N.J. 1982)................. 37

National Lead Co. v. Wolfe, 223 F.2d 195
      (9th Cir.), cert. denied, 350 U.S.
      883 (1955).................................... 34

Olay Company, Inc. v. Cococare Products,
      Inc., 218 U.S.P.Q. 1028 (S.D.N.Y.
      1983)......................................... 39

Pignons, S.A. de Mecanique de Precision v.
      Polaroid Corp., 657 F.2d 482
      (1st Cir. 1981)............................... 25,37

Plus Products v. Plus Discount Foods, Inc.,
      722 F.2d 999 (2d Cir. 1983), aff'g in
      part and rev'g in part, 564 F.
      Supp. 984 (S.D.N.Y. 1983)..................... passim

Polaroid Corp. v. Polarad Electronics.
      Corp., 287 F.2d 492 (2d Cir.),
      cert. denied, 368 U.S. 820 (1961)............. passim

Quinn v. Syracuse Model Neighborhood Corp.,
      613 F.2d 438 (2d Cir. 1980)................... 27

R.G. Barry Corp. v. A. Sandler Co., Inc.,
      406 F.2d 114, 116 (1st Cir. 1969)............. 37

RJR Foods, Inc. v. White Rock Corp., 603
      F.2d 1058 (2d Cir. 1979)......................17,18,35

Sally Gee, Inc. v. Myra Hogan, Inc., 699
      F.2d 621 (2d Cir. 1983)....................... 35,41,42

Thompson Medical Company, Inc. v. Pfizer
      Inc., 753 F.2d 208 (2d Cir. 1985)............. 18,20,39

-iii-

LS-A&F010517

United States v. Diebold, Inc., 369 U.S.
    654 (1962).......................................... 18

Universal City Studios, Inc. v. Nintendo Co.,
    Ltd., 578 F. Supp. 911 (S.D.N.Y. 1983),
    aff'd, 746 F.2d 112 (2d Cir. 1984)....................19,39

Vitarroz Corp. v. Borden, Inc., 644 F.2d
    960 (2d Cir. 1981)...................................25,26

Warner Brothers Co. v. Jantzen, Inc., 249
    F.2d 353 (2d Cir. 1957)............................. 36

Warner Brothers, Inc. v. American
    Broadcasting Companies, Inc., 720 F.2d
    231 (2d Cir. 1983)..................................39,41

OTHER AUTHORITIES

1 Gilson, Trademark Protection and Practice
    (1984) ¶ 3.06 at p. 3-102............................ 42

Restatement of Torts § 729, Comment b................... 39

STATUTES

15 U.S.C. § 1051, et seq................................. 7,19

15 U.S.C. 1065.......................................... 43

15 U.S.C. § 1114........................................ 2,20

15 U.S.C. § 1125(a)..................................... 2,7

28 U.S.C. § 2201....................................... 7

Fed. R. Civ. P. 56(c).................................. 18

N.Y. Gen Bus Law §349.................................. 41

N.Y. Gen Bus. Law § 368-a.............................. 41

-iv-

LS-A&F010518

## DISCLOSURE OF INTERESTED PARTIES

In accordance with Rule §0.15, the Court is hereby advised that the parent corporation of Appellant Lois Sportswear U.S.A., Inc. is Tycesa Holding, B.V., a Netherlands corporation.

Max F. Schutzman
WHITMAN & RANSOM
Attorneys for Appellants
522 Fifth Avenue
New York, New York   10036

Dated:   January 21, 1986

—v—

LS-A&F010519

## ISSUES PRESENTED FOR REVIEW

1.   Whether the court below erred in awarding summary judgment to appellee on grounds of trademark infringement, unfair competition and dilution.

2.   Whether the court below erred in denying appellants' motion for summary judgment for a declaration of non-infringement and non-liability on grounds of unfair competition and dilution.

## STATEMENT OF THE CASE

This is an appeal by Lois Sportswear, U.S.A., Inc. ("Lois"), declaratory judgment plaintiff below, and Textiles y Confecciones Europeas, S.A. ("Textiles"), defendant below, from the Opinion of the United States District Court for the Southern District of New York (Sweet, J.), dated September 30, 1985 (A-11), and the Order entered on the docket on November 4, 1985 (A-8), (i) granting the cross-motion of Levi Strauss & Co. ("Levi"), declaratory judgment defendant and plaintiff below, for summary judgment on grounds of trademark infringement, unfair competition and dilution under 15 U.S.C. § 1114, 15 U.S.C. § 1125(a) and Section 368-d of the New York General Business Law, and (ii) denying the motion of Lois and Textiles for summary judgment for a declaration of non-infringement and non-liability under the same provisions of law.

- 1 -

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

A.  Facts

Lois is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1466 Broadway, New York, New York, and is a member of a group of companies affiliated with Textiles, which is located in Valencia, Spain.  (A-12).  Textiles is the manufacturer of wearing apparel bearing the Lois brand name, which has been sold throughout Europe by Textiles and its predecessors and affiliates over the past 25 years bearing the back-pocket stitching design which is the subject of this lawsuit. (A-12).  Lois, which was incorporated in 1977 and has been doing business in the United States since 1979, imports and distributes wearing apparel manufactured by Textiles.* (A-12).  (Hereinafter, in view of the identity of their legal contentions, both Lois and Textiles may be jointly referred to as "Lois".)

Included among the items of apparel imported and distributed by Lois are jeans and trousers fashioned of denim and other fabrics.  Lois' trousers generally consist

---

*  It should be noted that in February, 1985, Lois Sportswear and Textiles licensed Murjani International as the exclusive vendor of Lois-brand garments in the United States only.

LS-A&F010521

of two types: high-priced five pocket jeans made principally of denim and high fashion jeans or trousers made of canvas or other fabrics. (A-15). For convenience, references to Lois "jeans" will refer to both types unless otherwise indicated. These jeans and trousers, which retail for approximately $60 to $80 per pair, are sold to consumers through various boutiques and a limited number of quality department stores throughout the United States. (A-17,18). They do not compete with Levi jeans, except to a limited extent, due to their sale at disparate prices, in different stores, and because their advertising is directed at different markets. (A-18; A-25).

Both Lois and Levi brand jeans are sold with numerous permanent and temporary labels, trademarks and product identifiers which clearly identify the products with their respective sources. (A-16). Lois' jeans are marketed and sold to the ultimate consumer with a variety of identifying marks which serve to distinguish Lois' jeans from those of other manufacturers. As part of their design, most of the Lois jeans models have a stitched pattern on the right rear pocket. The stitched pattern consists of two curved arches in the general shape of a letter "Y". (A-24). All models of basic five-pocket and high fashion jeans distributed by Lois are sold with "hang tags" upon which the Lois brand name and its distinctive bull symbol are prominently displayed. (A-16). Additionally, Lois jeans are sold with two stitched-on cardboard tags, one measuring approximately 5 inches by 3 inches and the other measuring approximately one inch by three inches, both of which prominently feature Lois' brand name and

LS-A&F010522

bull symbol and also indicate in conspicuous print that Lois'
jeans are "imported from Europe." (A-16). Finally, there are
various identifying symbols affixed permanently to all models
of the five-pocket jeans and many models of the high fashion
jeans, including: (a) a two-inch by one-inch leather tag
affixed to the left rear pocket bearing the Lois brand name
and bull symbol; (b) a fabric tag stitched to the right rear
pocket which features the Lois brand name; (c) a sizing and
care tag stitched to the inner waist seam which bears the Lois
brand name and indicates that both the fabric and product are
made in Spain; (d) a brass button located on the waist band
bearing the Lois brand name; and (e) a quarter circle leather
or fabric patch stitched to the right front pocket bearing the
distinctive bull symbol. (A-16).

Levi is a corporation organized under the laws of
the State of Delaware, with its principal place of business in
San Francisco, California. (A-12). Levi is in the business
of manufacturing and distributing certain types of wearing
apparel, including jeans. (A-12). Its jeans retail for
approximately $20-30. (A-17). Levi utilizes a stitched
design consisting of two curved lines in the general shape of
a letter "V", which it refers to as an "arcuate", on the back
pocket of many of the types of jeans that it sells. (A-24).

Levi also employs several other trademarks, including
a distinctive red tag with the word "Levi" in white letters,
prominently affixed to the right rear pocket of its jeans, a
leather waistband patch bearing the "Two Horse Brand" trademark
and other distinctive sewn in labels, buttons and temporary

- 4 -

LS-A&F010523

cardboard labels which clearly identify Levi jeans as products of Levi Strauss & Company. (A-16,17).

In the past 10 or so years, when jeans have become more acceptable to the general populace, according to Levi's in house counsel literally hundreds of different brands, have flooded the market. (A-739). Most of these bear back-pocket stitching designs, and many utilize designs which are very similar to the Levi design. (A-663-714; A-749-808; A-830-847; A-851-877). This has served to eliminate any measure of distinctiveness which the Levi design might have had in earlier years, to the point that the design does not perform a trademark function, and thus does not serve to distinguish Levi jeans from other brand names. If Levi does have a particularly distinguishing feature, it is the back-pocket red or orange tab bearing the word "Levi's," but not its back-pocket stitching design.

Finally, no instances of actual confusion have been alleged or demonstrated by Levi. (A-27).

B.  Procedural History

The present controversy was initiated in 1979 when Levi lodged a protest with the United States Customs Service seeking to enjoin the importation into the United States of Lois jeans bearing the Lois design on the grounds that the Lois design violated the trademark rights of Levi in the Levi arcuate. (A-13). In early 1980 the Customs Service banned further importation of Lois jeans bearing the Lois design on the basis that it was an infringement of the Levi's arcuate mark. (A-13). On June 4, 1981 the Customs Service withdrew its ruling and permitted importation of Lois jeans. On June

- 5 -

30, 1982, without notice to Lois, the Customs Service once
again reversed its ruling and banned further importations.
(A-13).

In response to the actions of the Customs Service, as
encouraged by Levi, these consolidated actions were commenced
by Lois on December 14, 1982, when Lois filed a complaint (82
Civ. 8326) in the United States District Court for the Southern
District of New York (A-39) seeking a declaratory judgment
under the provisions of the Declaratory Judgment Act, 28 U.S.C.
§ 2201, the Lanham Act, 15 U.S.C. §§ 1051, et seq., and the
laws of the State of New York that (a) its use of its stitched
back pocket design on certain items of wearing apparel imported
into the United States and distributed by Lois did not infringe
any trademark rights possessed by Levi and did not constitute a
violation of Levi's rights under 15 U.S.C. § 1125(a) or New
York State law governing trademarks, unfair competition and
dilution; and (b) a permanent injunction restraining Levi from
interfering in any manner with Lois' importation and
distribution of items of apparel bearing that design. (A-13).
Levi counterclaimed for trademark infringment, unfair
competition and dilution under the Lanham Act and the laws of
the State of New York, and sought a permanent injunction to
restrain Lois from using its stitched back pocket design in the
United States. (A-13).

Also, on December 14, 1982, Lois instituted an action
in the Court of International Trade seeking an injunction
against the United States and the Commissioner of Customs
charging interference with the importation and sale of Lois

LS-A&F010525

jeans. (A-13). On May 3, 1983 the Honorable Bernard Newman granted a preliminary injunction against the Customs Service on the grounds that the ban was issued in violation of Customs' procedural rules. (A-13).

On June 8, 1983, Levi commenced a separate action in the Southern District of New York against Textiles (83 Civ. 4338-RWS), the supplier of Lois jeans to Lois Sportswear, seeking the same relief against Textiles as was alleged in the counterclaims against Lois. (A-14; A-65). On September 13, 1983, 82 Civ. 8326 was reassigned to Judge Sweet. (A-71). On November 4, 1983, the district court denied a motion by Textiles to dismiss the complaint and consolidated the two actions. (A-73,74).

By motion dated April 3, 1985, Lois and Textiles moved for summary judgment. (A-179). By cross-motion dated May 16, 1985, Levi likewise moved for summary judgment and a dismissal of Lois' claims. (A-241). Both parties presented substantial evidence, both by way of affidavits and physical evidence in the form of jeans, advertising materials and video tapes. Oral argument on the summary judgment motions was held on July 12, 1985 (A-919), resulting in the Court's opinion of November 4, 1985 in favor of Levi (A-11) and an order of permanent injunction against Lois and Textiles, including the imposition of costs on appellants. (A-8). No testimony was taken.

LS-A&F010526

## SUMMARY OF OPINION OF COURT BELOW

Lois asked the court below to find that, as a matter
of law, there is not a substantial likelihood of confusion
between the Lois stitched design and the Levi arcuate among
prospective purchasers of the products bearing their marks, and
that Lois should be permitted to continue to use its mark.
Levi cross-moved for a summary determination of the confusion
issue and demanded an injunction against Lois' further use of
the Lois design.  At the hearing and in its papers, Levi
expressly limited the issue of confusion to whether prospective
purchasers might buy Lois brand jeans thinking that they were
licensed or distributed under arrangement with Levi (A-925;
A-950, 951).  Counsel for Levi admitted that there was little
likelihood, in view of the extensive labelling of the products,
that a consumer would purchase one thinking that it was the
other (A-925; A-950-51).

Purportedly relying upon the well established Polaroid
factors for measuring the likelihood of substantial confusion,
the court below found that Lois should be enjoined, despite the
fact that it found in favor of Lois on six of the eight
Polaroid factors, while only holding in favor of Levi on two
such factors.  Not only is the lower court's decision
unjustifiable because of the heavy predominance of Polaroid
factors weighing in favor of appellants, the two Polaroid
factors which it did determine in favor of Levi, namely the
strength of its mark and the degree of similarity between the
two marks, were only established by virtue of extensive

- 8 -

LS-A&F010527

impermissible fact finding on the part of the court. Further, in order to find in favor of Levi on these two points the court had to ignore substantial evidence of disputed material facts which would clearly necessitate a trial for the resolution of such issues.

Historically, the court noted that Lois had commenced the use of its stitched design in 1961 and that Lois was unaware of the Levi arcuate until sometime in 1967 or 1968. (A-27). After Lois' use of its stitched design had long been established in other countries, Levi obtained four other federal trademark registrations for its mark between the period February, 1968 and September, 1980, as noted by the court below. (A-14). Both Levi and Lois have sold substantial quantities of jeans, and have spent substantial amounts of money advertising their products, including, to some degree, the advertisement of their respective stitched designs on products. (A-15,16).

The court below noted that both brands utilized a large number and variety of permanent and temporary labels, markings, hang tags and patches which differentiated the two brands of jeans and identified the sources of the respective products. In particular, the Lois brand jeans are marked by several pictures of the Lois distinctive bull symbol featured on both permanent leather and fabric tags, as well as on temporary sales tags. (A-16; A-181-84). Similarly, the Levi's jeans prominently feature their two well known trademarks, the red or orange pocket tag with the name "Levi" which projects from the right rear pocket of the jeans, and the leather Two

- 9 -

LS-A&F010528

Horse Brand label which is sewn above the right pocket on all
Levi's jeans. (A-16; A-186). Based upon this extensive
labelling, both the district judge and Levi's counsel
acknowledged that product confusion, that is, a purchaser's
inability to distinguish between the two types of jeans at the
point of purchase, was not at issue herein because a purchaser
would not be misled to think that one brand was the other
(A-925; A-950-51).

The court also noted one critical factor about the
manner in which the respective goods were marked, that being
that the Levi's jeans are sold with a temporary cardboard label
which "largely obscures that portion of the back pocket where
the arcuate design normally appears." (A-186; A-16).

The lower court further noted the substantial
difference in price ranges in which the Lois and Levi products
are normally sold (A-17). It described the significant
differences in the emphasis of the respective companies
advertisements, that is, that the Lois advertising stresses
that its jeans are a "fashion statement", are imported from
Europe and are suitable for the "filthy rich", and that by
contrast, Levi's advertisements placed more emphasis on
durability and fit rather than on fashion. (A-18). The lower
court also found that the products are predominantly sold in
different stores or outlets, or in some cases in different
departments within the same stores. (A-18). Based on the
above findings, the court determined that there was a
competitive distance between the products. (A-25).

- 10 -

LS-A&F010529

The court below found no instances of actual confusion (A-27). The sole evidence of likelihood of confusion was a consumer survey purporting to show some form of product confusion, which both the lower court and Levi's counsel admitted was not in issue. (A-925; A-950,951). Thus, there was absolutely no evidence presented on the form of confusion that was at issue, that being some commercial association between Lois and Levi. Despite Lois' objection (A-27,28), the lower court viewed a video tape and description of the consumer survey which purported to show the likelihood of product confusion in a "post-sale context." (A-18). While determining that the consumer survey was only entitled to limited weight because of several critical methodological defects (A-28), the court astonishingly relied almost exclusively on the purported survey for its finding that there would be a substantial likelihood of confusion among prospective purchasers. (A-35). Apparently, in order to make such determination, the court merely substituted its own judgment that there would be a substantial likelihood of confusion among prospective purchasers viewing the marks in a post-sale context, in lieu of the flawed survey evidence purporting to establish the same fact.

The methodological defects in the consumer survey included the fact that no effort was made to replicate the normal marketplace or sales appearance of the goods, all permanent and temporary product identifiers were removed from the jeans before being shown to consumers, no criteria was established by the conductors of the survey to determine

- 11 -

LS-A&F010530

whether either Levi or Lois jeans were widely sold in the area
(and therefore might be subject to recognition by the survey
respondents), and that the study was a mall intercept study
which is generally less reliable than more statistically valid
studies. (A-28). Of course, the main factor of
untrustworthiness identified by the court, and the one which
totally undercuts any probative results from the survey, is
that the jeans used in the survey were devoid of all normal
identifying marks, including permanent marks such as the Levi
pocket Tab and leather waist band Two Horse Brand label and the
Lois leather and fabric patches bearing the distinctive Lois
bull symbol which would normally remain on the garments after
sale. (A-28). There simply can be no doubt that the court
erred in deciding that, on the one hand, the patent defects of
the survey prevented any serious reliance on its result but
then, on the other hand, substituting its own factual
conclusions which were identical to the admittedly flawed
survey results.

## SUMMARY OF APPELLANTS' ARGUMENT

The district court has made a number of glaring and
clearly erroneous mistakes in arriving at its conclusions that
appellants' stitched design is confusingly similar to and
unfairly dilutes the design utilized by appellee. The major
errors supporting this appeal are:

1. With singular disregard for the issues
presented to it, the lower court heard Levi's written

LS-A&F010531

and oral admissions that a consumer would not be confused when buying jeans sold by either Lois and Levi to think that one was the other, but nonetheless found confusion on that very point. Levi only sought a determination that the public when viewing only the stitched designs might think the Lois brand jeans were being sold under some licensing or distribution agreement with Levi, thus causing confusion as to source. The record is absolutely bereft of evidence in support of that point.

2.    Despite finding in favor of appellants as to six of the eight Polaroid factors, the district judge decided that there could be no triable fact questions and granted summary relief based on its determination of only two factors favoring the appellee. It is incredible that the party prevailing on six Polaroid factors could be shut out at any time prior to trial.

3.    In order to determine the two factors in favor of Levi, the lower court engaged in impermissible fact finding on its own, ignored substantial competent evidence raising genuine issues of material disputed facts, and formulated an ultimate conclusion which is clearly erroneous and against the weight of evidence presented.

- 13 -

LS-A&F010532

4.    Despite noting critical methological defects
in appellee's consumer survey and criticizing its
trustworthiness, the district court proceeded to rely
heavily on the survey and to use it as evidence of a
type of confusion which the survey totally failed to
address.

5.    While purporting to apply the prevailing
standards of trademark law in this and other circuits,
the district judge opted for a so-called "fleeting
view" (see A-935; A-964) or "post-sale context"
standard of judging likelihood of confusion. He thus
clearly disregarded the well established standard that
a mark must be viewed in its overall context,
including the setting in which it appears, the
presence of the manufacturer's brand name, and the
presence of other identifiers in considering the
similarity of marks and the likelihood of confusion
which might thereby result.

6.    The court below failed to acknowledge that
Levi's recitation of "undisputed facts" in its Local
Rule 3(g) statement, all of which Levi thus regarded
as essential to its success at this stage, consisted
of a large number of hotly contested facts which
could, therefore, under no circumstances satisfy the
"undisputed" factual premises necessary to a ruling in
Levi's favor.

- 14 -

LS-A&F010533

ARGUMENT

I.   STANDARD FOR REVIEW IN TRADEMARK ACTIONS.

The standard of review in a trademark context is the standard enunciated in Plus Products v. Plus Discount Foods, Inc., 722 F.2d 999, 1004-05 (2d Cir. 1983), aff'g in part and rev'g in part, 564 F. Supp. 984 (S.D.N.Y. 1983) (Sweet, J.). Therein, this Court stated:

> On review it is the function of the appellate court 'to be sure the District Court applied the correct legal standards and correct criteria to findings that are not clearly erroneous.' Vitarroz Corp. v. Borden, Inc. 644 F.2d at 968. More specifically, the district court's determination of each of the Polaroid factors is a finding of fact to which the clearly erroneous standard is applicable. The court's use of those factors, though, and its determination of likelihood of confusion based on the balancing of or relative weight given to each of its findings is a legal conclusion which is reviewable by this court as a matter of law.  [citations omitted].

722 F.2d at 1004-05.

As was further pointed out in the Plus Products opinion on appeal, this Court is entitled to scrutinize not only the lower court's finding as to each Polaroid factor, but also to question the lower court's resultant balancing or weighing of the Polaroid factors in arriving at its ultimate conclusions.  Thus, as described in Plus Products, the lower court's determination herein could be upset, notwithstanding the correctness of the finding as to each individual Polaroid factor:

- 15 -

LS-A&F010534

> The district court comprehensively set out and scrutinized each of the <u>Polaroid</u> factors, and we find that none of the factual findings it made is clearly erroneous. However, we do find that the court's balancing of the <u>Polaroid</u> factors was incorrect. The weight the district court allocated to the above factors shows that confusion between Products' merchandise, on the one hand, and Foods' store name and nonoverlapping goods, on the other, is unlikely.

722 F.2d 1005. This appeal is significantly like that in <u>Plus Products</u> in that the same district court judge has once again made a balancing error principally in respect to the strength factor.

It is also important to note that while factual findings are subject to review on a clearly erroneous standard, "inferences to be drawn from the district judge's testimonial findings are subject, however, to a more searching review." <u>RJR Foods, Inc.</u> v. <u>White Rock Corp.</u>, 603 F.2d 1058, 1060 (2d Cir. 1979). Further, as this Court noted in the <u>RJR Foods</u> case, the appellate court is entitled to scrutinize on a more thorough basis any inferences drawn by the lower court where documentary evidence is available on the record to this Court. See <u>RJR Foods</u>, <u>supra</u>, at 1061 ("A stricter standard of review is also applied where the district judge's inferences are drawn in part from documentary evidence available for inspection by this Court."). In view of the considerable physical evidence and affidavits made a part of the record, this Court is entitled to review the district court's decision quite thoroughly.

- 16 -

LS-A&F010535

## II.   THE LOWER COURT HAS IGNORED THE STANDARDS FOR GRANTING SUMMARY JUDGMENT.

### A.   GENUINE ISSUES OF MATERIAL FACT REMAIN.

To be entitled to summary judgment, the moving party must demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(c). The record must be construed in the light most favorable to the respondent and all reasonable inferences must be drawn in favor of the respondent. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

In order to prevail at trial on its claims of infringement and unfair competition, Levi would have to show that "there exists 'a likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question.' Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978), cert. denied, 439 U.S. 1116 (1979)." Thompson Medical Company, Inc. v. Pfizer Inc., 753 F.2d 208, 213 (2d Cir. 1985).

At the crux of the court's determination is whether there is a likelihood of confusion as to source. Lever Brothers Co. v. American Bakeries Co., 693 F.2d 251, 253 (2d Cir. 1982). Although the determination of likelihood of confusion may involve issues of fact, "if a visual comparison reveals the two marks are not substantially similar summary judgment . . . is appropriate on this question." Universal City Studios, Inc. v. Nintendo Co., Ltd., 578 F. Supp. 911, 927 (S.D.N.Y. 1983), aff'd, 746 F.2d 112 (2d Cir. 1984). It was largely upon this basis that Lois and Textiles moved for

LS-A&F010536

summary judgment in their favor.  The court below and Levi's counsel appeared to agree that to the extent the confusion refers to point of sale confusion as to identity, Lois and Textiles are correct.  As also held in <u>Universal</u> v. <u>Nintendo</u>, it is appropriate for purposes of summary judgment to analyze the competing marks in the overall context in which they appear and to consider the so-called "Polaroid factors" to assist in the determination of likelihood of confusion.  578 F. Supp. at 927-28.  <u>See</u> <u>Plus Products</u>, <u>supra</u>.  After considering the <u>Polaroid</u> factors, and resolving six of the eight factors in favor of Lois and Textiles, the lower court surprisingly held in favor of Levi.  It is submitted that such imbalance alone shows that summary judgment, at least in favor of Levi, is inappropriate in this case.  <u>See</u> <u>Lambda Electronics Corp.</u> v. <u>Lambda Technology, Inc.</u>, 515 F. Supp. 915, 928 (S.D.N.Y. 1981) ("The preponderance of factors permits but one conclusion").

The Lanham Act, 15 U.S.C. § 1051, <u>et seq</u>, provides that infringement occurs when another's use of a mark is "likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  (<u>See</u> Addendum for full text.).  The degree of confusion required "under both the Lanham Act and the common law, is the likelihood that the consuming public will be confused as to the source of the allegedly infringing product."  <u>American Footwear Corp.</u> v. <u>General Footwear Co., Ltd.</u>, 609 F.2d 655, 664 (2d Cir. 1979), <u>cert</u>. <u>denied</u> 445 U.S. 951 (1980).

The district judge and all parties agree that a balancing of the <u>Polaroid</u> factors is critical to any

- 18 -

determination of confusion.  The decision in <u>Polaroid Corp.</u> v.
<u>Polarad Electronics. Corp.</u>, 287 F.2d 492, 495 (2d Cir.), <u>cert.
denied</u>, 368 U.S. 820 (1961), has become the benchmark for the
proposition that an assessment of the likelihood of confusion
between two marks properly turns on the examination of many
factors:

> [The] strength of the mark, the degree of
> similarity between the two marks, the
> proximity of the products, the likelihood
> that the prior owner will bridge the gap,
> actual confusion, and the reciprocal of
> defendant's good faith in adopting its own
> mark, the quality of defendant's product,
> and the sophistication of the buyers.  Even
> this extensive catalogue does not exhaust
> the possibilities -- the court may have to
> take still other variables into account.

287 F.2d at 495.  <u>See</u> <u>Thompson</u> v. <u>Pfizer</u>, <u>supra</u>, at 213-14;
<u>Lever Bros. v. American Bakeries</u>, <u>supra,</u> at 253.  It is not only
the assessment of each individual factor that is critical, but
also the balancing of the individual indicators in arriving at
an ultimate conclusion.  <u>See</u> <u>Plus Products</u>, <u>supra</u>, 722 F. 2d at
1004, where this Court held:

> No single <u>Polaroid</u> factor is determinative.
> Rather each must be considered in the
> context of all of the other factors, and
> from a balance of these determinations, one
> is able to reach the ultimate conclusion,
> whether there is likelihood of confusion
> between the two parties' products.
> [citations omitted.]

Obviously, any balancing which concludes that two factors
outweigh six is suspicous, but any such balancing which
determines that two outweighs six at the summary stage and
thereby precludes Lois and Textiles from seeking to further
explain the genuine, material and disputed issues that are
evident on the record is preposterous.

LS-A&F010538

The court below also seemingly ignored the Rule 3(g) Statement filed by Levi, in which Levi set forth forty-one numbered sets of "material" facts which it claimed were undisputed, and which thus constituted an appropriate basis (according to Levi) for the granting of summary judgment in its favor. (A-243). Levi should have been denied its summary judgment in the event that even one of such facts was shown to be a material fact subject to a genuine dispute which would have to be resolved at a trial. Close to one half of Levi's Rule 3(g) facts, including all key facts as to likelihood of confusion, were denied (A-654) or disputed by competent evidence presented by Lois to the court in connection with the summary judgment proceeding. In order to grant summary judgment to Levi in this action, the court below impermissibly resolved the numerous disputed facts in Levi's favor, despite solid evidence to the contrary. It is critical to note that Lois was not required at this stage to demonstrate by a preponderance of the evidence that it would prevail at trial on such facts (although it clearly did so), but only to demonstrate that there were material and triable issues as to such facts.

B.   PROPER APPLICATION OF THE <u>POLAROID</u> FACTORS PRECLUDES A RULING IN FAVOR OF LEVI.

Set forth below are the Court's findings and a summary of the evidentiary and case support presented on the six <u>Polaroid</u> factors determined in appellants' favor. As this Court has repeatedly held (see <u>Plus Products</u>, <u>supra</u>) each of

- 20 -

LS-A&F010539

the factors is a critical indicator of the likelihood that potential purchasers will be confused, and each should be accorded its own independent weight.

### 1.    Actual Confusion.

Levi has admitted that there have been no instances of actual confusion, and the lower court has so found. (A-27). Quite clearly, this factor militates strongly in Lois' favor. As was observed by Judge Meskill in the decision of the Second Circuit in McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1136 (2d Cir. 1979): "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion." See also Amstar Corp v. Domino's Pizza, Inc., 615 F.2d 252,263 (5th Cir.), cert. denied 449 U.S. 899 (1980), where the Fifth Circuit ruled that even isolated instances of actual confusion were insufficient to prove likelihood of confusion when the parties had been engaged in extensive concurrent sales for a number of years.

Referring to the findings of no actual instances of confusion in both the McGregor-Doniger opinion and the Amstar opinion, this Court has found that the lack of evidence of actual confusion is a critical factor in denying protection to a senior user's mark. In Plus Products, supra, 722 F.2d at 1006, this Court held:

> Despite three years of concurrent use, the district court found there were no instances of actual consumer confusion, but it did not articulate the importance it gave to this factor. While we recognize that it is difficult to establish actual confusion on the part of retail customers, W.E.

- 21 -

> Bassett Co. v. Revlon, Inc., 435 F.2d 656,
> 662 (2d Cir. 1970), no evidence of confusion
> for over a three-year period, during which
> substantial sales occurred, is a strong
> indicator that the likelihood of confusion
> is minimal. Lever Bros. v. American
> Bakeries Co., 693 F.2d at 257; Pignons S.A.
> de Mecanique de Precision v.  Polaroid
> Corp., 657 F.2d 482 (1st Cir.  1981); Amstar
> Corp. v. Domino's Pizza, Inc., 615 F.2d at
> 263; McGregor-Doniger, Inc. v. Drizzle,
> Inc., 599 F.2d at 1136.  (Emphasis supplied).

722 F.2d at 1006.

While Levi has made light of the volume of United

States sales of Lois brand jeans and trousers in comparison to

its own sales, for purposes of satisfying the significant

concurrent sales test of Plus Products, supra, $4.8 million in

sales made by Lois from 1979-1984 is not an insubstantial

number, nor is the estimated $1.9 million of sales of Lois

trousers and jeans bearing the Lois stitched design during that

period.  (A-16).

Levi's failure to present evidence of actual confusion

is unequivocal, there was none.

In response to Lois' first set of interrogatories

(A-106, 108), Levi admitted that there have been no instances

of actual confusion, despite Lois' presence in this market for

more than five years:

> Interrogatory No. 18:
>
> State whether there have ever been any
> incidents reported to Levi wherein any
> person has been confused, mistaken or
> deceived as to the source or origin of Levi
> products carrying the Levi Stitched Design
> or as to the source or origin of any product
> carrying an Arcuate design of any other
> manufacturer or vendor,...

LS-A&F010541

Response To Interrogatory No. 18:

None of which Levi Strauss & Co. is aware.

Interrogatory No. 20:

State whether Levi has ever received any
misdirected mail, telephone calls, orders,
inquiries or complaints which were intended
for Lois or any other person other than Levi
which manufacture or have ever manufactured
products bearing an arcuate design,...

Response to Interrogatory No. 20:

None to the extent LS&CO is aware.

2.  Proximity of the Products.

The court below found that the parties' jeans are generally sold at "disparate prices" and in "different stores". (A-25). As a further basis for lack of proximity between the products, the lower court found that the Lois jeans generally are sold at retail in the $60 - $80 price range, while the Levi's jeans are generally sold in the $20 - $30 range. (A-17). Additionally, the court noted the contrast in the promotional aspects of the jeans. (A-18,25). While emphasis of Levi's advertisements is placed more on durability and fit rather than fashion, the Lois jeans are emphatically described as "fashion statements," as being imported from Europe and as high priced items suitable for the "filthy rich". (A-18;A-810-11; A-828-29). As the lower court noted, the effect of the competitive distance found between the Lois jeans and the Levi jeans reduces the likelihood of potential confusion between prospective purchasers. See Pignons, S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487-88 (1st Cir. 1981); Plus Products, supra, 722 F.2d at 1007.

- 23 -

LS-A&F010542

3.  Bridging the Gap.

The court below also found in favor of Lois that
potential confusion would be diminished on the grounds that
Levi has failed to establish that it is likely to bridge any
gap between the products.  (A-26).  While representing that it
might explore clothing lines in price ranges between the
currently low-priced Levi's and the high-priced Lois brand
jeans, Levi did not express any intention to use its arcuate on
its new mid-priced lines.  (A-26).  Added to the lack of
proximity between the products, the court's finding that Levi
is unlikely to bridge the gap or to close the competitive
distance described above further undermines the lower court's
ultimate finding of likelihood of confusion.  See Vitarroz
Corp. v. Borden, Inc., 644 F.2d 960, 969 (2d Cir. 1981);
McGregor-Doniger v. Drizzle, supra, 599 F.2d at 1135-36.

4.  Sophistication of Buyers.

As further evidence militating against the lower
court's ultimate conclusion of the likelihood of substantial
confusion between the products based on their trademarks, the
lower court determined that a "relatively high degree of
sophistication is found with respect to Lois jeans
purchasers."  (A-26).  As was discussed in Plus Products,
supra, at 1007, the higher the degree of sophistication of
prospective purchasers, the more care that such purchasers
could be expected to take and the less likely that they would
misapprehend the source of either product.

- 24 -

5.  <u>Quality of Lois Jeans.</u>

The lower court found that the qualitative advantages that Lois claimed may serve to differentiate the product with consumers. (A-26). Essentially, for the purposes of the summary judgment motion, Levi did not dispute Lois' proof that its jeans were of superior quality. (A-26). Again, the likelihood of confusion among prospective purchasers would be diminished by the qualitative differences between the products in question. <u>McGregor - Doniger v. Drizzle</u>, <u>supra,</u> at 1134.

6.  <u>Good Faith of Lois.</u>

Based upon Lois' continued use of its stitched design since 1959, together with Lois' explanation of the origins of its stitched design, the lower court found that Lois had not acted in bad faith. (A-26,27). Such a finding, when coupled with the substantial attempts of Lois to identify its jeans and trousers as its own brand, rather than the Levi brand items, prevents the likelihood of confusion among prospective purchasers. <u>Vitarroz v. Borden,</u> <u>supra</u>, at 968-69. Together with each of the other <u>Polaroid</u> factors, the absence of bad faith negates not only the ultimate likelihood of actual confusion, but also any inference that Lois may have been attempting to palm off its product as that of Levi's or to deceive the public into so thinking.

C.  THE LOWER COURT HAS ENGAGED IN IMPERMISSIBLE
    <u>FACT FINDING ON MATERIAL AND DISPUTED ISSUES.</u>

The best illustration of a trademark decision which has been reversed by this Court fundamentally due to impermissible fact finding on the part of the district judge is

- 25 -

LS-A&F010544

the recent case entitled American International Group, Inc. v. London American International Corporation, Ltd., 664 F.2d 348 (2d Cir. 1981).  In that decision the Court noted that:  "If the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate.'  Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 444-45 (2d Cir. 1980)." American v. London, supra, at 351.

In the American v. London case, Judge Duffy was overruled for the same reasons that the district judge in this case should be reversed.  As was stated therein, "the responsibility of the district judge in a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits." [citation omitted].  664 F.2d at 351.

To continue the illustration, the district court must also avoid ignoring relevant disputed issues, as has been done here.  664 F.2d at 351.  For instance, the overwhelming evidence that appellants presented regarding third party usage of marks similar to the Levi arcuate has been speciously interpreted as evidence of strength rather than as evidence of weakness, because the lower court decided on its own that the emulation of appellee's mark must be for purposes of trading on appellee's goodwill.  Whether the lower court's conclusion ultimately proves to be true, on the state of the record before it, the extensive third party use more logically supports the notion that Levi has either failed to police its mark adequately or, by virtue of prolific use by unauthorized

- 26 -

LS-A&F010545

parties, the mark has been weakened or abandoned notwithstanding Levi's policing efforts. <u>See</u> <u>Plus Products,</u> <u>supra,</u> 722 F.2d at 1005-06. The district judge's unusual interpretation of such evidence cannot be the basis for a summary decision in favor of Levi.

As a final matter, it must be kept in mind that there was no burden on Lois or Textiles to prove the merits of their case at this juncture, but only to identify material and genuine issues of fact which, because they are disputed, cannot be decided in appellee's favor at this point. See <u>American v.</u> <u>London,</u> <u>supra,</u> at 351. <u>See also</u> <u>D.C. Comics, Inc.</u> v. <u>Reel</u> <u>Fantasy, Inc.</u>, 696 F.2d 24 (2d Cir. 1982) (trademark case again reversing Judge Duffy for impermissible fact finding and conclusions drawn therefrom).

     1.   <u>Strength of Levi's Arcuate.</u>

     a.   The District Judge has Failed to Consider the True Strength of the Levi Mark.

For purposes of assessing the strength of a mark, the judicial starting point is a classification of the mark as generic, descriptive, suggestive, or arbitrary or fanciful, with generic marks regarded as the weakest initially while arbitrary or fanciful marks are regarded as theoretically stronger marks. <u>See</u> <u>Plus Products</u>, 564 F. Supp. at 990. However, the court must assess the true strength of a mark, notwithstanding its initial assignment to some place on the spectrum of theoretical strength. <u>See</u> <u>McGregor-Doninger</u> v. <u>Drizzle,</u> <u>supra,</u> at 1131-32. In this case, the lower court has disregarded substantial evidence that the extensive third party use of arcuate type

- 27 -

LS-A&F010546

designs has weakened its distinctiveness as a source indicator (A-663-714; A-749-808; A-830-847; A-851-877), as well as the fact that the Levi arcuate is so simplistic that it lacks innate singularity and is thus unworthy of protection.  The lower court's dependence on evidence of sales success, advertising expenditures and the like is clearly erroneous in light of Levi's failure to present proof that the arcuate itself was in any way responsible for such sales or such advertising expenditures.  This is highlighted by the almost total absence of the arcuate in 13 of the 17 "representative" advertising tapes shown to the court at the oral argument and by the fact that the arcuate is only one of approximately five source indicators which are regularly used by Levi.  In short, there was simply no showing that the arcuate had an independent degree of recognition and connection with Levi, unlike the result in the Ninth Circuit where the Tab was accorded such recognition. See Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817 (9th Cir. 1980).

  b.  The Levi Mark Lacks Distinction.

        The arcuate is a simple design element constructed of only two lines and lacks any distinctive or unique design elements or qualities.  As counsel for Levi admitted at the summary judgment proceeding, lack of "innate singularity" would cause weakness.  (A-949).  The Levi arcuate is not readily distinguishable from a myriad of other designs and marks that appear on many products and military insignia, including those pointed out below.  Levi has sought to portray the arcuate stitching design as a strong, historical mark which should enjoy

LS-A&F010547

a spillover effect from the admittedly well known Levi name or
its other registered trademarks, such as the back pocket Tab and
Two Horse Brand.  The court below erroneously accepted the
evidence presented by Levi as to the popularity of jeans
generally or of the Levi brand generally as proof of the
arcuate's strength.  Although Levi has attempted to capitalize
on its famous name and to lend to its arcuate some of the
trademark strength that derives from that name, the
"representative" ad copy placed on the record makes little
reference to the arcuate, which is apparently at least fourth in
strength and recognition behind the Levi's name, the Tab and the
Two Horse Brand design.  (A-439-499)

The court below depended heavily on the Ninth Circuit's
decision in Levi v. Blue Bell, supra, and that court's finding
that the Tab was a particularly distinctive feature of the Levi
brand jeans.  It cannot be overemphasized that the use of the
Tab and its strength as a distinctive element of Levi's jeans
does not by osmosis or affinity create any greater protection
for Levi's considerably less distinctive arcuate stitching
design.

By the same token, much of the "proof" of
distinctiveness placed before this Court by Levi relates solely
to the popularity of its jeans generally.  For instance, the New
Yorker article (A-393) explains the recent worldwide popularity
of jeans and discusses the other Levi trademarks (brand name,
Tab and Two Horse design) but neglects any mention of the
arcuate.  That article thus has little relevance to the subject
matter of this lawsuit.

LS-A&F010548

As is also well settled, the sizeable extent of Levi's advertising is not, in and of itself, indicative of the strength or secondary meaning of a mark. American Footwear, supra at 663; Eli Lilly & Co. v. Revlon, Inc., 577 F. Supp 477, 483 (S.D.N.Y. 1983). The large amounts purportedly spent by Levi in advertising its products does not establish that one of its less visible marks is strong or even apparently strong.

    c.   Extensive Third Party Use

As is amply demonstrated by the record now before the Court, numerous third parties have been identified who used or are using arcuate stitching designs similar to Levi's. By its response to Lois' first set of interrogatories, which solicited the identity of persons known to have been manufacturing, selling or distributing products bearing a similar arcuate design, Levi identified some 200 files relating to U.S. arcuate infringement and some 800 additional files relating to worldwide infringement. (A-94). Before the court below, Levi did not deny third party use, but merely claimed that Lois has failed to prove the extent of such use. The lower court astoundingly ruled that rather than undermining distinctiveness, third party use only shows the third parties' recognition of Levi's successful use of the mark and their desire to trade on the goodwill created by the mark.

The same judge had previously encountered and evaluated the extent of third party use, as well as its effect of nullifying any strength of a mark, in the Plus Products case, supra, and was affirmed by this court on that issue. There, the lower court found that the senior user's mark lacked

LS-A&F010549

strength and distinctiveness on the basis of extensive third
party use:

> [I]ts frequent usage by others to identify
> different products is an indication that the
> mark is weak. Triumph Hosiery Mills, Inc.
> v. Triumph Int'l. Corp., 308 F.2d 196, 199
> n.2 (2d Cir. 1961). Extensive use is third party
> use is shown here by [senior user's] cease
> and desist correspondence. Since 1970
> [senior user] has sent demand letters
> involving over 130 different uses of PLUS
> for various goods and services. [Footnote
> omitted, emphasis supplied].

564 F. Supp. at 990.

Lois has placed on the record a small sample from
Levi's infringement files of contested designs which allegedly
resemble the arcuate device used by Levi. See A-663-714;
A-749-809. All items depicted therein were the subject of
demand letters and, in most cases, additional communications
occurred between the parties over a period of time ranging from
several months to as much as 14 years while Levi sought to cause
the alleged infringer to cease production and sale.
(A-736-38). The producers of such allegedly infringing jeans
include prominent companies such as Farah, Ball, Sergio Valente,
Cotler, Gloria Vanderbilt and Sasson and the GAP Stores. The
GAP Stores, which are strongly identified with Levi, have
previously sold jeans bearing an arcuate-type design (A-714;
A-123-133), and continue to market trousers with a simple
two-line design that is only differentiated from the Levi design
because the two lines are not curved. (A-825).

Shortly before the initial depositions were taken in
this action in 1983, a Lois salesperson quickly purchased a
number of pairs of jeans which featured a simple arcuate-type

LS-A&F010550

design or a more complex design which prominently displayed an arcuate as a central feature. (A-291-308). Obviously, several of such designs are quite similar to the Levi mark.

In addition, Lois has introduced into evidence a number of pairs of jeans which feature an arcuate-type design which were purchased in the matter of a few hours within the vicinity of Whitman & Ransom's offices on January 15, 16, and 17, 1985. See A-851-877. Lois has also introduced seven pairs of jeans bearing arcuate-type designs which were obtained by quickly visiting five stores in midtown Manhattan on June 17, 1985. See A-830-847. Lois respectfully submits that despite the policing activities alleged to have been carried out by Levi, the jeans market has been constantly besieged by arcuate-type designs. The prevalence of arcuate-type designs was widespread in 1979-1981, during the "heyday of the designer jeans craze", a term adopted by Levi's in house counsel, (A-739). The prevalence of arcuate-type designs was still in evidence in early 1983, shortly after this action was commenced. It remained true through January of 1985. It also remained true as of the time Lois submitted its papers in support of its motion for summary judgment and was ignored by the district judge.

Finally, whether Levi has been "enormously successful" in policing the use of potentially infringing marks as claimed by Levi's in house counsel or even "relatively successful" according to earlier statements by the same person (A-593; A-734), the teaching of Plus Products is that extensive third party use undermines the mark's strength, even where the owner

- 32 -

LS-A&F010551

of the mark has been "vigilant in attempting to restrict others" from using similar marks.  Plus Products, supra, 722 F.2d at 1002.

The district judge's citation to National Lead Co. v. Wolfe, 223 F.2d 195, 204 (9th Cir.), cert. denied, 350 U.S. 883 (1955) and Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960), in support of his finding that third party use is demonstrative of strength rather than weakness (A-23) is flatly insupportable in light of this Court's reversal of the same district judge on the same point in Plus Products, supra, 722 F.2d at 1006-08.

2.  Similarity of Marks In Their Overall Context.

a.  Physical Distinctions Between the Marks.

It is Lois' position that the back pocket designs employed by it and Levi are not confusingly similar.  Not surprisingly, Levi has taken an opposite view.  This Court is capable of drawing its own conclusions as to the dissimilarities and similarities of the respective designs and whether, in the context of the manner in which the respective jeans appear in a sales setting, there is a likelihood that the Lois jeans will be confused with Levi jeans by potential purchasers.  See RJR Foods, supra, at 1061.

It is noteworthy that this Court has frequently denied protection to a senior user even when the marks have been substantially similar, as in McGregor-Doniger, supra, and even where the parties have admitted that the marks were identical.  See, e.g., Mushroom Makers, Inc. v. R.G. Barry Corporation, 580 F.2d 44, 47 (2d Cir. 1978), cert. denied, 439

- 33 -

LS-A&F010552

U.S. 1116 (1979); <u>Sally Gee, Inc.</u> v. <u>Myra Hogan, Inc.</u>, 699
F.2d 621 (2d Cir. 1983); <u>Eli Lilly</u> v. <u>Revlon</u>, <u>supra</u>.  Thus,
the lower court's disposition of this factor in favor of Levi
could hardly tip the balance in favor of Levi when juxtaposed
against the six factors found for Lois.

    b.  <u>The Presence of the Manufacturer's Name</u>.

    Contrary to Levi's position that the presence of both
its well known name and the Lois name on their respective
goods does not lessen the likelihood of confusion, a number of
cases unequivocally hold that where manufacturers prominently
display their brand names and identifying symbols on products
bearing an allegedly infringing mark, they thus eliminate the
likelihood of confusion and negate any charge of
infringement.  Such reasoning makes perfect sense, since it
hardly can be imagined that one wishing to trade off the
goodwill of another would place its own multiple
self-identifiers on its products.  Thus, in <u>Lever Brothers Co.</u>
v. <u>American Bakeries Co.</u>, <u>supra</u>, this Court held that because
of the "prominent identification" of the producers on the
respective packages, the likelihood of confusion was
substantially negated and defendant could not be found to have
infringed plaintiff's trademark.  In so finding, the Court
stated that the similarity of the marks must be assessed with
regard to the "overall packaging context" as it affects
potential consumers.  693 F.2d at 257.

    Similarly, in <u>McGregor-Doniger</u> v. <u>Drizzle</u>, <u>supra</u>, the
plaintiff, which manufactured a golf jacket under the
trademark "Drizzler," sought to enjoin defendant's sale of

LS-A&F010553

womens' coats under the trademark "Drizzle." Notwithstanding the fact that the marks were found to be virtually identical, this Court held that the context in which the respective marks were presented reduced the impact of their similarity. This Court held that since the "Drizzler" trademark was always used in conjunction with the McGregor name, the likelihood of confusion was eliminated: "the fact that only one mark generally appears in close conjunction with the red plaid McGregor name increases the likelihood that the public even when viewing the mark individually, will not confuse the two." 599 F.2d at 1134. See also Warner Brothers Co. v. Jantzen, Inc., 249 F.2d 353, 354 (2d Cir. 1957), where this Court held that since the defendant did not use its trademark alone, but always in conjunction with its own widely known tradename "Jantzen," the use of the brand name eliminated any likelihood of confusion between the two products.

In Pignons v. Polaroid, supra, plaintiff charged the Polaroid Corporation with infringing its trademark by manufacturing various Polaroid cameras with the identical trademark used on plaintiff's cameras. The court found no infringement, stating that "similarity must be determined on the basis of the total effect of the designation, rather than a comparison of individual features." 657 F.2d at 487. As is the case with the products herein, the allegedly infringing trademark always appeared in close proximity to the name Polaroid and other identifying symbols indicating that the Polaroid Corporation was the source of the camera. The Court

- 35 -

LS-A&F010554

of Appeals for the First Circuit stated: "We and other courts have indicated that in certain circumstances, otherwise similar marks are not likely to be confused when used in conjunction with the clearly displayed name and/or locale of the manufacturer." 657 F.2d at 487. <u>See also</u> <u>Fisher Stoves, Inc.</u> <u>v. All Nighter Still Works, Inc.</u>, 626 F.2d 193, 194-95 (1st Cir. 1980); <u>Keebler Co.</u> v. <u>Rovira Biscuit Corp.</u>, 624 F.2d 366, 378-79 (1st Cir. 1980); <u>Bose Corp.</u> v. <u>Linear Design Labs, Inc.</u>, 467 F.2d 304, 310 (2d Cir. 1972); <u>R.G. Barry Corp.</u> v. <u>A. Sandler Co.</u>, 406 F.2d 114, 116 (1st Cir. 1966) ; <u>Nabisco Brands, Inc.</u> v. <u>The Quaker Oats Co.</u>, 547 F. Supp. 692 (D.N.J. 1982).

Another well articulated case on this issue arising in this Circuit is the decision in <u>Le Sportsac, Inc.</u> v. <u>Dockside Research, Inc.</u>, 478 F. Supp. 602 (S.D.N.Y. 1979). In denying a motion for a preliminary injunction pertaining to virtually identical high fashion sports and travel bags, the district court reasoned:

> <u>Plaintiff's logo is</u> prominently and <u>repetitively printed</u> across the cotton carpet tape trimming on its bags. By contrast, defendants employ <u>sewn-in labels</u> on their bags and pouches which feature the trademark Pax. Their <u>hangtag</u> also prominently features the Pax trademark as does all the advertising connected with the product. <u>This labeling tends to eliminate the confusion that might otherwise result from the sale of such similar products.</u> As our Court of Appeals has observed, "there is hardly likelihood of confusion . . . when the name of the manufacturer is clearly displayed." <u>Bose Corporation</u> v. <u>Linear Design Labs, Inc.</u>, 467 F.2d 304, 310 (2d Cir. 1972). Plaintiff has offered no evidence to overcome the apparent presumption that confusion as to origin will

- 36 -

LS-A&F010555

not arise where such labeling occurs.
[emphasis supplied].

478 F. Supp. at 609.

It is beyond question that Levi has been unable to overcome the presumption spoken of by the court in Le Sportsac v. Dockside that confusion will not occur where, as here, clear labeling is present. It is, quite simply, unreasonable and illogical to believe that persons at the point of sale will think, merely because of an arguably similar back-pocket stitching design, that Lois-brand jeans labeled "Imported from Spain," "Produced by Textiles y Confecciones Europeas, S.A." and "Imported by Lois Sportswear U.S.A., Inc.," without any distinctive red pocket Levi's tab, are somehow connected with Levi. The lower court's failure to test confusing similarity in its overall context, including the maufacturer's name, was clearly erroneous.

c.    The Manner in Which the Goods Are
       Displayed in the Marketplace.

It cannot be overemphasized that the test for likelihood of confusion requires a comparison between the two brands as they appear in the marketplace, including their trade dress, the setting in which they appear and the impression which they create. There simply is no variance from this principle in this Circuit. See Aris-Isotoner Gloves, Inc. v. Fownes Bros. & Co., 594 F. Supp. 15, 22-23 (S.D.N.Y. 1983); Plus Products, supra, 722 F.2d at 1007; Lever Bros. v. American Bakeries, supra, at 257; Warner Brothers, Inc. v. American Broadcasting Companies, Inc., 720 F.2d 231, 240-242 (2d Cir. 1983); Thompson v. Pfizer, supra, 753 F.2d at 218. The Second Circuit (and most

- 37 -

LS-A&F010556

other circuits) have consistently required that all features of allegedly similar products be analyzed in the way they appear to potential consumers, including their packaging, other trade dress, surrounding environment and the overall impression they create. McGregor-Doniger, supra, at 1133; Universal v. Nintendo supra, 746 F.2d at 117 (2d Cir. 1984); Restatement of Torts § 729, Comment b; Olay Company, Inc. v. Cococare Products, Inc., 218 U.S.P.Q. 1028, 1041 (S.D.N.Y. 1983).

In view of the overwhelming law against the district judge on this point, he nonetheless gave credence to the "fleeting view" or post-sale context evidence sought to be introduced by Levi. (A-963-64; A-31-35). Such evidence by definition precludes an assessment of the marks in the way they appear to consumers, that is, including the other elements of trade dress, markings or other indicia of source. See The Mennen Company v. The Gillette Company, 565 F. Supp. 648, 652-54 (S.D.N.Y. 1983).

Perhaps the Levi brand jeans as they are displayed for sale reveals the single weakest aspect of the claims Levi has made and the lower court's inability to distinguish between the popularity of Levi's jeans and the lack of proof in support the strength of Levi's arcuate is that THE LEVI ARCUATE IS NOT VISIBLE ON THE PRODUCT UNDER ACTUAL SALE CONDITIONS. (A-16; A-186). So "important" to Levi is its arcuate that Levi has chosen to cover the arcuate design with temporary cardboard labels which hide the arcuate from the view of the potential purchaser or consumer. Note also the advertising signs used at The GAP Stores, a large surveyor of Levi brand jeans.

- 38 -

LS-A&F010557

(A-281-82).  The  photocopies of the signs placed on the record
are not clear, but a physical examination would reveal that the
plastic holders for price points are placed squarely over and
largely obscure that portion of the back pocket where the
arcuate design ordinarily appears.

In a very similar fashion, Levi has placed great
emphasis on its advertising and the key importance of the
arcuate in its advertising scheme.  However, Levi has not
bothered to explain why invariably its print ads call attention
to Levi's other trademarks and almost totally ignore any
mention of the arcuate.  For instance, See A-440, et seq.,
which consist of ads represented by Levi to be typical ads used
in the 1970's and 1980's.  The trademark legends all refer to
the Tab, the word "Levi's" and in some cases, the word
"Sta-prest," as registered trademarks of Levi Strauss & Co.
But not a single ad in the 1970's group mentions that the
arcuate is a registered trademark.  The later ads in this group
primarily refer to another mark, the "Two Horse Brand", in
addition to the Tab and the word "Levi's" as registered marks.
The ads presented to the district court simply reinforce the
message of the Levi v. Blue Bell case, that the name and the
Tab are well recognized external identifiers of Levi's brand
jeans.  The arcuate, on the other hand, is wholly lacking in
similarly distinctive qualities, and cannot qualify for
bootstrap protection based on the strength of Levi's other
marks.

- 39 -

LS-A&F010558

III.   THE DISTRICT COURT HAS ERRED IN GRANTING
       RELIEF UNDER STATE LAW.

          To whatever extent Levi's claims raised under the New

York anti-dilution statute, N.Y. Gen Bus. Law § 368-a

(McKinney 1968), or the unfair competition provision, N.Y. Gen

Bus Law §349 (McKinney 1968), do not involve rights equivalent

to those protected by the Lanham Act, the claims under New

York law are also insufficient to entitle it to the equitable

relief requested.  See Warner Bros. v. American Broadcasting,

supra, at 248.  The dilution statute only protects extremely

strong marks where there is a likelihood of injury to business

reputation or dilution of the distinctive quality of a mark.

Sally Gee, supra, at 624-26.  It is submitted that the Levi

mark obviously fails to qualify for protection under either

§368-d or §349, in light of the extensive third party use of

similar marks and since the lower court found the Lois product

to be higher in price and of at least equivalent quality.

Thus, association with the Lois brand would not be likely to

tarnish Levi's own good reputation.  See Mushroom Makers v.

R.G. Barry, supra.  Moreover, the distinct dissimilarities

between the Levi jeans and the Lois jeans, when viewed under

actual sales conditions, render Levi's claims under the state

anti-dilution statute unworthy of relief.  Plus Products,

supra.

          An additional focus of inquiry under the anti-dilution

statute is the defendant's good faith.  As the Second Circuit

held in Sally Gee, supra:

          Finally, the absence of predatory intent by
          the junior user is a relevant factor in

- 40 -

LS-A&F010559

assessing a claim under the anti-dilution statute, <u>see</u> <u>Information Clearinghouse, Inc.</u> <u>v. Find Magazine</u>, 492 F.Supp. 147, 162 n.44 (S.D.N.Y. 1980), since relief under the statute is of equitable origin.  <u>See</u> <u>Cue</u> <u>Publishing Co. v. Colgate-Palmolive Co.</u>, 23 A.D.2d 829, 259 N.Y.S.2d 377 (1st Dept. 1965).

699 F.2d 626.  The lower court has found that, Lois and Textiles had a prior economic and historical interest in the use of the Lois stitched design on their well marked Lois brand jeans, thus amply dispelling any bad faith or predatory intent on their part.  <u>See</u> <u>Plus Products</u>, <u>supra</u>, 722 F.2d at 1007.

Further, Professor Gilson has commented:

A trademark owner may find his trademark abandoned where he fails to take legal action against infringers of his trademark. If such infringement becomes sufficiently widespread, and so many others are using the mark that the public no longer associates the mark with a single source of goods or services, the mark will be considered abandoned.  1 Gilson, <u>Trademark Protection</u> <u>and Practice</u> (1984) ¶ 3.06 at p. 3-102.

That is precisely the situation here.  The market in this country for a number of years has been literally flooded with scores of different brands of jeans which bear back pocket stitching designs identical or similar to the design which Levi seeks here to protect.  Levi's "efforts" to prevent the prolific distribution of goods bearing an infringing design have failed miserably.  There can thus be no doubt that the Levi stitching design is not associated by the public with Levi, and that as a result, the mark must be deemed abandoned.

- 41 -

LS-A&F010560

## IV. THE LOWER COURT HAS IMPROPERLY DENIED APPELLANTS' MOTION FOR SUMMARY JUDGMENT.

Under well settled legal principles in this Circuit, there is no possibility of confusion between the various products sold by Lois and those sold by Levi under actual sale conditions. With the exception of the Sixth Circuit's persuasive decision in <u>Levi Strauss & Co. v. Longley,</u> 272 F.2d 820 (6th Cir. 1959), discussed at length in Lois' moving papers, there is no need for this court to look, as was suggested by Levi at the district court level, at the decisions of foreign courts rendered under their own foreign trademark laws or to depend to any great extent on the law of other circuits.

Levi contends that its arcuate trademark is incontestable under 15 U.S.C. §1065. Lois admits such incontestibility for purposes of this motion only, but notes that the doctrine of incontestibility bars only defenses directed to Levi's right to register the mark, and in no way any bearing on whether such mark is weak or entitled to protection specifically against the particular contested mark under the circumstances in which that contested mark is used.

Lois submits that proper analysis of the <u>Polaroid</u> factors reveals that as a matter of law there is no likelihood of confusion between the respective trousers and jeans based on any alleged similarity between the back pocket designs. There have been no instances of actual confusion despite substantial concurrent sales by both parties over a period of years. Each product prominently bears the name of the respective manufacturer as well as numerous other indicia of source. As

- 42 -

LS-A&F010561

the goods are displayed under actual sale conditions there can
be no question as to the origin of each garment.  Levi concedes
this point and yet has placed on the record no evidence to
support its claim that the public will misperceive that there is
some licensing or distribution arrangement between the
adversaries.  The Levi arcuate is not even visible under actual
sale conditions so that potential purchasers can hardly be
expected to depend on the arcuate as the basis for making their
purchases.  Although Levi has propounded a survey which it
contends constitutes evidence of likelihood of confusion, as the
lower court suggested, the failure to simulate actual sales
conditions, as well as other critical defects, renders the
survey untrustworthy according to the standards established in
this Circuit.  See American Footwear, supra, at 660-61; Mennen
v. Gillette, supra at 652-54.

Before the lower court, Levi also relied upon high
school yearbooks and comments made in various publications to
suggest evidence of secondary meaning or likelihood of
confusion.  Such items are rank hearsay at this stage, are
unlikely to be admissible at trial for the truth of the matters
asserted therein, and are of such low probative weight that
they are insufficient to support the district court's
conclusion.

Lois has also submitted a great deal of evidence which
proves the weakness of the Levi arcuate and the extensive third
party use of similar stitched designs on the back pockets of a
huge number of brands of jeans.  Such evidence was obtained
directly from the files produced by Levi in this action or was

- 43 -

LS-A&F010562

readily available from retail outlets in the midtown Manhattan area, and is only exemplary of the even more extensive third party usage which would undoubtedly be proven in a more comprehensive survey.

In terms of the other <u>Polaroid</u> factors, the district court has weighed evidence of differences in quality, price and market structure and has found, as it must, that there is a significant competitive distance between the Lois products and the Levi products.  In like manner, Lois' good faith, the lack of evidence of bridging the gap and the high degree of sophistication among apparel buyers significantly limit the likelihood of confusion.

<u>Conclusion</u>

For all of the foregoing reasons, the motion for summary judgment filed by Lois and Textiles should be granted, and the lower court's ruling in favor of Levi on its cross-motion for summary judgment must be reversed or, at the very least, remanded for purposes of trial.

Respectfully submitted

WHITMAN & RANSOM

By: _____

Max F. Schutzman

Attorneys for Lois Sportswear, U.S.A., Inc. and Textiles y Confecciones Europeas, S.A. 522 Fifth Avenue New York, New York  10036 (212) 575-5800

4441B

- 44 -

LS-A&F010563