**EXHIBIT L**

# TRADEMARK MANUAL

# OF

# EXAMINING PROCEDURE

# (TMEP)

## UNITED STATES PATENT AND TRADEMARK OFFICE

## Fifth Edition, September 2007

**1605 Affidavit of Incontestability Under §15**

Section 15 of the Trademark Act, 15 U.S.C. §1065, provides a procedure by which the exclusive right to use a registered mark in commerce on or in connection with the goods or services covered by the registration can become "incontestable," if the owner of the registration files an affidavit stating that the mark has been in continuous use in commerce for a period of five years after the date of registration. To expedite processing, it is recommended that the owner file the §15 affidavit through TEAS, available at **http://www.uspto.gov**. *See* **TMEP §1605.02.**

Under §33(b) of the Act, 15 U.S.C. §1115(b), if the right to use the mark has become incontestable under §15, then the registration is conclusive evidence of the validity of the registered mark and its registration, of the registrant's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce, subject to certain defenses and exceptions. Sections 15 and 33(b) apply only to registrations issued on the Principal Register.

Filing an affidavit of incontestability under §15 of the Trademark Act ("§15 affidavit") is optional. An eligible registrant may choose to claim the benefits of incontestability and file an appropriate affidavit, or may elect to retain the registration without those benefits. The requirements for maintaining and renewing a federal registration are not affected.

The USPTO does not "accept" §15 affidavits. *Arman's Systems, Inc. v. Armand's Subway, Inc.*, 215 USPQ 1048, 1050 n.2. (TTAB 1982). The Post Registration examiner reviews the affidavit to determine whether it is consistent with the requirements of the statute and rules (*e.g.*, whether it is signed, whether it was filed at an appropriate time, and whether the §15 claims are properly set forth).

When a §15 affidavit complies with the requirements of the statute and rules, the USPTO updates its records to acknowledge receipt of the affidavit and sends a notice of acknowledgment to the owner of the registration. Acknowledging receipt of the affidavit provides notice to the public that an affidavit of incontestability has been filed; it is not a determination by the USPTO that the registration is in fact incontestable. The question of whether the registration is incontestable is determined by a court in a proceeding involving the mark.

If the §15 affidavit does not comply with the statute and rules, the USPTO issues a written action notifying the registrant of any inconsistency or error, but does not require correction. The USPTO does *not* update its records to acknowledge receipt of a noncompliant affidavit. The registrant has the option of filing a new §15 affidavit, with a new filing fee.

A fee is required for each class in the registration to which the §15 affidavit or declaration pertains. 37 C.F.R. §§2.6 and 2.167(g). If insufficient fees are included with the affidavit, the examiner will issue an Office action allowing applicant additional time to submit the required fees. 37 C.F.R. §2.167(g).

The limitation of grounds that a third party can raise in a petition to cancel a registered mark under 15 U.S.C. §1064 filed more than five years from the date of registration does *not* depend on the filing of a §15 affidavit. **TMEP §1605.06.**

*See* **TMEP §1605.05** regarding a combined affidavit or declaration under §§8 and 15 of the Act, and **TMEP §1216.02** regarding the effect of "incontestability" in *ex parte* examination.

## 1605.01 Registrations to Which §15 Affidavit Pertains

The provisions of §15 of the Trademark Act apply only to registrations issued on the Principal Register under the Act of 1946 and to registrations issued under the Acts of 1905 and 1881 that have been "published" under §12(c) of the Act. *See* **TMEP §1603** regarding §12(c).

A §15 affidavit may be filed for a registered extension of protection of an international registration to the United States. Section 73 of the Trademark Act, 15 U.S.C. §1141m.

Section 15 affidavits may not be filed for marks registered on the Supplemental Register of the Act of 1946, marks registered under the Act of 1920, or marks

registered under the Acts of 1905 and 1881 for which the benefits of the Act of 1946 have not been claimed under §12(c). If a §15 affidavit is filed for a registration that is not eligible for the benefits of §15, the USPTO will not review it and will refund the filing fee.

## 1605.02 Form for Filing Affidavit of Incontestability

To expedite processing, it is recommended that the owner file the §15 affidavit through TEAS, available at **http://www.uspto.gov/teas/index.html**. When the affidavit is submitted electronically, TEAS almost immediately displays a "TEAS almost immediately displays a "Success" page that confirms receipt. This page is evidence of filing should any question arise as to the filing date of the affidavit, and it may be printed or copy-and-pasted into an electronic record for storage. TEAS also separately sends an e-mail acknowledgement of receipt, which includes a summary of the filed information.

Alternatively, the owner can call the Trademark Assistance Center at (571) 272-9250 or (800) 786-9199 to obtain a pre-printed form that can be mailed, faxed or hand-delivered to the USPTO.

## 1605.03 Time for Filing Affidavit of Incontestability

A §15 affidavit may not be filed until the federally registered mark has been in continuous use in commerce for at least five consecutive years after the date of registration. This may be any five-year period after the date of registration for marks registered under the Act of 1946, or after the date of publication under §12(c) for marks registered under the Acts of 1905 and 1881.

The registrant may file the affidavit within one year after the five-year period that is selected. 37 C.F.R. §2.167(f). The affidavit must be both executed and filed within that one-year period. If the affidavit is filed too early, the USPTO will not review it and will refund the filing fee. A new affidavit, with a fee, can be submitted during the statutory filing period.

Under 37 C.F.R. §2.195(a)(2), an affidavit filed through TEAS is considered to have been filed on the date the USPTO receives the transmission, regardless of whether that date is a Saturday, Sunday, or Federal holiday within the District of Columbia.

If the affidavit is filed on paper, the owner may use certificate of mailing or certificate of facsimile transmission procedures to avoid lateness. *See* **TMEP §§305.02** and **306.05.**

*See* **TMEP §1605.05** regarding a combined affidavit under §§8 and 15 of the Act.

3

**1605.04 Requirements for Affidavit or Declaration of Incontestability**

Section 15 of the Act refers to the affidavit or declaration merely as "setting forth" the specified information. *See* 15 U.S.C. §1065(3). Therefore, no showing or proof beyond the owner's verified statement is required.

*Must be Filed by Owner.* In order to be effective, the §15 affidavit or declaration must be filed by the person who is the owner of the registration at the time the affidavit is filed. If the affidavit was filed by the wrong party, the true owner may file a new affidavit, with a new filing fee.

*Fee.* A fee is required for each class in the registration to which the §15 affidavit or declaration pertains. *See* 37 C.F.R. §§2.6 and 2.167(g). If insufficient fees are included with the affidavit, the examiner will issue an Office action allowing applicant additional time to submit the required fees. 37 C.F.R. §2.167(g).

*Goods/Services Must be Recited.* The §15 affidavit must specify the goods or services recited in the registration on or in connection with which the mark has been in continuous use for the five-year period after the date of registration or publication under §12(c), and is still in use in commerce. 15 U.S.C. §1065(3); 37 C.F.R. §2.167(c). More than one affidavit may be filed at different times for different goods/services in the same registration.

*Mark Must be in Use in Commerce.* Regardless of the basis for registration, the use on which the §15 affidavit is based must be use in commerce. This applies to foreign as well as domestic registrants. It is not necessary to specify the type of commerce (*e.g.,* interstate) in which the mark is used. The USPTO presumes that someone who states that the mark is in use in commerce is stating that the mark is in use in a type of commerce that the United States Congress can regulate, unless there is contradictory evidence in the record. *See* **TMEP §§901 *et seq.*** regarding use in commerce.

*No Adverse Decision or Pending Proceeding Involving Rights in the Mark.* The §15 affidavit must state that there has been no final decision adverse to the owner's claim of ownership of the mark for the goods or services, or to the owner's right to register the mark or to keep the mark on the register. It must also state that there is no proceeding involving these rights pending in the USPTO or in a court and not finally disposed of. 15 U.S.C. §§1065(1) - 1065(3); 37 C.F.R. §§2.167(d) and (e). If the USPTO finds facts contrary to either of the foregoing statements, the USPTO will not acknowledge receipt of the §15 affidavit. *See* **TMEP §1605.** (The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a §15 affidavit.)

If the USPTO finds that there is a proceeding pending that involves the owner's right to register the mark or to keep the mark on the register, the USPTO will not acknowledge the affidavit, even if the proceeding was instituted after the owner filed the §15 affidavit but before the affidavit was reviewed by the examiner. If a pending proceeding is later dismissed, the owner may file a new affidavit, with a new filing fee.

*Verification.* The §15 affidavit must be signed and verified (sworn to) or supported by a declaration under 37 C.F.R. §2.20 by a person properly authorized to sign on behalf of the owner of the registration. A "person who is properly authorized to sign on behalf of the owner" is: (1) a person with legal authority to bind the owner; (2) a person with firsthand knowledge of the facts and actual or implied authority to act on behalf of the owner; or (3) an attorney as defined in 37 C.F.R. §10.1(c) who has an actual written or verbal power of attorney or an implied power of attorney from the owner. Generally, the USPTO does not question the authority of the person who signs a §15 affidavit, unless there is an inconsistency in the record as to the signatory's authority to sign.

*See* **TMEP §804.05** regarding signature of electronically filed affidavits or declarations.

*Affidavit May not be Amended or Corrected.* The owner may not amend or correct a §15 affidavit, but may file a new affidavit.

## 1605.05 Combining §15 Affidavit with §8 Affidavit

Under 37 C.F.R. §2.168(a), the affidavit or declaration filed under §15 of the Act may be combined with the affidavit or declaration required by §8 of the Act, if the combined affidavit or declaration meets the requirements of both §§8 and 15.

The filing fee for the combined §8 and §15 affidavit or declaration is the sum of the cost of the individual filings. For example, if the filing fee for the §8 affidavit is $100 per class, and the filing fee for the §15 affidavit is $200 per class, then the filing fee for the combined affidavit or declaration under §§8 and 15 is $300 per class.

If the combined §8 and §15 affidavit is filed during the §8 grace period, the grace period surcharge per class for the §8 affidavit must be paid. There is no grace period surcharge for a §15 affidavit.

If a combined §8 and §15 affidavit is filed, and the §8 affidavit is deficient, the deficiency may be corrected before expiration of the relevant deadline set forth in §8 of the Act for no fee, or after expiration of the relevant deadline with the deficiency surcharge required by §8(c)(2) of the Act. *See* **TMEP §§1604.17** *et seq.* for information about the procedures, deadlines, and surcharge for

correcting deficiencies in a §8 affidavit. There is no deficiency surcharge for a §15 affidavit.

To expedite processing, it is recommended that the owner file the combined §8 and §15 affidavit through TEAS, available at **http://www.uspto.gov/teas/index.html**. When the combined affidavit is submitted electronically, TEAS almost immediately displays a "Success" page that confirms receipt. This page is evidence of filing should any question arise as to the filing date of the affidavit, and it may be printed or copy-and-pasted into an electronic record for storage. TEAS also separately sends an e-mail acknowledgement of receipt, which includes a summary of the filed information. Alternatively, the owner can call the Trademark Assistance Center at (571) 272-9250 or (800) 786-9199 to obtain a pre-printed form that can be mailed, faxed or hand-delivered to the USPTO.

## 1605.06 Section 14 Limitation is Independent of §15 Affidavit

Section 14 of the Trademark Act, 15 U.S.C. §1064, limits the grounds that a third party can raise in a petition to cancel a mark registered on the Principal Register when the petition is filed more than five years from the date of registration or publication under §12(c). This limitation of grounds does *not* depend on the filing of a §15 affidavit. ***Trademark Trial and Appeal Board Manual of Procedure*** ("TBMP") §307.02(b).

# EXHIBIT M

# U.S. DEPARTMENT OF COMMERCE
# Patent and Trademark Office
# Washington, DC 20231

## TRADEMARK MANUAL OF EXAMINING PROCEDURE
### First Edition

### Instructions Regarding Revision No. 7

The attached revision pages constitute a consolidated edition. All revisions, including Revision 7, have been consolidated with the first edition. These revision pages replace all existing Manual pages.

The notation "[R–7]" in the attached pages appears at the title of a new or revised section. The attached "pink pages" summarize the changes to the Manual.

The text of the Manual reflects the amendments to the Trademark Rules of Practice (37 CFR § 2.1 *et seq.*) through August 1986 and the Trademark Act of 1946 (15 U.S.C. 1051 *et seq.*) through January 1986. Chapters 1200 and 1300 have been completely rewritten and updated. The Manual has been changed to incorporate the substance of the 1984 and 1985 Examination Guides, with the addition of the 1986 Examination Guide concerning Letter of Protest procedures. Other changes in Office practice and relevant case law through January 1986 are also incorporated.

Carlisle E. Walters
Editor, Trademark Manual
of Examining Procedure

**a**

Particular attention is called to the following sections:

| TMEP SECTION | CHANGE |
|---|---|
| Table of Contents | Headings revised or added as appropriate. |
| Introduction | Typographical errors are corrected, reference to Part 4 of Title 37 is deleted and reference to the new Part 10 of Title 37 is inserted; reference to Examination Guides is added under Commissioner's Orders and Notices section. |
| 101 | Insert amended statutory definition of trademark. |
| 102 | Insert amended statutory definition of service mark. |
| 103 | Include statutory cite and additional TMEP references. |
| 104 | Include statutory cites and additional TMEP references. |
| 106 | Include statutory cites and corrected TMEP reference. |
| 202.03(c) | Correct TMEP reference. |
| 202.03(d) | Correct TMEP reference. |
| 602 | Delete Rule 2.12 and substitute Rule 10.14 therefor. |
| 602.01 | Delete outdated rationale for requiring a power of attorney; specify individual attorneys. |
| 602.02 | Delete reference to Rule 2.13 and related practice and substitute reference to Rule 10.15 and 10.20. |
| 602.02(a) | NEW SECTION that references new Rule 10.18. |
| 602.03 | Indicate prior Rule 2.19 is now Rule 2.19(a). |
| 602.03(a) | NEW SECTION that elaborates on new Rule 2.19(b). |
| 603 | Delete reference to Rule 2.15 and add reference to Rule 10.14. |
| 702 | Update Rule 1.6 |
| 702.02 | Update Rule 1.10. |
| 702.03 | Update Rule 1.8. |
| 704 | Amend Item 5 to reflect the *Crocker* decision. |
| 705.01 | Delete reference to "IKE" and insert reference to "Trademark Services Division Director." |
| 705.02 | Insert reference to Section 44 issues. |
| 801 | Correct a printing error. |
| 802.03(b) | Indicate that limited partners need not be listed on the application form. |
| 803.03 | Delete improper case citation. |
| 803.04 | Indicate increased acceptable time between execution and filing of application per memorandum from Carlisle Walters of April 16, 1985. |
| 804.02 | Indicate new practice in relation to identification-of-goods final refusals per memorandum from Daniel Skoler of November 27, 1984. |
| 804.02(a) | Clarify identification of goods requirement. |
| 804.03(c) | Delete price of WIPO publication. |
| 806 | Include reference to *Crocker* decision. |
| 806.01 | Reflect *Crocker* decision. |
| 806.02 | Insert TMEP cross-references and statutory cites. |
| 806.04 | Clarify procedure for asserting dates of use in multi-class applications. |
| 806.05 | Insert TMEP cross-references and case cites. |
| 806.05(b) | NEW SECTION discussing territorial commerce. |

| | |
|---|---|
| 806.06 | Clarify use in commerce and delete inappropriate rule citation. |
| 807 | Clarify that photocopies are not acceptable as drawings. |
| 807.05 | Indicate that photocopies are not acceptable drawings; substitute "paralegal specialist" for "printing liaison." |
| 807.06 | Indicate that applicants should state when color is claimed as a feature of the mark. |
| 807.09(a)(i) | NEW SECTION incorporating Examination Guides No. 2–85, "Marks Comprising Telescoped Words: Drawings and Disclaimers," No. 3–85, "Compound Word Marks: Drawings and Disclaimers," and No. 5–85, "Word Marks Formed with Hyphens, Raised Periods, Asterisks, or Slashes: Drawings and Disclaimers." |
| 808 | Reflect the *Crocker* decision. |
| 808.03 | Clarify bulky specimens handling procedure. |
| 808.03(a) | NEW SECTION that incorporates Examination Guide No. 6–85, "Bulky Specimens." |
| 808.03(a)(i) | NEW SECTION that incorporates Examination Guide No. 6–85, "Bulky Specimens." |
| 808.03(b) | NEW SECTION that incorporates Examination Guide No. 6–85 "Bulky Specimens." |
| 808.03(c) | NEW SECTION that incorporates Examination Guide No. 6–85, "Bulky Specimens." |
| 808.04(d) | NEW SECTION that incorporates Examination Guide No. 6–85, "Bulky Specimens." |
| 808.06 | Correct case citation. |
| 808.09 | Reflect *Crocker* decision. |
| 808.10 | Indicate that substitute specimens must be in use on goods in commerce. |
| 810 | NEW SECTION that incorporates several Examination Guides and memoranda specifying the Examining Attorney's responsibility to prepare an application for printing in the *Official Gazette* and on the registration certificate. |
| 901.01 | Specify that "soap" is not a cosmetic within the context of the Federal Food, Drug and Cosmetic Act. |
| 902 | Indicate that the list of countries using the registration notice is not necessarily all-inclusive. |
| 902.02 | Clarify use of registration symbol practice. |
| 902.03 | Clarify procedure to be followed where fraud upon the Office is suspected. |
| 902.04 | Typographical error corrected. |
| 904.02 | NEW SECTION that incorporates part 2 of Examination Guide No. 1–84, "Disclaimer Policy regarding (1) Trade Names and (2) Apt Descriptive Terms, Generic Terms and Matter which does not Function as a Mark." |
| 904.02(c) | Clarify disclaimer practice in relation to surnames. |
| 904.03(a) | NEW SECTION that incorporates Examination Guides No. 2–85, "Marks Comprising Telescoped Words: Drawings and Disclaimers," and No. 3–85, "Compound Word Marks: Drawings and Disclaimers." |
| 904.03(b) | Incorporate Examination Guide No. 5–85, "Word Marks Formed with Hyphens, Raised Periods, Asterisks, or Slashes: Drawings and Disclaimers." |
| 904.03(f) | Incorporate Part 1 of Examination Guide No. 1–84, "Disclaimer Policy Regarding (1) Trade Names and (2) Apt Descriptive Terms, Generic Terms and Matter which does not Function as a Mark." |
| 905.04(c) | NEW SECTION that incorporates part 2 of Examination Guide No. 7–84, "Examination Procedures Related to *Official Gazette* Publication." |
| 906.01 | Clarify example concerning surnames and translations. |

c

| | |
|---|---|
| 906.02 | Incorporate Examination Guide No. 7–84, "Examination Procedures Related to *Official Gazette* Publication." |
| 907 | NEW SECTION incorporating part 3, concerning consent to register names, of Examination Guide No. 7–84, "Examination Procedures Related to *Official Gazette* Publication" and Examination Guide No. 1–85, "Inquiry Into Name or Representation of Living Individual." |
| 907.08 | Clarify current printing practice in relation to typed drawings. |
| 1002 | Correction of typographical error to indicate Section 44(d). |
| 1004.01 | New TMEP section which incorporates Examination Guide No. 4–85 entitled "Filing Dates and Section 44 Applications." |
| 1004.02 | New TMEP section which incorporates the Assistant Commissioner's policy memo of Nov. 27, 1984 concerning the *Crocker* decision. |
| 1004.03 | New TMEP section which incorporates policy memo of March 29, 1985 entitled "Refund of Filing Fees for Applications Asserting Improper Section 44(d) Claims." |
| 1005.02 | This has been amended to reflect the decision in *Crocker National Bank* v. *Canadian Imperial Bank of Commerce,* 223 USPQ 909 (TTAB 1984). |
| 1006 | Reference to TMEP section 1211.06 has been changed to reflect new TMEP section 1212.06. |
| 1010 | This has been changed to reflect proposed practice (awaiting approval) of accepting foreign entity designations and to correct error in characterization of German G.m.b.H. |
| 1011 | This has been amended for clarity and to reflect post-*Crocker* decision practice. |
| 1105.04(f) | Clarify: (a) That applicant may file a notice of appeal at the same time a request for reconsideration is filed thus preserving the right to appeal, (b) That if no new issues are raised on reconsideration the applicant has the remainder of the response period in which to comply or appeal. |
| 1105.04(g) | Add indication that amendment to register a mark on the Principal Register pursuant to Section 2(f) of the Trademark Act presents new matter for consideration which is a valid response to a final action. |
| 1105.04(h) | Clarify the distinction between the nature of a final action and the finality of that action, and, that if reconsideration does not present any new issue the applicant has the remainder of the response period in which to comply or appeal. |
| 1106.04 | Change "Assistant Examining Attorney" to "Non-signatory Examining Attorney." |
| 1106.06 | Clarify that the reason for making a 2(d) citation should always be explained; and, change existing language to indicate that subsequent Office actions correcting errors in earlier Office actions should always be a new action rather than a hand-corrected action. |
| 1106.07 | Minor grammatical change to clarify how an Examining Attorney should identify information from a computerized data base; and, to correctly identify published legal decisions. |
| 1106.08 | Change "CAFC" to "Fed. Cir." and clarify that copies of unpublished decisions or orders should be sent to applicant. |
| 1106.14 | Delete "docket clerk" and substitute "support staff supervisor." |
| 1109.02 | Insert "Martin Luther King's birthday" as a federal holiday. |
| 1109.03 | Insert language to indicate that the response period is not always reset when a paper is remailed. |

| | |
|---|---|
| 1111 | Add a paragraph to incorporate Examination Guide No. 5–84 to clarify that an applicant may respond to a written Office action by telephone in certain circumstances. |
| 1112.02(a) | Clarify that Examining Attorney should notify applicant when abandoning an application for failure to respond completely. |
| 1114.03 | Update this section to indicate that an amendment to the Supplemental Register must allege a year of lawful use in commerce. |
| 1200 | Substitute entire updated and revised chapter. |
| 1300 | Substitute entire updated and revised chapter. |
| 1502.02(b) | NEW SECTION that incorporates the memorandum from Carlisle Walters of November 16, 1983 concerning reply levels in *ex parte* appeals. |
| 1503.02 | Typographical error corrected. |
| 1503.02(b) | NEW SECTION that incorporates the memorandum from Carlisle Walters of August 19, 1985 concerning procedures for requesting jurisdiction. |
| 1503.03 | Incorporate new letter of protest procedure pursuant to Examination Guide 2–86. |
| 1603 | Indicate that affidavit must be signed by registrant. |
| 1604.03 | Incorporate the petition decision, dated April 10, 1984, *In re McDonald's Corporation,* Reg. No. 1,065,885. |
| 1607.04 | Add Rule cite. |
| 1703 | Substitute "Administrator for Trademark Operations" for "Deputy Director of the Trademark Examining Operation." |
| 1705 | Substitute "Administrator for Trademark Operations" for "Deputy Director." |
| 1802.01 | NEW SECTION that incorporates the *Official Gazette* notice appearing at 0147 TMOG 23. |
| 1900 | Revised to include statutory changes. |
| Appendix B | Updated and expanded. |
| Index | Section notations revised as appropriate. |
| List of Rules Cited | Revised as appropriate. |
| List of Decisions Cited | Listings revised or added as appropriate; format changes to conform to *A Uniform System of Citation,* Harv. L. R. Assoc. (13th ed. 1981). |

e

### Final Action of the Office

The decision of the Commissioner on a request under 37 CFR § 2.146 constitutes the final action of the Patent and Trademark Office.

At the time when there is no acceptable affidavit timely filed, no request for reconsideration by the Examiner pending, and no review had or pending by the Commissioner under 37 CFR § 2.146, the Office will send a notice to registrant indicating that the affidavit filed is insufficient and the time for filing is past. This notice constitutes the final action of the Office. In the absence of appeal within sixty days, the registration will be cancelled forthwith.

### Appeal

Actions of the Examiner on affidavits under Section 8 are not appealable to the Trademark Trial and Appeal Board.

Appeal may be taken to a court from the decision of the Commissioner. 37 CFR § 2.145; 15 U.S.C. 1071. A petition to the Commissioner for review of the action shall be a condition precedent to an appeal to or an action for review by any court. *See* 37 CFR § 2.165(d).

### Petition or Appeal Does Not Stay Time for Filing

Proceedings during which the sufficiency of an affidavit is being considered do not change the time within which an acceptable affidavit must be filed. An acceptable affidavit still must be filed within the sixth year. If an affidavit is held to be acceptable as a result of such proceedings, it is acceptable as of the date it was originally filed. If an affidavit is found to be unacceptable as a result of reconsideration, petition or appeal, after the sixth year has passed, it is not possible then to file a new affidavit.

## 1604 Affidavit of Incontestability Under Section 15 [R-5]

Section 15 of the Trademark Act of 1946, 15 U.S.C. 1065, permits certain registrants to file affidavits as to marks in certain registrations under specified circumstances whereby such marks shall be incontestable.

Each eligible registrant has the option of deciding whether or not to take advantage of these provisions. A registrant may choose to claim the benefits of incontestability and file an affidavit to that end, or he may elect to retain the registration without those benefits. The *term* of the registration, for purpose of renewal, is not affected in either event.

The Office does not examine the merits of affidavits under Section 15. If the affidavit is presented at the proper time for an eligible registration, it is placed in the file without regard to its sufficiency and the Office merely notifies the registrant that the affidavit has been placed in the file. The affidavits are inspected, however, and if an inconsistency or substantial error is observed, this fact is called to registrant's attention in the letter of notification. The Office makes no requirement for correction, and the submission of another affidavit is optional with registrant. If the error amounts to noncompliance with a statutory re-

quirement, the notation "Sec. 15 Affidavit Received" is *not* stamped on the Office copies of the registration in the trademark search room; copies are so stamped when affidavits do comply with the statutory requirements.

A fee is required for affidavits filed in accordance with Section 15. *See* 37 CFR § 2.6.

## 1604.01 Registrations to Which Affidavit Pertains

The provisions of Section 15 apply only to registrations issued on the Principal Register of the Act of 1946, and to registrations issued under the Acts of 1905 and 1881 which have been "published" in order to claim the benefits of the Act of 1946.

Specifically excluded from the provisions of Section 15 of the Trademark Act, 15 U.S.C. 1065, are marks registered on the Supplemental Register of the Act of 1946, marks registered under the Act of 1920, and marks registered under the Acts of 1905 and 1881 which have not claimed the benefits of the Act of 1946.

## 1604.02 Time of Filing the Affidavit

The affidavit may be filed after a period of 5 consecutive years in which the mark has been in continuous use. This may be any 5 year period which is subsequent to the date of registration for registrations under the Act of 1946 and subsequent to the date of filing the affidavit under Section 12(c) bringing 1905 and 1881 Act marks under the Act of 1946. 15 U.S.C. 1062.

Registrant is given one year after the 5 year period which is selected in which to file the affidavit, and the affidavit must be both executed and filed within said one year period.

Affidavits executed and filed on the anniversary dates at the beginning of the fifth and sixth years are considered to be filed within the year period and are placed in the registration files.

If an affidavit is not executed and filed within the prescribed time, or is filed for a registration which is not eligible for the benefits of Section 15, the affidavit will be returned.

## 1604.03 Requirements for the Affidavit [R-7]

Section 15 states that the specified information be merely "set forth" in the affidavit, and therefore no showing or proof beyond registrant's sworn statement (or declaration) is required.

The affidavit must give the names of the items which are listed in the registration as issued, in connection with which the mark has been continuously used for the required time. If more than one affidavit is filed for different items in the same registration, the affidavits are merely placed in the file as a matter of record.

The use on which the affidavit is based must be use in commerce. This is true for foreign as well as do-

mestic registrants, and whether registration was based on use or on foreign registration.

The affidavit must state that there has been no final decision adverse to registrant's claim of ownership of the mark for the goods or services, or to registrant's right to register the same or to keep the same on the register. It must also state that there is no proceeding which challenges these rights pending in the Patent and Trademark Office or in a court and not finally disposed of. Section 15 of the Trademark Act, 15 U.S.C. 1065. (A proceeding involving the mark in which registrant is the plaintiff, and there is no counterclaim involving registrant's rights in the mark, does not preclude acceptance of a Section 15 affidavit.) If the Office finds facts contrary to either of the foregoing statements, registrant will be notified and the search room copy of the registration will not be stamped. TMEP section 1604.

The affidavit must be filed by the person who is the owner of the registration at the time the affidavit is filed, in order to be effective.

Amendments or corrections to affidavits are not accepted for processing. Substitute affidavits are merely placed in the file if timely filed for an eligible registration.

## 1604.04 Combining Section 8 and 15 Affidavits

The affidavit under Section 15 may be combined with the affidavit under Section 8 into one document, when a registrant elects to use the first five years after registration or Section 12(c) "publication" as the five-year period of continuous use for Section 15. In that situation the selected time for filing the Section 15 affidavit coincides with the required time for filing the Section 8 affidavit.

## 1605 Renewal of Registration

*15 U.S.C. 1059.* (a) Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.

## 1605.01 Time for Filing Application for Renewal [R-6]

The application for renewal should be filed within the six months period preceding the expiration of the registration. It may not be filed prior to the six months, but there is a grace period of three months following the expiration of a registration during which an application for renewal may be filed. Such an application during the following three months is commonly called a late or delayed application to renew.

The application for renewal must be executed within the times specified for filing.

An application for renewal filed during the three months grace period is subject to payment of an additional fee, regardless of whether it was executed before or after the expiration of the registration. If deficiencies in an application to renew are cured during the three months period, the additional fee must be paid, and if a substitute application replacing an unacceptable application is filed during the three months period, the additional fee must be paid. *See* 37 CFR § 2.182.

It is acceptable to file an application for renewal on the anniversary date at the end of the twenty year period.

The six months period prior to expiration and the three months period following expiration of the registration are calendar months.

*See* section 702.02 and 37 CFR § 1.10 for "Express Mail" Procedure for avoiding lateness due to mail delay. The certificate of mailing procedure provided in TMEP section 702.03 and 37 CFR § 1.8 does not apply to applications for renewal of registration.

## 1605.01(a) Premature Filing

If the application for renewal is filed prior to the six months period preceding the expiration of the registration, it will be returned. If the application for renewal is executed prior to the six months period but is filed during the six months period, the application will also be returned.

## 1605.02 Fee for Filing Application for Renewal [R-5]

A fee is required for filing an application for renewal. The fee is determined by the number of classes in the registration for which renewal is requested. A fee for each class is required. 15 U.S.C. 1113(2); (37 CFR § 2.6). For use of international classification or prior United States classification, *see* TMEP section 1401.02.

If the application for renewal is filed during the three months grace period following expiration of the registration, there is an additional fee for each class in the registration, calculated as set forth in TMEP section 1401.02 and 1401.04.

Where the amount of the fee received on filing an application for renewal is sufficient for at least one class of goods or services but is less than the required amount because multiple classes in a registration are involved, the renewal application will not be refused on the ground that the amount of the fee was insufficient if the required additional amount of the fee is received in the Patent and Trademark Office within the time limit set forth in the notification of this defect by the Office, or if action is sought only for the number of classes equal to the number of fees submitted. *See* 37 CFR § 2.85(e).

# EXHIBIT N

DAVID J. KERA, ESQUIRE          July 31, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
- - - - - - - - - - - - - - - -+
                               |
LEVI STRAUSS & CO.,            |
                               |
            Plaintiff,         |
                               |
                               | Civil Action No.
   vs.                         | CV-0703752
                               |
ABERCROMBIE & FITCH TRADING    |
CO.,                           |
            Defendant.         |
                               |
- - - - - - - - - - - - - - - -+
```

Video Conferenced Deposition of

DAVID J. KERA, ESQUIRE

Washington, D.C.

July 31, 2008

1:30 p.m.

Job No. 22-134942

Pages 1 - 72

Reported by:  Michele E. Eddy

DAVID J. KERA, ESQUIRE        July 31, 2008

Page 35

| | | |
|---|---|---|
| 02:34:38 | 1 | ahead. |
| 02:34:39 | 2 | MR. KEYES:  I'm sorry, whenever you're |
| 02:34:40 | 3 | ready, could we just take five?  Whenever it's |
| 02:34:44 | 4 | convenient for you. |
| 02:34:45 | 5 | MS. CINCONE:  Yes.  Can I ask one more |
| 02:34:47 | 6 | question?  Then I'm happy to take a break. |
| 02:34:50 | 7 | MR. KEYES:  Yes, by all means. |
| 02:34:52 | 8 | BY MS. CINCONE: |
| 02:34:56 | 9 | Q    In your opinion, is it necessarily |
| 02:34:59 | 10 | fraudulent for a registrant to look at the language of |
| 02:35:02 | 11 | Section 1604.03 and conclude that an action that |
| 02:35:09 | 12 | involves an affirmative defense but not a counterclaim |
| 02:35:12 | 13 | does not need to be disclosed? |
| 02:35:22 | 14 | A    I think in that situation the existence of |
| 02:35:24 | 15 | the litigation should have been disclosed and the |
| 02:35:27 | 16 | failure to do so was grossly negligent. |
| 02:35:36 | 17 | MS. CINCONE:  Should we take a break? |
| 02:35:38 | 18 | MR. KEYES:  Please. |
| 02:35:38 | 19 | (A brief recess was taken.) |
| 02:47:24 | 20 | Q    Mr. Kera, before we took a break, I believe |
| 02:47:27 | 21 | you testified that, in your opinion, Levi's omission |
| 02:47:30 | 22 | of the Lois litigation from its Section 15 affidavit |
| 02:47:33 | 23 | was grossly negligent.  Is that right? |
| 02:47:36 | 24 | A    That's correct. |
| 02:47:40 | 25 | Q    Is gross negligence sufficient to support a |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE         July 31, 2008

Page 36

| | | |
|---|---|---|
| 02:47:43 | 1 | finding of fraud? |
| 02:47:44 | 2 | A    It has been at the TTAB level and I believe |
| 02:47:48 | 3 | also at the CAFC. |
| 02:47:56 | 4 | Q    I wanted to go back to the language of |
| 02:48:00 | 5 | Section 15 and make sure I understand your analysis. |
| 02:48:12 | 6 | In your opinion, is a trademark infringement action in |
| 02:48:16 | 7 | which an affirmative defense has ever been pled a |
| 02:48:21 | 8 | proceeding involving said rights within the meaning of |
| 02:48:24 | 9 | the statute? |
| 02:48:26 | 10 | A    I lost that somewhere in the middle.  Would |
| 02:48:27 | 11 | you repeat that, please? |
| 02:48:30 | 12 | MS. CINCONE:  Can the reporter read it back? |
| 02:48:50 | 13 | (Record read.) |
| 02:48:57 | 14 | A    A trademark infringement action in which no |
| 02:49:03 | 15 | affirmative defense or counterclaim has been pled, is |
| 02:49:06 | 16 | that an action involving the registration? |
| 02:49:11 | 17 | Q    I was starting with actions in which there |
| 02:49:13 | 18 | have been affirmative defenses pled but no |
| 02:49:16 | 19 | counterclaim. |
| 02:49:17 | 20 | A    Yes, that involves the registered mark, of |
| 02:49:22 | 21 | course. |
| 02:49:23 | 22 | Q    And, therefore, disclosure is required in an |
| 02:49:28 | 23 | incontestability affidavit? |
| 02:49:30 | 24 | A    Well, more likely the registrant would not |
| 02:49:33 | 25 | bother filing the Section 15, but if a Section 15 |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE          July 31, 2008

Page 43

| | | |
|---|---|---|
| 03:00:20 | 1 | questioning calls -- I don't know that the witness has |
| 03:00:22 | 2 | any foundation or knowledge to provide any |
| 03:00:24 | 3 | information.  But with that objection, go ahead. |
| 03:00:28 | 4 | A    I would have to look at the pleadings in |
| 03:00:29 | 5 | those two cases to answer that question, read the |
| 03:00:35 | 6 | complete litigation files. |
| 03:00:38 | 7 | Q    Let me ask it this way:  In your opinion, |
| 03:00:40 | 8 | for purposes of analyzing Levi's disclosure |
| 03:00:44 | 9 | obligations under Section 15, should the action |
| 03:00:48 | 10 | against Lois be treated any differently from the |
| 03:00:51 | 11 | action against Textilist? |
| 03:00:54 | 12 | A    Again, I would have to see what the |
| 03:00:55 | 13 | pleadings were in the Textilist case before the cases |
| 03:00:59 | 14 | were consolidated. |
| 03:01:21 | 15 | Q    If the affirmative defenses asserted by Lois |
| 03:01:26 | 16 | and by Textilist were the same, in that case, would |
| 03:01:32 | 17 | Levi's obligations under Section 15 be analyzed the |
| 03:01:37 | 18 | same way with regard to both actions? |
| 03:01:41 | 19 | A    Yes. |
| 03:02:00 | 20 | Q    And in that instance, assuming that the |
| 03:02:03 | 21 | affirmative defenses were the same, would you treat |
| 03:02:06 | 22 | Levi Strauss as the party in the position of a |
| 03:02:08 | 23 | plaintiff? |
| 03:02:10 | 24 | A    Yes. |
| 03:02:27 | 25 | Q    How did this case first come to your |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE        July 31, 2008

Page 62

| | | |
|---|---|---|
| 03:51:46 | 1 | judge did all the concluding after that. |
| 03:51:56 | 2 | Q    Do you know Judge Simms? |
| 03:51:58 | 3 | A    Ranni? |
| 03:52:01 | 4 | Q    Yes. |
| 03:52:01 | 5 | A    When Ranni first came to the Trademark Trial |
| 03:52:04 | 6 | & Appeal Board, I helped to train him.  He came as |
| 03:52:09 | 7 | interlocutory attorney. |
| 03:52:12 | 8 | Q    Do you have an opinion -- I'm sorry, go on. |
| 03:52:16 | 9 | A    I've known Ranni Simms probably since 1979, |
| 03:52:23 | 10 | 1980, whenever he started at the Board.  He was a |
| 03:52:26 | 11 | competent interlocutory attorney and he was a |
| 03:52:31 | 12 | competent member of the Board, Administrative |
| 03:52:35 | 13 | Trademark Judge.  I disagree with him in this case, |
| 03:52:38 | 14 | but Ranni himself was known as the great dissenter, so |
| 03:52:42 | 15 | a disagreement on a conclusion would not be unusual |
| 03:52:45 | 16 | for him. |
| 03:53:16 | 17 | Q    I just want to go back briefly and make sure |
| 03:53:19 | 18 | I'm clear on your opinions in this case.  In your |
| 03:53:22 | 19 | opinion, I believe you've already testified the |
| 03:53:26 | 20 | McDonald's decision was incorrect.  Is that right? |
| 03:53:29 | 21 | A    I think it's inconsistent with the statutory |
| 03:53:32 | 22 | law. |
| 03:53:34 | 23 | Q    And the guideline in the TMEP, Section |
| 03:53:42 | 24 | 1604.03, that was revised to conform with the |
| 03:53:45 | 25 | McDonald's opinion you claim is also -- |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE        July 31, 2008

Page 63

| | | |
|---|---|---|
| 03:53:50 | 1 | A    That is inconsistent with the statutory law. |
| 03:53:55 | 2 | Q    Are you familiar with the case of Sunrise |
| 03:53:57 | 3 | Jewelry versus Fred SA? |
| 03:54:01 | 4 | A    I read it as part of the preparation for |
| 03:54:03 | 5 | this. |
| 03:54:07 | 6 | Q    In your opinion, was that case correctly |
| 03:54:10 | 7 | cited? |
| 03:54:10 | 8 | A    I would have to refresh my recollection on |
| 03:54:12 | 9 | Sunrise.  Did I refer to it in my report? |
| 03:54:15 | 10 | Q    No. |
| 03:54:17 | 11 | A    I would have to look at it again. |
| 03:54:21 | 12 | Q    Do you have a copy there? |
| 03:54:23 | 13 | A    No, I do not. |
| 03:54:27 | 14 | MS. CINCONE:  Mike, you don't have it? |
| 03:54:29 | 15 | MR. KEYES:  No, I don't have a copy of it. |
| 03:54:31 | 16 | MS. CINCONE:  I'm sorry, this is the |
| 03:54:32 | 17 | disadvantage of doing this long distance. |
| 03:54:37 | 18 | A    Well, briefly summarize the case, it may jog |
| 03:54:41 | 19 | my recollection. |
| 03:54:45 | 20 | Q    It was a case in which the -- I have to |
| 03:54:50 | 21 | refresh my own recollection here before I -- |
| 03:54:52 | 22 | A    You have the paper in front of you.  You |
| 03:54:54 | 23 | have that advantage. |
| 03:54:56 | 24 | Q    I have it in front of me. |
| 03:55:33 | 25 | It was a case in which the defendant, a |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE          July 31, 2008

Page 67

| | | |
|---|---|---|
| 04:00:54 | 1 | opinion about it.  I'm happy to e-mail that to you if |
| 04:00:57 | 2 | that's the quickest way to get a copy. |
| 04:00:59 | 3 | MR. KEYES:  Sure, I can track it down.  I'm |
| 04:01:01 | 4 | sure I have it upstairs.  Okay.  So I guess why don't |
| 04:01:04 | 5 | we take another break and I'll go find it. |
| 04:01:07 | 6 | MS. CINCONE:  Thanks, Mike.  I'm sorry about |
| 04:01:09 | 7 | the logistical problems here. |
| 04:01:20 | 8 | (A brief recess was taken.) |
| 04:17:37 | 9 | BY MS. CINCONE: |
| 04:17:38 | 10 | Q    Mr. Kera, have you had an opportunity to |
| 04:17:39 | 11 | review the Federal Circuit's position in the Sunrise |
| 04:17:44 | 12 | case? |
| 04:17:44 | 13 | A    I have. |
| 04:17:46 | 14 | Q    And you have a copy there? |
| 04:17:47 | 15 | A    Right in front of me. |
| 04:17:50 | 16 | Q    Let me direct your attention to the last |
| 04:17:53 | 17 | paragraph of the opinion before the conclusion.  And |
| 04:17:59 | 18 | if you'll bear with me, I'm just going to read that |
| 04:18:01 | 19 | into the record.  This is after the court has dealt |
| 04:18:05 | 20 | with the issue of the petition for cancellation that |
| 04:18:10 | 21 | had already been withdrawn.  The court says, "Second, |
| 04:18:14 | 22 | the TTAB did not err in concluding that Fred made no |
| 04:18:19 | 23 | false declaration in claiming that no proceeding |
| 04:18:23 | 24 | involve the rights in the mark was pending." |
| 04:18:29 | 25 | Did I lose the reporter? |

DAVID J. KERA, ESQUIRE          July 31, 2008

Page 68

04:18:30    1              THE REPORTER:  No.  Go ahead.

04:18:30    2      BY MS. CINCONE:

04:18:37    3          Q    "At the time Fred filed the Section 15

04:18:40    4      affidavit, Al-Or and Charriol had asserted Fred's mark

04:18:47    5      in a trademark infringement suit, but the counterclaim

04:18:51    6      challenging the validity of Fred's registration had

04:18:55    7      not yet been filed.  The PTO's own rule states that,

04:18:58    8      'A proceeding involving the mark in which the

04:19:00    9      registrant is the plaintiff and there is no

04:19:02   10      counterclaim involving the registrant's rights in the

04:19:05   11      mark, does not preclude acceptance of a Section 15

04:19:09   12      affidavit.'"  TMEP Section 1604.03 at 1600-11.

04:19:19   13          A    That's the page of the manual.

04:19:24   14          Q    "Furthermore, the Lanham Act imposes no

04:19:28   15      continuing duty to update a Section 15 affidavit.  See

04:19:31   16      TMEP Section 1604 at 1600-11.  As a result, Sunrise's

04:19:39   17      arguments failed to justify overturning the TTAB's

04:19:42   18      decision on this ground."

04:19:44   19              Is that a correct reading of the court's

04:19:47   20      opinion?

04:19:47   21          A    That's a correct reading.

04:19:50   22          Q    And in your opinion, was that -- was that

04:19:55   23      case correctly decided on this issue?

04:19:59   24          A    Possibly not because I don't think that --

04:20:05   25      well, the opinion does not reflect that anyone drew

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE       July 31, 2008

Page 69

| | | |
|---|---|---|
| 04:20:08 | 1 | the CAFC's attention to the fact that the 1986 |
| 04:20:13 | 2 | revision of 1604 changed the language of that section |
| 04:20:21 | 3 | from language that was consistent and in conformity |
| 04:20:24 | 4 | with the statute and deliberately changed it to |
| 04:20:28 | 5 | language that was in words and in effect inconsistent |
| 04:20:31 | 6 | with the statute. Clearly there had to be a |
| 04:20:35 | 7 | difference between involving and challenging or the |
| 04:20:38 | 8 | section would not have been revised. |
| 04:20:40 | 9 | So the statutory language was not tracted. |
| 04:20:44 | 10 | In fact, it was contradicted by changing the language. |
| 04:20:50 | 11 | I don't think that was argued before the court. |
| 04:20:52 | 12 | Secondly, the Sunrise case did not involve a |
| 04:20:56 | 13 | question where there was an affirmative defense of |
| 04:21:00 | 14 | invalidity even without a formal change by way of a |
| 04:21:07 | 15 | counterclaim. But I think because the court |
| 04:21:09 | 16 | overlooked the fact that the amendment of 1604 or |
| 04:21:14 | 17 | revision of 1604.03 made it inconsistent with the |
| 04:21:18 | 18 | statute, that the decision probably on that ground was |
| 04:21:24 | 19 | wrong, but it was a harmless error because the case |
| 04:21:27 | 20 | was vacated and remanded to the court -- to the Board |
| 04:21:30 | 21 | for consideration of the genericness issue. |
| 04:21:39 | 22 | Q So in your opinion, the Federal Circuit was |
| 04:21:40 | 23 | wrong to follow the guidelines set out in Section |
| 04:21:46 | 24 | 1604.03 because, in your opinion, the guideline is not |
| 04:21:50 | 25 | consistent with the statutory language? |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE          July 31, 2008

Page 70

| | | |
|---|---|---|
| 04:21:51 | 1 | A    That's correct.  I mean, clearly the |
| 04:21:53 | 2 | guideline was amended so that the affect of the word |
| 04:22:00 | 3 | involve or involving was changed to make it necessary |
| 04:22:03 | 4 | to have a challenge, which is completely different.  A |
| 04:22:08 | 5 | challenge is not involving.  Involving covers a much |
| 04:22:11 | 6 | broader implication in the mark in the litigation than |
| 04:22:16 | 7 | being the subject of a challenge. |
| 04:22:23 | 8 | Q    In your opinion, is it bad faith for a |
| 04:22:26 | 9 | registrant to assume that the guideline set out in |
| 04:22:31 | 10 | Section 1604.03 is a correct interpretation of the |
| 04:22:36 | 11 | law? |
| 04:22:38 | 12 | A    I think in this case it was wrong of Levi |
| 04:22:43 | 13 | Strauss -- first of all, it never consulted TMEP or it |
| 04:22:45 | 14 | would have not have filed a premature declaration. |
| 04:22:48 | 15 | Secondly, I think that this was a case where the |
| 04:22:52 | 16 | specific situation was not covered by 1604.03 where |
| 04:22:57 | 17 | there was an affirmative defense clearly challenging |
| 04:23:01 | 18 | the right of the registrant to maintain the mark on |
| 04:23:05 | 19 | the register.  It was just not cast formally as a |
| 04:23:09 | 20 | counterclaim.  It was cast as an affirmative defense |
| 04:23:13 | 21 | with a reservation of a right to ask for further |
| 04:23:16 | 22 | equitable relief.  I think that the proper course here |
| 04:23:22 | 23 | would have been to disclose the existence of the |
| 04:23:28 | 24 | litigation to the PTO or, alternatively, to withhold |
| 04:23:36 | 25 | the filing of the Section 15 until the Lois litigation |

df39b7e0-9167-4111-9ad8-ecd3d7363a23

**EXHIBIT O**

1   Michael J. Bettinger, (State Bar No. 122196)
    Rachel R. Davidson, (State Bar No. 215517)
2   K&L GATES
    55 Second Street, Suite 1700
3   San Francisco, California 94105-3493
    Telephone: (415) 882-8200
4   Facsimile: (415) 882-8220

5   J. MICHAEL KEYES (*Pro Hac Vice*)
    K&L GATES
6   1618 West Riverside Avenue, Suite 300
    Spokane, WA 99201
7   Telephone: (509) 624-2100
    Facsimile: (509) 456-0146
8   mike.keyes@klgates.com

9   Attorneys for Defendants
    ABERCROMBIE & FITCH TRADING CO.
10

11                  UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13  LEVI STRAUSS & CO.,                    )  Case No. C 07-93752 JSW
                                           )
14                          Plaintiff,     )  **ABERCROMBIE & FITCH TRADING**
                                           )  **CO.'S RESPONSE TO LEVI STRAUSS**
15          v.                             )  **& CO.'S SECOND SET OF**
                                           )  **INTERROGATORIES**
16  ABERCROMBIE & FITCH TRADING CO.,       )
                                           )
17                          Defendant.     )
                                           )
18                                         )
                                           )
19  ─────────────────────────────────────)

20  PROPOUNDING PARTY:   Plaintiff, LEVI STRAUSS & CO.

21  RESPONDING PARTY:    Defendant, ABERCROMBIE & FITCH TRADING CO.

22  SET NO.:             Two

23         Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Abercrombie & Fitch

24  Trading Co. ("A&F") hereby responds to and submits its responses to Levi Strauss & Co.

25  ("LS&CO.") Interrogatories, Set No. Two, as follows:

26

27

28  ─────────────────────────────────────
    ABERCROMBIE & FITCH TRADING CO.'S
    RESPONSE TO LEVI STRAUSS & CO.'S
    SECOND SET OF INTERROGATORIES              1                    Printed on Recycled Paper
    Case No. C 07-93752 JSW

**PRELIMINARY STATEMENT**

As a preface to each and every Response herein, responding party A&F qualifies its response by stating that it has not yet completed its investigation of the facts relating to this matter, has not completed discovery and has not completed its preparation for trial. Consequently, A&F's responses are based on information known to it at the time of these responses. A&F may discover additional information, documents or facts that will add meaning to the facts already known, or establish new factual contentions or legal conclusions. As a result, A&F expressly reserves its right to rely on all facts, information and documents developed in discovery or otherwise to supplement, amend and/or correct any or all of its responses to LS&CO.'s interrogatories.

By making these responses, A&F does not concede that the information given is properly discoverable or admissible, and A&F reserves its right to object to the introduction of these Responses into evidence for any purpose.

**GENERAL OBJECTIONS**

A&F makes the following General Objections, and expressly incorporates them into each specific response as set forth below. The failure to refer specifically to a General Objection should not be construed as a waiver of that General Objection.

1.      A&F objects to the Interrogatories to the extent that they call for the disclosure of attorney-client communications, information obtained in anticipation of litigation, attorney work product, or information which is otherwise privileged, immune from, or outside the scope of discovery.

2.      A&F objects to the Interrogatories to the extent that they seek to impose upon A&F, requirements in excess of those imposed by Rules 26 and 33 of the Federal Rules of Civil Procedure.

3.      A&F objects to the Interrogatories to the extent that they seek information that is neither relevant to LS&CO.'s claims or defenses in this action, nor reasonably calculated to lead to the discovery of admissible evidence.

///

1    4.    A&F objects to the Interrogatories to the extent that they seek information beyond the

2 limitations on discovery imposed by Rule 26(b)(2)(i), (ii) and (iii).

3    5.    A&F objects to the Interrogatories to the extent that they seek information without

4 reference or limitation to any relevant time period.

5    6.    A&F objects to the Interrogatories to the extent that they seek confidential

6 information, commercial information, or other competitively sensitive information concerning A&F

7 or those with whom A&F does business, did business, or contemplated doing business.

8    7.    A&F objects to the Interrogatories to the extent they seek information or documents

9 that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the

10 discovery of admissible evidence.

11    8.    A&F generally objects to the Interrogatories to the extent that they purport to require

12 A&F to provide information not in its possession, custody or control.

13    9.    A&F objects to the Interrogatories to the extent that they are vague, ambiguous,

14 overly broad and/or unduly burdensome.

15    10.    A&F objects to the Interrogatories to the extent that they purport to impose upon

16 A&F the burden of furnishing information that is not available to A&F or that is equally or more

17 readily available to LS&CO.

18    11.    A&F is not making any incidental or implied admissions in its responses, except for

19 explicit facts admitted herein.  The fact that A&F has answered or objected to any interrogatory or

20 part thereof should not be taken as an admission that A&F accepts or admits the existence of any

21 facts set forth or assumed by the interrogatories, or that such answer or objection constitutes

22 admissible evidence.  The fact that A&F has answered all or part of any interrogatory is not intended

23 and shall not be construed to be a waiver of any objection.

24    12.    These responses are subject to additional knowledge of facts that may result from

25 discovery or further investigation by A&F.  Such investigation, discovery and other pretrial

26 preparation may develop additional or different information with respect to certain of the

27

28

1   Interrogatories and, accordingly, A&F expressly reserves the right to correct, clarify, amend and

2   supplement the information contained in these responses if and when A&F obtains other, or more

3   accurate, information.

4        Without waiving the foregoing objections and incorporating said objections into each

5   specific response below, as well as the additional objections set forth herein, A&F responds to

6   LS&CO.'s Second Set of Interrogatories as follows:

7                                    **RESPONSES**

8   **INTERROGATORY NO. 17:**

9        State all facts that support YOUR claim that LS&CO.'s claims for relief are barred by the

10  doctrine of waiver.

11  **RESPONSE TO INTERROGATORY NO. 17:**

12       A&F incorporates the entirety of its General Objections as though fully set forth herein.

13  Subject to the foregoing objections, A&F responds that, for more than two decades, LS&Co. has

14  embarked on a campaign of trademark enforcement that is grounded in a strategy of: (i) making

15  fraudulent misrepresentations to the Trademark Office, and perpetuating that fraud in the courts, on

16  A&F and other adverse parties; (ii) using its federally-registered and state-registered trademarks to

17  allege outrageous claims of supposed trademark infringement (typically against much smaller

18  companies) for no apparent purpose other than to stifle and snuff out otherwise legitimate

19  competition in the marketplace for denim products; (iii) taking wholly inconsistent and contradictory

20  positions regarding the scope of LS&Co.'s so-called "arcuate trademark" thereby letting some

21  "infringers" continue to "infringe" while forcing others (who have engaged in virtually identical

22  conduct) to stop their supposedly "infringing" ways; (iv) knowingly consenting to third-parties' use

23  of designs, which LS&CO. admitted were "infringing" its arcuate trademark; (v) alleging

24  infringement of the arcuate mark against companies while the same or similar "infringing" design is

25  registered with the U.S. Trademark Office as a separate mark owned by another company; and (vi)

26  consenting to and/or knowingly allowing third-party uses of designs that are more similar to the

27

28

1 arcuate mark than the accused Ruehl design.  A&F also refers LS&CO. to the allegations contained

2 in, and exhibits attached to, A&F's Counterclaims for Cancellation and A&F's Memorandum in

3 Opposition to LS&CO.'s Motion to Dismiss Counterclaims for Cancellation.  Additionally, A&F

4 responds that LS&CO. was aware of A&F's intent to use the accused design as early as December

5 2005, yet it delayed in filing suit against A&F until July 2007.  LS&CO. also failed early on to

6 notify the USPTO that it planned to object to A&F's intent to use the accused designed.  As a result

7 of the foregoing conduct, LS&CO. has waived the claims set forth in its Complaint against A&F.

8 **INTERROGATORY NO. 18:**

9    State all facts that support YOUR claim that LS&CO.'s claims for relief are barred by the

10 doctrine of estoppel.

11 **RESPONSE TO INTERROGATORY NO. 18:**

12    A&F incorporates the entirety of its General Objections as though fully set forth herein.

13 Subject to the foregoing objections, A&F responds that, for more than two decades, LS&CO. has

14 embarked on a campaign of trademark enforcement that is grounded in a strategy of: (i) making

15 fraudulent misrepresentations to the Trademark Office, and perpetuating that fraud in the courts, on

16 A&F and other adverse parties; (ii) using its federally-registered and state-registered trademarks to

17 allege outrageous claims of supposed trademark infringement (typically against much smaller

18 companies) for no apparent purpose other than to stifle and snuff out otherwise legitimate

19 competition in the marketplace for denim products; (iii) taking wholly inconsistent and contradictory

20 positions regarding the scope of LS&CO.'s so-called "arcuate trademark" thereby letting some

21 "infringers" continue to "infringe" while forcing others (who have engaged in virtually identical

22 conduct) to stop their supposedly "infringing" ways; (iv) knowingly consenting to third-parties' use

23 of designs, which LS&CO. admitted were "infringing" its arcuate trademark; (v) alleging

24 infringement of the arcuate mark against companies while the same or similar "infringing" design is

25 registered with the U.S. Trademark Office as a separate mark owned by another company; and (vi)

26 consenting to and/or knowingly allowing third-party uses of designs that are more similar to the

28

1    arcuate mark than the accused Ruehl design. A&F also refers LS&CO. to the allegations contained

2    in, and exhibits attached to, A&F's Counterclaims for Cancellation and A&F's Memorandum in

3    Opposition to LS&CO.'s Motion to Dismiss Counterclaims for Cancellation. Additionally, A&F

4    responds that LS&CO. was aware of A&F's intent to use the accused design as early as December

5    2005, yet it delayed in filing suit against A&F until July 2007. LS&CO. also failed early on to

6    notify the USPTO that it planned to object to A&F's intent to use the accused designed. As a result

7    of the foregoing conduct, LS&CO. is estopped from asserting the claims set forth in its Complaint

8    against A&F.

9    **INTERROGATORY NO. 19:**

10       State all facts that support YOUR claim that LS&CO.'s claims for relief are barred by the

11    doctrines of laches and acquiescence.

12    **RESPONSE TO INTERROGATORY NO. 19:**

13       A&F incorporates the entirety of its General Objections as though fully set forth herein.

14    Subject to the foregoing objections, A&F responds that, for more than two decades, LS&CO. has

15    embarked on a campaign of trademark enforcement that is grounded in a strategy of: (i) making

16    fraudulent misrepresentations to the Trademark Office, and perpetuating that fraud in the courts, on

17    A&F and other adverse parties; (ii) using its federally-registered and state-registered trademarks to

18    allege outrageous claims of supposed trademark infringement (typically against much smaller

19    companies) for no apparent purpose other than to stifle and snuff out otherwise legitimate

20    competition in the marketplace for denim products; (iii) taking wholly inconsistent and contradictory

21    positions regarding the scope of LS&CO.'s so-called "arcuate trademark" thereby letting some

22    "infringers" continue to "infringe" while forcing others (who have engaged in virtually identical

23    conduct) to stop their supposedly "infringing" ways; (iv) knowingly consenting to third-parties' use

24    of designs, which LS&CO. admitted were "infringing" its arcuate trademark; (v) alleging

25    infringement of the arcuate mark against companies while the same or similar "infringing" design is

26    registered with the U.S. Trademark Office as a separate mark owned by another company; and (vi)

27

28

1  consenting to and/or knowingly allowing third-party uses of designs that are more similar to the

2  arcuate mark than the accused Ruehl design.  A&F also refers LS&CO. to the allegations contained

3  in, and exhibits attached to, A&F's Counterclaims for Cancellation and A&F's Memorandum in

4  Opposition to LS&CO.'s Motion to Dismiss Counterclaims for Cancellation.  Additionally, A&F

5  responds that LS&CO. was aware of A&F's intent to use the accused design as early as December

6  2005, yet it delayed in filing suit against A&F until July 2007.  LS&CO also failed early on to notify

7  the USPTO that it planned to object to A&F's intent to use the accused designed.  As a result of the

8  foregoing conduct, LS&CO. is estopped from asserting the claims set forth in its Complaint against

9  A&F.

10  **INTERROGATORY NO. 20:**

11       State all facts that support YOUR claim that LS&CO.'s claims for relief are barred on the

12  ground that LS&CO. has consented to the acts alleged to have been performed by A&F.

13  **RESPONSE TO INTERROGATORY NO. 20:**

14       A&F incorporates the entirety of its General Objections as though fully set forth herein.

15  Subject to the foregoing objections, A&F responds that, for more than two decades, LS&CO. has

16  embarked on a campaign of trademark enforcement that is grounded in a strategy of: (i) making

17  fraudulent misrepresentations to the Trademark Office, and perpetuating that fraud in the courts, on

18  A&F and other adverse parties; (ii) using its federally-registered and state-registered trademarks to

19  allege outrageous claims of supposed trademark infringement (typically against much smaller

20  companies) for no apparent purpose other than to stifle and snuff out otherwise legitimate

21  competition in the marketplace for denim products; (iii) taking wholly inconsistent and contradictory

22  positions regarding the scope of LS&CO.'s so-called "arcuate trademark" thereby letting some

23  "infringers" continue to "infringe" while forcing others (who have engaged in virtually identical

24  conduct) to stop their supposedly "infringing" ways; (iv) knowingly consenting to third-parties' use

25  of designs, which LS&CO. admitted were "infringing" its arcuate trademark; (v) alleging

26  infringement of the arcuate mark against companies while the same or similar "infringing" design is

27

28

1    registered with the U.S. Trademark Office as a separate mark owned by another company; and (vi)

2    consenting to and/or knowingly allowing third-party uses of designs that are more similar to the

3    arcuate mark than the accused Ruehl design. A&F also refers LS&CO. to the allegations contained

4    in, and exhibits attached to, A&F's Counterclaims for Cancellation and A&F's Memorandum in

5    Opposition to LS&CO.'s Motion to Dismiss Counterclaims for Cancellation.  A&F incorporates the

6    entirety of its General Objections as though fully set forth herein.  Subject to the foregoing

7    objections, A&F responds that, for more than two decades, LS&CO. has embarked on a campaign of

8    trademark enforcement that is grounded in a strategy of: (i) making fraudulent misrepresentations to

9    the Trademark Office, and perpetuating that fraud in the courts, on A&F and other adverse parties;

10   (ii) using its federally-registered and state-registered trademarks to allege outrageous claims of

11   supposed trademark infringement (typically against much smaller companies) for no apparent

12   purpose other than to stifle and snuff out otherwise legitimate competition in the marketplace for

13   denim products; (iii) taking wholly inconsistent and contradictory positions regarding the scope of

14   LS&CO.'s so-called "arcuate trademark" thereby letting some "infringers" continue to "infringe"

15   while forcing others (who have engaged in virtually identical conduct) to stop their supposedly

16   "infringing" ways; (iv) knowingly consenting to third-parties' use of designs, which LS&CO.

17   admitted were "infringing" its arcuate trademark; (v) alleging infringement of the arcuate mark

18   against companies while the same or similar "infringing" design is registered with the U.S.

19   Trademark Office as a separate mark owned by another company; and (vi) consenting to and/or

20   knowingly allowing third-party uses of designs that are more similar to the arcuate mark than the

21   accused Ruehl design. A&F also refers LS&CO. to the allegations contained in, and exhibits

22   attached to, A&F's Counterclaims for Cancellation and A&F's Memorandum in Opposition to

23   LS&CO.'s Motion to Dismiss Counterclaims for Cancellation.  Additionally, A&F responds that

24   LS&CO. was aware of A&F's intent to use the accused design as early as December 2005, yet it

25   delayed in filing suit against A&F until July 2007.  LS&CO. also failed early on to notify the

26   USPTO that it planned to object to A&F's intent to use the accused designed.  As a result of the

27

28

conduct, LS&CO. is estopped from asserting the claims set forth in its Complaint against A&F. As a result of the foregoing conduct, LS&CO. has consented to the acts alleged in the Complaint to have been performed by A&F.

**INTERROGATORY NO. 21:**

IDENTIFY every assertion or allegation made in the LOIS LITIGATION that you claim involves LS&CO.'s right to register its ARCUATE TRADEMARK or to keep its ARCUATE TRADEMARK on the register.

**RESPONSE TO INTERROGATORY NO. 21:**

A&F objects on the grounds that the facts and information responsive to this Interrogatory are equally available to LS&CO., which has possession of all the LOIS LITIGATION pleadings, correspondence and related documents, as well as A&F's Motion for Summary Adjudication and A&F's Memorandum in Opposition to LS&CO.'s Motion to Dismiss Counterclaims for Cancellation setting forth the basis of this claim.

**INTERROGATORY NO. 22:**

Separately for each request for admission in LS&CO.'s First Set of Requests for Admission that YOU do not unequivocally admit, state what part(s) of the request for admission YOU contest or deny, explain in detail all the reasons why YOU do not admit the truth of the matter asserted, and identify all the facts support such denial.

**RESPONSE TO INTERROGATORY NO. 22:**

A&F incorporates the entirety of its General Objections as though fully set forth herein. Subject to the foregoing objections, A&F responds as follows:

Request For Admission ("RFA") No. 1: A&F has objected to this RFA on the grounds set forth in its response to this RFA.

RFA No. 5: A&F has objected to this RFA on the grounds set forth in its response to this RFA. Moreover, A&F denies the RFA on the ground that A&F does not have sufficient knowledge to confirm whether documents bates numbered LSC v. A&F 26(a) 0063 through 0093 and titled

"Lloyd's Policy" reflect the terms and conditions applicable between A&F and its insurer at the time A&F created the A&F DESIGN, a determination that may involve other documents, facts and legal principles and conclusions.

RFA No. 6: A&F has admitted that the documents bates numbered A&F RFP# 0249 through 0261 are genuine and were created and maintained by A&F in the ordinary course of business. With regard to the accuracy of the documents bates numbered A&F RFP# 0249 through 0261, A&F refers LS&CO. to the updated and supplemental financial documents produced in connection with Stacie Beaver's deposition on May 29, 2008.

RFA No. 7: As set forth in A&F's response to this RFA, the term "alternative" is vague and ambiguous in the context of this request. A&F admits, however, that RFP#1 0001 through 0034 are variations, parts and measurements of stitching designs that were reviewed by A&F.

RFA No. 8: A&F has objected to this RFA on the grounds set forth in its response to this RFA.

RFA No. 9: A&F has objected to this RFA on the grounds set forth in its response to this RFA.

RFA No. 10: A&F has objected to this RFA on the grounds set forth in its response to this RFA.

RFA No. 11: As set forth in A&F's response to this RFA, the term "alternative" is vague and ambiguous in the context of this request. A&F admits, however, that LSC v. A&F 26(a) 1122 through 117 are variations, parts and measurements of stitching designs that were reviewed by A&F.

DATED: June 2, 2008             KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

By _____
Rachel Davidson
Attorneys for Defendants
ABERCROMBIE & FITCH TRADING CO.

VERIFICATION TO FOLLOW

1

**CERTIFICATE OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

3       I am employed in the County of San Francisco, State of California.  I am over the age of 18
and not a party to the within action; my business address is 55 Second Street, Suite 1700, San

4   Francisco, CA  94105.

5       On June 2, 2008, I served the foregoing document(s) described as:

6   **ABERCROMBIE & FITCH TRADING CO.'S RESPONSE TO LEVI STRAUSS & CO.'S
SECOND SET OF INTERROGATORIES**

7

8   on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope
addressed as set forth below by the method described below:

9   Gregory S. Gilchrist, Esq.
Gia L. Cincone, Esq.

10  Townsend and Townsend
Two Embarcadero Center, 8th Floor

11  San Francisco, CA  94111
Tel:  (415) 576-0200

12  Fax: (415) 576-0300

13      [ X ]    **BY PERSONAL SERVICE)** I caused to be delivered such envelope(s) by hand to
the offices of the addressee.

14

15      [ X ]    **(BY ELECTRONIC MEANS)** I transmitted such document(s) by electronic mail to
the offices of the addressee.

16      []    **(BY OVERNIGHT DELIVERY)**  I caused such envelope(s) to be delivered to an
overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is

17  to be served in accordance with ordinary business practices.  I am "readily familiar" with the firm's
practice of collection and processing correspondence for express mailing.  Under that practice it

18  would be deposited with Federal Express on that same day with delivery fees fully prepaid at San
Francisco, California in the ordinary course of business.  I am aware that on motion of the party

19  served, service is presumed invalid if the mailing date is more than one day after date of deposit for
mailing in affidavit.

20

21      [ ]    **(BY U.S. MAIL)**  I caused such envelope(s) with postage thereon fully prepaid to be
placed in the United States mail at San Francisco, California in accordance with ordinary business

22  practices.  I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on

23  that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course
of business.  I am aware that on motion of the party served, service is presumed invalid if postal

24  cancellation date or postage meter date is more than one day after date of deposit for mailing in
affidavit.

25      Executed on June 2, 2008, at San Francisco, California.

26      I declare that I am employed in the office of a member of the bar of this Court at whose
direction this service was made.

27                                    _Kimberly Flores_
                                      Kimberly Flores

28