# EXHIBIT P

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO.: CV-07-3752 |
| v. ) | |
| ) | |
| ABERCROMBIE & FITCH ) | |
| TRADING CO., ) | |
| ) | |
| Defendant ) | |
| ) | |

### EXPERT REPORT AND OPINION

David J. Kera declares as follows:

1.    I am an attorney at law with the law firm of Oblon, Spivak, McClelland, Maier, & Neustadt, P.C., located at 1940 Duke Street, Alexandria, Virginia 22314.

2.    I am a member of the Bars of the Commonwealth of Virginia, District of Colombia, and State of New York.

3.    I have been a practicing attorney specializing in trademark law since 1956 and have specialized in trademark law in the United States, particularly practice before the United States Patent and Trademark Office, since 1965.

4.    I was an Administrative Trademark Judge of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office from October 1975 to July 1981 with a three-month break during which I was the Special Assistant to the Assistant Commissioner for Trademarks, when I made a study of the quality of trademark examination.

5.    My biographical statement is attached as Exhibit 1.

6.     A list of my expert witness cases is attached as Exhibit 2.

7.     A list of my published decisions as an Administrative Trademark Judge (then the title was Member of the Trademark Trial and Appeal Board) is attached as Exhibit 3.

8.     I have been engaged by the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP, of Spokane, Washington, to provide a report and opinion on the following issue: Did Levi Strauss & Co. commit fraud in the Patent and Trademark Office when it filed a combined declaration of use and incontestability under 15 U.S.C. § 1058 and 1065 on January 16, 1986, from which declaration Levi Strauss & Co. omitted any reference to litigation then pending in the United States District Court for the Southern District of New York between Lois Sportswear, U.S.A., Inc. and Textiles Confecciones Europas, SA versus Levi Strauss & Company, 82 Civ. 8326 (RWS) and 83 Civ. 4338 (RWS).

9.     As preparation for this report and opinion, I read the following documents:

A)     Abercrombie & Fitch's motion for summary adjudication of undisputed facts, dated March 21, 2008.

B)     J. Michael Keyes declaration dated March 21, 2008 in support of Defendant Abercrombie & Fitch Trading Co.'s motion of the same date for summary adjudication and Exhibits A through U attached to the declaration of J. Michael Keyes.

C)     Order of Honorable Jeffrey S. White, District Judge, dated April 22, 2008, granting in part and denying Plaintiff Levi Strauss & Co.'s motion to dismiss counterclaims for cancellation, reported at 2008 WL 1883529 (N.D. Cal.).

D)     Plaintiff Levi Strauss & Co.'s notice of motion and motion to dismiss counterclaim for cancellation dated April 25, 2008.

E)     Transcript of deposition of Katherine Durgin taken May 15, 2008.

2

F)      Transcript of deposition of Jean Fowler taken May 16, 2008.

G)      TARR report on Registration No. 1,139,254 (the TARR database of the USPTO provides information about the status and prosecution history of trademark applications and registrations; Trademark Manual of Examining Procedures Section 108.01), attached as Exhibit 4.

H)      Federal Register, Vol. 72, No. 147, August 1, 2007, at Page 42262, where the revision of 37 C.F.R. § 2.122(d) is published showing that the TARR reports are accepted as evidence of the status of registrations in contested proceedings before the Trademark Trial and Appeal Board, attached as Exhibit 5.

I)      Trademark Manual of Examining Procedure (TMEP), First Edition, Revision No. 6, (Dec. 1983), instruction page, page xvi, and pages 214 – 215, attached as Exhibit 6.

J)      TMEP, First Edition, January 1974, Revision January 1986, title page ii, pages 1600-7 and 1600-8, attached as Exhibit 7.

K)      TMEP, Fifth Edition, September 2007, title page, forward, pages 1600-45 and 1600-46, attached as Exhibit 8.

L)      Decisions of Federal Courts as identified in this report and opinion.

M)      Decision of Trademark Trial and Appeal Board in *Mr. Leonard, Inc. v. Jacques Leonard Couture Inc.*, 23 USPQ2d 1064 (TTAB 1992), attached as Exhibit 9.

10.     On December 14, 1982, Lois Sportswear, U.S.A., Inc. filed a complaint against Levi Strauss & Company, 82 Civ. 8326 in the United States District Court for the Southern District of New York in which Lois Sportswear requested a declaration that the use of a stitched pocket design on certain items of wearing apparel did not infringe any

trademark rights possessed by Levi Strauss and did not constitute a violation of defendant's rights under 15 U.S.C. § 1125(a) or New York State law. The declaratory judgment complaint did not identify by number any trademark registration owned by Levi Strauss & Company (Exhibit A to Keyes declaration of March 21, 2008, which will be cited as the Keyes declaration).

11.    On January 6, 1983, Levi Strauss & Company filed its answer and counterclaims in Civil Action 82 Civ. 8326 (Exhibit B to the Keyes declaration). Paragraph 32 of the answer and counterclaims pleaded that Levi Strauss was the owner of two trademark registrations issued by the United States Patent and Trademark Office: Registration No. 404,248 issued November 16, 1943 and Registration No. 1,139,254 issued September 2, 1980.

12.    On January 26, 1983, Lois Sportswear filed its answer to the counterclaims (Exhibit D to Keyes declaration). Paragraph 15 of the answer to counterclaims alleged that "defendant's [Levi Strauss] 'double arcuate mark' never functioned as a designation of source or origin and was and is, therefore, not susceptible of appropriation or protection as a trademark."

13.    Paragraph 16 of the affirmative defense alleged that Defendant's double arcuate mark "has lost whatever distinctiveness it otherwise possessed and no longer functions as a designation of source or origin with the defendant."

14.    Paragraph 17 of the affirmative defense alleged that Defendant had lost any trademark rights it otherwise possessed in that mark.

15.    The civil action that commenced with the filing of the declaratory judgment complaint on December 14, 1982 remained pending at least until September 10, 1986,

4

which was the date on which Lois Sportswear, U.S.A., Inc. and Textiles y Confecciones

Europas, SA filed Appellants' Petition for Rehearing En Banc in the United States Court

of Appeals for the Second Circuit (Exhibit O to the Keyes declaration).

16.    The appeal  before the Second Circuit was from the decision of Judge Sweet in

the Southern District of New York which granted summary judgment to Levi Strauss.

The District Court decision is reported at 631 F. Supp. 735 (S.D. N.Y. 1985).   The

District Court decision specifically identified, among other registrations, Registration No.

1,139,254, 631 F. Supp. at 737.

17.    The decision of the District Court was affirmed on August 27, 1986.  The decision

is reported at 799 F. 2d 867 (2nd Cir. 1986).

18.    The litigation between Lois Sportswear and Levi Strauss including the answer to

the counterclaim (the answer challenged the validity of the mark of Registration No.

1,139,254) was pending on the date when Levi Strauss filed its combined affidavit of use

and incontestability under 15 U.S.C. §§ 1058 and 1065 on January 16, 1986.  Levi

Strauss did not refer to the litigation in the declaration of use and incontestability.  See

Plaintiff's Motion to Dismiss Counterclaims for Cancellation, page 8.

19.    The Trademark Manual of Examining Procedure (TMEP) publishes guidelines

and procedures followed by the Examining Attorneys at the USPTO.  The TMEP also

publishes guidelines and procedures followed by other personnel at the USPTO,

including the examiners of declarations and affidavits of use and incontestability.

Affidavits and declarations differ only in the form of the verification of the truth of the

statements in the documents.  Either form of verification may be used: 15 C.F.R. § 2.20.

The examiners of declarations and affidavits of use and incontestability are not attorneys or lawyers.

20.    In January 1986, and for many years prior to January 1986 and for years following January 1986, the Patent and Trademark Office maintained lists of applications and registrations of marks that were involved in court litigation and in proceedings before the Trademark Trial and Appeal Board.   The sources of the information about registrations involved in court litigation were the reports transmitted to the Commissioner of the USPTO (the title is now "Director") by the Clerks of the United States District Courts as required by 15 U.S.C. § 1116(c).  The source of information about registrations and applications involved in proceedings before the Trademark Trial and Appeal Board was the TTAB.  The examiners of declarations and affidavits of incontestability in the USPTO checked the lists as part of the regular procedure of reviewing each affidavit or declaration of incontestability.  The examiners did not have any independent sources of information about marks involved in litigation or in TTAB proceedings.  The Trademark Act did not have any provision, and still does not have any provision, requiring clerks of state courts to report registrations involved in litigation to the Patent and Trademark Office.

21.    The practice at the USPTO has varied over the years concerning whether the existence of court litigation or a proceeding at the Trademark Trial and Appeal Board was a reason to refuse to issue an acknowledgment of a declaration or affidavit of incontestability filed pursuant to 15 U.S.C. § 1065 when the registered mark in question was pleaded by a plaintiff in court or an opposer or cancellation petitioner before the TTAB but was not attacked in a counterclaim.

22.    In the TMEP, First Edition, Revision No. 6 (Exhibit 6), Section 1604.03 stated that the affidavit "must also state that there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of, and 'proceeding' has been interpreted to mean Registrant being in position either of plaintiff or defendant."

23.    In the TMEP revision of January 1986 (Exhibit 7), Section 1604.03 reads "It must also state that there is no proceeding which challenges these rights pending in the Patent and Trademark Office or in a court and not finally disposed of." Note that the word "involving" in Section 1604.03 in the December 1983 revision had been changed to "challenging" in the January 1986 revision. Section 1604.03 of the 1986 revision went on to say that "A proceeding involving a mark in which registrant is the plaintiff, and there is no counterclaim involving registrant's rights in the mark, does not preclude acceptance of a Section 15 affidavit."

24.    The change in TMEP 1604.03 resulted from a Commissioner's decision on petition, *In re Trademark Registration of McDonald's Corp.* 1984 Comm'r. Pat. LEXIS 10 (Comm'r. of Patents and Trademarks April 10, 1984. The Commissioner's decision resulted from the fact that registrants which were actively protecting their marks by filing numerous oppositions at the Trademark Trial and Appeal Board were finding it difficult to file affidavits or declarations of incontestability because the pleading of a mark in a notice of opposition resulted, under the former practice, in the refusal of the PTO to acknowledge the affidavits on the reasoning that there was the possibility that an applicant or cancellation respondent would counterclaim for cancellation of the pleaded registration. The revised language of TMEP made it the practice not to refuse

7

acknowledgement of an affidavit unless a counterclaim to cancel the registration had been filed. The revised section of the TMEP did not say that any challenge other than a counterclaim challenging the right of a registrant to keep a mark on the register would be immaterial. It was simply a procedural instruction to the examiners of the affidavits on how to treat the most common situation that arose, namely, the pleading of a registration by a party in the position of plaintiff against whom no counterclaim for cancellation had been asserted.

25.     A section in the Trademark Manual of Examining Procedure is not a rule or a regulation of the Patent and Trademark Office. It is simply an instruction about how to apply the Trademark Act and the Rules, which are codified in 37 C.F.R. The TMEP sets out guidelines and procedures. It does not have the force of law. *West Florida Seafood Inc. v. Jet Restaurants Inc.* 31 F. 3d 1122 (Fed. Cir. 1994); *In re International Flavors & Fragrances Inc.*, 183 F. 3d 1361 (Fed. Cir. 1999).

26.     In TMEP 1604.03, as revised in January 1986, and in subsequent revisions of the TMEP, there is no statement to the effect that a registrant is excused from including in an affidavit or a declaration of incontestability information that an adverse party has, in litigation, called into question the validity of a registered mark and therefore the right of the registrant to maintain the mark on the register.

27.     TMEP 1604.3 did not provide any guidance for the situation where there was pending court litigation in which a party adverse to a registrant had specifically and explicitly challenged the continued validity of the registered mark as an affirmative defense but without having cast the challenge in the form of a counterclaim for

cancellation as of the date when an affidavit of incontestability was filed by the registrant.

28.    The proper manner of informing the USPTO of the existence of a concluded petition for cancellation of a registration which was the subject of a declaration of incontestability is illustrated in *Sunrise Jewelry Mfg. Corp. v. Fred S. A.*, 175 F. 3rd 1322 (Fed. Cir. 1999), where the Federal Circuit held that the Trademark Trial and Appeal Board had correctly reasoned that the registrant had made no false statement in its representation to the PTO of the existence and withdrawal of a petition for cancellation since, at the time when the registrant filed the declaration of incontestability, it would have been reasonable to believe that no proceeding was pending in view of the previously filed withdrawal of the cancellation proceeding. 1322 F. 3d, at 1327.

29.    The proper procedure for Levi Strauss to have followed in its combined declaration of use and incontestability filed on January 16, 1986 would have been to include in the declaration a statement that litigation was pending against Lois Sportswear, that Lois Sportswear had pleaded that the mark of Registration 1,139,254 had lost validity, but that Lois Sportswear had not filed a counterclaim seeking the cancellation of the registration, that the District Court had issued judgment for Levi Strauss, and the judgment had been appealed.  Levi Strauss did not make that disclosure but remained completely silent on the subject.

30.    A material misstatement to the Patent and Trademark Office is a misstatement that would have affected the Office's action on the declaration of incontestability. *Orient Express Trading Company, Ltd. v. Federated Department Stores, Inc.*, 842 F.2d 650, 653 (2d. Cir. 1988). The material misstatement that was made by Levi Strauss was that there

9

was no pending proceeding in the Patent and Trademark Office or in a court within which there was a claim adverse to registrant's right to keep the mark of Registration No. 1,139,254 on the register. Levi Strauss knew that there was pending at that time the Lois Sportswear litigation in which Lois Sportswear had made a clear claim that the mark of Registration No. 1,139,254 was not susceptible of appropriation or protection and no longer functioned as a designation of source or origin, either of which allegations, if proven, could have resulted in the cancellation of the registration. That information, if disclosed in the affidavit of incontestability, would very probably have resulted in a refusal by the PTO to acknowledge the filing of the affidavit.

31.    At the very least, the omission from the declaration of incontestability of any reference to, or mention of, the Lois Sportswear litigation did not reflect the uncompromising candor that is required of registrants before the Patent and Trademark Office. *Orient Express,* at 653.

32.    The penalties that have been imposed by courts for withholding material information from the Patent and Trademark Office in connection with applications for registration or declarations of use or incontestability have been cancellation of the registration, or denial of the right of the registrant to rely on that registration in a proceeding, or removal of the status of incontestability.

33.    In *Robi v. Five Platters, Inc.*, 198 F.2d 1439 (9th Cir. 1990), the Court of Appeals affirmed an order of the District Court cancelling three registrations. The Court wrote, "Any false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration [citation omitted].    In

particular, filing a fraudulent incontestability affidavit provides a basis for cancelling the registration itself." 918 F.2d at 1444.

34.    In *Duffy-Mott Company, Inc. v. Cumberland Packing Company*, 424 F.2d 1095 (CCPA 1970), the Court held that a party which had filed a false declaration of incontestability precluded reliance on the registration in an opposition before the Trademark Trial and Appeal Board.    424 F.2d at 1098 – 1099.    In that case, the false affidavit of incontestability had been filed by the opposer's predecessor.

35.    The least serious sanction for filing a false declaration of incontestability has been the removal from the registration of the status and protection of incontestability.    *Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*, 2007 U.S. Dist. LEXIS 4026, United States District Court for the Middle District of Florida (June 4, 2007), a copy of which is attached as Exhibit 10; *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F. 2d 1529, 1540 – 1541 (11th Cir. 1986).    In both Estefan and Sizzler, the fatal defect in the affidavit or declaration of incontestability was an erroneous statement that there had been no decision adverse to a registrant's claim of ownership or validity of the mark and that there was no proceeding pending in which those rights were involved.

36.    In the Patent and Trademark Office, the Trademark Trial and Appeal Board has ordered the cancellation of a registration for which a fraudulent declaration of incontestability had been filed.    *Mister Leonard Inc. v. Jacques Leonard Couture Inc.*, 23 USPQ2d 1064 (TTAB 1992), attached as Exhibit 9.

37.    In light of the pendency of the Lois Sportswear v. Levi Strauss litigation on the date on which the combined affidavit of use and incontestability for Registration No. 1,139,254 was filed in the Patent and Trademark Office, the affirmative defenses pleaded

11

by Lois Sportswear that the mark of Registration No. 1,139,254 had lost distinctiveness and was not capable of indicating source or origin of products from Levi Strauss, and the complete omission from the affidavit filed by Levi Strauss of any reference to the pending Lois Sportswear litigation with the challenge to the continued validity and therefore of the right of the mark of Registration No. 1,139,254 to remain on the register, precedent, including the Robi case in the Ninth Circuit, indicates that the registration should be cancelled, denied any effect in litigation, or denied the status of being an incontestable mark.

38.    I am being compensated for my services at the rate of $650 per hour plus expenses. I have no pecuniary or financial interest in either party, and I have no pecuniary or financial interest in the final decision or result of this litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 30 , 2008.

David J. Kera

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of June, 2008, I caused a true and correct copy

of the Expert Report and Opinion of David J. Kera to be served to the following:

|  |  |
|---|---|
| _____ HAND DELIVERY | Gregory S. Gilchrist |
| ___✓___ U.S. MAIL | Gia L. Cincone |
| _____ OVERNIGHT MAIL | Townsend & Townsend and Crew LLP |
| _____ FAX TRANSMISSION | Two Embarcadero Center, Eighth Floor |
| _____ EMAIL | San Francisco, CA  94111-3834 |
|  | fax 415.576.0300 |
|  | gsfilchrist@townsend.com |
|  | glcincone@townsend.com |

# EXHIBIT 1

# DAVID J. KERA

## BIOGRAPHICAL STATEMENT

EDUCATION:

Harvard Law School,
Cambridge, Massachusetts:
Juris Doctor, June 1955

New York University,
New York, New York
Bachelor of Arts, June 1950

REGISTRATIONS
& MEMBERSHIPS:

New York State Bar

District of Columbia Bar

Virginia State Bar

United States Supreme Court

U.S. Courts of Appeals for the Second, Eleventh, District of
Columbia, and Federal Circuits

Bars of the U.S. District Courts for the Southern and Eastern
Districts of New York, District of Columbia, and Eastern District
of Virginia

American Bar Association

American Intellectual Property Law Association

International Trademark Association

Who's Who in American Law

F I C P I

EXPERIENCE:

1981-1983, Counsel for Trademarks and 1983 to date, Member of Oblon, Spivak, McClelland, Maier & Neustadt, P.C.

1975-1976 and 1977-1981: Administrative Trademark Judge, Trademark Trial and Appeal Board, U.S. Patent and Trademark Office

1976-1977: Special Assistant to Assistant Commissioner for Trademarks

1971-1975: Private practice in trademark and copyright law

1965-1971: Trademark Attorney and Assistant Trademark Counsel, Bristol-Myers Company

1955-1965: Private foreign trademark practice

EXPERT WITNESS:

Please see attached List of Expert Witness Cases

LAW SCHOOL TEACHING:

George Mason University
School of Law, Adjunct Professor, 1990 to 1997

Franklin Pierce Law Center
Visiting and Adjunct Professor, 1999, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008

LECTURER:

(1) Patent Resources Group, 1974, 1984.

(2) New York University School of Law Advanced Trademark Seminar, 1978-1982

(3) BNA-PTO Conference on Practice Before the Trademark Trial and Appeal Board, 1978 (Editor of Course Book)

(4) National Council of Patent Law Associations, 1979

(5)    P.T.O. Academy for Trademark Examiners

(6)    Illinois Institute for Continuing Legal Education, 1979

(7)    Minnesota Patent and Trademark Law Association, 1979

(8)    Washington State/Oregon Patent Law Associations, 1979, 1994

(9)    California State Bar, 1980

(10)   District of Columbia Bar, 1981

(11)   Cleveland Patent Law Association, 1982

(12)   Pittsburgh Patent Law Association, 1982

(13)   International Trademark Association (formerly United States Trademark Association) 1980, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004

(14)   University of London, Queen Mary College, 1989

(15)   Trademark World Conference (London), 1989

(16)   Franklin Pierce Law Center, Program on Trademark Litigation, 1991

(17)   Virginia State Bar, Intellectual Property Law Section Continuing Legal Education Seminar, 1992, 1995

(18)   Franklin Pierce Law Center, 1994, 1996, 1999, 2001, 2002, 2003, 2004, 2005, 2006

(19)   ALI-ABA Conference on Trademark Dilution After Victoria's Secret, 2004

(20)   Minneapolis State Bar Association, Continuing Legal Education, 2005

(21)    Colorado Bar Association, Intellectual Property
        Law Section, Contested Proceedings at the
        Trademark Trial and Appeal Board and Business
        Decisions, Denver, Colorado, July 2006

(22)    Minneapolis State Bar Association, Continuing
        Legal Education, 2008

PUBLICATIONS:

(1)    <u>Enforcing and Exploiting Trademarks</u>, Patent and
       Trademark Review, Vol. 73, Nos. 3-11 (1975)

(2)    <u>Trademark Licensing, Franchising and Antitrust
       Problems</u>, Patent Resources Group (1984)

(3)    Trademark Rules of Practice (principal author) 37
       C.F.R., Part 2 (1983)

(4)    <u>Preparing and Filing Briefs</u>, 66 TMR 141 (1976)

(5)    <u>Family of Marks</u>, 67 TMR 419 (1977)

(6)    <u>Should A Defendant Be Active or Passive</u>, 69 TMR
       159 (1979)

(7)    <u>Summary Judgment</u>, 71 TMR 59 (1981)

(8)    The Forty-Third Year of Administration of The
       Lanham Trademark Act of 1946 (developments at
       the Court of Appeals for the Federal Circuit and the
       Trademark Trial and Appeal Board), 80 TMR 591
       (1990)

(9)    The Forty-Fourth Year of Administration of the
       Lanham Trademark Act of 1946 (developments at
       the Court of Appeals for the Federal Circuit and the
       Trademark Trial and Appeal Board), 81 TMR 601
       (1991)

(10)   The Forty-Fifth Year of Administration of the
       Lanham Trademark Act of 1946 (developments at
       the Court of Appeals for the Federal Circuit and the
       Trademark Trial and Appeal Board), 82 TMR 1041
       (1992)

(11)     <u>Anti-Dilution Protection in the United States,</u>
Trademark World, July/August 1992

(12)     The Forty-Sixth Year of Administration of the
Lanham Trademark Act of 1946 (developments at
the Court of Appeals for the Federal Circuit and the
Trademark Trial and Appeal Board), 83 TMR 904
(1993)

(13)     The Forty-Seventh Year of Administration of the
Lanham Trademark Act of 1946 (developments at
the Court of Appeals for the Federal Circuit and the
Trademark Trial and Appeal Board), 84 TMR 635
(1994)

(14)     The Forty-Eighth Year of Administration of the
Lanham Trademark Act of 1946 (developments at
the Court of Appeals for the Federal Circuit and the
Trademark Trial and Appeal Board), 85 TMR 607
(1995)

(15)     Anomalies In the Trademark Act From a
Perspective of Fifty Years, 86 TMR 522 (1996)

(16)     The Forty-Ninth Year of Administration of the
Lanham Trademark Act of 1946 (developments at
the Court of Appeals for the Federal Circuit and the
Trademark Trial and Appeal Board), 86 TMR 651
(1996)

(17)     The Fiftieth Year of Administration of the Lanham
Trademark Act of 1946 (developments at the Court
of Appeals for the Federal Circuit and the
Trademark Trial and Appeal Board), 87 TMR 741
(1997)

(18)     The Fifty-First Year of Administration of the
Lanham Trademark Act of 1946 (developments at
the Court of Appeals for the Federal Circuit and the
Trademark Trial and Appeal Board), 89 TMR 1
(1999)

(19)     The Fifty-Second Year of Administration of the
         Lanham Trademark Act of 1946 (developments at
         the Court of Appeals for the Federal Circuit and the
         Trademark Trial and Appeal Board), 90 TMR 1
         (2000)

(20)     The Fifty-Third Year of Administration of the
         Lanham Trademark Act of 1946 (developments at
         the Court of Appeals for the Federal Circuit and the
         Trademark Trial and Appeal Board, 91 TMR 1
         (2001)

(21)     The Fifty-Fourth Year of Administration of the
         Lanham Trademark Act of 1946 (developments at
         the Court of Appeals for the Federal Circuit and the
         Trademark Trial and Appeal Board, 92 TMR 1
         (2002)

(22)     The Fifty-Fifth Year of Administration of the
         Lanham Trademark Act of 1946 (developments at
         the Court of Appeals for the Federal Circuit and the
         Trademark Trial and Appeal Board, 93 TMR 197
         (2003)

(23)     The Fifty-Sixth Year of Administration of the
         Lanham Trademark Act of 1946 (developments at
         the Court of Appeals for the Federal Circuit and the
         Trademark Trial and Appeal Board, 94 TMR 1
         (2004)

(24)     The Fifty-Seventh Year of Administration of the
         Lanham Trademark Act of 1946 (developments at
         the Court of Appeals for the Federal Circuit and the
         Trademark Trial and Appeal Board, 95 TMR 1
         (2005)

# EXHIBIT 2

David J. Kera
List of Expert Witness Cases As of June 26, 2008

*Soltex Polymer Corporation v. Fortex Industries, Inc.*
Civil Action No. 81-0673 (JM)
USDC ED NY
Trademark. Fraud in PTO. Use of mark. Renewal.
Testimony on behalf of Fortex 1986.

*The Corporation of Lloyd's v. Lloyd's U.S.*
Civil Action No. A-86-CA-066
USDC WD Tex (1987)
Trademark. Genericness.
No deposition. No testimony.

*Citibank, N.A., et al. v. Citytrust, et al.*
Civil Action No. 84 CIV 3786 (ILG)
USDC EDNY
Trademark. Procedures at TTAB.
Testimony on behalf of Citytrust 1988.

*Black & Decker Company v. The Hoover Company*
Civil Action No. H-87-851
USDC D. Conn.
Trademark. Configuration of goods. Functionality. Distinctiveness. Likelihood of confusion.
Preliminary injunctions.
Testimony on behalf of Hoover 1988.

*Crain Communications, Inc. v. Fairchild Publications, Inc.*
Civil Action 89-CV-60073-AA
USDC ED Mich.
Trademark. Distinctiveness. Genericness. Likelihood of confusion.
Fraud in PTO.
Deposition and testimony on behalf of Crain 1989.

*U.S. Phillips Corporation and North American Phillips Corporation v. Windmere Corporation*
*and Izumi Seimitsu Kogyo Kabushiki Kaisha*
Civil Action No. 84-2508-CIV-MARCUS
USDC SD Fla.
Trademark. Configuration of goods. Distinctiveness. Functionality. PTO practice.
Testimony on behalf of Windmere 1990.

*Intel Corporation v. Advanced Micro Devices, Inc.*
Civil Action No. C-90-20571-WAI
USDC ND Calif.
Trademark. Genericness. Likelihood of confusion.
Deposition and testimony on behalf of Intel 1991.

*Tiffany and Company v. American Hygienic Laboratories, Inc.*
Civil Action No. 89-2615-CIV-SPELLMAN
USDC SD Fla. (1991-1992)
Trademark. TTAB procedures. Differences between TTAB and District Court jurisprudence.
No deposition. No testimony.

*Peter Morton v. Hard Rock Cafe International*
Arbitration - (1992)
Scope of licensee's rights.
No deposition. No testimony.

*Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*
Civil Action No. 92-66 RRM
USDC D. Del.
Trademark. Distinctiveness. Likelihood of confusion.
Deposition and testimony on behalf of Vigoro 1992.

*Alltrade Inc. v. Uniweld Products, Inc.*
Civil Action No. 90-6507 CIV MOORE
Trademark. Practice before Trademark Trial and Appeal Board on confidential documents and transcripts.
Deposition on behalf of Uniweld Products 1992.

*The TJM Corporation v. Xerox Corporation*
Civil Action No. 92-0334
Section A Judge Schwartz
USDC ED La. (1992-1993)
Trademark. Likelihood of confusion.
No deposition. No testimony

*Frank Industries, Inc. v. Bodor Corporation*
Civil Action No. 89-CV-403222-FL
USDC ED Mich.
Trademark. Abandonment. Likelihood of confusion.
Deposition on behalf of Bodor Corporation 1993.

*Mars, Incorporated v. Leaf, Inc.*
Civil Action No. 93 Civ. 261
U.S. District Court D. Del. (1993-1994)
Trademark. Use of Trademark. Maintenance of rights.
No deposition. No testimony.

*Florida Realty, Inc. v. *Merrill Lynch Realty Operating Partnership Limited*
*succeeded by Prudential Residential Services Limited Partnerships
Civil Action No 90-8180 CIV-Paine
USDC SD Florida (1993-1994)
Patent and Trademark Office Procedures.
No deposition. No testimony.

*CUI International, Inc. v. Mespo Umbrellas Ltd.*
Civil Action No. 1-94-CV-2093-CAM
U.S. District Court ND Georgia
Testimony on behalf of Mespo 1994.
Configuration of goods - functionality, distinctiveness, likelihood of confusion. PTO practice on registration of configuration of goods.

*Cacique, Inc. v. Stella Cheese Company, Inc. et. al.*
Case No. BC081395
Superior Court of the State of California
County of Los Angeles (1995)
Trademark. Practice in Patent and Trademark Office.
No deposition. No testimony.

*Choice Hotels International, Inc. v. Choice Inn Systems, Inc., et al.*
Case No. 93-1076-CIV-ORL-19
U.S. District Court MD Florida (1995)
Trademark. Practice in Patent and Trademark Office.
Deposition on behalf of Choice Inn Systems 1995.

*Warnervision Entertainment Inc. v. Empire of Carolina Inc., et al.*
Case No. 95 CIV. 9386 (HB)
U.S. District Court SD New York (1995-96)
Trademark. Practice in Patent and Trademark Office.
Use of Trademarks. Intent-to-use applications.
No deposition. No testimony.

*Block Drug Co., Inc. v. Mölnlycke AB*
Case No. 96 CIV 9486 (HB)
USDC SD New York (1997)
No deposition. No testimony.

*Sun Life Assurance Company of Canada and Sun Life Assurance Company*
*of Canada (U.S.) v. Sunamerica Inc. and Sunamerica Life Insurance Company*
Civil Action No. 95-CV-1808-MHS
USDC ND Georgia
Trademark.
No deposition. No testimony.

*Movado Group Inc. v. Telux-Pioneer Inc.*
Civil Action No. 96-CV-5233
USDC ED New York
Trademark. Fraud in Patent and Trademark Office
No deposition (as of 1/20/00).
No testimony (as of 1/20/00).

*Aliant Communications Inc. v. Interstate Energy Corporation*
Civil Action No. 1-98-CV-80027
USDC SD Iowa Western Division
Trademark. Procedure in Patent and Trademark Office.
No deposition. No testimony.

*G.D. Searle & Co. v. Forest Laboratories Inc.*
Civil Action No. 98C-5170
USDC ND Illinois Eastern Division
Trademark. What constitutes use of a mark?
*Bona fide* use in the ordinary course of trade.
No deposition. No testimony.

*Acushnet Company v. Spalding Sports Worldwide, Inc*
Civil Action No. 00-CV-1163-DPW
USDC D Massachusetts
Trademark. Distinctiveness of Mark.
Practice on disclaimers in Patent and Trademark Office
No deposition. No testimony.

*U.S. Search, LLC v U.S. Search Com. Inc.*
Civil Action No. 00-554-A
USDC ED Virginia Alexandria Division
Trademark, Trademark Searching
No deposition. No testimony

*Charter National Bank v. Charter One Financial, Inc.*
Civil Action No. 01C0905
USDC ND Illinois Eastern Division
Trademark. Violation of 15 U.S.C. 1125 (a)
Genericness
Deposition. Testimony at hearing on motion for a preliminary injunction.

*Thomas and King, Inc. v. Ruby Tuesday, Inc.*
Civil Action No. 3:01-CV-458
USDC ED Tennessee
Service Mark.
Likelihood of confusion
No deposition. No testimony.

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*
Civil Action No.: 01-CV-11878-NG/JDG
USDC Massachusetts
Trademark.
Ownership of mark
Deposition. No testimony as of April 30, 2004.

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*
Civil Action No. 4:01CV441-5PM
USDC ND Florida Tallahassee Division
Trademark. Likelihood of confusion
No deposition. No testimony.

*3M Company v. Intertape Polymer Group, Inc., IPG (U.S.)*
*Holdings, Inc., IPG (U.S.) Inc. and Central Products*
*Company*
Civil Action No.: 03-2651 JRT/FLN
USDC Minnesota
Trademark
Propriety of trademark application prosecution
Deposition.

*Rudolph International, Inc. v. Realy's, Inc. and Michael Falley*
Civil Action No.:  SACV03-1247 AHS (MLGx)
USDC Central District of California – Southern Division
Trademark infringement action,
No deposition

*Globalaw Limited, et al v. Globalaw, Inc. et al*
Civil Action No.:  1:03CV00950 (CKK)
USDC District of Columbia
Protectability of trade name or service mark
Deposition 2005.

*Specialized Seating, Inc. v. Greenwich Industries, L.P.*
Case No. 05C1197
Federal District Court for the Northern District of Illinois
Expert Witness in Trademark Litigation
Fraud
Testimony December 2006

*HP Hood, LLC v. Smart Balance, Inc., GFA Brands, Inc.*
*and Fitness Foods, Inc.*
Federal District Court for the District of Massachusetts
Trademark Infringement Action
No deposition.  No testimony

*Pittsburgh Home and Garden Show, Inc. v. Scripps Networks, Inc.*
*and The E. W. Scripps Company* and
*Pittsburgh Home and Garden Show, Inc. v. Clubhouse Publishing, Inc.,*
*f/k/a Gulfshore Media, Inc. Curtco/GSM, LLC, Curtco Publishing, LLC,*
*Curtco Robb Media, LLC, and Curtco Media Labs, LLC*
Civil Action No. 03-1477
Federal District Court of Western District of Pennsylvania
Trademark Infringement Action

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*
Civil Action No. cv-07-3752
Federal District Court of the Northern District of California
Fraud in the United States Patent and Trademark Office

DJK/ojb    {I:\ATTY\DJK\EXPERT UPDATED JUNE 26 2008-LIS.DOC}

# EXHIBIT 3

DAVID J. KERA
TRADEMARK TRIAL AND APPEAL BOARD PUBLISHED DECISIONS

In re AGE Bodegas Unidas, S.A.
192 USPQ 326
6-30-76
Ser. No. 16,765

Allied Mills, Inc.
v.
Kal Kan Foods, Inc.
203 USPQ 390
4-23-79
Op. No. 56,023
Can. No. 11,133

American Dairy Queen Corp.
v.
Daniel
196 USPQ 630
10-18-77
Op. No. 56,909

Amer. Manufacturing Co., Inc.
v.
Phase Industries, Inc.
192 USPQ 498
8-31-76
Can. Nos. 10,519; 10,686

Amoco Oil Company
v.
Amerco, Inc.
192 USPQ 729
10-18-76
Op. Nos. 55,176; 56,401

Reconsideration denied
7-24-78
201 USPQ 126

Andrea Radio Corporation
v.
Premium Import Co., Inc.
191 USPQ 232
5-25-76
Op. No. 54,511

Angelica Corporation
v.
Collins & Aikman Corporation
192 USPQ 387
9-30-76
Op. No. 54,882

In re Arthur Holland, Inc.
192 USPQ 494
6-25-76
Ser. No. 8,965

In re Audi NSU Auto Union AG
197 USPQ 649
12-22-77
Ser. No. 2,868

In re Bausch & Lomb Inc.
206 USPQ 534
12-21-79
Ser. No. 42,112

R. C. Bigelow, Inc.
v.
Celestial Seasonings, Inc.
203 USPQ 542
4-23-79
Op. No. 58,367

Bliss & Laughlin Industries, Inc.
v.
Brookstone Company
209 USPQ 688
2-5-81
Op. No. 60,815

In re Burlington Industries, Inc.
197 USPQ 718
10-18-77
Ser. No. 463,814

E. M. Bailey Distributing Co.
v.
Petro-Vend, Inc.
207 USPQ 769
4-30-80
Can. 11,706

Bellanca Aircraft Corporation
v.
Bellanca Aircraft Engineering, Inc.
190 USPQ 158
4-30-76
Can. 10,513

In re Bliss & Laughlin Industries, Inc.
198 USPQ 127
1-27-78
Ser. No. 49,343

Blue Bell, Inc.
v.
Ben-Her Corporation
197 USPQ 178
8-25-77
Op. No. 57,197

Byk-Gulden, Inc.
v.
Trimen Laboratories, Inc.
211 USPQ 364
TTAB 1981
5-1-81
Op. No. 61,461

———
Dissent

Carling National Breweries, Inc.
v.
Wilson Distillers Limited
210 USPQ 596 (Digest)
TTAB 1980
12-1-80
Op. No. 58,707

In re Certified Burglar Alarm Systems
191 USPQ 47
3-26-76
Ser. No. 435,535

Chicken Delight, Inc.
v.
Delight Wholesale Co.
Inter: 193 USPQ 175
        7-20-76
Dec:   196 USPQ 136
        5-27-77
Recon: 197 USPQ 631
        8-25-77
Op. No. 56,931

In re Consolidated Foods Corporation
200 USPQ 477
10-30-78
Ser. No. 2,394

In re Carolyn's Candies, Inc.
206 USPQ 356
1-29-80
Ser. No. 89,777
_____
Concurring Opinion

Chase Brass & Copper Co., Inc.
v.
Special Springs, Inc.
199 USPQ 243
2-24-78
Op. No. 57,492
_____
Concurring Opinion

Columbia Broadcasting System, Inc.
v.
DeCosta
192 USPQ 453
8-31-76
Op. No. 52,531

Continental Specialties Corp.
v.
Continental Connector Corp.
192 USPQ 449
8-30-76
Op. No. 57,277

In re Cooper
196 USPQ 182
4-25-77
Ser. No. 3,827

Crown Wallcovering Corporation
v.
The Wall Paper Manufacturers, Ltd.
208 USPQ 686
11-13-80
Can. 10,955

Cumberland Packing Corp.
v.
McMahan Products, Inc.
189 USPQ 428
11-25-75
Op. No. 55,444

David Crystal, Inc.
v.
Glamorise Foundations, Inc.
189 USPQ 740
12-23-75
Op. No. 55,687

In re Dahlquist, Inc.
192 USPQ 237
6-15-76
Ser. No. 3,790

In re DC Comics, Inc.
211 USPQ 834
7-31-81
Ser. No. 56,993
Ser. No. 57,159
Ser. No. 94,029

In re Distribution Codes, Inc.
199 USPQ 508
4-18-78
Ser. No. 62,268

In re Drums, Ltd.
210 USPQ 222
2-5-81
Ser. No. 154,111
Ser. No. 154,222

Duffy-Mott Company, Inc.
v.
Borden, Inc.
201 USPQ 846
12-27-78
Op. No. 58,031

In re Dun-Donnelley Publishing
Corporation
205 USPQ 575
10-29-79
Ser. No. 81,559
_____
Affirmed w/o pub. op.
Appeal No. 80-575
(CCPA, 11-20-80)

Electro-Coatings, Inc.
v.
Precision National Corp.
204 USPQ 410
11-29-79
Op. No. 56,287


Federal Trade Commission
v.
Formica Corporation
200 USPQ 182
11-8-78
Can. No. 11,955

———
Writ denied, sub nom. Formica
Corporation v. Lefkowitz, et al
200 USPQ 641
CCPA 1979


Fischer Gesellschaft m.b.H.
v.
Molnar and Company, Inc.
203 USPQ 861
4-26-79
Can. No. 11,283


In re Francis Industries, Inc.
199 USPQ 568
5-25-78
Ser. No. 74,269


Evans Chemetics, Inc.
v.
Chemetics International Ltd.
207 USPQ 695
6-27-80
Op. No. 55,062


In re The First National Bank of Boston
199 USPQ 296
3-13-78
———
Abandonment of application same day
notice of opposition filed


In re Fisons Limited
197 USPQ 888
1-19-78
Ser. No. 10,737


The Gap Stores, Inc.
v.
Helene Curtis Industries, Inc.
201 USPQ 600
8-18-78
Op. No. 61,410

General Electric Company
v.
Graham Magnetics Inc.
197 USPQ 690
10-27-77
Op. No. 56,786

General Mills Fun Group, Inc.
v.
Tuxedo Monopoly, Inc.
204 USPQ 396
11-29-79
Op. No. 57,732

———
Dissent

In re The General Tire & Rubber Company
194 USPQ 491
3-31-77
Ser. No. 12,634

The General Tire & Rubber Co.
v.
The Gendelman Rigging & Trucking Inc.
189 USPQ 425
11-19-75
Op. No. 56,695

Geraghty Dyno-Tuned Products, Inc.
v.
Clayton Manufacturing Co.
190 USPQ 508
4-19-76
Can. Nos. 10,483; 10,506

Glamorene Products Corporation
v.
Earl Grissmer Company, Inc.
203 USPQ 1090
3-22-79
Op. No. 56,256
Can. No. 10,868

In re Goodbary Engineering Co.
197 USPQ 552
11-29-77
Ser. No. 16,705

Granny's Submarine Sandwiches, Inc.
v.
Granny's Kitchen, Inc.
199 USPQ 564
5-24-78
Can. No. 11,125

S. Gumpert Co., Inc.
v.
ITT Continental Baking Co.
191 USPQ 409
5-27-76
Op. No. 55,902

Hyde Park Footwear Co., Inc.
v.
Hampshire-Designers, Inc.
197 USPQ 639
12-30-77
Op. No. 57,663

Hydrotechnic Corporation
v.
Hydrotech International, Inc.
196 USPQ 387
6-13-77
Op. No. 56,391


Insta-Foam Products, Inc.
v.
Instapak Corporation
189 USPQ 793
2-26-76
Op. No. 54,886

———
Affirmed by unpub. decision
Pat. Appeal 76-652
CCPA 1-6-77


Interlego A.G.
v.
Ward and Sons, Inc.
211 USPQ 358
TTAB 1981
5-1-81
Op. No. 61,532


In re International Spike, Inc.
196 USPQ 447
6-17-77
Ser. No. 8,638


Jay-Zee, Inc.
v.
Hartfield-Zodys, Inc.
207 USPQ 269
2-28-80
Can. 11,642


In re Industrial Washing Machine
   Corporation
201 USPQ 953
2-14-79
Ser. No. 15,247


Interbank Card Association
v.
United States National Bank of Oregon
197 USPQ 123
10-12-77
Op. No. 56,764

———
Affirmed by unpub. decision
Pat. Appeal 78-541
CCPA 10-19-78


Intermed Communications, Inc.
v.
Chaney
197 USPQ 501
12-23-77
Op. No. 59,072


In re ITT Rayonier Inc.
208 USPQ 86
9-3-80
Ser. No. 123,726


Jerrold Electronics Corp.
v.
The Magnavox Company
199 USPQ 751
6-27-78
Op. No. 57,690

The Jim Dandy Company
v.
Siler City Mills, Inc.
209 USPQ 764
2-24-81
Op. No. 60,588


In re Jordan Industries, Inc.
210 USPQ 158
TTAB 1980
12-1-80
Ser. No. 3,523


Kay Corporation
v.
Weisfield's, Inc.
190 USPQ 565
4-22-76
Op. No. 55,078


Kellogg Company
v.
Western Family Foods, Inc.
209 USPQ 440
12-22-80
Op. No. 60,447


Jockey International, Inc.
v.
Frantti
196 USPQ 705
9-23-77
Op. No. 56,542


K2 Corporation, et al
v.
Philip Morris Incorporated
192 USPQ 174
6-15-76
Op. No. 51,439

_____
Affirmed 194 USPQ 81
CCPA 1977


Keebler Company
v.
Associated Biscuits Limited
207 USPQ 1034
6-25-80
Can. 11,497


In re Kerr-McGee Corporation
190 USPQ 204
1-28-76
Ser. Nos. 365,742; 365,743; 365,744;
365,745

Kraft, Inc.
v.
Robert W. Balin, M.D. and Sonia Balin
209 USPQ 877
2-4-81
Op. No. 59,245

_____
Affirmed w/o pub. opinion
Patent Appeal 81-574
CCPA (11-19-81)


LaMaur, Inc.
v.
The Bagwells Enterprises, Inc.
199 USPQ 601
4-27-78
Op. No. 53,633


Lasek & Miller Associates
v.
Irving Rubin & Ivan Jimenez
201 USPQ 831
12-28-78
Can. No. 10,285


In re The Library Restaurant, Inc.
194 USPQ 446
2-22-77
Ser. No. 25,047


Lacoste Alligator S.A.
v.
Everlast World's Boxing Headquarters
Corp.
204 USPQ 945
10-29-79
Op. No. 58,824


In re Landmark Communications, Inc.
204 USPQ 692
11-29-79
Ser. No. 104,170


In re Leo Quan Inc.
200 USPQ 370
9-22-78
Ser. No. 74,939


Litton Business Systems, Inc.
v.
JG Furniture Company, Inc.
188 USPQ 509
1-9-76
Can. 10,212

In re Loew's Theatres, Inc.
197 USPQ 183
11-22-77
Ser. No. 28,705

LogEtronics, Inc.
v.
Logicon-Intercomp Inc.
199 USPQ 814
6-23-78
Op. No. 57,141

---

Affirmed w/o pub. op.
Patent Appeal 78-636
CCPA 4-19-79

In re The Lucky Company
209 USPQ 422
4-30-80
Ser. No. 112,948

---

Concurring opinion

In re E. Martinoni Company
189 USPQ 589
12-15-75
Ser. No. 14,013

In re Robert L. McGinley
206 USPQ 753
12-26-79
Ser. Nos. 107,819; 107,820

---

Affirmed
211 USPQ 668
CCPA 1981

In re Medical Plastics, Inc.
192 USPQ 239
5-27-76
Ser. No. 446,978

Miles Laboratories, Inc.
v.
Whorton Pharmacal Company
199 USPQ 758
7-19-78
Op. No. 55,983

In re Samuel Moore & Company
195 USPQ 237
4-27-77
Ser. No. 27,835

National Bakers Services, Inc.
v.
Hain Pure Food Co., Inc.
207 USPQ 701
8-29-80
Op. No. 54,238

———————

Concurring opinion


In re National Presto Industries, Inc.
197 USPQ 188
11-22-77
Ser. No. 40,998


Newhoff Blumberg Inc.
v.
Romper Room Enterprises, Inc.
193 USPQ 313
8-31-76
Can. No. 10,780

———————

Civil Action dismissed with prejudice on
stipulation
9-19-77


Norton Company
v.
George N. Talbert
202 USPQ 542
3-7-79
Op. No. 57,465


Olin Corporation
v.
Hydrotreat, Inc.
210 USPQ 63
5-8-81
Op. No. 60,757


Oxy Metal Industries Corp.
v.
Transene Company, Inc.
196 USPQ 845
10-26-77
Op. No. 53,961


In re The Pennsylvania Fashion Factory,
Inc.
198 USPQ 568
3-14-78
Ser. No. 44,276

———————

Dissent
Affirmed 200 USPQ 140
CCPA 1978


In re Pepcom Industries, Inc.
192 USPQ 400
7-29-76
Ser. No. 463,451

The Plak-Shack, Inc.
v.
Continental Studios of Georgia, Inc.
204 USPQ 242
6-14-79
Op. No. 58,285

———————
Reconsideration Denied
204 USPQ 1059
9-24-79


Pneutek, Inc.
v.
George H. Scherr
211 USPQ 824
7-30-81
Op. No. 62,138


Puma-Sportschuhfabriken Rudolf
    Dassler KG
v.
Roller Derby Skate Corporation
206 USPQ 255
1-29-80
Op. Nos. 58,001; 58,002

———————
Concurring opinion


Raybestos-Manhattan, Inc.
v.
Barnes Group, Inc.
196 USPQ 37
6-13-77
Op. No. 56,836


Plus Products
v.
Natural Organics, Inc., d/b/a Nature's Plus
204 USPQ 773
8-2-79
Op. No. 55,487

———————
Reversed w/o pub. opinion
Patent Appeal 80-512
May 22, 1980


Primal Feeling Center of New England,
    Inc.
v.
Dr. Arthur Janov
201 USPQ 44
9-15-78
Can. No. 10,849


Quantor Corporation
v.
Spectrex Company
190 USPQ 45
1-22-76
Op. No. 54,726


In re Red Diamond Battery Company
203 USPQ 472
4-26-79
Ser No. 70,120

Refreshment Machinery Inc.
v.
Reed Industries, Inc.
196 USPQ 840
10-26-77
Op. Nos. 56,035; 56,118


Regent Baby Products Corp.
v.
Dundee Mills, Inc.
199 USPQ 571
5-25-78
Op. No. 58,690


In re Robert Simmons, Inc.
192 USPQ 331
9-30-76
Ser. No. 5493


Roush Bakery Products Co., Inc.
v.
Ridlen, et al
190 USPQ 445
2-26-76
Op. No. 55,779


In re Safeway Products, Inc.
192 USPQ 155
3-15-76
Ser. No. 460,197


In re Regal Rugs, Inc.
189 USPQ 495
12-12-75
Ser. No. 19,954


In re The Reuben H. Donnelley Corp.
191 USPQ 414
6-30-76
Ser. No. 452,103


Rolex Watch U.S.A., Inc.
v.
Madison Watch Co., Inc.
211 USPQ 352
3-30-81
Op. No. 61,476


Roux Laboratories, Inc.
v.
La Cade Products Company
192 USPQ 458
7-29-76
Op. No. 55,610

Affirmed 194 USPQ 542
CCPA 1977


Satinine Societa in Nome Collettivo di
S.A. e.M. Usellini
v.
P.A.B. Produits Et Appareils De Beaute
209 USPQ 958
2-23-81
Can. 11,989

Concurring opinion

In re SCM Corporation
209 USPQ 278
12-1-80
Ser. No.  136,500

Sheller-Globe Corporation
v.
Scott Paper Company
204 USPQ 329
9-20-79
Op. No.  58,667

The Sinclair Manufacturing Co.
v.
Leo Parfums de Dana, Inc.
191 USPQ 292
5-28-76
Op. No.  54,565

In re Sooner Life Insurance Company
207 USPQ 948
9-30-80
Ser. No.  102,102

St. Louis Janitor Supply Co.
v.
Abso-Clean Chemical Co.
196 USPQ 778
10-26-77
Can. Nos.  10,912;  10,913

Stagecoach Properties, Inc.
v.
Wells Fargo & Company
199 USPQ 341
4-21-78
Op. Nos.  56,762;  56,763

_____
Action for review
Judgment for defendant (opposer)
N. D. Cal. 2-27-81
Docket No. C-78-1487-WAI

Standard Brands Inc.
v.
RJR Foods, Inc.
192 USPQ 383
6-25-76
Op. NO.  54,825

In re Standard Memories, Inc.
196 USPQ 376
4-27-77
Ser No.  402,181

Szyferblatt Optical Machinery Co.
v.
Universal Shellac & Supply Co., Inc.
198 USPQ 115
1-27-78
Can.  10,966

In re Textron Inc.
188 USPQ 702
11-13-75
Ser. No.  457,181

In re Thermo Electron Corp.
190 USPQ 558
3-26-76
Ser. No.  445,325

In re U.S. Bicentennial Society
197 USPQ 905
2-15-78
Ser. No.  17,129

The Vadic Corporation
v.
E-Systems, Inc.
192 USPQ 281
8-31-76
Op. No.  55,650

Volkswagenwerk Aktiengesellschaft
v.
Clement Wheel Company, Inc.
204 USPQ 76
8-8-79
Op. No.  58,760

Weight Watchers International, Inc.
v.
Continental Scale Corporation
189 USPQ 803
12-31-75
Op. No.  56,497

Reconsideration denied
191 USPQ 236 (1976)

In re Uniform Product Code Council, Inc.
202 USPQ 618
1-26-79
Ser. No.  51,872

In re U.S. Home Corporation of Texas
201 USPQ 602
8-18-78
Ser. No.  25,153

In re Volante International Holdings
196 USPQ 188
4-25-77
Ser. No.  42,357

Volkswagenwerk Aktiengesellschaft
v.
Ridewell Corporation
201 USPQ 404
11-22-78
Op. No.  56,631

Reconsideration denied,
201 USPQ 410
2-14-79

Wells Cargo, Inc.
v.
Wells Cargo, Inc.
197 USPQ 569
8-25-77
Op. No.  58,650

Affirmed
203 USPQ 564
CCPA 1979

WestPoint –Pepperell, Inc.
v.
Borlan Industries, Inc.
191 USPQ 53
4-19-76
Op. No. 55,770


In re World Library Publications, Inc.
198 USPQ 442
2-22-78
Ser. No. 4,230

In re Wileswood, Inc.
201 USPQ 400
11-29-78
Ser. Nos. 80,564; 80,565

# EXHIBIT 4

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2008-06-27 09:07:15 ET

**Serial Number:** 73169399 <u>Assignment Information</u>          <u>Trademark Document Retrieval</u>

**Registration Number:** 1139254

**Mark**



**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2001-08-06

**Filing Date:** 1978-05-08

**Transformed into a National Application:** No

**Registration Date:** 1980-09-02

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 40S -Scanning On Demand

**Date In Location:** 2008-02-08

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. LEVI STRAUSS & CO.

**Address:**
LEVI STRAUSS & CO.
TWO EMBARCADERO CTR.
SAN FRANCISCO, CA 94106
United States

**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

**International Class:** 025
**Class Status:** Active
PANTS, JACKETS, SKIRTS, AND SHORTS
**Basis:** 1(a)
**First Use Date:** 1873-00-00
**First Use in Commerce Date:** 1873-00-00

---

## ADDITIONAL INFORMATION

**Design Search Code(s):**
**09.01.02** - Embroidery; Labels, clothing; Stitching, not on clothing pockets
**09.03.16** - Collars (clothing); Cuffs (clothing); Embroidery on clothing pockets; Pockets; Pockets, clothing with embroidery or stitching; Sleeves (clothing); Stitching on clothing pockets; Waistband (clothing)
**26.15.02** - Plain single or multiple line polygons; Polygons (plain, single line)
**26.15.13** - More than one polygon
**26.15.16** - Polygons touching or intersecting
**26.15.28** - Miscellaneous designs with overall polygon shape; Polygonal shapes (miscellaneous overall shape)
**26.17.02** - Bands, wavy; Bars, wavy; Lines, wavy; Wavy line(s), band(s) or bar(s)
**26.17.05** - Bands, horizontal; Bars, horizontal; Horizontal line(s), band(s) or bar(s); Lines, horizontal
**26.17.09** - Bands, curved; Bars, curved; Curved line(s), band(s) or bar(s); Lines, curved
**26.17.25** - Other lines, bands or bars

**Prior Registration Number(s):**
404248

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-05-30 - Notice Of Suit

2008-02-08 - Case File In TICRS

2007-04-24 - Notice Of Suit

2001-08-06 - Second renewal 10 year

Latest Status Info

2001-08-06 - Section 8 (10-year) accepted/ Section 9 granted

2000-08-24 - Combined Section 8 (10-year)/Section 9 filed

1986-04-10 - Section 8 (6-year) accepted & Section 15 acknowledged

1986-01-16 - Section 8 (6-year) and Section 15 Filed

1986-01-16 - Section 8 (6-year) and Section 15 Filed

1985-09-20 - Post Registration action mailed Section 8 & 15

1985-05-17 - Section 8 (6-year) and Section 15 Filed

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
SARAH R. FULLER
LEGAL STRATEGIES GROUP
5905 CHRISTIE AVENUE
EMERYVILLE, CA 94608-1925

## GENERAL INFORMATION

**108**        **Status Inquiries**

**108.01**        **Internet Information**

The TARR database on the USPTO website at http://tarr.uspto.gov provides detailed, up-to-the-minute information about the status and prosecution history of trademark applications and registrations. The TARR database is available 24 hours a day, 7 days a week.

**108.02**        **Personal Telephone Assistance**

If additional information regarding the status of an application or registration is required, callers may telephone the Trademark Assistance Center ("TAC") at (571) 272-9250 or (800) 786-9199 and request a status check. TAC also provides general information about the trademark registration process. TAC is open from 8:30 a.m. to 8:00 p.m. Eastern Time, Monday through Friday, except on holidays.

The Trademark Assistance Center will gladly answer questions about the application process. However, USPTO employees cannot:

- conduct trademark searches for the public (*see* TMEP §104);

- comment on the validity of registered marks (*see* TMEP §1801);

- answer questions as to whether a particular mark or type of mark is eligible for registration;

- offer legal advice or opinions about common law trademark rights, state registrations, or trademark infringement claims; or

- aid in the selection of a private trademark attorney or search firm (37 C.F.R. §2.11).

*See* TMEP Chapter 1800 regarding public inquiries about applications and registrations.

**108.03**        **Due Diligence: Duty to Monitor Status**

Trademark applicants and registrants should monitor the status of their applications or registrations in cases where a notice or action from the USPTO is expected. Inquiries regarding the status of pending matters should be made during the following time periods:

(1) During the pendency of an application, an applicant should check the status of the application every six months between the filing date of the application and issuance of a registration; and

**TRADEMARK MANUAL OF EXAMINING PROCEDURE**

(2) After filing an affidavit of use or excusable nonuse under §8 or §71 of the Trademark Act, or a renewal application under §9 of the Act, a registrant should check the status of the registration every six months until the registrant receives notice that the affidavit or renewal application has been accepted.

Should the status inquiry reveal that a paper is lost, that no action has been taken regarding correspondence that was submitted, or that some other problem exists, the applicant or registrant must promptly request corrective action. 37 C.F.R. §2.146(i). Failure to act diligently and follow up with appropriate action may result in denial of the requested relief. The USPTO may deny petitions to reactivate abandoned applications and cancelled registrations when a party fails to inquire about the status of a pending matter within a reasonable time. *See* TMEP §§1705.05 and 1714.01(d).

Written status inquiries are discouraged, because they can delay processing. Whenever possible, status inquiries should be made through the TARR database. If additional information regarding the status of an application or registration is required, callers may telephone the Trademark Assistance Center at (571) 272-9250 or (800) 786-9199.

**109          Access to Files**

*18 U.S.C. §2071. Concealment, removal, or mutilation generally.*

*(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.*

*(b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States.*

*37 C.F.R. §2.27(b). Except as provided in paragraph (e) of this section, access to the file of a particular pending application will be permitted prior to publication under §2.80 upon written request.*

*37 C.F.R. §2.27(d). Except as provided in paragraph (e) of this section, after a mark has been registered, or published for opposition, the file of the application and all proceedings relating thereto are available for public*

# EXHIBIT 5

or an answer to an interrogatory, or an admission, has been made of record by one party in accordance with the provisions of paragraph (j)(3) of this section, it may be referred to by any party for any purpose permitted by the Federal Rules of Evidence.

(8) Written disclosures or disclosed documents, requests for discovery, responses thereto, and materials or depositions obtained through the disclosure or discovery process should not be filed with the Board, except when submitted with a motion relating to disclosure or discovery, or in support of or in response to a motion for summary judgment, or under a notice of reliance, when permitted, during a party's testimony period.

■ 11. Revise paragraphs (a) and (d), and add paragraph (e), to read as follows:

§ 2.121  Assignment of times for taking testimony.

(a) The Trademark Trial and Appeal Board will issue a trial order setting a deadline for each party's required pretrial disclosures and assigning to each party its time for taking testimony. No testimony shall be taken except during the times assigned, unless by stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board. The deadlines for pretrial disclosures and the testimony periods may be rescheduled by stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board. If a motion to reschedule any pretrial disclosure deadline and/or testimony period is denied, the pretrial disclosure deadline or testimony period and any subsequent remaining periods may remain as set. The resetting of the closing date for discovery will result in the rescheduling of pretrial disclosure deadlines and testimony periods without action by any party.

*    *    *    *    *

(d) When parties stipulate to the rescheduling of a deadline for pretrial disclosures and subsequent testimony periods or to the rescheduling of the closing date for discovery and the rescheduling of subsequent deadlines for pretrial disclosures and testimony periods, a stipulation presented in the form used in a trial order, signed by the parties, or a motion in said form signed by one party and including a statement that every other party has agreed thereto, shall be submitted to the Board.

(e) A party need not disclose, prior to its testimony period, any notices of reliance it intends to file during its testimony period. However, no later than fifteen days prior to the opening of each testimony period, or on such

alternate schedule as may be provided by order of the Board, the party scheduled to present evidence must disclose the name and, if not previously provided, the telephone number and address of each witness from whom it intends to take testimony, or may take testimony if the need arises, general identifying information about the witness, such as relationship to any party, including job title if employed by a party, or, if neither a party nor related to a party, occupation and job title, a general summary or list of subjects on which the witness is expected to testify, and a general summary or list of the types of documents and things which may be introduced as exhibits during the testimony of the witness. Pretrial disclosure of a witness under this subsection does not substitute for issuance of a proper notice of examination under § 2.123(c) or § 2.124(b). If a party does not plan to take testimony from any witnesses, it must so state in its pretrial disclosure. When a party fails to make required pretrial disclosures, any adverse party or parties may have remedy by way of a motion to the Board to delay or reset any subsequent pretrial disclosure deadlines and/or testimony periods.

■ 12. Revise § 2.122(d)(1) to read as follows:

§ 2.122  Matters in evidence.

*    *    *    *    *

(d) * * *

(1) A registration of the opposer or petitioner pleaded in an opposition or petition to cancel will be received in evidence and made part of the record if the opposition or petition is accompanied by an original or photocopy of the registration prepared and issued by the United States Patent and Trademark Office showing both the current status of and current title to the registration, or by a current printout of information from the electronic database records of the USPTO showing the current status and title of the registration. For the cost of a copy of a registration showing status and title, see § 2.6(b)(4).

*    *    *    *    *

■ 13. Revise § 2.123(e)(3) to read as follows:

§ 2.123  Trial testimony in inter partes cases.

*    *    *    *    *

(e) * * *

(3) Every adverse party shall have full opportunity to cross-examine each witness. If pretrial disclosures or the notice of examination of witnesses served pursuant to paragraph (c) of this section are improper or inadequate with

respect to any witness, an adverse party may cross-examine that witness under protest while reserving the right to object to the receipt of the testimony in evidence. Promptly after the testimony is completed, the adverse party, to preserve the objection, shall move to strike the testimony from the record, which motion will be decided on the basis of all the relevant circumstances. A motion to strike the testimony of a witness for lack of proper or adequate pretrial disclosure may seek exclusion of the entire testimony, when there was no pretrial disclosure, or may seek exclusion of that portion of the testimony that was not adequately disclosed in accordance with § 2.121(e). A motion to strike the testimony of a witness for lack of proper or adequate notice of examination must request the exclusion of the entire testimony of that witness and not only a part of that testimony.

*    *    *    *    *

■ 14. Amend § 2.126 as follows:
■ A. Revise paragraph (a)(6).
■ B. Remove paragraph (b).
■ C. Redesignate paragraphs (c) and (d) as paragraphs (b) and (c), respectively.

§ 2.126  Form of submissions to the Trademark Trial and Appeal Board.

(a) * * *

(6) Exhibits pertaining to a paper submission must be filed on paper and comply with the requirements for a paper submission.

*    *    *    *    *

■ 15. Revise § 2.127(a), (c), and (e) to read as follows:

§ 2.127  Motions.

(a) Every motion must be submitted in written form and must meet the requirements prescribed in § 2.126. It shall contain a full statement of the grounds, and shall embody or be accompanied by a brief. Except as provided in paragraph (e)(1) of this section, a brief in response to a motion shall be filed within fifteen days from the date of service of the motion unless another time is specified by the Trademark Trial and Appeal Board, or the time is extended by stipulation of the parties approved by the Board, or upon motion granted by the Board, or upon order of the Board. If a motion for an extension is denied, the time for responding to the motion remains as specified under this section, unless otherwise ordered. Except as provided in paragraph (e)(1) of this section, a reply brief, if filed, shall be filed within fifteen days from the date of service of the brief in response to the motion. The time for filing a reply brief will not be

# EXHIBIT 6

Case 3:07-cv-03752-JSW     Document 126     Filed 08/15/2008     Page 55 of 80

03/18/08   09:25 FAX 619 557 5077     COURTS LIBRARY SD          @002
           Case 3:07-cv-03752-JSW     Document 62-25     Filed 03/21/2008     Page 2 of 5

# U.S. DEPARTMENT OF COMMERCE
## Patent and Trademark Office
### Washington, DC 20231

## TRADEMARK MANUAL OF EXAMINING PROCEDURE
### First Edition

### Instructions Regarding Revision No. 6.

The attached revision pages constitute a consolidated edition. All revisions, including Revision 6, have been consolidated with the first edition. These revision pages replace all existing Manual pages.

The Notation "[R–6]" in the attached pages appears at the title of a new or revised section. The attached "pink pages" summarize the changes to the Manual.

The text of the Manual reflects the amendments to the Trademark Rules of Practice through June 1983. The Manual has been changed to incorporate the substance of the 1983 series of Examination Guides.

Carlisle E. Walters
Editor, Trademark Manual
of Examining Procedure



PROPERTY OF THE UNITED STATES
RECEIVED

SEP 8 1986

LIBRARY, U.S. COURTS
SAN DIEGO, CALIFORNIA
LIBRARIAN'S OFFICE

Rev. 6; Dec. 1983

Ex. T-1

Keyes Ex. T

| 1502.03 | Withdrawal from Appeal | 1503.03 | Letter of Protest in Pending Applications |
| 1502.04 | Fee for Appeal | | tions |
| 1502.05 | Amendment After Decision on Appeal | 1503.04 | Opposition Procedure |
| 1503 | Publication and Opposition | 1503.04(a) | Filing an Opposition |
| 1503.01 | Search Immediately Prior to Publication | 1503.04(b) | Joining Persons in an Opposition |
| | tion | 1503.04(c) | Time for Opposing |
| 1503.02 | Examining Attorney's Jurisdiction | 1503.04(d) | Extension of Time to Oppose |
| 1503.02(a) | Request for Jurisdiction | 1503.04(e) | Fee for Filing Opposition |
| | | 1504 | Concurrent Use |

# Chapter 1600 Registration and Post-Registration Procedures

| 1601 | Duration of Registrations | 1604.01 | Registrations to Which Affidavit Pertains |
| 1601.01 | Act of 1946 | | tains |
| 1601.02 | Acts of 1905 and 1881 | 1604.02 | Time of Filing the Affidavit |
| 1601.03 | Act of 1920 | 1604.03 | Requirements for the Affidavit |
| 1602 | Bringing Prior Act Registrations Under | 1604.04 | Combining Sections 8 and 15 Affidavits |
| | 1946 Act, Section 12(c) | | vits |
| 1602.01 | Affidavit of Use During Sixth Year | 1605 | Renewal of Registration |
| 1602.02 | Cancellation and Incontestability | 1605.01 | Time for Filing Application for Renewal |
| 1602.03 | Notification of Registrant, and Printing | | newal |
| | of Mark in Official Gazette | 1605.01(a) | Premature Filing |
| 1603 | Affidavit of Use or Nonuse of Mark in | 1605.02 | Fee for Filing Application for Renewal |
| | Commerce Under Section 8 | | al |
| 1603.01 | Registrations to Which Affidavit Pertains | 1605.03 | Ownership, and Who May File Application for Renewal |
| | tains | | cation for Renewal |
| 1603.01(a) | Affidavit Filed When Not Required | 1605.03(a) | Change of Owner |
| 1603.02 | Notification of Affidavit Being Due | 1605.03(b) | Change of Name |
| 1603.02(a) | Giving Notice in Sixth Year Is Not | 1605.04 | Character of Use of Mark |
| | Required | 1605.05 | Showing of Use of Mark |
| 1603.03 | | 1605.06 | Showing Regarding Nonuse of Mark |
| 1603.03(a) | Premature Filing of Affidavit | 1605.07 | Change from Mark as Registered |
| 1603.04 | Fee for Filing Affidavit | 1605.08 | Goods in Application for Renewal |
| 1603.05 | Ownership, and Who May File Affidavit | 1605.09 | Foreign Applicant for Renewal |
| | vit | 1605.10 | Form of Application for Renewal |
| 1603.05(a) | Change of Owner | 1605.11 | Office Action on Application for Renewal |
| 1603.05(b) | Change of Name | | newal |
| 1603.06 | Character of Use of Mark | 1605.12 | Registrant's Recourse |
| 1603.07 | Showing of Use of Mark in Commerce | 1606 | Cancellation of Registrations |
| 1603.08 | Showing Regarding Nonuse of Mark | 1607 | Surrender or Amendment of Registrations |
| 1603.09 | Change from Mark as Registered | 1607.01 | Surrender of Registration for Cancellation |
| 1603.09(a) | Possible Amendment of Mark in | | tion |
| | Registration | 1607.02 | Amendment of Mark in Registration |
| 1603.10 | Goods in Connection with Affidavit | 1607.02(a) | Determining What Constitutes Material Alteration of Mark |
| 1603.11 | Amendment in Connection with the | | terial Alteration of Mark |
| | Affidavit | 1607.02(b) | Ways of Changing Mark |
| 1603.12 | Office Action on Affidavit | 1607.02(c) | Supporting Specimens |
| 1603.13 | Registrant's Recourse | 1607.03 | Amendment of Registration, Other |
| 1604 | Affidavit of Incontestability Under Section | | Than Mark |
| | 15 | 1607.04 | Correction of Mistake in Registration |

Ex. T-2

istrant may within six months after a refusal request reconsideration of the refusal by the Examiner giving reasons to support the request.

*Petition to Commissioner:*

A request for reconsideration shall be a condition precedent to a petition to the Commissioner to review the refusal of the affidavit or declaration unless the first action refusing the affidavit or declaration directs the registrant to petition the Commissioner for relief, in which event the petition must be filed within six months from the date of mailing of the action. See Rule 2.165(a)(2) (37 CFR § 2.165(a)(2)).

If, upon a request for reconsideration, the refusal of the affidavit or declaration is adhered to, the registrant may petition the Commissioner to review the action under Rule 2.146(a)(2) (37 CFR § 2.146(a)(2)). The petition to the Commissioner requesting review of the action adhering to the refusal of the affidavit or declaration must be filed within six months from the date of mailing of the action which adhered to the refusal. See Rule 2.165(b) (37 CFR § 2.165(b)).

*Final Action of the Office:*

The decision of the Commissioner on a request under Rule 2.146 (37 CFR § 2.146) constitutes the final action of the Patent and Trademark Office.

At the time when there is no acceptable affidavit timely filed, no request for reconsideration by the Examiner pending, and no review had or pending by the Commissioner under Rule 2.146 (37 CFR § 2.146) the Office will send a notice to registrant indicating that the affidavit filed is insufficient and the time for filing is past. This notice constitutes the final action of the Office. In the absence of appeal within sixty days, the registration will be cancelled forthwith.

*Appeal:*

Actions of the Examiner on affidavits under Section 8 are not appealable to the Trademark Trial and Appeal Board.

Appeal may be taken to a court from the decision of the Commissioner. Rule 2.145 (37 CFR § 2.145); 15 U.S.C. 1071. A petition to the Commissioner for review of the action shall be a condition precedent to an appeal to or an action for review by any court. See Rule 2.165(d) (37 CFR § 2.165).

*Petition or Appeal Does Not Stay Time for Filing:*

Proceedings during which the sufficiency of an affidavit is being considered do not change the time within which an acceptable affidavit

must be filed. An acceptable affidavit still must be filed within the sixth year. If an affidavit is held to be acceptable as a result of such proceedings, it is acceptable as of the date it was originally filed. If an affidavit is found to be unacceptable as a result of reconsideration, petition or appeal, after the sixth year has passed, it is not possible then to file a new affidavit.

**1604   Affidavit of Incontestability Under Section 15 [R–5]**

Section 15 of the Trademark Act of 1946 permits certain registrants to file affidavits as to marks in certain registrations under specified circumstances whereby such marks shall be incontestable.

Each eligible registrant has the option of deciding whether or not to take advantage of these provisions. A registrant may choose to claim the benefits of incontestability and file an affidavit to that end, or he may elect to retain the registration without those benefits. The *term* of the registration, for purpose of renewal, is not affected in either event.

The Office does not examine the merits of affidavits under Section 15. If the affidavit is presented at the proper time for an eligible registration, it is placed in the file without regard to its sufficiency and the Office merely notifies the registrant that the affidavit has been placed in the file. The affidavits are inspected, however, and if an inconsistency or substantial error is observed, this fact is called to registrant's attention in the letter of notification. The Office makes no requirement for correction, and the submission of another affidavit is optional with registrant. If the error amounts to noncompliance with a statutory requirement, the notation "Sec. 15 Affidavit Received" is *not* stamped on the Office copies of the registration in the trademark search room; copies are so stamped when affidavits do comply with the statutory requirements.

A fee is required for affidavits filed in accordance with Section 15. See Trademark Rule 2.6 (37 CFR § 2.6).

**1604.01   Registrations to Which Affidavit Pertains**

The provisions of Section 15 apply only to registrations issued on the Principal Register of the Act of 1946, and to registrations issued under the Acts of 1905 and 1881 which have been "published" in order to claim the benefits of the Act of 1946.

Ex. T-3

03/18/08  09:27 FAX 619 557 5077       COURTS LIBRARY SD                    ᖭ005
Case 3:07-cv-03752-JSW    Document 62-25    Filed 03/21/2008    Page 5 of 5

Specifically excluded from the provisions of Section 15 are marks registered on the Supplemental Register of the Act of 1946, marks registered under the Act of 1920, and marks registered under the Acts of 1905 and 1881 which have not claimed the benefits of the Act of 1946.

### 1604.02  Time of Filing the Affidavit

The affidavit may be filed after a period of 5 consecutive years in which the mark has been in continuous use. This may be any 5 year period which is subsequent to the date of registration for registrations under the Act of 1946 and subsequent to the date of filing the affidavit under Section 12(c) bringing 1905 and 1881 Act marks under the Act of 1946.

Registrant is given one year after the 5 year period which is selected in which to file the affidavit, and the affidavit must be both executed and filed within said one year period.

Affidavits executed and filed on the anniversary dates at the beginning of the fifth and sixth years are considered to be filed within the year period and are placed in the registration files.

If an affidavit is not executed and filed within the prescribed time, or is filed for a registration which is not eligible for the benefits of Section 15, the affidavit will be returned.

### 1604.03  Requirements for the Affidavit

Section 15 states that the specified information be merely "set forth" in the affidavit, and therefore no showing or proof beyond registrant's sworn statement (or declaration) is required.

The affidavit must give the names of the items which are listed in the registration as issued in connection with which the mark has been continuously used for the required time. If more than one affidavit is filed for different items in the same registration, the affidavits are merely placed in the file as a matter of record.

The use on which the affidavit is based must be use in commerce. This is true for foreign as well as domestic registrants, and whether registration was based on use or on foreign registration.

The affidavit must state that there has been no final decision adverse to registrant's claim of ownership of the mark for the goods or services, or to registrant's right to register the same or to keep the same on the register. It must also state that there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of, and "proceeding" has been interpreted to mean registrant being in position either of plaintiff or defendant.

If the Office finds facts contrary to either of the foregoing statements, registrant will be notified and the search room copy of the registration will not be stamped. TMEP section 1604.

The affidavit must be filed by the person who is the owner of the registration at the time the affidavit is filed, in order to be effective.

Amendments or corrections to affidavits are not accepted for processing. Substitute affidavits are merely placed in the file if timely filed for an eligible registration.

### 1604.04  Combining Section 8 and 15 Affidavits

The affidavit under Section 15 may be combined with the affidavit under Section 8 into one document, when a registrant elects to use the first five years after registration or Section 12(c) "publication" as the five-year period of continuous use for Section 15. In that situation the selected time for filing the Section 15 affidavit coincides with the required time for filing the Section 8 affidavit.

### 1605  Renewal of Registration

*15 U.S.C. 1059.* (a) Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.

### 1605.01  Time for Filing Application for Renewal [R-6]

The application for renewal should be filed within the six months period preceding the expiration of the registration. It may not be filed prior to the six months, but there is a grace period of three months following the expiration of a registration during which an application for renewal may be filed. Such an application during the following three months is commonly called a late or delayed application to renew.

The application for renewal must be executed within the times specified for filing.

An application for renewal filed during the three months grace period is subject to payment of an additional fee, regardless of whether it was executed before or after the expiration of the

Ex. T-4

# EXHIBIT 7

# Trademark Manual
# of
# Examining Procedure
# (TMEP)

**First Edition, January 1974**

**Latest Revision January 1986**



**U.S. DEPARTMENT OF COMMERCE  •  PATENT AND TRADEMARK OFFICE**

i

Rev. 7, Jan. 1986

Ex. U-1

*Keyes Ex U*

The Trademark Manual of Examining Procedure may be ordered, on a subscription basis, from the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402.

The Patent and Trademark Office does not handle the sale of the Manual, or the distribution of notices and revisions or changes of address of those on the subscription list. Correspondence relating to any of the above items should be sent to the Superintendent of Documents at the following address:

> Superintendent of Documents
> United States Government Printing Office
> Customer Service Section SSOS
> Washington, D.C. 20402

Orders for individual replacement pages not amounting to a complete revision of the Manual should be sent to the following address:

> Commissioner of Patents and Trademarks
> Attention: Customer Services Division
> Washington, D.C. 20231

The cost per page will be 30¢ (37 CFR § 2.6(b)).

Charges may be made to deposit accounts if the requestor is an account holder in good standing at the time the request is received. Checks or money orders should be made payable to the Commissioner of Patents and Trademarks. Requests must identify the specific pages required and the number of copies of each page.

Employees of the Patent and Trademark Office should direct their orders for the Manual, replacement pages, notices, and revisions to the Editor of the Trademark Manual.

> First Edition, January 1974
> Revision 1, January 1976
> Revision 2, January 1977
> Revision 3, January 1978
> Revision 4, January 1979
> Revision 5, December 1982
> (consolidated edition)
> Revision 6, December 1983
> (consolidated edition)
> Revision 7, January 1986
> (consolidated edition)

Rev. 7, Jan. 1986                    ii*

Ex. U-2

### Final Action of the Office

The decision of the Commissioner on a request under 37 CFR § 2.146 constitutes the final action of the Patent and Trademark Office.

At the time when there is no acceptable affidavit timely filed, no request for reconsideration by the Examiner pending, and no review had or pending by the Commissioner under 37 CFR § 2.146, the Office will send a notice to registrant indicating that the affidavit filed is insufficient and the time for filing is past. This notice constitutes the final action of the Office. In the absence of appeal within sixty days, the registration will be cancelled forthwith.

### Appeal

Actions of the Examiner on affidavits under Section 8 are not appealable to the Trademark Trial and Appeal Board.

Appeal may be taken to a court from the decision of the Commissioner. 37 CFR § 2.145; 15 U.S.C. 1071. A petition to the Commissioner for review of the action shall be a condition precedent to an appeal to or an action for review by any court. See 37 CFR § 2.165(d).

### Petition or Appeal Does Not Stay Time for Filing

Proceedings during which the sufficiency of an affidavit is being considered do not change the time within which an acceptable affidavit must be filed. An acceptable affidavit still must be filed within the sixth year. If an affidavit is held to be acceptable as a result of such proceedings, it is acceptable as of the date it was originally filed. If an affidavit is found to be unacceptable as a result of reconsideration, petition or appeal, after the sixth year has passed, it is not possible then to file a new affidavit.

## 1604 Affidavit of Incontestability Under Section 15 [R–5]

Section 15 of the Trademark Act of 1946, 15 U.S.C. 1065, permits certain registrants to file affidavits as to marks in certain registrations under specified circumstances whereby such marks shall be incontestable.

Each eligible registrant has the option of deciding whether or not to take advantage of these provisions. A registrant may choose to claim the benefits of incontestability and file an affidavit to that end, or he may elect to retain the registration without those benefits. The term of the registration, for purpose of renewal, is not affected in either event.

The Office does not examine the merits of affidavits under Section 15. If the affidavit is presented at the proper time for an eligible registration, it is placed in the file without regard to its sufficiency and the Office merely notifies the registrant that the affidavit has been placed in the file. The affidavits are inspected, however, and if an inconsistency or substantial error is observed, this fact is called to registrant's attention in the letter of notification. The Office makes no requirement for correction, and the submission of another affidavit is optional with registrant. If the error amounts to noncompliance with a statutory requirement, the notation "Sec. 15 Affidavit Received" is not stamped on the Office copies of the registration in the trademark search room; copies are so stamped when affidavits do comply with the statutory requirements.

A fee is required for affidavits filed in accordance with Section 15. See 37 CFR § 2.6.

## 1604.01 Registrations to Which Affidavit Pertains

The provisions of Section 15 apply only to registrations issued on the Principal Register of the Act of 1946, and to registrations issued under the Acts of 1905 and 1881 which have been "published" in order to claim the benefits of the Act of 1946.

Specifically excluded from the provisions of Section 15 of the Trademark Act, 15 U.S.C. 1065, are marks registered on the Supplemental Register of the Act of 1946, marks registered under the Act of 1920, and marks registered under the Acts of 1905 and 1881 which have not claimed the benefits of the Act of 1946.

## 1604.02 Time of Filing the Affidavit

The affidavit may be filed after a period of 5 consecutive years in which the mark has been in continuous use. This may be any 5 year period which is subsequent to the date of registration for registrations under the Act of 1946 and subsequent to the date of filing the affidavit under Section 12(c) bringing 1905 and 1881 Act marks under the Act of 1946. 15 U.S.C. 1062.

Registrant is given one year after the 5 year period which is selected in which to file the affidavit, and the affidavit must be both executed and filed within said one year period.

Affidavits executed and filed on the anniversary dates at the beginning of the fifth and sixth years are considered to be filed within the year period and are placed in the registration files.

If an affidavit is not executed and filed within the prescribed time, or is filed for a registration which is not eligible for the benefits of Section 15, the affidavit will be returned.

## 1604.03 Requirements for the Affidavit [R–7]

Section 15 states that the specified information be merely "set forth" in the affidavit, and therefore no showing or proof beyond registrant's sworn statement (or declaration) is required.

The affidavit must give the names of the items which are listed in the registration as issued, in connection with which the mark has been continuously used for the required time. If more than one affidavit is filed for different items in the same registration, the affidavits are merely placed in the file as a matter of record.

The use on which the affidavit is based must be use in commerce. This is true for foreign as well as do-

Ex. U-3

**1604.03**                    TRADEMARK MANUAL OF EXAMINING PROCEDURE

mestic registrants, and whether registration was based on use or on foreign registration.

The affidavit must state that there has been no final decision adverse to registrant's claim of ownership of the mark for the goods or services, or to registrant's right to register the same or to keep the same on the register. It must also state that there is no proceeding which challenges these rights pending in the Patent and Trademark Office or in a court and not finally disposed of. Section 15 of the Trademark Act, 15 U.S.C. 1065. (A proceeding involving the mark in which registrant is the plaintiff, and there is no counterclaim involving registrant's rights in the mark, does not preclude acceptance of a Section 15 affidavit.) If the Office finds facts contrary to either of the foregoing statements, registrant will be notified and the search room copy of the registration will not be stamped. TMEP section 1604.

The affidavit must be filed by the person who is the owner of the registration at the time the affidavit is filed, in order to be effective.

Amendments or corrections to affidavits are not accepted for processing. Substitute affidavits are merely placed in the file if timely filed for an eligible registration.

**1604.04 Combining Section 8 and 15 Affidavits**

The affidavit under Section 15 may be combined with the affidavit under Section 8 into one document, when a registrant elects to use the first five years after registration or Section 12(c) "publication" as the five-year period of continuous use for Section 15. In that situation the selected time for filing the Section 15 affidavit coincides with the required time for filing the Section 8 affidavit.

**1605 Renewal of Registration**

*15 U.S.C. 1059.* (a) Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.

**1605.01 Time for Filing Application for Renewal [R-6]**

The application for renewal should be filed within the six months period preceding the expiration of the registration. It may not be filed prior to the six months, but there is a grace period of three months following the expiration of a registration during which an application for renewal may be filed. Such an application during the following three months is commonly called a late or delayed application to renew.

The application for renewal must be executed within the times specified for filing.

An application for renewal filed during the three months grace period is subject to payment of an additional fee, regardless of whether it was executed before or after the expiration of the registration. If deficiencies in an application to renew are cured during the three months period, the additional fee must be paid, and if a substitute application replacing an unacceptable application is filed during the three months period, the additional fee must be paid. See 37 CFR § 2.182.

It is acceptable to file an application for renewal on the anniversary date at the end of the twenty year period.

The six months period prior to expiration and the three months period following expiration of the registration are calendar months.

*See* section 702.02 and 37 CFR § 1.10 for "Express Mail" Procedure for avoiding lateness due to mail delay. The certificate of mailing procedure provided in TMEP section 702.03 and 37 CFR § 1.8 does not apply to applications for renewal of registration.

**1605.01(a) Premature Filing**

If the application for renewal is filed prior to the six months period preceding the expiration of the registration, it will be returned. If the application for renewal is executed prior to the six months period but is filed during the six months period, the application will also be returned.

**1605.02 Fee for Filing Application for Renewal. [R-5]**

A fee is required for filing an application for renewal. The fee is determined by the number of classes in the registration for which renewal is requested. A fee for each class is required. 15 U.S.C. 1113(2); (37 CFR § 2.6). For use of international classification or prior United States classification, *see* TMEP section 1401.02.

If the application for renewal is filed during the three months grace period following expiration of the registration, there is an additional fee for each class in the registration, calculated as set forth in TMEP section 1401.02 and 1401.04.

Where the amount of the fee received on filing an application for renewal is sufficient for at least one class of goods or services but is less than the required amount because multiple classes in a registration are involved, the renewal application will not be refused on the ground that the amount of the fee was insufficient if the required additional amount of the fee is received in the Patent and Trademark Office within the time limit set forth in the notification of this defect by the Office, or if action is sought only for the number of classes equal to the number of fees submitted. *See* 37 CFR § 2.85(e).

Ex. U-4

# EXHIBIT 8

# TRADEMARK MANUAL
# OF
# EXAMINING PROCEDURE
# (TMEP)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

**Fifth Edition, September 2007**

Ex. S-1

**Foreword to the Fifth Edition**

The Trademark Manual of Examining Procedure (TMEP) may be downloaded free of charge from the United States Patent and Trademark Office (USPTO) website at www.uspto.gov.

The Manual is published to provide trademark examining attorneys in the USPTO, trademark applicants, and attorneys and representatives for trademark applicants, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. The Manual contains guidelines for Examining Attorneys and materials in the nature of information and interpretation, and outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications.

Trademark Examining Attorneys will be governed by the applicable statutes, the Trademark Rules of Practice, decisions, and Orders and Notices issued by the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, Commissioners, or Deputy Commissioners. Policies stated in this revision supersede any previous policies stated in prior editions, examination guides, or any other statement of Office policy, to the extent that there is any conflict.

Suggestions for improving the form and content of the Manual are always welcome. They should be addressed to:

> Commissioner for Trademarks
> Attention: Editor, Trademark Manual of Examining Procedure
> P.O. Box 1451
> Alexandria, Virginia 22313-1451

> Mary E. Hannon
> *Editor*

> Lynne G. Beresford
> *Commissioner for Trademarks*

September 2007

Ex. S-2

## REGISTRATION AND POST REGISTRATION PROCEDURES

### 1605.03        Time for Filing Affidavit of Incontestability

A §15 affidavit may not be filed until the federally registered mark has been in continuous use in commerce for at least five consecutive years after the date of registration. This may be any five-year period after the date of registration for marks registered under the Act of 1946, or after the date of publication under §12(c) for marks registered under the Acts of 1905 and 1881.

The registrant may file the affidavit within one year after the five-year period that is selected. 37 C.F.R. §2.167(f). The affidavit must be both executed and filed within that one-year period. If the affidavit is filed too early, the USPTO will not review it and will refund the filing fee. A new affidavit, with a fee, can be submitted during the statutory filing period.

Under 37 C.F.R. §2.195(a)(2), an affidavit filed through TEAS is considered to have been filed on the date the USPTO receives the transmission, regardless of whether that date is a Saturday, Sunday, or Federal holiday within the District of Columbia.

If the affidavit is filed on paper, the owner may use certificate of mailing or certificate of facsimile transmission procedures to avoid lateness. *See* TMEP §§305.02 and 306.05.

*See* TMEP §1605.05 regarding a combined affidavit under §§8 and 15 of the Act.

### 1605.04        Requirements for Affidavit or Declaration of Incontestability

Section 15 of the Act refers to the affidavit or declaration merely as "setting forth" the specified information. *See* 15 U.S.C. §1065(3). Therefore, no showing or proof beyond the owner's verified statement is required.

*Must be Filed by Owner.* In order to be effective, the §15 affidavit or declaration must be filed by the person who is the owner of the registration at the time the affidavit is filed. If the affidavit was filed by the wrong party, the true owner may file a new affidavit, with a new filing fee.

*Fee.* A fee is required for each class in the registration to which the §15 affidavit or declaration pertains. *See* 37 C.F.R. §§2.6 and 2.167(g). If insufficient fees are included with the affidavit, the examiner will issue an Office action allowing applicant additional time to submit the required fees. 37 C.F.R. §2.167(g).

*Goods/Services Must be Recited.* The §15 affidavit must specify the goods or services recited in the registration on or in connection with which the mark has been in continuous use for the five-year period after the date of registration or publication under §12(c), and is still in use in commerce.

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

15 U.S.C. §1065(3); 37 C.F.R. §2.167(c). More than one affidavit may be filed at different times for different goods/services in the same registration.

*Mark Must be in Use in Commerce.* Regardless of the basis for registration, the use on which the §15 affidavit is based must be use in commerce. This applies to foreign as well as domestic registrants. It is not necessary to specify the type of commerce (*e.g.,* interstate) in which the mark is used. The USPTO presumes that someone who states that the mark is in use in commerce is stating that the mark is in use in a type of commerce that the United States Congress can regulate, unless there is contradictory evidence in the record. *See* TMEP §§901 *et seq.* regarding use in commerce.

*No Adverse Decision or Pending Proceeding Involving Rights in the Mark.* The §15 affidavit must state that there has been no final decision adverse to the owner's claim of ownership of the mark for the goods or services, or to the owner's right to register the mark or to keep the mark on the register. It must also state that there is no proceeding involving these rights pending in the USPTO or in a court and not finally disposed of. 15 U.S.C. §§1065(1) - 1065(3); 37 C.F.R. §§2.167(d) and (e). If the USPTO finds facts contrary to either of the foregoing statements, the USPTO will not acknowledge receipt of the §15 affidavit. *See* TMEP §1605. (The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a §15 affidavit.)

If the USPTO finds that there is a proceeding pending that involves the owner's right to register the mark or to keep the mark on the register, the USPTO will not acknowledge the affidavit, even if the proceeding was instituted after the owner filed the §15 affidavit but before the affidavit was reviewed by the examiner. If a pending proceeding is later dismissed, the owner may file a new affidavit, with a new filing fee.

*Verification.* The §15 affidavit must be signed and verified (sworn to) or supported by a declaration under 37 C.F.R. §2.20 by a person properly authorized to sign on behalf of the owner of the registration. A "person who is properly authorized to sign on behalf of the owner" is: (1) a person with legal authority to bind the owner; (2) a person with firsthand knowledge of the facts and actual or implied authority to act on behalf of the owner; or (3) an attorney as defined in 37 C.F.R. §10.1(c) who has an actual written or verbal power of attorney or an implied power of attorney from the owner. Generally, the USPTO does not question the authority of the person who signs a §15 affidavit, unless there is an inconsistency in the record as to the signatory's authority to sign.

*See* TMEP §804.05 regarding signature of electronically filed affidavits or declarations.

# EXHIBIT 9

I believe also that a Parisian origin for T-shirts and sweatshirts would be material to the decision to purchase applicant's goods. Applicant argues that, while Paris is a renowned center for haute couture, it can boast no such renown for the manufacture of casual clothing such as T-shirts and sweatshirts. Applicant concludes, therefore, that a prospective purchaser would be indifferent to whether a T-shirt or sweatshirt had its origin in Paris. I am not persuaded by applicant's argument. Paris has long been famous as a fashion center (and applicant would appear to admit as much, at least with respect to high fashion garments). That being the case, an item of clothing originating in Paris would be deemed desirable by purchasers, even where that item clothing is a humble (although not necessarily cheap, I should add) T-shirt or sweatshirt.

I would affirm the refusal to register under Section 2(a).

---

**U.S. Patent and Trademark Office
Trademark Trial and Appeal Board**

Mister Leonard Inc. v. Jacques Leonard Couture Inc.

Cancellation No. 19,241

Decided April 22, 1992
Released May 12, 1992

**TRADEMARKS AND UNFAIR TRADE PRACTICES**

**1. Practice and procedure in Patent and Trademark Office — Fraud or inequitable conduct (§325.07)**

Statements which were made by corporate registrant's officer in letter to counsel which formed basis for preparation of combined Section 8 and Section 15 declaration and which were false, material, and made knowingly constitute fraud on Patent and Trademark Office, even if second officer possessing less knowledge actually signed declaration without knowing that statements contained therein were false; further, applicant is under duty to correct material, false statements made to PTO when their falsity becomes known.

---

Trademark cancellation no. 19,241, by Mister Leonard Inc. against Jacques Leonard Couture Inc., registration no. 1,239,520, issued May 24, 1983. On petitioner's motion for summary judgment. Granted.

Maureen C. Kassner, of Panitch, Schwarze, Jacobs & Nadel, Philadelphia, Pa., for Mister Leonard Inc.

Mark I. Peroff, of Liddy, Sullivan, Galway, Begler & Peroff, New York, N.Y., for Jacques Leonard Couture Inc.

Before Sams, Hanak, and Hohein, members.

**Hanak, member.**

Mister Leonard, Inc. (petitioner) filed a petition for cancellation of Registration No. 1,239,520 for the trademark LEONARD on the basis that Jacques Leonard Couture, Inc. (registrant) fraudulently filed a false Section 8 and 15 declaration to maintain that registration, and then perpetuated the fraud on the Patent and Trademark Office (PTO) by failing to correct the false statement contained in that declaration. In its answer, registrant denied that it had committed fraud on the PTO.

This matter is now before us on a motion for summary judgment filed by petitioner. The motion has been contested by registrant.

The undisputed facts are as follows. On May 24, 1983 Registration No. 1,239,520 for the mark LEONARD in typed capital letters issued to registrant. The goods listed in that registration were "dresses, pants, ski wear, tennis wear, hats, coats and raincoats for women, scarves and bathing costumes for men and women, ties."

On May 21, 1986, registrant — as opposer in Opposition No. 72,113 — served on petitioner (as applicant in the opposition proceeding) answers to interrogatories. In response to Interrogatory No. 2 which asked registrant/opposer to "identify each of the officers, directors, managerial and/or supervisory employees of opposer who are most familiar with opposer's past and/or present use of LEONARD," registrant/opposer answered. simply "Joan Arkin, c/o Jacques Leonard Couture, Inc., 550 Seventh Avenue, New York, New York." In response to Interrogatory No. 18, registrant/opposer stated that "opposer does not sell men's clothing under the LEONARD mark." The foregoing interrogatory answers were signed on May 21, 1986 on behalf of registrant/opposer by "Joan Arkin, manager."

On October 6, 1988, counsel for registrant wrote to Joan Arkin at Jacques Leonard Couture, Inc. and, among other things, posed the following two questions: "First, please confirm that the trademark LEONARD is currently in use in the U.S. on these products

[dresses, pants, ski wear, tennis wear, coats and raincoats for women, scarves and bathing costumes for men and women, ties]. Second, let us know which of these items have been sold in the U.S. continuously for the last five years."

On October 12, 1988 Joan Arkin wrote back to counsel for registrant and stated, in part, the following: "I confirm that the trademark LEONARD is currently in use in the U.S. on the following products: dresses, pants, skiwear, tennis wear, coats & raincoats for women, scarves, swimwear for men & women, ties."

Subsequently, counsel for registrant prepared a Section 8 and 15 declaration which was signed by Daniel Tribouillard (registrant's president) on January 5, 1989. That declaration contained, among other things, the following statement: "The undersigned declares . . . that the mark shown therein [LEONARD] has been in continuous use in interstate commerce for five consecutive years from May 24, 1983 to the present, on or in connection with each of the following goods or services recited in the registration: dresses, pants, ski wear, tennis wear, coats and raincoats for women, scarves and bathing costumes for men and women, ties."

In her deposition of June 25, 1990 in the opposition proceeding (page 41) and in her deposition of June 13, 1991 in this proceeding (page 86) Joan Arkin conceded that registrant had not made use of the mark LEONARD in the United States on men's bathing costumes since 1986.

Based on the foregoing undisputed facts, there can be no dispute that the Section 8 and 15 declaration signed by registrant's president on January 5, 1989 was in error when it stated "that the mark shown therein [LEONARD] has been in continuous use in interstate commerce for five consecutive years from May 24, 1983 to the present, on or in connection with . . . bathing costumes for men. . .". Indeed, at page 3 of its January 6, 1992 brief in opposition to summary judgment, "registrant admits that the LEONARD mark was not used by registrant on bathing costumes for men for the five continuous years as stated therein [i.e. the section 8 & 15 declaration]."

The foregoing facts are undisputed. What is disputed are the legal conclusions to be drawn from these undisputed facts. Fraud in obtaining or maintaining a trademark registration "occurs when an applicant [or later, registrant] knowingly makes false, material representations of fact in connection with his application," or in connection with a Section 8 and/or 15 declaration or in connection with an application for renewal. *Torres v.*

*Cantine Torresella S.R.L.*, 808 F.2d 46, 1 USPQ2d 1483, 1484 (Fed. Cir. 1986); 1 J. McCarthy, *Trademarks and Unfair Competition*, Section 20:15 at page 1058 (2d ed. 1984) ("It is relatively clear that fraud made in affidavits under sections 8 and 15, to continue a registration and obtain incontestability, also constitute fraud in 'obtaining' a registration sufficient for cancellation.")

Thus, according to *Torres*, to constitute fraud on the PTO, the statement must be (1) false, (2) a material representation and (3) made knowingly. 1 USPQ2d at 1484. In this case, there can be no doubt that the first two elements are met. The statement in the Section 8 and 15 declaration that the mark LEONARD had been used continuously in interstate commerce for five consecutive years from May 24, 1983 in connection with bathing costumes for men was totally false. Moreover, this false statement was — vis-a-vis the Section 15 portion of the declaration — material in that with this statement, the registration obtained the status of incontestability with regard to bathing costumes for men when it should not have. See *Crown Wallcovering Corp. v. Wall Paper Mfgrs. Ltd.*, 188 USPQ 141, 144 (TTAB 1975).[1]

Thus, we come to the third element required for fraud on the PTO as set forth in *Torres*, namely, whether the false, material representation was made "knowingly." 1 USPQ2d at 1484. In this regard, registrant makes much of the fact that the Section 8 and 15 declaration was signed by Daniel Tribouillard (registrant's president); that Mr. Tribouillard has stated in an affidavit that his "mistake as to the use of the LEONARD trademark on men's bathing suits for five consecutive years starting from May 24, 1983 was due to inadvertence on my part" (paragraph 5); and that "while [petitioner] had ample opportunity to take the deposition of Mr. Tribouillard, the individual who had signed the affidavit, [petitioner] chose ultimately not to do so." (Registrant's brief page 2).

[1] The problem that we have with registrant's position is that even if we assume that

[1] The false statement was not material with regard to the Section 8 portion of the declaration because the declaration was filed in January 1989 prior to the effective date of the Trademark Law Revision Act of 1988 (November 16, 1989). Old Section 8 — prior to its amendment on November 16, 1989 — merely required the filing of an affidavit "showing that said mark is in use in commerce" without any requirement that there be a listing of the specific goods and/or services for which the mark was still in use.

the false, material statement contained in the Section 8 and 15 declaration was not made knowingly by Mr. Tribouillard, that declaration was prepared by counsel for registrant based upon statements made by Ms. Arkin in her letter of October 12, 1988 which, with regard to swimwear for men, were (1) false, (2) material and (3) *made knowingly*. It is indefensible to suggest that Ms. Arkin did not know that her October 12, 1988 statement that "the trademark LEONARD is currently in use in the U.S. on ... swimwear for men" was false. As previously noted, Ms. Arkin has been identified by registrant as the person most familiar with registrant's past and/or present use of LEONARD. (Interrogatory 2). On May 21, 1986 Ms. Arkin swore and subscribed to the statement that "opposer does not sell men's clothing under the LEONARD mark." (Interrogatory 18). Moreover, in her June 25, 1990 deposition and again in June 13, 1991 deposition Ms. Arkin stated that registrant had made no use of LEONARD in connection with men's swimwear in the U.S. since 1986. Thus, Ms. Arkin had to have known that the statement contained in her letter of October 12, 1988 — which formed the basis for the preparation of the Section 8 and 15 declaration — was false. This Board will not tolerate a situation where an officer of a registrant knowingly provides false, material information to counsel for the preparation of a Section 8 and/or 15 affidavit.[2] The fact that a second officer, possessing less knowledge of a particular trademark then signs the Section 8 and/or 15 declaration not personally knowing that a statement contained therein is false will not sanitize the matter. Accordingly, we find that as a matter of law, registrant committed fraud on the PTO in connection with the Section 15 portion of its combined Section 8 and 15 declaration filed in January 1989.

Moreover, an applicant or registrant is under a duty to correct material, false statements made to the PTO when their falsity becomes known. *Space Base Inc. v. Stadis Corp.*, 17 USPQ2d 1216, 1219 (TTAB 1990) ("... A person can commit fraud upon the Office by willfully failing to correct his or her own misrepresentation, even if originally innocent, as long as that person subsequently learns of the misrepresentation, and knows that the Office has relied upon that misrepresentation in conferring a substantive benefit upon that person to

which the person knows it is not entitled.") Even assuming arguendo that on October 12, 1988 Ms. Arkin did not know that she made a false, material misrepresentation to counsel for use in preparation of the Section 8 and 15 declaration, it is abundantly clear that by the time of her June 25, 1990 deposition, Ms. Arkin — and hence registrant — knew that a statement contained in that declaration was false and material. However, registrant chose to do nothing to bring this matter to the attention of the PTO. At page 7 of its January 6, 1992 brief, registrant states that it was "not just a simple matter of making the correction" because "a registration involved in a proceeding may not be amended during the inter partes proceeding without the consent of the other party and the approval of the Trademark Trial and Appeal Board." However, this in no way excused the registrant from totally failing to make any effort whatsoever to bring this error to the attention of the PTO. Instead of bringing the error to the attention of the PTO, registrant — on April 22, 1991, after the start of this proceeding — caused to be filed with the PTO a new application to register LEONARD which was virtually identical to that of the existing Registration No. 1,239,520 except for the omission of bathing costumes for men. In short, registrant committed fraud on the PTO with the filing of its Section 15 declaration and then perpetuated for a number of years that fraud by its failure to make any attempt whatsoever to bring the material misrepresentation to the attention of the PTO.

In summary, petitioner's motion for summary judgment is granted, and Registration No. 1,239,520 will be cancelled in due course.

---

**District Court, N.D. Georgia**

Hester Industries Inc. v. Wing King Inc.

No. 1:91-CV-2644-RHH

Decided March 26, 1992

## TRADEMARKS AND UNFAIR TRADE PRACTICES

**1. Types of marks — Arbitrary or fanciful — Particular marks (§327.0803)**

"Wing-Dings," for chicken wing products, is arbitrary or fanciful mark.

---

[2] At page 5 of her June 25, 1990 deposition, Ms. Arkin is identified as the chief executive officer of registrant in America.

# EXHIBIT 10

2 of 3 DOCUMENTS



Analysis
As of: Jun 27, 2008

ESTEFAN ENTERPRISES, INC., Plaintiff, -vs- COCO BONGO GRILL
AND BAR, INC., Defendant.

Case No. 6:06-cv-742-Orl-31KRS

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
FLORIDA, ORLANDO DIVISION

*2007 U.S. Dist. LEXIS 40261*

June 4, 2007, Decided
June 4, 2007, Filed

**PRIOR HISTORY:** *Estefan Enters. v. Coco Bongo Grill & Bar, Inc., 2006 U.S. Dist. LEXIS 85953 (M.D. Fla., Nov. 28, 2006)*

**COUNSEL:** [*1]  For Estefan Enterprises, Inc., a Florida Corporation, Plaintiff: Karen L. Stetson, LEAD ATTORNEY, Karen L. Stetson, Esq., Miami Beach, FL.

For Coco Bongo Grill and Bar, Inc., a Florida Corporation, Defendant: Catherine E. Timilty, LEAD ATTORNEY, The Robbins Law Firm, St. Petersburg, FL; Hunter H. Chamberlin, LEAD ATTORNEY, Matthew Kennedy, LEAD ATTORNEY, Oliver J. Janney, LEAD ATTORNEY, The Robbins Law Firm, PA, St Petersburg, FL.

**JUDGES:** GREGORY A. PRESNELL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** GREGORY A. PRESNELL

**OPINION**

**ORDER**

This matter comes before the Court on a Motion for Summary Judgment (Doc. 71) filed by Plaintiff Estefan Enterprises, Inc. ("EEI") and Defendant's Response thereto (Doc. 76).

**I. Background**

EEI, operates a Latin-themed restaurant and nightclub/bar under the Bongos Cuban Cafe mark with two locations in Miami, Florida and one in Orlando, Florida. (Doc. 71 at 1). The Orlando location is within the Downtown Disney district. (Doc. 71 at 1). While primarily a restaurant, the atmosphere of Bongos Cuban Cafe changes after 10 p.m. into a nightclub/bar. (Doc. 71-2 at 2). The clientele at the Orlando location is very broad and approximately 65% of the nightclub [*2] business comes from tourists. (Doc. 71-2 at 3). Bongos Cuban Cafe is open until 2 a.m., 7 days a week. (Doc. 71 at 2).

Defendant, Coco Bongo's Grill and Bar, Inc. ("CBGB"), operates a nightclub/bar located on Orange Blossom Trail in Orlando, Florida approximately 11 miles from Bongos Cuban Cafe. CBGB is only open three nights a week (Thursday, Friday, and Saturday) and does not serve food. (Doc. 71 at 2). The clientele at CBGB is primarily the local, younger adult, Hispanic club goer. (Doc. 76 at 11).

2007 U.S. Dist. LEXIS 40261, *

EEI holds the registered trademark "Bongos Cuban Cafe" [1] and has brought this action alleging, *inter alia*, that CBGB's use of the word "Bongo" violates the Lanham Act and CBGB should be enjoined from further use of the word. (Doc. 71 at 5).

    1   EEI holds Registration No. 2,490,999 for "Bongos Cuban Cafe."(Doc. 71-3 at 1).

## II. Standards of Review

A party is entitled to summary judgement when it can show that there is no genuine issue as to any material fact. *FED. R. CIV. P. 56(c)* [*3] ; *Beal v. Paramount Pictures Corp., 20 F.3d 454, 458 (11th Cir. 1994)*. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)*; *Watson v. Adecco Employment Svc., Inc., 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003)*.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)* (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id. at 322, 324-25*; [*4] *Watson, 252 F. Supp. 2d at 1352*. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)* ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Wil-*

*liams, 451 F.3d 759, 763 (11th Cir. 2006)* (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal, 20 F.3d at 458-59*. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999)*.

## III. Legal Analysis

In a trademark infringement action, a plaintiff must prove that (1) its mark is valid and (2) [*5] the defendant's use of the contested mark is likely to cause confusion. *15 U.S.C.A. § 1114(1)(a) (West 2007)*; *Dieter v. B & H Indus., 880 F.2d 322, 326 (11th Cir. 1989)*. CBGB does not contest the validity of EEI's mark. However, the likelihood of confusion between "Bongos Cuban Cafe" and "Coco Bongo's" is in dispute.

Determining likelihood of confusion requires analysis of seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products that the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent, and (7) actual confusion. *Dieter, 880 F.2d at 326*. The 11th Circuit has held that the type of mark and evidence of actual confusion are the two most important factors. *Id.* There is no brightline test to determine how much evidence of confusion is enough. When reviewing the evidence the Court must take into consideration the circumstances surrounding each particular case. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 844 (11th Cir. 1983)*.

### A) Type of Mark

[*6] Courts have traditionally divided marks into four categories, in order of increasing strength: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *American Television and Communications Corp. v. American Communications and Television, Inc., 810 F.2d 1546, 1548 (11th Cir. 1987)*. In the instant case, the classification of EEI's mark as either descriptive or suggestive is at issue. A descriptive mark is one that "identif[ies] a characteristic or quality of an article or service." A suggestive mark "suggests, rather than describes, a characteristic of the goods or services

and requires an effort of the imagination by the consumer to be understood as descriptive." *Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 115-116 (5th Cir. 1979).* [2] If a mark is descriptive, proof of a secondary meaning of that mark is necessary for the owner to have a protectable interest in that mark. However, if the mark is suggestive, proof of a secondary meaning is not necessary. [3] *Id.*

    2    All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).*

[*7]

    3    Suggestive marks are inherently distinctive thus making proof of a secondary meaning unnecessary, whereas a descriptive mark is not inherently distinctive and therefore, proof of a secondary meaning is necessary. *Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1522-1523 (11th Cir. 1999).*

    CBGB argues that because of common use of the word "Bongos" by third parties [4] and the existence of a "logical connection" between the word "Bongos" and the services that EEI provides, EEI's mark is descriptive. (Doc. 76 at 6-8.) Conversely, EEI argues that the mark is suggestive because it requires imagination on the part of the consumer to make the connection between bongos, a musical instrument, and the services provided by EEI. [5] (Doc. 71 at 7). Additionally, EEI relies on the classification of the mark by the United States Patent and Trademark Office ("USPTO") to provide evidence that the mark is suggestive.

    4    Third party use of a mark is important when gauging the strength of a mark. The more third parties use the mark, the weaker it is, and less protection it deserves. *See Frehling Enters., 192 F.3d at 1336.*

[*8]

    5    In its motion for summary judgement, EEI only addresses the definition of bongos as a musical instrument and its relation to the establishment's name. (Doc. 71 at 7). However, in EEI's reply to CBGB's response to the motion for summary judgment, EEI claims that the word "Bongos" was selected

"as a tribute" to Ms. Estefan's pet kangaroo that had passed away. (Doc. 87 at 5 n.4).

    Courts have relied on the USPTO's classification of a trademark to provide *prima facie* evidence of whether the mark is descriptive or suggestive. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 934 (4th Cir. 1995).* The USPTO requires proof of secondary meaning before it grants registration if the mark is descriptive, whereas it does not require proof of secondary meaning if the mark is suggestive. *Id.* In the instant case, the USPTO did not require evidence of secondary meaning when it approved EEI's mark, [6] thus providing *prima facie* evidence that EEI's mark is suggestive. However, while the characterization given by the USPTO is persuasive, it is not conclusive evidence [*9] that the mark is suggestive. [7]

    6    The fact that the USPTO did not insert a "2(f)" above the serial number on the bottom right of EEI's mark registration certificate is proof that EEI provided sufficient evidence of the mark's distinctiveness under *15 U.S.C. § 1052(f)* prior to registration. *See Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 936 n.15.*
    7    The 11th circuit has held that "Although we will bestow proper respect to the determinations of the PTO, we will not defer to an ethereal determination that is not affirmatively stated by the administrative agency." *Investacorp, 931 F.2d at 1524.*

    EEI also argues that its mark is "incontestable" under *15 U.S.C. § 1065* ("*§ 1065*") and therefore the mark cannot be challenged on the ground that it is merely descriptive. (Doc. 71 at 8). Upon a closer review of *§ 1065*, EEI's "incontestable" argument fails. *Section 1065* requires that, for a mark to be classified as incontestable, [*10] EEI must file an affidavit within a year after five years of continuous use of the mark and that there must be "no proceeding involving said rights pending . . . in a court not finally disposed of." *15 U.S.C.A. § 1065 (West 2007); Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1540-1541 (11th Cir. 1986).* EEI's mark was registered with the USPTO on September 18, 2001. (Doc. 71-3 at 1). EEI timely filed an affidavit of incontestability in January of 2007. (Doc. 71-20 at 2). However,

EEI filed the complaint for the instant case, which is still pending, on May 31, 2006. (Doc 71-20 at 2). Therefore, when EEI filed for incontestability, there was a "proceeding involving said rights pending . . . in a court and not finally disposed of," and *§ 1065(2)* prevents EEI's mark from being classified as incontestable. *See Sizzler Family Steak House, 793 F.2d at 1541.*

However, EEI contends that even if the mark is descriptive, it can show that the mark has acquired a secondary meaning and therefore it has a protectable interest in the mark. (Doc. 71 at 8). Secondary meaning is defined as "the connection in [*11] the consumer's mind between the mark and the provider of the service." *Investacorp, Inc., 931 F.2d at 1525.* There are four factors considered in determining whether a mark has achieved a secondary meaning:

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

*Conagra, Inc., v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984).* Additionally, the mark must have acquired the secondary meaning before the defendant first used the same or similar mark. *See Investacorp, Inc., 931 F.2d at 1524.* Plaintiff bears the burden of sustaining "a high degree of proof" in establishing a secondary meaning for a descriptive term, and this requisite high degree of proof must be considered by the Court when ruling on a motion for summary judgment. *Id. at 1525.*

EEI's fulfillment of the first three factors is not contested by CBGB, however, the [*12] fourth is at issue. CBGB argues that EEI's mark has not acquired a secondary meaning because the public does not identify the word "Bongos" with EEI's services because of extensive third party use of the word "Bongos." (Doc. 76 at 8-9). EEI argues that because it has used the mark continuously over a ten year period, there is a presumption of secondary meaning under *15 U.S.C. § 1052(f)*, ("*§ 1052(f)*"),

which requires only five years of continuous use. EEI began using its mark on September 18, 1997 and would have acquired presumption of secondary use under *§ 1052(f)* on September 18, 2002. However, because CBGB began using its name on July 9, 2001, (Doc. 71-7 at 3), EEI's mark did not acquire a presumption of a secondary use under *§ 1052(f)* before CBGB first used its name. [8]

> 8   The presumption is not mandatory and neither the USPTO or the Court has to accept the presumption. The weight of the 5 year usage evidence will vary depending upon the background and the inherent distinctiveness of the designation and the other evidence of the record. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 15:62 (4th ed. 2001); *See In re Garcia, 175 U.S.P.Q. 732 (T.T.A.B. 1972); In re Ennco Display Systems Inc., 56 U.S.P.Q.2d 1279, 1283-1286 (T.T.A.B. 2000).*

[*13]  EEI also argues that because sales are probative as to whether the public actually identifies the mark with its services, its large sales figure provides evidence that its mark has achieved a secondary meaning. (Doc. 71 at 9-10). However, EEI's argument fails because only the figure for *total* sales are provided. EEI's mark needed to achieve a secondary meaning before CBGB began using its name, therefore the sales figure as of July 9, 2001 is necessary, not the total amount of sales. Sales may be probative of a secondary meaning, but EEI has not provided the evidence necessary to make this determination.

Thus, the Court cannot determine as a matter of law that this mark is suggestive, nor does the evidence support a finding of secondary meaning. Accordingly, the Court cannot, at this stage of the proceedings, make a legal determination as to the nature of EEI's mark.

*B) Other Factors*

The evidence before the Court does not establish, as a matter of law, that actual confusion exists. These marks are somewhat dissimilar ("Bongos" vs. "Coco Bongo's"), the service offered by the parties are dissimilar (restaurant vs. nightclub), and their customer base is different (tourists [*14] vs. locals), given these obvious differences, there are ma-

2007 U.S. Dist. LEXIS 40261, *

terial issues of disputed fact which preclude a find-ing that Defendant's mark is likely to cause confu-sion.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Sum-mary Judgment (Doc. 71) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 4, 2007.

**GREGORY A. PRESNELL**

**UNITED STATES DISTRICT JUDGE**

DAVID J. KERA, ESQUIRE   .   July 31, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - -+
                              |
LEVI STRAUSS & CO.,           |
                              |
            Plaintiff,        |
                              |
                              | Civil Action No.
     vs.                      | CV-0703752
                              |
ABERCROMBIE & FITCH TRADING   |
CO.,                          |
            Defendant.        |
                              |
- - - - - - - - - - - - - - -+

Video Conferenced Deposition of

DAVID J. KERA, ESQUIRE

Washington, D.C.

July 31, 2008

1:30 p.m.

Job No. 22-134942

Pages 1 - 72

Reported by:  Michele E. Eddy

df39b7e0-9167-4111-9ad8-ecd3d7363a23

DAVID J. KERA, ESQUIRE        July 31, 2008

Page 9

| 01:50:38 | 1 | MR. KEYES:  That's a good question.  I don't |
| 01:50:40 | 2 | know either, Gia.  Do you want to just start over? |
| 01:50:44 | 3 | THE WITNESS:  Why don't you mark it Kera 1? |
| 01:50:54 | 4 | MR. KEYES:  That's what we did with the last |
| 01:50:55 | 5 | experts.  I think we just started over.  It was the |
| 01:50:57 | 6 | easiest thing. |
| 01:51:12 | 7 | (Exhibit 1 was marked for identification and |
| 01:51:12 | 8 | attached to the deposition transcript.) |
| 01:51:12 | 9 | BY MS. CINCONE: |
| 01:51:19 | 10 | Q    Mr. Kera, Exhibit 1 is your expert report in |
| 01:51:22 | 11 | this litigation, correct? |
| 01:51:31 | 12 | A    That is correct. |
| 01:51:38 | 13 | Q    Page 2 of the report indicates that you were |
| 01:51:40 | 14 | retained to provide an opinion as to whether Levi |
| 01:51:45 | 15 | Strauss committed fraud on the Patent & Trademark |
| 01:51:47 | 16 | Office; is that right? |
| 01:52:06 | 17 | A    Page 2? |
| 01:52:11 | 18 | Q    Page 2, paragraph 8. |
| 01:52:16 | 19 | A    That is correct.  Yes. |
| 01:52:23 | 20 | Q    And what is your opinion on that question? |
| 01:52:26 | 21 | A    That Levi Strauss did commit fraud by |
| 01:52:31 | 22 | omitting to include in the combined declaration under |
| 01:52:34 | 23 | the Section 8 and Section 15 that it was engaged in |
| 01:52:39 | 24 | litigation with Lois Sportswear in which Lois |
| 01:52:43 | 25 | Sportswear had pleaded an affirmative defense that the |

Merrill Legal Solutions
(800) 869-9132

df39b7e0-9167-4111-9ad8-ecd3d7363a23