TOWNSEND AND TOWNSEND AND CREW LLP
GREGORY S. GILCHRIST (Bar No. 111536)
GIA L. CINCONE (Bar No. 141668)
RAQUEL PACHECO (State Bar No. 245328)
Two Embarcadero Center, 8th Floor
San Francisco, California 94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
gsgilchrist@townsend.com; glcincone@townsend.com;
rpacheco@townsend.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEVI STRAUSS & CO.,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>ABERCROMBIE & FITCH TRADING CO.,<br><br>    Defendant/Counterclaimant. | Case No. C 07-03752 JSW<br><br>**DECLARATION OF RANY L. SIMMS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS AND SELECTED AFFIRMATIVE DEFENSES, AND FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF TRADEMARK DILUTION** |
| ABERCROMBIE & FITCH TRADING CO.,<br><br>    Defendant/Counterclaimant,<br><br>v.<br><br>LEVI STRAUSS & CO.,<br><br>    Plaintiff/Counterdefendant. | DATE:  September 26, 2008<br>TIME:    9:00 a.m.<br>COURTROOM:  2 |

1    I, RANY L. SIMMS, hereby declare:

2    1.    I am submitting this declaration on behalf of Levi Strauss & Co. in connection with its
3    lawsuit against Abercrombie & Fitch Trading Co.  I have personal knowledge of the matters set forth
4    in this declaration and if called as a witness, I could competently testify to these matters.

5    2.    Attached to this declaration as Exhibit A is a true and correct copy of the expert report
6    which I prepared pursuant to Federal Rule of Civil Procedure 26.  This report accurately sets forth the
7    work that I did and the opinions that I hold on the issues I was asked to address by Levi Strauss & Co.

8    I declare under penalty of perjury under the laws of the United States that the foregoing
9    statements are true and correct.

10   Executed at Fairfax, Virginia, this 15th day of August, 2008.

                                            _____/s/  Rany L. Simms_____
13                                                  Rany L. Simms

14   61467558 v1

# EXHIBIT A

<u>Expert Witness Report</u>
<u>Prepared by Rany L. Simms</u>

June 28, 2008

1. **Qualifications**

I am a former Administrative Trademark Judge of the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board, and served in that capacity from 1981-2004. See attached resume. In that capacity, I wrote hundreds of opinions (in panels of three judges) in trademark cases for the Trademark Trial and Appeal Board. These opinions were written both in appeals from refusals to register trademarks (and service marks) as well as in opposition and cancellation proceedings involving attempts to oppose applications to register and to cancel registrations of trademarks and service marks. I also authored a number of articles for the Trademark Reporter, a legal publication in the field of trademarks, but none in the last ten years. I have not previously testified as an expert witness either at a deposition or at trial, although I have been retained in two other trademark cases as an expert witness.

2. **Materials reviewed as of June 28, 2008**

The following materials have been reviewed and relied upon: The Trademark Act of 1946 (15 U.S.C. §§1051 et seq); The Trademark Manual of Examining Procedure (5th ed. 2007).
From Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 82 Civ. 8326 (S.D.N.Y) and Levi Strauss & Co. vs. Textiles y Confecciones Europeas, S.A., 83 Civ. 4338 (S.D.N.Y): Complaint of Lois Sportswear; Answer and Counterclaims of Levi Strauss; Plaintiff's Answer to Counterclaims; Complaint of Levi Strauss in Levi Strauss vs. Textiles y Confecciones Europeas; Answer of Textiles y Confecciones Europeas; Lois' Memorandum of Law in Support of Motion for Summary Judgment; Memorandum of Levi Strauss in Opposition to Motion for Summary Judgment and in Support of its Motion for Summary Judgment; Memorandum of Lois Sportswear and Textiles y Confecciones Europeas in Opposition to Cross-Motion for Summary Judgment and in Reply to Memorandum of Levi Strauss in Opposition to Motion for Summary Judgment; Reply Memorandum of Levi Strauss in Support of its Cross-Motion for Summary Judgment; Transcript of Hearing before Judge Robert Sweet, July 12, 1985;
From Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.: Complaint for Trademark Infringement, Unfair Competition and Dilution; Abercrombie's Amended Answer, Affirmative Defenses and

Counterclaims; Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Abercrombie's Memorandum in Opposition to Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Levi Strauss' Reply in Support of Motion to Dismiss Counterclaims for Cancellation; Reply Declaration of Gia Cincone in Support of Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Order Granting in Part and Denying Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Exhibits T and U (copies of TMEP §1604.03 (Dec. 1983 and January 1986) attached to Abercrombie's Motion for Summary Adjudication of Undisputed Facts (Motion Withdrawn).

3. **Compensation**

   I am being compensated at the rate of $400 per hour.

4. **Summary of Opinion**

   I have been retained by Levi Strauss & Co. ("Levi Strauss") to offer an opinion on whether its filing of an affidavit pursuant to Section 15 of the Trademark Act of 1946 (15 U.S.C. §1065) was fraudulent because the affidavit did not mention a proceeding in which one of its registrations (Registration No. 1,139,254, issued September 2, 1980, covering the arcuate trademark for pants, jackets, skirts, dresses and shorts) was involved, but where there was no attempt to cancel that registration. After examining various materials from the current and the prior litigation, and the pertinent law, it is my opinion that the affidavit filed by Levi Straus in connection with its registration was not fraudulent.

5. **Statement of Opinion and Reasoning**

   By way of background, in December 1982, Lois Sportswear, U.S.A., Inc. ("Lois") filed an action for declaratory relief against Levi Strauss in the Southern District of New York (Lois Sportswear, U.S.A., Inc. vs. Levi Strauss & Co., 82 Civ. 8326 (S.D.N.Y)) asserting that Lois' rear-pocket stitching design on its jeans did not infringe any trademark rights of Levi Strauss in its arcuate trademark, did not constitute a false designation of origin or false representation under Section 43(a) of the Trademark Act (15 U.S.C. §1125(a)), and did not violate Levi Strauss' New York state trademark rights. Lois also sought a permanent injunction restraining Levi Strauss from interfering with Lois' importation and distribution of its jeans bearing the design. Levi Strauss, among other things, counterclaimed for trademark infringement and unfair competition under the

Trademark Act, and sought a permanent injunction against Lois. In a responsive pleading, Lois asserted certain affirmative defenses, including that Levi Strauss' "double arcuate mark" never functioned as a trademark or that, even if it did, it had become so diluted by reason of widespread use by others of similar designs on clothing that it had lost whatever distinctiveness it possessed and no longer functioned as a trademark. However, Lois did not request that the Court cancel any of Levi Strauss' registrations, including Registration 1,139,254 ("the '254 registration"), for the arcuate trademark.

In June 1983, Levi Strauss filed a trademark infringement and unfair competition action against Textiles y Confecciones Europeas, S.A. ("Textiles")(Levi Strauss & Co. vs. Textiles Y Confecciones Europeas, S.A., 83 Civ. 4338 (S.D.N.Y)), a Spanish company affiliated with Lois, which manufactured the clothing bearing the stitched pocket design in dispute. In this lawsuit, which was later consolidated with Lois' action against Levi Strauss, Levi Strauss pleaded, among other things, ownership of the '254 registration covering the arcuate trademark. Levi Strauss' allegations were similar to those in its counterclaims against Lois. Textiles denied that Levi Strauss' design possessed distinctiveness or that it served as a trademark. Textiles also asserted affirmative defenses similar to those asserted by Lois in response to Levi Strauss' counterclaims. Textile did not request that Levi Strauss' registration be cancelled or ask that the registration be declared invalid, but only that the complaint be dismissed, that it be awarded costs and attorneys fees, and "such other and further relief as may be just." See Answer, p. 4. In September 1985, the District Court granted Levi Strauss' motion for summary judgment and denied the cross-motions of Lois and Textiles. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 631 F. Supp. 735 (SDNY 1985). The Second Circuit affirmed the grant of summary judgment. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867 (2d Cir. 1986)

In the current proceeding, Abercrombie & Fitch Trading Co. ("Abercrombie"), in its amended answer, affirmative defenses and counterclaims, has alleged that Levi Strauss knowingly filed two materially false affidavits under Section 15 of the Trademark Act with the U.S. Patent and Trademark Office ("USPTO"), in 1985 and 1986, in connection with the '254 registration, because Levi Strauss did not disclose to the USPTO the trademark litigation then pending in the Southern District of New York and in the Court of Appeals for the Second Circuit, involving Levi Strauss, Lois and Textiles. One of these affidavits, filed on behalf of

3

Levi Strauss on May 17, 1985, was filed before the end of the fifth year after the registration was issued and was rejected by the USPTO. That is because a Section 15 affidavit or declaration may not be filed until the registered mark has been in continuous use in commerce for at least five consecutive years after the date of registration. If a Section 15 affidavit does not comply with the statute or rules, the USPTO issues a written notice of any error, which it did in this case. Because this affidavit was rejected by the USPTO as untimely filed, this first affidavit cannot be the basis of any fraud claim on the USPTO. The Judge in this case has so ruled. See Order Granting in Part and Denying Levi Strauss & Co.'s Motion to Dismiss Counterclaims for Cancellation, 3, issued April 22, 2008. This first affidavit, therefore, need not be further considered.

The other affidavit filed in connection with the '254 registration, executed by Ms Jean Fowler, Levi Strauss' Assistant Corporate Secretary, on January 2, 1986 and filed January 16, 1986, was acknowledged by the USPTO. That affidavit was filed under both Sections 8 and 15 of the Trademark Act of 1946 (15 U.S.C. §§ 1058 and 1065). (Under 37 C.F.R. §2.168(a), the affidavit or declaration filed under Section 15 may be combined with the affidavit or declaration required by Section 8, which pertains to the required filing of an affidavit or declaration of use or of excusable nonuse, during the sixth year after the registration date. See Trademark Manual of Examining Procedure (TMEP) §1605.05 (5th ed. 2007). This affidavit stated, among other things, that there was no proceeding involving Levi Strauss' rights pending and not disposed of either in the USPTO or in the courts. No mention was made of the litigation between Levi Strauss and two third parties, Lois and Textiles.

Abercrombie alleges in its counterclaims in the pending litigation that Levi Strauss' combined Section 8 and 15 affidavit was materially false in that it stated that "there is no proceeding involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts" when, in fact, Levi Strauss was involved in the above-noted litigation where an appeal to the U.S. Court of Appeals for the Second Circuit was pending.

While Levi Strauss did not reveal in its Section 8 and 15 affidavit filed in connection with the '254 registration the then-pending trademark infringement and unfair competion litigation involving Lois and Textiles, it is my opinion that Levi Strauss was not required to reveal such information because

4

that litigation did not involve any attempt to cancel that registration, by way of claim or counterclaim. Neither Lois nor Textiles had sought cancellation of the '254 registration, but only asserted certain affirmative defenses to Levi Strauss' claims of trademark infringement, unfair competition and violation of New York state law.

The pertinent statutes, rules and other authority on which I base my opinion include Section 15 of the Trademark Act (15 U.S.C. §1065), which provides, in part:

> Except on a ground for which application to cancel may be filed at anytime under paragraphs (3) and (5) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: Provided, That—
>
> (1) there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and
>
> (2) <u>there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of</u>; and
>
> (3) an affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still

>       in use in commerce, and the other matters
>       specified in paragraphs (1) and (2) of this
>       section; and
>
>         (4) no incontestable right shall be
>       acquired in a mark which is the generic name
>       for the goods or services or a portion
>       thereof, for which it is registered.
>       [Emphasis added.]

Also, under Section 33(b) of the Trademark Act (15 U.S.C. §1115(b)), if the right to use the mark has become incontestable under Section 15, then the registration is conclusive evidence of the validity of the registered mark and its registration, of the registrant's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce, subject to certain defenses and exceptions, including that the registration or the incontestable right to use the mark was obtained fraudulently.

The TMEP §1605.04 (5th ed. 2007) now provides, in part:

> *No Adverse Decision or Pending Proceeding Involving Rights in the Mark.* The §15 affidavit must state that there has been no final decision adverse to the owner's claim of ownership of the mark for the goods or services, or to the owner's right to register the mark or to keep the mark on the register. It must also state that there is no proceeding involving these rights pending in the USPTO or in a court and not finally disposed of... If the USPTO finds facts contrary to either of the foregoing statements, the USPTO will not acknowledge receipt of the §15 affidavit. See TMEP §1605. (The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a §15 affidavit.)

More importantly, at the time Levi Strauss filed the second Section 8 and 15 affidavit in January 1986, TMEP §1604.03 (1st ed. Rev. 7 January 1986) had been revised to include similar language: "A proceeding involving the mark in which registrant

6

is the plaintiff, and there is no counterclaim involving registrant's rights in the mark, does not preclude acceptance of a Section 15 affidavit." See Exhibit U attached to Abercrombie's Motion for Summary Judgment (since withdrawn). It is true that in this case, Levi Strauss was the defendant in Lois Sportswear v. Levi Strauss. However, in that case, there was no allegation in the complaint that Levi Strauss' registration should be cancelled. Lois only asked for declaratory judgment that there was no likelihood of confusion or unfair competition as a result of its use of a rear pocket stitching design used on its jeans. Later, in response to Levi Strauss' counterclaims for trademark infringement and unfair competition did Lois assert that Levi Strauss' mark lacked distinctiveness or was invalid. Even then, however, there was no attempt to cancel its '254 registration (or another even older registration (Registration No. 404,248, issued Nov. 16, 1943).

In the other action, Levi Strauss v. Textiles y Confecciones Europeas, S.A., later consolidated with the Lois action, Levi Strauss was, of course, the plaintiff asserting its registrations in the federal trademark infringement and unfair competition action. In this action as well, there was never any attempt to cancel the '254 registration.

In its brief in support of its motion for summary judgment in that case, Lois offered arguments on the issues of likelihood of confusion, unfair competition and dilution (under New York law), but never argued or asked that Levi Strauss' registration(s) be declared invalid or be cancelled.

Further, at the hearing held on the motions for summary judgment before Judge Sweet, counsel for Lois and Textiles, Max Schutzman, stated, at 47-48, 49;

> Mr. Lee [counsel for Levi Strauss] stated at the outset of his argument that if I was correct in my discussion of the various cases which have dealt with names and tags, then the Levi registration would be rendered nugatory. And of course that's not true at all. We're not suggesting that the registration is null and void. The mere fact that one has a registration and a registered trademark as your Honor well knows does not mean that they have a complete monopolistic right to utilize that

7

> particular mark. The test is and always has been likelihood of confusion and that's the test in this case. And of course, as an aside I point out again, that the stitching designs we're dealing with are not identical...
>
> As far as the incontestability issue, Mr. Lee has stated that the statute provides a conclusive presumption of Levi's exclusive right to use that mark. I say so what. I don't dispute that it's incontestable. I dispute that the use by Lois of that nonidentical stitching design constitutes likelihood of confusing (sic). The issue of incontestability has no bearing whatsoever on that particular issue.

Counsel for Levi Strauss, Alfred Lee, during the same hearing, at 36, also noted that there was no attack on any registration:

> We do have a valid trademark and a valid registration. There is no attack on that.

Finally, in its appeal brief to the Second Circuit, Lois' attorney states at the outset that the issues to be decided are whether the District Court erred in granting summary judgment to Levi Strauss on the grounds of trademark infringement, unfair competition and dilution, and whether the District Court erred in denying the appellants' (Lois and Textiles) motion for summary judgment for a declaration of non-infringement and non-liability on the grounds of unfair competitiona and dilution. There is no mention of any issue with respect to the validity of Levi Strauss' registration(s). Later in the brief, Lois' attorney noted that Levi Strauss' registration (Registration No. 404,248, issued Nov. 16, 1943) was not under attack:

> Levi contends that its arcuate trademark is incontestable under 15 U.S.C. §1065. Lois admits such incontestability for purposes of this motion only, but notes that the doctrine of incontestability bars only defenses directed to Levi's right to register the mark, and in no way has any bearing on whether such mark is weak or entitled to protection specifically against the particular contested mark under the

8

      circumstances in which that contested mark is used.

Appeal brief, 42.

    Although Lois pleaded, among other things, that Levi Strauss' arcuate mark either never functioned as a designation of origin or had become so diluted as a design mark because of widespread use by others that its distinctiveness as a mark had been lessened or lost, these allegations and contentions were made in the context of its arguments that there was no likelihood of confusion. Lois never requested that any of Levi Strauss' registrations be cancelled. Therefore, because the prior litigation did not include any attempt to cancel the '254 registration, it is my opinion that Levi Strauss was not required to disclose the existence of this litigation in the Section 15 affidavit. The purpose behind a Section 15 filing is to inform the Office of any proceeding which challenges the registration for which the registrant seeks to make its right to use incontestable. Contrary to Abercrombie's pleading and argument, there was no specific challenge to Levi Strauss' claim of ownership of its registrations, its right to register, and its right to keep the registrations on the record.

    Moreover, it is my opinion, as a former Administrative Trademark Judge who, over the years, has handled many cancellation proceedings as well as counterclaims to cancel in opposition proceedings, that a registrant's conduct which is in compliance with the TMEP's advice or interpretation cannot be said to be willfully false or fraudulent in nature. In this regard, it has been held that fraud must be "proven to the hilt" with little room for speculation, but with considerable room for honest mistake or erroneous conception of rights, and any doubts are resolved against the party asserting fraud. Yocum vs. Covington, 216 USPQ 210, 216 (TTAB 1982). In the circumstances of this case, fraud should not be found.

Date: June 28, 2008

Rany L. Simms  
Former Administrative  
Trademark Judge,  
Trademark Trial and  
Appeal Board

9

**Resume of Rany L. Simms**

Former Administrative Trademark Judge, Trademark Trial and Appeal Board (TTAB) of the U.S. Patent and Trademark Office (USPTO), located in Alexandria, Va.

B.A. degree from the University of Illinois, Champaign-Urbana, in 1969

J.D. degree from the University of Illinois College of Law in 1972

I joined the U.S. Patent and Trademark Office in 1972 as a Trademark Examining Attorney, and worked for the Board as an Interlocutory or Staff Attorney from 1975 until 1980. I became an Acting Member of the Board in 1980 and was an Administrative Trademark Judge (formerly called Member of the Trademark Trial and Appeal Board) since 1981. In this capacity, sitting in panels of three, I wrote hundreds of trademark opinions over the years in appeals from refusals to register trademarks (and service marks), in opposition proceedings brought against applications to register trademarks and service marks, and in cancellation proceedings seeking to cancel registered trademarks and service marks. I also wrote numerous articles for the Trademark Reporter (published by the International Trademark Association) and have spoken on a number of occasions to various groups about practice before the Trademark Trial and Appeal Board. I have been sent by the Office to help the Lithuanian and the Romanian Patent Offices develop procedures for handling trademark applications. I have also spoken at the International Intellectual Property Institute's Intellectual Property Law Workshops held in Ho Chi Minh City and in Hanoi, Vietnam, in October 2002, and at a similar program held in the Philippines in June 2002. I retired from the Office in December 2004.

Admitted to practice in the State of Maryland.

**PROOF OF SERVICE**

I declare that I am employed in the City and County of San Francisco, California; I am over the age of 18 years and not a party to the within action; my business address is Two Embarcadero Center, Eighth Floor, San Francisco, California 94111. On the date set forth below, I served a true and accurate copy of the document(s) entitled: **EXPERT WITNESS REPORT: RANY L. SIMMS** on the party(ies) in this action by placing said copy(ies) in a sealed envelope each addressed as follows:

| Rachel R. Davidson, Esq.<br>Michael J. Bettinger, Esq.<br>K&L Gates<br>55 Second Street, Suite 1700<br>San Francisco, CA 94105 | J. Michael Keyes, Esq.<br>K&L Gates<br>618 West Riverside Avenue, Suite 300<br>Spokane, WA 99201 |
|---|---|

☒    [By First Class Mail] I am readily familiar with my employer's practice for collecting and processing documents for mailing with the United States Postal Service. On the date listed herein, following ordinary business practice, I served the within document(s) at my place of business, by placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 30, 2008 at San Francisco, California.

_____
Carol Petrich

61416975 v1