# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
LOIS SPORTSWEAR, U.S.A. INC.,             :
                                          :
                 Plaintiff,               :        82 Civ. 8326 (RWS)
                                          :
          -against-                       :
                                          :
LEVI STRAUSS & COMPANY,                   :
                                          :
                 Defendants.              :
------------------------------------------x
------------------------------------------x
                                          :
LEVI STRAUSS & COMPANY,                   :
                                          :
                 Plainitff,               :        83 Civ. 4338 (RWS)
                                          :
          -against-                       :
                                          :
TEXTILES CONFECCIONES EUROPAS, S.A.,      :
                                          :
                 Defendant.               :
------------------------------------------x

PRE-TRIAL BRIEF

Whitman & Ransom
Attorneys for Lois Sportswear,
U.S.A., Inc. and
Textiles Confecciones Europeas, S.A.
522 Fifth Avenue
New York, New York  10036
(212) 575-5800

Ex. E-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

LOIS SPORTSWEAR, U.S.A. INC.,                    :

                         Plaintiff,             :

                                                 :    82 Civ. 8326 (RWS)
            -against-                            :

                                                 :
LEVI STRAUSS & COMPANY                            :

                         Defendants.            :
----------------------------------------X

----------------------------------------X

LEVI STRAUSS & COMPANY,                           :

                         Plaintiff,             :

                                                 :    83 Civ. 4338 (RWS)
            -against-                            :

TEXTILES CONFECCIONES EUROPAS, S.A.,             :

                         Defendant.             :
----------------------------------------X


PRE-TRIAL BRIEF


                              WHITMAN & RANSOM
                              Attorneys for Lois
                              Sportswear, U.S.A., Inc.
                                and Textiles y
                                Confecciones Europeas, S.A.
                              522 Fifth Avenue
                              New York, New York  10036
                              (212) 575-5800

Ex. E-2

# TABLE OF CONTENTS

Page No.

Preliminary Statement.................................... 1

Statement of Facts..................................... 2

Argument............................................... 6

    I.  Levi has the Burden of Proof at Trial ...... 6

    II. Levi Must Prove That There Is A
        Likelihood of Confusion as to the
        Source of Lois Jeans...................... 9

        A.  The Marks Are Visually Dissimilar,
            Especially when Viewed under
            Actual Market Conditions................ 9

        B.  Both the Lois Design and the Levi
            Arcuate Always Appear in Close
            Proximity to their Well Recognized
            Brand Names and other Distinctive
            Logos or Marks......................... 10

        C.  There Have Been No Instances of
            Actual Confusion....................... 11

        D.  The Marks Are Used on Non-Competing
            Products in Dissimilar Markets......... 13

        E.  Similar Stitching Designs Are Widely
            Used in the Apparel Industry, Indicating
            the Weakness of the Levi Mark.......... 14

        F.  It is Highly Unlikely that Levi
            Will Bridge the Gap.................... 16

        G.  Lois Has Acted in Good Faith........... 17

    III.  Levi's Claims of False Designation of
         Origin are without Merit................. 19

    IV.  Levi's Claims under the New York Antidilution
         Statute and Other State Laws are also
         Unfounded................................ 20

    V.  The Levi Stitching Design Does Not Function
        As A Trademark .......................... 21

    VI.   Conclusion............................... 22

Ex. E-3

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

LOIS SPORTSWEAR, U.S.A., INC.,                :

                    Plaintiff,
                                              :    82 Civ. 8326 (RWS)
          —against—
                                              :

LEVI STRAUSS & COMPANY,                       :

                    Defendants.
                                              :
------------------------------------------X

------------------------------------------X

LEVI STRAUSS & COMPANY,                       :

                    Plaintiff,               :

          —against—                           :    83 Civ. 4338 (RWS)

TEXTILES CONFECCIONES EUROPAS, S.A.,          :

                    Defendant.       : ·
------------------------------------------X

## PRE—TRIAL BRIEF

### Preliminary Statement

          Declaratory judgment plaintiff Lois Sportswear, U.S.A.,
Inc. ("Lois") and Defendant Textiles Y Confecciones Europeas,
S.A. ("Textiles") submit this Pre—Trial Brief in accordance with
this Court's Pretrial Order dated January 23, 1985.

          This action was originally brought by Lois under the
provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201,
the Lanham Act, 15 U.S.C. §§1051, et seq., and the laws of the
State of New York for (a) a declaration that the use of a
stitched back pocket design on certain items of wearing apparel

Ex. E-4

imported into the United States and distributed by Lois does not infringe any trademark rights possessed by Levi and does not constitute a violation of Levi's rights under 15 U.S.C. § 1125(a) or New York state law governing trademarks, unfair competition and dilution; and (b) a permanent injunction restraining Levi from interfering in any manner with Lois' importation and distribution of items of apparel bearing that design.   Levi counterclaimed for trademark infringement, unfair competition and dilution, under the Lanham Act and the laws of the State of New York, and sought a permanent injunction to restrain Lois from using its stitched back pocket design in the United States.

Subsequent to the filing of the Lois action, Levi filed an action against Textiles, a Spanish company affiliated with Lois which manufactures Lois brand apparel.   The allegations in Levi's complaint against Textiles are substantially similar to the allegations of its counterclaims against Lois in the first action.   The two actions have since been consolidated.

## STATEMENT OF FACTS

Lois is a corporation organized under the laws of the State of Delaware, with a principal place of business at 12 West 57th Street, New York, New York, and is a member of a group of companies affiliated with Textiles, which is located in Valencia, Spain.   Textiles is the manufacturer of wearing apparel bearing the Lois brand name, which has been sold throughout Europe by Textiles and its

Ex. E-5

predecessors and affiliates over the past 25 years bearing the back-pocket stitching design which is the subject of this lawsuit. Lois, which was incorporated in 1977 and has been doing business in the United States since 1979, imports and distributes wearing apparel manufactured by Textiles.*

Included among the items of apparel imported and distributed by Lois are jeans and trousers fashioned of denim and other fabrics. Lois' trousers generally consist of two types: high-priced five pocket jeans made principally of denim and high fashion jeans or trousers made of canvas or other fabrics. For convenience, references to Lois "jeans" will refer to both types unless otherwise indicated. These jeans and trousers, which retail for approximately $60 to $80 per pair, are sold to consumers through various boutiques and a limited number of quality department stores throughout the United States. They do not compete with Levi jeans since they appeal to a completely different class of customer.

Lois' jeans are marketed and sold to the ultimate consumer with a variety of identifying marks which serve to distinguish Lois' jeans from those of other manufacturers.

---

*    It should be noted that in February, 1985, Lois Sportswear and Textiles licensed Murjani International as the exclusive vendor of Lois-brand garments in the United States. These garments, we understand, will be produced by Murjani in the U.S. and will not bear the stitching design in issue in this lawsuit. Presently, Lois Sportswear has sold all remaining inventories of Lois-brand garments and ceased all importation thereof.

As part of their design, most of the Lois jeans models have a stitched pattern on the right rear pocket. All models of basic five-pocket and high fashion jeans distributed by Lois are sold with "hang tags" upon which the Lois brand name and its distinctive bull symbol are prominently displayed. Additionally, each pair of Lois jeans is sold with two stitched-on cardboard tags, one measuring approximately 5 inches by 3 inches and the other measuring approximately one inch by three inches, both of which tags prominently feature Lois' brand name and bull symbol and also indicate in conspicuous print that Lois' jeans are "imported from Europe." Finally, there are various identifying symbols affixed permanently to all models of the five-pocket jeans and many models of the high fashion jeans, including: (a) a two-inch by one-inch leather tag affixed to the left rear pocket bearing the Lois brand name and bull symbol; (b) a fabric tag stitched to the right rear pocket which features the Lois brand name; (c) a sizing and care tag stitched to the inner waist seam which bears the Lois brand name and indicates that both the fabric and product are made in Spain; (d) a brass button located on the waist band bearing the Lois brand name; and (e) a quarter circle leather or fabric patch stitched to the right front pocket bearing the distinctive bull symbol.

Levi is a corporation organized under the laws

Ex. E-7

of the State of Delaware, with its principal place of
business in San Francisco, California. Levi is in the
business of manufacturing and distributing certain types of
wearing apparel, including jeans. Its jeans retail for
approximately $20-30.

In or about 1979, Levi initiated complaints to
Lois (and Textiles) to the effect that the use of the Lois
stitching pattern on Lois jeans infringed Levi's trademark
rights. Specifically, Levi claimed that the design which
it uses on the back pockets of its jeans is a registered
trademark, and that the use of a purportedly similar design
on Lois' jeans created a likelihood of confusion.

Levi also employs other trademarks, including a
distinctive red tag with the word "Levi" in white letters,
prominently affixed to the right rear pocket of its jeans,
and other distinctive trade dress which clearly identifies
Levi jeans as products of Levi Strauss & Company.

In the past 10 or so years, when jeans have become
more acceptable to the general populace, literally hundreds
of different brands, have flooded the market. Most of
these bear back-pocket stitching designs, and many utilize
designs which are very similar to the Levi design. This
has served to eliminate any measure of distinctiveness
which the Levi design might have had in earlier years, to
the point that the design does not perform a trademark
function, and thus does not serve to distinguish Levi jeans

Ex. E-8

from other brand names.  If Levi does have a particularly distinguishing feature, it is the back-pocket red or orange tab bearing the word "Levi's," but not its back-pocket stitching design.

Finally, no instances of actual confusion will be demonstrated by Levi.

## ARGUMENT

### I.  Levi has the Burden of Proof

Levi and not Lois bears the burden of proof on the critical issue of trademark infringement.  Although as a general rule the plaintiff must sustain the burden of proof, the use of the declaratory judgment procedure changes the traditional plaintiff-defendant relationship and as a result warrants a modification of the rules governing burden of proof.  See 6A Moore Federal Practice §57.31[1], §57.31[2] (1984).  As that commentator states:

> Probably an exception to this general rule should be made in the case of the declaratory action by an alleged infringer for a declaration of non-infringement or invalidity of defendant's patent, copyright or federal trademark.  Where the charged infringement has been of a general nature, it may be very difficult for the accused infringer to prove that his activities have in no way infringed the defendant's rights.  More important is the fact that in the vast majority of such cases, the basis for the declaratory action is an extrajudicial charge of infringement, which the defendant has made and nobody knows better than he what lies behind his charge.  In relation to validity bear in mind that the patent, copyright, or trademark represents a monopolistic grant which affects the public interest in addition to that of the alleged infringer.  We are, therefore, inclined to believe that the burden of proving validity and infringement should be on the holder

Ex. E-9

of the patent, copyright, or trademark, who traditionally would be a plaintiff and would have the burden of proof, although in the declaratory action he is cast in the role of a defendants. 6A Moore, Federal Practice §57.31[2] at pp 57-287 & 57-288.

Thus, it has been held that where a plaintiff brings a declaratory judgment action asserting patent or trademark invalidity or non-infringement and the defendant counterclaims for infringement, defendant has the burden of proof on infringement. See e.g. Philip A. Hunt Co. v. Mallinckrodt Chemical Works, 78 F. Supp. 865, 873-874 (E.D.N.Y. 1947), aff'd on other grounds, 177 F.2d 583 (2d Cir. 1949); Javar Coffee Co. v. Jos Martinson & Co., 142 F. Supp. 423 (S.D.N.Y. 1956) ("Defendant has the burden of showing that the marks used are so similar that confusion is likely to result..."); Deere & Company v. Sperry Rand Corp., 322 F. Supp. 397 (E.D. Calif. 1970), aff'd, 513 F. 2d 1131 (9th Cir. 1975). See also, Mushroom Makers, Inc. v. R.G. Barry Corp. 441 F. Supp. 1220, 1226, aff'd, 580 F.2d 44 (2d Cir. 1978), cert. denied, 439 U.S. 116 (1979).

In order to prevail at trial on its claims of infringement and unfair competition, Levi will have to show that "there exists 'a likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question.' Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F. 2d 44, 47 (2d Cir. 1978), cert. denied, 439 U.S. 1116 (1979)." Thompson Medical Company, Inc. v. Pfizer

Ex. E-10

—7—

Inc., ___ F.2d ___, No. 84-7761, Slip Op. at 1287 (2d Cir.
Jan. 11, 1985); Lever Bros. Co. v. American Bakeries, 693
F.2d 251, 253 (2d Cir. 1982); Universal Studios, Inc. v.
Nintendo Co., 578 F. Supp. 911, 926 (S.D.N.Y. 1983), aff'd,
746 F.2d 112 (2d Cir. 1984).

The Lanham Act, 15 U.S.C. § 1051, et seq, provides
that infringement occurs when another's use of a mark is
"likely to cause confusion, or to cause mistake, or to
deceive." 15 U.S.C. § 1114(1)(a). As has been held by this
Court in Nation's Choice Vitamin Co., Inc. v. General Mills,
Inc., 526 F. Supp. 1014 (S.D.N.Y. 1981):

> The degree of confusion required "under both
> the Lanham Act and the common law, is the
> likelihood that the consuming public will be
> confused as to the source of the allegedly
> infringing product." American Footwear Corp.
> v. General Footwear Co., Ltd., 609 F.2d 655,
> 664, (2d Cir. 1979), cert. denied 445 U.S. 951
> (1980).

526 F.Supp. at 1018.

It has been well established in Polaroid Corp. v.
Polarad Electronics. Corp., 287 F.2d 492, 495 (2d Cir.), cert.
denied, 368 U.S. 820 (1961), that an assessment of the
likelihood of confusion between two marks properly turns on the
examination of many factors:

> [The] strength of the mark, the degree of
> similarity between the marks, the proximity
> of the products, the likelihood that the
> prior owner will bridge the gap, actual
> confusion, and the reciprocal of defendant's
> good faith in adopting its own mark, the
> quality of defendant's product, and the
> sophistication of the buyers. Even this
> extensive catalogue does not exhaust the
> possibilities -- the court may have to take
> still other variables into account.

Ex. E-11

-8-

287 F.2d at 495.  See Thompson v. Pfizer, supra, at 1288; Lever
Bros. v. American Bakeries, supra, at 253; Vitarroz Corp. v.
Borden, Inc., 644 F.2d 960 (2d Cir. 1981).


II. Levi Must Prove that There Is A Likelihood of
    Confusion as to the Source of the Lois Jeans

    A.    The Marks Are Visually Dissimilar, Especially
          when Viewed under Actual Market Conditions.

    The marks must be compared in their entirety in order
to assess the likelihood of consumer confusion as to source.
Thompson v. Pfizer, supra, slip op. at 1298.  In order to
determine if the competing marks are confusingly similiar, it
is appropriate for the Court to inspect the marks visually and
to compare the extent to which the allegedly infringing mark
captures the total concept and feel of the senior user's mark.
Universal v. Nintendo Co., Ltd., supra, 746 F.2d at 116.

    A visual inspection of the stitched designs on a pair
of Lois brand jeans and Levi brand jeans reveals that the Lois
mark extends approximately one inch further toward the bottom
pocket, creating the impression of a letter "Y" as compared to
the "V" impression of the Levi design.  However,
notwithstanding the existence of some similarity in the
impression created by the marks when viewed in isolation, it is
well established that the overall context in which the marks
appear must be analyzed.  See McGregor – Doniger, Inc. v.
Drizzle, Inc., 599 F.2d 1126, 1133–1134 (2d Cir. 1979).  As
this Court has previously stated, the analysis consists of more

Ex. E-12

than comparing the size, color and other characteristics of the

contested marks in isolation:

> The inquiry does not, however, stop
> there.  In assessing the degree of
> similarity between two marks it is the
> effect upon prospective purchasers that
> is important. [citations omitted].
> Thus the setting in which a designation
> is used, because it affects the
> appearance and colors the impression
> conveyed by the mark, must be analyzed.
> [citations omitted].

Plus Products v. Plus Discount Foods, Inc., 564 F. Supp. 984,

991, aff'd in part and rev'd in part, 722 F.2d 999 (2d Cir.

1983).  Finally, as this Court held at the summary judgment

stage in Univeral v. Nintendo, supra, any physical similarities

may be overcome by the total concept and feel of the products.

We respectfully submit that an inspection of the

respective products as they appear under actual market

conditions dispels any reasonable possibility that the

similarity of stitched design could deceive a prospective

purchaser as to the source of either pair of jeans.

Accordingly, Levi cannot demonstrate likelihood of confusion as

to the source of Lois jeans.

    B.    Both the Lois Design and the Levi Arcuate Always Appear
In Close Proximity to their Well Recognized Brand Names
and other Distinctive Logos or Marks.

The Lois stitched design is always used in conjunction

with or in close proximity to the Lois brand name and

distinctive Lois bull logo.  Equally effective in dispelling

the possibility of confusion is the prominent display of the

Ex. E-13

Levi brand name in close association with its arcuate design, including the distinctive red tab with the name "Levi" featured on the same pocket.  It is well-settled that the close physical association of the name of the manufacturer with the mark militates against any likelihood of confusion as to source. Thus, in <u>Bose Corporation</u> v. <u>Linear Design Labs, Inc.</u>, 467 F.2d 304 (2d Cir. 1972), the Second Circuit denied relief in an infringement action to a manufacturer of speaker cabinets stating that "[t]he presence of [defendant's] name on the product goes far to eliminate confusion of origin." <u>Id</u>. at 309.  At issue in the <u>Bose</u> case were audio speakers which were physically quite similar, but which also were identifiable by their brand names/logos.  <u>See also</u> <u>R. G. Barry Corporation v. A. Sandler Co., Inc.</u>, 406 F.2d 114, 116 (1st Cir. 1969); <u>Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.</u>, 626 F.2d 193 (1st Cir. 1980); <u>American Rolex Watch Corporation v. Ricoh Time Corporation</u>, 491 F.2d 877, 879 (2d Cir. 1974).

  C. <u>There Have Been No Instances of Actual Confusion.</u>

   The absence of evidence of actual confusion is a stong indication that the likelihood of confusion is small.  The Second Circuit has found the lack of actual confusion to be a persuasive factor under the similar circumstances of the <u>Plus Products</u> case:

> Despite three years of concurrent use, the district court found there were no instances of actual consumer confusion, but it did not articulate the

importance it gave to this factor. While we recognize that it is difficult to establish actual confusion on the part of retail customers, <u>W.E. Bassett Co. v. Revlon, Inc.</u>, 435 F.2d 656, 662 (2d Cir. 1970), no evidence of confusion for over a three year period during which substantial sales occurred, is a strong indicator that the likelihood of confusion is minimal. <u>Lever Bros. v. American Bakeries Co.</u>, 693 F.2d at 257; <u>Pignons S.A. de Mecanique de Precision</u> v. <u>Polaroid Corp.</u>, 657 F.2d 482 (1st Cir. 1981): <u>Amstar Corp. v. Domino's Pizza, Inc.</u>, 615 F.2d at 263; <u>McGregor-Doniger, Inc.</u> v. <u>Drizzle, Inc.</u>, 599 F.2d at 1136. [Emphasis supplied]

722 F.2d at 1006.

In response to Lois' first set of interrogatories, Levi admitted that there have been no instances of actual confusion, despite Lois' presence in this market for more than five years:

INTERROGATORY NO. 18:

State whether there have ever been any incidents reported to Levi wherein any person has been confused, mistaken or deceived as to the source or origin of Levi products carrying the Levi Stitched Design or as to the source or origin of any product carrying an Arcuate design of any other manufacturer or vendor,...

RESPONSE TO INTERROGATORY NO. 18:

None of which Levi Strauss & Co. is aware.

INTERROGATORY NO. 20:

State whether Levi has ever received any misdirected mail, telephone calls, orders, inquiries or complaints which were intended for Lois or any other

person other than Levi which
manufacture or have ever manufactured
products bearing an arcuate design,...

RESPONSE TO INTERROGATORY NO. 20:

None to the extent LS&CO is aware.

D.    The Marks Are Used on Non-Competing Products in
      Dissimilar Markets.

The testimony will show that there are at least three
distinct markets for jeans in the United States.  Basic Brands
such as Wrangler, Lee and Levi sell in the lowest price range
of from $20.00 to $30.00; so-called designer brands such as
Calvin Klein, Jordache and Sergio Valente sell in a middle
price range of approximately $40.00 per pair; so-called fashion
brands such as Ball, Newman, Guess and Lois sell at a higher
price range from $60.00 to $80.00.  Levi is simply not a
competitor in either the middle or top end markets.

In addition to the obvious market differences
described above, it is also significant that the Lois jean is
the highest priced jean or trouser among the fashion
competitors.  Thus, the differential between Levi jeans at
roughly $25 and Lois jeans priced at $60-$80 illustrates the
dissimilarity between the two products and their respective
markets.

The price difference between the Lois products and the
Levi jeans is the most significant feature establishing
separate markets and competitors for the respective brands.
See Pignons, S.A. de Mecanique de Precision v. Polaroid Corp.,

Ex. E-16

-13-

657 F.2d 482, 487-88.    However, the substantial differences in quality are not to be ignored when considering the potential competition between the two types of jeans.    Plus Products, supra, 722 F.2d, at 1006-07.    The evidence will show the superior materials and workmanship that typify the Lois jeans. The effect of such qualitative differences, as well as the effect of the fashion aspect of the Lois jeans, is to reduce the likelihood of cost-conscious shoppers misapprehending the source of either product.    See Plus Products, supra, 722 F.2d at 1007.

   E.    Similar Stitching Designs Are Widely Used in the
          Apparel Industry, Indicating the Weakness of the Levi
          Mark.

   The evidence at trial will demonstrate that for years there has been widespread use of back pocket designs on all types of jeans found in the marketplace.    The dilutive effect of such widespread use is apparent.    Significantly, in response to Lois' first set of interrogatories, Levi's answer to the following interrogatory reveals the widespread prevalence of arcuate stitched designs on other sportswear:

          INTERROGATORY NO. 6:

          State whether since 1970, Levi became
          aware of any person who manufactured,
          sold or distributed products bearing an
          arcuate design similar to the Levi
          Stitched Design...

          RESPONSE TO INTERROGATORY NO. 6:

          The documents which contain information
          from which responses to this
          interrogatory can be derived are
          contained in more than 200 separate

Ex. E-17

-14-

                    files relating to the United States,
                    and approximately 800 additional files
                    pertaining to other jurisdictions.

        Based upon similar evidence, this court in Plus

Products, supra, found that the plaintiff's registered mark was

very weak, due to apparently extensive third party use based on

some 130 different protests made by the plaintiff user since

1970.  564 F. Supp at 990.  The number of Levi's domestic

protest files, and the time period within which those protests

were lodged, are remarkably similar to what occurred in the

Plus Products case.

        Perhaps of equal importance, in the Plus Products case

this Court looked at one other critical fact in arriving at its

characterization of the plaintiff's mark as weak.  Evidence was

presented in the Plus Products case that the Trademark Trial

and Appeal Board had previously found the same mark to be

weak.  564 F. 2d at 990-91.  The Levi arcuate has also been

denied protection against an allegedly similar mark in

circumstances virtually identical to the instant case.  See,

Levi Strauss & Co. v. Longley, 272 F. 2d 820 (6th Cir. 1959).

There, the Sixth Circuit held:

                    The action, brought by Levi Strauss and
                    Company, was for infringement of its
                    registered trademark, stitched on the
                    back pockets of western style overalls
                    and jeans.  The trademark has been
                    termed an "arcuate" design.
                    The trial court described the trademark
                    of appellant as consisting of two equal
                    arcs, lying substantially horizontally
                    across the rear pocket.  The mark used

Ex. E-18

                                        -15-

> by defendants, now appellees, is in
> general appearance similar to that of
> appellant, but differs in that it drops
> in the center to the bottom of the
> pocket.  Standing alone, the similarity
> of the marks might be sufficient to
> deceive the unwary purchaser, although
> no instance of deception was shown in
> evidence.  See Hemmeter Cigar Co. v.
> Congress Cigar Co., 6 Cir., 118 F.2d
> 64,70.  But all factors should be
> considered and, when the overalls
> manufactured and sold by the respective
> parties are viewed in entirety, there
> appears to be no likelihood of
> reasonable confusion between the
> garments. [Emphasis supplied]

272 F.2d at 821.  It is further worthy of note that the Sixth

Circuit upheld the dismissal of Levi's claim in large part due

to the "marked contrast" in the distinguishing features between

the jeans at the point of sale and the fact that an unwary

purchaser was unlikely to be deceived as to the source of the

respective jeans due to the prominent display of brand names

and other distinctive trade dress.  It is respectfully

submitted that the extensive third party use and the lack of

distinctiveness of the Levi arcuate, particularly when

surrounded by all of the point of sale indicia of source,

firmly militates in favor of the relief sought by Lois and

Textiles in this action.

    F.   <u>It is Highly Unlikely that Levi Will Bridge the Gap.</u>

    Levi has failed to allege that it has any intention to

sell fashion garments bearing an arcuate design which would

bridge the gap to the market for Lois jeans and trousers.  This

is a further dispositive factor in analyzing the likelihood of

confusion.  See <u>Vitarroz v. Borden, Inc.</u>, <u>supra</u>, at 969.  Even
if Levi and Lois goods were sold in precisely the same market,
however, that would not be fatal to the motion of Lois and
Textiles, as is evident from the decision in <u>In Re Schmid</u>
<u>Laboratories</u> v. <u>Youngs Drug Products Corp.</u>, 482 F. Supp 14
(D.N.J. 1979).

At issue in the <u>Schmid</u> case was the defendant's use of
the word "Ribbed" on its packages, despite plaintiff's prior
registered mark and use of the word "Sensi-Ribbed".  The
products, prophylactics, were fungible and sold side by side
under identical retail circumstances for the same price.  <u>Id</u>.
at 19-20.  However, based upon the prominent display of both
parties' respective brand names, the court granted summary
judgment dismissing plaintiff's infringement claims on the
grounds that an average purchaser making a visual inspection of
the different packages was not likely to be confused as to the
source or origin of the products.  <u>Id</u>. at 18, 20.  It is
noteworthy that the court in <u>Schmid</u> made numerous findings
which indicated a high potential for confusion, all of which
were dispelled by the clear visual dissimilarities created by
the prominent inclusion of the respective brand names.

G.    <u>Lois Has Acted in Good Faith</u>

The testimony of Mr. Joaquin Saez Merino, the
President of Textiles, provides a description of the
history of the Lois design.  The salient aspects of Mr.
Saez Merino's testimony are that the design was first used

by Textiles' predecessors in Spain in 1959.  In 1961, when
the Lois brand was "born", the stitched design of its
predecessor's "jeans"–type garment was incorporated on the
rear pocket of denim "jeans".  That design has remained
unchanged ever since and has been used continuously on Lois
brand jeans and trouser models since 1961.  To the best of
Mr. Saez Merino's knowledge, the origins of the stitched
design are Mexican or Spanish and the sale of denim jeans
in Spain is associated with a marriage of the French denim
fabric with the styles required by the Spanish Basque
sheepherders.  Textiles did not export its jeans until 1968
when it commenced sales to Holland.  It was not until 1967
or 1968 that Textiles became aware of Levi jeans.

By 1974, when Lois jeans were first sold in the
United States, Textiles' predecessor had been manufacturing
Lois brand jeans with the same stitched design since 1961.
Under very similar circumstances, this Court examined the
prior German background of the newly controlling group of
the A&P Food Store and found a lack of predatory intent
based on similar prior economic and historical reasons for
the use of a mark.  Plus Products, supra, 564 F. Supp. at
986–87, 994.

In view of Lois' higher priced, higher quality
jeans, which are also clearly labelled as Lois and not Levi
products, there is a strong inference that Lois is not

seeking any commercial advantage (in this case it would clearly be a disadvantage) by using its own stitched design. Plus Products, supra, 564 F. Supp. at 994. Finally, the fact that Lois has proceeded despite a protest from Levi is of no consequence when two corporations, well represented by counsel, have decided to adopt a course that may well lead to litigation. Id.

III.  Levi's Claims of False Designation of Origin
      are Without Merit

Section 43(a) of the Lanham Act proscribes false designations of origin or false descriptions made in connection with the sale of a product. Claims made under Section 43(a) are also frequently referred to as claims of unfair competition. The ultimate inquiry in actions for false designation of origin, as in the case of actions for trademark infringement, is whether "there exists a likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of goods in question." Thompson v. Pfizer, supra, Slip Op. at 1287, citing Mushroom Makers, Inc. v. R. G. Barry, supra, at 47.

In addition to all of the factors previously discussed and analyzed under the Polaroid tests which obviate any potential confusion as to source, a finding of false designation of origin is totally precluded where, as here, the Lois brand name is clearly displayed together with other logos and indicia of the Lois brand jeans. See Bose v. Linear Design, supra, at 309–310; American Rolex Watch, Corp. v. Ricoh

<u>Time Corp.</u>, 491 F.2d 877, 879 (2d Cir. 1974).

IV.  Levi's Claims under the New York Antidilution Statute
     and Other State Laws are also Unfounded.

      To whatever extent Levi's claims raised under the New

York anti-dilution statute, N.Y. Gen Bus. Law § 368-a (McKinney

1968), or the unfair competition provision, N.Y. Gen Bus Law

§349 (McKinney 1968), do not involve rights equivalent to those

protected by the Lanham Act, the claims under New York law are

also insufficient to entitle it to the relief requested.  <u>See</u>

<u>Warner Bros. Inc.</u> v. <u>American Broadcasting Companies, Inc.</u>, 720

F.2d 231, 248 (2d Cir. 1983).  Although an anti-dilution claim

may be established without a showing of confusion as to source,

the statute only protects extremely strong marks where there is

a likelihood of injury to business reputation or dilution of

the distinctive quality of a mark.  <u>Sally Gee, Inc.</u> v. <u>Myra</u>

<u>Hogan, Inc.</u>, 699 F.2d 621, 624-26 (2d Cir. 1983).  It is

submitted that the Levi mark obviously fails to qualify for

protection under either §368-d or §349, in light of the

extensive third party use of similar marks and of the fact that

the Lois product is superior in terms of price and quality.

Thus, association with the Lois brand would not be likely to

tarnish Levi's own good reputation.  <u>See</u> <u>Mushroom Makers R.G.</u>

<u>Barry</u>, <u>supra</u>.  Moreover, the distinct dissimilarities between

the Levi jeans and the Lois jeans, when viewed under actual

sales conditions, render Levi's claims under the state

anti-dilution statute unworthy of relief.  <u>Plus Products</u>, <u>supra</u>.

Ex. E-23

—20—

An additional focus of inquiry under the antidilution statute is the defendant's good faith.  As the Second Circuit held in <u>Sally Gee</u>, <u>supra</u>:

> Finally, the absence of predatory intent by the junior user is a relevant factor in assessing a claim under the anti-dilution statute, <u>see Information Clearinghouse, Inc. v. Find Magazine</u>, 492 F. Supp. 147, 162 n.44 (S.D.N.Y. 1980), since relief under the statute is of equitable origin, <u>see Cue Publishing Co. v. Colgate-Palmolive Co.</u>, 23 A.D.2d 829, 259 N.Y.S.2d 377 (1st Dept. 1965).

699 F.2d 626.  For all of the reasons pointed out in section <u>II.G.</u>, <u>supra</u>, Lois and Textiles had a prior economic and historical interest in the use of the Lois stitched design on their well marked Lois brand jeans and sportswear products, thus amply dispelling any bad faith or predatory intent on their part.  See <u>Plus Products</u>, <u>supra</u>, 722 F.2d at 1007, <u>affirming</u> 564 F. Supp, <u>supra</u>, at 994.

## V.    The Levi Stitching Design Does Not Function As A Trademark.

15 U.S.C. § 1127 provides, in relevant part:

> A mark shall be deemed 'abandoned' —
>
>            *    *    *    *    *
>
> (b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin.

Referring to this statute, Professor Gilson has commented:

> A trademark owner may find his

trademark abandoned where he fails to take legal action against infringers of his trademark.  If such infringement becomes sufficiently widespread, and so many others are using the mark that the public no longer associates the mark with a single source of goods or services, the mark will be considered abandoned.  1 Gilson, <u>Trademark Protection and Practice</u> (1984) ¶ 3.06 at p. 3-102.

That is precisely the situation here.  The market in this country for a number of years has been literally flooded with scores of different brands of jeans which bear back-pocket stitching designs identical or similar to the design which Levi seeks here to protect.  Levi's "efforts" to prevent the prolific distribution of goods bearing an infringing design have failed miserably.  There can thus be no doubt that the Levi stitching design is not associated by the public with Levi, and that as a result, the mark must be deemed abandoned.

### Conclusion

For all of the foregoing reasons, Lois' request for declaratory judgment should be granted in all respects, and the defenses set forth by Levi against Lois and the claims by Levi against Textiles should be dismissed.

WHITMAN & RANSOM

By _____
Max F. Schutzman
A Member of the Firm
Attorneys for Lois and Textiles
522 Fifth Avenue
New York, New York   10036
(212) 575-5800

Dated:   New York, New York
         April 10, 1985

Ex. E-25

2265B

-22-