# EXHIBIT R

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

LEVI STRAUSS & CO.,   )
         )
   Plaintiff   )
         )   CIVIL ACTION NO.: CV-07-3752
   v.     )
         )
ABERCROMBIE & FITCH )
 TRADING CO.,   )
         )
   Defendant  )
         )

## EXPERT REPORT AND OPINION

David J. Kera declares as follows:

1. I am an attorney at law with the law firm of Oblon, Spivak, McClelland, Maier, & Neustadt, P.C., located at 1940 Duke Street, Alexandria, Virginia 22314.

2. I am a member of the Bars of the Commonwealth of Virginia, District of Colombia, and State of New York.

3. I have been a practicing attorney specializing in trademark law since 1956 and have specialized in trademark law in the United States, particularly practice before the United States Patent and Trademark Office, since 1965.

4. I was an Administrative Trademark Judge of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office from October 1975 to July 1981 with a three-month break during which I was the Special Assistant to the Assistant Commissioner for Trademarks, when I made a study of the quality of trademark examination.

5. My biographical statement is attached as Exhibit 1.

6.   A list of my expert witness cases is attached as Exhibit 2.

7.   A list of my published decisions as an Administrative Trademark Judge (then the title was Member of the Trademark Trial and Appeal Board) is attached as Exhibit 3.

8.   I have been engaged by the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP, of Spokane, Washington, to provide a report and opinion on the following issue: Did Levi Strauss & Co. commit fraud in the Patent and Trademark Office when it filed a combined declaration of use and incontestability under 15 U.S.C. § 1058 and 1065 on January 16, 1986, from which declaration Levi Strauss & Co. omitted any reference to litigation then pending in the United States District Court for the Southern District of New York between Lois Sportswear, U.S.A., Inc. and Textiles Confecciones Europas, SA versus Levi Strauss & Company, 82 Civ. 8326 (RWS) and 83 Civ. 4338 (RWS).

9.   As preparation for this report and opinion, I read the following documents:

A)   Abercrombie & Fitch's motion for summary adjudication of undisputed facts, dated March 21, 2008.

B)   J. Michael Keyes declaration dated March 21, 2008 in support of Defendant Abercrombie & Fitch Trading Co.'s motion of the same date for summary adjudication and Exhibits A through U attached to the declaration of J. Michael Keyes.

C)   Order of Honorable Jeffrey S. White, District Judge, dated April 22, 2008, granting in part and denying Plaintiff Levi Strauss & Co.'s motion to dismiss counterclaims for cancellation, reported at 2008 WL 1883529 (N.D. Cal.).

D)   Plaintiff Levi Strauss & Co.'s notice of motion and motion to dismiss counterclaim for cancellation dated April 25, 2008.

E)   Transcript of deposition of Katherine Durgin taken May 15, 2008.

2

F)      Transcript of deposition of Jean Fowler taken May 16, 2008.

G)      TARR report on Registration No. 1,139,254 (the TARR database of the USPTO provides information about the status and prosecution history of trademark applications and registrations; Trademark Manual of Examining Procedures Section 108.01), attached as Exhibit 4.

H)      Federal Register, Vol. 72, No. 147, August 1, 2007, at Page 42262, where the revision of 37 C.F.R. § 2.122(d) is published showing that the TARR reports are accepted as evidence of the status of registrations in contested proceedings before the Trademark Trial and Appeal Board, attached as Exhibit 5.

I)      Trademark Manual of Examining Procedure (TMEP), First Edition, Revision No. 6, (Dec. 1983), instruction page, page xvi, and pages 214 – 215, attached as Exhibit 6.

J)      TMEP, First Edition, January 1974, Revision January 1986, title page ii, pages 1600-7 and 1600-8, attached as Exhibit 7.

K)      TMEP, Fifth Edition, September 2007, title page, forward, pages 1600-45 and 1600-46, attached as Exhibit 8.

L)      Decisions of Federal Courts as identified in this report and opinion.

M)      Decision of Trademark Trial and Appeal Board in *Mr. Leonard, Inc. v. Jacques Leonard Couture Inc.*, 23 USPQ2d 1064 (TTAB 1992), attached as Exhibit 9.

10.     On December 14, 1982, Lois Sportswear, U.S.A., Inc. filed a complaint against Levi Strauss & Company, 82 Civ. 8326 in the United States District Court for the Southern District of New York in which Lois Sportswear requested a declaration that the use of a stitched pocket design on certain items of wearing apparel did not infringe any

trademark rights possessed by Levi Strauss and did not constitute a violation of defendant's rights under 15 U.S.C. § 1125(a) or New York State law. The declaratory judgment complaint did not identify by number any trademark registration owned by Levi Strauss & Company (Exhibit A to Keyes declaration of March 21, 2008, which will be cited as the Keyes declaration).

11.    On January 6, 1983, Levi Strauss & Company filed its answer and counterclaims in Civil Action 82 Civ. 8326 (Exhibit B to the Keyes declaration). Paragraph 32 of the answer and counterclaims pleaded that Levi Strauss was the owner of two trademark registrations issued by the United States Patent and Trademark Office: Registration No. 404,248 issued November 16, 1943 and Registration No. 1,139,254 issued September 2, 1980.

12.    On January 26, 1983, Lois Sportswear filed its answer to the counterclaims (Exhibit D to Keyes declaration). Paragraph 15 of the answer to counterclaims alleged that "defendant's [Levi Strauss] 'double arcuate mark' never functioned as a designation of source or origin and was and is, therefore, not susceptible of appropriation or protection as a trademark."

13.    Paragraph 16 of the affirmative defense alleged that Defendant's double arcuate mark "has lost whatever distinctiveness it otherwise possessed and no longer functions as a designation of source or origin with the defendant."

14.    Paragraph 17 of the affirmative defense alleged that Defendant had lost any trademark rights it otherwise possessed in that mark.

15.    The civil action that commenced with the filing of the declaratory judgment complaint on December 14, 1982 remained pending at least until September 10, 1986,

which was the date on which Lois Sportswear, U.S.A., Inc. and Textiles y Confecciones

Europas, SA filed Appellants' Petition for Rehearing En Banc in the United States Court

of Appeals for the Second Circuit (Exhibit O to the Keyes declaration).

16.    The appeal  before the Second Circuit was from the decision of Judge Sweet in

the Southern District of New York which granted summary judgment to Levi Strauss.

The District Court decision is reported at 631 F. Supp. 735 (S.D. N.Y. 1985).  The

District Court decision specifically identified, among other registrations, Registration No.

1,139,254, 631 F. Supp. at 737.

17.    The decision of the District Court was affirmed on August 27, 1986.  The decision

is reported at 799 F. 2d 867 (2nd Cir. 1986).

18.    The litigation between Lois Sportswear and Levi Strauss including the answer to

the counterclaim (the answer challenged the validity of the mark of Registration No.

1,139,254) was pending on the date when Levi Strauss filed its combined affidavit of use

and incontestability under 15 U.S.C. §§ 1058 and 1065 on January 16, 1986.  Levi

Strauss did not refer to the litigation in the declaration of use and incontestability.  See

Plaintiff's Motion to Dismiss Counterclaims for Cancellation, page 8.

19.    The Trademark Manual of Examining Procedure (TMEP) publishes guidelines

and procedures followed by the Examining Attorneys at the USPTO.  The TMEP also

publishes guidelines and procedures followed by other personnel at the USPTO,

including the examiners of declarations and affidavits of use and incontestability.

Affidavits and declarations differ only in the form of the verification of the truth of the

statements in the documents.  Either form of verification may be used: 15 C.F.R. § 2.20.

5

The examiners of declarations and affidavits of use and incontestability are not attorneys or lawyers.

20.    In January 1986, and for many years prior to January 1986 and for years following January 1986, the Patent and Trademark Office maintained lists of applications and registrations of marks that were involved in court litigation and in proceedings before the Trademark Trial and Appeal Board.    The sources of the information about registrations involved in court litigation were the reports transmitted to the Commissioner of the USPTO (the title is now "Director") by the Clerks of the United States District Courts as required by 15 U.S.C. § 1116(c).  The source of information about registrations and applications involved in proceedings before the Trademark Trial and Appeal Board was the TTAB.  The examiners of declarations and affidavits of incontestability in the USPTO checked the lists as part of the regular procedure of reviewing each affidavit or declaration of incontestability.  The examiners did not have any independent sources of information about marks involved in litigation or in TTAB proceedings.  The Trademark Act did not have any provision, and still does not have any provision, requiring clerks of state courts to report registrations involved in litigation to the Patent and Trademark Office.

21.    The practice at the USPTO has varied over the years concerning whether the existence of court litigation or a proceeding at the Trademark Trial and Appeal Board was a reason to refuse to issue an acknowledgment of a declaration or affidavit of incontestability filed pursuant to 15 U.S.C. § 1065 when the registered mark in question was pleaded by a plaintiff in court or an opposer or cancellation petitioner before the TTAB but was not attacked in a counterclaim.

6

22.    In the TMEP, First Edition, Revision No. 6 (Exhibit 6), Section 1604.03 stated

that the affidavit "must also state that there is no proceeding involving said rights pending

in the Patent and Trademark Office or in a court and not finally disposed of, and

'proceeding' has been interpreted to mean Registrant being in position either of plaintiff

or defendant."

23.    In the TMEP revision of January 1986 (Exhibit 7), Section 1604.03 reads "It must

also state that there is no proceeding which challenges these rights pending in the Patent

and Trademark Office or in a court and not finally disposed of." Note that the word

"involving" in Section 1604.03 in the December 1983 revision had been changed to

"challenging" in the January 1986 revision. Section 1604.03 of the 1986 revision went

on to say that "A proceeding involving a mark in which registrant is the plaintiff, and

there is no counterclaim involving registrant's rights in the mark, does not preclude

acceptance of a Section 15 affidavit."

24.    The change in TMEP 1604.03 resulted from a Commissioner's decision on

petition, *In re Trademark Registration of McDonald's Corp.* 1984 Comm'r. Pat. LEXIS

10 (Comm'r. of Patents and Trademarks April 10, 1984. The Commissioner's decision

resulted from the fact that registrants which were actively protecting their marks by filing

numerous oppositions at the Trademark Trial and Appeal Board were finding it difficult

to file affidavits or declarations of incontestability because the pleading of a mark in a

notice of opposition resulted, under the former practice, in the refusal of the PTO to

acknowledge the affidavits on the reasoning that there was the possibility that an

applicant or cancellation respondent would counterclaim for cancellation of the pleaded

registration. The revised language of TMEP made it the practice not to refuse

7

acknowledgement of an affidavit unless a counterclaim to cancel the registration had

been filed. The revised section of the TMEP did not say that any challenge other than a

counterclaim challanging the right of a registrant to keep a mark on the register would be

immaterial. It was simply a procedural instruction to the examiners of the affidavits on

how to treat the most common situation that arose, namely, the pleading of a registration

by a party in the position of plaintiff against whom no counterclaim for cancellation had

been asserted.

25.    A section in the Trademark Manual of Examining Procedure is not a rule or a

regulation of the Patent and Trademark Office. It is simply an instruction about how to

apply the Trademark Act and the Rules, which are codified in 37 C.F.R. The TMEP sets

out guidelines and procedures. It does not have the force of law. *West Florida Seafood

Inc. v. Jet Restaurants Inc.* 31 F. 3d 1122 (Fed. Cir. 1994); *In re International Flavors &

Fragrances Inc.*, 183 F. 3d 1361 (Fed. Cir. 1999).

26.    In TMEP 1604.03, as revised in January 1986, and in subsequent revisions of the

TMEP, there is no statement to the effect that a registrant is excused from including in an

affidavit or a declaration of incontestability information that an adverse party has, in

litigation, called into question the validity of a registered mark and therefore the right of

the registrant to maintain the mark on the register.

27.    TMEP 1604.3 did not provide any guidance for the situation where there was

pending court litigation in which a party adverse to a registrant had specifically and

explicitly challenged the continued validity of the registered mark as an affirmative

defense but without having cast the challenge in the form of a counterclaim for

8

cancellation as of the date when an affidavit of incontestability was filed by the registrant.

28.    The proper manner of informing the USPTO of the existence of a concluded petition for cancellation of a registration which was the subject of a declaration of incontestability is illustrated in *Sunrise Jewelry Mfg. Corp. v. Fred S. A.*, 175 F. 3rd 1322 (Fed. Cir. 1999), where the Federal Circuit held that the Trademark Trial and Appeal Board had correctly reasoned that the registrant had made no false statement in its representation to the PTO of the existence and withdrawal of a petition for cancellation since, at the time when the registrant filed the declaration of incontestability, it would have been reasonable to believe that no proceeding was pending in view of the previously filed withdrawal of the cancellation proceeding. 1322 F. 3d, at 1327.

29.    The proper procedure for Levi Strauss to have followed in its combined declaration of use and incontestability filed on January 16, 1986 would have been to include in the declaration a statement that litigation was pending against Lois Sportswear, that Lois Sportswear had pleaded that the mark of Registration 1,139,254 had lost validity, but that Lois Sportswear had not filed a counterclaim seeking the cancellation of the registration, that the District Court had issued judgment for Levi Strauss, and the judgment had been appealed. Levi Strauss did not make that disclosure but remained completely silent on the subject.

30.    A material misstatement to the Patent and Trademark Office is a misstatement that would have affected the Office's action on the declaration of incontestability. *Orient Express Trading Company, Ltd. v. Federated Department Stores, Inc.*, 842 F.2d 650, 653 (2d. Cir. 1988). The material misstatement that was made by Levi Strauss was that there

was no pending proceeding in the Patent and Trademark Office or in a court within which there was a claim adverse to registrant's right to keep the mark of Registration No. 1,139,254 on the register. Levi Strauss knew that there was pending at that time the Lois Sportswear litigation in which Lois Sportswear had made a clear claim that the mark of Registration No. 1,139,254 was not susceptible of appropriation or protection and no longer functioned as a designation of source or origin, either of which allegations, if proven, could have resulted in the cancellation of the registration. That information, if disclosed in the affidavit of incontestability, would very probably have resulted in a refusal by the PTO to acknowledge the filing of the affidavit.

31.    At the very least, the omission from the declaration of incontestability of any reference to, or mention of, the Lois Sportswear litigation did not reflect the uncompromising candor that is required of registrants before the Patent and Trademark Office. *Orient Express,* at 653.

32.    The penalties that have been imposed by courts for withholding material information from the Patent and Trademark Office in connection with applications for registration or declarations of use or incontestability have been cancellation of the registration, or denial of the right of the registrant to rely on that registration in a proceeding, or removal of the status of incontestability.

33.    In *Robi v. Five Platters, Inc.,* 198 F.2d 1439 (9th Cir. 1990), the Court of Appeals affirmed an order of the District Court cancelling three registrations. The Court wrote, "Any false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration [citation omitted]. In

10

particular, filing a fraudulent incontestability affidavit provides a basis for cancelling the registration itself." 918 F.2d at 1444.

34.    In *Duffy-Mott Company, Inc. v. Cumberland Packing Company*, 424 F.2d 1095 (CCPA 1970), the Court held that a party which had filed a false declaration of incontestability precluded reliance on the registration in an opposition before the Trademark Trial and Appeal Board. 424 F.2d at 1098 – 1099. In that case, the false affidavit of incontestability had been filed by the opposer's predecessor.

35.    The least serious sanction for filing a false declaration of incontestability has been the removal from the registration of the status and protection of incontestability. *Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*, 2007 U.S. Dist. LEXIS 4026, United States District Court for the Middle District of Florida (June 4, 2007), a copy of which is attached as Exhibit 10; *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F. 2d 1529, 1540 – 1541 (11th Cir. 1986). In both Estefan and Sizzler, the fatal defect in the affidavit or declaration of incontestability was an erroneous statement that there had been no decision adverse to a registrant's claim of ownership or validity of the mark and that there was no proceeding pending in which those rights were involved.

36.    In the Patent and Trademark Office, the Trademark Trial and Appeal Board has ordered the cancellation of a registration for which a fraudulent declaration of incontestability had been filed. *Mister Leonard Inc. v. Jacques Leonard Couture Inc.*, 23 USPQ2d 1064 (TTAB 1992), attached as Exhibit 9.

37.    In light of the pendency of the Lois Sportswear v. Levi Strauss litigation on the date on which the combined affidavit of use and incontestability for Registration No. 1,139,254 was filed in the Patent and Trademark Office, the affirmative defenses pleaded

11

by Lois Sportswear that the mark of Registration No. 1,139,254 had lost distinctiveness and was not capable of indicating source or origin of products from Levi Strauss, and the complete omission from the affidavit filed by Levi Strauss of any reference to the pending Lois Sportswear litigation with the challenge to the continued validity and therefore of the right of the mark of Registration No. 1,139,254 to remain on the register, precedent, including the Robi case in the Ninth Circuit, indicates that the registration should be cancelled, denied any effect in litigation, or denied the status of being an incontestable mark.

38.    I am being compensated for my services at the rate of $650 per hour plus expenses.  I have no pecuniary or financial interest in either party, and I have no pecuniary or financial interest in the final decision or result of this litigation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 30, 2008.

David J. Kera

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of June, 2008, I caused a true and correct copy

of the Expert Report and Opinion of David J. Kera to be served to the following:

| | |
|---|---|
| _____ HAND DELIVERY | Gregory S. Gilchrist |
| ___✓___ U.S. MAIL | Gia L. Cincone |
| _____ OVERNIGHT MAIL | Townsend & Townsend and Crew LLP |
| _____ FAX TRANSMISSION | Two Embarcadero Center, Eighth Floor |
| _____ EMAIL | San Francisco, CA  94111-3834 |
| | fax 415.576.0300 |
| | gsfilchrist@townsend.com |
| | glcincone@townsend.com |

# EXHIBIT 1

## DAVID J. KERA

## BIOGRAPHICAL STATEMENT

EDUCATION:

Harvard Law School,
Cambridge, Massachusetts:
Juris Doctor, June 1955

New York University,
New York, New York
Bachelor of Arts, June 1950

REGISTRATIONS
& MEMBERSHIPS:

New York State Bar

District of Columbia Bar

Virginia State Bar

United States Supreme Court

U.S. Courts of Appeals for the Second, Eleventh, District of
Columbia, and Federal Circuits

Bars of the U.S. District Courts for the Southern and Eastern
Districts of New York, District of Columbia, and Eastern District
of Virginia

American Bar Association

American Intellectual Property Law Association

International Trademark Association

Who's Who in American Law

F I C P I

## EXPERIENCE:

1981-1983, Counsel for Trademarks and 1983 to date, Member of Oblon, Spivak, McClelland, Maier & Neustadt, P.C.

1975-1976 and 1977-1981: Administrative Trademark Judge, Trademark Trial and Appeal Board, U.S. Patent and Trademark Office

1976-1977: Special Assistant to Assistant Commissioner for Trademarks

1971-1975: Private practice in trademark and copyright law

1965-1971: Trademark Attorney and Assistant Trademark Counsel, Bristol-Myers Company

1955-1965: Private foreign trademark practice

## EXPERT WITNESS:

Please see attached List of Expert Witness Cases

## LAW SCHOOL TEACHING:

George Mason University
School of Law, Adjunct Professor, 1990 to 1997

Franklin Pierce Law Center
Visiting and Adjunct Professor, 1999, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008

## LECTURER:

(1)    Patent Resources Group, 1974, 1984.

(2)    New York University School of Law Advanced Trademark Seminar, 1978-1982

(3)    BNA-PTO Conference on Practice Before the Trademark Trial and Appeal Board, 1978 (Editor of Course Book)

(4)    National Council of Patent Law Associations, 1979

(5)    P.T.O. Academy for Trademark Examiners

(6)    Illinois Institute for Continuing Legal Education, 1979

(7)    Minnesota Patent and Trademark Law Association, 1979

(8)    Washington State/Oregon Patent Law Associations, 1979, 1994

(9)    California State Bar, 1980

(10)   District of Columbia Bar, 1981

(11)   Cleveland Patent Law Association, 1982

(12)   Pittsburgh Patent Law Association, 1982

(13)   International Trademark Association (formerly United States Trademark Association) 1980, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004

(14)   University of London, Queen Mary College, 1989

(15)   Trademark World Conference (London), 1989

(16)   Franklin Pierce Law Center, Program on Trademark Litigation, 1991

(17)   Virginia State Bar, Intellectual Property Law Section Continuing Legal Education Seminar, 1992, 1995

(18)   Franklin Pierce Law Center, 1994, 1996, 1999, 2001, 2002, 2003, 2004, 2005, 2006

(19)   ALI-ABA Conference on Trademark Dilution After Victoria's Secret, 2004

(20)   Minneapolis State Bar Association, Continuing Legal Education, 2005

(21)  Colorado Bar Association, Intellectual Property
      Law Section, Contested Proceedings at the
      Trademark Trial and Appeal Board and Business
      Decisions, Denver, Colorado, July 2006

(22)  Minneapolis State Bar Association, Continuing
      Legal Education, 2008

PUBLICATIONS:

(1)   <u>Enforcing and Exploiting Trademarks</u>, Patent and
      Trademark Review, Vol. 73, Nos. 3-11 (1975)

(2)   <u>Trademark Licensing</u>, <u>Franchising and Antitrust
      Problems</u>, Patent Resources Group (1984)

(3)   Trademark Rules of Practice (principal author) 37
      C.F.R., Part 2 (1983)

(4)   <u>Preparing and Filing Briefs</u>, 66 TMR 141 (1976)

(5)   <u>Family of Marks</u>, 67 TMR 419 (1977)

(6)   <u>Should A Defendant Be Active or Passive</u>, 69 TMR
      159 (1979)

(7)   <u>Summary Judgment</u>, 71 TMR 59 (1981)

(8)   The Forty-Third Year of Administration of The
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 80 TMR 591
      (1990)

(9)   The Forty-Fourth Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 81 TMR 601
      (1991)

(10)  The Forty-Fifth Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 82 TMR 1041
      (1992)

(11)  <u>Anti-Dilution Protection in the United States</u>,
      Trademark World, July/August 1992

(12)  The Forty-Sixth Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 83 TMR 904
      (1993)

(13)  The Forty-Seventh Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 84 TMR 635
      (1994)

(14)  The Forty-Eighth Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 85 TMR 607
      (1995)

(15)  Anomalies In the Trademark Act From a
      Perspective of Fifty Years, 86 TMR 522 (1996)

(16)  The Forty-Ninth Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 86 TMR 651
      (1996)

(17)  The Fiftieth Year of Administration of the Lanham
      Trademark Act of 1946 (developments at the Court
      of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 87 TMR 741
      (1997)

(18)  The Fifty-First Year of Administration of the
      Lanham Trademark Act of 1946 (developments at
      the Court of Appeals for the Federal Circuit and the
      Trademark Trial and Appeal Board), 89 TMR 1
      (1999)

(19)   The Fifty-Second Year of Administration of the Lanham Trademark Act of 1946 (developments at the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board), 90 TMR 1 (2000)

(20)   The Fifty-Third Year of Administration of the Lanham Trademark Act of 1946 (developments at the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board, 91 TMR 1 (2001)

(21)   The Fifty-Fourth Year of Administration of the Lanham Trademark Act of 1946 (developments at the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board, 92 TMR 1 (2002)

(22)   The Fifty-Fifth Year of Administration of the Lanham Trademark Act of 1946 (developments at the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board, 93 TMR 197 (2003)

(23)   The Fifty-Sixth Year of Administration of the Lanham Trademark Act of 1946 (developments at the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board, 94 TMR 1 (2004)

(24)   The Fifty-Seventh Year of Administration of the Lanham Trademark Act of 1946 (developments at the Court of Appeals for the Federal Circuit and the Trademark Trial and Appeal Board, 95 TMR 1 (2005)