# EXHIBIT 6

03/18/08  09:25 FAX 818 557 5077       COURTS LIBRARY SD                    ☐002

# U.S. DEPARTMENT OF COMMERCE
## Patent and Trademark Office
### Washington, DC 20231

### TRADEMARK MANUAL OF EXAMINING PROCEDURE
First Edition

#### Instructions Regarding Revision No. 6

The attached revision pages constitute a consolidated edition. All revisions, including Revision 5, have been consolidated with the first edition. These revision pages replace all existing Manual pages.

The Notation "[R–6]" in the attached pages appears at the title of a new or revised section. The attached "pink pages" summarize the changes to the Manual.

The text of the Manual reflects the amendments to the Trademark Rules of Practice through June 1983. The Manual has been changed to incorporate the substance of the 1983 series of Examination Guides.

Carlisle E. Walters
Editor, Trademark Manual
of Examining Procedure



PROPERTY OF THE UNITED STATES
RECEIVED

SEP 8 1986

LIBRARY, U.S. COURTS
SAN DIEGO, CALIFORNIA
LIBRARIAN'S OFFICE

Rev. 6, Dec. 1983

Ex. T-1

Keyes Ex T

03/18/08  08:25 FAX 919 557 5077    COURTS LIBRARY SD

1502.03  Withdrawal from Appeal
1502.04  Fee for Appeal
1502.05  Amendment After Decision on Appeal
1503  Publication and Opposition
1503.01  Search Immediately Prior to Publication
1503.02  Examining Attorney's Jurisdiction
1503.02(a)  Request for Jurisdiction

1503.03  Letter of Protest in Pending Applications
1503.04  Opposition Procedure
1503.04(a)  Filing an Opposition
1503.04(b)  Joining Persons in an Opposition
1503.04(c)  Time for Opposing
1503.04(d)  Extension of Time to Oppose
1503.04(e)  Fee for Filing Opposition
1504  Concurrent Use

# Chapter 1600 Registration and Post-Registration Procedures

1601  Duration of Registrations
1601.01  Act of 1946
1601.02  Acts of 1905 and 1881
1601.03  Act of 1920
1602  Bringing Prior Act Registrations Under 1946 Act, Section 12(c)
1602.01  Affidavit of Use During Sixth Year
1602.02  Cancellation and Incontestability
1602.03  Notification of Registrant, and Printing of Mark in Official Gazette
1603  Affidavit of Use or Nonuse of Mark in Commerce Under Section 8
1603.01  Registrations to Which Affidavit Pertains
1603.01(a)  Affidavit Filed When Not Required
1603.02  Notification of Affidavit Being Due
1603.02(a)  Giving Notice in Sixth Year Is Not Required
1603.03
1603.03(a)  Premature Filing of Affidavit
1603.04  Fee for Filing Affidavit
1603.05  Ownership, and Who May File Affidavit
1603.05(a)  Change of Owner
1603.05(b)  Change of Name
1603.06  Character of Use of Mark
1603.07  Showing of Use of Mark in Commerce
1603.08  Showing Regarding Nonuse of Mark
1603.09  Change from Mark as Registered
1603.09(a)  Possible Amendment of Mark in Registration
1603.10  Goods in Connection with Affidavit
1603.11  Amendment in Connection with the Affidavit
1603.12  Office Action on Affidavit
1603.13  Registrant's Recourse
1604  Affidavit of Incontestability Under Section 15

1604.01  Registrations to Which Affidavit Pertains
1604.02  Time of Filing the Affidavit
1604.03  Requirements for the Affidavit
1604.04  Combining Sections 8 and 15 Affidavits
1605  Renewal of Registration
1605.01  Time for Filing Application for Renewal
1605.01(a)  Premature Filing
1605.02  Fee for Filing Application for Renewal
1605.03  Ownership, and Who May File Application for Renewal
1605.03(a)  Change of Owner
1605.03(b)  Change of Name
1605.04  Character of Use of Mark
1605.05  Showing of Use of Mark
1605.06  Showing Regarding Nonuse of Mark
1605.07  Change from Mark as Registered
1605.08  Goods in Application for Renewal
1605.09  Foreign Applicant for Renewal
1605.10  Form of Application for Renewal
1605.11  Office Action on Application for Renewal
1605.12  Registrant's Recourse
1606  Cancellation of Registrations
1607  Surrender or Amendment of Registrations
1607.01  Surrender of Registration for Cancellation
1607.02  Amendment of Mark in Registration
1607.02(a)  Determining What Constitutes Material Alteration of Mark
1607.02(b)  Ways of Changing Mark
1607.02(c)  Supporting Specimens
1607.03  Amendment of Registration, Other Than Mark
1607.04  Correction of Mistake in Registration

Ex. T-2

1603.13          TRADEMARK MANUAL OF EXAMINING PROCEDURE

istrant may within six months after a refusal request reconsideration of the refusal by the Examiner giving reasons to support the request.

*Petition to Commissioner:*

A request for reconsideration shall be a condition precedent to a petition to the Commissioner to review the refusal of the affidavit or declaration unless the first action refusing the affidavit or declaration directs the registrant to petition the Commissioner for relief, in which event the petition must be filed within six months from the date of mailing of the action. See Rule 2.165(a)(2) (37 CFR § 2.165(a)(2)).

If, upon a request for reconsideration, the refusal of the affidavit or declaration is adhered to, the registrant may petition the Commissioner to review the action under Rule 2.146(a)(2) (37 CFR § 2.146(a)(2)). The petition to the Commissioner requesting review of the action adhering to the refusal of the affidavit or declaration must be filed within six months from the date of mailing of the action which adhered to the refusal. See Rule 2.165(b) (37 CFR § 2.165(b)).

*Final Action of the Office:*

The decision of the Commissioner on a request under Rule 2.146 (37 CFR § 2.146) constitutes the final action of the Patent and Trademark Office.

At the time when there is no acceptable affidavit timely filed, no request for reconsideration by the Examiner pending, and no review had or pending by the Commissioner under Rule 2.146 (37 CFR § 2.146) the Office will send a notice to registrant indicating that the affidavit filed is insufficient and the time for filing is past. This notice constitutes the final action of the Office. In the absence of appeal within sixty days, the registration will be cancelled forthwith.

*Appeal:*

Actions of the Examiner on affidavits under Section 8 are not appealable to the Trademark Trial and Appeal Board.

Appeal may be taken to a court from the decision of the Commissioner. Rule 2.145 (37 CFR § 2.145); 15 U.S.C. 1071. A petition to the Commissioner for review of the action shall be a condition precedent to an appeal to or an action for review by any court. See Rule 2.165(d) (37 CFR § 2.165).

*Petition or Appeal Does Not Stay Time for Filing:*

Proceedings during which the sufficiency of an affidavit is being considered do not change the time within which an acceptable affidavit

must be filed. An acceptable affidavit still must be filed within the sixth year. If an affidavit is held to be acceptable as a result of such proceedings, it is acceptable as of the date it was originally filed. If an affidavit is found to be unacceptable as a result of reconsideration, petition or appeal, after the sixth year has passed, it is not possible then to file a new affidavit.

## 1604   Affidavit of Incontestability Under Section 15 [R–5]

Section 15 of the Trademark Act of 1946 permits certain registrants to file affidavits as to marks in certain registrations under specified circumstances whereby such marks shall be incontestable.

Each eligible registrant has the option of deciding whether or not to take advantage of these provisions. A registrant may choose to claim the benefits of incontestability and file an affidavit to that end, or he may elect to retain the registration without those benefits. The *term* of the registration, for purpose of renewal, is not affected in either event.

The Office does not examine the merits of affidavits under Section 15. If the affidavit is presented at the proper time for an eligible registration, it is placed in the file without regard to its sufficiency and the Office merely notifies the registrant that the affidavit has been placed in the file. The affidavits are inspected, however, and if an inconsistency or substantial error is observed, this fact is called to registrant's attention in the letter of notification. The Office makes no requirement for correction, and the submission of another affidavit is optional with registrant. If the error amounts to noncompliance with a statutory requirement, the notation "Sec. 15 Affidavit Received" is *not* stamped on the Office copies of the registration in the trademark search room; copies are so stamped when affidavits do comply with the statutory requirements.

A fee is required for affidavits filed in accordance with Section 15. See Trademark Rule 2.6 (37 CFR § 2.6).

## 1604.01   Registrations to Which Affidavit Pertains

The provisions of Section 15 apply only to registrations issued on the Principal Register of the Act of 1946, and to registrations issued under the Acts of 1905 and 1881 which have been "published" in order to claim the benefits of the Act of 1946.

Rev. 6, Dec. 1983                              214

Ex. T-3

03/18/08  09:27 FAX 619 557 5977    COURTS LIBRARY SD    @005
Case 3:07-cv-03752-JSW    Document 62-25    Filed 03/21/2008    Page 5 of 5

Specifically excluded from the provisions of Section 15 are marks registered on the Supplemental Register of the Act of 1946, marks registered under the Act of 1920, and marks registered under the Acts of 1905 and 1881 which have not claimed the benefits of the Act of 1946.

### 1604.02  Time of Filing the Affidavit

The affidavit may be filed after a period of 5 consecutive years in which the mark has been in continuous use. This may be any 5 year period which is subsequent to the date of registration for registrations under the Act of 1946 and subsequent to the date of filing the affidavit under Section 12(c) bringing 1905 and 1881 Act marks under the Act of 1946.

Registrant is given one year after the 5 year period which is selected in which to file the affidavit, and the affidavit must be both executed and filed within said one year period.

Affidavits executed and filed on the anniversary dates at the beginning of the fifth and sixth years are considered to be filed within the year period and are placed in the registration files.

If an affidavit is not executed and filed within the prescribed time, or is filed for a registration which is not eligible for the benefits of Section 15, the affidavit will be returned.

### 1604.03  Requirements for the Affidavit

Section 15 states that the specified information be merely "set forth" in the affidavit, and therefore no showing or proof beyond registrant's sworn statement (or declaration) is required.

The affidavit must give the names of the items which are listed in the registration as issued, in connection with which the mark has been continuously used for the required time. If more than one affidavit is filed for different items in the same registration, the affidavits are merely placed in the file as a matter of record.

The use on which the affidavit is based must be use in commerce. This is true for foreign as well as domestic registrants, and whether registration was based on use or on foreign registration.

The affidavit must state that there has been no final decision adverse to registrant's claim of ownership of the mark for the goods or services, or to registrant's right to register the same or to keep the same on the register. It must also state that there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of, and "proceeding" has been interpreted to mean registrant being in position either of plaintiff or defendant.

If the Office finds facts contrary to either of the foregoing statements, registrant will be notified and the search room copy of the registration will not be stamped. TMEP section 1604.

The affidavit must be filed by the person who is the owner of the registration at the time the affidavit is filed, in order to be effective.

Amendments or corrections to affidavits are not accepted for processing. Substitute affidavits are merely placed in the file if timely filed for an eligible registration.

### 1604.04  Combining Section 8 and 15 Affidavits vits

The affidavit under Section 15 may be combined with the affidavit under Section 8 into one document, when a registrant elects to use the first five years after registration or Section 12(c) "publication" as the five-year period of continuous use for Section 15. In that situation the selected time for filing the Section 15 affidavit coincides with the required time for filing the Section 8 affidavit.

### 1605   Renewal of Registration

*15 U.S.C. 1059. (a) Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.*

### 1605.01  Time for Filing Application for Renewal [R–6]

The application for renewal should be filed within the six months period preceding the expiration of the registration. It may not be filed prior to the six months, but there is a grace period of three months following the expiration of a registration during which an application for renewal may be filed. Such an application during the following three months is commonly called a late or delayed application to renew.

The application for renewal must be executed within the times specified for filing.

An application for renewal filed during the three months grace period is subject to payment of an additional fee, regardless of whether it was executed before or after the expiration of the

Ex. T-4

# EXHIBIT 7

# Trademark Manual
## of
# Examining Procedure
# (TMEP)

**First Edition, January 1974**

**Latest Revision January 1986**



**U.S. DEPARTMENT OF COMMERCE  •  PATENT AND TRADEMARK OFFICE**

i

Rev. 7, Jan. 1986

Ex. U-1

Keyes Ex U

The Trademark Manual of Examining Procedure may be ordered, on a subscription basis, from the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402.

The Patent and Trademark Office does not handle the sale of the Manual, or the distribution of notices and revisions or changes of address of those on the subscription list. Correspondence relating to any of the above items should be sent to the Superintendent of Documents at the following address

> Superintendent of Documents
> United States Government Printing Office
> Customer Service Section SSOS
> Washington, D.C. 20402

Orders for individual replacement pages not amounting to a complete revision of the Manual should be sent to the following address

> Commissioner of Patents and Trademarks
> Attention Customer Services Division
> Washington, D.C. 20231

The cost per page will be 30¢ (37 CFR § 2.6(b)).

Charges may be made to deposit accounts if the requester is an account holder in good standing at the time the request is received. Checks or money orders should be made payable to the Commissioner of Patents and Trademarks. Requests must identify the specific pages required and the number of copies of each page.

Employees of the Patent and Trademark Office should direct their orders for the Manual, replacement pages, notices, and revisions to the Editor of the Trademark Manual.

> First Edition, January 1974
> Revision 1, January 1976
> Revision 2, January 1977
> Revision 3, January 1978
> Revision 4, January 1979
> Revision 5, December 1982
> (consolidated edition)
> Revision 6, December 1983
> (consolidated edition)
> Revision 7, January 1986
> (consolidated edition)

Ex. U-2

REGISTRATION AND POST-REGISTRATION PROCEDURES                                    1604.03

## Final Action of the Office

The decision of the Commissioner on a request under 37 CFR § 2.146 constitutes the final action of the Patent and Trademark Office.

At the time when there is no acceptable affidavit timely filed, no request for reconsideration by the Examiner pending, and no review had or pending by the Commissioner under 37 CFR § 2.146, the Office will send a notice to registrant indicating that the affidavit filed is insufficient and the time for filing is past. This notice constitutes the final action of the Office. In the absence of appeal within sixty days, the registration will be cancelled forthwith.

## Appeal

Actions of the Examiner on affidavits under Section 8 are not appealable to the Trademark Trial and Appeal Board.

Appeal may be taken to a court from the decision of the Commissioner. 37 CFR § 2.145; 15 U.S.C. 1071. A petition to the Commissioner for review of the action shall be a condition precedent to an appeal to or an action for review by any court. *See* 37 CFR § 2.165(d).

### Petition or Appeal Does Not Stay Time for Filing

Proceedings during which the sufficiency of an affidavit is being considered do not change the time within which an acceptable affidavit must be filed. An acceptable affidavit still must be filed within the sixth year. If an affidavit is held to be acceptable as a result of such proceedings, it is acceptable as of the date it was originally filed. If an affidavit is found to be unacceptable as a result of reconsideration, petition or appeal, after the sixth year has passed, it is not possible then to file a new affidavit.

## 1604 Affidavit of Incontestability Under Section 15 [R–5]

Section 15 of the Trademark Act of 1946, 15 U.S.C. 1065, permits certain registrants to file affidavits as to marks in certain registrations under specified circumstances whereby such marks shall be incontestable.

Each eligible registrant has the option of deciding whether or not to take advantage of these provisions. A registrant may choose to claim the benefits of incontestability and file an affidavit to that end, or he may elect to retain the registration without those benefits. The *term* of the registration, for purpose of renewal, is not affected in either event.

The Office does not examine the merits of affidavits under Section 15. If the affidavit is presented in proper time for an eligible registration, it is placed in the file without regard to its sufficiency and the Office merely notifies the registrant that the affidavit has been placed in the file. The affidavits are inspected, however, and if an inconsistency or substantial error is observed, this fact is called to registrant's attention in the letter of notification. The Office makes no requirement for correction, and the submission of another affidavit is optional with registrant. If the error amounts to noncompliance with a statutory requirement, the notation "Sec. 15 Affidavit Received" is *not* stamped on the Office copies of the registration in the trademark search room; copies are so stamped when affidavits do comply with the statutory requirements.

A fee is required for affidavits filed in accordance with Section 15. *See* 37 CFR § 2.6.

## 1604.01 Registrations to Which Affidavit Pertains

The provisions of Section 15 apply only to registrations issued on the Principal Register of the Act of 1946, and to registrations issued under the Acts of 1905 and 1881 which have been "published" in order to claim the benefits of the Act of 1946.

Specifically excluded from the provisions of Section 15 of the Trademark Act, 15 U.S.C. 1065, are marks registered on the Supplemental Register of the Act of 1946, marks registered under the Act of 1920, and marks registered under the Acts of 1905 and 1881 which have not claimed the benefits of the Act of 1946.

## 1604.02 Time of Filing the Affidavit

The affidavit may be filed after a period of 5 consecutive years in which the mark has been in continuous use. This may be any 5 year period which is subsequent to the date of registration for registrations under the Act of 1946 and subsequent to the date of filing the affidavit under Section 12(c) bringing 1905 and 1881 Act marks under the Act of 1946. 15 U.S.C. 1062.

Registrant is given one year after the 5 year period which is selected in which to file the affidavit, and the affidavit must be both executed and filed within said one year period.

Affidavits executed and filed on the anniversary dates at the beginning of the fifth and sixth years are considered to be filed within the year period and are placed in the registration files.

If an affidavit is not executed and filed within the prescribed time, or is filed for a registration which is not eligible for the benefits of Section 15, the affidavit will be returned.

## 1604.03 Requirements for the Affidavit [R–7]

Section 15 states that the specified information be merely "set forth" in the affidavit, and therefore no showing or proof beyond registrant's sworn statement (or declaration) is required.

The affidavit must give the names of the items which are listed in the registration as issued, in connection with which the mark has been continuously used for the required time. If more than one affidavit is filed for different items in the same registration, the affidavits are merely placed in the file as a matter of record.

The use on which the affidavit is based must be use in commerce. This is true for foreign as well as do-

Ex. U-3

1604.03                    TRADEMARK MANUAL OF EXAMINING PROCEDURE

mestic registrants, and whether registration was based on use or on foreign registration.

The affidavit must state that there has been no final decision adverse to registrant's claim of ownership of the mark for the goods or services, or to registrant's right to register the same or to keep the same on the register. It must also state that there is no proceeding which challenges these rights pending in the Patent and Trademark Office or in a court and not finally disposed of. Section 15 of the Trademark Act, 15 U.S.C. 1065. (A proceeding involving the mark in which registrant is the plaintiff, and there is no counterclaim involving registrant's rights in the mark, does not preclude acceptance of a Section 15 affidavit.) If the Office finds facts contrary to either of the foregoing statements, registrant will be notified and the search room copy of the registration will not be stamped. TMEP section 1604.

The affidavit must be filed by the person who is the owner of the registration at the time the affidavit is filed, in order to be effective.

Amendments or corrections to affidavits are not accepted for processing. Substitute affidavits are merely placed in the file if timely filed for an eligible registration.

## 1604.04 Combining Section 8 and 15 Affidavits

The affidavit under Section 15 may be combined with the affidavit under Section 8 into one document, when a registrant elects to use the first five years after registration or Section 12(c) "publication" as the five-year period of continuous use for Section 15. In that situation the selected time for filing the Section 15 affidavit coincides with the required time for filing the Section 8 affidavit.

## 1605 Renewal of Registration

15 U.S.C. 1059. (a) Each registration may be renewed for periods of twenty years from the end of the expiring period upon payment of the prescribed fee and the filing of a verified application therefor, setting forth those goods or services recited in the registration or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark. Such application may be made at any time within six months before the expiration of the period for which the registration was issued or renewed, or it may be made within three months after such expiration on payment of the additional fee herein prescribed.

## 1605.01 Time for Filing Application for Renewal [R–6]

The application for renewal should be filed within the six months period preceding the expiration of the registration. It may not be filed prior to the six months, but there is a grace period of three months following the expiration of a registration during which an application for renewal may be filed. Such an application during the following three months is commonly called a late or delayed application to renew.

The application for renewal must be executed within the times specified for filing.

An application for renewal filed during the three months grace period is subject to payment of an additional fee, regardless of whether it was executed before or after the expiration of the registration. If deficiencies in an application to renew are cured during the three months period, the additional fee must be paid, and if a substitute application replacing an unacceptable application is filed during the three months period, the additional fee must be paid. See 37 CFR § 2.182.

It is acceptable to file an application for renewal on the anniversary date at the end of the twenty year period.

The six months period prior to expiration and the three months period following expiration of the registration are calendar months.

See section 702.02 and 37 CFR § 1.10 for "Express Mail" Procedure for avoiding lateness due to mail delay. The certificate of mailing procedure provided in TMEP section 702.03 and 37 CFR § 1.8 does not apply to applications for renewal of registration.

## 1605.01(a) Premature Filing

If the application for renewal is filed prior to the six months period preceding the expiration of the registration, it will be returned. If the application for renewal is executed prior to the six months period but is filed during the six months period, the application will also be returned.

## 1605.02 Fee for Filing Application for Renewal. [R–5]

A fee is required for filing an application for renewal. The fee is determined by the number of classes in the registration for which renewal is requested. A fee for each class is required. 15 U.S.C. 1113(2); (37 CFR § 2.6). For use of international classification or prior United States classification, see TMEP section 1401.01.

If the application for renewal is filed during the three months grace period following expiration of the registration, there is an additional fee for each class in the registration, calculated as set forth in TMEP sections 1401.02 and 1401.04.

Where the amount of the fee received on filing an application for renewal is sufficient for at least one class of goods or services but is less than the required amount because multiple classes in a registration are involved, the renewal application will not be refused on the ground that the amount of the fee was insufficient if the required additional amount of the fee is received in the Patent and Trademark Office within the time limit set forth in the notification of this defect by the Office, or if action is sought only for the number of classes equal to the number of fees submitted. See 37 CFR § 2.85(c).

Rev. 7, Jan. 1986                    1600–8

Ex. U-4

# EXHIBIT 8

# TRADEMARK MANUAL
# OF
# EXAMINING PROCEDURE
# (TMEP)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

**Fifth Edition, September 2007**

Ex. S-1

**Foreword to the Fifth Edition**

The Trademark Manual of Examining Procedure (TMEP) may be downloaded free of charge from the United States Patent and Trademark Office (USPTO) website at www.uspto.gov.

The Manual is published to provide trademark examining attorneys in the USPTO, trademark applicants, and attorneys and representatives for trademark applicants, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. The Manual contains guidelines for Examining Attorneys and materials in the nature of information and interpretation, and outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications.

Trademark Examining Attorneys will be governed by the applicable statutes, the Trademark Rules of Practice, decisions, and Orders and Notices issued by the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, Commissioners, or Deputy Commissioners. Policies stated in this revision supersede any previous policies stated in prior editions, examination guides, or any other statement of Office policy, to the extent that there is any conflict.

Suggestions for improving the form and content of the Manual are always welcome. They should be addressed to:

> Commissioner for Trademarks
> Attention: Editor, Trademark Manual of Examining Procedure
> P.O. Box 1451
> Alexandria, Virginia 22313-1451

> Mary E. Hannon
> *Editor*

> Lynne G. Beresford
> *Commissioner for Trademarks*

September 2007

Ex. S-2

REGISTRATION AND POST REGISTRATION PROCEDURES

**1605.03**      **Time for Filing Affidavit of Incontestability**

A §15 affidavit may not be filed until the federally registered mark has been in continuous use in commerce for at least five consecutive years after the date of registration. This may be any five-year period after the date of registration for marks registered under the Act of 1946, or after the date of publication under §12(c) for marks registered under the Acts of 1905 and 1881.

The registrant may file the affidavit within one year after the five-year period that is selected. 37 C.F.R. §2.167(f). The affidavit must be both executed and filed within that one-year period. If the affidavit is filed too early, the USPTO will not review it and will refund the filing fee. A new affidavit, with a fee, can be submitted during the statutory filing period.

Under 37 C.F.R. §2.195(a)(2), an affidavit filed through TEAS is considered to have been filed on the date the USPTO receives the transmission, regardless of whether that date is a Saturday, Sunday, or Federal holiday within the District of Columbia.

If the affidavit is filed on paper, the owner may use certificate of mailing or certificate of facsimile transmission procedures to avoid lateness. *See* TMEP §§305.02 and 306.05.

*See* TMEP §1605.05 regarding a combined affidavit under §§8 and 15 of the Act.

**1605.04**      **Requirements for Affidavit or Declaration of Incontestability**

Section 15 of the Act refers to the affidavit or declaration merely as "setting forth" the specified information. *See* 15 U.S.C. §1065(3). Therefore, no showing or proof beyond the owner's verified statement is required.

*Must be Filed by Owner.* In order to be effective, the §15 affidavit or declaration must be filed by the person who is the owner of the registration at the time the affidavit is filed. If the affidavit was filed by the wrong party, the true owner may file a new affidavit, with a new filing fee.

*Fee.* A fee is required for each class in the registration to which the §15 affidavit or declaration pertains. *See* 37 C.F.R. §§2.6 and 2.167(g). If insufficient fees are included with the affidavit, the examiner will issue an Office action allowing applicant additional time to submit the required fees. 37 C.F.R. §2.167(g).

*Goods/Services Must be Recited.* The §15 affidavit must specify the goods or services recited in the registration on or in connection with which the mark has been in continuous use for the five-year period after the date of registration or publication under §12(c), and is still in use in commerce.

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

15 U.S.C. §1065(3); 37 C.F.R. §2.167(c). More than one affidavit may be filed at different times for different goods/services in the same registration.

*Mark Must be in Use in Commerce.* Regardless of the basis for registration, the use on which the §15 affidavit is based must be use in commerce. This applies to foreign as well as domestic registrants. It is not necessary to specify the type of commerce (*e.g.,* interstate) in which the mark is used. The USPTO presumes that someone who states that the mark is in use in commerce is stating that the mark is in use in a type of commerce that the United States Congress can regulate, unless there is contradictory evidence in the record. *See* TMEP §§901 *et seq.* regarding use in commerce.

*No Adverse Decision or Pending Proceeding Involving Rights in the Mark.* The §15 affidavit must state that there has been no final decision adverse to the owner's claim of ownership of the mark for the goods or services, or to the owner's right to register the mark or to keep the mark on the register. It must also state that there is no proceeding involving these rights pending in the USPTO or in a court and not finally disposed of. 15 U.S.C. §§1065(1) - 1065(3); 37 C.F.R. §§2.167(d) and (e). If the USPTO finds facts contrary to either of the foregoing statements, the USPTO will not acknowledge receipt of the §15 affidavit. *See* TMEP §1605. (The USPTO does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a "proceeding involving these rights" that would preclude the filing or acknowledgment of a §15 affidavit.)

If the USPTO finds that there is a proceeding pending that involves the owner's right to register the mark or to keep the mark on the register, the USPTO will not acknowledge the affidavit, even if the proceeding was instituted after the owner filed the §15 affidavit but before the affidavit was reviewed by the examiner. If a pending proceeding is later dismissed, the owner may file a new affidavit, with a new filing fee.

*Verification.* The §15 affidavit must be signed and verified (sworn to) or supported by a declaration under 37 C.F.R. §2.20 by a person properly authorized to sign on behalf of the owner of the registration. A "person who is properly authorized to sign on behalf of the owner" is: (1) a person with legal authority to bind the owner; (2) a person with firsthand knowledge of the facts and actual or implied authority to act on behalf of the owner; or (3) an attorney as defined in 37 C.F.R. §10.1(c) who has an actual written or verbal power of attorney or an implied power of attorney from the owner. Generally, the USPTO does not question the authority of the person who signs a §15 affidavit, unless there is an inconsistency in the record as to the signatory's authority to sign.

*See* TMEP §804.05 regarding signature of electronically filed affidavits or declarations.

# EXHIBIT 9

I believe also that a Parisian origin for T-shirts and sweatshirts would be material to the decision to purchase applicant's goods. Applicant argues that, while Paris is a renowned center for haute couture, it can boast no such renown for the manufacture of casual clothing such as T-shirts and sweatshirts. Applicant concludes, therefore, that a prospective purchaser would be indifferent to whether a T-shirt or sweatshirt had its origin in Paris. I am not persuaded by applicant's argument. Paris has long been famous as a fashion center (and applicant would appear to admit as much, at least with respect to high fashion garments). That being the case, an item of clothing originating in Paris would be deemed desirable by purchasers, even where that item clothing is a humble (although not necessarily cheap, I should add) T-shirt or sweatshirt.

I would affirm the refusal to register under Section 2(a).

---

## U.S. Patent and Trademark Office
### Trademark Trial and Appeal Board

Mister Leonard Inc. v. Jacques Leonard Couture Inc.

Cancellation No. 19,241

Decided April 22, 1992
Released May 12, 1992

## TRADEMARKS AND UNFAIR TRADE PRACTICES

1. **Practice and procedure in Patent and Trademark Office — Fraud or inequitable conduct (§325.07)**

Statements which were made by corporate registrant's officer in letter to counsel which formed basis for preparation of combined Section 8 and Section 15 declaration and which were false, material, and made knowingly constitute fraud on Patent and Trademark Office, even if second officer possessing less knowledge actually signed declaration without knowing that statements contained therein were false; further, applicant is under duty to correct material, false statements made to PTO when their falsity becomes known.

Trademark cancellation no. 19,241, by Mister Leonard Inc. against Jacques Leonard Couture Inc., registration no. 1,239,520, issued May 24, 1983. On petitioner's motion for summary judgment. Granted.

Maureen C. Kassner, of Panitch, Schwarze, Jacobs & Nadel, Philadelphia, Pa., for Mister Leonard Inc.

Mark I. Peroff, of Liddy, Sullivan, Galway, Begler & Peroff, New York, N.Y., for Jacques Leonard Couture Inc.

Before Sams, Hanak, and Hohein, members.

Hanak, member.

Mister Leonard, Inc. (petitioner) filed a petition for cancellation of Registration No. 1,239,520 for the trademark LEONARD on the basis that Jacques Leonard Couture, Inc. (registrant) fraudulently filed a false Section 8 and 15 declaration to maintain that registration, and then perpetuated the fraud on the Patent and Trademark Office (PTO) by failing to correct the false statement contained in that declaration. In its answer, registrant denied that it had committed fraud on the PTO.

This matter is now before us on a motion for summary judgment filed by petitioner. The motion has been contested by registrant. The undisputed facts are as follows. On May 24, 1983 Registration No. 1,239,520 for the mark LEONARD in typed capital letters issued to registrant. The goods listed in that registration were "dresses, pants, ski wear, tennis wear, hats, coats and raincoats for women, scarves and bathing costumes for men and women, ties."

On May 21, 1986, registrant — as opposer in Opposition No. 72,113 — served on petitioner (as applicant in the opposition proceeding) answers to interrogatories. In response to Interrogatory No. 2 which asked registrant/opposer to "identify each of the officers, directors, managerial and/or supervisory employees of opposer who are most familiar with opposer's past and/or present use of LEONARD," registrant/opposer answered simply "Joan Arkin, c/o Jacques Leonard Couture, Inc., 550 Seventh Avenue, New York, New York." In response to Interrogatory No. 18, registrant/opposer stated that "opposer does not sell men's clothing under the LEONARD mark." The foregoing interrogatory answers were signed on May 21, 1986 on behalf of registrant/opposer by "Joan Arkin, manager."

On October 6, 1988, counsel for registrant wrote to Joan Arkin at Jacques Leonard Couture, Inc. and, among other things, posed the following two questions: "First, please confirm that the trademark LEONARD is currently in use in the U.S. on these products

[dresses, pants, ski wear, tennis wear, coats and raincoats for women, scarves and bathing costumes for men and women, ties]. Second, let us know which of these items have been sold in the U.S. continuously for the last five years."

On October 12, 1988 Joan Arkin wrote back to counsel for registrant and stated, in part, the following: "I confirm that the trademark LEONARD is currently in use in the U.S. on the following products: dresses, pants, skiwear, tennis wear, coats & raincoats for women, scarves, swimwear for men & women, ties."

Subsequently, counsel for registrant prepared a Section 8 and 15 declaration which was signed by Daniel Tribouillard (registrant's president) on January 5, 1989. That declaration contained, among other things, the following statement: "The undersigned declares . . . that the mark shown therein [LEONARD] has been in continuous use in interstate commerce for five consecutive years from May 24, 1983 to the present, on or in connection with each of the following goods or services recited in the registration: dresses, pants, ski wear, tennis wear, coats and raincoats for women, scarves and bathing costumes for men and women, ties."

In her deposition of June 25, 1990 in the opposition proceeding (page 41) and in her deposition of June 13, 1991 in this proceeding (page 86) Joan Arkin conceded that registrant had not made use of the mark LEONARD in the United States on men's bathing costumes since 1986.

Based on the foregoing undisputed facts, there can be no dispute that the Section 8 and 15 declaration signed by registrant's president on January 5, 1989 was in error when it stated "that the mark shown therein [LEONARD] has been in continuous use in interstate commerce for five consecutive years from May 24, 1983 to the present, on or in connection with . . . bathing costumes for men . . .". Indeed, at page 3 of its January 6, 1992 brief in opposition to summary judgment, "registrant admits that the LEONARD mark was not used by registrant on bathing costumes for men for the five continuous years as stated therein [i.e. the section 8 & 15 declaration]."

The foregoing facts are undisputed. What is disputed are the legal conclusions to be drawn from these undisputed facts. Fraud in obtaining or maintaining a trademark registration "occurs when an applicant [or later, registrant] knowingly makes false, material representations of fact in connection with his application," or in connection with a Section 8 and/or 15 declaration or in connection with an application for renewal. *Torres v.*

*Cantine Torresella S.R.L.,* 808 F.2d. 46, 1 USPQ2d 1483, 1484 (Fed. Cir. 1986); 1 J. McCarthy, *Trademarks and Unfair Competition,* Section 20:15 at page 1058 (2d ed. 1984) ("It is relatively clear that fraud made in affidavits under sections 8 and 15, to continue a registration and obtain incontestability, also constitute fraud in 'obtaining' a registration sufficient for cancellation.")

Thus, according to *Torres,* to constitute fraud on the PTO, the statement must be (1) false, (2) a material representation and (3) made knowingly. 1 USPQ2d at 1484. In this case, there can be no doubt that the first two elements are met. The statement in the Section 8 and 15 declaration that the mark LEONARD had been used continuously in interstate commerce for five consecutive years from May 24, 1983 in connection with bathing costumes for men was totally false. Moreover, this false statement was — vis-a-vis the Section 15 portion of the declaration — material in that with this statement, the registration obtained the status of incontestability with regard to bathing costumes for men when it should not have. See *Crown Wallcovering Corp. v. Wall Paper Mfgrs. Ltd.,* 188 USPQ 141, 144 (TTAB 1975).[1]

Thus, we come to the third element required for fraud on the PTO as set forth in *Torres,* namely, whether the false, material representation was made "knowingly." 1 USPQ2d at 1484. In this regard, registrant makes much of the fact that the Section 8 and 15 declaration was signed by Daniel Tribouillard (registrant's president); that Mr. Tribouillard has stated in an affidavit that his "mistake as to the use of the LEONARD mark on men's bathing suits for five consecutive years starting from May 24, 1983 was due to inadvertence on my part" (paragraph 5); and that "while [petitioner] had ample opportunity to take the deposition of Mr. Tribouillard, the individual who had signed the affidavit, [petitioner] chose ultimately not to do so." (Registrant's brief page 2).

[1] The problem that we have with registrant's position is that even if we assume that

---

[1] The false statement was not material with regard to the Section 8 portion of the declaration because the declaration was filed in January 1989 prior to the effective date of the Trademark Law Revision Act of 1988 (November 16, 1989). Old Section 8 — prior to its amendment on November 16, 1989 — merely required the filing of an affidavit "showing that said mark is in use in commerce" without any requirement that there be a listing of the specific goods and/or services for which the mark was still in use.

the false, material statement contained in the Section 8 and 15 declaration was not made knowingly by Mr. Tribouillard, that declaration was prepared by counsel for registrant based upon statements made by Ms. Arkin in her letter of October 12, 1988 which, with regard to swimwear for men, were (1) false, (2) material and (3) *made knowingly*. It is indefensible to suggest that Ms. Arkin did not know that her October 12, 1988 statement that "the trademark LEONARD is currently in use in the U.S. on . . . swimwear for men" was false. As previously noted, Ms. Arkin has been identified by registrant as the person most familiar with registrant's past and/or present use of LEONARD. (Interrogatory 2). On May 21, 1986 Ms. Arkin swore and subscribed to the statement that "opposer does not sell men's clothing under the LEONARD mark." (Interrogatory 18). Moreover, in her June 25, 1990 deposition and again in June 13, 1991 deposition Ms. Arkin stated that registrant had made no use of LEONARD in connection with men's swimwear in the U.S. since 1986. Thus, Ms. Arkin had to have known that the statement contained in her letter of October 12, 1988 — which formed the basis for the preparation of the Section 8 and 15 declaration — was false. This Board will not tolerate a situation where an officer of a registrant knowingly provides false, material information to counsel for the preparation of a Section 8 and/or 15 affidavit.[2] The fact that a second officer, possessing less knowledge of a particular trademark then signs the Section 8 and/or 15 declaration not personally knowing that a statement contained therein is false will not sanitize the matter. Accordingly, we find that as a matter of law, registrant committed fraud on the PTO in connection with the Section 15 portion of its combined Section 8 and 15 declaration filed in January 1989.

Moreover, an applicant or registrant is under a duty to correct material, false statements made to the PTO when their falsity becomes known. *Space Base Inc. v. Stadis Corp.*, 17 USPQ2d 1216, 1219 (TTAB 1990) (". . . A person can commit fraud upon the Office by willfully failing to correct his or her own misrepresentation, even if originally innocent, as long as that person subsequently learns of the misrepresentation, and knows that the Office has relied upon that misrepresentation in conferring a substantive benefit upon that person to

which the person knows it is not entitled.") Even assuming arguendo that on October 12, 1988 Ms. Arkin did not know that she made a false, material misrepresentation to counsel for use in preparation of the Section 8 and 15 declaration, it is abundantly clear that by the time of her June 25, 1990 deposition, Ms. Arkin — and hence registrant — knew that a statement contained in that declaration was false and material. However, registrant chose to do nothing to bring this matter to the attention of the PTO. At page 7 of its January 6, 1992 brief, registrant states that it was "not just a simple matter of making the correction" because "a registration involved in a proceeding may not be amended during the inter partes proceeding without the consent of the other party and the approval of the Trademark Trial and Appeal Board." However, this in no way excused the registrant from totally failing to make any effort whatsoever to bring this error to the attention of the PTO. Instead of bringing the error to the attention of the PTO, registrant — on April 22, 1991, after the start of this proceeding — caused to be filed with the PTO a new application to register LEONARD which was virtually identical to that of the existing Registration No. 1,239,520 except for the omission of bathing costumes for men. In short, registrant committed fraud on the PTO with the filing of its Section 15 declaration and then perpetuated it for a number of years by its failure to make any attempt whatsoever to bring the material misrepresentation to the attention of the PTO.

In summary, petitioner's motion for summary judgment is granted, and Registration No. 1,239,520 will be cancelled in due course.

---

**District Court, N.D. Georgia**

Hester Industries Inc. v. Wing King Inc.

No. 1:91-CV-2644-RHH

Decided March 26, 1992

**TRADEMARKS AND UNFAIR TRADE PRACTICES**

**1. Types of marks — Arbitrary or fanciful — Particular marks (§327.0803)**

"Wing-Dings," for chicken wing products, is arbitrary or fanciful mark.

---

[2] At page 5 of her June 25, 1990 deposition, Ms. Arkin is identified as the chief executive officer of registrant in America.

# EXHIBIT 10

2 of 3 DOCUMENTS



Analysis
As of: Jun 27, 2008

**ESTEFAN ENTERPRISES, INC., Plaintiff, -vs- COCO BONGO GRILL AND BAR, INC., Defendant.**

**Case No. 6:06-cv-742-Orl-31KRS**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION**

*2007 U.S. Dist. LEXIS 40261*

**June 4, 2007, Decided
June 4, 2007, Filed**

**PRIOR HISTORY:** *Estefan Enters. v. Coco Bongo Grill & Bar, Inc., 2006 U.S. Dist. LEXIS 85953 (M.D. Fla., Nov. 28, 2006)*

**COUNSEL:** [*1] For Estefan Enterprises, Inc., a Florida Corporation, Plaintiff: Karen L. Stetson, LEAD ATTORNEY, Karen L. Stetson, Esq., Miami Beach, FL.

For Coco Bongo Grill and Bar, Inc., a Florida Corporation, Defendant: Catherine E. Timilty, LEAD ATTORNEY, The Robbins Law Firm, St. Petersburg, FL; Hunter H. Chamberlin, LEAD ATTORNEY, Matthew Kennedy, LEAD ATTORNEY, Oliver J. Janney, LEAD ATTORNEY, The Robbins Law Firm, PA, St Petersburg, FL.

**JUDGES:** GREGORY A. PRESNELL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** GREGORY A. PRESNELL

**OPINION**

**ORDER**

This matter comes before the Court on a Motion for Summary Judgment (Doc. 71) filed by Plaintiff Estefan Enterprises, Inc. ("EEI") and Defendant's Response thereto (Doc. 76).

**I. Background**

EEI, operates a Latin-themed restaurant and nightclub/bar under the Bongos Cuban Cafe mark with two locations in Miami, Florida and one in Orlando, Florida. (Doc. 71 at 1). The Orlando location is within the Downtown Disney district. (Doc. 71 at 1). While primarily a restaurant, the atmosphere of Bongos Cuban Cafe changes after 10 p.m. into a nightclub/bar. (Doc. 71-2 at 2). The clientele at the Orlando location is very broad and approximately 65% of the nightclub [*2] business comes from tourists. (Doc. 71-2 at 3). Bongos Cuban Cafe is open until 2 a.m., 7 days a week. (Doc. 71 at 2).

Defendant, Coco Bongo's Grill and Bar, Inc. ("CBGB"), operates a nightclub/bar located on Orange Blossom Trail in Orlando, Florida approximately 11 miles from Bongos Cuban Cafe. CBGB is only open three nights a week (Thursday, Friday, and Saturday) and does not serve food. (Doc. 71 at 2). The clientele at CBGB is primarily the local, younger adult, Hispanic club goer. (Doc. 76 at 11).

EEI holds the registered trademark "Bongos Cuban Cafe" ¹ and has brought this action alleging, *inter alia*, that CBGB's use of the word "Bongo" violates the Lanham Act and CBGB should be enjoined from further use of the word. (Doc. 71 at 5).

    1  EEI holds Registration No. 2,490,999 for "Bongos Cuban Cafe."(Doc. 71-3 at 1).

## II. Standards of Review

A party is entitled to summary judgement when it can show that there is no genuine issue as to any material fact. *FED. R. CIV. P. 56(c)* [*3] ; *Beal v. Paramount Pictures Corp., 20 F.3d 454, 458 (11th Cir. 1994).* Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Watson v. Adecco Employment Svc., Inc., 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).*

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)* (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id. at 322, 324-25;* [*4] *Watson, 252 F. Supp. 2d at 1352.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)* ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Wil-*

*liams, 451 F.3d 759, 763 (11th Cir. 2006)* (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal, 20 F.3d at 458-59.* If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999).*

## III. Legal Analysis

In a trademark infringement action, a plaintiff must prove that (1) its mark is valid and (2) [*5] the defendant's use of the contested mark is likely to cause confusion. *15 U.S.C.A. § 1114(1)(a) (West 2007); Dieter v. B & H Indus., 880 F.2d 322, 326 (11th Cir. 1989).* CBGB does not contest the validity of EEI's mark. However, the likelihood of confusion between "Bongos Cuban Cafe" and "Coco Bongo's" is in dispute.

Determining likelihood of confusion requires analysis of seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products that the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent, and (7) actual confusion. *Dieter, 880 F.2d at 326.* The 11th Circuit has held that the type of mark and evidence of actual confusion are the two most important factors. *Id.* There is no brightline test to determine how much evidence of confusion is enough. When reviewing the evidence the Court must take into consideration the circumstances surrounding each particular case. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 844 (11th Cir. 1983).*

### A) Type of Mark

[*6] Courts have traditionally divided marks into four categories, in order of increasing strength: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *American Television and Communications Corp. v. American Communications and Television, Inc., 810 F.2d 1546, 1548 (11th Cir. 1987).* In the instant case, the classification of EEI's mark as either descriptive or suggestive is at issue. A descriptive mark is one that "identif[ies] a characteristic or quality of an article or service." A suggestive mark "suggests, rather than describes, a characteristic of the goods or services

Case 3:07-cv-03752-JSW    Document 167-25    Filed 09/03/2008    Page 23 of 25

Page 3
2007 U.S. Dist. LEXIS 40261, *

and requires an effort of the imagination by the consumer to be understood as descriptive." *Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 115-116 (5th Cir. 1979).* [2] If a mark is descriptive, proof of a secondary meaning of that mark is necessary for the owner to have a protectable interest in that mark. However, if the mark is suggestive, proof of a secondary meaning is not necessary. [3] *Id.*

    2   All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).*

[*7]

    3   Suggestive marks are inherently distinctive thus making proof of a secondary meaning unnecessary, whereas a descriptive mark is not inherently distinctive and therefore, proof of a secondary meaning is necessary. *Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1522-1523 (11th Cir. 1999).*

CBGB argues that because of common use of the word "Bongos" by third parties [4] and the existence of a "logical connection" between the word "Bongos" and the services that EEI provides, EEI's mark is descriptive. (Doc. 76 at 6-8). Conversely, EEI argues that the mark is suggestive because it requires imagination on the part of the consumer to make the connection between bongos, a musical instrument, and the services provided by EEI. [5] (Doc. 71 at 7). Additionally, EEI relies on the classification of the mark by the United States Patent and Trademark Office ("USPTO") to provide evidence that the mark is suggestive.

    4   Third party use of a mark is important when gauging the strength of a mark. The more third parties use the mark, the weaker it is, and less protection it deserves. *See Frehling Enters., 192 F.3d at 1336.*

[*8]

    5   In its motion for summary judgement, EEI only addresses the definition of bongos as a musical instrument and its relation to the establishment's name. (Doc. 71 at 7). However, in EEI's reply to CBGB's response to the motion for summary judgment, EEI claims that the word "Bongos" was selected

"as a tribute" to Ms. Estefan's pet kangaroo that had passed away. (Doc. 87 at 5 n.4).

Courts have relied on the USPTO's classification of a trademark to provide *prima facie* evidence of whether the mark is descriptive or suggestive. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 934 (4th Cir. 1995).* The USPTO requires proof of secondary meaning before it grants registration if the mark is descriptive, whereas it does not require proof of secondary meaning if the mark is suggestive. *Id.* In the instant case, the USPTO did not require evidence of secondary meaning when it approved EEI's mark, [6] thus providing *prima facie* evidence that EEI's mark is suggestive. However, while the characterization given by the USPTO is persuasive, it is not conclusive evidence [*9] that the mark is suggestive. [7]

    6   The fact that the USPTO did not insert a "2(f)" above the serial number on the bottom right of EEI's mark registration certificate is proof that EEI provided sufficient evidence of the mark's distinctiveness under *15 U.S.C. § 1052(f)* prior to registration. *See Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 936 n.15.*

    7   The 11th circuit has held that "Although we will bestow proper respect to the determinations of the PTO, we will not defer to an ethereal determination that is not affirmatively stated by the administrative agency." *Investacorp, 931 F.2d at 1524.*

EEI also argues that its mark is "incontestable" under *15 U.S.C. § 1065* ("*§ 1065*") and therefore the mark cannot be challenged on the ground that it is merely descriptive. (Doc. 71 at 8). Upon a closer review of *§ 1065*, EEI's "incontestable" argument fails. *Section 1065* requires that, for a mark to be classified as incontestable, [*10] EEI must file an affidavit within a year after five years of continuous use of the mark and that there must be "no proceeding involving said rights pending . . . in a court not finally disposed of." *15 U.S.C.A. § 1065 (West 2007); Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1540-1541 (11th Cir. 1986).* EEI's mark was registered with the USPTO on September 18, 2001. (Doc. 71-3 at 1). EEI timely filed an affidavit of incontestability in January of 2007. (Doc. 71-20 at 2). However,

EEI filed the complaint for the instant case, which is still pending, on May 31, 2006. (Doc 71-20 at 2). Therefore, when EEI filed for incontestability, there was a "proceeding involving said rights pending . . . in a court and not finally disposed of," and *§ 1065(2)* prevents EEI's mark from being classified as incontestable. *See Sizzler Family Steak House, 793 F.2d at 1541.*

However, EEI contends that even if the mark is descriptive, it can show that the mark has acquired a secondary meaning and therefore it has a protectable interest in the mark. (Doc. 71 at 8). Secondary meaning is defined as "the connection in [*11] the consumer's mind between the mark and the provider of the service." *Investacorp, Inc., 931 F.2d at 1525.* There are four factors considered in determining whether a mark has achieved a secondary meaning:

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

*Conagra, Inc., v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984).* Additionally, the mark must have acquired the secondary meaning before the defendant first used the same or similar mark. *See Investacorp, Inc., 931 F.2d at 1524.* Plaintiff bears the burden of sustaining "a high degree of proof" in establishing a secondary meaning for a descriptive term, and this requisite high degree of proof must be considered by the Court when ruling on a motion for summary judgment. *Id. at 1525.*

EEI's fulfillment of the first three factors is not contested by CBGB, however, the [*12] fourth is at issue. CBGB argues that EEI's mark has not acquired a secondary meaning because the public does not identify the word "Bongos" with EEI's services because of extensive third party use of the word "Bongos." (Doc. 76 at 8-9.) EEI argues that because it has used the mark continuously over a ten year period, there is a presumption of secondary meaning under *15 U.S.C. § 1052(f)*, ("*§ 1052(f)*"),

which requires only five years of continuous use. EEI began using its mark on September 18, 1997 and would have acquired presumption of secondary use under *§ 1052(f)* on September 18, 2002. However, because CBGB began using its name on July 9, 2001, (Doc. 71-7 at 3), EEI's mark did not acquire a presumption of a secondary use under *§ 1052(f)* before CBGB first used its name. [8]

> 8    The presumption is not mandatory and neither the USPTO or the Court has to accept the presumption. The weight of the 5 year usage evidence will vary depending upon the background and the inherent distinctiveness of the designation and the other evidence of the record. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 15:62 (4th ed. 2001); *See In re Garcia, 175 U.S.P.Q. 732 (T.T.A.B. 1972); In re Ennco Display Systems Inc., 56 U.S.P.Q.2d 1279, 1283-1286 (T.T.A.B. 2000).*

[*13]   EEI also argues that because sales are probative as to whether the public actually identifies the mark with its services, its large sales figure provides evidence that its mark has achieved a secondary meaning. (Doc. 71 at 9-10). However, EEI's argument fails because only the figure for *total* sales are provided. EEI's mark needed to achieve a secondary meaning before CBGB began using its name, therefore the sales figure as of July 9, 2001 is necessary, not the total amount of sales. Sales may be probative of a secondary meaning, but EEI has not provided the evidence necessary to make this determination.

Thus, the Court cannot determine as a matter of law that this mark is suggestive, nor does the evidence support a finding of secondary meaning. Accordingly, the Court cannot, at this stage of the proceedings, make a legal determination as to the nature of EEI's mark.

*B) Other Factors*

The evidence before the Court does not establish, as a matter of law, that actual confusion exists. These marks are somewhat dissimilar ("Bongos" vs. "Coco Bongo's"), the service offered by the parties are dissimilar (restaurant vs. nightclub), and their customer base is different (tourists [*14]  vs. locals), given these obvious differences, there are ma-

2007 U.S. Dist. LEXIS 40261, *

terial issues of disputed fact which preclude a finding that Defendant's mark is likely to cause confusion.

## IV. Conclusion

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 71) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 4, 2007.

**GREGORY A. PRESNELL**

**UNITED STATES DISTRICT JUDGE**