# EXHIBIT S

Expert Witness Report
Prepared by Rany L. Simms

June 28, 2008

## 1.  Qualifications

I am a former Administrative Trademark Judge of the U.S.
Patent and Trademark Office's Trademark Trial and Appeal Board,
and served in that capacity from 1981-2004.  See attached
resume.  In that capacity, I wrote hundreds of opinions (in
panels of three judges) in trademark cases for the Trademark
Trial and Appeal Board.  These opinions were written both in
appeals from refusals to register trademarks (and service marks)
as well as in opposition and cancellation proceedings involving
attempts to oppose applications to register and to cancel
registrations of trademarks and service marks.  I also authored
a number of articles for the Trademark Reporter, a legal
publication in the field of trademarks, but none in the last ten
years.  I have not previously testified as an expert witness
either at a deposition or at trial, although I have been
retained in two other trademark cases as an expert witness.

## 2.  Materials reviewed as of June 28, 2008

The following materials have been reviewed and relied upon:
The Trademark Act of 1946 (15 U.S.C. §§1051 et seq); The
Trademark Manual of Examining Procedure (5th ed. 2007).
From Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
82 Civ. 8326 (S.D.N.Y) and Levi Strauss & Co. vs. Textiles y
Confecciones Europeas, S.A., 83 Civ. 4338 (S.D.N.Y):  Complaint
of Lois Sportswear; Answer and Counterclaims of Levi Strauss;
Plaintiff's Answer to Counterclaims; Complaint of Levi Strauss
in Levi Strauss vs. Textiles y Confecciones Europeas; Answer of
Textiles y Confecciones Europeas; Lois' Memorandum of Law in
Support of Motion for Summary Judgment; Memorandum of Levi
Strauss in Opposition to Motion for Summary Judgment and in
Support of its Motion for Summary Judgment; Memorandum of Lois
Sportswear and Textiles y Confecciones Europeas in Opposition to
Cross-Motion for Summary Judgment and in Reply to Memorandum of
Levi Strauss in Opposition to Motion for Summary Judgment; Reply
Memorandum of Levi Strauss in Support of its Cross-Motion for
Summary Judgment; Transcript of Hearing before Judge Robert
Sweet, July 12, 1985;
From Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.:
Complaint for Trademark Infringement, Unfair Competition and
Dilution; Abercrombie's Amended Answer, Affirmative Defenses and

Counterclaims; Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Abercrombie's Memorandum in Opposition to Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Levi Strauss' Reply in Support of Motion to Dismiss Counterclaims for Cancellation; Reply Declaration of Gia Cincone in Support of Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Order Granting in Part and Denying Levi Strauss' Motion to Dismiss Counterclaims for Cancellation; Exhibits T and U (copies of TMEP §1604.03 (Dec. 1983 and January 1986) attached to Abercrombie's Motion for Summary Adjudication of Undisputed Facts (Motion Withdrawn).

3.  **Compensation**

     I am being compensated at the rate of $400 per hour.

4.  **Summary of Opinion**

     I have been retained by Levi Strauss & Co. ("Levi Strauss") to offer an opinion on whether its filing of an affidavit pursuant to Section 15 of the Trademark Act of 1946 (15 U.S.C. §1065) was fraudulent because the affidavit did not mention a proceeding in which one of its registrations (Registration No. 1,139,254, issued September 2, 1980, covering the arcuate trademark for pants, jackets, skirts, dresses and shorts) was involved, but where there was no attempt to cancel that registration. After examining various materials from the current and the prior litigation, and the pertinent law, it is my opinion that the affidavit filed by Levi Straus in connection with its registration was not fraudulent.

5.  **Statement of Opinion and Reasoning**

     By way of background, in December 1982, Lois Sportswear, U.S.A., Inc. ("Lois") filed an action for declaratory relief against Levi Strauss in the Southern District of New York (Lois Sportswear, U.S.A., Inc. vs. Levi Strauss & Co., 82 Civ. 8326 (S.D.N.Y)) asserting that Lois' rear-pocket stitching design on its jeans did not infringe any trademark rights of Levi Strauss in its arcuate trademark, did not constitute a false designation of origin or false representation under Section 43(a) of the Trademark Act (15 U.S.C. §1125(a)), and did not violate Levi Strauss' New York state trademark rights. Lois also sought a permanent injunction restraining Levi Strauss from interfering with Lois' importation and distribution of its jeans bearing the design. Levi Strauss, among other things, counterclaimed for trademark infringement and unfair competition under the

2

Trademark Act, and sought a permanent injunction against Lois.
In a responsive pleading, Lois asserted certain affirmative
defenses, including that Levi Strauss' "double arcuate mark"
never functioned as a trademark or that, even if it did, it had
become so diluted by reason of widespread use by others of
similar designs on clothing that it had lost whatever
distinctiveness it possessed and no longer functioned as a
trademark.  However, Lois did not request that the Court cancel
any of Levi Strauss' registrations, including Registration
1,139,254 ("the '254 registration"), for the arcuate trademark.

In June 1983, Levi Strauss filed a trademark infringement
and unfair competition action against Textiles y Confecciones
Europeas, S.A. ("Textiles")(Levi Strauss & Co. vs. Textiles Y
Confecciones Europeas, S.A., 83 Civ. 4338 (S.D.N.Y)), a Spanish
company affiliated with Lois, which manufactured the clothing
bearing the stitched pocket design in dispute.  In this lawsuit,
which was later consolidated with Lois' action against Levi
Strauss, Levi Strauss pleaded, among other things, ownership of
the '254 registration covering the arcuate trademark.  Levi
Strauss' allegations were similar to those in its counterclaims
against Lois.  Textiles denied that Levi Strauss' design
possessed distinctiveness or that it served as a trademark.
Textiles also asserted affirmative defenses similar to those
asserted by Lois in response to Levi Strauss' counterclaims.
Textile did not request that Levi Strauss' registration be
cancelled or ask that the registration be declared invalid, but
only that the complaint be dismissed, that it be awarded costs
and attorneys fees, and "such other and further relief as may be
just."  See Answer, p. 4.  In September 1985, the District Court
granted Levi Strauss' motion for summary judgment and denied the
cross-motions of Lois and Textiles.  Lois Sportswear, U.S.A.,
Inc. v. Levi Strauss & Co., 631 F. Supp. 735 (SDNY 1985).  The
Second Circuit affirmed the grant of summary judgment.  Lois
Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867 (2d
Cir. 1986)

In the current proceeding, Abercrombie & Fitch Trading Co.
("Abercrombie"), in its amended answer, affirmative defenses and
counterclaims, has alleged that Levi Strauss knowingly filed two
materially false affidavits under Section 15 of the Trademark
Act with the U.S. Patent and Trademark Office ("USPTO"), in 1985
and 1986, in connection with the '254 registration, because Levi
Strauss did not disclose to the USPTO the trademark litigation
then pending in the Southern District of New York and in the
Court of Appeals for the Second Circuit, involving Levi Strauss,
Lois and Textiles.  One of these affidavits, filed on behalf of

3

Levi Strauss on May 17, 1985, was filed before the end of the
fifth year after the registration was issued and was rejected by
the USPTO.  That is because a Section 15 affidavit or
declaration may not be filed until the registered mark has been
in continuous use in commerce for at least five consecutive
years after the date of registration.  If a Section 15 affidavit
does not comply with the statute or rules, the USPTO issues a
written notice of any error, which it did in this case.  Because
this affidavit was rejected by the USPTO as untimely filed, this
first affidavit cannot be the basis of any fraud claim on the
USPTO.  The Judge in this case has so ruled.  See Order Granting
in Part and Denying Levi Strauss & Co.'s Motion to Dismiss
Counterclaims for Cancellation, 3, issued April 22, 2008.  This
first affidavit, therefore, need not be further considered.

        The other affidavit filed in connection with the '254
registration, executed by Ms Jean Fowler, Levi Strauss'
Assistant Corporate Secretary, on January 2, 1986 and filed
January 16, 1986, was acknowledged by the USPTO.  That affidavit
was filed under both Sections 8 and 15 of the Trademark Act of
1946 (15 U.S.C. §§ 1058 and 1065).  (Under 37 C.F.R. §2.168(a),
the affidavit or declaration filed under Section 15 may be
combined with the affidavit or declaration required by Section
8, which pertains to the required filing of an affidavit or
declaration of use or of excusable nonuse, during the sixth year
after the registration date.  See Trademark Manual of Examining
Procedure (TMEP) §1605.05 (5th ed. 2007).  This affidavit
stated, among other things, that there was no proceeding
involving Levi Strauss' rights pending and not disposed of
either in the USPTO or in the courts.  No mention was made of
the litigation between Levi Strauss and two third parties, Lois
and Textiles.

        Abercrombie alleges in its counterclaims in the pending
litigation that Levi Strauss' combined Section 8 and 15
affidavit was materially false in that it stated that "there is
no proceeding involving said rights pending and not disposed of
either in the Patent and Trademark Office or in the courts"
when, in fact, Levi Strauss was involved in the above-noted
litigation where an appeal to the U.S. Court of Appeals for the
Second Circuit was pending.

        While Levi Strauss did not reveal in its Section 8 and 15
affidavit filed in connection with the '254 registration the
then-pending trademark infringement and unfair competition
litigation involving Lois and Textiles, it is my opinion that
Levi Strauss was not required to reveal such information because

4

that litigation did not involve any attempt to cancel that registration, by way of claim or counterclaim.  Neither Lois nor Textiles had sought cancellation of the '254 registration, but only asserted certain affirmative defenses to Levi Strauss' claims of trademark infringement, unfair competition and violation of New York state law.

The pertinent statutes, rules and other authority on which I base my opinion include Section 15 of the Trademark Act (15 U.S.C. §1065), which provides, in part:

> Except on a ground for which application to cancel may be filed at anytime under paragraphs (3) and (5) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: Provided, That—
>
> (1) there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and
>
> (2) there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of; and
>
> (3) an affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still

5

in use in commerce, and the other matters
specified in paragraphs (1) and (2) of this
section; and

(4) no incontestable right shall be
acquired in a mark which is the generic name
for the goods or services or a portion
thereof, for which it is registered.
[Emphasis added.]

Also, under Section 33(b) of the Trademark Act (15 U.S.C.
§1115(b)), if the right to use the mark has become incontestable
under Section 15, then the registration is conclusive evidence
of the validity of the registered mark and its registration, of
the registrant's ownership of the mark, and of the owner's
exclusive right to use the registered mark in commerce, subject
to certain defenses and exceptions, including that the
registration or the incontestable right to use the mark was
obtained fraudulently.

The TMEP §1605.04 (5th ed. 2007) now provides, in part:

*No Adverse Decision or Pending Proceeding
Involving Rights in the Mark.* The §15
affidavit must state that there has been no
final decision adverse to the owner's claim
of ownership of the mark for the goods or
services, or to the owner's right to
register the mark or to keep the mark on the
register. It must also state that there is
no proceeding involving these rights pending
in the USPTO or in a court and not finally
disposed of... If the USPTO finds facts
contrary to either of the foregoing
statements, the USPTO will not acknowledge
receipt of the §15 affidavit. See TMEP
§1605. (The USPTO does not consider a
proceeding involving the mark in which the
owner is the plaintiff, where there is no
counterclaim involving the owner's rights in
the mark, to be a "proceeding involving
these rights" that would preclude the filing
or acknowledgment of a §15 affidavit.)

More importantly, at the time Levi Strauss filed the second
Section 8 and 15 affidavit in January 1986, TMEP §1604.03 (1st
ed. Rev. 7 January 1986) had been revised to include similar
language: "A proceeding involving the mark in which registrant

6

is the plaintiff, and there is no counterclaim involving
registrant's rights in the mark, does not preclude acceptance of
a Section 15 affidavit." See Exhibit U attached to
Abercrombie's Motion for Summary Judgment (since withdrawn).  It
is true that in this case, Levi Strauss was the defendant in
Lois Sportswear v. Levi Strauss.  However, in that case, there
was no allegation in the complaint that Levi Strauss'
registration should be cancelled.  Lois only asked for
declaratory judgment that there was no likelihood of confusion
or unfair competition as a result of its use of a rear pocket
stitching design used on its jeans.  Later, in response to Levi
Strauss' counterclaims for trademark infringement and unfair
competition did Lois assert that Levi Strauss' mark lacked
distinctiveness or was invalid.  Even then, however, there was
no attempt to cancel its '254 registration (or another even
older registration (Registration No. 404,248, issued Nov. 16,
1943).

     In the other action, Levi Strauss v. Textiles y
Confecciones Europeas, S.A., later consolidated with the Lois
action, Levi Strauss was, of course, the plaintiff asserting its
registrations in the federal trademark infringement and unfair
competition action.  In this action as well, there was never any
attempt to cancel the '254 registration.

     In its brief in support of its motion for summary judgment
in that case, Lois offered arguments on the issues of likelihood
of confusion, unfair competition and dilution (under New York
law), but never argued or asked that Levi Strauss'
registration(s) be declared invalid or be cancelled.

     Further, at the hearing held on the motions for summary
judgment before Judge Sweet, counsel for Lois and Textiles, Max
Schutzman, stated, at 47-48, 49;

          Mr. Lee [counsel for Levi Strauss]
          stated at the outset of his argument that if
          I was correct in my discussion of the
          various cases which have dealt with names
          and tags, then the Levi registration would
          be rendered nugatory.  And of course that's
          not true at all.  We're not suggesting that
          the registration is null and void.  The mere
          fact that one has a registration and a
          registered trademark as your Honor well
          knows does not mean that they have a
          complete monopolistic right to utilize that

7

particular mark.  The test is and always has
been likelihood of confusion and that's the
test in this case.  And of course, as an
aside I point out again, that the stitching
designs we're dealing with are not
identical...

As far as the incontestability issue,
Mr. Lee has stated that the statute provides
a conclusive presumption of Levi's exclusive
right to use that mark.  I say so what.  I
don't dispute that it's incontestable.  I
dispute that the use by Lois of that
nonidentical stitching design constitutes
likelihood of confusing (sic).  The issue of
incontestability has no bearing whatsoever
on that particular issue.

Counsel for Levi Strauss, Alfred Lee, during the same hearing,
at 36, also noted that there was no attack on any registration:

We do have a valid trademark and a valid registration.
There is no attack on that.

Finally, in its appeal brief to the Second Circuit, Lois'
attorney states at the outset that the issues to be decided are
whether the District Court erred in granting summary judgment to
Levi Strauss on the grounds of trademark infringement, unfair
competition and dilution, and whether the District Court erred
in denying the appellants' (Lois and Textiles) motion for
summary judgment for a declaration of non-infringement and non-
liability on the grounds of unfair competitiona and dilution.
There is no mention of any issue with respect to the validity of
Levi Strauss' registration(s).  Later in the brief, Lois'
attorney noted that Levi Strauss' registration (Registration No.
404,248, issued Nov. 16, 1943) was not under attack:

Levi contends that its arcuate trademark is
incontestable under 15 U.S.C. §1065.  Lois
admits such incontestibility for purposes of
this motion only, but notes that the
doctrine of incontestibility bars only
defenses directed to Levi's right to
register the mark, and in no way has any
bearing on whether such mark is weak or
entitled to protection specifically against
the particular contested mark under the

8

circumstances in which that contested mark
is used.

Appeal brief, 42.

Although Lois pleaded, among other things, that Levi
Strauss' arcuate mark either never functioned as a designation
of origin or had become so diluted as a design mark because of
widespread use by others that its distinctiveness as a mark had
been lessened or lost, these allegations and contentions were
made in the context of its arguments that there was no
likelihood of confusion. Lois never requested that any of Levi
Strauss' registrations be cancelled. Therefore, because the
prior litigation did not include any attempt to cancel the '254
registration, it is my opinion that Levi Strauss was not
required to disclose the existence of this litigation in the
Section 15 affidavit. The purpose behind a Section 15 filing is
to inform the Office of any proceeding which challenges the
registration for which the registrant seeks to make its right to
use incontestable. Contrary to Abercrombie's pleading and
argument, there was no specific challenge to Levi Strauss' claim
of ownership of its registrations, its right to register, and
its right to keep the registrations on the record.

Moreover, it is my opinion, as a former Administrative
Trademark Judge who, over the years, has handled many
cancellation proceedings as well as counterclaims to cancel in
opposition proceedings, that a registrant's conduct which is in
compliance with the TMEP's advice or interpretation cannot be
said to be willfully false or fraudulent in nature. In this
regard, it has been held that fraud must be "proven to the hilt"
with little room for speculation, but with considerable room for
honest mistake or erroneous conception of rights, and any doubts
are resolved against the party asserting fraud. Yocum vs.
Covington, 216 USPQ 210, 216 (TTAB 1982). In the circumstances
of this case, fraud should not be found.

Date:  June 28, 2008              Randy L. Simms
                                  Former Administrative
                                  Trademark Judge,
                                  Trademark Trial and
                                  Appeal Board

9

## Resume of Rany L. Simms

Former Administrative Trademark Judge, Trademark Trial and Appeal Board (TTAB) of the U.S. Patent and Trademark Office (USPTO), located in Alexandria, Va.

B.A. degree from the University of Illinois, Champaign-Urbana, in 1969

J.D. degree from the University of Illinois College of Law in 1972

I joined the U.S. Patent and Trademark Office in 1972 as a Trademark Examining Attorney, and worked for the Board as an Interlocutory or Staff Attorney from 1975 until 1980. I became an Acting Member of the Board in 1980 and was an Administrative Trademark Judge (formerly called Member of the Trademark Trial and Appeal Board) since 1981. In this capacity, sitting in panels of three, I wrote hundreds of trademark opinions over the years in appeals from refusals to register trademarks (and service marks), in opposition proceedings brought against applications to register trademarks and service marks, and in cancellation proceedings seeking to cancel registered trademarks and service marks. I also wrote numerous articles for the Trademark Reporter (published by the International Trademark Association) and have spoken on a number of occasions to various groups about practice before the Trademark Trial and Appeal Board. I have been sent by the Office to help the Lithuanian and the Romanian Patent Offices develop procedures for handling trademark applications. I have also spoken at the International Intellectual Property Institute's Intellectual Property Law Workshops held in Ho Chi Minh City and in Hanoi, Vietnam, in October 2002, and at a similar program held in the Philippines in June 2002. I retired from the Office in December 2004.

Admitted to practice in the State of Maryland.

10

1

**PROOF OF SERVICE**

2          I declare that I am employed in the City and County of San Francisco, California; I am over

3     the age of 18 years and not a party to the within action; my business address is Two Embarcadero

4     Center, Eighth Floor, San Francisco, California 94111.  On the date set forth below, I served a true

5     and accurate copy of the document(s) entitled: **EXPERT WITNESS REPORT:  RANY L. SIMMS**

6     on the party(ies) in this action by placing said copy(ies) in a sealed envelope each addressed as

7     follows:

8

|  |  |
|---|---|
| Rachel R. Davidson, Esq.<br>Michael J. Bettinger, Esq.<br>K&L Gates<br>55 Second Street, Suite 1700<br>San Francisco, CA  94105 | J. Michael Keyes, Esq.<br>K&L Gates<br>618 West Riverside Avenue, Suite 300<br>Spokane, WA  99201 |

9

10

11

12          ☒      [By First Class Mail]  I am readily familiar with my employer's practice for collecting
       and processing documents for mailing with the United States Postal Service.  On the date listed herein,
13     following ordinary business practice, I served the within document(s) at my place of business, by
       placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, for
14     collection and mailing with the United States Postal Service where it would be deposited with the
       United States Postal Service that same day in the ordinary course of business.
15

16          I declare under penalty of perjury that the foregoing is true and correct and that this declaration
       was executed on June 30, 2008 at San Francisco, California.

17

18

19                              _____
                                        Carol Petrich

20

21     61416975 v1

22

23

24

25

26

27

28

EXPERT REPORT OF RANY L. SIMS