1  TOWNSEND AND TOWNSEND AND CREW LLP
   GREGORY S. GILCHRIST (Bar No. 111536)
2  GIA L. CINCONE (Bar No. 141668)
   RAQUEL PACHECO (State Bar No. 245328)
3  Two Embarcadero Center, 8th Floor
   San Francisco, California 94111
4  Telephone: (415) 576-0200
   Facsimile: (415) 576-0300
5  Email: gsgilchrist@townsend.com;
   glcincone@townsend.com; rpacheco@townsend.com
6
   Attorneys for Plaintiff
7  LEVI STRAUSS & CO.

8

9                          UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11                              SAN FRANCISCO DIVISION

12  LEVI STRAUSS & CO.,                    Case No. C 07-03752 JSW

13          Plaintiff/Counterdefendant,    SUPPLEMENTAL DECLARATION
                                           OF THOMAS M. ONDA IN
14     v.                                  OPPOSITION TO DEFENDANT'S
                                           MOTION FOR SUMMARY
15  ABERCROMBIE & FITCH TRADING CO.,       JUDGMENT AND DEFENDANT'S
                                           MOTION TO EXCLUDE
16          Defendant/Counterclaimant.

17  _____

18  ABERCROMBIE & FITCH TRADING CO.,       Date:       September 26, 2008
                                           Time:       9:00 a.m.
19          Defendant/Counterclaimant,     Courtroom:  2, 17th Floor
                                                       Hon. Jeffrey S. White
20     v.

21  LEVI STRAUSS & CO.,

22          Plaintiff/Counterdefendant.

23

24

25                          **REDACTED PUBLIC VERSION**

26

27

28

I, THOMAS M. ONDA, hereby declare:

1. I am employed by Levi Strauss & Co. ("LS&CO."), the plaintiff in this action, as Global Intellectual Property Counsel. I am submitting this declaration in opposition to the motion of defendant Abercrombie & Fitch Trading Co. for summary judgment.

2. I have been employed by LS&CO. since 1999. In my position as Global Intellectual Property Counsel, I am generally responsible on a worldwide basis for the management of trademark registration matters, infringement and counterfeiting matters, and licensing matters. Over the course of my employment with LS&CO. I have had, and continue to have, access to or custody of LS&CO.'s regular and established business records. If called as a witness in these proceedings, I could and would testify to the truth of all of the matters set out in this declaration, all of which are based upon my personal knowledge and upon the regular and established business practices and records of LS&CO.

3. As discussed in my initial declaration, LS&CO. considers its trademarks, including its Arcuate Stitching Design Trademark ("Arcuate Trademark"), to be among its most important assets. In order to protect the Arcuate Trademark, and to prevent erosion of the mark's effectiveness as an identifier of the LEVI'S® brand, the company devotes substantial resources to monitoring the marketplace for infringements of the Arcuate Trademark and stopping any infringements that it discovers.

4. LS&CO. does not challenge all use of stitching designs on jeans pockets. There are many stitching designs on the market, and many others available, that do not present the same overall commercial impression as the Arcuate Trademark. The company does, vigorously and to the extent possible, challenge third party uses and registrations of stitching designs that it believes may cause a likelihood of confusion among consumers or dilute the effectiveness of its mark.

5. As I mentioned in my first declaration, LS&CO. has challenged hundreds of third party stitching designs as likely to be confusing with the Arcuate Trademark. Attached to this declaration as Exhibit A are some examples of stitching designs that LS&CO. has previously challenged and successfully has reached agreement will not be sold. These examples reflect a range of stitching designs that LS&CO. believes present an overall commercial impression that is similar to that of the

1  Arcuate Trademark. To the best of my knowledge, there are no stitching designs within this range, or
2  pending applications to register stitching design trademarks within this range, that are confusingly
3  similar to or likely to dilute the Arcuate Trademark and that the company has not challenged -- except
4  for stitching designs of which the company remains unaware or against which enforcement would be
5  impractical.

6.   I have reviewed the third party stitching designs that A&F submitted in support of its motion for summary judgment. As a preliminary matter, I note that A&F provided no evidence as to actual use of the designs shown. For example, some of the exhibits show jeans being offered for sale on eBay or other Internet auction sites, which could be used jeans that were manufactured years ago. As another example, I am informed that one of the brands, Tom Tailor (Bettinger Declaration Exhibit E-22), is apparently not even available for sale in the United States.

7.   As to specific designs, I note the following:

Bettinger Declaration Exhibit C (Von Dutch): The stitching design depicted in this exhibit was the subject of a previous enforcement action, and the manufacturer represented that use of the design would cease. LS&CO. is currently evaluating whether follow-up action is necessary.

Bettinger Declaration Exhibit K (Coogi): LS&CO. is currently evaluating whether to petition to cancel the supplemental registration depicted in this exhibit. I note that marks on the supplemental register are not published for opposition.

Bettinger Declaration Exhibit V (Right-On): LS&CO. timely filed oppositions to these trademark applications after they published and before the opposition period expired, but was informed by the PTO that due to an international deadline that expired before publication of the applications, our oppositions would not be accepted. LS&CO. is currently in negotiations with the owner of the designs, a Japanese company, and is hopeful that the registrations will be withdrawn. Otherwise, LS&CO. will consider and then take appropriate actions.

8.   Within reason, and considering whether it appears that the design is likely to be ongoing in the producer's line, LS&CO. takes action against any design that, due to the overall commercial impression it creates, is likely in my opinion and the opinion of my clients to cause confusion with or dilute our Arcuate Trademark.

9. As part of my job as the person at LS&CO. most directly responsible for protecting the company's marks, I am constantly observing jeans in the post-sale environment, taking particular note of the brands being worn and whether the jeans have pocket stitching designs. I have personally observed LEVI'S® jeans being worn in close proximity to Seven, Citizens of Humanity, and True Religion jeans (bearing the stitching designs that I understand Dr. Sood used in his likelihood of confusion survey) in a number of settings, including shopping malls, on the street, and in social settings such as parties and restaurants.

10. I have observed Ruehl jeans with the stitching design at issue in this lawsuit being worn on only one or two occasions. I believe these occasions were in shopping malls where, as already noted, LEVI'S® jeans and the other brands I mentioned previously were also being worn.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed at San Francisco, California on this 3rd day of September, 2008.

_____
Thomas M. Onda

61482447 v1

# EXHIBIT A

# REDACTED