Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Levi Strauss & Co.,

       Plaintiff,

-vs-                            CASE No.   C07-03752-JSW

Abercrombie & Fitch Trading Co.,

       Defendant.
_____/

DEPOSITION OF CAROL SCOTT, Ph.D.

Thursday, September 4th, 2008

REPORTED BY:   GINA L. PETERSEN
                CSR No. 9447

BONNIE L. WAGNER & ASSOCIATES
41 SUTTER STREET, SUITE 1605
SAN FRANCISCO, CA   94104
(415) 982-4849

```
 1                 A P P E A R A N C E S:

 2
        For the Plaintiff:
 3                             TOWNSEND AND TOWNSEND AND CREW
                               BY:  Gregory S. Gilchrist
 4                                  Attorney at Law
                               Two Embarcadero Center, 8th Floor
 5                             San Francisco, California    94111

 6

 7

 8      For the Defendant:
                               KIRKPATRICK & LOCKHART, PRESTON,
 9                             GATES, ELLIS, LLP
                               BY:  J. Michael Keyes
10                                  Attorney at Law
                               601 West Riverside Avenue
11                             Suite 3400
                               Spokane, Washington    99201
12

13

14
        The Videographer:
15                             MIKE TUNICK VIDEOGRAPHY
                               Cassia Leet, Videographer
16                             6585-H Commerce Blvd. #132
                               Rohnert Park, California    94928
17                             (707) 792-2488

18

19
        Also Present:
20                             Gerry Ford

21

22

23

24

25
```

1                    E X H I B I T S

2     Defendants'          Description                      Page

3
        1        Eight-Page subpoena to Carol A.              6
4                Scott, Ph.D. in care of Gia Cincone

5       2        Document entitled, "Expert Rebuttal         68
                 report of Carol A. Scott, Ph.D.
6
        3        Document entitled, "Expert Report of       100
7                Professor Carol A. Scott, dated
                 December 17, 2004"
8
        4        Document entitled, "Reply Declaration      147
9                of Carol Scott in Support of
                 Plaintiff Levi Strauss & Co.'s Motion
10               for Summary Judgment"

11      5        Document entitled, "Expert                 168
                 Disclosure"
12
        6        Supplemental Expert Report of Carol        168
13               A. Scott, Ph.D. 7/27/01

14

15

16

17

18

19

20

21

22

23

24

25

1  INDEX OF EXAMINATION

2  Examination by:                                    Page
3  Mr. Keyes                                          6
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

|  |  |  |
|---|---|---|
|  | 1 | THURSDAY, SEPTEMBER 4th, 2008          9:54 O'CLOCK A.M. |
|  | 2 |  |
|  | 3 | -oOo- |
|  | 4 |  |
| 09:53 | 5 | THE VIDEOGRAPHER: Good morning.  Today's date is |
| 09:55 | 6 | September 4th, 2008.  The time is 9:55.  This is the start |
| 09:55 | 7 | of the deposition of Dr. Carol Scott in the matter of Levi |
| 09:55 | 8 | Strauss and Company versus Abercrombie & Fitch Trading |
| 09:55 | 9 | Company in the United States District Court, Northern |
| 09:55 | 10 | District of California, case number C07-3752-JSW. |
| 09:56 | 11 | We are located at the Law Office of K&L Gates in |
| 09:56 | 12 | San Francisco.  My name is Cassia Leet on behalf of Mike |
| 09:56 | 13 | Tunick Videography in Rohnert Park, and I have been |
| 09:56 | 14 | retained by the counsel for Defendants. |
| 09:56 | 15 | Would counsel present please introduce |
| 09:56 | 16 | yourselves. |
| 09:56 | 17 | MR. GILCHRIST:  Greg Gilchrist for Levi Strauss |
| 09:56 | 18 | and Co. |
| 09:56 | 19 | MR. KEYES:  This is Mike Keyes from K&L Gates on |
| 09:56 | 20 | behalf of Abercrombie & Fitch Trading Company. |
| 09:56 | 21 | THE VIDEOGRAPHER:  Our court reporter, Gina |
| 09:56 | 22 | Petersen, may now administer the oath. |
|  | 23 | / |
|  | 24 | / |
|  | 25 | / |

```
                                -oOo-

                        CAROL SCOTT, Ph.D.,

        Being first duly sworn by the Certified Shorthand

        Reporter to tell the truth, the whole truth and

        nothing but the truth, testified as follows:

                                -oOo-

                 THE VIDEOGRAPHER:  Please begin.


                    EXAMINATION BY MR. KEYES


         BY MR. KEYES:

                 Q.  Dr. Scott, good morning.

                 A.  Good morning.

                 Q.  We had an opportunity to meet off the record.
         For the record, my name is Mike Keyes.  I'm with the law
         firm of K&L Gates, and we represent Abercrombie and Fitch
         in this matter.

                 I know you have had your deposition taken before
         and you are familiar with the rules of the road, but what
         we are going to do today, just to recapitulate what you
         have heard previously, I'm going to ask you a series of
         questions and we are going to look at a series of
         documents, and I'll ask you some questions about those.

                 If at any point today you don't understand my
         question or it's not clear, ask me to repeat and I'm happy
```

Page 68

| Time | Line | |
|---|---|---|
| 11:38 | 1 | A. You know, I have asked that question many times: |
| 11:38 | 2 | Why did they wait until later to tell me?  I don't know |
| 11:39 | 3 | how that happened.  I feel sure we probably talked about |
| 11:39 | 4 | controls, and they knew what I was using, but maybe none |
| 11:39 | 5 | of us really thought it through.  Fortunately, it wasn't |
| 11:39 | 6 | the only control there. |
| 11:39 | 7 | Q. What other controls were used, if you recall? |
| 11:39 | 8 | A. I don't remember that particular study, but |
| 11:39 | 9 | usually in those kinds of studies, there are -- people see |
| 11:39 | 10 | four jeans and three that are controls and the fourth is |
| 11:39 | 11 | either Levi's or the alleged infringer. |
| | 12 | (Whereupon, Defendant's Exhibit 2 |
| 11:40 | 13 | was marked for identification.) |
| 11:40 | 14 | MR. GILCHRIST:  Is this for me? |
| 11:40 | 15 | MR. KEYES:  It's yours. |
| 11:40 | 16 | Ms. Scott, you have been handed Exhibit 2 to your |
| 11:40 | 17 | deposition. |
| 11:40 | 18 | BY MR. KEYES: |
| 11:40 | 19 | Q. Can you identify this document for me? |
| 11:40 | 20 | A. This appears to be a copy of the rebuttal report |
| 11:40 | 21 | that I filed in this case.  I don't know what happened to |
| 11:40 | 22 | it, but it looks like -- I thought we used a type that was |
| 11:40 | 23 | big enough to actually read, and this look like a very |
| 11:40 | 24 | small type-face, but it appears to be the report. |
| 11:40 | 25 | Did you reduce it just for my benefit? |

| Time | Line | |
|---|---|---|
| 11:40 | 1 | MR. GILCHRIST: I'm sure it has been photocopied. |
| 11:40 | 2 | BY MR. KEYES: |
| 11:40 | 3 | Q. This report is the report that you authored in |
| 11:41 | 4 | this case; correct? |
| 11:41 | 5 | A. I believe that is true. |
| 11:41 | 6 | Q. And, to your knowledge, is this report true and |
| 11:41 | 7 | accurate? |
| 11:41 | 8 | A. As far as I know. |
| 11:41 | 9 | Q. Have you ever -- well, actually, are you familiar |
| 11:41 | 10 | with the Lanham Act? |
| 11:41 | 11 | A. Generally. |
| 11:41 | 12 | Q. Have you read it before? |
| 11:41 | 13 | A. No, not in its entirety. I never have gone to |
| 11:41 | 14 | the law library and looked up the entire Lanham Act, no. |
| 11:41 | 15 | Q. Have you read portions of it? |
| 11:41 | 16 | A. I'm sure there have been portions of it, but, you |
| 11:41 | 17 | know, it's not that I set out to read it for that, but |
| 11:41 | 18 | sometimes it's excerpted or portions of it will be |
| 11:41 | 19 | excerpted in other books. |
| 11:41 | 20 | Q. When was the last time you remember reading |
| 11:41 | 21 | portions of the Lanham Act? |
| 11:41 | 22 | A. Years ago. |
| 11:41 | 23 | Q. Have you ever written any articles on likelihood |
| 11:42 | 24 | of confusion? |
| 11:42 | 25 | A. No. |

| | | |
|---|---|---|
| 11:42 | 1 | Q. Have you ever written any articles on likelihood |
| 11:42 | 2 | of dilution? |
| 11:42 | 3 | A. No. |
| 11:42 | 4 | Q. Have you ever written any books on likelihood of |
| 11:42 | 5 | confusion? |
| 11:42 | 6 | A. No. |
| 11:42 | 7 | Q. What about the likelihood of dilution? |
| 11:42 | 8 | A. No. |
| 11:42 | 9 | Q. Have you ever written any articles on how to |
| 11:42 | 10 | perform a consumer survey in a trademark infringement |
| 11:42 | 11 | matter? |
| 11:42 | 12 | A. No. |
| 11:42 | 13 | Q. Have you ever written any books on that topic? |
| 11:42 | 14 | A. No. |
| 11:42 | 15 | Q. Performing your consumer-survey work, is there a |
| 11:42 | 16 | particular treatise that you would consult in crafting or |
| 11:42 | 17 | designing your survey? |
| 11:42 | 18 | A. Well, I think there are several good reference |
| 11:42 | 19 | books. I don't necessarily go to one or the other these |
| 11:42 | 20 | days because I have been doing it for so long. |
| 11:42 | 21 | In the beginning, I found Phyllis Welter's book |
| 11:43 | 22 | very helpful. I don't know if you are familiar with her |
| 11:43 | 23 | book, and I don't remember the name of it. I believe Dr. |
| 11:43 | 24 | Ford referenced her book as well, because that was a good |
| 11:43 | 25 | place to find a lot of descriptions of surveys. |

| | | |
|---|---|---|
| 11:43 | 1 | I find -- there used to be an old, old book -- |
| 11:43 | 2 | this really shows my age now -- it's called The Art of |
| 11:43 | 3 | Asking Questions by Stanley Payne, P-a-y-n-e, out of print |
| 11:43 | 4 | for probably almost as old as I am, but Stanley -- It was |
| 11:43 | 5 | just a lovely, simple but well-written book about asking |
| 11:43 | 6 | clear questions and some of the errors to avoid in asking |
| 11:43 | 7 | questions. |
| 11:43 | 8 | There are standard market research textbooks that |
| 11:43 | 9 | can be helpful sometimes. Any textbook -- the one I |
| 11:43 | 10 | usually give attorneys if they want to know one is, I |
| 11:43 | 11 | think, just called Marketing Research by Kumar, K-u-m-a-r, |
| 11:44 | 12 | Aaker, A-a-k-e-r, and Day, D-a-y. |
| 11:44 | 13 | There is also this paper that gets generally |
| 11:44 | 14 | cited a lot of places now. She is an attorney, |
| 11:44 | 15 | unfortunately, not a market research expert, by the name |
| 11:44 | 16 | of Shari, S-h-a-r-i, and I believe it's Diamond, like the |
| 11:44 | 17 | rock. She has a -- she has a piece that everybody now |
| 11:44 | 18 | cites because she got included in one of the manuals for |
| 11:44 | 19 | survey -- using survey evidence in litigation. |
| 11:44 | 20 | She doesn't have anything particularly startling |
| 11:44 | 21 | in there. It's basically a recount of standard |
| 11:44 | 22 | market-research standards and practices. |
| 11:44 | 23 | And then there is the random other paper here or |
| 11:44 | 24 | there. If it's a secondary-meaning case, there can be |
| 11:45 | 25 | some other papers on secondary meaning. |

| | | |
|---|---|---|
| 11:45 | 1 | Q. Anything else? |
| 11:45 | 2 | A. That is about it. |
| 11:45 | 3 | Q. Talking about Professor Diamond's article, that |
| 11:45 | 4 | is the "Reference Manual on Scientific Evidence"; is that |
| 11:45 | 5 | correct? |
| 11:45 | 6 | A. Yes. |
| 11:45 | 7 | Q. You said everybody is citing it now? |
| 11:45 | 8 | A. That is true. |
| 11:45 | 9 | Q. Have you read Professor Diamond's manual? |
| 11:45 | 10 | A. Her article? |
| 11:45 | 11 | Q. Her article that appears in the reference manual. |
| 11:45 | 12 | A. Many times. |
| 11:45 | 13 | Q. When was the last time you read it? |
| 11:45 | 14 | A. Probably a month to six weeks ago; mostly because |
| 11:45 | 15 | other people cite it, and half the time, they cite it |
| 11:45 | 16 | wrong. |
| 11:45 | 17 | Q. You mentioned there is nothing startling in her |
| 11:45 | 18 | article. |
| 11:45 | 19 | What do you mean by that? |
| 11:45 | 20 | A. She is not inventing new rules. She is -- as I |
| 11:45 | 21 | say, she is an attorney. She, sort of, compiled, I think, |
| 11:46 | 22 | a set of rules that are pretty basic ones that most people |
| 11:46 | 23 | doing good market research would follow anyway. |
| 11:46 | 24 | Q. So I take it you would follow these basic rules |
| 11:46 | 25 | that are set forth by Shari Diamond? |

| | | |
|---|---|---|
| 11:46 | 1 | MR. GILCHRIST: Objection; that is overbroad and |
| 11:46 | 2 | vague. |
| 11:46 | 3 | THE WITNESS: It's -- when I do litigation work, |
| 11:46 | 4 | I try to do that. It's my understanding that I'm |
| 11:46 | 5 | completely in compliance. |
| 11:46 | 6 | No, no, no, there is a little something she has |
| 11:46 | 7 | in her report, which I didn't used to be in compliance |
| 11:46 | 8 | with, but we are doing more, but now I don't agree with |
| 11:46 | 9 | her that it's necessary, but we do it anyway just to avoid |
| 11:46 | 10 | hassles. |
| 11:46 | 11 | She has some notion about validation, and she |
| 11:46 | 12 | mentions in there, I think, that in the ordinary course of |
| 11:46 | 13 | business, validating, I think, 15 to 20 percent -- I can't |
| 11:46 | 14 | remember the exact number -- of surveys is appropriate, |
| 11:46 | 15 | and she thinks in litigation work, it should be higher. |
| 11:46 | 16 | Some people have interpreted that -- I can't |
| 11:46 | 17 | remember if she actually said that, but some people have |
| | 18 | interpreted that to mean that you should validate every |
| 11:47 | 19 | single survey, should be 100-percent validation. |
| 11:47 | 20 | And I have seen people do that and we have |
| 11:47 | 21 | started calling every single person in the survey. We |
| 11:47 | 22 | don't always get every single person on the phone to |
| 11:47 | 23 | validate, but we have now instituted the practice which, I |
| 11:47 | 24 | think, is overkill, quite frankly, but we have instituted |
| 11:47 | 25 | the practice of calling every single person. |

| | | |
|---|---|---|
| 11:47 | 1 | BY MR. KEYES: |
| 11:47 | 2 | Q. What is the purpose of validation in your mind? |
| 11:47 | 3 | A. Well, for validation, you can have a couple of |
| 11:47 | 4 | different purposes. |
| 11:47 | 5 | The primary one is to be sure that the research |
| 11:47 | 6 | company that you employ to collect the data actually did |
| 11:47 | 7 | collect the data, and the person actually did participate |
| 11:47 | 8 | in the survey, that the research company hasn't -- some |
| 11:47 | 9 | people calling it drylabbing and people used to call it |
| 11:47 | 10 | curbstoning when you go door to door. So, rather than the |
| | 11 | interviewer going door to door and taking the survey, they |
| | 12 | would sit on the curbstone -- |
| | 13 | THE REPORTER: I'm sorry, "So rather than the |
| | 14 | interviewer ..." |
| | 15 | THE WITNESS: It's a good story. |
| | 16 | MR. GILCHRIST: I know, but you're -- |
| | 17 | THE REPORTER: But I'm not getting any of it. |
| | 18 | THE WITNESS: That's okay. |
| | 19 | THE REPORTER: I'm getting what I'm getting, but |
| | 20 | I need to stop you and have you go back to, "Some people |
| | 21 | are calling it dry..." |
| | 22 | THE WITNESS: "Dry lab." |
| | 23 | THE REPORTER: Thank you. Take it from there, |
| | 24 | please. |
| 11:48 | 25 | THE WITNESS: Dry lab that doesn't actually take |

1  I, GINA PETERSEN, CSR, hereby certify: I am a duly
2  qualified Certified Shorthand Reporter in the State of
3  California, holder of Certificate No. 9447 issued by the
4  Court Reporter's Board of California and which is in full
5  force and effect. (Fed. R. Civ. P. 28[A]).
6      I am authorized to administer oaths or
7  affirmations pursuant to California Code of Civil
8  Procedure, Section 2093(b), and prior to being examined,
9  the deponent was first duly sworn by me, (Fed. R. Civ. P.
10 28(a), 30(f)(1)).
11     I am not a relative or employee or attorney or
12 counsel of any of the parties, nor am I a relative or
13 employee of such attorney or counsel, nor am I financially
14 interested in this action. (Fed. R. Civ. P. 28). I am the
15 deposition officer that stenographically recorded the
16 testimony in the foregoing deposition and the foregoing
17 transcript is a true record of the testimony given by the
18 deponent. (Fed R. Civ. P. 30(f) (1)).
19     Before completion of the deposition, review of
20 the transcript [X] was [ ] was not requested. If
21 requested, any changes made by the deponent (and provided
22 to the reporter) during the period allowed, are appended
23 hereto. (Fed. R. Civ. P. 30(e)).
24 GINA PETERSEN, CSR No. 9447    Dated: September 8th, 2008
25

Page 204

```
 1                CERTIFICATION OF WITNESS
 2
 3        I, Carol Scott, Ph.D., hereby declare that I have
 4   read the foregoing testimony, and the same is a true and
 5   correct transcription of my said testimony except as I
 6   have corrected.
 7
 8                              Signature_____
 9
10                              Date_____
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```