1  TOWNSEND AND TOWNSEND AND CREW LLP
   GREGORY S. GILCHRIST (State Bar No. 111536)
2  GIA L. CINCONE (State Bar No. 141668)
   RAQUEL PACHECO (State Bar No. 245328)
3  Two Embarcadero Center, Eighth Floor
   San Francisco, California  94111
4  Telephone: (415) 576-0200
   Facsimile: (415) 576-0300
5  Email:  gsgilchrist@townsend.com;
   glcincone@townsend.com; rpacheco@townsend.com
6
   Attorneys for Plaintiff/Counterdefendant
7  LEVI STRAUSS & CO.

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  LEVI STRAUSS & CO.,                          Case No.    C 07-03752 JSW

14              Plaintiff/Counterdefendant,      **PLAINTIFF LEVI STRAUSS &
                                                 CO.'S REPLY MEMORANDUM
15      v.                                       OF POINTS AND
                                                 AUTHORITIES IN SUPPORT
16  ABERCROMBIE & FITCH TRADING CO.,             OF MOTION FOR SUMMARY
                                                 JUDGMENT AND PARTIAL
17              Defendant/Counterclaimant.       SUMMARY JUDGMENT**

18  ─────────────────────────────────────
    ABERCROMBIE & FITCH TRADING CO.,             Date:       September 26, 2008
19                                               Time:       9:00 a.m.
                Defendant/Counterclaimant,       Courtroom:  2, 17th Floor
20                                                           Honorable Jeffrey S. White
        v.
21
    LEVI STRAUSS & CO.,
22
                Plaintiff/Counterdefendant.
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ..................................................................................... vi

II.   ARGUMENT ............................................................................................................... 1

      A.    A&F Presents No Evidence To Refute LS&CO.'s Showing On A&F's
            Fraud Counterclaim ........................................................................................ 1

            1.    A&F Does Not And Cannot Establish That LS&CO.'s
                  Interpretation Of Section 15 Is Incorrect ............................................. 1

            2.    A&F Does Not And Cannot Establish That LS&CO. Had The
                  Requisite Fraudulent Intent ................................................................. 3

      B.    A&F Presents No Evidence To Refute LS&CO.'s Showing On A&F's
            Abandonment Counterclaim ............................................................................. 6

            1.    A&F Does Not Contest That It Must Prove The Arcuate
                  Trademark Has Lost All Trademark Significance .................................. 6

            2.    A&F's Analysis Of The Survey Evidence Is Flawed And
                  Consists Of Nothing More Than Attorney Argument ........................... 7

            3.    A&F Cannot Challenge LS&CO.'s Mark On Grounds That It
                  Lacks Secondary Meaning .................................................................... 8

            4.    Third Party Settlement Agreements Are Irrelevant And
                  Inadmissible ......................................................................................... 9

                  a)    The Third Party Settlements Are Inadmissible Under
                        Federal Rule of Evidence 408 ..................................................... 9

                  b)    LS&CO Has Not Engaged In "Naked" Licensing ..................... 10

            5.    A&F Presents No Evidence That Third Party Uses And
                  Registrations Have Weakened The Arcuate Trademark ........................ 12

      C.    LS&CO. Is Entitled To Summary Judgment On A&F's Affirmative
            Defenses ........................................................................................................ 12

      D.    The Arcuate Trademark Is Famous ................................................................. 14

III.  CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Adidas America, Inc. v. Payless Shoesource, Inc.,*
    546 F. Supp. 2d 1029 (D. Or. 2008) ............................................. 13

*Albert v. Kevex Corp.,*
    729 F.2d 757 (Fed. Cir. 1984) ..................................................... 5

*Allen v. Centillium Communications, Inc.,*
    2008 U.S. Dist. LEXIS 27435 (N.D. Cal. 2008) ........................... 7

*Arrington v. Wong,*
    237 F.3d 1066 (9th Cir. 2001) ..................................................... 3

*Audi AG v. D'Amato,*
    469 F.3d 534 (6th Cir. 2006) ..................................................... 14

*Babbit Electronics, Inc. v. Dynascan Corp.,*
    38 F.3d 1161 (11th Cir. 1994) ................................................... 10

*Barcamerica International USA Trust v. Tyfield Imports, Inc.,*
    289 F.3d 589 (9th Cir. 2002) ..................................................... 11

*Barnes v. Arden Mayfair, Inc.,*
    759 F.2d 676 (9th Cir. 1985) ....................................................... 6

*Board of Regents v. Buzas Baseball, Inc.,*
    176 F. Supp. 2d 1338 (N.D. Ga. 2001) ................................... 7, 10

*Clinton E. Worden & Co. v. California Fig Syrup Co.,*
    187 U.S. 516 (1903) ................................................................. 14

*Constellation Brands, Inc. v. Arbor Hill Associates, Inc.,*
    535 F. Supp. 2d 347 (W.D.N.Y. 2008) ......................................... 2

*Copelands' Enterprises, Inc. v. CNV, Inc.,*
    945 F.2d 1563 (Fed. Cir. 1991) ................................................... 5

*Country Floors, Inc. v. Gepner,*
    930 F.2d 1056 (3d Cir. 1991) ..................................................... 13

*Dawn Donut Co., Inc. v. Hart's Food Stores, Inc.,*
    267 F.2d 358 (2d Cir. 1959) ....................................................... 11

*Estefan Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.,*
    2007 U.S. Dist. LEXIS 40261 (M.D. Fla. 2007) ........................... 2

*Exxon Corp. v. Oxxford Clothes, Inc.,*
    109 F.3d 1070 (5th Cir. 1997) ..................................................... 7

# TABLE OF AUTHORITIES (con't)

Page

*First Interstate Bancorp v. Stenquist*,
    16 U.S.P.Q.2d (BNA) 1704 (N.D. Cal. 1990)......................................................... 11

*FirstHealth of Carolinas, Inc. v. CareFirst of Maryland, Inc.*,
    479 F. 3d 825 (Fed. Cir. 2007) ............................................................................ 7

*Fossil Inc. v. Fossil Group*,
    49 U.S.P.Q.2d 1451 (TTAB 1998)...................................................................... 14, 15

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply*,
    45 F.3d 1550 (Fed. Cir. 1995) ............................................................................ 8

*Harrison-Hoge Industries v. Panther Martin S.R.L.*,
    2008 U.S. Dist. LEXIS 25480 (E.D.N.Y. 2008) ................................................. 4

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996) ............................................................................ 6

*Hijeck v. Menlo Logistics, Inc.*,
    2008 U.S. Dist. LEXIS 12886 (N.D. Tex. 2008) ............................................... 5

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*,
    482 F. Supp. 2d 1045 (N.D. Ind. 2007), *aff'd*,
    2008 U.S. App. LEXIS 454 (Fed. Cir.), *cert. denied*,
    128 S. Ct. 2915 (2008) ........................................................................................ 8

*In re Seagate Technology, LLC*,
    497 F.3d 1360 (Fed. Cir. 2007), *cert. denied*,
    128 S. Ct. 1445 (2008) ........................................................................................ 3

*In re Trademark Registration of McDonald's Corp.*,
    *Reg. No. 1,065,885*, 1984 Commr. Pat. LEXIS 10
    (Comm'er of Patents and Trademarks Apr. 10, 1984) ....................................... 2

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) .......................................................................... 8

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir.), *cert. denied*,
    537 U.S. 1047 (2002) .......................................................................................... 12

*Juno Online Services, L.P. v. Juno Lighting, Inc.*,
    979 F. Supp. 684 (N.D. Ill. 1997) ...................................................................... 14

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*,
    285 F.3d 848 (9th Cir. 2002) .............................................................................. 12

*Kinark Corp. v. Camelot, Inc.*,
    548 F. Supp. 429 (D.N.J. 1982).......................................................................... 10

1

**TABLE OF AUTHORITIES (con't)**

2

Page

3

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
    408 F.3d 596 (9th Cir. 2005) ........................................................................................ 8

4

*Levi Strauss & Co. v. Blue Bell, Inc.,*
    632 F.2d 817 (9th Cir. 1980) ........................................................................................ 9

5

6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
    561 F. Supp. 2d 368 (S.D.N.Y. 2008) ....................................................................... 14

7

*Lucent Technologies, Inc. v. Gateway, Inc.,*
    2007-2 Trade Cas. (CCH) ¶ 75,977  (S.D. Cal. 2007) ............................................... 8

8

9

*Marshak v. Treadwell,*
    58 F. Supp. 2d 551 (D.N.J. 1999).................................................................................. 5

10

*Medinol Ltd. v. Neuro Vasx, Inc.,*
    67 U.S.P.Q.2d (BNA) 1205 (TTAB 2003)..................................................................... 5

11

12

*Moore v. Marty Gilman, Inc.,*
    965 F. Supp. 203 (D. Mass. 1996)................................................................................. 6

13

*Nathenson v. Zonagen, Inc.,*
    322 F. Supp. 2d 764 (S.D. Tex. 2003)........................................................................... 8

14

15

*Nelson v. Pima Community College,*
    83 F.3d 1075 (9th Cir. 1996) ........................................................................................ 7

16

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*
    469 U.S. 189 (1985) ................................................................................................. 8, 9

17

18

*Pizzeria Uno Corp. v. Temple,*
    747 F.2d 1522 (4th Cir. 1984)....................................................................................... 2

19

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,*
    486 F. Supp. 414 (S.D.N.Y. 1980) ................................................................................ 9

20

21

*Playboy Enterprises, Inc. v. P.K. Sorren Export Co.,*
    546 F. Supp. 987 (S.D. Fla. 1982)............................................................................... 10

22

*Shouse v. Pierce County,*
    559 F.2d 1142 (9th Cir. 1977)..................................................................................... 12

23

24

*Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha,*
    2006 TTAB LEXIS 9 (TTAB 2006) ............................................................................... 5

25

*Sunrise Jewelry Manufacturing Corp. v. Fred S.A.,*
    175 F.3d 1322 (Fed Cir. 1999) ..................................................................................... 2

26

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,*
    743 F.2d 1039 (4th Cir. 1984)..................................................................................... 11

27

28

**TABLE OF AUTHORITIES (con't)**

Page

*Torres v. Cantine Torresella S.r.l.,*
   808 F.2d 46 (Fed. Cir. 1986) ............................................................................ 5

*Wallpaper Manufacturers, Ltd. v. Crown Wallcovering Corp.,* |
   680 F.2d 755 (C.C.P.A. 1982) ......................................................................... 9

**Statutes**

15 U.S.C. § 1065 .................................................................................... 3, 4, 6

15 U.S.C. § 1119 ...................................................................................... 1, 3

15 U.S.C. § 1125(c)(2)(A) ............................................................................ 14

**Other Authorities**

2 *McCarthy on Trademarks* § 15:42 ................................................................. 9

3 *McCarthy on Trademarks* § 17:17 ................................................................. 9

**Rules**

*Trademark Manual of Examining Procedure*
   § 1605.04 (5th ed. 2007)............................................................................... 2

# I.    SUMMARY OF ARGUMENT

Abercrombie & Fitch's ("A&F") opposition to LS&CO.'s partial summary judgment motion consists largely of attorney argument about surveys and settlements from prior cases, some going back over 20 years.  These arguments fail to contest the unassailable proposition in LS&CO.'s motion: the Arcuate Trademark remains a famous marker of the original blue jean.  Moreover, as set forth in LS&CO.'s separate Objections to Evidence, the arguments rest on inadmissible evidence and unsupportable analysis.

A&F's opposition also makes clear that A&F's counterclaims for cancellation have nothing to do with the real issues in this lawsuit, are based on highly dubious arguments, and are unsupported by any real evidence.  LS&CO.'s motion for judgment on A&F's counterclaims and related affirmative defenses and a determination that the Arcuate Trademark is famous as a matter of law should be granted in full.

## II.    ARGUMENT

### A.    A&F Presents No Evidence To Refute LS&CO.'s Showing On A&F's Fraud Counterclaim

#### 1.    A&F Does Not And Cannot Establish That LS&CO.'s Interpretation Of Section 15 Is Incorrect

A&F does not dispute the following facts:

• Neither Lois nor Textiles ever asked the New York district court to cancel the Arcuate Trademark registration or to make any determination that the trademark was "invalid."

• Lois and Textiles expressly disclaimed, in their pleadings and in oral argument, any intention to challenge LS&CO.'s mark – a fact recognized by the district court in its opinion granting LS&CO.'s motion for summary judgment.

• When LS&CO. submitted its Section 15 affidavit, the district court proceeding had terminated. The only pending proceeding was Lois's and Textiles's appeal to the Second Circuit, in which they did not raise any issue concerning the validity of the Arcuate Trademark -- and could not have done so, having already waived any such issue.

• LS&CO.'s interpretation of its disclosure obligation was entirely consistent with the governing authorities at the time and now. These authorities are inconsistent with any inference that LS&CO. intended to defraud the PTO.

A&F argues only that Lois's and Textiles's "affirmative defense" should have been disclosed, even though their allegations did not amount to an affirmative defense at all. *See* LS&CO. MSJ at 10 & n.5 (trademark owner always has the burden of showing the validity of its mark). A&F insists that, had Lois "prevailed" on the purported "affirmative defense" of "invalidity" (which Lois and Textiles already had declined to pursue), it "would have established a basis for canceling LS&CO.'s registration." Opp. at 8-9. It is true in any trademark infringement case -- including one in which a party fails to (unnecessarily) state the proposition as an affirmative defense -- that a district court has "a basis for canceling" a registration if it finds that a trademark infringement plaintiff has not proved a valid mark. *See* 15 U.S.C. § 1119. A&F never comes to grips with the full implications of its interpretation: that *all* trademark infringement litigation would have to be disclosed. Every authority LS&CO. cited says the opposite. *See Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*, 175 F.3d

1    1322 (Fed. Cir. 1999); *In re Trademark Registration of McDonald's Corp., Reg. No. 1,065,885*, 1984

2    Commr. Pat. LEXIS 10 (Comm'er of Patents and Trademarks Apr. 10, 1984); *Trademark Manual of*

3    *Examining Procedure* § 1605.04 (5th ed. 2007).[1]

4          A&F does not discuss *Sunrise* or *McDonald's* -- which address the relevant state of the law

5    regarding LS&CO.'s disclosure obligations under Section 15 -- at all, or offer anything about the *Lois*

6    declaratory relief action (the only part of the *Lois* case that is procedurally distinct) that reveals any

7    challenge to the Arcuate Trademark or to LS&CO.'s registration.  Instead, A&F offers cases that

8    themselves are procedurally distinct and do not address the issues that are important to this motion.  In

9    *Constellation Brands, Inc. v. Arbor Hill Associates, Inc.*, 535 F. Supp. 2d 347, 361 (W.D.N.Y. 2008),

10   the court merely denied the defendant's motion for summary judgment on its cancellation

11   counterclaim, without addressing or analyzing the parties' duties under Section 15.  In *Estefan*

12   *Enterprises, Inc. v. Coco Bongo Grill and Bar, Inc.*, 2007 U.S. Dist. LEXIS 40261 at *9-10 (M.D. Fla.

13   2007), the court held only that the plaintiff's mark could not be converted to incontestable against a

14   party with whom it currently was litigating.  *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir.

15   1984), is a straightforward likelihood of confusion case in which the court noted that a trademark

16   infringement defendant is not precluded from collaterally attacking the mark at issue if the mark has

17   not become incontestable  It does not cite or discuss Section 15's disclosure requirement.

18         A&F attempts to legitimize its "affirmative defense" argument by pointing out that the

19   Lanham Act authorizes affirmative defenses as well as counterclaims.  LS&CO. did not contest this

20   proposition.  LS&CO.'s point was that the unnecessary and ultimately meaningless articulation of

21   such a "defense" presents no distinction from any other trademark infringement litigation in which the

22   plaintiff's burden is not framed as an affirmative defense.  The case law unequivocally states that such

---

[1] The Court made a clear statement, in its order on LS&CO.'s motion to dismiss, that this authority will govern if this case presents no meaningful procedural distinctions.  The Court carefully stated that its earlier ruling only meant that it could not conclude "as a matter of law" based on the pleadings that such distinctions were absent. Order (Docket No. 88) at 5.  A&F uses this ruling to ignore the issue outright, as if it could establish some significant procedural distinction just by saying so.

1    a matter need not be disclosed.[2]

2        On its face, Section 15 does not require disclosure of *all* pending proceedings, but only those

3    "involving" the registrant's claim of ownership of the mark or the registrant's right to register the

4    mark or to keep the mark on the register.  15 U.S.C. § 1065.  LS&CO. agrees that this is not the most

5    precise language that Congress might have chosen.  The court's *capacity*, in any appropriate case, to

6    cancel a registration (*see* 15 U.S.C. § 1119) or entertain "defenses," however, does not mean that all

7    such proceedings must be disclosed.  A&F's interpretation of Section 15 would, in effect, read the

8    "proceedings involving said rights" limitation out of the statute altogether – an outcome that is not

9    acceptable as a matter of statutory construction.  *See, e.g., Arrington v. Wong*, 237 F.3d 1066, 1075

10   (9th Cir. 2001) (it is an "elementary canon of construction that a statute should be interpreted so as not

11   to render one part inoperative") (citation omitted).  A&F cannot identify anything in the supposedly

12   "procedurally distinct" declaratory relief action that "involves" LS&CO.'s rights in its registration.

13              **2.      A&F Does Not And Cannot Establish That LS&CO. Had The Requisite**
                          **Fraudulent Intent**
14

15        LS&CO. argued in its opening brief that when a legal question is involved, such as the scope

16   of LS&CO.'s disclosure obligation under Section 15, proof of fraudulent intent must include a

17   showing that the legal contention objectively could not have been made in good faith.  Even grossly

18   negligent, but good faith interpretations are not fraudulent.  LS&CO. MSJ at 12-13 (citing cases); *cf.*

19   *In re Seagate Technology, LLC*, 497 F.3d 1360, 1370-71 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct.

20   1445 (2008).  A&F ignores this point entirely because it knows that even if LS&CO. did not have the

21   better legal position regarding the scope of Section 15's disclosure requirement (which it does), it

22

23   ───────────────

24   [2] A&F conflates allegations made in Lois's pleadings and arguments that – as A&F claims here – third
     party uses had "weakened" the Arcuate Trademark, with the far more isolated allegations that the
25   trademark had lost all significance.  *Compare* Opp. at 1 ("resulted in a loss by defendants of any
     trademark rights") *with* Opp. at 3 ("diluted the distinctiveness of Levi's mark as to undermine its
26   ability to serve as an identifier of source").  As to the latter arguments, the district and appellate courts
     rejected them as a matter of law.  As to the former, Lois waived the arguments in briefs and oral
27   arguments and certainly with respect to the appeal which was the only proceeding pending when the
     Section 15 affidavit was filed.  LS&CO MSJ at 4-5.
28

1    certainly has at a minimum an objectively based good faith argument that it is right.

2         To deflect this dispositive point, A&F maligns two former LS&CO. employees for their role in

3    submitting the affidavits.  Ms. Durgin, who executed the affidavit that has already been dismissed

4    from A&F's fraud claim by the Court because the PTO did not accept it (Order at 3), testified that she

5    fully understood the importance of signing documents on behalf of the company, and that she took

6    steps to make sure whatever documents she was signing had been prepared and signed off by

7    appropriate members of LS&CO.'s legal department. Reply Cincone Dec. Ex. A at 34:1-6, 42:22-24.

8    Ms. Fowler, who signed the contested Section 15 affidavit, testified that the company culture at

9    LS&CO. was one of high ethical standards, that she trusted her colleagues in LS&CO.'s legal

10   department to do their jobs properly and to present her with documents that had been thoroughly

11   researched and properly prepared, and that she never knew of anyone in LS&CO.'s legal department

12   doing anything unethical or dishonest.  Reply Cincone Dec. Ex. B at 22:13-23:12, 30:21-31:6, 32:1-

13   33:3, 38:4-8.  The affidavits are submitted under information and belief, not personal knowledge, and

14   there is absolutely no reason to construe what these employees did as fraudulent.

15        A&F presents no evidence or authority indicating that the conduct of Ms. Durgin and Ms.

16   Fowler was improper.  As corporate representatives of LS&CO., Ms. Fowler and Ms. Durgin were not

17   required to have personal knowledge of the matters contained in the affidavits, but were entitled to

18   rely on the work of the attorneys and paralegals at LS&CO.[3]  *See, e.g., Harrison-Hoge Industries v.*

19   *Panther Martin S.R.L.*, 2008 U.S. Dist. LEXIS 25480 at *82 (E.D.N.Y. 2008) ("It is axiomatic that a

20   corporate representative may testify and submit affidavits based on knowledge gained from a review

21   of corporate books and records."); *Hijeck v. Menlo Logistics, Inc.*, 2008 U.S. Dist. LEXIS 12886 at

22   ─────────────────────

23   [3] A&F's expert on the fraud issue agrees that personal knowledge was not required:

24        [A&F's counsel] had some other theories, which I did not agree with.  He thought it
         was fraudulent for . . . Miss Fowler to sign a declaration without having personal
25        knowledge of each of the facts contained within the declaration.  I told him that was
         not the practice in corporations and was not the practice that was required by the . . .
26        Patent & Trademark Office[,] that she was acting in [her] corporate capacity and was
         deemed to have corporate knowledge.  That was all that was required.

27

28   Reply Cincone Dec. Ex C at 45:10-19.

1    *9-10 (N.D. Tex. 2008) (not necessary that corporate representative "have direct, personal knowledge

2    of each and every fact discussed in her affidavit"; corporate representative has authority to testify not

3    only to facts "but also to the subjective beliefs and opinions of the corporation").

4          Once again, the cases cited by A&F are not to the contrary.  In *Standard Knitting, Ltd. v.*

5    *Toyota Jidosha Kabushiki Kaisha*, 2006 TTAB LEXIS 9 (TTAB 2006), the TTAB noted that a

6    statement is not fraudulent if the statement, "though false, was made with a reasonable and honest

7    belief that it was true."  *Id*. at *30.  The TTAB then held that it was not reasonable for a declarant to

8    state that a mark was currently in use on certain goods, where he had asked only whether goods had

9    ever been made or sold bearing the mark.  *Id*. at *35-36; *see also Medinol Ltd. v. Neuro Vasx, Inc.*, 67

10   U.S.P.Q.2d (BNA) 1205 (TTAB 2003) (finding fraud where statement of use represented that mark

11   was in use on only two goods, and mark was not being used on one of those two).  *Torres v. Cantine*

12   *Torresella S.r.l.*, 808 F.2d 46 (Fed. Cir. 1986) (specifically designated as non-precedential by the

13   Federal Circuit), involved false factual representations to the PTO that the trademark owner was using

14   the mark in a particular form and on particular goods.  The court held that if a registrant files a

15   renewal application "when, in fact, he knows or should know that he is not using the mark as

16   registered and that the label attached to the registration is not currently in use, he has knowingly

17   attempted to mislead the PTO."  *Id*. at 49.  In the other cases cited by A&F – all of which involved

18   factual misrepresentations, rather than interpretations of the scope of a statutory disclosure

19   requirement -- the courts were able to identify a factual dispute over intent, or to point to actual

20   evidence that the registrants knew they were making factual misrepresentations to the PTO.[4]

21         There simply is no such evidence here.  Neither Ms. Durgin nor Ms. Fowler testified to any

22   knowledge that anything in their affidavits was false; to the contrary, they relied on the integrity and

23   judgment of LS&CO.'s legal department to conclude that the affidavits they were signing were proper.

24   There is no evidence that this reliance was unreasonable or misguided, or that any judgment made by

25

26   [4] *See Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991); *Albert v. Kevex*
27   *Corp.*, 729 F.2d 757, 763 (Fed. Cir. 1984); *Marshak v. Treadwell*, 58 F. Supp. 2d 551, 567 (D.N.J.
     1999).

28

1    LS&CO.'s legal department concerning the Section 15 disclosure requirement was even erroneous.[5]

2    Although intent can be a fact-intensive issue not suited for summary judgment, that is not the case

3    here, where A&F has presented no evidence indicating that there is any genuine issue of material fact.[6]

4    A&F's innuendo, and the fact that Ms. Durgin and Ms. Fowler could not recall (over 20 years later)

5    exactly who at LS&CO. prepared the affidavits they signed, are insufficient to defeat summary

6    judgment.  It is A&F's burden to come forward with *evidence* of LS&CO.'s alleged fraudulent intent.

7    In the absence of any such evidence, LS&CO. is entitled to judgment on this claim.

8       **B.    A&F Presents No Evidence To Refute LS&CO.'s Showing On A&F's
            Abandonment Counterclaim**

9

10          **1.    A&F Does Not Contest That It Must Prove That The Arcuate Trademark
                 Has Lost All Trademark Significance**

11          A&F agrees that to prove its "abandonment" counterclaim, it must establish that the Arcuate

12    Trademark has lost all significance as a source indicator.  Except for inadmissible and unsupportive

13    evidence regarding third party settlements and surveys (discussed below), A&F has not presented any

14    evidence on this question.[7]

15          A&F appears to argue that the issue inherently is one for the jury, citing *FirstHealth of*

16

17    _____

18    [5] The purported inferences cited by A&F (Opp. at 15) are insufficient to defeat summary judgment.
      There is no evidence in the record as to why LS&CO.'s first Section 15 affidavit was submitted early;

19    but in any event, the affidavit was not acknowledged by the PTO and did not affect LS&CO.'s
      trademark rights.  A&F claims that "LS&CO. asked that the PTO rush proof of its incontestability

20    back to LS&CO." *Id.*, but ignores the fact that the transmittal letter that accompanied the Section 15
      affidavit was simply a form letter, duplicated in many other instances in LS&CO.'s files.  Reply

21    Cincone Dec. Ex. D.  Finally, A&F's evidence that other Section 15 affidavits were timely submitted
      does not imply anything as to LS&CO.'s intent in submitting its operative Section 15 affidavit –

22    which also was timely – in this instance.

23    [6] *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive can not be inferred
      solely from the fact that information was not disclosed; there must be a factual basis for a finding of

24    deceptive intent."); *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985) (summary
      judgment proper on issue of motive where non-moving party fails to produce "substantial factual

25    evidence"); *Moore v. Marty Gilman, Inc.*, 965 F. Supp. 203, 209-10 (D. Mass. 1996) ("Even in cases
      where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if

26    the nonmoving party rests merely upon conclusory allegations, improbable inferences, and
      unsupported speculation.") (citation omitted).

27    [7] A&F declined to ask its expert to opine on the question.  Opp. Cincone Dec. Ex. B at 176:6-177:6.

28

1  *Carolinas, Inc. v. CareFirst of Maryland, Inc.*, 479 F. 3d 825, 830 (Fed. Cir. 2007).  But that case

2  merely involved the affirmance of a TTAB determination that a mark had *not* been abandoned.

3  To defeat a motion for summary judgment on an issue in which the opposing party bears the burden of

4  proof, evidence must be "specific and non-speculative."  *Allen v. Centillium Communications, Inc.*,

5  2008 U.S. Dist. LEXIS 27435 at *13 (N.D. Cal. 2008); *see also Nelson v. Pima Community College*,

6  83 F.3d 1075, 1081-82 (9th Cir. 1996) ("The mere existence of a 'scintilla' of evidence is not enough

7  to create a 'genuine issue of material fact'").  This rule applies with full force when someone claims

8  abandonment of trademarks.  *See, e.g., Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1080

9  (5th Cir. 1997) (affirming grant of summary judgment for plaintiff on abandonment defense where

10  defendant "failed to adduce evidence sufficient to allow a reasonable factfinder to conclude that

11  Exxon has abandoned its marks"); *Board of Regents v. Buzas Baseball, Inc.*, 176 F. Supp. 2d 1338,

12  1349 (N.D. Ga. 2001) (granting summary judgment for plaintiff on affirmative defense and

13  counterclaim for cancellation based on abandonment).

### 2. A&F's Analysis Of The Survey Evidence Is Flawed And Consists Of Nothing More Than Attorney Argument

16  A&F asks the Court to believe that various consumer surveys from LS&CO.'s cases against

17  third parties support a conclusion that the Arcuate mark no longer has adequate secondary meaning.

18  This is not the proper test of A&F's burden, as discussed below.  In any event, A&F's analysis of

19  these surveys is wholly without merit and is unsupported by its expert.  These surveys use different

20  methodologies, address different survey populations, and use different survey stimuli.

21  As set forth in LS&CO.'s separate Objections to Evidence filed with this reply, the Court

22  should exclude the evidence and analysis altogether.  Even if these past surveys are considered,

23  however, the inferences that A&F would like to draw – that secondary associations with LS&CO.'s

24  Arcuate mark have diminished over time -- are unsupported even under its own analysis, and are

25  contrived without any actual support in the data.  A&F simply picks and chooses from the data,

26  reporting one population's answers here, but there subtracting and adjusting so that its assumed

27  "trend" or "pattern" will appear.

28  Even if it had been done properly, interpretations of technical evidence by attorneys,

1  unsupported by expert testimony or opinions, are insufficient to create a genuine issue that would

2  defeat summary judgment.  For example, in *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d

3  1052 (Fed. Cir. 2005), the defendant relied on arguments involving technical notebook entries, but

4  provided no expert testimony regarding those entries.  Although the defendant addressed the issue

5  "with extensive attorney argument," the court held, "Unsubstantiated attorney argument regarding the

6  meaning of technical evidence is no substitute for competent, substantiated expert testimony.  *It does*

7  *not, and cannot, support [defendant's] burden on summary judgment.*"  *Id.* at 1068 (emphasis added).[8]

8        ### 3.    A&F Cannot Challenge LS&CO.'s Mark On Grounds That It Lacks Secondary Meaning

9

10        A&F relies on cases discussing the appropriate level of recognition to support a finding of

11  secondary meaning.  Opp. at 18.  Those cases are irrelevant to A&F's burden here.  First, they are

12  offered in conjunction with LS&CO.'s past surveys, which were not secondary meaning surveys that

13  would necessarily be tailored to LS&CO.'s target consumer.  Second, irrespective of what happens

14  with the '248 registration as a result of A&F's "fraud" claim, the Arcuate Trademark is incontestable.

15  Onda Dec. Ex. G.  It therefore cannot be challenged on grounds that it lacks secondary meaning.  *See*

16  *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985); *KP Permanent Make-Up, Inc. v.*

17  *Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005) ("a defendant in a trademark

18  infringement action cannot assert that an incontestable mark is invalid because it is descriptive and

19  lacks secondary meaning").

20        A&F appears to confuse two distinct bodies of trademark law.  The most important element of

21  secondary meaning is association of the mark with a single source.  *See Levi Strauss & Co. v. Blue*

22

23  _____

24  [8] *See also Glaverbel Societe Anonyme v. Northlake Marketing & Supply*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There must be sufficient evidence, other than attorney argument, to show that the issue requires trial."); *Lucent Technologies, Inc. v. Gateway, Inc.*, 2007-2 Trade Cas. (CCH) ¶ 75,977 at *59

25  (S.D. Cal. 2007) ("Speculation and attorney argument do not create issues of triable fact to preclude summary judgment."); *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 482 F. Supp. 2d

26  1045, 1065 (N.D. Ind. 2007), *aff'd*, 2008 U.S. App. LEXIS 454 (Fed. Cir.), *cert. denied*, 128 S. Ct. 2915 (2008) (rejecting attorney arguments regarding technical evidence as basis for summary

27  judgment); *Nathenson v. Zonagen, Inc.*, 322 F. Supp. 2d 764, 778 (S.D. Tex. 2003) (rejecting attorney arguments on issue as to which there was no factual evidence).

28

*Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980).  Secondary meaning can be proved with survey evidence of a particular association "between a given symbol and a single source of the product," but such evidence is not required.  2 *McCarthy on Trademarks* § 15:42.  On the other hand, as set forth in LS&CO.'s motion, abandonment "requires proof that the mark has *lost all significance as an indication of origin.*  That is, the mark is completely without signs of life."  3 *McCarthy on Trademarks* § 17:17 (emphasis added); *see, e.g., Wallpaper Manufacturers, Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 765 (C.C.P.A. 1982) ("Only when all rights of protection are extinguished is there abandonment.").  A&F is, in effect, attempting to evade the restrictions of *Park 'N Fly* by challenging (by implication) the incontestable proposition that the mark enjoys secondary associations, when in fact A&F has a much higher burden – namely, to prove that the Arcuate Trademark is "completely without signs of life."  A&F does not offer any evidence on this topic, and the proposition is inconsistent with the evidence that is offered.  In the absence of evidence that LS&CO.'s 135 year old mark has no life at all, LS&CO. is entitled to judgment on A&F's abandonment claim.

### 4.     Third Party Settlement Agreements Are Irrelevant And Inadmissible

#### a)     The Third Party Settlements Are Inadmissible Under Federal Rule of Evidence 408

A&F also tries to show that the Arcuate Trademark has lost its life by selecting a few settlement agreements out of hundreds.  It disregards the fact that in most of those cases, LS&CO.'s adversaries have agreed to stop using similar designs which – if LS&CO. could introduce them, along with hundreds of other settlements, for this purpose – would tend to show that the mark has enormous vitality and respect from third party producers.  As set forth in LS&CO.'s Objections to Evidence, however, federal courts apply Rule 408 to exclude evidence of settlement agreements in exactly the circumstances in which A&F offers them here.  *See, e.g., Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 486 F. Supp. 414, 423 n.10 (S.D.N.Y. 1980).

A&F offers no reason why it should receive the protection of settlements with other parties, some of them going back many years and involving designs that look nothing like the Ruehl design.  A&F identifies no relevance to these agreements and has offered little, if any, evidence to show that

1    any of these designs are actually in use or that they have had any actual bearing on consumer

2    perceptions of the Arcuate Trademark.  LS&CO.'s decisions to compromise claims regarding third

3    parties' liability for different marks, used on different products in different channels of distribution,

4    have nothing to do with any issue in this case.  *See, e.g., Babbit Electronics, Inc. v. Dynascan Corp.*,

5    38 F.3d 1161, 1180 (11th Cir. 1994) ("failure to institute legal action against an infringer is

6    insufficient to establish abandonment of a trademark"); *Board of Regents*, 176 F. Supp. 2d at 1349

7    (rejecting claim of abandonment based on existence of third party users that trademark owner "either

8    was unaware of or has tolerated for its own reasons"); *Kinark Corp. v. Camelot, Inc.*, 548 F. Supp.

9    429, 443 (D.N.J. 1982) (rejecting abandonment defense, noting, "The plaintiffs' lack of a consistent

10   effort to prevent others from using the mark, especially where most of the other uses have been

11   commercially insignificant to plaintiffs' marketing efforts, has no bearing on the rights of the parties

12   before the court."); *Playboy Enterprises, Inc. v. P.K. Sorren Export Co.*, 546 F. Supp. 987, 996-97

13   (S.D. Fla. 1982) (failure to institute legal action against infringer held "insufficient to establish

14   abandonment" of plaintiff's mark).

15         A&F has the burden to show that a jury could infer the Arcuate Trademark is dead to

16   consumers.  As these cases indicate, playing "gotcha" with a few decisions made in the context of

17   third party settlements is not permitted by Rule 408 and even if it were, is no substitute for showing

18   how such third party uses actually have affected consumer perception of the trademark.

### b)       LS&CO Has Not Engaged In "Naked" Licensing

20         A&F argues that because LS&CO. purportedly "consented" to third party uses of stitching

21   designs, its conduct is "akin to" – or even "actually worse than" – a naked license.  Opp. at 16-17.  As

22   a threshold matter, A&F's argument suffers from the same logical disconnect that permeates its

23   opposition to LS&CO.'s motion as well as its own motion for summary judgment.  A&F claims that

24   LS&CO. has abandoned its mark by consenting to the use of confusingly similar designs, while at the

25   same time denying that its own, far more similar design has harmed or has any potential to harm

26   LS&CO.'s mark.  As the Ninth Circuit has held – in a passage immediately following, but notably

27   omitted from, a block quote offered by A&F (Opp. at 17) – because a naked license *may* result in an

28   involuntary forfeiture of trademark rights, "the proponent of a naked license theory 'faces a stringent

1  standard' of proof."  *Barcamerica International USA Trust v. Tyfield Imports, Inc.*, 289 F.3d 589, 596

2  (9th Cir. 2002).

3         The primary flaw in A&F's analogy to "naked" license cases is that it offers no proof of any

4  licenses at all.  The third party settlements are not licenses to use LS&CO.'s mark and A&F cannot

5  claim that they are, given its own arguments about similarity.  The "naked license" cases necessarily

6  involve matters in which the trademark owner licensed or consented to a third party's use of its own

7  mark – not a variation of the mark, but the mark itself.  *See id.; see also Dawn Donut Co., Inc. v.*

8  *Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959); *First Interstate Bancorp v. Stenquist*, 16

9  U.S.P.Q.2d (BNA) 1704 at *7 (N.D. Cal. 1990).  A&F has presented no evidence that LS&CO.

10  "licensed" the Arcuate Trademark without adequate quality controls.  What LS&CO. did – in the

11  inadmissible settlement agreements -- is consent to the use of stitching designs that are different from

12  the Ruehl design, and that LS&CO. adjudged did not create a sufficient likelihood of harm through

13  consumer confusion as to warrant litigation under the particular circumstances of those agreements.

14  A&F may choose to disagree with LS&CO.'s judgments – although such an evaluation is highly

15  inconsistent with A&F's denial that its far more similar design causes harm[9] – but such consents are

16  not licenses to use the Arcuate Trademark itself without adequate quality control.  Other courts have

17  agreed that the "naked license" doctrine is inapplicable in the context of an abandonment defense like

18  A&F's.  *See, e.g., Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1047 (4th Cir.

19  1984) ("This rule of uncontrolled licensing of a trademark is inapplicable to the instant case as no

20  evidence of licensing has been presented.").[10]

21

22  _____

23  [9] If A&F will agree that the Ruehl stitching design is so similar to the Arcuate Trademark that it could
be considered the same design, then the "naked license" cases might have some relevance to this
action.

24

25  [10] The *Sweetheart* court also refused to give any credence to the argument that the trademark owner's
purported failure to police its mark had resulted in abandonment, holding, "Evidence of a trademark
owner's failure to prosecute infringers is relevant to a determination of the defense of abandonment
*only where such failure amounts to the mark's losing significance as an indication of source.*"  *Id.* at
1048 (emphasis added).  As already noted, A&F has presented no legitimate evidence that that is the
case here.

26

27

28

**5.     A&F Presents No Evidence That Third Party Uses And Registrations Have Weakened The Arcuate Trademark**

A&F also offers evidence of third party stitching designs that "exist on the market," as well as third party registrations for stitching designs.  Opp. at 5.  For the reasons set forth in detail in LS&CO.'s opposition to A&F's motion for summary judgment (incorporated herein by reference), A&F's showing is irrelevant, because A&F offers no evidence as to the extent of use of the third party designs -- other than a conclusory declaration from its research director that some of the designs have been on the market for "several years," Opp. at 5 – and fails to establish that LS&CO.'s mark has actually been weakened by third party use.  In the absence of such evidence, A&F's argument does not preclude summary judgment on its abandonment claim.

**C.     LS&CO. Is Entitled To Summary Judgment On A&F's Affirmative Defenses**

A&F asserts that LS&CO. knew the Ruehl design was in use "for over a year – and probably nearer to eighteen months" before it brought this action.  Opp. at 20.  A&F cites no evidence to support this claim, and there is no such evidence in the record.  A&F's application was filed on an intent to use basis.  Cincone Dec. Ex. S.  The undisputed evidence establishes – and LS&CO. has identified on a number of occasions in this lawsuit, including in connection with its motion to disqualify A&F's prior counsel – that LS&CO. did not learn the A&F design was in use until the summer of 2007, shortly before it filed its complaint.  *See* Cincone Dec. ¶ 24 & Ex. V; Cincone Reply Dec. ¶¶ 9-10 & Ex. F.  A&F has no evidence to the contrary.

In any event, A&F cannot prevail on a laches defense.  The Ninth Circuit has held that if a plaintiff filed suit within the analogous limitations period under state law, "the strong presumption is that laches is inapplicable."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.), *cert. denied*, 537 U.S. 1047 (2002) (citing *Shouse v. Pierce County*, 559 F.2d 1142, 1147 [9th Cir. 1977] ["It is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run."]).  Here, the analogous  California limitations period is three years.  *Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002).  Even under A&F's interpretation of the facts (which is not supported by the evidence), LS&CO. filed suit within the limitations period and therefore there is a

1  "strong presumption" that laches should not apply.  A&F offers no reason or evidence to contradict

2  that presumption.[11]

3      A&F argues that, even though it infringes, it still escapes liability because LS&CO. did not act

4  in accordance with some imagined reputation for litigiousness.  Wilson Opp. Dec. ¶ 4.  No judicial

5  decision supports application of a such a laches defense when, as here, the trademark owner

6  immediately raises a "possible challenge" (Cincone Dec. Ex. T) to an intent to use application,

7  immediately opposes it as soon as it publishes (Cincone Dec. Ex. U), and then sues immediately upon

8  learning of an infringer's actual use.  To permit such a defense turns the burden to respect other's

9  trademark rights upside down, and encourages infringers to try to get away with it for a few months in

10  the hope of reaching the umbrella of A&F's proposed laches protection.

11      A&F's arguments as to related affirmative defenses also fail.  A&F identifies no conduct *by*

12  *LS&CO. towards A&F* that could reasonably have justified reliance by A&F on LS&CO.'s purported

13  failure to act.  LS&CO.'s purported "well known reputation" is asserted without any foundation or

14  evidentiary support.  Moreover, since A&F's counsel himself referred to LS&CO.'s concerns as a

15  "possible challenge," his subsequent assertion that he did not believe LS&CO. would challenge the

16  Ruehl design does not provide sufficient support to preclude summary judgment.  *See* LS&CO. MSJ

17  at 19-20 (citing cases).  A&F's invocation of third party settlements (which, as already noted, are

18  inadmissible) certainly does not rise to the level of "intentional relinquishment of a known right" as is

19  required to prove waiver.  *See Adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d

20  1029, 1074 (D. Or. 2008) ("adidas' failure to prevent all third parties from selling any two- or four-

21

22

23  _____

24  [11] The case A&F cites for the proposition that summary judgment on laches is inappropriate, *Country Floors, Inc. v. Gepner*, 930 F.2d 1056 (3d Cir. 1991), is distinguishable.  In that case, the court expressly found that "the defense of laches is likely to be significantly affected by trademark and

25  unfair competition concepts about level of threat, degree of harm and the relative increase of damage" – factual issues that the court expected would develop as the case proceeded.  *Id.* at 1066.  A&F has

26  identified no such factual issues here.  As already noted, even if A&F were correct that LS&CO. learned of A&F's *use* of the Ruehl design as early as January 2006, the filing of LS&CO.'s complaint

27  occurred well within the limitations period.

28

1  striped shoes is not sufficient to prove adidas' express and affirmative intent to relinquish its rights.").

2  A&F's "unclean hands" defense falls with its fraud counterclaim.

3         Finally, as LS&CO. previously asserted, A&F's "trademark misuse" defense must be rejected.

4  A&F misrepresents the holding of *Juno Online Services, L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684

5  (N.D. Ill. 1997), in which the court declined to recognize an *affirmative claim* of trademark misuse.

6  *Id*. at 690.  The only case the court cited in which a *defense* of trademark misuse was allowed outside

7  the antitrust context was *Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516 (1903), a

8  1903 case in which the Supreme Court held it was misuse to enforce the trademark SYRUP OF FIGS

9  in connection with a laxative that did not actually contain fig juice.  *See id.* at 688.  Neither of these

10  holdings has any bearing on the viability of A&F's defense.

11      **D.**    **The Arcuate Trademark Is Famous**

12         In its opening motion and supporting declarations, LS&CO. demonstrated that all of the

13  statutory factors regarding fame weigh in favor of a finding that the Arcuate Trademark is famous.

14  *See* 15 U.S.C. § 1125(c)(2)(A).  The Arcuate Trademark is a federally registered, incontestable mark

15  that has been continuously used for 135 years, has appeared on billions of dollars' worth of LEVI'S®

16  brand products, and has been extensively promoted and advertised by LS&CO. at a cost of billions of

17  dollars.  The mark has enjoyed a high degree of unsolicited third-party recognition over the years and

18  LS&CO.'s survey research confirmed a high level of consumer recognition.  *See* LS&CO. MSJ at 21-

19  25 and declarations cited therein.  This overwhelming evidentiary showing establishes that the Arcuate

20  Trademark qualifies as famous within the meaning of the Lanham Act.

21         A&F has presented no evidence to counter LS&CO.'s showing.  A&F quibbles about the level

22  of advertising LS&CO. has devoted to products bearing the Arcuate Trademark, incorrectly asserting

23  that it does not rise to the level of other trademark owners such as Louis Vuitton whose marks have

24  been found to be famous as a matter of law.  *See Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir.

25  2006); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368 (S.D.N.Y. 2008).  A&F

26  misrepresents the holding of *Fossil Inc. v. Fossil Group*, 49 U.S.P.Q.2d 1451, 1457 (TTAB 1998),

27  claiming the TTAB held raw advertising figures were insufficient to establish fame; in fact, in a

28  passage not quoted by A&F, the TTAB held, "Raw sales and advertising figures – *unless they are*

1  *extraordinarily large*, which is not the case with opposer's FOSSIL products – are simply not

2  sufficient by themselves to establish that the mark is famous." *Id*. at *19 (emphasis added).  But

3  Fossil's numbers ($200 million in sales and $12 million in advertising expenditures annually) do not

4  compare to LS&CO.'s.  In cases where the numbers are more comparable to LS&CO.'s or even less,

5  courts have found that such numbers – particularly combined with showings on the other statutory

6  factors, such as LS&CO. has offered here – support a finding of fame.  *See* LS&CO. MSJ at 22.

7          A&F also contends that because LS&CO.'s advertisements display other marks besides the

8  Arcuate Trademark, the Court is "left to speculate" about the impact of the Arcuate Trademark on the

9  minds of consumers.  Opp. at 24.  But LS&CO. has taken this issue out of the realm of speculation by

10  supplying survey evidence that isolates the mark, and confirms that the mark is a well known and

11  reliable indicator of the LEVI'S® brand even where other LS&CO. trademarks are not visible.  As

12  detailed in LS&CO.'s motion (LS&CO. MSJ at 16-17), the evidence establishes that the Arcuate

13  Trademark is widely recognized and famous among consumers.  A&F has presented no evidence to

14  the contrary, and as explained in LS&CO.'s opposition to A&F's motion to exclude, A&F's

15  objections to the survey evidence are not well founded.  In light of LS&CO.'s overwhelming and

16  undisputed evidentiary showing, this Court should find that the Arcuate Trademark is famous within

17  the meaning of the dilution statute.

18  **III.    CONCLUSION**

19          For the reasons set forth above and in LS&CO.'s motion for summary judgment and partial

20  summary judgment, opposition to A&F's motion for summary judgment, and A&F's motion to

21  exclude, LS&CO. is entitled to summary judgment on A&F's counterclaims and selected affirmative

22  defenses, and to a finding that its Arcuate Trademark is famous.

23  DATED:  September 12, 2008              Respectfully submitted,

24

25                                         By:      */s/ Gregory S. Gilchrist*
                                                    Gregory S. Gilchrist
26                                                  TOWNSEND AND TOWNSEND AND CREW LLP

27                                                  Attorneys for Plaintiff/Counterclaim Defendant
                                                    LEVI STRAUSS & CO.
28

61496558 v1