# EXHIBIT E

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Levi Strauss & Co.,

      Plaintiff,

-vs-                          CASE No.  C07-03752-JSW

Abercrombie & Fitch Trading Co.,

      Defendant.
_____/

DEPOSITION OF CAROL SCOTT, Ph.D.

Thursday, September 4th, 2008

REPORTED BY:  GINA L. PETERSEN
                 CSR No. 9447

BONNIE L. WAGNER & ASSOCIATES
41 SUTTER STREET, SUITE 1605
SAN FRANCISCO, CA  94104
(415) 982-4849

| | | |
|---|---|---|
| 12:00 | 1 | Q. Paragraph two, subparagraph two, states, "The |
| 12:00 | 2 | Ford survey results do show, however, that a significant |
| 12:00 | 3 | number of consumers are likely to be confused as to the |
| 12:00 | 4 | origin or association of the Ruehl jeans." |
| 12:00 | 5 | Do you stand by that opinion? |
| 12:00 | 6 | A. Well, if you want to use these results, that is |
| 12:00 | 7 | what they show. |
| 12:00 | 8 | Q. Do you stand by that opinion? |
| 12:00 | 9 | A. Yes. |
| 12:00 | 10 | Q. Can you explain for me, Dr. Scott, how Dr. Ford's |
| 12:00 | 11 | survey is flawed yet can still be used to show confusion |
| 12:00 | 12 | as to the origin or association with the Ruehl jeans? |
| 12:00 | 13 | A. I would say that maybe this isn't worded the best |
| 12:00 | 14 | it can be worded, but I would say that the study cannot be |
| 12:00 | 15 | used to assess the confusion, in my view, that's the best |
| 12:00 | 16 | way to deal with this. |
| 12:00 | 17 | If you want to use it at all, in any sense, the |
| 12:00 | 18 | best thing you can say is that it shows confusion; it |
| 12:00 | 19 | shows confusion of the Ruehl jeans.  It shows confusion of |
| 12:01 | 20 | the Lucky jeans, and it shows confusion of the RP55 jeans. |
| 12:01 | 21 | So, that's what we know.  I mean all the |
| 12:01 | 22 | confusion is out there.  We can see those numbers about |
| 12:01 | 23 | how many people called any of those three jeans Levi's. |
| 12:01 | 24 | Now, what happens, then, is that some people like |
| 12:01 | 25 | to do subtraction, like to take one cell's results and |

Deposition of C. Scott, Ph.D.  -- For Attorneys' Eyes 83ly

```
12:01   1    subtract it from another cell's results and all that net
12:01   2    confusion.
12:01   3         I have never agreed with that practice.  I still
12:01   4    don't agree with it.  I know people do it, but in this
12:01   5    case, I think you can't do it in particular because the
12:01   6    controls are not appropriate.
12:01   7         Q. So, you -- let me make sure I understand.  You do
12:01   8    not think it's appropriate to take the test results and
12:01   9    then subtract away the control results to arrive at net
12:01   10   confusion?
12:01   11        A. I've always thought that was a very flawed
12:01   12   practice.
12:01   13        Q. What is your basis?  Do you have any authority
12:02   14   for that?
12:02   15        A. Well --
12:02   16        MR. GILCHRIST:  Strike that.  Strike that.
12:02   17   Sorry, don't strike that.
12:02   18        I'll object on the grounds it's ambiguous and
12:02   19   appears to call for some sort of legal conclusion.
12:02   20   BY MR. KEYES:
12:02   21        Q. I'm not asking for a legal conclusion.  My
12:02   22   understanding, Dr. Scott, and I'll rephrase it to make
12:02   23   sure that we are all clear -- my understanding is that you
12:02   24   just testified that you have not agreed with the practice
12:02   25   of taking the test results and then subtracting the
```

Deposition of C. Scott, Ph.D.  -- For Attorneys' Eyes 84ly

```
12:02   1    control results?
12:02   2         A. Yes, sir.  I don't think it's a good practice.
12:02   3         Q. You disagree with that.
12:02   4              And I'm asking:  Do you have any authority that
12:02   5    states that that is not good practice?
12:02   6         MR. GILCHRIST:  And I'm still going to object
12:02   7    that "authority" is vague.
12:02   8              Are you asking her for legal authorities or some
12:02   9    other authority?
12:02   10        MR. KEYES:  Well, any authority, legal or
12:02   11   otherwise.
12:02   12        MR. GILCHRIST:  I object; the question is vague.
12:02   13        THE WITNESS:  Now, this is the reason why one of
12:02   14   these days I'm going to write a paper about control groups
12:02   15   and this.
12:02   16             I have never seen anybody cite that, but I will
12:02   17   tell you why I think that it's a flawed research practice.
12:02   18             Because, as I say, there are -- gosh, I don't
12:03   19   know how many different jeans there are being sold out
12:03   20   there, but there is a lot and the, quote, net confusion
12:03   21   I'm going to get will be very highly dependent upon
12:03   22   whatever control I pick.
12:03   23             So, to say that some arbitrarily-selected control
12:03   24   group should then be subtracted from another result, and
12:03   25   that's in concrete the confusion that exists in the world,
```

Deposition of C. Scott, Ph.D.  -- For Attorneys' Eyes 85ly

8e3e2cbc-7b57-4a04-8e2d-00d5bab8a586

```
12:03   1    I think, is misleading because I can take another jean,
12:03   2    and I'll get a different number.  And I'll take another
12:03   3    jean and I'll get a different number.
12:03   4         How do I interpret that?  Well, basically, I
12:03   5    think, what it comes down to is really designing a survey
12:03   6    so that you are testing for what some people would call
12:03   7    noise, some people would disaggregate into other kind of
12:04   8    biases, that you would take those into account and control
12:04   9    for them in other ways.
12:04  10         It's a very unreliable result on its face.  Now,
12:04  11    people do it.  Courts have taken it; courts have done it
12:04  12    all the time.  I wouldn't want to say courts make
12:04  13    mistakes, but sometimes I think they do, and I think that
12:04  14    in these instances reliance upon that kind of subtraction
12:04  15    is misguided.  It particularly gets misguided when you see
12:04  16    the kind of control in this study, and you can see why
12:04  17    it's a problem.
12:04  18    BY MR. KEYES:
12:04  19         Q.  Down on subparagraph two, the last sentence, I'll
12:04  20    read it.  It says, "This is because consumers in the Ford
12:04  21    survey also evidenced a high level of confusion with two
12:04  22    brands of, quote, control, end quote, jeans that were
12:05  23    themselves likely to exhibit a high level of true
12:05  24    confusion."
12:05  25         What do you mean by "true confusion"?
```

Deposition of C. Scott, Ph.D.  -- For Attorneys' Eyes 86ly