IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ABERCROMBIE & FITCH TRADING COMPANY,<br><br>　　　　Defendant.<br>_____ / | No. C 07-03752 JSW<br><br>**NOTICE OF TENTATIVE RULING AND QUESTIONS FOR HEARING** |

　　　　TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON OCTOBER 10, 2008, AT **8:30** A.M.:

　　　　The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings.  If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing.  If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with pin cites and without argument or additional briefing.  *Cf.* N.D. Civil Local Rule 7-3(d).  The parties will be given the opportunity at oral argument to explain their reliance on such authority.  The Court also suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

In addition, the Court HEREBY ORDERS the parties to provide the Court, on either a CD-Rom or via email, with visual depictions of a Levi's jean bearing the Arcuate Mark and a Ruehl jean bearing the accused design. If the parties choose to provide the Court with the images via email, they shall send them to the Court's proposed orders mailbox.

The Court **tentatively sustains** Levi Strauss & Company's ("LS&CO") objections to Abercrombie's use of third party settlements, **tentatively sustains** LS&CO's objections to Abercrombie's use of survey evidence from other litigation, and tentatively **grants in part and denies in part** LS&CO motion for summary judgment.

The Court **tentatively denies** Abercrombie & Fitch Trading Co.'s ("Abercrombie") motion to exclude Dr. Sood's report, testimony, and survey evidence and **tentatively denies** Abercrombie's motion for summary judgment.

Each party shall have twenty (20) minutes to address the following questions:

1. If the Court were to alter its tentative ruling and grant Abercrombie's motion for summary judgment, does it intend to pursue its Counterclaims?

2. 
   a. Does LS&CO concede that Dr. Sood did not use a "control cell" for his likelihood of confusion survey. If so, and even if the Court were to accept LS&CO's arguments that the questions posed were not leading and did not suffer from demand or order effects, why does the lack of a control cell not impact the reliability of the survey results? *See, e.g., Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 784-85 (W.D. Mich. 2006).

   b. Does Abercrombie have any authority to suggest that failure to use a control cell is not in accordance with generally accepted survey principles if some form of control is used? *See, e.g., Storck USA, L.P. v. Farley Candy Co.*, 797 F. Supp. 1339, 1408 (N.D. Ill. 1992) (evaluating survey similar in design to Sood Survey, which utilized control products but not a control cell).

   c. What is LS&CO's response to Abercrombie's argument that even when one considers Dr. Sood's survey on likelihood of confusion, the actual percentage of confusion that can be attributed to the Arcuate mark is 9%?

   d. What is the difference between Exhibits 9G and 9H to the Sood Report? Which of these exhibits sets forth the percentage of those people who identified Lucky or Lee with one brand of jeans and correctly identified that brand?

3. LS&CO relies on the Sood Consumer Recognition survey in support of its motion for summary adjudication of its dilution claim. Abercrombie, in turn, has introduced Dr. Ford's rebuttal report in support of its arguments that the Sood Survey is unreliable. The Court's tentative ruling on the motion to exclude is premised upon its opinion that any defects in Dr. Sood's surveys go to the

weight, rather than the admissibility, of those surveys. Given that conclusion, what is LS&CO's best argument that Abercrombie's challenges to the weight to be afforded Dr. Sood's conclusions do not raise a genuine issue of material fact on whether the Arcuate mark is famous? *See, e.g., Clicks Billiards Inc. v. Six Shooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) (noting that once a court has determined a survey is admissible, questions of weight are issues for the jury).

4. Is it LS&CO's position that using the third party settlement agreements to establish LS&CO's purported "consent" to allow infringing designs on the market is using settlement agreements to establish liability, in contravention of Federal Rule of Evidence 408?

    a. If LS&CO can use evidence of settlements to establish the fame of the Arcuate mark, why should Abercrombie be precluded from using settlements with third parties to show that the mark is not famous?

5. A&F has put forth the "story" of the Ruehl jeans brand in its motion. That story appears similar to Levi Strauss' life history. Should the Court take that into consideration in the *Sleekcraft* analysis when it reaches the intent factor?

6. Both parties rely on *Levi Strauss & Co. v. Vivat Holdings PLC*, 2000 TTAB Lexis 817 (2000), which states it is not citable as TTAB precedent. Why should the Court rely on this authority?

7. The parties each rely on experts to support their positions on the fraud claims and specifically how TMEP § 1605.4 should be interpreted. Why is the legal interpretation of this provision not an issue for the Court in the first instance? How is the proposed expert testimony going to be "helpful" to a trier of fact?

    a. Abercrombie argues the testimony from Ms. Fowler and Ms. Durgin regarding the fact that they did not personally investigate the statements in the Section 8 and Section 15 affidavits creates a genuine issue of material fact on the issue of fraud. However, Abercrombie's expert on USPTO procedures states that he did not believe their failure to personally investigate the statements therein constituted fraud. In light of that fact, why should the Court conclude the lack of investigation is material to resolution of the motion?

8. Does LS&CO seek money damages on its dilution claim? If so, when was the Ruehl accused design first used in commerce and where in the existing record can the Court find that information? *See* 15 U.S.C. § 1125(c)(5).

9. Are there any other issues the parties wish to address?

Dated: October 9, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

3