1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    LEVI STRAUSS & COMPANY,

10              Plaintiff,                    No. 07-03752 JSW

11        v.                                  **FINAL JURY INSTRUCTIONS**

12   ABERCROMBIE & FITCH TRADING
     COMPANY,
13
                Defendants.
14
     _____/
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**DUTY OF JURY TO FIND FACTS AND FOLLOW LAW**

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case.  I am also providing each of you with copies of these instructions for you to consult in the jury room if you find it necessary.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

# BURDEN OF PROOF

## PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court

For the Northern District of California

3

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.     the sworn testimony of any witness;

2.     the exhibits which are received into evidence; and

3.     any facts to which the lawyers have agreed.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements and in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence has been admitted for a limited purpose only.  When I instructed you that an item of evidence was admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.      the opportunity and ability of the witness to see or hear or know the things testified to;

2.      the witness's memory;

3.      the witness's manner while testifying;

4.      the witness's interest in the outcome of the case and any bias or prejudice;

5.      whether other evidence contradicted the witness's testimony;

6.      the reasonableness of the witness's testimony in light of all the evidence; and

7.      any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

8

**IMPEACHMENT EVIDENCE - WITNESS**

The evidence that a witness gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

United States District Court

For the Northern District of California

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

United States District Court
For the Northern District of California

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

1

2

**CHARTS AND SUMMARIES IN EVIDENCE**

3        Certain charts and summaries have been received in evidence to illustrate information

4  brought out in the trial.  Charts and summaries are only as good as the underlying evidence that

5  supports them.  You should, therefore, give them only such weight as you think the underlying

6  evidence deserves.

7

8

9

10

11

12

United States District Court

For the Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFINITION - TRADEMARK**

A trademark is any word, name, symbol or device, or any combination of these, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown.

A person who uses the trademark of another may be liable for damages.

United States District Court

For the Northern District of California

**TRADEMARK LIABILITY - THEORIES AND POLICIES**

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict.  Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if Abercrombie is liable to Levi Strauss for violating the trademark law.  These facts are relevant to whether Abercrombie is liable for:

1.    infringing Levi Strauss's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers;

2.    diluting Levi Strauss's trademark rights by using a trademark that diminishes the ability of Levi Strauss's trademark to indicate a single source; or

3.    unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of Levi Strauss's goods.

**United States District Court**
For the Northern District of California

1    **INFRINGEMENT - ELEMENTS AND BURDEN OF PROOF - TRADEMARK**

2

3        On Levi Strauss's claim for trademark infringement, Levi Strauss has the burden of

4    proving each of the following elements by a preponderance of the evidence that:

5        1.    the Arcuate trademark is a valid, protectable trademark;

6        2.    Levi Strauss owns the Arcuate trademark as a trademark; and

7        3.    Abercrombie used a design similar to the Arcuate trademark without the consent

8              of Levi Strauss in a manner that is likely to cause confusion among ordinary

9              purchasers or persons who observe the design on product away from the point of

10             sale.

11       If you find that each of the elements on which Levi Strauss has the burden of proof has

12   been proved, your verdict should be for Levi Strauss.  If, on the other hand, Levi Strauss has

13   failed to prove any of these elements, your verdict should be for Abercrombie.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

**INFRINGEMENT - ELEMENTS**

**PRESUMED VALIDITY AND OWNERSHIP - REGISTERED TRADEMARK**

In the previous instruction, I instructed you that Levi Strauss is required to prove by a preponderance of the evidence that the Arcuate trademark is valid and protectable and that Levi Strauss owns the Arcuate trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.

One way for Levi Strauss to prove trademark validity is to show that the Arcuate trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits 293, 294, and 295 are copies of certificates of registration from the United States Patent and Trademark Office for U.S. Registration No. 404,248, U.S. Registration No. 1,139,254, and U.S. Registration No. 2,794,649. They were submitted by Levi Strauss as proof of the validity of the Arcuate trademark and that Levi Strauss owns the Arcuate trademark.

U.S. Registration No. 404,248 shows that Levi Strauss owns the stitching design trademark shown in the certificate for a design accomplished by "stitching the double arcuate designs on the hip pockets with orange colored thread or by painting the lines of said design on the hip pockets with orange colored paint" as used on waistband type overalls.

U.S. Registration No. 1,139,254 shows that Levi Strauss owns the stitching design trademark shown in the certificate as used on pants, jackets, skirts, dresses or shorts.

U.S. Registration No. 2,794,649 shows that Levi Strauss owns the stitching design trademark shown in the certificate as used on pants, jeans, shorts, shirts, T-shirts, blouses, skirts, and jackets.

In this case, there is no dispute that U.S. Registration No. 404,248 and U.S. Registration No. 1,139,254 (Exhibits 293 and 294) are now "incontestable" under the trademark laws. This

1    means that Levi Strauss's registration of the Arcuate trademark as depicted in those

2    registrations is conclusive evidence of ownership of the Arcuate trademark and that the Arcuate

3    trademark as depicted in those registrations is valid and protectable.  I instruct you that for

4    purposes of the previous instruction, Elements and Burden of Proof - Trademark, you must find

5    that Levi Strauss owns the Arcuate trademark as depicted in those registrations and that the

6    Arcuate trademark as depicted in those registrations is valid and protectable.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INFRINGEMENT - LIKELIHOOD OF CONFUSION - FACTORS

You must consider whether Abercrombie's use of the Ruehl design is likely to cause confusion about the source, affiliation, connection, or sponsorship, of Levi Strauss's or Abercrombie's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1.      Strength or Weakness of Levi Strauss's Arcuate trademark. The more the consuming public recognizes Levi Strauss's Arcuate trademark as an indication of origin of Levi Strauss's goods, the more likely it is that consumers would be confused about the source of Abercrombie's goods if Abercrombie uses a similar mark.

2.      Abercrombie's Use of the Ruehl design. If Abercrombie and Levi Strauss use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.      Similarity of Levi Strauss's and Abercrombie's Marks. If the overall impression created by Levi Strauss's Arcuate trademark in the marketplace is similar to that created by Abercrombie's Ruehl design in appearance, there is a greater chance of likelihood of confusion. Similarities in appearance weigh more heavily than differences in finding the marks are similar.

4.      Actual Confusion. If use by Abercrombie of the Ruehl design has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Abercrombie's use of the Ruehl design may still be likely to cause confusion. As you consider whether the Ruehl design used by Abercrombie creates for consumers a likelihood of confusion with Levi Strauss's Arcuate trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by

18

contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.      Abercrombie's Intent.  Knowing use by Abercrombie of a confusingly similar design to identify similar goods may strongly show an intent to derive benefit from the reputation of Levi Strauss's Arcuate trademark, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that Abercrombie acted knowingly, the use of a confusingly similar design to identify similar goods may indicate a likelihood of confusion.

6.      Marketing/Advertising Channels.  If Levi Strauss's and Abercrombie's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.      Purchaser's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in Levi Strauss's and Abercrombie's trademarks.

United States District Court

For the Northern District of California

19

United States District Court

For the Northern District of California

**LIKELIHOOD OF CONFUSION - STRENGTH OF THE MARK**

How strongly a trademark indicates that a good comes from a particular source even if unknown is an important factor to consider in determining whether the Ruehl design used by Abercrombie creates for consumers a likelihood of confusion with Levi Strauss's Arcuate trademark.  Stronger marks are marks more likely to be remembered and associated by consumers with the mark owner, and stronger marks are given greater protection.

The strength of a trademark is measured in two ways: conceptual and commercial.  Conceptual strength derives from the nature of the mark itself.  Commercial strength derives from the effect of use and advertising of the mark on consumers' perceptions.

Trademark law provides great protection to distinctive or strong trademarks.  Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses.  Trademarks are grouped into categories according to their relative strength.

Arbitrary Trademarks.  The first category is "inherently distinctive" trademarks.  They are considered strong trademarks and are clearly protectable.  They involve the arbitrary, fanciful or fictitious use of a word or design to designate the source of a product.  Such a trademark is a word or design that in no way describes or has any relevance to the particular product it is meant to identify.  It may be a common word or design used in an unfamiliar way.  It may be a newly created (coined) word or design which is applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

Suggestive Trademarks.  The next category of marks is suggestive marks.  These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks.  Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks suggest some characteristic or quality of the product to which they are attached.  If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.

20

United States District Court

For the Northern District of California

Descriptive Trademarks.  The third category of trademarks is descriptive trademarks. These marks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.  Descriptive trademarks are weak unless they hold commercial strength.

Commercial strength relates to the degree that consumers are exposed to the mark and associate it with a particular source, even if the name of that source is unknown.  Relevant factors in determining the commercial strength of a mark include the volume of sales of products bearing the trademark, the amount of advertising associated with the trademark, the length of time the trademark has been in use, and the degree of consumer recognition of the trademark.

**United States District Court**
For the Northern District of California

# LIKELIHOOD OF CONFUSION
# STRENGTH - THIRD PARTY TRADEMARKS

In determining the strength of Levi Strauss's Arcuate trademark, you may consider the presence of similar trademarks or stitching designs on similar goods in the marketplace as such marks and designs may have affected consumer perceptions of the Arcuate tradmark before February 2006 when Abercrombie began using its Ruehl design.  Evidence of third party use or registration of stitching designs may bear on the strength of Levi Strauss's Arcuate trademark. Extensive third-party use of Levi Strauss's Arcuate trademark or similar stitching designs by others might tend to show that consumers are likely to associate the Arcuate trademark with companies and meanings other than Levi Strauss.  However, if consumers continue to associate the Arcuate trademark with Levi Strauss despite extensive third-party use, then the third-party uses might tend to show the strength of the association created by Levi Strauss's Arcuate trademark.

In considering whether third party uses of similar designs have weakened Levi Strauss's Arcuate trademark or are a sign of the Arcuate trademark's strength, you may consider the nature, extent, and length of time of the third party uses and the extent to which they are recognized by consumers.  You also may consider the degree to which Levi Strauss has enforced its rights to prevent others from using similar designs.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LIKELIHOOD OF CONFUSION - ACTUAL CONFUSION

## PROOF BY SURVEY EVIDENCE

Proof of actual confusion is not necessary to show likely confusion.  It is a factor to consider.  Levi Strauss may prove that there is actual confusion through direct evidence of actual confusion or through a survey conducted by an expert.  Abercrombie may negate proof that there is actual confusion by showing that there have been no instances of actual confusion since the Ruehl design was introduced into the market and by refuting the results of a survey conducted by an expert.

**United States District Court**
For the Northern District of California

1

## TRADEMARK DAMAGES - DEFENDANT'S PROFITS

2    If you find for Levi Strauss on Levi Strauss's infringement or unfair competition claim,

3    you must determine whether Levi Strauss is entitled to damages in the form of any profits

4    earned by Abercrombie that are attributable to the infringement, which Levi Strauss proves by a

5    preponderance of the evidence.

6    Profit is determined by deducting all expenses from gross revenue.

7    Gross revenue is all of Abercrombie's receipts from using the Ruehl design in the sale of

8    its product.  Levi Strauss has the burden of proving Abercrombie's gross revenue by a

9    preponderance of the evidence.

10    Expenses are all operating overhead and production costs incurred in producing the

11    gross revenue.  Abercrombie has the burden of proving the expenses and the portion of the

12    profit attributable to factors other than use of the Ruehl design by a preponderance of the

13    evidence.

14    Unless you find that a portion of the profit from the sale of the Ruehl products using the

15    Ruehl design is attributable to factors other than use of the Ruehl design, you shall find that the

16    total profit is attributable to the infringement.

17

18

19

20

21

22

23

24

25

26

27

28

24

1

2

**TRADEMARK DAMAGES - INTENTIONAL INFRINGEMENT**

3

4

5

   If you find that Abercrombie infringed Levi Strauss's Arcuate trademark, you must also determine whether Abercrombie used a confusingly similar design intentionally, knowing it was an infringement.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**TRADEMARK DILUTION - ELEMENTS AND BURDEN OF PROOF**

2

3          In this case, Levi Strauss contends that Abercrombie has diluted Levi Strauss's Arcuate

4  trademark.  "Dilution" means a lessening of the capacity of a famous mark to identify and

5  distinguish goods or services, regardless of the presence of absence of competition, actual or

6  likely confusion, mistake, deception, or economic injury.

7          To prove this claim, Levi Strauss has the burden of proving by a preponderance of the

8  evidence the following elements:

9          1.       that it is the owner of a trademark that is famous;

10         2.       that the famous mark is distinctive, either inherently or through acquired

11                  distinctiveness;

12         3.       that Abercrombie is making use of an identical or nearly identical trademark, in

13                  this case the Ruehl design;

14         4.       that Abercrombie's use of its Ruehl design began after Levi Strauss's Arcuate

15                  trademark became famous;

16         5.       and that Abercrombie's use of its Ruehl design is likely to cause dilution by

17                  blurring of Levi's Arcuate trademark.

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

**TRADEMARK DILUTION - FAME OF PLAINTIFF'S MARK**

A trademark is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the trademark's owner. In determining whether Levi Strauss's Arcuate trademark is famous, you may consider several factors I will describe for you in a moment. These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether a mark is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether a trademark is famous. You should consider all the relevant evidence in making your determination. The factors you should consider are:

1.     the duration, extent and geographic reach of advertising and publicity of the Arcuate trademark, whether advertised or publicized by Levi Strauss or third parties;

2.     the amount, volume, and geographic extent of sales of goods offered under the Arcuate trademark;

3.     the extent of actual recognition of the Arcuate trademark; and

4.     whether the Arcuate trademark was federally registered.

27

1      **TRADEMARK DILUTION - FAMOUSNESS**

2

3          To be "famous," Levi Strauss's Arcuate trademark must have been truly prominent and

4  renowned at the time of Abercrombie's first commercial use of the Ruehl design.  Levi

5  Strauss's Arcuate trademark must have become very widely recognized by the consuming

6  public as the designator of Levi Strauss's goods and must have such significant consumer

7  associations that even uses of marks on non-competing goods can affect the Arcuate

8  trademark's value.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**TRADEMARK DILUTION - DILUTION BY BLURRING**

2

3        Dilution by blurring is an association arising from the similarity between Abercrombie's

4   Ruehl design and Levi Strauss's Arcuate trademark that impairs the distinctiveness of the

5   Arcuate trademark.  In determining whether the Ruehl design is likely to cause dilution by

6   blurring, you may consider all relevant factors, including the following:

7        1.      the degree of similarity between Abercrombie's Ruehl design and the Arcuate

8   trademark;

9        2.      the degree of inherent or acquired distinctiveness of the Arcuate trademark;

10       3.      the extent to which Levi Strauss is engaging in substantially exclusive use of the

11  Arcuate trademark;

12       4.      the degree of recognition of the Arcuate trademark;

13       5.      whether Abercrombie intended to create an association with the Arcuate

14  trademark; and

15       6.      any actual association between Abercrombie's Ruehl design and the

16  Arcuate trademark.

29

1

2

**TRADEMARK DILUTION - ELEMENTS - SIMILARITY**

3

4        In determining the degree of similarity between the Ruehl design and the Arcuate

5   trademark, you should consider whether the Arcuate trademark and the Ruehl design are used

6   on competing goods and whether the Arcuate trademark and the Ruehl design are identical, or

7   nearly identical, to one another.  In order to be nearly identical, the two designs must be similar

8   enough that a significant segment of the target group of customers sees the two designs as

    essentially the same.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1

## RELATIONSHIP BETWEEN TRADMARK CONFUSION AND DILUTION

2

3           Evidence that establishes a likelihood of confusion also is sufficient to establish a

4    likelihood of dilution.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You shall discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, Ms. Ottolini, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing. I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

1

2

**USE OF NOTES**

3

        Some of you have taken notes during the trial.  Whether or not you took notes, you

4

should rely on your own memory of what was said.  Notes are only to assist your memory.  You

5

should not be overly influenced by the notes.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

1

**EVIDENCE IN ELECTRONIC FORMAT**

2

3      Some of the evidence presented to you was presented in electronic format.  You will

4  have copies of the exhibits available to you in the jury room.  If you wish to see an exhibit that

5  was presented in electronic format, *e.g.,* a video, please send a note to Ms. Ottolini advising the

6  Court of that fact.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RETURN OF VERDICT**

A form of Special Verdict has been prepared for you, which you will take into the jury room for your convenience.  The answer to each question must be the unanimous answer of the jury.  Your foreperson will write the unanimous answer of the jury in the space provided below each question.  When you have finished the Special Verdict form, your foreperson will sign and date it, and advise the court that you are ready to return to the courtroom.

**IT IS SO ORDERED.**

Dated: December 22, 2008

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

36